# Exhibit B

EDGAR access
by EDGAR Online

# FEDERAL NATIONAL MORTGAGE ASSOCIATION FANNIE MAE

## FORM 10-K
### (Annual Report)

## Filed 02/26/10 for the Period Ending 12/31/09

| | |
|---|---|
| Address | 3900 WISCONSIN AVE N.W. |
| | WASHINGTON, DC 20016 |
| Telephone | 2027527000 |
| CIK | 0000310522 |
| Symbol | FNMA |
| SIC Code | 6111 - Federal and Federally-Sponsored Credit Agencies |
| Industry | Consumer Financial Services |
| Sector | Financial |
| Fiscal Year | 12/31 |

http://pro.edgar-online.com
© Copyright 2014, EDGAR Online, Inc. All Rights Reserved.
Distribution and use of this document restricted under EDGAR Online, Inc. Terms of Use.

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

# Form 10-K

### ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d)
### OF THE SECURITIES EXCHANGE ACT OF 1934

**For the fiscal year ended December 31, 2009**

**Commission File No.: 0-50231**

# Federal National Mortgage Association
*(Exact name of registrant as specified in its charter)*

**Fannie Mae**

| | |
|---|---|
| **Federally chartered corporation** | **52-0883107** |
| *(State or other jurisdiction of incorporation or organization)* | *(I.R.S. Employer Identification No.)* |
| **3900 Wisconsin Avenue,** | **20016** |
| **NW Washington, DC** | *(Zip Code)* |
| *(Address of principal executive offices)* | |

### Registrant's telephone number, including area code:
### (202) 752-7000
### Securities registered pursuant to Section 12(b) of the Act:

| Title of Each Class | Name of Each Exchange on Which Registered |
|---|---|
| Common Stock, without par value | New York Stock Exchange<br>Chicago Stock Exchange |
| 8.25% Non-Cumulative Preferred Stock,<br>Series T, stated value $25 per share | New York Stock Exchange |
| 8.75% Non-Cumulative Mandatory Convertible<br>Preferred Stock, Series 2008-1,<br>stated value $50 per share | New York Stock Exchange |
| Fixed-to-Floating Rate Non-Cumulative<br>Preferred Stock, Series S,<br>stated value $25 per share | New York Stock Exchange |
| 7.625% Non-Cumulative Preferred Stock,<br>Series R, stated value $25 per share | New York Stock Exchange |
| 6.75% Non-Cumulative Preferred Stock,<br>Series Q, stated value $25 per share | New York Stock Exchange |
| Variable Rate Non-Cumulative Preferred Stock,<br>Series P, stated value $25 per share | New York Stock Exchange |
| 5.50% Non-Cumulative Preferred Stock,<br>Series N, stated value $50 per share | New York Stock Exchange |
| 4.75% Non-Cumulative Preferred Stock,<br>Series M, stated value $50 per share | New York Stock Exchange |
| 5.125% Non-Cumulative Preferred Stock,<br>Series L, stated value $50 per share | New York Stock Exchange |
| 5.375% Non-Cumulative Preferred Stock,<br>Series I, stated value $50 per share | New York Stock Exchange |
| 5.81% Non-Cumulative Preferred Stock,<br>Series H, stated value $50 per share | New York Stock Exchange |
| Variable Rate Non-Cumulative Preferred Stock,<br>Series G, stated value $50 per share | New York Stock Exchange |
| Variable Rate Non-Cumulative Preferred Stock,<br>Series F, stated value $50 per share | New York Stock Exchange |

### Securities registered pursuant to Section 12(g) of the Act:

**Variable Rate Non-Cumulative Preferred Stock, Series O, stated value $50 per share**
*(Title of class)*
**5.375% Non-Cumulative Convertible Series 2004-1 Preferred Stock, stated value $100,000 per share**
*(Title of class)*
**5.10% Non-Cumulative Preferred Stock, Series E, stated value $50 per share**
*(Title of class)*
**5.25% Non-Cumulative Preferred Stock, Series D, stated value $50 per share**
*(Title of class)*

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. Yes ☑   No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or 15(d) of the Act. Yes ☐   No ☑

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☑   No ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§ 232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files). Yes ☑   No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act. (Check one):

Large accelerated filer ☑            Accelerated filer ☐            Non-accelerated filer ☐            Smaller reporting company ☐

(Do not check if a smaller reporting company)

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Act).   Yes ☐      No ☑

The aggregate market value of the common stock held by non-affiliates of the registrant computed by reference to the price at which the common stock was last sold on June 30, 2009 (the last business day of the registrant's most recently completed second fiscal quarter) was approximately $645 million.

As of January 31, 2010, there were 1,116,805,764 shares of common stock of the registrant outstanding.

**DOCUMENTS INCORPORATED BY REFERENCE:**

None

## TABLE OF CONTENTS

**PART I**                                                                                              1
Item 1.        Business                                                                                  1
               Overview                                                                                  1
               Residential Mortgage Market                                                               2
               Executive Summary                                                                         5
               Mortgage Securitizations                                                                 16
               Business Segments                                                                        19
               Conservatorship and Treasury Agreements                                                  26
               GSE Reform and Pending Legislation                                                        32
               Our Charter and Regulation of Our Activities                                             33
               Making Home Affordable Program                                                           40
               Treasury Housing Finance Agency Initiative                                               43
               Our Customers                                                                            43
               Competition                                                                              43
               Employees                                                                                44
               Where You Can Find Additional Information                                                44
               Forward-looking Statements                                                               45
Item 1A.       Risk Factors                                                                             48
Item 1B.       Unresolved Staff Comments                                                                63
Item 2.        Properties                                                                               63
Item 3.        Legal Proceedings                                                                        64
Item 4.        Submission of Matters to a Vote of Security Holders                                      65

**PART II**                                                                                             66
Item 5.        Market for Registrant's Common Equity, Related Stockholder Matters and Issuer Purchases of
               Equity Securities                                                                        66
Item 6.        Selected Financial Data                                                                  69
Item 7.        Management's Discussion and Analysis of Financial Condition and Results of Operations    72
               Critical Accounting Policies and Estimates                                               72
               Consolidated Results of Operations                                                       82
               Business Segment Results                                                                105
               Consolidated Balance Sheet Analysis                                                     110
               Supplemental Non-GAAP Information—Fair Value Balance Sheets                             119
               Liquidity and Capital Management                                                        125
               Off-Balance Sheet Arrangements and Variable Interest Entities                           139
               Risk Management                                                                         143
               Impact of Future Adoption of New Accounting Pronouncements                              185
               Glossary of Terms Used in This Report                                                   186
Item 7A.       Quantitative and Qualitative Disclosures about Market Risk                              188
Item 8.        Financial Statements and Supplementary Data                                             188
Item 9.        Changes in and Disagreements with Accountants on Accounting and Financial Disclosure    188
Item 9A.       Controls and Procedures                                                                 188

i

| | | |
|---|---|---|
| Item 9B. | Other Information | 195 |
| | **PART III** | 195 |
| Item 10. | Directors, Executive Officers and Corporate Governance | 195 |
| | Directors | 195 |
| | Corporate Governance | 198 |
| | Executive Officers | 202 |
| Item 11. | Executive Compensation | 204 |
| | Compensation Discussion and Analysis | 204 |
| | Compensation Committee Report | 219 |
| | Compensation Tables | 220 |
| Item 12. | Security Ownership of Certain Beneficial Owners and Management and Related Stockholder Matters | 233 |
| Item 13. | Certain Relationships and Related Transactions, and Director Independence | 235 |
| Item 14. | Principal Accountant Fees and Services | 244 |
| | **PART IV** | 246 |
| Item 15. | Exhibits and Financial Statement Schedules | 246 |
| INDEX TO EXHIBITS | | E-1 |
| INDEX TO CONSOLIDATED FINANCIAL STATEMENTS | | F-1 |

ii

*Jonathan Plutzik,* 55, has served as Chairman of Betsy Ross Investors, LLC since August 2005. He also has served as President of the Jonathan Plutzik and Lesley Goldwasser Family Foundation Inc. and as Chairman of the Coro New York Leadership Center since January 2003. Mr. Plutzik served as Non-Executive Chairman of the Board of Directors at Firaxis Games from June 2002 to December 2005. Before that, he served from 1978 to June 2002 in various positions with Credit Suisse First Boston, retiring in June 2002 from his role as Vice Chairman. Mr. Plutzik has been a Fannie Mae director since November 2009. Mr. Plutzik is a member of the Compensation Committee and Risk Policy and Capital Committee.

The Nominating and Corporate Governance Committee concluded that Mr. Plutzik should continue to serve as a director due to his extensive experience in business, finance, capital markets, risk management and the regulation of financial institutions, which he gained in the positions described above.

*David H. Sidwell* , 56, served as Executive Vice President and Chief Financial Officer of Morgan Stanley from March 2004 to October 2007, when he retired. From 1984 to March 2004, Mr. Sidwell worked for JPMorgan Chase & Co. in a variety of financial and operating positions, most recently as Chief Financial Officer of JPMorgan Chase's investment bank from January 2000 to March 2004. Prior to joining JP Morgan in 1984, Mr. Sidwell was with Price Waterhouse LLP, a major public accounting firm, from 1975 to 1984. Mr. Sidwell serves as a Trustee of the International Accounting Standards Committee Foundation. Mr. Sidwell is currently a member of the Board of Directors and Chair of the Risk Committee of UBS AG. He previously was a member of the Board of Directors of MSCI Inc. from November 2007 through September 2008, where he served as Chair of the Audit Committee and a member of the Nominating and Corporate Governance Committee. Mr. Sidwell has been a Fannie Mae director since December 2008. Mr. Sidwell is a member of the Compensation Committee, Risk Policy and Capital Committee, and Strategic Planning Committee.

The Nominating and Corporate Governance Committee concluded that Mr. Sidwell should continue to serve as a director due to his extensive experience in business, finance, capital markets, accounting, risk management and the regulation of financial institutions, which he gained in the positions described above.

*Michael J. Williams,* 52, has been President and Chief Executive Officer of Fannie Mae since April 2009. He previously served as Fannie Mae's Executive Vice President and Chief Operating Officer from November 2005 to April 2009. Mr. Williams also served as Fannie Mae's Executive Vice President for Regulatory Agreements and Restatement from February 2005 to November 2005, as President—Fannie Mae eBusiness from July 2000 to February 2005 and as Senior Vice President—e-commerce from July 1999 to July 2000. Prior to this, Mr. Williams served in various roles in the Single-Family and Corporate Information Systems divisions of Fannie Mae. Mr. Williams joined Fannie Mae in 1991. Mr. Williams has been a Fannie Mae director since April 2009. He is a member of the Executive Committee.

Mr. Williams serves as a member of our Board of Directors pursuant to a FHFA order that specifies that our Chief Executive Officer will serve as a member of the Board. In addition, the Nominating and Corporate Governance Committee concluded that Mr. Williams should continue to serve as a director due to his extensive experience in business, finance, accounting, mortgage lending, real estate and low-income housing, which he gained in the positions described above.

## CORPORATE GOVERNANCE

### Conservatorship and Delegation of Authority to Board of Directors

On September 6, 2008, the Director of FHFA appointed FHFA as our conservator in accordance with the GSE Act. Upon its appointment, the conservator immediately succeeded to all rights, titles, powers and privileges of Fannie Mae, and of any shareholder, officer or director of Fannie Mae with respect to Fannie Mae and its assets, and succeeded to the title to the books, records and assets of any other legal custodian of Fannie Mae. As a result, our Board of Directors no longer had the power or duty to manage, direct or oversee our business and affairs.

On November 24, 2008, FHFA, as conservator, reconstituted our Board of Directors and directed us regarding the function and authorities of the Board of Directors. FHFA has delegated to our Board of Directors and

management the authority to conduct our day-to-day operations, subject to the direction of the conservator. FHFA's delegation of authority to the Board became effective on December 19, 2008 when FHFA appointed nine Board members to serve in addition to the Board Chairman, who was appointed by FHFA on September 16, 2008. Pursuant to FHFA's delegation of authority to the Board, the Board is responsible for carrying out normal Board functions, but is required to obtain the review and approval of FHFA as conservator before taking action in the specified areas described below. The delegation of authority will remain in effect until modified or rescinded by the conservator. The conservatorship has no specified termination date. The directors serve on behalf of the conservator and exercise their authority as directed by and with the approval, where required, of the conservator. Our directors have no duties to any person or entity except to the conservator. Accordingly, our directors are not obligated to consider the interests of the company, the holders of our equity or debt securities or the holders of Fannie Mae MBS unless specifically directed to do so by the conservator.

The conservator instructed that in taking actions the Board should ensure that appropriate regulatory approvals have been received. In addition, the conservator directed the Board to consult with and obtain the approval of the conservator before taking action in the following areas:

(1) actions involving capital stock, dividends, the senior preferred stock purchase agreement, increases in risk limits, material changes in accounting policy and reasonably foreseeable material increases in operational risk;

(2) the creation of any subsidiary or affiliate or any substantial non-ordinary course transactions with any subsidiary or affiliate;

(3) matters that relate to conservatorship;

(4) actions involving hiring, compensation and termination benefits of directors and officers at the executive vice president level and above and other specified executives;

(5) actions involving retention and termination of external auditors and law firms serving as consultants to the Board;

(6) settlements of litigation, claims, regulatory proceedings or tax-related matters in excess of a specified threshold;

(7) any merger with or acquisition of a business for consideration in excess of $50 million; and

(8) any action that in the reasonable business judgment of the Board at the time that the action is taken is likely to cause significant reputational risk.

For more information on the conservatorship, refer to "Business—Conservatorship and Treasury Agreements—Conservatorship."

**Composition of Board of Directors**

In November 2008, FHFA directed that our Board will have a minimum of nine and not more than thirteen directors. There will be a non-executive Chairman of the Board, and our Chief Executive Officer will be the only corporate officer serving as a director. Our initial directors were appointed by the conservator and subsequent vacancies have been and may continue to be filled by the Board, subject to review by the conservator. Each director will serve on the Board until the earlier of (1) resignation or removal by the conservator or (2) the election of a successor director at an annual meeting of shareholders.

Fannie Mae's bylaws provide that each director holds office for the term to which he or she was elected or appointed and until his or her successor is chosen and qualified or until he or she dies, resigns, retires or is removed from office in accordance with the law, whichever occurs first. Under the Charter Act, each director is elected or appointed for a term ending on the date of our next shareholders' meeting. As noted above, however, the conservator appointed the initial directors to our Board, delegated to the Board the authority to appoint directors to subsequent vacancies subject to conservator review, and defined the term of service of directors during conservatorship.

Under the Charter Act, our Board shall at all times have as members at least one person from the homebuilding, mortgage lending and real estate industries, and at least one person from an organization representing consumer or community interests or one person who has demonstrated a career commitment to the provision of housing for low-income households. It is the policy of the Board that a substantial majority of Fannie Mae's directors will be independent, in accordance with the standards adopted by the Board. In addition, the Board, as a group, must be knowledgeable in business, finance, capital markets, accounting, risk management, public policy, mortgage lending, real estate, low-income housing, homebuilding, regulation of financial institutions and any other areas that may be relevant to the safe and sound operation of Fannie Mae.

In addition to knowledge in the areas noted above, the Nominating and Corporate Governance Committee considers the personal attributes and diversity of backgrounds offered by candidates, but does not have a formal policy on the consideration of diversity in identifying Board members. The Nominating and Corporate Governance Committee seeks out Board members who possess the highest personal values, judgment and integrity, diverse ideas and perspectives, and an understanding of the regulatory environment in which Fannie Mae does business. The Committee also considers whether a prospective candidate for the Board has the ability to attend meetings and fully participate in the activities of the Board. Information regarding the particular experience, qualifications, attributes or skills of each of our current directors is provided above under "Directors."

**Board Leadership Structure**

We have had a non-executive Chairman of the Board since 2004. FHFA examination guidance requires separate Chairman of the Board and Chief Executive Officer positions and requires that the Chairman of the Board be an independent director. Our Board is also structured so that all but one of our directors, our Chief Executive Officer, are independent. A non-executive Chairman structure is consistent with the Board's emphasis on independent oversight, as well as our conservator's directives.

Our Board has five standing committees: the Audit Committee, the Compensation Committee, the Nominating and Corporate Governance Committee, the Risk Policy and Capital Committee, and the Strategic Planning Committee. The Board and the standing Board committees function in accordance with their designated duties and with the authorities as set forth in federal statutes, regulations and FHFA examination and policy guidance, Delaware law (for corporate governance purposes) and in Fannie Mae's bylaws and applicable charters of Fannie Mae's Board committees. Such duties or authorities may be modified by the conservator at any time. The Board also has an Executive Committee, as provided in Fannie Mae's bylaws.

The Board oversees risk management primarily through the Risk Policy and Capital Committee. This Committee oversees management's risk-related policies, including reviewing corporate level risk policies and limits, performance against these policies and limits, and the sufficiency of risk management capabilities. For more information on the Board's role in risk oversight, see "MD&A—Risk Management—Enterprise Risk Governance—Board of Directors."

**Corporate Governance Information, Committee Charters and Codes of Conduct**

Our Corporate Governance Guidelines, as well as the charters for standing Board committees, including our Board's Audit Committee, Compensation Committee and Nominating and Corporate Governance Committee, are posted on our Web site, www.fanniemae.com, under "Corporate Governance" in the "About Us" section of our Web site.

We have a Code of Conduct that is applicable to all officers and employees and a Code of Conduct and Conflicts of Interest Policy for Members of the Board of Directors. Our Code of Conduct also serves as the code of ethics for our Chief Executive Officer and senior financial officers required by the Sarbanes-Oxley Act of 2002 and implementing regulations of the SEC. We have posted these codes on our Web site, www.fanniemae.com, under "Corporate Governance" in the "About Us" section of our Web site. We intend to disclose any changes to or waivers from these codes that apply to any of our executive officers or directors by posting this information on our Web site.

**Audit Committee Membership**

Our Board has a standing Audit Committee consisting of Mr. Beresford, who is the Chair, Mr. Forrester and Ms. Gaines, all of whom are independent under the New York Stock Exchange, or NYSE, listing standards, Fannie Mae's Corporate Governance Guidelines and other SEC rules and regulations applicable to audit committees. The Board has determined that Mr. Beresford, Mr. Forrester and Ms. Gaines each have the requisite experience to qualify as an "audit committee financial expert" under the rules and regulations of the SEC and has designated each of them as such.

**Executive Sessions**

Our non-management directors meet regularly in executive sessions without management present. Our Board of Directors reserves time for executive sessions at every regularly scheduled Board meeting. The non-executive Chairman of the Board, Mr. Laskawy, presides over these sessions.

**Communications with Directors**

Interested parties wishing to communicate any concerns or questions about Fannie Mae to the non-executive Chairman of the Board or to our non-management directors individually or as a group may do so by electronic mail addressed to "board@fanniemae.com," or by U.S. mail addressed to Fannie Mae Board of Directors, c/o Office of the Corporate Secretary, Fannie Mae, Mail Stop 1H-2S/05, 3900 Wisconsin Avenue NW, Washington, DC 20016-2892. Communications may be addressed to a specific director or directors, including Mr. Laskawy, the Chairman of the Board, or to groups of directors, such as the independent or non-management directors.

The Office of the Corporate Secretary is responsible for processing all communications to a director or directors. Communications that are deemed by the Office of the Corporate Secretary to be commercial solicitations, ordinary course customer inquiries, incoherent or obscene are not forwarded to directors.

**Director Nominations; Shareholder Proposals**

During the conservatorship, FHFA, as conservator, has all powers of the shareholders and Board of Directors of Fannie Mae. As a result, under the GSE Act, Fannie Mae's common shareholders no longer have the ability to recommend director nominees or elect the directors of Fannie Mae or bring business before any meeting of shareholders pursuant to the procedures in our bylaws. In consultation with the conservator, we currently do not plan to hold an annual meeting of shareholders in 2010. For more information on the conservatorship, refer to "Business—Conservatorship and Treasury Agreements—Conservatorship."

## SIGNATURES

Pursuant to the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

KNOW ALL PERSONS BY THESE PRESENTS, that each person whose signature appears below constitutes and appoints Michael J. Williams and David M. Johnson, and each of them severally, his or her true and lawful attorney-in-fact with power of substitution and resubstitution to sign in his or her name, place and stead, in any and all capacities, to do any and all things and execute any and all instruments that such attorney may deem necessary or advisable under the Securities Exchange Act of 1934 and any rules, regulations and requirements of the U.S. Securities and Exchange Commission in connection with the Annual Report on Form 10-K and any and all amendments hereto, as fully for all intents and purposes as he or she might or could do in person, and hereby ratifies and confirms all said attorneys-in-fact and agents, each acting alone, and his or her substitute or substitutes, may lawfully do or cause to be done by virtue hereof.

Federal National Mortgage Association

/s/  Michael J. Williams

Michael J. Williams
President and Chief Executive Officer

Date: February 26, 2010

Pursuant to the requirements of the Securities Exchange Act of 1934, this report has been signed below by the following persons on behalf of the registrant and in the capacities and on the dates indicated.

| Signature | Title | Date |
|---|---|---|
| /s/  Philip A. Laskawy<br>Philip A. Laskawy | Chairman of the Board of Directors | February 26, 2010 |
| /s/  Michael J. Williams<br>Michael J. Williams | President and Chief Executive Officer and Director | February 26, 2010 |
| /s/  David M. Johnson<br>David M. Johnson | Executive Vice President and Chief Financial Officer | February 26, 2010 |
| /s/  David C. Hisey<br>David C. Hisey | Executive Vice President and Deputy Chief Financial Officer | February 26, 2010 |
| /s/  Dennis R. Beresford<br>Dennis R. Beresford | Director | February 26, 2010 |
| /s/  William Thomas Forrester<br>William Thomas Forrester | Director | February 26, 2010 |
| /s/  Brenda J. Gaines<br>Brenda J. Gaines | Director | February 26, 2010 |
| /s/  Charlynn Goins<br>Charlynn Goins | Director | February 26, 2010 |

| Signature | Title | Date |
|---|---|---|
| /s/  Frederick B. Harvey III | Director | February 26, 2010 |
| Frederick B. Harvey III | | |
| /s/  Egbert L. J. Perry | Director | February 26, 2010 |
| Egbert L. J. Perry | | |
| /s/  Jonathan Plutzik | Director | February 26, 2010 |
| Jonathan Plutzik | | |
| /s/  David H. Sidwell | Director | February 26, 2010 |
| David H. Sidwell | | |

248