# *Exhibit A*

# *(Part 3 of 3)*

Case 1:13-cv-01053-RCL   Document 32-3   Filed 02/12/14   Page 1 of 17

# EXHIBIT 3
# No. 13-cv-1053-RCL

STEPHEN E. HART – stephen.hart@fhfa.gov
FEDERAL HOUSING FINANCE AGENCY
1700 G Street, NW
Washington, D.C. 20552
(202) 414-3800
Fax: (202) 414-6504

HOWARD N. CAYNE – howard.cayne@aporter.com
ASIM VARMA – asim.varma@aporter.com
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, D.C. 20004
(202) 942-5000
Fax: (202) 942-5999

*Attorneys for Defendants*
FEDERAL HOUSING FINANCE AGENCY and EDWARD DeMARCO

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, *ex rel*. KAMALA D. HARRIS., ATTORNEY GENERAL<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL HOUSING FINANCE AGENCY; EDWARD DeMARCO, in his capacity as Acting Director of FEDERAL HOUSING FINANCE AGENCY; FEDERAL HOME LOAN MORTGAGE CORPORATION; and FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>Defendants.<br><br>-- and related cases -- | Case No. 4:10-CV-03084-CW<br><br>Related Case Nos. :<br><br>4:10-cv-03270-CW<br>4:10-cv-03317-CW<br>4:10-cv-04482-CW<br><br>**DEFENDANTS FHFA'S AND DeMARCO'S CONSENT TO PLAINTIFFS' REQUEST FOR A CASE MANAGEMENT CONFERENCE**<br><br>October 28, 2011 |

i

DEFENDANTS FHFA'S AND DeMARCO'S CONSENT TO
PLAINTIFFS' REQUEST FOR A CASE MANAGEMENT CONFERENCE
(Nos. 4:10-cv-03084-CW / 4:10-cv-03270-CW / 4:10-cv-03317-CW / 4:10-cv-04482-CW)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

FACTUAL BACKGROUND ..........................................................................................3

ARGUMENT ................................................................................................................5

CONCLUSION ...........................................................................................................11

ii

# TABLE OF AUTHORITIES

**CASES**                                                           **Page(s)**

*Arrington v. Daniels,*
    516 F.3d 1106 (9th Cir. 2008) ................................................................................. 6

*Asarco, Inc. v. U.S. Environmental Protection Agency,*
    616 F.2d 1153 (9th Cir. 1980) ................................................................. 1, 6, 7, 8

*Bunker Hill Co. v. EPA,*
    572 F.2d 1286 (9th Cir. 1977) ............................................................................... 10

*Center for Biological Diversity v. Fed. Highway Admin.,*
    No. Civ. 01-1876-JM(POR), 2002 WL 32307826 (S.D. Cal. Nov. 19, 2002) ......................... 7

*Environmental Protection Information Center v. U.S. Forest Serv.,*
    451 F.3d 1005 (9th Cir. 2006) ................................................................................. 1

*Inland Empire Pub. Lands Council v. U.S. Forest Serv.,*
    88 F.3d 754 (9th Cir. 1992) ....................................................................... 1-2, 8, 10

*Kaiser Foundation Hospitals v. Leavitt,*
    No. C 05-3143, 2006 WL 2982331 (N.D. Cal. Oct. 17, 2006) ............................................... 6

*Lands Council v. McNair,*
    629 F.3d 1070 (9th Cir. 2010) ............................................................................6, 7

*Leon County v. Fed. Housing Fin. Agency,*
    No. 4:10CV436–RH/WCS, 2011 WL 4620866 (N.D. Fla. Sept. 30, 2011) ..................... 2, 8-9

*Love v. Thomas,*
    858 F.2d 1347 (9th Cir. 1988) ............................................................................... 10

*Midwater Trawlers Co-operative v. Dep't of Commerce,*
    393 F.3d 994 (9th Cir. 2004) ................................................................................... 9

*Miller v. Pancucci,*
    141 F.R.D. 292 (C.D. Cal. 1992) ............................................................................. 6

*Oppenheimer Fund, Inc. v. Sanders,*
    437 U.S. 340 (1978) ................................................................................................ 6

*Public Power Council v. Johnson,*
    674 F.2d 791 (9th Cir. 1982) ................................................................................... 9

*Soto v. City of Concord,*
    162 F.R.D. 603 (N.D. Cal. 1995) ............................................................................. 6

*Southwest Center for Biological Diversity v. U.S. Forest Serv.,*
    100 F.3d 1443 (9th Cir. 1996) ......................................................................... 6, 10

iii

## DEFENDANTS FHFA'S AND DeMARCO'S CONSENT
## TO PLAINTIFFS' REQUEST FOR A CASE MANAGEMENT CONFERENCE

Defendants the Federal Housing Finance Agency ("FHFA") and Edward DeMarco (together, "Defendants") respectfully consent to Plaintiffs' request for a further case management conference. Defendants believe that a conference would be useful to the parties and the Court, because the parties differ sharply on the issue of whether Defendants are entitled to responses to their outstanding discovery requests. Defendants are entitled to the information they have requested, because that information is highly relevant to the issue before the Court — whether FHFA acted arbitrarily and capriciously, as those Plaintiffs whose claims under the Administrative Procedure Act remain pending (the "APA Plaintiffs") contend.[1] Defendants respectfully request that the parties and the Court convene a case management conference to set a schedule by which the APA Plaintiffs will respond to Defendants' outstanding discovery, and by which subsequent proceedings in these actions will be governed.

As the Ninth Circuit explained in *Inland Empire Public Lands Council v. U.S. Forest Service*, 88 F.3d 754 (9th Cir. 1992),"[i]t will often be impossible, especially when highly technical matters are involved, for the court to determine whether the agency took into consideration all relevant factors unless it looks outside the record to determine what matters the agency should have considered but did not.'" *Id.* at 760 n.5 (quoting *Asarco, Inc. v. U.S. Environmental Protection Agency*, 616 F.2d 1153, 1160 (9th Cir. 1980))[2]. Accordingly, courts "will consider" evidence outside the administrative record to determine whether the relevant agency "overlooked factors relevant to a proper . . . analysis." *Inland Empire*, 88 F.3d at 760

---

[1] Plaintiff Sierra Club's APA claims having been dismissed, the APA Plaintiffs are California, Sonoma County, Placer County, and Palm Desert.

[2] *Inland Empire* involved allegations that the agency had violated the National Forest Management Act ("NFMA"). Agency decisions that allegedly violate the NFMA are reviewed under the APA's "arbitrary and capricious" standard. *See, e.g.*, *Environmental Protection Information Center v. U.S. Forest Serv.*, 451 F.3d 1005, 1008-09 (9th Cir. 2006).

1

DEFENDANTS FHFA'S AND DeMARCO'S CONSENT TO
PLAINTIFFS' REQUEST FOR A CASE MANAGEMENT CONFERENCE
(Nos. 4:10-cv-03084-CW / 4:10-cv-03270-CW / 4:10-cv-03317-CW / 4:10-cv-04482-CW)

1    n.5.  In this case, discovery is necessary to develop just such evidence.

2    Defendants' outstanding Requests for Production, Interrogatories, Requests for

3    Admission, and Rule 30(b)(6) deposition notices seek information relating to one of the APA

4    Plaintiffs' central contentions — that "contrary to FHFA's assertion in its July 6, 2010

5    Statement, the risk to Fannie Mae and Freddie Mac" associated with first-lien PACE programs

6    "is miniscule." California's First Amended Complaint ("Cal. Am. Compl.") ¶ 41.  The APA

7    Plaintiffs' conclusion as to this complex and technical issue of finance is not self-evident, and

8    indeed another district court described one of their major premises as "a proposition that defies

9    common sense."  *Leon County v. Fed. Housing Fin. Agency*, No. 4:10CV436–RH/WCS, __

10   F.Supp.2d __, 2011 WL 4620866, at *2 (N.D. Fla. Sept. 30, 2011).

11   The APA Plaintiffs put the materiality of the financial risk associated with PACE into

12   issue, and the APA Plaintiffs concede that they have potentially relevant information in their

13   possession, custody, and control.  Plaintiff California specifically alleges that "lessons learned

14   from operating PACE programs (such as Sonoma County's . . . Energy Independence Program)"

15   suggest that "FHFA's statements cannot reasonably be supported."  *Id*. at ¶ 40.  FHFA expects

16   discovery to show that the information and "lessons learned" to which Plaintiffs refer are

17   irrelevant to the materiality of the financial risks associated with PACE, and therefore will lend

18   no support to Plaintiffs' claim that FHFA acted arbitrarily or capriciously by overlooking

19   relevant factors.  Defendants, in all fairness, should have opportunity to take discovery

20   concerning the data, assumptions, and analytical framework that purportedly support the APA

21   Plaintiffs' financial analysis, so that the degree of relevance the APA Plaintiffs' conclusions

22   carry, if any, can be established.

23   Defendants made a good faith effort to resolve this dispute without the need for the

24   Court's involvement.  Defendants reduced the number of outstanding discovery requests by more

25

---

2

than half, then met and conferred with Plaintiffs.[3]  The APA Plaintiffs have taken the position

that "discovery against Plaintiffs is not warranted," and  that "none of th[e] discovery

[Defendants have propounded] is relevant."  Pls.' Joint. Req. for Further Case Mgmt. Conf. (Dkt.

No. 138).  Accordingly, Defendants agree that a case management conference would be useful to

determine the course of further proceedings.

## FACTUAL BACKGROUND

On July 6, 2010, FHFA released a statement called "FHFA Statement on Certain Energy

Retrofit Loan Programs" (hereinafter, "FHFA July 6, 2010 Statement"), in which the agency

announced its determination that "certain energy retrofit lending programs present significant

safety and soundness concerns" and "present significant risk to lenders and secondary market

entities."  Thereafter, Plaintiffs brought suit, claiming *inter alia* that the July 6, 2010 Statement

was arbitrary, capricious, and an abuse of discretion within the meaning of the Administrative

Procedure Act ("APA").  *See* Cal. Am. Compl., Third Cause of Action.  In support of their claim,

Plaintiffs specifically point to California's PACE programs as evidence of "successful" operating

programs.  *See, e.g.*, *id*. ¶ 31 ("The summary factual assertions contained in the FHFA's July 6,

2010 letter are not supported by analysis or citation to authority or evidence.  On information and

belief, California alleges that the FHFA made its decision without considering data related to

successful, operating programs such as Sonoma County's Independence Program, and thus

without considering whether the hypothetical risks it had identified were borne out in practice.").

Plaintiffs also allege that FHFA's July 6, 2010 Statement "cannot reasonably be supported"

because "PACE in California presents no significant risk to lenders or secondary markets."  *Id.* at

¶ 40.

For example, the State of California's First Amended Complaint alleges that "PACE

---

[3]   Copies of the requests, as narrowed, are attached as Exhibit E.

1   improvements increase property value and lower homeowners' energy bills from the first day

2   they are installed.  PACE thus reduces the risk of default by making it more likely that that [sic]

3   the homeowner will stay current with the mortgage." *Id.*  The State of California also provides a

4   detailed "mortgage foreclosure scenario" purporting to illustrate that the risks to Freddie Mac

5   and Fannie Mae that FHFA articulated in the July 6, 2010 Statement are "miniscule." *Id.* at ¶ 41.

6   In sum, Plaintiffs based their claim that FHFA's July 6, 2010 Statement is arbitrary and

7   capricious on their allegation that they have information purporting to show that PACE programs

8   in California do not present significant risks to first-lien mortgage holders. [4]

9        On September 9, 2011, Defendants propounded requests for documents, interrogatories,

10  and requests for admission, and on October 12, 2011, provided Plaintiffs with notices of

11  deposition.  Despite the fact that Plaintiffs themselves had alleged that the purported success and

12  operation of their PACE programs supported their claim that FHFA had acted arbitrarily and

13  capriciously, Plaintiffs objected wholesale to Defendants' written discovery requests and

14  deposition notices.  *See* Letter from D. Alderson to A. Varma, dated Oct. 12, 2011 (copy

15  attached as Ex. A).  Defendants offered to narrow the scope of the discovery requests.  *See* Letter

16  from A. Varma to D. Alderson (Oct. 14, 2011) (copy attached as Ex. B).  Plaintiffs, however,

17  responded categorically that the "discovery served by FHFA is not allowed."  Letter from D.

18  Alderson to A. Varma (Oct. 19, 2011) (copy attached as Ex. C).

---

19  [4]    The other APA Plaintiffs offer allegations similar to California's.  *See*, *e.g.*, Placer Compl.
20  at ¶ 32 ("the imposition of the mPOWER senior lien contractual assessment will not have a
    significant diminishment of any pre-existing mortgage"); Palm Desert Compl. at ¶ 54(e) ("a
21  PACE improvement underwritten in accordance with Palm Desert's guidelines . . . adds an equal
    amount of value to the property as the principal amount of the PACE assessment"); Sonoma
22  County Compl. at ¶ 34 ("It is expected that the improvements result in utility savings equal to or
    exceeding the annual amount of the assessment.".  Similarly, in briefing its motion for
23  preliminary injunction, Sonoma County also argued that "Had the agency examined the data
    available from Sonoma County's program (which the County would have submitted if the
24  agency had given notice and an opportunity to comment), it would have been apparent that the
    agency's assertions of risk are not borne out in well-designed programs such as the County's."
25  Sonoma Motion for Prelim. Inj. at 20.

On October 21, 2011, Defendants responded, explaining that discovery was appropriate "in the unusual circumstances presented here, where FHFA did not utilize APA notice-and-comment procedures or compile a formal administrative record in real time because the agency believed (and still believes) that it was not engaged in APA rulemaking, yet plaintiffs' claim that the agency acted arbitrarily and capriciously in issuing a substantive rule will apparently be heard by the Court," and serving the narrowed requests.[5]  Letter from A. Varma to D. Alderson (Oct. 21, 2011) (copy attached as Ex. D).  Defendants have withdrawn their discovery as to Sierra Club, whose APA claims have been dismissed.

On October 26, 2011, Plaintiffs filed with the Court a request for the case management conference, in which they asserted that "the fact and expert discovery deadlines and procedures agreed to by the parties and ordered by the Court are no longer applicable," that "discovery against Plaintiffs is not warranted," and  that "none of th[e] discovery [Defendants have propounded] is relevant."  Pls.' Joint. Req. for Further Case Mgmt. Conf. (Dkt. No. 138).

Because the APA Plaintiffs placed their refusal to respond to Defendant's discovery requests before the Court in the Request for a Case Management Conference and set forth their position on the issue, Defendants explain below their opposing position that discovery is necessary and proper.

**ARGUMENT**

Under Rule 26(b) of the Federal Rules of Civil Procedure, a party may obtain discovery regarding any "nonprivileged matter that is relevant to any party's claim or defense." Information is relevant for purposes of discovery if it "appears reasonably calculated to lead to

---

[5]    As to Plaintiff California, for example, Defendants narrowed the Requests for Production from 30 to 12, the number of Interrogatories from 13 to nine, the number of Rule 30(b)(6) topics from 16 to ten, and the number of Requests for Admissions from 30 to 12, retaining only those requests seeking information relating to the materiality of the financial risks that first-lien PACE programs pose to investors in mortgage assets.  *See* Ex. E.

5

DEFENDANTS FHFA'S AND DEMARCO'S CONSENT TO
PLAINTIFFS' REQUEST FOR A CASE MANAGEMENT CONFERENCE
(Nos. 4:10-cv-03084-CW / 4:10-cv-03270-CW / 4:10-cv-03317-CW / 4:10-cv-04482-CW)

1   the discovery of admissible evidence." *Id.* A relevant matter is "any matter that bears on, or that

2   reasonably could lead to other matters that could bear on, any issue that is or may be in the case."

3   *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "[T]he question of relevancy

4   should be construed 'liberally and with common sense' and discovery should be allowed unless

5   the information sought has no conceivable bearing on the case." *Soto v. City of Concord*, 162

6   F.R.D. 603, 610 (N.D. Cal. 1995) (quoting *Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal.

7   1992)). Hence, "[t]he scope of discovery under the Federal Rules is extremely broad." *Soto*, 162

8   F.R.D. at 610.

9       That said, discovery admittedly is not the norm in APA cases, which are often decided on

10  an "administrative record." Nevertheless, in the unusual circumstances presented here, the

11  narrowly tailored discovery Defendants seek — information about the risks the PACE programs

12  in California pose to mortgage lenders — is appropriate.

13      The Ninth Circuit recognizes that discovery may be permitted and extra-record evidence

14  allowed in APA cases if, *inter alia*, either (1) it is "necessary to determine whether the agency

15  has considered all relevant factors and has explained its decision;" or (2) "when supplementing

16  the record is necessary to explain technical terms or complex subject matters." *Southwest Center*

17  *for Biological Diversity v. United States Forest Service*, 100 F.3d 1443, 1450 (9th Cir. 1996)

18  (emphasis added); *see also Kaiser Foundation Hospitals v. Leavitt*, No. C 05-3143, 2006 WL

19  2982331, at *9 (N.D. Cal. Oct. 17, 2006) (Wilken, J.) (observing that the Ninth Circuit permits

20  judicial review of "additional material to explain the basis of the agency's actions and the factors

21  the agency considered").

22      Substantively, under Ninth Circuit law, "[a]gency action is valid" and an APA arbitrary-

23  and-capricious claim fails "if the agency 'considered the relevant factors and articulated a

24  rational connection between the facts found and the choices made.'" *Lands Council v. McNair*,

25  629 F.3d 1070, 1074 (9th Cir. 2010) (quoting *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th

6

1    Cir. 2008)).  By contrast, an agency's decision is arbitrary and capricious "only if the agency

2    relied on factors Congress did not intend it to consider, entirely failed to consider an important

3    aspect of the problem, or offered an explanation that runs counter to the evidence before the

4    agency or is so implausible that it could not be ascribed to a difference in view or the product of

5    agency expertise." *Id.* (internal citation omitted)).  Hence, in the Ninth Circuit, it is appropriate

6    in APA cases for courts to consider evidence "outside the administrative record . . . for the

7    limited purposes of ascertaining whether the agency considered all the relevant factors." *Asarco*,

8    616 F.2d at 1160.[6]  Discovery is especially appropriate for that purpose here, where FHFA did

9    not compile a formal administrative record in real time because it did not believe it was required

10   to utilize APA procedures.

11        The APA Plaintiffs appear to base their "arbitrary and capricious" claim on either or both

12   of two prongs of the *Lands Council* test.  Their allegations may be intended to support an

13   argument that FHFA failed to consider an important aspect of the problem — the purported

14   "lessons learned from operating PACE programs (such as Sonoma County's . . . Energy

15   Independence Program)."  Cal. Am. Compl. ¶¶ 40-41.  In that regard, California specifically

16   alleges that "FHFA made its decision without considering data related to successful, operating

17   programs such as Sonoma County's Independence Program, and thus without considering

18   whether the hypothetical risks it had identified were borne out in practice." *Id*. at ¶ 31.  The APA

19   Plaintiffs' allegations may also be intended to support an argument that FHFA's explanation for

20   its actions — that first-lien PACE programs present significant safety and soundness concerns

21   and significant risk to lenders and secondary market entities — runs counter to the evidence

22   before the agency or is implausible.  In that regard, California specifically alleges that "FHFA's

23   _____

     [6]    Moreover, "Ninth Circuit courts have implied without holding that the test for whether
24   discovery should be allowed is identical to the test of whether supplementation of the
     administrative record should be allowed." *Center for Biological Diversity v. Fed. Highway
25   Admin.*, No. Civ. 01-1876-JM(POR), 2002 WL 32307826, at *2 (S.D. Cal. Nov. 19, 2002).

1    statements cannot reasonably be supported." *Id.* at ¶ 41.[7]

2         In either event, a threshold issue is whether (or under what circumstances) the financial

3    analysis underlying the APA Plaintiffs' "lessons learned" conclusion — that "the risk to Fannie

4    Mae and Freddie Mac" associated with first-lien PACE programs "is miniscule" — is sound.

5    *See id*. If the APA Plaintiffs' financial analysis is sound (which FHFA questions), then their

6    conclusion that PACE poses only "miniscule" risk could be potentially relevant; accordingly, the

7    Court would have to determine whether FHFA properly considered their analysis and

8    conclusion. But if the APA Plaintiffs' financial analysis is flawed, then their "miniscule risk"

9    conclusion is invalid, the "lessons [purportedly] learned" are irrelevant, and FHFA could not

10   have acted arbitrarily or capriciously regardless of how, if at all, FHFA addressed their analysis

11   and conclusions.

12        It would make no sense to attempt to evaluate the relevance of information the APA

13   Plaintiffs contend FHFA did not consider against a formal administrative record that FHFA did

14   not compile in real time, and the Ninth Circuit has made it clear that the parties and the court

15   need not undertake to do so. The Ninth Circuit's admonition in *Inland Empire* — that,"[i]t will

16   often be impossible, especially when highly technical matters are involved, for the court to

17   determine whether the agency took into consideration all relevant factors unless it looks outside

18   the record to determine what matters the agency should have considered but did not," and that

19   courts "will consider" evidence outside the administrative record to determine whether the

20   relevant agency "overlooked factors relevant to a proper . . . analysis" — applies here and fully

21   warrants the discovery FHFA seeks. *See Inland Empire*, 88 F.3d at 760 n.5 (quoting *Asarco*, 616

22   F.2d at 1160). Such discovery is particularly appropriate here because the APA Plaintiffs'

23   "miniscule risk" conclusion is facially implausible. Indeed, the Northern District of Florida

24   _____

     [7]    As noted *supra*, the other APA Plaintiffs all offer similar allegations and arguments. *See*
25   *supra* fn. 2.

1   recently suggested in another PACE case that its major premise is incorrect.  That court noted

2   that "[u]nless a PACE improvement always increases the [property's value] enough to cover the

3   corresponding PACE lien—*a proposition that defies common sense*—the mortgagee's recovery

4   may be less than it would have been without the PACE improvement and lien."  *Leon County*,

5   2011 WL 4620866, at *2 (emphasis added).

6          As noted *supra*, the posture of this case is unusual — most APA cases may not involve

7   discovery beyond the administrative record, and those that do typically involve plaintiffs seeking

8   to take discovery of the agency, not *vice versa*.  While we have not identified any decision

9   addressing an agency's motion to compel in such circumstances, decisions in related contexts

10  allowing agencies to supplement the administrative record are instructive in that they

11  demonstrate that agencies need not be held to a fixed administrative record when additional

12  material would allow a Court to better determine whether the agency properly addressed all

13  important aspects of the problem (as we believe the evidence will show).

14         For example, in *Midwater Trawlers Co-operative v. Department of Commerce*, 393 F.3d

15  994, 1007-08 (9th Cir. 2004), the Ninth Circuit upheld the district court's decision to allow the

16  agency to supplement the record with materials that would more completely set forth the

17  scientific basis of an agency's action and aid the court in determining whether the agency had

18  considered all relevant factors.  The Ninth Circuit explained that "supplementation is permitted if

19  necessary to determine whether the agency has considered all relevant factors and has explained

20  its decision" and concluded that the "district court did not abuse its discretion by permitting the

21  Fisheries Service to supplement the record."  *Id.* at 1008.[8]  Here, likewise, FHFA should be

22  permitted to explain fully why its analysis of the financial risk associated with first-lien PACE

---

[8]     *See also Public Power Council v. Johnson*, 674 F.2d 791, 793-94 (9th Cir. 1982) (where the record does not permit "effective judicial review," the court may "obtain from the agency, either through affidavits or testimony, such additional explanations of the reasons for the agency decision as may prove necessary").

1  programs is correct and to establish whether the APA Plaintiffs' corresponding analysis is flawed

2  and irrelevant.  Hence, the APA Plaintiffs should be compelled to answer Defendants' discovery

3  requests concerning financial risks, as those answers will supply and contextualize the data,

4  assumptions, and analytical framework underlying Plaintiffs' analysis and conclusions — which

5  is the only way to establish their relevance or irrelevance.

6          Furthermore, discovery is necessary because this case involves "technical terms or

7  complex subject matter."  *Southwest Center*, 100 F.3d at 1450 (third exception).  For example, in

8  *Inland Empire*, the Ninth Circuit allowed the district court to supplement the record with a

9  declaration submitted by the plaintiffs.  "Although the general rule prevents consideration of

10  evidence outside the administrative record, 'the court may consider, particularly in highly

11  technical areas, substantive evidence going to the merits of the agency's action where such

12  evidence is necessary as background to determine the sufficiency of the agency's

13  consideration.'"  *Inland Empire*, 88 F.3d at 760 n.5 (quoting *Love v. Thomas*, 858 F.2d 1347,

14  1356 (9th Cir. 1988), *cert. denied sub nom. AFL-CIO v. Love*, 490 U.S. 1035 (1989)).[9]

15          Here, while the APA Plaintiffs' "mortgage foreclosure scenario," *see* Cal. Am. Compl.

16  ¶ 41, presents the risk analysis as deceptively simple and straightforward, the economics of

17  allowing PACE programs that have priority over first-lien mortgages in the current fragile

18  housing market are more complex and require the consideration of many more competing factors

19  than the APA Plaintiffs suggest.  FHFA should be permitted to take discovery to establish that

20  the APA Plaintiffs' simplistic hypothetical does not address the full complexities of the technical

21  subject it incorrectly purports to address.

22

23  _____

[9]  *See also Bunker Hill Co. v. EPA*, 572 F.2d 1286 (9th Cir. 1977) ("the courts are not
24  straightjacketed to the original record in trying to make sense of complex technical testimony,
    which is often presented in administrative proceedings without ultimate review by nonexpert
25  judges in mind.").

**CONCLUSION**

1       FHFA did not utilize APA notice-and-comment procedures or compile a formal

2       administrative record in real time because the agency believed that it was not engaged in APA

3       rulemaking, yet the APA Plaintiffs' claim that the agency acted arbitrarily and capriciously in

4       issuing a substantive rule is before the Court.  In these unusual circumstances, discovery is

5       necessary to establish whether the analysis and conclusions the APA Plaintiffs claim FHFA

6       failed to consider are "relevant" or "important."

7       The APA Plaintiffs' own allegations as to why FHFA's actions relating to PACE was

8       arbitrary and capricious are what necessitate the discovery that FHFA seeks.  The APA Plaintiffs

9       base their claim on FHFA's alleged failure to consider that PACE programs in California present

10       "no significant risk" or only "miniscule" risk to Fannie Mae and Freddie Mac.  Cal. Am. Compl.

11       ¶¶ 40, 41.  But the APA Plaintiffs' analysis of that risk "defies common sense," as another

12       district court recently explained.  Hence, unless the APA Plaintiffs' analysis is more firmly

13       grounded than their bare conclusions suggest, it would have been entirely reasonable, not

14       arbitrary and capricious, for FHFA to ignore it — flawed analysis and unfounded conclusions

15       simply do not constitute a "relevant factor" or "an important aspect of the problem" that the APA

16       requires FHFA to consider.

17       The Ninth Circuit recognizes that review is not limited to the "administrative record"

18       where a plaintiff alleges (as the APA Plaintiffs allege here) that an agency failed to consider all

19       relevant factors and the subject involves complexity and technical expertise.  By refusing to

20       respond to Defendants' discovery requests, the APA Plaintiffs would hamstring Defendants'

21       ability to show that FHFA did consider all relevant factors in this complex and technical area of

22       finance, and thereby to demonstrate that FHFA's actions concerning PACE were not arbitrary

23       and capricious.

24       For the above-stated reasons, Defendants respectfully submit that the parties and the

11

Court convene a case management conference to set a schedule by which the APA Plaintiffs will

respond to Defendants' outstanding discovery, and by which subsequent proceedings in these

actions will be governed.

Stephen E. Hart
FEDERAL HOUSING FINANCE AGENCY

Howard N. Cayne
Asim Varma
ARNOLD & PORTER LLP


By: _____/s/_____
Asim Varma

*Attorneys for Defendants Federal Housing
Finance Agency and Edward DeMarco*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2011, I electronically filed the **DEFENDANTS FHFA'S AND DeMARCO'S CONSENT TO PLAINTIFFS' REQUEST FOR A CASE MANAGEMENT CONFERENCE** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses of all registered parties.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: October 28, 2011

By: **/S/**
_____

**ASIM VARMA**
Attorney for Defendants Federal Housing Finance
Agency and Edward DeMarco

# EXHIBIT 4
# No. 13-cv-1053-RCL

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
FAIRHOLME FUNDS, INC., *et al.,*                    )
                                                    )
      *Plaintiffs,*                                  )
                                                    )
    v.                                            )     No. 13-cv-1053-RCL
                                                    )
THE FEDERAL HOUSING FINANCE                         )
    AGENCY, *et al.,*                             )
                                                    )
      *Defendants.*                                )
_____               )

## DECLARATION OF VINCENT J. COLATRIANO IN SUPPORT OF PLAINTIFFS' MOTION FOR SUPPLEMENTATION OF THE ADMINISTRATIVE RECORDS, FOR LIMITED DISCOVERY, FOR SUSPENSION OF BRIEFING ON DEFENDANTS' DISPOSITIVE MOTIONS, AND FOR A STATUS CONFERENCE

Pursuant to 28 U.S.C. § 1746, I, Vincent J. Colatriano, declare and state as follows:

1.    I am an attorney for the Plaintiffs in this action and make this declaration supporting Plaintiffs' motion, filed this date, for (1) supplementation of the administrative record submissions produced by both sets of Defendants; (2) limited discovery into the completeness of the administrative records produced by Defendants; (3) discovery, pursuant to Fed. R. Civ. P. 56(d), necessary to allow Plaintiffs to present facts essential to their opposition to the FHFA Defendants' motion for summary judgment on Plaintiffs' claim for breach of fiduciary duty; and (4) suspension of briefing on Defendants' dispositive motions until such supplementation of the records and limited discovery is completed.

2.    Plaintiffs Fairholme Funds, Inc., *et al*., are owners of non-cumulative preferred stock issued by the Federal National Mortgage Association ("Fannie") and the Federal Home Loan Mortgage Corporation ("Freddie") (collectively, the "Companies" or the "Enterprises").

1

The Defendants are the Department of Treasury ("Treasury"), the Federal Housing Finance Administration ("FHFA") in its capacity as conservator for Fannie and Freddie, and the FHFA's Director.

3.      The above-captioned matter was commenced on July 10, 2013, when Plaintiffs filed their complaint in this action.

4.      The complaint challenges Defendants' actions in instituting and giving effect to an amendment (the "Third Amendment"), to preferred stock purchase agreements ("PSPAs") between Treasury and the FHFA, that effectively seeks to transfer to Treasury the entire positive net worth of Fannie and Freddie and thus effectively confiscate the value of Plaintiffs' shares of preferred stock.  Plaintiffs allege that this so-called "Net Worth Sweep," pursuant to which the FHFA, as conservator for Fannie and Freddie, has already transferred tens of billions of dollars from the Enterprises into Treasury, is beyond the statutory authority of both the FHFA and Treasury, and is otherwise arbitrary and capricious, and must therefore be set aside as unlawful under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 *et seq.*  Plaintiffs further allege that by entering into the Net Worth Sweep, the FHFA and its Director breached their fiduciary duty to Plaintiffs and other preferred shareholders of Fannie and Freddie, and also breached Plaintiffs' contract rights and the implied covenant of good faith and fair dealing.

5.      On January 17, both the Treasury Defendants and the FHFA Defendants filed dispositive motions seeking dismissal of all of the claims raised by Fairholme (as well as the claims challenging the Net Worth Sweep raised by the other plaintiffs in these related actions). Both sets of Defendants, request, in the alternative, the entry of summary judgment with respect to the APA claims.  Plaintiffs' opposition to that motion is currently due on February 19, 2014.

6. Although the FHFA Defendants style their request for dismissal of Plaintiffs' fiduciary duty claim as a motion for dismissal for failure to state a claim, they rely on disputed material facts and matters outside the pleadings to support their request. In Plaintiffs' view, the FHFA Defendants' reliance on matters outside the pleadings means that their motion with respect to the breach of fiduciary duty claims must, under Fed. R. Civ. P. 12(d), be treated as one for summary judgment. Plaintiffs need discovery in order to develop facts that are essential to their opposition to the FHFA's motion for summary judgment with respect to this claim.

7. As relating to their breach of fiduciary claim, Plaintiffs have alleged, among other things, that (1) FHFA used its control over Fannie and Freddie to agree to and implement the Net Worth Sweep (Complaint ¶ 139); (2) as a federal agency, FHFA was interested in, and benefited from, the Net Worth Sweep, which essentially expropriated for the Government Fannie's and Freddie's entire net worth (*id.* ¶ 140); (3) FHFA had a conflict of interest with respect to the Net Worth Sweep transaction, which amounted to self-dealing (*id.* ¶ 141); (4) Defendants' purpose in implementing the Net Worth Sweep was to ensure "that every dollar of earnings that Fannie Mae and Freddie Mac generate will be used to benefit taxpayers" (*id.* ¶ 71); (5) the Net Worth Sweep constituted waste, gross and palpable overreaching, and an abuse of discretion (*id.* ¶ 143); and (6) the Net Worth Sweep did not further any valid business purpose or legitimate business objective of Fannie or Freddie, did not reflect FHFA's good faith business judgment regarding Fannie's or Freddie's best interests, and was grossly unfair to the Enterprises and their preferred shareholders (*id.* ¶ 144). Plaintiffs have therefore alleged that the Net Worth Sweep, as agreed to and implemented by FHFA, did not serve or advance any legitimate interest of Fannie, Freddie, or their private shareholders, and was designed instead to serve the interests of the Federal Government at the expense of the Enterprises and their shareholders.

8.     The FHFA Defendants have responded to these well-pled allegations by disputing them on the merits.  They argue that Plaintiffs' breach of fiduciary duty count fails to state a claim because the decision to institute the Net Worth Sweep was "consistent with, and undertaken to promote, the public missions in the [Fannie and Freddie] charters and HERA." FHFA Br. 56.  Integral to this argument are the FHFA Defendants' factual assertions that the purpose of the Net Worth Sweep was to end "the circular practice of the Enterprises drawing funds *from* Treasury merely to make dividend payments *to* Treasury," because that practice "threatened to erode the amount of the Treasury commitment available to" Fannie and Freddie under the PSPAs.  *Id.* (emphasis in original).  They further assert that this "potential erosion was the source of growing concern to the housing finance markets because it exposed the Enterprises to greater risk and increased the potential for instability in housing finance."  *Id.  See also id.* at 23-25.  Thus, in responding to Plaintiffs' breach of fiduciary duty claims, the FHFA Defendants have relied upon factual contentions regarding the purposes underlying the Net Worth Sweep that are not only outside the well-pled allegations of Plaintiffs' complaint, but are in direct conflict with those allegations.

9.     Plaintiffs cannot fully respond to Defendants' factual allegations relating to the Third Amendment without the opportunity to conduct discovery.  In Plaintiffs' view, discovery is likely to disclose information highly relevant to the disputed question of why the FHFA entered into the Third Amendment, and whether it acted independently, or at the direction of Treasury, in agreeing to the Net Worth Sweep.  Discovery is also likely to disclose information relevant to the FHFA Defendants' assertions that the Net Worth Sweep was necessary to address concerns regarding the "potential erosion," FHFA Br. 56, in Treasury's financial commitment under the PSPAs allegedly threatened by Treasury's circular practice of loaning funds to Fannie

and Freddie in order to finance the dividends that were then to be paid back to Treasury.  Such

information is likely to include communications and documents of FHFA, Treasury, and other

Government agencies concerning the agencies' analyses of the financial and other considerations

implicated by the decision to enter into the Net Worth Sweep, including internal projections of

Fannie's and Freddie' expected financial performance and profitability, as well as the FHFA's

consideration of alternatives to the Net Worth Sweep that could address the supposed concerns

regarding the erosion of Treasury's commitment.  Also directly relevant to these disputed factual

issues is information relating to any other purposes that Defendants may have had in instituting

the Net Worth Sweep.

   10. Plaintiffs believe that it is virtually certain that the FHFA Defendants are in

possession of discoverable evidence and information – including but not limited to e-mails and

other communications and documents – regarding the above matters, all of which are directly

relevant to the issue of whether the FHFA violated its fiduciary duties.  Plaintiffs likewise

believe that it is a virtual certainty that Treasury, FHFA, and perhaps other Government agencies

have conducted financial analyses about the current and projected financial condition and

earnings of Fannie and Freddie.  It is also a near-certainty, in Plaintiffs' view, that the FHFA

and/or other agencies have formulated nonpublic long-term strategic plans for Fannie and

Freddie, and it is highly likely as well that there exist strategy documents and communications

between and among Treasury, FHFA, and other Government agencies and officials that will

disclose what role Treasury played in FHFA's decision to enter into the Third Amendment.

Plaintiffs believe that through targeted written discovery, document requests, and depositions of

knowledgeable witnesses (including depositions noticed pursuant to Fed. R. Civ. P. 30(b)(6)),

they will be able to develop evidence bearing upon these critical matters.

11.    Because discovery in this case has not yet begun, and the information discussed above is not publicly available, Plaintiffs were not able to obtain the types of facts and evidence discussed above before Defendants filed their recent dispositive motions.

12.    Both the Treasury Defendants and the FHFA Defendants have also moved for summary judgment on the merits of Plaintiffs' APA claims.  With respect to this aspect of their respective motions, both sets of Defendants purport to rely upon their compilation of materials relating to the Defendants' decision to enter into the Net Worth Sweep.  In Plaintiffs' view, and as discussed in more detail in Plaintiffs' motion, these *post hoc* compilations suffer from multiple deficiencies that call into question whether they constitute the whole administrative records and that necessitate both supplementation of the records and limited discovery into the completeness of those records.   Should the Court authorize such discovery, Plaintiffs anticipate that they would be able in short order to propound interrogatories, document requests, and requests for admissions concerning, among other things, the procedures Defendants followed in assembling their submissions to this Court, the steps they took to satisfy themselves that their submissions were complete (assuming they attempted to do so), and the explanation for various gaps and inconsistencies in their submissions.  Plaintiffs would also anticipate taking depositions, under Fed. R. Civ. P. 30(b)(6), of Treasury and the FHFA with respect to the above topics, as well as the deposition of FHFA's declarant, Mr. Mario Ugoletti, in order to discover the bases for the statements made in his declaration.  Plaintiffs believe that, with Defendants' cooperation in such efforts, such limited discovery into the completeness of Defendants' record submissions would take a few weeks to complete.

13.    Defendants have also moved for dismissal of this action for lack of jurisdiction. In Plaintiffs' view, there is considerable overlap between Defendants' jurisdictional arguments

and their arguments on the merits. Defendants' primary jurisdictional argument is their contention that Plaintiffs' claims are barred by 12 U.S.C. § 4617(f), which provides that "no court may take any action to restrain or affect the exercise of powers or functions of [FHFA] as a conservator." *See* FHFA Br. 19-32; Treas. Br. 21-29. Because Defendants concede that section 4617(f) does not bar relief when the FHFA is acting in excess of its statutory powers, *see* FHFA Br. 21; Treas. Br. 23, Defendants devote a considerable portion of their jurisdictional argument to their defense of FHFA's actions as within its statutory powers. This defense is, in turn, devoted primarily to a justification of FHFA's and Treasury's decisions to agree to the Net Worth Sweep; integral to this justification are Defendants' claims regarding their supposed desire to strengthen Treasury's financial commitment to Fannie and Freddie by eliminating the need for the Enterprises to draw funds from Treasury in order to pay dividends back to Treasury. *See* FHFA Br. 22-26; Treas. Br. 24. There is substantial, overlap between this "jurisdictional" argument and Defendants' merits arguments defending the Third Amendment. For that reason, the discovery Plaintiffs seek bears upon both Defendants' jurisdictional and merits arguments.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct. Executed on February 11, 2014, in Washington, D.C.

Vincent J. Colatriano