## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PERRY CAPITAL LLC,<br><br>          Plaintiff,<br><br>   v.<br><br>JACOB J. LEW, *et al.*,<br><br>          Defendants. | Civil Action No. 13-cv-1025 (RLW) |
| FAIRHOLME FUNDS, INC., *et al.*,<br><br>          Plaintiffs,<br><br>   v.<br><br>FEDERAL HOUSING FINANCE AGENCY, *et al.*,<br><br>          Defendants. | Civil Action No. 13-cv-1053 (RLW) |
| ARROWOOD INDEMNITY COMPANY, *et al.*,<br><br>          Plaintiffs,<br><br>   v.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION, *et al.*,<br><br>          Defendants. | Civil Action No. 13-cv-1439 (RLW) |
| In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations<br>_____<br>This document relates to:<br>ALL CASES | Misc. Action No. 13-mc-01288 (RLW) |

## REPLY IN SUPPORT OF MOTION FOR JUDICIAL NOTICE
## BY DEFENDANTS FEDERAL HOUSING FINANCE AGENCY AS CONSERVATOR
## FOR FANNIE MAE AND FREDDIE MAC, FHFA DIRECTOR MELVIN L. WATT,
## <u>FANNIE MAE, AND FREDDIE MAC</u>

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 3

   I.    Plaintiffs Agree That Many of the Documents Are Judicially Noticeable ..................... 3

   II.   The Remaining Documents Are Also Properly Subject to Judicial Notice .................... 4

        A.   Government Documents ........................................................................................ 4

            1.   FHFA Mortgage Market Note (Dec. 5, 2008) (FHFA0253) ......................... 5

            2.   FHFA Reports to Congress for 2008, 2009 (FHFA0693; 1203)
                DeMarco Letter to Congress (Feb. 2, 2010) (FHFA1181)
                Congressional Budget Office Analysis (Jan. 13, 2010) (FHFA1165) ........... 6

            3.   Treasury 2010 Performance and Accountability Report  (Nov. 15,
                2010) (FHFA1392) ...................................................................................... 7

            4.   Data as of November 14, 2013 on Treasury and Federal Reserve
                Purchase Programs for GSE & Mortgage-Related Securities
                (FHFA4089) ................................................................................................. 8

        B.   Congressional Testimony ..................................................................................... 8

            1.   Geithner Testimony (March 23, 2010) (FHFA1191-92). ............................. 8

            2.   Statement of Deborah Lucas (Jun. 2, 2011) (FHFA2362). ........................... 9

            3.   FHFA Dir. Lockhart, Statement to Congress (Sept. 25, 2008)
                (FHFA0103) ................................................................................................. 9

         C.   Freddie Mac Press Release (Feb. 24, 2011) (FHFA2178) ..................................... 9

        D.   Publications and News Articles .......................................................................... 10

            1.   Nick Timiraos, Fannie Mae Posts Profit as Home Prices Rise, Wall St.
                J. (Aug. 8, 2012) (FHFA4026) ................................................................... 11

            2.   Moody's Sector Comment:  Plan To Raise Fannie Mae and Freddie
                Mac Guarantee Fees Raises Question of Support (Sept. 26, 2011)
                (FHFA2403);  Deutsche Bank, The Path of US Support for Fannie
                Mae, Freddie Mac (Mar. 14, 2012) (FHFA3096);   Moody's Issuer

Comment: Fannie Mae's and Freddie Mac's Return to Profitability is Fleeting (Aug. 13, 2012) (FHFA4028) ........................................................ 12

E. SEC Filings of the Enterprises ............................................................................. 17

III. The Court May Properly Consider Documents Cited in the Complaints ...................... 18

A. FHFA Office of Inspector General Materials ........................................................ 19

B. FHFA Statement Announcing the Third Amendment (Aug. 17, 2012) Treasury Press Release Announcing the Third Amendment (Aug. 17, 2012)..................... 21

CONCLUSION ................................................................................................................... 22

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Benank ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt., LP*,
    435 F.3d 396 (3d Cir. 2006)................................................................................11

*Cooperative de Ahorro y Credito Aguada v. Kidder, Peabody & Co.*,
    993 F.2d 269 (1st Cir. 1993)...............................................................................17

*County of Sonoma v. FHFA*,
    710 F.3d 987 (9th Cir. 2013) ................................................................................3

*Foster v. Kosseff*,
    No. 11-cv-5069, 2013 WL 147822 (E.D. Wash. Jan. 14, 2013)............................19

*FTC v. Benning*,
    No. 09-cv-3814, 2010 WL 2605178 (N.D. Cal. June 28, 2010)............................18

*Ginx, Inc. v. Soho Alliance*,
    720 F. Supp. 2d 342 (S.D.N.Y. 2010)...................................................................19

*Gross v. Bell Sav. Bank PA SA*,
    974 F.2d 403 (3d Cir.1992)...............................................................................3, 14

*Hamilton v. Paulson*,
    542 F. Supp. 2d 37 (D.D.C. 2008), *rev'd on other grounds*, 666 F.3d 1344
    (D.C. Cir. 2012) ....................................................................................................5

*Harsco Corp. v. Segui*,
    91 F.3d 337 (2d Cir. 1996)..................................................................................19

*Haynes v. Navy Fed. Credit Union*,
    825 F. Supp. 2d 285 (D.D.C. 2011) .....................................................................20

*In re ING Groep, N.V. ERISA Litig.*,
    749 F. Supp. 2d 1338 (N.D. Ga. 2010) ................................................................13

*Kellmer v. Raines*,
    674 F.3d 848 (D.C. Cir. 2012) ...............................................................................2

*Lasker v. N.Y. State Elec. & Gas Corp.*,
    No. 94-cv-3781, 1995 WL 867881 (E.D.N.Y. Aug. 22, 1995) ..............................19

*Leon County v. FHFA*,
    816 F. Supp. 2d 1205 (N.D. Fla. 2011), *aff'd*, 700 F.3d 1273 (11th Cir. 2012).....22

*N.Y. State Bar Ass'n v. FTC*,
    276 F. Supp. 2d 110 (D.D.C. 2003) .....................................................................19

*Nasser Al-Aulaqi v. Panetta,
   --- F. Supp. 2d ---, 2014 WL 1352452 (D.D.C. Apr. 4, 2014)...............................................4, 8

Nat'l Trust for Historic Preserv. v. FDIC,
   995 F.2d 238 (D.C. Cir. 1993) ...............................................................................................14

Swartz v. KPMG LLP,
   476 F.3d 756 (9th Cir. 2007) .................................................................................................19

*United States v. 14.02 Acres of Land More or Less in Fresno County,
   547 F. 3d 943 (9th Cir. 2008) .............................................................................................5, 14

United States v. BCCI Holdings (Luxembourg) S.A.,
   961 F. Supp. 287 & 296-97 (D.D.C. 1997).............................................................................11

Von Saher v. Norton Simon Museum of Art at Pasadena,
   592 F.3d 954 (9th Cir. 2010) .............................................................................................10, 13

Winder v. Erste,
   905 F. Supp. 2d 19 (D.D.C. 2012) ..........................................................................................11

## Statutes

12 U.S.C. § 4617(b)(2)(A ...........................................................................................................1

12 U.S.C. § 4617(b)(2)(J) .........................................................................................................14

Housing and Economic Recovery Act ("HERA"), *codified at* 12 U.S.C. § 4617 *et
   seq.* ..................................................................................................................................... *passim*

## Other Authorities

Fed. R. Evid. 201 ........................................................................................................................4

Defendants Federal Housing Finance Agency ("FHFA" or "Conservator"), as Conservator for the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac," together with Fannie Mae, the "Enterprises"), Melvin L. Watt, in his official capacity as Director of FHFA (together with FHFA, the "FHFA Defendants"), and the Enterprises hereby submit this Reply in Support of their Motion for Judicial Notice (Doc # 33, No. 1:13-cv-1025).  For the reasons stated below, the Motion for Judicial Notice should be granted.

## INTRODUCTION

Through these actions, Plaintiffs seek to second-guess the Conservator's ongoing response to the most calamitous economic crisis in generations, and to recover for themselves a portion of the Enterprises' positive (at least for the time being) earnings, which were made possible only by virtue of an infusion of billions of dollars of taxpayer funds into the Enterprises. Those taxpayer funds not only saved the Enterprises from insolvency, mandatory receivership, and liquidation, they continue to play a critical role in assuring the national and international markets (for the Enterprises' debt and mortgage-backed securities) that Fannie Mae and Freddie Mac can and will honor their obligations.

In executing the Third Amendment to the Preferred Stock Purchase Agreements ("PSPAs"), the Conservator exercised the powers and functions expressly granted to it by Congress through the Housing and Economic Recovery Act ("HERA").  Accordingly, Plaintiffs' claims seeking declaratory and injunctive relief are expressly barred by HERA:  "no court may take any action to restrain or affect the exercise of powers or functions" of the Conservator. 12 U.S.C. § 4617(f).  Additionally, as Conservator, FHFA has succeeded to "all rights, titles, powers, and privileges" of both the Enterprises *and* their shareholders—including Plaintiffs.  *Id*. § 4617(b)(2)(A).  Thus, Plaintiffs may not pursue their contract and fiduciary duty claims during

conservatorship because those claims are based on Plaintiffs' alleged "rights" as shareholders, to which the Conservator has succeeded.  *See Kellmer v. Raines*, 674 F.3d 848, 851 (D.C. Cir. 2012).

The foregoing is all the Court needs to know in order to grant the FHFA Defendants' and Enterprises' motion to dismiss (Doc. # 32 (No. 1:13cv1025)).  Indeed, Plaintiffs' claims fail on nothing more than the allegations of the complaints, the applicable statute (HERA), the applicable case law, and the various documents Plaintiffs *agree* are properly considered by this Court in resolving the FHFA Defendants' and Enterprises' motion to dismiss.

The FHFA Defendants and the Enterprises also request that the Court take judicial notice of additional, publicly-available materials that provide pertinent background information reflecting the context in which the Conservator undertook the challenged actions.  Plaintiffs do not—because they cannot—dispute that these materials are capable of judicial notice.  They clearly are—for the fact of the publication and content of those materials.  Contrary to Plaintiffs' repeated mischaracterizations, the FHFA Defendants and Enterprises are *not* seeking to establish as "indisputable fact" the truth of the matters asserted in the relevant materials.  *See* Opp. 3, 8, 9, 15, 16, 26 (Doc. #37 (No. 1:13-cv-1053)).  Moreover, many of these materials have been put directly at issue by virtue of the fact that Plaintiffs rely upon and quote those materials in the complaints.  Plaintiffs nevertheless maintain that the Court should not review those materials. The law rejects this hide-the-ball approach.  Indeed, Plaintiffs cannot ask the court to draw inferences from their allegations about public events and publicly-available documents while depriving the Court of the opportunity to review those very same documents, as well as other contemporaneous and publicly-available materials.

2

Finally, Plaintiffs attempt to twist the purpose of the judicial notice motion into a request that the Court accept that the Third Amendment was "reasonable."  Opp. 3, 18-19, 26.  The FHFA Defendants and Enterprises make no such request *because there is no need to make such a request*:  the reasonableness—or unreasonableness—of the Conservator's exercise of its powers and functions is strictly off-limits for judicial review under Section 4617(f).  Indeed, the application of Section 4617(f) "does not hinge on [the court's] view of the proper exercise of otherwise-legitimate powers."  *Gross v. Bell Sav. Bank PA SA,* 974 F.2d 403, 408 (3d Cir.1992); *see also Cnty. of Sonoma v. FHFA*, 710 F.3d 987, 993 (9th Cir. 2013) ("it is not our place to substitute our judgment for FHFA's" as Conservator).  So long as the Conservator was acting within its statutory powers and functions—as the Conservator was doing here—Section 4617(f) applies and there is no further inquiry.

Even if the Court were to disregard *all* of the materials at issue in the present motion— and it should not—Plaintiffs' complaints still would fail for the myriad reasons set forth in the memoranda in support of the motions to dismiss.  The arguments in support of those motions refer to—but are in no way dependent upon—these judicially-noticeable materials.

## ARGUMENT

## I.    Plaintiffs Agree That Many of the Documents Are Judicially Noticeable

Plaintiffs agree that many of the documents that are the subject of the motion—14 documents total—can be considered by the Court in resolving the pending motions to dismiss. *See* Pls. Proposed Order  (Doc. # 37-1 (No. 1:13cv1053)).  Accordingly, the Court should grant the motion as to these documents at a minimum:

- **Preferred Stock Purchase Agreements ("PSPAs") and Amendments.**  Plaintiffs agree with FHFA that each PSPA is "properly treated as incorporated into the Complaints by reference" because the PSPAs "define Plaintiffs' claims."  Opp. 22

- **Common and Preferred Stock Certificates of Designation.** Plaintiffs agree that the common and preferred stock certificates should be considered by the Court because Plaintiffs' rights "derive" from those certificates, and their contract claims are based on these agreements. Opp. 22.

- **Fannie Mae Bylaws:** Plaintiffs agree that the Court may take judicial notice of the Fannie Mae Bylaws, which is a verifiable and publicly available document not subject to reasonable dispute. Opp. 15.

- **Fannie Mae and Freddie Mac's SEC Filings (10-K and 10-Q Reports).** Plaintiffs agree the Court may take judicial notice of each Enterprises' SEC filings cited by Defendants for the fact that the Enterprises made the quoted statements in those filings. Opp. 12-13. The scope and purpose of the Court's notice of these documents is discussed below. *See infra* Sec. II(E).

- **FHFA Statement Announcing the Third Amendment (Aug. 17, 2012).** Plaintiffs agree that FHFA's announcement of the Third Amendment may be considered by the Court to resolve the Motion to Dismiss. Opp. 23-25; Pls. Proposed Order. The scope and purpose of the Court's notice of this document is discussed below. *See infra* Sec. III(B).

- **Treasury Press Release Announcing the Third Amendment (Aug. 17, 2012).** Plaintiffs agree that the Court may consider Treasury's announcement for the Third Amendment. Opp. 23-25; Pls. Proposed Order. The scope and purpose of the Court's notice of this document is discussed below. *See infra* Sec. III(B).

## II.     The Remaining Documents Are Also Properly Subject to Judicial Notice

The Court may take judicial notice of each of the remaining documents at issue pursuant to Fed. R. Evid. 201, which provides that "if a party requests it and the court is supplied with the necessary information," a court "must" take judicial notice of a fact "not subject to reasonable dispute" in that it is either "(1) generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2),(c)(2).

### A.     Government Documents

When resolving a motion to dismiss, "judicial notice may be taken of public records and government documents available from reliable sources." *Nasser Al-Aulaqi v. Panetta*, --- F.

Supp. 2d ---, 2014 WL 1352452, at *8 (D.D.C. Apr. 4, 2014).   Such documents, like those the

FHFA Defendants have offered, are considered part of the public record, and are "capable of

accurate and ready determination by resort to sources whose accuracy cannot reasonably be

questioned." *Hamilton v. Paulson*, 542 F. Supp. 2d 37, 52 n.15 (D.D.C. 2008), *rev'd on other

grounds*, 666 F.3d 1344 (D.C. Cir. 2012).

### 1.    FHFA Mortgage Market Note (Dec. 5, 2008) (FHFA0252)

In the motion to dismiss, the FHFA Defendants and Enterprises cite this FHFA Mortgage

Market Note in the context of discussing the background and effect of  Treasury's commitment

of funds through the PSPAs.  In particular, the motion explains that the Treasury commitment

provides a "federal backstop of the Enterprises' obligations" that "reassure[s] investors—debt

and MBS holders—and the financial markets of the stability and safety of the Enterprises."

FHFA Mot. to Dismiss 65 (Doc. # 32 (No. 1:13cv1025)) (citing Mortgage Market Note (Dec. 5,

2008) (FHFA0252)).  This purpose is fairly self-evident in light of the features of the Treasury

commitment itself—the availability of hundreds of billions of taxpayer dollars as a capital

backstop to the Enterprises necessarily reassures the market that the Enterprises can meet their

obligations to holders of Enterprise debt and mortgage-backed securities ("MBS").  The

Mortgage Market Note, issued shortly after the PSPAs were executed in September 2008, merely

repeats this self-evident description, while also giving more context and background on this

issue.  *See* FHFA0252-0253.

Plaintiffs do not—and cannot—seriously dispute this purpose and effect of the PSPAs.

Indeed, they concede that such market reassurance may be "a secondary purpose of the PSPAs."

Opp. 11.  Accordingly, the Court may properly consider the Mortgage Market Note for context

and background concerning the effect of the PSPAs.  *See, e.g.*, *United States v. 14.02 Acres of

Land More or Less in Fresno Cnty.*, 547 F. 3d 943, 955 (9th Cir. 2008) (affirming district court's

use of judicial notice of a government document as "background material, without relying on [the document] to resolve any factual dispute," in granting government's motion for judgment on the pleadings).

      **2.**      **FHFA Reports to Congress for 2008, 2009 (FHFA0686; 1198); DeMarco Letter to Congress (Feb. 2, 2010) (FHFA1178); Congressional Budget Office Analysis (Jan. 13, 2010) (FHFA1148)**

In the motion to dismiss, the FHFA Defendants and Enterprises cite these documents in the background statement of facts in the context of discussing the Enterprises' financial condition. In particular, the motion explains that "[t]he draws on the PSPAs were triggered by a determination that liabilities exceeded assets, i.e. insolvency. Accordingly, it has been widely observed that common shares were rendered 'virtually worthless,' and common and preferred shareholders 'effectively lost their investments' when the Enterprises became insolvent." FHFA Mot. to Dismiss 14-15 (citing, in a footnote, these three documents). Again, these "observ[ations]" are fairly self evident. Shareholder equity is generally defined in the same way as a corporation's net worth: assets minus liabilities. If there is positive net worth in the company (assets > liabilities), the company is solvent and the shareholders have equity. If there is zero or negative net worth in the company (liabilities > assets), the company is insolvent and the shareholders have no equity. It is undisputed that, based on the structure of the PSPAs, the Enterprises began drawing Treasury funds only when their assets exceeded their liabilities—i.e., when they became insolvent—and in an amount necessary to enable the Enterprises to satisfy their liabilities. As indicated by the fact of the Treasury draws, it was observed at the time that the Enterprises' shareholders lacked equity. *See, e.g.*, FHFA0686 at 0693; FHFA1198 at 1203 (FHFA 2008 and 2009 Reports to Congress) (draws under PSPAs indicated that the Enterprises had "depleted all of their shareholders' equity").

In all events, the FHFA Defendants and Enterprises are *not* asking the Court to take judicial notice of whether or not Plaintiffs' shares were, in fact, rendered "virtually worthless" as a result of the Enterprises' insolvency and draws under the PSPAs. *See* Opp. 7. Indeed, the FHFA Defendants and Enterprises do not cite these documents, or the statements they contain, in support of any of substantive arguments. Instead, the Court may simply take judicial notice for background purposes that these observations were made in response to the Enterprises drawing funds from Treasury under the original (pre-Third Amendment) PSPAs.

### 3. Treasury 2010 Performance and Accountability Report (Nov. 15, 2010) (FHFA1391)

In the motion to dismiss, the FHFA Defendants and Enterprises cite this document in the context of discussing the background of the 10% annual dividend payment owed by the Enterprises to Treasury before the Third Amendment. In particular, the motion explains that "the 10% dividend was expected—by itself—to transfer to Treasury 'virtually all profits' of the Enterprises." FHFA Mot. to Dismiss 13. The Treasury Performance and Accountability Report states that the PSPAs, prior to the Third Amendment, were "structured in such a way that ensures that virtually all profits in the company revert to the Government in the form of [10%] dividends on the preferred shares in Fannie Mae and Freddie Mac." FHFA1391 at 1392.

The Court may take judicial notice of the fact that the statement was made—i.e., that Treasury stated its belief that the 10% dividend would encompass "virtually all profits" of the Enterprises. Plaintiffs do not dispute that Treasury made this statement. Instead, they argue that Treasury's projections underlying this statement "proved to be wildly wrong" and that the statement is outdated. Opp. 8. But the FHFA Defendants and Enterprises are not requesting that the Court accept the truth or accuracy of any projections or data underlying Treasury's statement. Because the document itself "is capable of accurate and ready determination by resort to sources

whose accuracy cannot reasonably be questioned," and it provides contemporaneous background information, the Court may consider this document.  *See Panetta*, 2014 WL 1352452 at *8 (taking judicial notice of government documents as "representations of the Government's position").

4.      **Data as of November 14, 2013 on Treasury and Federal Reserve Purchase Programs for GSE & Mortgage-Related Securities (FHFA4088)**

In the motion to dismiss, the FHFA Defendants and Enterprises cite this document in the context of discussing the background of the Enterprises' first draws on the Treasury commitment.  In particular, the motion states: "By the end of the third quarter of 2008—at the outset of the conservatorships—Freddie Mac had a negative net worth of $13.7 billion, and by the end of the fourth quarter of 2008, Fannie Mae had a negative net worth of $15.2 billion." FHFA Mot. to Dismiss 11.  The document cited to support this statement is merely a summation of the amount of Treasury draws to date.  *See* FHFA4088-4089.  Thus, the Court can take judicial notice of this document merely for the fact that Enterprises drew those amounts from Treasury at that time—an undisputed fact—and that those draws were based on a contemporaneous calculation of the Enterprises' net worth.  *See* Opp. 9 (agreeing that the Court can "properly take judicial notice of the fact of such data").  The FHFA Defendants and Enterprises are not requesting that the Court accept the truth or accuracy of those calculations.

B.      **Congressional Testimony**

1.      **Geithner Testimony (March 23, 2010) (FHFA1187)**

In the motion to dismiss, the FHFA Defendants and the Enterprises cite this testimony of then Treasury Secretary Geithner in connection with the argument (in a footnote) that "Plaintiffs should have anticipated that the Enterprises would be subject to substantial and likely increasing regulations" because the Enterprises previously had been subject to favorable tax treatment and

capital requirements.  FHFA Mot. to Dismiss 61 n.37.  The FHFA Defendants are not asking the

Court to take judicial notice of the truth of this *argument*, as Plaintiffs suggest the FHFA

Defendants are attempting to do.  Opp. 10.  Rather, the Court can take judicial notice of the

Geithner testimony merely for the *predicate* to the argument—*i.e.*, that Secretary Geithner

testified that the "features of the [Enterprises'] government charters (e.g., line of credit with

Treasury, public mission requirements, limited competition) and exemptions from certain tax and

regulatory requirements created a perception of a special status conveyed by the US government

on these companies."  FHFA1187 at 1191-1192.

### 2. Statement of Deborah Lucas (June 2, 2011) (FHFA2359)

This document is cited in the motion to dismiss in the same background footnote in

which the other documents concerning the perception that the Enterprises' shares were "virtually

worthless" are cited, and for the same purpose.  *See* FHFA2359 at 2362.  Accordingly, the Court

can take judicial notice of this document for the reasons described above.  *See supra* Sec.

II(A)(2).

### 3. FHFA Dir. Lockhart, Statement to Congress (Sept. 25, 2008) (FHFA0029)

This document is cited in the motion to dismiss for the same purpose as the Mortgage

Market Note, described above—in particular, that "one of the central purposes of the PSPAs [is]

to express financial support to holders of Enterprise debt (i.e., bondholders) and MBS."  FHFA

Mot. to Dismiss 66 (citing FHFA0029 at 0103).  Accordingly, the Court can take judicial notice

of this document for the reasons described above.  *See supra* Sec. II(A)(1).

### C. Freddie Mac Press Release (Feb. 24, 2011) (FHFA2178)

In the motion to dismiss, the FHFA Defendants and Enterprises cite this document in the

background context of the size of the 10% dividend before the Third Amendment.  In particular,

9

"[a]s of the Fourth Quarter of 2010, Freddie Mac's annual 10% dividend obligation 'exceed[ed] the company's annual historical earnings in all but one period.'" FHFA Mot. to Dismiss 13 (quoting FHFA2178 at 2187). The Court may properly take judicial notice of the quoted statement in this document because it is an objective fact that is readily verifiable and not the subject of any reasonable dispute. Indeed, Plaintiffs do not dispute the accuracy of the statement or contend it is not verifiable. Instead, Plaintiffs merely characterize it as "part of Defendants' attempt to establish . . . that the Net Worth Sweep made matters no worse" for the Enterprises' shareholders. Opp. 14. But Plaintiffs' characterization is merely an argument about the merits, not a reason why the document is not judicially noticeable.

Further, Plaintiffs ask that the Court also take judicial notice of the Enterprises' most recent press releases showing the Enterprises' recent (post-Third Amendment) earnings. *See* Opp. 14-15 n.17 (citing Enterprise Press Releases from February 2014). The FHFA Defendants and Enterprises do not oppose this request because, again, the Enterprises' earnings are objective facts that are readily verifiable and not the subject of any reasonable dispute. Such earnings, however, are not very relevant because—as Plaintiffs themselves point out—"the validity of the Third Amendment turns on what was done in August 2012 . . . based on financial information available *as of that date*." Opp. 8 (emphasis added).

D.     **Publications and News Articles**

Plaintiffs concede that courts routinely take judicial notice of publications and news articles to "indicate what was in the public realm at the time." Opp. 16 (quoting *Von Saher v.*

*Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010).[1]  Because this is

all the FHFA Defendants and Enterprises ask the Court to do here, the Court should grant motion

with respect to these documents.

      **1.**      **Nick Timiraos, Fannie Mae Posts Profit as Home Prices Rise, Wall St.**
            **J. (Aug. 8, 2012) (FHFA4026)**

In the motion to dismiss, the FHFA Defendants and Enterprises explain that, "[a]t the

time the Third Amendment was executed in August 2012, both Enterprises projected that this

circular practice"—that is, of drawing funds *from* Treasury in order to pay the 10% dividend *to*

Treasury—"likely would continue over the long term because the Enterprises still could not

afford the 10% dividend, which had grown to $11.7 billion for Fannie Mae and $7.2 billion for

Freddie Mac."  FHFA Mot. to Dismiss 23.  This news article, which is cited in connection with

this explanation, includes a statement attributed to Fannie Mae's CFO, made the week before the

Third Amendment, that "[i]t is hard . . . to envision that we [Fannie Mae] would be able to make

enough every single quarter to cover the [10%] dividend payment."  FHFA4026.  As Plaintiffs

point out, this statement echoes and was reportedly made in connection with the Enterprises'

publication of their quarterly reports to the SEC in August 2012 (Opp. 18-19), which Plaintiffs

---

[1]    *See also Benank ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt., LP*, 435 F.3d 396, 401 n.15 (3d Cir. 2006) ("We see no basis to upset the District Court's decision to take judicial notice of newspaper articles supplied by appellees. . . . They serve only to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true," and "[t]heir publication is not subject to reasonable dispute in that it is capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned." (internal quotation marks omitted)); *Winder v. Erste,* 905 F. Supp. 2d 19, 37 n.8 (D.D.C. 2012) (taking judicial notice of newspaper articles for the proposition that "problems with the transportation of special education students . . . were rampant, and known as early as February 2001"); *United States v. BCCI Holdings, (Luxemborg) S.A.*, 961 F. Supp. 287, 290 n.2 & 296-97 (D.D.C. 1997) (taking judicial notice of several newspaper articles to establish that "BCCI's fraud and corruption were widely reported" and as a result, "the petitioner's claim that a sophisticated banking entity could reasonably be without cause to believe that BCCI's assets were subject to forfeiture rings hollow").

agree are properly the subject of judicial notice for the fact of their filing and their contents. *See supra* Sec. I.

The Court can take judicial notice of the fact that Fannie Mae's CFO reportedly made this statement to the Wall Street Journal less than one week before the Conservator executed the Third Amendment. Plaintiffs do not contend that the article does not contain this statement, nor do they contest that Fannie Mae's CFO actually made this statement, but only object that the article is "not . . . subject to judicial notice to establish the truth" of its contents. Opp. 19. The article is not cited for the truth, accuracy, or reasonableness of the prediction of Fannie Mae's CFO at that time, but merely for the fact that the Wall Street Journal reported that it was made. Thus, the statement is judicially noticeable for these reasons, as well as the reasons the Enterprises' contemporaneous SEC filings are judicially noticeable. *See infra* Sec. II(E).

> **2.      Moody's Sector Comment: Plan To Raise Fannie Mae and Freddie Mac Guarantee Fees Raises Question of Support (Sept. 26, 2011) (FHFA2403)**
>
> **Deutsche Bank, The Path of US Support for Fannie Mae, Freddie Mac (Mar. 14, 2012) (FHFA3096);**
>
> **Moody's Issuer Comment: Fannie Mae's and Freddie Mac's Return to Profitability is Fleeting (Aug. 13, 2012) (FHFA4028)**

In the motion to dismiss, the FHFA Defendants and Enterprises cite these three publications in connection with explaining the "concerns in the marketplace over the adequacy of the remaining Treasury fund" and the "market forecasts predict[ing] that the Enterprises' ongoing payment of the 10% dividend would completely exhaust Treasury's funding commitment within ten years." FHFA Mot. to Dismiss 15-16 & n.10. For instance, just days before execution of the Third Amendment, Moody's—a leading market forecaster and credit rating agency—observed that the Enterprises "w[ould] deplete their capital bases because the [10% Treasury] dividends they'll be paying on their preferred securities will be greater than their

earnings."  FHFA4028 (Moody's Issuer Comment: *Fannie Mae's and Freddie Mac's Return to Profitability is Fleeting* (Aug. 13, 2012)).  Moody's had previously stated that if this depletion continued, it "would be credit negative and prompt a review of [the Enterprises'] Aaa ratings."  FHFA2404 (Moody's, Sector Comment: *Plan To Raise Fannie Mae and Freddie Mac Guarantee Fees Raises Question of Support* (Sept. 26, 2011)).  Similarly, prior to the Third Amendment, Deutsche Bank reported that "diminishing Treasury support raises the risk that the [Enterprises] one day might face challenges in covering MBS losses," a risk that would "become[] greater in a housing market catastrophe, such as the one that started in the US after 2006."  FHFA3101 (Deutsche Bank, *The Path of US Support for Fannie Mae, Freddie Mac* (Mar. 14, 2012)).

Judicial notice of these publications is proper because the FHFA Defendants and Enterprises are seeking notice only of the fact that these reports were made and included the statements appearing therein.  *See Von Saher*, 592 F.3d at 960 (taking judicial notice of publications to "indicate what was in the public realm at the time"); *In re ING Groep, N.V. ERISA Litig.*, 749 F. Supp. 2d 1338, 1344 (N.D. Ga. 2010) (taking judicial notice of documents indicating the "generally known market conditions during the relevant time period").  For example, the Court is not being asked to take notice of the truth or reasonableness of Moody's projections that the Treasury commitment would be "depleted" by the 10% dividends, but merely that Moody's (and Deutsche Bank) identified this depletion issue as a concern about the adequacy of the Treasury commitment soon before the Third Amendment was executed.

Plaintiffs do not dispute that the Court may take notice of the fact that these reports were published or that they contained these statements.  This is dispositive.  Plaintiffs nevertheless argue that these documents are "irrelevant."  Opp. 17.  In one sense, Plaintiffs are correct:

because the Conservator is statutorily authorized to operate the Enterprises in a manner it

determines is in the "best interests of the [Enterprises] or the Agency," (12 U.S.C.

§ 4617(b)(2)(J)), free from all "outside second-guessing" by shareholders or courts by virtue of

Section 4617(f) (*Nat'l Trust for Historic Preserv. v. FDIC*, 995 F.2d 238, 240 (D.C. Cir. 1993)),

then the Court needs little to no context or background to render a decision that the

Conservator's conduct here—amending the PSPAs on behalf of the Enterprises to preserve the

Treasury commitment—is beyond judicial review.  Indeed, the Court's decision under Section

4617(f) *may not* depend upon the Court's view of the reasonableness or propriety of the

Conservator's conduct.  *See Gross*, 974 F.2d at 408.  So long as the Conservator was acting

within its statutory powers or functions—which it was—the inquiry ends and Section 4617(f)

bars Plaintiffs' claims.  *See* FHFA Mot. to Dismiss 19-26; FHFA Reply in Supp. of Mot. to

Dismiss 8-11.

    However, though they are in one sense irrelevant to the dispositive legal issues, the Court

need not *ignore* these publications and the context they provide to the Conservator's conduct.

For example, these documents indicate that Moody's was effectively threatening to downgrade

the Enterprises' credit rating—i.e., predicting that the Enterprises would be *less* likely to satisfy

their obligations—due to the erosion of the Treasury commitment as a result of the 10%

dividends.  Whether this threat was "true" (or even well-founded) is beside the point: the

statement was made to the marketplace, necessarily risking a loss of investor confidence in the

Enterprises' ability to satisfy their debt and MBS obligations.  It was within this context that the

Conservator exercised its statutory powers and functions to execute the Third Amendment on

behalf of the Enterprises, replacing the 10% dividend with a variable net worth dividend, and

also suspending the additional Periodic Commitment Fee owed by the Enterprises to Treasury.

Though the Court does not need this information to render its ruling that Section 4617(f) bars Plaintiffs' claims, it nevertheless provides helpful background and context.

Plaintiffs also seize upon Defendants' citation to the Deutsche Bank article, which not only emphasizes the negative impact the 10% dividend had on the Treasury commitment before the Third Amendment, but also states that the parties to the PSPAs "could elect to amend . . . and defer or reduce the [10%] dividend" as a potential means of remedying the problem.  FHFA3096 at 3101.  The fact that Deutsche Bank posited its thoughts on potential *remedies* to the problem merely underscores the fact that Deutsche Bank (like Moody's) observed that *there was a problem* concerning the adequacy of the Treasury commitment in light of the 10% dividend.  *See id.* (discussing the "risk" and "market implications of diminishing Treasury support" and noting that the dividend "might still pose risk to the [Enterprises]" even if deferred).  Plaintiffs query whether the Court "should thereby accept, as indisputable fact, that the Third Amendment *was unreasonable*" because "any problem created by the fixed 10% dividend" potentially could have been resolved in one of these alternative ways.  Opp. 18 (emphasis added).  This question merely reveals Plaintiffs' fundamental misunderstanding of the proper legal analysis:  it is irrelevant as a matter of law whether the Conservator's actions were reasonable or unreasonable, wise or unwise, the only possible course of conduct or one of many alternative courses of conduct.  Section 4617(f) bars Plaintiffs' claims because the Conservator was acting squarely within its powers and functions in executing the Third Amendment and thereby preserving the capital commitment from Treasury.  *See* FHFA Mot. to Dismiss 19-26; FHFA Reply in Supp. of Mot. to Dismiss 3-17.

3. **Barclays,** *Interest Rates Research, Treasury Changes the PSPAs: Initial Thoughts* **(Aug. 17, 2012) (FHFA4048);**

**Moody's Issuer Comment:** *US Treasury Amends Fannie Mae's and Freddie Mac's Capital Agreement, a Credit Positive* **(Aug. 23, 2012) (FHFA4051)**

In the motion to dismiss, the FHFA Defendants and Enterprises explain that, following the Third Amendment, "[t]he same market participants who had previously expressed concern about the adequacy of Treasury's commitment in light of the 10% dividend responded positively to the Third Amendment, expressing confidence that the Treasury commitment would now be adequate because of the change from the fixed dividend and Periodic Commitment Fee to a variable dividend."  FHFA Mot. to Dismiss 25.  The motion cites these two documents in this context.  For example, following the Third Amendment, Moody's—who had previously called the depletion of the Treasury commitment a "credit negative"—stated that the Third Amendment "ensures that each company will have sufficient contingent capital under its Capital Agreement with the US Treasury, a credit positive."  FHFA4051 at 4051 (Moody's, Issuer Comment: *US Treasury Amends Fannie Mae's and Freddie Mac's Capital Agreement, a Credit Positive* (Aug. 23, 2012)).  Similarly, Barclay's stated that the Third Amendment "puts to rest any worries about [Enterprise] credit risk even in intermediate/longer maturities."  FHFA4048 at 4049 (Barclays, Interest Rates Research, *Treasury Changes the PSPAs: Initial Thoughts* (Aug. 17, 2012)).

Like the pre-Third Amendment publications, Plaintiffs do not argue that the Court cannot take judicial notice of the articles generally or of the statements they contain.  Again, this is dispositive.  Plaintiffs nevertheless contend that these documents are irrelevant, in particular because the "reasonableness" of the Third Amendment "cannot be gauged by news articles and publications made after the fact."  *See* Opp. 19.  As explained above, however, the "reasonableness" of the Third Amendment is not at issue, and these publications are judicially

16

noticeable for the same reasons as the pre-Third Amendment publications discussed above—namely, to provide context and background information surrounding the Conservator's exercise of its statutory powers to amend the PSPAs.  *See supra* Sec. II(C)(2).[2]

E.    **SEC Filings of the Enterprises**

Plaintiffs acknowledge that judicial notice of SEC filings is common, including for the purposes of taking notice of "the fact of the filings" and to "establish the content of the disclosures therein."  Opp. 12 (internal quotation marks and citations omitted).  As such, Plaintiffs agree that the Court may take judicial notice of the Enterprises' SEC filings.  *See also supra* Sec. I.  Of course, as Plaintiffs point out, the Court need not take notice of the "truth" of each statement in each SEC filing (Opp. 12-13), but the Court can and should take notice that the Enterprises made the statements in those filings and at the times they were filed.

For example, the  motion to dismiss cites the 10-Q quarterly reports filed by both Enterprises less than one week prior to execution of the Third Amendment as showing that, at that time, "both Enterprises projected that th[e] circular practice likely would continue over the long term."  FHFA Mot. to Dismiss 23; *see also id.* 15-16.  The Enterprises' SEC filings bear this out.  On August 7 and 8, 2012—less than one week before the Conservator replaced the 10% dividend with a variable net worth dividend via the Third Amendment—the Enterprises stated in their 10-Qs that they did not expect to generate income over the long term sufficient to pay the 10% dividend to Treasury.  *See* FHFA3598 (Freddie Mac announcing that it did not anticipate "generat[ing] net income or comprehensive income in excess of [its] annual dividend obligation

---

2    The case of *Cooperative de Ahorro  y Credito Aguada v. Kidder, Peabody & Co.*, 993 F.2d 269 (1st Cir. 1993), cited by Plaintiffs (Opp. 17) is inapposite.  There, the First Circuit did not generally disapprove of taking judicial notice of press reports or other publications.  Instead, the First Circuit found judicial notice improper because the district court had not given the parties an "opportunity to be heard" on the issue of judicial notice.  *Id.* at 273.  That is obviously not the case here.

to Treasury over the long term"); FHFA3842 at3857 (Fannie Mae announcing that it "d[id] not

expect to generate net income or comprehensive income in excess of our annual dividend

obligation to Treasury over the long term").  As Plaintiffs concede, the Court may take judicial

notice that the Enterprises made these statements just prior to execution of the Third

Amendment.[3]

**III.    The Court May Properly Consider Documents Cited in the Complaints**

Plaintiffs cite, quote, refer to, and rely upon multiple publicly-available documents in

their complaints.  In so doing, Plaintiffs have effectively incorporated those documents by

reference into the complaints, enabling the Court to review the entirety of those documents.  As

explained further below, Plaintiffs' arguments—which amount to an insistence that the Court

review narrow portions of these documents and close its eyes to the remainder of the

documents—are unavailing and contrary to the purpose of the incorporation by reference

doctrine.

Further, Plaintiffs argue that the Court may consider a document incorporated by

reference into the complaint only for the limited purpose of assessing whether "truncated

quotations" are "fair and accurate."  Opp. 23.  Courts, however, do not apply such an artificial

limitation.  Instead, when a document is incorporated by reference, courts may consider the

"complete text and content of [the] document selectively cited to and relied upon in a

complaint."  *FTC v. Benning*, No. 09-cv-3814, 2010 WL 2605178, at *5 (N.D. Cal. June 28,

2010).  As this Court has noted, even if a portion of the document is not referenced in the

---

[3]     The FHFA Defendants and the Enterprises also cite Fannie Mae's 2009 10-K (Annual
Report) for the indisputable fact that the Enterprises have held no annual shareholders meeting
during conservatorship.  *See* FHFA Mot. to Dismiss 38.  Similarly, several of the Enterprises
SEC filings are cited for the indisputable fact that in 2010 and 2011 "Treasury exercised its right
to waive the Periodic Commitment Fee" owed to Treasury under the PSPAs.  FHFA Mot. to
Dismiss 13-14.  Plaintiffs raise no objection to judicial notice of these background facts.

complaint, the entire document may still be reviewed for its "contextual value" when "its authenticity is undisputed." *N.Y. State Bar Ass'n v. FTC*, 276 F. Supp. 2d 110, 114 n.6 (D.D.C. 2003); *see also Harsco Corp. v. Segui*, 91 F.3d 337, 341 n.1 (2d Cir. 1996) (noting that the court could "review . . . in its entirety" a letter "cited to and described in the complaint," though not attached, in resolving motion to dismiss); *Ginx, Inc. v. Soho Alliance*, 720 F. Supp. 2d 342, 345 (S.D.N.Y. 2010) ("To the extent that the complaint refers to or relies on a particular document, it is of course proper for the Court to consider the entire text of that document in deciding any motion to dismiss.").

### A.    FHFA Office of Inspector General Materials

Plaintiffs' complaints contain at least *eight* citations, quotations, and references to the March 20, 2013 OIG Report concerning the Third Amendment. *See* Opp. 26 n.20 (collecting citations). Despite Plaintiffs' heavy reliance on this report, Plaintiffs *oppose* the request that the Court consider the content of the full report. The incorporation by reference doctrine is designed to avoid this very sort of hide-the-ball approach to pleading. *See, e.g.*, *Foster v. Kosseff*, No. 11-cv-5069, 2013 WL 147822, at *3 (E.D. Wash. Jan. 14, 2013) (the "underlying purpose" of the incorporation by reference doctrine is to "prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based." (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007))); *Lasker v. N.Y. State Elec. & Gas Corp.*, No. 94-cv-3781, 1995 WL 867881, at *4 (E.D.N.Y. Aug. 22, 1995) (explaining that the incorporation by reference doctrine "is necessary lest a court be subject to possibly evasive tactics by plaintiffs that may selectively quote from a document not attached to its complaint and thus blindfold the court and prevent a proper consideration of the true merits of the pleadings"). Because Plaintiffs' have plainly based their claims, at least in part, on this Report, the Court can and

should consider the full Report in resolving the motions to dismiss, at least for the limited purposes for which the FHFA Defendants and Enterprises cite this document.

For example, the motion to dismiss quotes this Report as observing that "[m]arket participants [had] expressed concern [before the Third Amendment] that the dividends could siphon off Treasury money needed to keep the Enterprises solvent."  FHFA Mot. to Dismiss 24-25 (quoting OIG Report (Mar. 20, 2013), at "At a Glance" summary page).  Similarly, the motion quotes the Report as observing that "[t]he change to the dividends [via the Third Amendment] provides the market with greater assurance that the Enterprises will have sufficient capital to fulfill their obligations on their bonds and MBS, which encourages continued liquidity in the mortgage market." FHFA Mot. to Dismiss 26 (quoting OIG Report (Mar. 20, 2013) at 14).  Judicial notice that the OIG made these statements is proper for the same reasons it is proper to take judicial notice of the fact that the market participants themselves (i.e., Moody's, Deutsche Bank, and Barclays) made statements expressing concern before the Third Amendment and satisfaction after the Third Amendment.  *See supra* Sec. II(D)(2).

For the same reasons, the Court can and should consider the May 24, 2012 OIG Report. In the Perry Complaint, Plaintiffs cite and quote this OIG report to allege that, as a result of the impact of the Third Amendment, the "preferred and common shareholders of [the Companies] . . . effectively lost their investments."  Perry Compl. ¶ 17 (quoting OIG Report (May 24, 2012) at 25).  Because Plaintiffs rely on this document to substantiate the alleged negative impact of the Third Amendment on the value of Plaintiffs' shares—one of Plaintiffs' central and repeated allegations—Plaintiffs have incorporated this document by reference into their complaints, and the Court may thus consider the report itself.  Such consideration reveals that Plaintiffs allegation is plainly incorrect. *See Haynes v. Navy Fed. Credit Union*, 825 F. Supp. 2d 285, 291 (D.D.C.

2011) (where a document incorporated into complaint "flatly contradict[s]" the complaint's allegations, the document controls).  As the FHFA Defendants and Enterprises explain in their motion to dismiss, the OIG made this statement in May 2012, months *before* the execution of the Third Amendment.  FHFA Mot. to Dismiss 22 n.16.  Consideration of the report itself shows that the OIG was describing the impact of the *original* terms of the PSPAs, not the Third Amendment: "In short, the PSPAs give priority in repayment to Treasury ahead of any other preferred or common shareholders.  Thus, the preferred and common shareholders of Fannie Mae and Freddie Mac did not benefit by Treasury's actions. They effectively lost their investments." FHFA3557 (OIG Report (May 24, 2012)).  In their opposition, Plaintiffs concede that their citation to this OIG report "was in error" and that the OIG's statements were not referencing the Third Amendment.  Opp. 25.

### B. FHFA Statement Announcing the Third Amendment (Aug. 17, 2012); Treasury Press Release Announcing the Third Amendment (Aug. 17, 2012)

Plaintiffs' complaints contain at least *ten* citations, quotations, and references to FHFA's and Treasury's Press Releases announcing the Third Amendment.  *See, e.g.*, Perry Compl. ¶¶ 17, 48, 52, 55; Fairholme Compl. ¶¶ 10, 65, 71; Class Compl. ¶¶ 95, 111.  Accordingly, these documents have been incorporated by reference into the complaints and thus may be considered by the Court in resolving the motions to dismiss.  Thus, in addition to considering the portions of the press releases that Plaintiffs selectively quote and emphasize, the Court should also consider other portions of the press releases, including, for example, FHFA's statement that "[r]eplacing the current fixed dividend in the PSPAs with a variable dividend based on net worth will . . . eliminate the need for Fannie Mae and Freddie Mac to continue to borrow from the Treasury Department to pay dividends.  As Fannie Mae and Freddie Mac shrink, the continued payment of

a fixed dividend could have called into question the adequacy of the financial commitment contained in the PSPAs."  FHFA4047 (FHFA Statement) (Aug. 17, 2012)).

Plaintiffs agree that the Court may consider these documents.  *See* Opp. 24; Pls. Proposed Order.  But Plaintiffs then knock down a straw man, arguing that the Court may not accept the parties' statements in the press releases as "as indisputably true," because the true "motive" behind the Third Amendment is "intensely disputed."  Opp. 24.  The FHFA Defendants and Enterprises are not asking the Court to accept any facts as "indisputably true," other than the fact that the FHFA and Treasury made the statements contained in their respective press releases. Plaintiffs remain free to assert any arguments they may have concerning whether the Conservator and/or Treasury had ulterior motives not expressed in (or contrary to) these press releases.[4]

## CONCLUSION

For the foregoing reasons, in addition to the reasons stated in the Motion for Judicial Notice, the FHFA Defendants and Enterprises respectfully request that the Court grant the Motion for Judicial Notice and consider the documents for the purposes described herein.

---

[4]    As the FHFA Defendants and Enterprises explain elsewhere, whether the Conservator possessed an allegedly improper ulterior motive in carrying out its statutory powers and functions is wholly irrelevant because there is simply no "bad motive" exception to Section 4617(f).  *Leon Cnty. v. FHFA*, 816 F. Supp. 2d 1205, 1208 (N.D. Fla. 2011), *aff'd*, 700 F.3d 1273 (11th Cir. 2012) ("Congress surely knew, when it enacted § 4617(f), that challenges to agency action sometimes assert an improper motive.  *But Congress barred judicial review of the conservator's actions without making an exception for actions said to be taken from an improper motive*.") (emphasis added).  *See generally* FHFA Reply in Supp. of Mot. to Dismiss 10-11; FHFA Opp. to Fairholme Discovery Motion at 17-23 (Doc. # 34) (No. 1:13cv1053).

Dated:  May 2, 2014                        Respectfully submitted,


                                           /s/ Howard N. Cayne
                                           Howard N. Cayne (D.C. Bar # 331306)
                                           Asim Varma (D.C. Bar # 426364)
                                           David B. Bergman (D.C. Bar # 435392)
                                           ARNOLD & PORTER LLP
                                           555 12th Street, N.W.
                                           Washington, D.C.  20004
                                           Telephone: (202) 942-5000
                                           Facsimile: (202) 942-5999
                                           Howard.Cayne@aporter.com
                                           Asim.Varma@aporter.com
                                           David.Bergman@aporter.com

                                           *Attorneys for Defendants Federal Housing
                                           Finance Agency and Director Melvin L.
                                           Watt*


/s/ Michael Joseph Ciatti                   /s/ Paul D. Clement
Michael Joseph Ciatti (D.C. Bar # 467177)   Paul D. Clement (D.C. Bar # 433215)
mciatti@kslaw.com                           pclement@bancroftpllc.com
Graciela Maria Rodriguez                    BANCROFT PLLC
(D.C. Bar # 438955)                         1919 M Street, N.W., Suite 470
gmrodriguez@kslaw.com                       Washington, D.C.  20036
KING & SPALDING, LLP                        Telephone:  202.234.0090
1700 Pennsylvania Avenue, N.W.              Facsimile:  202.234.2806
Suite 200
Washington, D.C.  20006                     *Attorney for the Federal National Mortgage
Telephone:  202.626.5508                    Association*
Facsimile:  202.626.3737

*Attorneys for the Federal Home Loan
Mortgage Corporation*