# *Exhibit A*

# POMERANTZ
## GROSSMAN HUFFORD DAHLSTROM & GROSS LLP

Attorneys at Law

**Jeremy A. Lieberman**
Partner
jalieberman@pomlaw.com

600 Third Avenue
New York, New York 10016
T: 212.661.1100   D: 646.581.9971

January 6, 2014

**VIA FEDERAL EXPRESS**

Board of Directors
c/o William H. McDavid
Corporate Secretary
Freddie Mac
Mail Stop 200
8200 Jones Branch Drive
McLean, VA 22102-3110

Re:     **Shareholder Demand For Board Action**

Dear Members of the Board:

The below-signed firm represents American European Insurance Company, a stockholder of Federal Home Loan Mortgage Corporation ("Freddie Mac" or the "Company"). I write on behalf of American European Insurance Company to demand that the Company's Board of Directors (the "Board") and/or the Federal Housing Finance Agency (the "FHFA"), in its role as Conservator for the Company, take action to remedy the harm to Freddie Mac as a result of the wrongful conduct below.

As you are aware, Freddie Mac has been operating under conservatorship, with the FHFA as its Conservator, since September 6, 2008. At that time, FHFA set forth the purpose and goals of the conservatorship as follows: "The purpose of appointing the Conservator is to preserve and conserve the company's assets and property and to put the company in a sound and solvent condition." This was consistent with the legislation establishing FHFA's authority to place the Company into conservatorship, which states that, "The Agency may, as conservator, take such action as may be (i) necessary to put the regulated entity in a sound and solvent condition; and (ii) appropriate to carry on the business of the regulated entity and preserve and conserve the assets and property of the regulated entity. 12 U.S.C. § 4617(b)(2)(D).

Placing the Company into conservatorship did not, however, eliminate the interests of its common and preferred stockholders. FHFA's director told investors that "the common and all preferred stocks will continue to remain outstanding, and in a Form 8-K filing issued by Freddie Mac on September 11, 2008, Freddie Mac stated that, "The holders of Freddie Mac's existing common stock and preferred stock . . . will retain all their rights in the financial worth of those instruments, as such worth is determined by the market." In a February 2, 2010 letter to Congress, the Director of FHFA confirmed that "Like other corporate executives, the Enterprises' executive officers are subject to the legal responsibility to use sound and prudent business judgment in their

Board of Directors
c/o William H. McDavid
Corporate Secretary
Freddie Mac
Mail Stop 200
8200 Jones Branch Drive
McLean, VA 22102-3110
Page 2

stewardship of their companies," and that FHFA had charged the Companies' boards with
"ensuring normal corporate governance practices and procedures are in place."

By imposing a conservatorship over Freddie Mac, through which FHFA assumed the
powers of its officers and directors, FHFA assumed fiduciary duties of due care, good faith,
loyalty, and candor, and was and is required to use its utmost ability to control and manage Freddie
Mac in a fair, just, honest, and equitable manner.  As Conservator, FHFA was and is required to
act in furtherance of the best interests of the Companies and their shareholders so as to benefit all
shareholders equally and not in furtherance of the personal interest or benefit of FHFA, the U.S.
Department of the Treasury ("Treasury"), or the federal government.

On September 7, 2008, Freddie Mac, acting through FHFA as Conservator, and Treasury
entered into a Purchase Agreement pursuant to which Freddie Mac issued to Treasury (a) one
million shares of Variable Liquidation Preference Senior Preferred Stock ("Senior Preferred
Stock") and (b) a warrant to purchase, for a nominal price, shares of Freddie Mac common stock
equal to 79.9% of the total number of shares of common stock outstanding on a fully diluted basis.
The Treasury also permitted the Company to draw up to $100 billion from Treasury (which amount
was later increased to $200 billion).  The Senior Preferred Stock has a liquidation preference equal
to $1 billion plus the sum of all draws by each company against Treasury's funding commitment,
and is also entitled to a cumulative dividend equal to 10% of the outstanding liquidation preference.
As of December 31, 2012, the aggregate liquidation preference of the Senior Preferred Stock was
$72.3 billion.

As a result of the Purchase Agreement, Treasury is now the controlling and dominant
shareholder of Freddie Mac, and therefore, like FHFA, Treasury owes fiduciary duties to the
Company and its minority shareholders, including American European Insurance Company.

On August 17, 2012, Freddie Mac, acting through FHFA as Conservator, and Treasury
entered into an amendment to the Purchase Agreements (the "Third Amendment") that, amongst
other things, replaced the fixed 10% dividend on the Senior Preferred Stock with a net worth sweep
dividend beginning in the first quarter of 2013.  Under the net worth sweep, Freddie Mac is
required to pay dividends to the extent that its net worth exceeds a permitted capital reserve amount
(which is scheduled to decline to zero in 2013).  Accordingly, over the long term, Freddie Mac
will not be able to build or retain any net worth surplus or return capital to stockholders other than
Treasury, and all future profits will effectively be distributed to Treasury.  As Treasury stated on
the day of the announcement, the Third Amendment was intended "help expedite the wind down
of Fannie Mae and Freddie Mac, make sure that every dollar of earnings each firm generates is
used to benefit taxpayers, and support the continued flow of mortgage credit during a responsible
transition to a reformed housing finance market."  It called the amendment a full income sweep of
"every dollar of profit that [the] firm earns going forward," and that the amendment will fulfill the

Board of Directors
c/o William H. McDavid
Corporate Secretary
Freddie Mac
Mail Stop 200
8200 Jones Branch Drive
McLean, VA 22102-3110
Page 3

"commitment made in the Administration's 2011 White Paper that [Fannie Mae and Freddie Mac] will be wound down and will not be allowed to retain profits, rebuild capital, and return to the market in their prior form."

Freddie Mac did not receive any meaningful consideration for agreeing to the Third Amendment. The amount of cash that Freddie Mac transfers to the Treasury as dividends does not reduce the amount of Senior Preferred Stock outstanding, and FHFA has not permitted Freddie Mac to redeem the Senior Preferred Stock. Thus, regardless of how much money Freddie Mac send to Treasury, all of the Senior Preferred Stock will remain outstanding, and Treasury will continue to take substantially all of Freddie Mac's profits as long as it remains in business. The Third Amendment thus enriches the federal government through a self-dealing arrangement, and destroys tens of billions of dollars of value in Freddie Mac's Preferred Stock and common stock. Treasury and FHFA effectively nationalized Freddie Mac while the FHFA was supposed to be serving as its Conservator.

Treasury has reaped immense profits via the Third Amendment. On or about June 30, 2013, Freddie Mac paid Treasury a dividend of $7 billion, and Freddie Mac is believed to have paid another dividend on $4.4 billion in September. Through June 30, 2013, Freddie Mac has paid Treasury aggregate cash dividends of $36.6 billion, an amount equal to 51% of its aggregate draws received from Treasury, but the liquidation preference of the Senior Preferred Stock remains unchanged.

The Third Amendment constituted an egregiously self-dealing transaction. FHFA and Treasury stood on both sides of the decision to implement the Third Amendment. Although Treasury has gained, and will gain, enormous benefits from the Third Amendment, Freddie Mac received nothing of value in return. The Third Amendment was neither entirely nor intrinsically fair, nor did it further any valid business purpose of Freddie Mac, nor did it reflect a good faith business judgment as to what was in the best interests of Freddie Mac or its shareholders. As such, the Third Amendment was, and is, waste and constituted a breach of the fiduciary duties owed to Freddie Mac by FHFA and Treasury, as Freddie Mac's controlling stockholder.

Finally, the statutes and regulations governing Treasury and FHFA's relations with Freddie Mac did not authorize or permit them to enter into the Third Amendment. Denying Freddie Mac the ability to rebuild its capital reserves and taking steps to wind down the Company are completely inconsistent with FHFA's statutory charge to put the Company in a sound and solvent condition and conserve its assets and property.

Accordingly, American European Insurance Company demands that the Board and/or FHFA:

Board of Directors
c/o William H. McDavid
Corporate Secretary
Freddie Mac
Mail Stop 200
8200 Jones Branch Drive
McLean, VA 22102-3110
Page 4

     i.    Commence a civil action against FHFA and Treasury to recover for the benefit of the Company all damages that the Company has suffered as a result of FHFA and Treasury's breaches of their respective fiduciary duties, including all dividends that the Company has paid pursuant to the Third Amendment in excess of its prior obligations under the Purchase Agreement; and

    ii.    Commence a civil action for a declaration that the Third Amendment is null and void.

Under the conservatorship, the Board serves on behalf of, and exercises authority as directed by FHFA, and lacks authority to itself take action regarding dividends or the conservatorship. Nonetheless, according to Freddie Mac's Form 10-K filing for fiscal year 2012, "FHFA has indicated that it expects the Board to review and approve all matters that will require Conservator approval before such matters are submitted to FHFA." Accordingly, American European Insurance Company requests that the Board approve this demand and submit it to FHFA for ratification. American European Insurance Company has copied FHFA on this demand as a courtesy.

American European Insurance Company owned Freddie Mac stock at the time of the actions complained of and has held Freddie Mac stock continuously since then. Specifically, as of August 17, 2012, American European Insurance Company owned Freddie Mac Variable Rate Series M Preferred Stock. Thus, American European Insurance Company has standing to challenge the Third Amendment and demand the relief requested in this letter.

American European Insurance Company reserves its right to commence a derivative action on behalf of the Company seeking appropriate relief if the Board has not commenced an action and taken the other measures as demanded herein within 90 days of receipt of this letter.

Very truly yours,

Jeremy A. Lieberman

# *Exhibit B*



**KESSLERTOPAZ**
**MELTZERCHECK** LLP
ATTORNEYS AT LAW

Direct Dial:  (610) 822-2209
E-Mail: ezagar@ktmc.com

January 7, 2014

**VIA FEDEX**

Board of Directors
c/o William H. McDavid
Corporate Secretary
Freddie Mac
Mail Stop 200
8200 Jones Branch Drive
McLean, VA 22102-3110

Re:   <strong><u>Shareholder Demand For Board Action</u></strong>

Dear Members of the Board:

The below-signed firm represents Joseph Cacciapalle, a stockholder of Federal Home Loan Mortgage Corporation ("Freddie Mac" or the "Company").  We write on behalf of Mr. Cacciapalle to demand that the Company's Board of Directors (the "Board") and/or the Federal Housing Finance Agency (the "FHFA"), in its role as Conservator for the Company, take action to remedy the harm to Freddie Mac as a result of the wrongful conduct below.

As you are aware, Freddie Mac has been operating under conservatorship, with the FHFA as its Conservator, since September 6, 2008.  At that time, FHFA set forth the purpose and goals of the conservatorship as follows: "The purpose of appointing the Conservator is to preserve and conserve the company's assets and property and to put the company in a sound and solvent condition."  This was consistent with the legislation establishing FHFA's authority to place the Company into conservatorship, which states that, "The Agency may, as conservator, take such action as may be (i) necessary to put the regulated entity in a sound and solvent condition; and (ii) appropriate to carry on the business of the regulated entity and preserve and conserve the assets and property of the regulated entity.  12 U.S.C. § 4617(b)(2)(D).

Placing the Company into conservatorship did not, however, eliminate the interests of its common and preferred stockholders.  FHFA's director told investors that "the common and all preferred stocks will continue to remain outstanding, and in a Form 8-K filing issued by Freddie Mac on September 11, 2008, Freddie Mac stated that, "The holders of Freddie Mac's existing common stock and preferred stock . . . will retain all their rights in the financial worth of those instruments, as such worth is determined by the market." In  a February 2, 2010 letter to Congress, the Director of FHFA confirmed that "Like other corporate executives, the Enterprises' executive officers are subject to the legal responsibility to use sound and prudent business judgment in their stewardship of their companies," and that FHFA had charged the

**280 King of Prussia Road, Radnor, Pennsylvania 19087  T. 610-667-7706   F. 610-667-7056  info@ktmc.com**
**One Sansome Street, Suite 1850, San Francisco, California 94104  T. 415-400-3000   F. 415-400-3001  info@ktmc.com**
**WWW.KTMC.COM**



Board of Directors
c/o William H. McDavid
Corporate Secretary
Freddie Mac
Mail Stop 200
8200 Jones Branch Drive
McLean, VA 22102-3110
Page 2



Companies' boards with "ensuring normal corporate governance practices and procedures are in place."

By imposing a conservatorship over Freddie Mac, through which FHFA assumed the powers of its officers and directors, FHFA assumed fiduciary duties of due care, good faith, loyalty, and candor, and was and is required to use its utmost ability to control and manage Freddie Mac in a fair, just, honest, and equitable manner. As Conservator, FHFA was and is required to act in furtherance of the best interests of the Companies and their shareholders so as to benefit all shareholders equally and not in furtherance of the personal interest or benefit of FHFA, the U.S. Department of the Treasury ("Treasury"), or the federal government.

On September 7, 2008, Freddie Mac, acting through FHFA as Conservator, and Treasury entered into a Purchase Agreement pursuant to which Freddie Mac issued to Treasury (a) one million shares of Variable Liquidation Preference Senior Preferred Stock ("Senior Preferred Stock") and (b) a warrant to purchase, for a nominal price, shares of Freddie Mac common stock equal to 79.9% of the total number of shares of common stock outstanding on a fully diluted basis. The Treasury also permitted the Company to draw up to $100 billion from Treasury (which amount was later increased to $200 billion). The Senior Preferred Stock has a liquidation preference equal to $1 billion plus the sum of all draws by each company against Treasury's funding commitment, and is also entitled to a cumulative dividend equal to 10% of the outstanding liquidation preference. As of December 31, 2012, the aggregate liquidation preference of the Senior Preferred Stock was $72.3 billion.

As a result of the Purchase Agreement, Treasury is now the controlling and dominant shareholder of Freddie Mac, and therefore, like FHFA, Treasury owes fiduciary duties to the Company and its minority shareholders, including Mr. Cacciapalle.

On August 17, 2012, Freddie Mac, acting through FHFA as Conservator, and Treasury entered into an amendment to the Purchase Agreements (the "Third Amendment") that, amongst other things, replaced the fixed 10% dividend on the Senior Preferred Stock with a net worth sweep dividend beginning in the first quarter of 2013. Under the net worth sweep, Freddie Mac is required to pay dividends to the extent that its net worth exceeds a permitted capital reserve amount (which is scheduled to decline to zero in 2013). Accordingly, over the long term, Freddie Mac will not be able to build or retain any net worth surplus or return capital to stockholders other than Treasury, and all future profits will effectively be distributed to Treasury. As Treasury stated on the day of the announcement, the Third Amendment was intended "help expedite the wind down of Fannie Mae and Freddie Mac, make sure that every dollar of earnings each firm generates is used to benefit taxpayers, and support the continued flow of mortgage credit during a responsible transition to a reformed housing finance market." It called the amendment a full income sweep of "every dollar of profit that [the] firm earns going forward,"



Board of Directors
c/o William H. McDavid
Corporate Secretary
Freddie Mac
Mail Stop 200
8200 Jones Branch Drive
McLean, VA 22102-3110
Page 3



and that the amendment will fulfill the "commitment made in the Administration's 2011 White Paper that [Fannie Mae and Freddie Mac] will be wound down and will not be allowed to retain profits, rebuild capital, and return to the market in their prior form."

Freddie Mac did not receive any meaningful consideration for agreeing to the Third Amendment. The amount of cash that Freddie Mac transfers to the Treasury as dividends does not reduce the amount of Senior Preferred Stock outstanding, and FHFA has not permitted Freddie Mac to redeem the Senior Preferred Stock. Thus, regardless of how much money Freddie Mac send to Treasury, all of the Senior Preferred Stock will remain outstanding, and Treasury will continue to take substantially all of Freddie Mac's profits as long as it remains in business. The Third Amendment thus enriches the federal government through a self-dealing arrangement, and destroys tens of billions of dollars of value in Freddie Mac's Preferred Stock and common stock. Treasury and FHFA effectively nationalized Freddie Mac while the FHFA was supposed to be serving as its Conservator.

Treasury has reaped immense profits via the Third Amendment. On or about June 30, 2013, Freddie Mac paid Treasury a dividend of $7 billion, and Freddie Mac is believed to have paid another dividend on $4.4 billion in September. Through June 30, 2013, Freddie Mac has paid Treasury aggregate cash dividends of $36.6 billion, an amount equal to 51% of its aggregate draws received from Treasury, but the liquidation preference of the Senior Preferred Stock remains unchanged.

The Third Amendment constituted an egregiously self-dealing transaction. FHFA and Treasury stood on both sides of the decision to implement the Third Amendment. Although Treasury has gained, and will gain, enormous benefits from the Third Amendment, Freddie Mac received nothing of value in return. The Third Amendment was neither entirely nor intrinsically fair, nor did it further any valid business purpose of Freddie Mac, nor did it reflect a good faith business judgment as to what was in the best interests of Freddie Mac or its shareholders. As such, the Third Amendment was, and is, waste and constituted a breach of the fiduciary duties owed to Freddie Mac by FHFA and Treasury, as Freddie Mac's controlling stockholder.

Finally, the statutes and regulations governing Treasury and FHFA's relations with Freddie Mac did not authorize or permit them to enter into the Third Amendment. Denying Freddie Mac the ability to rebuild its capital reserves and taking steps to wind down the Company are completely inconsistent with FHFA's statutory charge to put the Company in a sound and solvent condition and conserve its assets and property.

Accordingly, Mr. Cacciapalle demands that the Board and/or FHFA:



Board of Directors
c/o William H. McDavid
Corporate Secretary
Freddie Mac
Mail Stop 200
8200 Jones Branch Drive
McLean, VA 22102-3110
Page 4



i.   Commence a civil action against FHFA and Treasury to recover for the benefit of the Company all damages that the Company has suffered as a result of FHFA and Treasury's breaches of their respective fiduciary duties, including all dividends that the Company has paid pursuant to the Third Amendment in excess of its prior obligations under the Purchase Agreement; and

ii.  Commence a civil action for a declaration that the Third Amendment is null and void.

Under the conservatorship, the Board serves on behalf of, and exercises authority as directed by FHFA, and lacks authority to itself take action regarding dividends or the conservatorship. Nonetheless, according to Freddie Mac's Form 10-K filing for fiscal year 2012, "FHFA has indicated that it expects the Board to review and approve all matters that will require Conservator approval before such matters are submitted to FHFA." Accordingly, Mr. Cacciapalle requests that the Board approve this demand and submit it to FHFA for ratification. Mr. Cacciapalle has copied FHFA on this demand as a courtesy.

Mr. Cacciapalle owned Freddie Mac stock at the time of the actions complained of and has held Freddie Mac stock continuously since then. Specifically, as of August 17, 2012, Mr. Cacciapalle owned Freddie Mac 8.375% Series Z Preferred Stock. Thus, Mr. Cacciapalle has standing to challenge the Third Amendment and demand the relief requested in this letter.

Mr. Cacciapalle reserves his right to commence a derivative action on behalf of the Company seeking appropriate relief if the Board has not commenced an action and taken the other measures as demanded herein within 90 days of receipt of this letter.

Very truly yours,

KESSLER TOPAZ
MELTZER & CHECK, LLP

Eric L. Zagar

ELZ/cp
Enclosures
cc:   David L. Wales *(via email)*
      Hamish P.M. Hume *(via email)*
      Geoffrey C. Jarvis *(via email)*
      Lee D. Rudy *(via email)*

## **AFFIDAVIT**

I, Joseph Cacciapalle, being duly sworn, do hereby state that that, as of August 17, 2012,

I beneficially owned and held a total of 2,500 shares of Federal Home Loan Mortgage

Corporation preferred stock being held in my Account No. 5537 2781 9133, as shown by the

annexed statements of said account, which is a true and correct copy of the original records.

Further, affiant saith not.

Executed this _4_ day of January, 2014

_Joseph Cacciapalle_
Joseph Cacciapalle

Sworn to and subscribed before me
This _4_ day of January 2014

_Kelly Ann Miller_
Notary Public
My commission expires: _August 12, 2014_



UBS FINANCIAL SERVICES INC.
7500 COLLEGE BLVD.
SUITE 225
OVERLAND PARK, KS 66210-9840

*Important. Please retain for your records.*

## Confirmation

PAGE 1 OF 1

**Account Number**

UBS-FINSVC CUST ROLLOVER IRA
JOSEPH CACCIAPALLE IRA R/O

We confirm the following transaction(s):
*Trade activity*

| Trade date | Date processed | | Payment date/<br>Settlement date |
|---|---|---|---|
| 02/19/2008 | 02/19/2008 | | 02/22/2008 |

**BOUGHT**

| Reference no. | Quantity/<br>Face value | Description | Gross<br>amount | Price | Commission/<br>Mark-up | Accrued<br>interest | Other fees/<br>and charges | Total amount |
|---|---|---|---|---|---|---|---|---|
| 18927 | 2,500 | FHLMC SER Z 8.375%<br>PREFERRED CLBL | | | | | | |
| **Total** | **2,500** | | | | | | | |

It is important that you retain this trade confirmation for your tax and financial records. When remittances/securities are due, they must be received by us at the address above on or before the payment/settlement date. Payments not received by the settlement date may be subject to a late settlement fee. Please indicate your account number on your checks or correspondence. Make checks payable to UBS Financial Services Inc. Please see the back of this confirmation for additional terms and definitions applicable to this transaction.

UBS Financial Services Inc. is an indirect subsidiary of UBS AG and an affiliate of UBS Securities LLC.



# Ameriprise Brokerage Account (cont'd)

C/O JOSEPH CACCIAPALLE

## Account Holdings (continued)

| Symbol/Cusip Rating | Description | Beginning Value | Quantity | Ending Price | Ending Value | Cost Basis.1 | Estimated Unrealized Gain/Loss | Annual Income | Yield |
|---|---|---|---|---|---|---|---|---|---|
| **Fixed Income/Accrued Int. (as available)** | | | | | | | | | |
| FMCKJ Moody's = CA S&P = C | FEDERAL HOME LOAN MTG CORP NON-CUMULATIVE PERPETUAL 8.375% PFD | | 2,500.00000 | | | | | | |

## POWER OF ATTORNEY

The undersigned, in my capacity as the beneficial owner of 2,500 shares of preferred stock of Federal Home Loan Mortgage Corporation ("Freddie Mac") as of August 17, 2012, does here by make, constitute and appoint the law firm of Kessler Topaz Meltzer & Check, LLP, and the partners, directors, associates, employees, or other persons designated by them, acting singly or in combination, as my true and lawful agent and attorney-in-fact with the power and authority to act in my place and stead and on my behalf to make a demand on the corporation pursuant to Va. Code Ann. § 13.1-672.1(B) as set forth in the foregoing letter to Freddie Mac, and to do all other things which I could do pursuant to Article 8.1 of the Virginia Stock Corporation Act.

Executed this _4_ day of January, 2014

Joseph Cacciapalle

Sworn to and subscribed before me
This _4_ day of January 2014

Notary Public
My commission expires: _August 12, 2014_

KELLY ANN MILLER
NOTARY
My Comm. Exp.
August 12, 2014
PUBLIC
NEW JERSEY

# *Exhibit C*



**KESSLERTOPAZ**
**MELTZERCHECK** LLP
ATTORNEYS AT LAW

Direct Dial:  (610) 822-2209
E-Mail: ezagar@ktmc.com

January 7, 2014

**VIA FEDEX**

Board of Directors
c/o William H. McDavid
Corporate Secretary
Freddie Mac
Mail Stop 200
8200 Jones Branch Drive
McLean, VA 22102-3110

Re:    **Shareholder Demand For Board Action**

Dear Members of the Board:

The below-signed firm represents Michelle M. Miller, a stockholder of Federal Home Loan Mortgage Corporation ("Freddie Mac" or the "Company"). I write on behalf of Ms. Miller to demand that the Company's Board of Directors (the "Board") and/or the Federal Housing Finance Agency (the "FHFA"), in its role as Conservator for the Company, take action to remedy the harm to Freddie Mac as a result of the wrongful conduct below.

As you are aware, Freddie Mac has been operating under conservatorship, with the FHFA as its Conservator, since September 6, 2008. At that time, FHFA set forth the purpose and goals of the conservatorship as follows: "The purpose of appointing the Conservator is to preserve and conserve the company's assets and property and to put the company in a sound and solvent condition." This was consistent with the legislation establishing FHFA's authority to place the Company into conservatorship, which states that, "The Agency may, as conservator, take such action as may be (i) necessary to put the regulated entity in a sound and solvent condition; and (ii) appropriate to carry on the business of the regulated entity and preserve and conserve the assets and property of the regulated entity. 12 U.S.C. § 4617(b)(2)(D).

Placing the Company into conservatorship did not, however, eliminate the interests of its common and preferred stockholders. FHFA's director told investors that "the common and all preferred stocks will continue to remain outstanding, and in a Form 8-K filing issued by Freddie Mac on September 11, 2008, Freddie Mac stated that, "The holders of Freddie Mac's existing common stock and preferred stock . . . will retain all their rights in the financial worth of those instruments, as such worth is determined by the market." In  a February 2, 2010 letter to Congress, the Director of FHFA confirmed that "Like other corporate executives, the Enterprises' executive officers are subject to the legal responsibility to use sound and prudent business judgment in their stewardship of their companies," and that FHFA had charged the

280 King of Prussia Road, Radnor, Pennsylvania 19087  T. 610-667-7706  F. 610-667-7056  info@ktmc.com
One Sansome Street, Suite 1850, San Francisco, California 94104  T. 415-400-3000  F. 415-400-3001  info@ktmc.com
WWW.KTMC.COM



Board of Directors
c/o William H. McDavid
Corporate Secretary
Freddie Mac
Mail Stop 200
8200 Jones Branch Drive
McLean, VA 22102-3110
Page 2



Companies' boards with "ensuring normal corporate governance practices and procedures are in place."

By imposing a conservatorship over Freddie Mac, through which FHFA assumed the powers of its officers and directors, FHFA assumed fiduciary duties of due care, good faith, loyalty, and candor, and was and is required to use its utmost ability to control and manage Freddie Mac in a fair, just, honest, and equitable manner. As Conservator, FHFA was and is required to act in furtherance of the best interests of the Companies and their shareholders so as to benefit all shareholders equally and not in furtherance of the personal interest or benefit of FHFA, the U.S. Department of the Treasury ("Treasury"), or the federal government.

On September 7, 2008, Freddie Mac, acting through FHFA as Conservator, and Treasury entered into a Purchase Agreement pursuant to which Freddie Mac issued to Treasury (a) one million shares of Variable Liquidation Preference Senior Preferred Stock ("Senior Preferred Stock") and (b) a warrant to purchase, for a nominal price, shares of Freddie Mac common stock equal to 79.9% of the total number of shares of common stock outstanding on a fully diluted basis. The Treasury also permitted the Company to draw up to $100 billion from Treasury (which amount was later increased to $200 billion). The Senior Preferred Stock has a liquidation preference equal to $1 billion plus the sum of all draws by each company against Treasury's funding commitment, and is also entitled to a cumulative dividend equal to 10% of the outstanding liquidation preference.   As of December 31, 2012, the aggregate liquidation preference of the Senior Preferred Stock was $72.3 billion.

As a result of the Purchase Agreement, Treasury is now the controlling and dominant shareholder of Freddie Mac, and therefore, like FHFA, Treasury owes fiduciary duties to the Company and its minority shareholders, including Ms. Miller.

On August 17, 2012, Freddie Mac, acting through FHFA as Conservator, and Treasury entered into an amendment to the Purchase Agreements (the "Third Amendment") that, amongst other things, replaced the fixed 10% dividend on the Senior Preferred Stock with a net worth sweep dividend beginning in the first quarter of 2013. Under the net worth sweep, Freddie Mac is required to pay dividends to the extent that its net worth exceeds a permitted capital reserve amount (which is scheduled to decline to zero in 2013). Accordingly, over the long term, Freddie Mac will not be able to build or retain any net worth surplus or return capital to stockholders other than Treasury, and all future profits will effectively be distributed to Treasury. As Treasury stated on the day of the announcement, the Third Amendment was intended "help expedite the wind down of Fannie Mae and Freddie Mac, make sure that every dollar of earnings each firm generates is used to benefit taxpayers, and support the continued flow of mortgage credit during a responsible transition to a reformed housing finance market." It called the amendment a full income sweep of "every dollar of profit that [the] firm earns going forward,"

Board of Directors
c/o William H. McDavid
Corporate Secretary
Freddie Mac
Mail Stop 200
8200 Jones Branch Drive
McLean, VA 22102-3110
Page 3



and that the amendment will fulfill the "commitment made in the Administration's 2011 White Paper that [Fannie Mae and Freddie Mac] will be wound down and will not be allowed to retain profits, rebuild capital, and return to the market in their prior form."

Freddie Mac did not receive any meaningful consideration for agreeing to the Third Amendment. The amount of cash that Freddie Mac transfers to the Treasury as dividends does not reduce the amount of Senior Preferred Stock outstanding, and FHFA has not permitted Freddie Mac to redeem the Senior Preferred Stock. Thus, regardless of how much money Freddie Mac send to Treasury, all of the Senior Preferred Stock will remain outstanding, and Treasury will continue to take substantially all of Freddie Mac's profits as long as it remains in business. The Third Amendment thus enriches the federal government through a self-dealing arrangement, and destroys tens of billions of dollars of value in Freddie Mac's Preferred Stock and common stock. Treasury and FHFA effectively nationalized Freddie Mac while the FHFA was supposed to be serving as its Conservator.

Treasury has reaped immense profits via the Third Amendment. On or about June 30, 2013, Freddie Mac paid Treasury a dividend of $7 billion, and Freddie Mac is believed to have paid another dividend on $4.4 billion in September. Through June 30, 2013, Freddie Mac has paid Treasury aggregate cash dividends of $36.6 billion, an amount equal to 51% of its aggregate draws received from Treasury, but the liquidation preference of the Senior Preferred Stock remains unchanged.

The Third Amendment constituted an egregiously self-dealing transaction. FHFA and Treasury stood on both sides of the decision to implement the Third Amendment. Although Treasury has gained, and will gain, enormous benefits from the Third Amendment, Freddie Mac received nothing of value in return. The Third Amendment was neither entirely nor intrinsically fair, nor did it further any valid business purpose of Freddie Mac, nor did it reflect a good faith business judgment as to what was in the best interests of Freddie Mac or its shareholders. As such, the Third Amendment was, and is, waste and constituted a breach of the fiduciary duties owed to Freddie Mac by FHFA and Treasury, as Freddie Mac's controlling stockholder.

Finally, the statutes and regulations governing Treasury and FHFA's relations with Freddie Mac did not authorize or permit them to enter into the Third Amendment. Denying Freddie Mac the ability to rebuild its capital reserves and taking steps to wind down the Company are completely inconsistent with FHFA's statutory charge to put the Company in a sound and solvent condition and conserve its assets and property.

Accordingly, Ms. Miller demands that the Board and/or FHFA:



Board of Directors
c/o William H. McDavid
Corporate Secretary
Freddie Mac
Mail Stop 200
8200 Jones Branch Drive
McLean, VA 22102-3110
Page 4



     i.     Commence a civil action against FHFA and Treasury to recover for the benefit of the Company all damages that the Company has suffered as a result of FHFA and Treasury's breaches of their respective fiduciary duties, including all dividends that the Company has paid pursuant to the Third Amendment in excess of its prior obligations under the Purchase Agreement; and

    ii.     Commence a civil action for a declaration that the Third Amendment is null and void.

Under the conservatorship, the Board serves on behalf of, and exercises authority as directed by FHFA, and lacks authority to itself take action regarding dividends or the conservatorship. Nonetheless, according to Freddie Mac's Form 10-K filing for fiscal year 2012, "FHFA has indicated that it expects the Board to review and approve all matters that will require Conservator approval before such matters are submitted to FHFA." Accordingly, Ms. Miller requests that the Board approve this demand and submit it to FHFA for ratification. Ms. Miller has copied FHFA on this demand as a courtesy.

Ms. Miller owned Freddie Mac stock at the time of the actions complained of and has held Freddie Mac stock continuously since then. Specifically, as of August 17, 2012, Ms. Miller owned Freddie Mac common stock. Thus, Ms. Miller has standing to challenge the Third Amendment and demand the relief requested in this letter.

Ms. Miller reserves her right to commence a derivative action on behalf of the Company seeking appropriate relief if the Board has not commenced an action and taken the other measures as demanded herein within 90 days of receipt of this letter.

                                        Very truly yours,

                                        KESSLER TOPAZ
                                        MELTZER & CHECK, LLP

                                        Eric L. Zagar

ELZ/cp
Enclosures
cc:     David L. Wales *(via email)*
        Hamish P.M. Hume *(via email)*
        Geoffrey C. Jarvis *(via email)*
        Lee D. Rudy *(via email)*

**AFFIDAVIT**

I, Michelle M. Miller, being duly sworn, do hereby state that that, as of August 17, 2012,

I beneficially owned and held a total of 500 shares of Federal Home Loan Mortgage Corporation

preferred stock being held in my Account No. 0002438335, as shown by the annexed statements

of said account, which is a true and correct copy of the original records.

Further, affiant saith not.

Executed this 3ʳᵈ day of January, 2014

_Michelle M. Miller_
Michelle M. Miller

Sworn to and subscribed before me
This 3ʳᵈ day of January 2014

_Mary E. LeGrand_
Notary Public
My commission expires: _March 5, 2016_

MARY E. LEGRAND
Notary Public - Notary Seal
STATE OF MISSOURI
St. Louis County
My Commission Expires: Mar. 5, 2016
Commission # 12310862



**Symbol FRE**

## Symbol History

| Description | CUSIP | Type | Issue Date | Expiration Date |
|---|---|---|---|---|
| **FRE FREDDIE MAC CORP** | ██████ | stock | 10/02/1988 | 07/08/2010 |

### 313400301 Transactions

| Date | Transaction | Shares | Cost | Proceeds |
|---|---|---|---|---|
| 10/20/2009 | Buy | 500 | ████████ | |
| 07/08/2010 | CA: Name/Symbol Change to  FMCC | -500 | | |

The Gain and Loss Tax Management Tool is offered by Wolters Kluwer Financial Services, Inc. and is made available by Capital One ShareBuilder, Inc. Capital One ShareBuilder, Inc. and Wolters Kluwer Financial Services are separate companies and are not affiliated with each other.

**Cost Basis Reported:** Tax lots with a 'Cost Basis Reported' designation of 'No' are believed to be accurate, but are not guaranteed or warranted by Capital One ShareBuilder, Inc. We are providing this gains and loss information as a convenience. We recommend you consult with a qualified tax advisor with respect to your tax reporting responsibilities.

Securities products are offered by Capital One ShareBuilder, Inc., a registered broker-dealer and Member FINRA/SIPC. Capital One ShareBuilder, Inc. is a subsidiary of **Capital One Financial Corporation.** Brokerage Financial Statement.

**Securities products are: Not FDIC insured. Not bank guaranteed. May lose value.**

© 2013 Capital One. Capital One and ShareBuilder are federally registered service marks. All rights reserved.

**SIPC**

| **PLEASE PRINT AND RETAIN FOR YOUR RECORDS** |
|:---:|
| Note: This is your only notice. You will not receive a hardcopy statement by U.S. Mail. |

**Capital One ShareBuilder, Inc. - Statement of Account**

| Michelle m Miller | Capital One ShareBuilder, Inc. |
|---|---|
| ███████████████ | 83 South King Street |
|  | Suite 700 |
|  | Seattle, Washington  98104 |
|  | 1-800-SHRBLDR (800-747-2537) |
|  | ████████████████ |

ACCOUNT VALUE SUMMARY

| **ACCOUNT** | **THIS PERIOD** | **LAST PERIOD** | **CHANGE IN VALUE** |
|---|---|---|---|
| ████████████████████████████████████████ | | | |

EARNINGS SUMMARY

| **EARNINGS TYPE** | **THIS PERIOD** | **YEAR-TO-DATE** |
|---|---|---|
| ████████████████████████████ | | |

SECURITIES HELD IN ACCOUNT

| **EQUITY POSITIONS** | **SYMBOL** | **QUANTITY** | **PRICE** | **MARKET VALUE** |
|---|---|---|---|---|
| ████████████████████████████████████████ | | | | |
| FREDDIE MAC | FMCC | 500.0000 | ██████ | ████████ |
| ████████████████████████████████████████ | | | | |

## POWER OF ATTORNEY

The undersigned, in my capacity as the beneficial owner of 500 shares of preferred stock of Federal Home Loan Mortgage Corporation ("Freddie Mac") as of August 17, 2012, does hereby make, constitute and appoint the law firm of Kessler Topaz Meltzer & Check, LLP, and the partners, directors, associates, employees, or other persons designated by them, acting singly or in combination, as my true and lawful agent and attorney-in-fact with the power and authority to act in my place and stead and on my behalf to make a demand on the corporation pursuant to Va. Code Ann. § 13.1-672.1(B) as set forth in the foregoing letter to Freddie Mac, and to do all other things which I could do pursuant to Article 8.1 of the Virginia Stock Corporation Act.

Executed this 3rd day of January, 2014

Michelle M. Miller

Sworn to and subscribed before me
This 3rd day of January 2014

Notary Public
My commission expires: March 5, 2016

MARY E. LEGRAND
Notary Public - Notary Seal
STATE OF MISSOURI
St. Louis County
My Commission Expires:  Mar. 5, 2016
Commission # 12310862

# *Exhibit D*



# Federal Housing Finance Agency

### Constitution Center
400 7th Street, S.W.
Washington, D.C. 20024
Telephone: (202) 649-3800
Facsimile: (202) 649-1071
www.fhfa.gov

April 9, 2014

VIA ELECTRONIC MAIL

Jeremy A. Lieberman, Esq.
Pomerantz LLP
600 Third Avenue
New York, New York 10016

Dear Mr. Lieberman:

The Federal Housing Finance Agency in its capacity as Conservator of Freddie Mac ("FHFA" or "Conservator") has reviewed your January 6, 2014 letter ("Letter") sent on behalf of Freddie Mac stockholder American European Insurance Company, demanding that Freddie Mac's Board of Directors and/or FHFA take certain legal action challenging the Third Amendment to the Preferred Stock Purchase Agreement (the "Third Amendment") that the Conservator, on behalf of Freddie Mac, has with Treasury.  Please be advised that the Conservator does not intend to authorize Freddie Mac or its directors or officers on behalf of Freddie Mac to take the actions that the Letter demands.

I must inform you that the action your Letter threatens if Freddie Mac fails to accede to the shareholder demand you advance—a derivative suit on behalf of Freddie Mac—is one that stockholders may not undertake during conservatorship.  When the Conservator was appointed, it succeeded to "all rights, titles, powers, and privileges" of Freddie Mac and its stockholders with respect to Freddie Mac and its assets, including the right to bring derivative actions, such as the action you threaten.  *See, e.g., In re Fed. Nat'l Mortg. Ass'n Secs., Derivative & "ERISA" Litig.*, 629 F. Supp. 2d 1 (D.D.C. 2009), *aff'd sub nom. Kellmer v. Raines*, 674 F.3d 848 (D.C. Cir. 2012).

With all best wishes, I am

Sincerely,

Alfred M. Pollard
General Counsel

# *Exhibit E*



**Federal Housing Finance Agency**

Constitution Center
400 7th Street, S.W.
Washington, D.C. 20024
Telephone: (202) 649-3800
Facsimile: (202) 649-1071
www.fhfa.gov

April 9, 2014

VIA ELECTRONIC MAIL

Eric L. Zagar, Esq.
Kessler Topaz Meltzer & Check LLP
280 King of Prussia Road
Radnor, Pennsylvania 19087

Dear Mr. Zagar:

The Federal Housing Finance Agency in its capacity as Conservator of Freddie Mac ("FHFA" or "Conservator") has reviewed your January 7, 2014 letter ("Letter") sent on behalf of Freddie Mac stockholder Joseph Cacciapalle, demanding that Freddie Mac's Board of Directors and/or FHFA take certain legal action challenging the Third Amendment to the Preferred Stock Purchase Agreement (the "Third Amendment") that the Conservator, on behalf of Freddie Mac, has with Treasury. Please be advised that the Conservator does not intend to authorize Freddie Mac or its directors or officers on behalf of Freddie Mac to take the actions that the Letter demands.

I must inform you that the action your Letter threatens if Freddie Mac fails to accede to the shareholder demand you advance—a derivative suit on behalf of Freddie Mac—is one that stockholders may not undertake during conservatorship. When the Conservator was appointed, it succeeded to "all rights, titles, powers, and privileges" of Freddie Mac and its stockholders with respect to Freddie Mac and its assets, including the right to bring derivative actions, such as the action you threaten. *See, e.g., In re Fed. Nat'l Mortg. Ass'n Secs., Derivative & "ERISA" Litig.*, 629 F. Supp. 2d 1 (D.D.C. 2009), *aff'd sub nom. Kellmer v. Raines*, 674 F.3d 848 (D.C. Cir. 2012).

With all best wishes, I am

Sincerely,

Alfred M. Pollard
General Counsel

# *Exhibit F*



# Federal Housing Finance Agency

## Constitution Center
400 7th Street, S.W.
Washington, D.C. 20024
Telephone: (202) 649-3800
Facsimile: (202) 649-1071
www.fhfa.gov

April 9, 2014

VIA ELECTRONIC MAIL

Eric L. Zagar, Esq.
Kessler Topaz Meltzer & Check LLP
280 King of Prussia Road
Radnor, Pennsylvania 19087

Dear Mr. Zagar:

The Federal Housing Finance Agency in its capacity as Conservator of Freddie Mac ("FHFA" or "Conservator") has reviewed your January 7, 2014 letter ("Letter") sent on behalf of Freddie Mac stockholder Michelle M. Miller, demanding that Freddie Mac's Board of Directors and/or FHFA take certain legal action challenging the Third Amendment to the Preferred Stock Purchase Agreement (the "Third Amendment") that the Conservator, on behalf of Freddie Mac, has with Treasury.  Please be advised that the Conservator does not intend to authorize Freddie Mac or its directors or officers on behalf of Freddie Mac to take the actions that the Letter demands.

I must inform you that the action your Letter threatens if Freddie Mac fails to accede to the shareholder demand you advance—a derivative suit on behalf of Freddie Mac—is one that stockholders may not undertake during conservatorship.  When the Conservator was appointed, it succeeded to "all rights, titles, powers, and privileges" of Freddie Mac and its stockholders with respect to Freddie Mac and its assets, including the right to bring derivative actions, such as the action you threaten.  *See, e.g., In re Fed. Nat'l Mortg. Ass'n Secs., Derivative & "ERISA" Litig.,* 629 F. Supp. 2d 1 (D.D.C. 2009), *aff'd sub nom. Kellmer v. Raines,* 674 F.3d 848 (D.C. Cir. 2012).

With all best wishes, I am

Sincerely,

Alfred M. Pollard
General Counsel