UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations | Misc. Action No. 13-mc-1288 (RCL) |
| **THIS DOCUMENT RELATES TO:** | CLASS ACTION |
| ALL CASES | |

## PROPOSED SURREPLY TO DEFENDANTS' MOTION TO DISMISS

The D.C. Circuit held that Class Plaintiffs' anticipatory repudiation and implied covenant claims were constitutionally and prudentially ripe because "The class plaintiffs allege the Third Amendment, by depriving them of their right to share in the Companies' assets when and if they are liquidated, immediately diminished the value of their shares." *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 632 (D.C. Cir. 2017).  FHFA's Motion to Dismiss had implicitly attacked this holding by asking this Court to find that the doctrine of anticipatory breach does not apply when the plaintiff has fully performed its contractual performance and it is merely the defendant who has failed to perform and who has announced its intention not to perform. *See* Dkt. 66 at 15-16.

On Reply, FHFA has abandoned all pretense and has sought to directly relitigate the question of ripeness. FHFA claims that Plaintiffs' Second Amended Complaint (SAC) supposedly "omit[s] the allegations that the D.C. Circuit considered indispensable to ripeness." Dkt. 77 at 9; *see also id.* at 1 (alleging that the "gravaman" of Plaintiffs' breach claims on remand is that they will be harmed "at some indeterminate point in the future that may or may

not ever occur."). FHFA is wrong. Its argument is based on a complete mischaracterization of both the D.C. Circuit's decision and Plaintiffs' Claims.

The D.C. Circuit's ripeness holding did not rely on a single "indispensable" factual allegation, but rather relied on Plaintiffs' allegations and arguments "throughout this litigation" that (a) Plaintiffs' contractual rights had value before the Third Amendment, (b) the Third Amendment destroyed that value, and (c) Plaintiffs suffered damages as a result. 864 F.3d at 632, 633 n.26. In a footnote, the D.C. Circuit quoted, as *examples*, numerous statements articulating these points from *various* filings by the Class Plaintiffs in the trial and appellate courts:

> Although the class plaintiffs do not describe the Third Amendment as "an anticipatory repudiation" until their reply brief, Class Pls. Reply Br. at 13, they have emphasized throughout this litigation that it "nullified—and thereby breached—the contractual rights to a liquidation distribution" by rendering performance impossible. Class Pls. Br. at 40-41; *see also, e.g.*, [First Amended Complaint (FAC), Dkt. 4] ¶ 22 (alleging the Third Amendment "effectively eliminated the property and contractual rights of Plaintiffs and the Classes to receive their liquidation preference upon the dissolution, liquidation or winding up of Fannie Mae and Freddie Mac"); Class Pls. Opp'n to Mot. to Dismiss at 37 ("[T]he Third Amendment has made it impossible for [the Companies] ever to have ... assets available for distribution to stockholders other than Treasury" and thereby "eliminated Plaintiffs' present ... liquidation rights in breach of the Certificates" (internal quotation marks omitted)). The class plaintiffs allege they "paid valuable consideration in exchange for these contractual rights," which rights "had substantial market value ... that [was] swiftly dissipated in the wake of the Third Amendment," [FAC, Dkt. 4] ¶ 23, causing the class plaintiffs to "suffer[ ] damages," *e.g.*, [FAC, Dkt. 4] ¶ 144.

*Id.* at 633 n.26.

The SAC continues to make all these arguments. It continues to allege that Plaintiffs' contract rights had value before the Third Amendment, and that the Third Amendment destroyed that value. *E.g.*, Dkt. 71 at ¶ 14 ("the Third Amendment completely eviscerated and destroyed the economic rights held by private shareholders."); *id.* at ¶ 57 (alleging that, prior to the Third

2

Amendment, "the holders of the Preferred Stock and Common Stock had a reason to believe and expect that the economic value of their shares, and the rights they had as stockholders, would likely be increasing, and would not be eliminated."); *id.* at ¶ 59 ("The Third Amendment . . . eliminated the contractual rights of the Preferred Stock and Common Stock holders, and expropriated for the Government the economic value of these privately-held securities."); *id.* at ¶ 60 ("The Third Amendment . . . destroys tens of billions of dollars of value in the Companies' Preferred Stock and Common Stock."); *id.* at ¶ 92 ("The Third Amendment . . . expropriates the value of their shares and transfers that value to the Treasury, the Companies' controlling stockholder."); *id.* at ¶ 93 ("The Third Amendment . . . was specifically intended to ensure that stockholders (other than Treasury) could never again recover any value from their investments."). The SAC also alleges that Plaintiffs **have already been** injured as a result of the Third Amendment. *Id.* at ¶ 14 (alleging that stockholders "**have been** severely damaged" by the Third Amendment) (emphasis added); *id.* at ¶ 98-101 (defining the classes as shareholders "who **were** damaged" by the Third Amendment) (emphasis); ¶¶ 130, 137, 144 (alleging that Plaintiffs "**suffered** damages" as a result of FHFA's anticipatory repudiation) (emphasis added); ¶¶ 151, 158, 165 (alleging that Plaintiffs "**suffered** damages" as a result of FHFA's breach of the implied covenant of good faith and fair dealing) (emphasis added).

Further, Class Plaintiffs' Opposition explained that its claims were based on the fact that the Third Amendment "***immediately*** reduced the value of Plaintiffs' stock." Dkt. 72 at 15; *see also id.* at 3 ("[A]s of August 16, 2012, the day before the Net Worth Sweep[,] Private shareholders had legal rights to dividends and liquidation proceeds, and those rights had economic value. Once the Net Worth Sweep was put in place, however, those legal rights were obliterated. Their economic value was therefore also wiped out."). Indeed FHFA has

3

acknowledged this – its Reply **quotes these exact passages** from Class Plaintiffs' Opposition and uses them as a basis to explain that Class Plaintiffs' claims are based on "the alleged decline in value of their shares." *See* Dkt. 77 at 36 (quoting Dkt. 72 at 3, 15).

The SAC does not rely on the stock price of Plaintiffs' securities because that price reflects the market's expectations regarding this litigation, and thus, is not a reliable metric for accounting for the damages caused to Plaintiffs by the Third Amendment. Because investors evidently believe that this Court will uphold Plaintiffs' contract rights and order FHFA to distribute some funds to stockholders, investors are willing to pay a premium to acquire these shares (and current holders are willing to forego a premium to hold the shares) notwithstanding the Third Amendment's evisceration of those contract rights. Thus, the omission of stock price from the SAC is related to *how* Plaintiffs' damages should properly quantified, not *whether* Plaintiffs have suffered any damages. *See* Dkt. 72 at 3 ("The only value the preferred and common stock has had since the Net Worth Sweep is a value that depends on the litigation challenging the Net Worth Sweep—or seeking to recover the damages caused by the Net Worth Sweep. Again, Defendants do not and cannot dispute this.").

FHFA also badly mischaracterizes the D.C. Circuit's reliance on *State National Bank v. Lew*, 795 F.3d 48 (D.C. Cir. 2015). FHFA says the D.C. Circuit construed that case as somehow *requiring* allegations regarding share price. Dkt. 77 at 9. In fact, the D.C. Circuit quotes *State National Bank* as merely requiring allegations that "current investments are worth less now, or **have been otherwise adversely affected** now." 864 F.3d at 632 (quoting *State National Bank*, 795 F.3d at 56) (emphasis added). As demonstrated above, the SAC plainly satisfies this requirement.

Further, FHFA's attempt to relitigate ripeness makes no sense in light of the fact that the D.C. Circuit's ripeness holding hinged on its recognition that "class plaintiffs' claims for breach of contract with respect to liquidation preferences are better understood as claims for anticipatory breach." 864 F.3d at 633. Unlike the FAC, which did not even use the words "anticipatory breach," the SAC expressly states claims for "anticipatory breach." *Compare* Dkt. 71 Counts I – III ("Breach of Contract – Anticipatory Breach), *with* Dkt. 4, Counts I-III ("Breach of Contract"). It cannot be the case that the FAC stated a valid claim for anticipatory breach, but the SAC does not.

The D.C. Circuit's holding that Plaintiffs' claims are constitutionally and prudentially ripe is binding on this Court. Accordingly, the Court must decide Plaintiffs' claims on the merits.

## **CONCLUSION**

For the foregoing reasons, as well as those articulated in Plaintiffs' Opposition (Dkt. 72), the Court should deny FHFA's Motion to Dismiss.

| | |
|---|---|
| Dated: April 5, 2018 | Respectfully submitted, |
| | /s/ Hamish P.M. Hume |
| | Hamish P.M. Hume (Bar No. 449914) |
| David R. Kaplan   (*Pro Hac Vice*) | Stacey K. Grigsby (Bar No. 491197) |
| BERNSTEIN LITOWITZ BERGER & | Jonathan M. Shaw (Bar No. 446249) |
| GROSSMANN LLP | Alexander I. Platt (Bar No. 1019844) |
| 12481 High Bluff Drive | BOIES SCHILLER FLEXNER LLP |
| Suite 300 | 1401 New York Ave., NW |
| San Diego, CA 92130 | Washington, D.C. 20005 |
| Tel: (858) 793-0070 | Tel: (202) 237-2727 |
| Fax: (858) 793-0323 | Fax: (202) 237-6131 |
| davidk@blbglaw.com | hhume@bsfllp.com |
| | sgrigsby@bsfllp.com |
| | jshaw@bsfllp.com |
| | aplatt@bsfllp.com |
| Michael J. Barry (*Pro Hac Vice*) | Eric L. Zagar (*Pro Hac Vice*) |
| GRANT & EISENHOFER P.A. | KESSLER TOPAZ MELTZER & CHECK LLP |
| 123 Justison Street | 280 King of Prussia Road |
| Wilmington, DE 19801 | Radnor, PA 19087 |
| Tel: (302) 622-7000 | Tel: (610) 667-7706 |
| Fax: (302) 622-7100 | Fax: (610) 667-7056 |
| mbarry@gelaw.com | ezagar@ktmc.com |

*Interim Co-Lead Class Counsel*

BOTTINI & BOTTINI, INC.
Frank A. Bottini
7817 Ivanhoe Avenue, Suite 102
La Jolla, CA 92037
Telephone: (858) 914-2001
Facsimile: (858) 914-2002
fbottini@bottinilaw.com

GLANCY PRONGAY & MURRAY LLP
Lionel Z. Glancy
Michael M. Goldberg
Ex Kano S. Sams II
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
lglancy@glancylaw.com
esams@glancylaw.com

LOWEY DANNENBERG, P.C.
Barbara Hart (*pro hac vice*)
Thomas M. Skelton
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035

POMERANTZ LLP
Jeremy A. Lieberman
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
jalieberman@pomlaw.com

Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

FINKELSTEIN THOMPSON LLP
Michael G. McLellan (Bar #489217)
3201 New Mexico Avenue NW, Suite 395
Washington, DC 20016
Telephone: (202) 337-8000
Facsimile: (202) 337-8090
mmclellan@finkelsteinthompson.com

*Additional Counsel for Plaintiffs*