**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations** ▬▬▬▬▬▬▬▬▬▬▬▬ **THIS DOCUMENT RELATES TO: ALL CASES** | **Misc. Action No. 13-mc-1288 (RCL)** **CLASS ACTION** |

**CORRECTED PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**

## <u>TABLE OF CONTENTS</u>

I.    Introduction ......................................................................................................... 1

II.   Statement of facts ................................................................................................ 1

III.  The Proposed classes .......................................................................................... 3

IV.  Argument ............................................................................................................. 4

    A.   The Requirements of Rule 23 ........................................................................ 4

    B.   The Proposed Classes Satisfy the Requirements of Rule 23(a) ..................... 5

        1.   Rule 23(a)(1) Numerosity is Satisfied .................................................... 5

        2.   Rule 23(a)(2) Commonality is Satisfied .................................................. 5

        3.   Rule 23(a)(3) Typicality is Satisfied ....................................................... 6

        4.   Rule 23(a)(4) Adequacy is Satisfied ....................................................... 7

    C.   The Proposed Class Satisfies the Requirements of Rule 23(b) ...................... 8

V.   Conclusion ........................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Daskalea v. Washington Humane Soc'y,*
   275 F.R.D. 346 (D.D.C. 2011)................................................................................ 6, 7, 8, 9

*Healthy Futures of Texas v. Dep't of Health & Human Servs.,*
   2018 WL 2463074 (D.D.C. June 1, 2018).................................................................... 5, 7

*Parker v. Bank of Am., N.A.,*
   99 F. Supp. 3d 69 (D.D.C. 2015)...................................................................................... 9

*Wal–Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011)........................................................................................................... 5

Co-Lead Plaintiffs N. Bradford Isbell, Joseph Cacciapalle, John Cane, Estate of Francis J. Dennis, Michelle M. Miller, Marneu Holdings, Co., 111 John Realty Corp., United Equities Commodities, Co., Charles Rattley, and Timothy J. Cassell (collectively, "Plaintiffs"), hereby submit this memorandum of law in support of their Motion for Class Certification, filed simultaneously herewith.

## I.       INTRODUCTION

Plaintiffs bring this action on behalf of themselves and other similarly situated holders of Preferred Stock and common stock issued by the Federal National Mortgage Association ("Fannie Mae" or "Fannie") and the Federal Home Loan Mortgage Corporation ("Freddie Mac" or "Freddie"; Fannie Mae and Freddie Mac together, the "Companies") and assert claims arising out of the wrongful conduct of Fannie and Freddie and their Conservator the Federal Housing Finance Agency ("FHFA") in connection with the implementation of the Third Amendment (the "Third Amendment") to the Senior Preferred Stock Purchase Agreements (the "PSPAs") between the Companies and the United States Treasury ("Treasury"), dated August 17, 2012.

By the accompanying motion, and pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs move for certification of four classes ("Classes"), as described below.

## II.      STATEMENT OF FACTS

Fannie Mae and Freddie Mac are stockholder-owned corporations.  Each was established by legislation and was later converted to a private corporation.  Both Companies are referred to as "Government Sponsored Enterprises" (or "GSEs"), and were created by Congress to increase liquidity in the secondary mortgage market.  The Companies purchase mortgages originated by private banks and bundle them into mortgage-related securities to be sold to investors.  By facilitating this secondary mortgage market, the Companies increase liquidity for private banks, which enables them to make additional loans to individuals for home purchases.  To raise capital,

the Companies issued several publicly traded securities, including numerous classes of non-cumulative Preferred Stock.

As a result of the market downturn in 2008, Congress passed the Housing and Economic Recovery Act of 2008 ("HERA"), creating a new federal agency, FHFA, and empowering it to appoint itself as conservator of the Companies under certain circumstances.  On September 6, 2008, FHFA placed Fannie Mae and Freddie Mac into "temporary" conservatorship.  When FHFA became Conservator, Fannie Mae and Freddie Mac each entered into the PSPAs with Treasury.  Under these contracts, Treasury agreed to invest in the Companies in exchange for shares of a newly created class of securities, known as Senior Preferred Stock.  The PSPAs provided that Treasury would hold a liquidation preference in each Company equal to the $1 billion commitment fee plus the total amount Treasury invested in each respective Company.  The Senior Preferred Stock ranked senior in priority to all other series of Fannie Mae and Freddie Mac Preferred Stock, and would earn an annual dividend, paid quarterly, equal to 10% of the outstanding liquidation preference, i.e., 10% of the sum of the $1 billion commitment fee plus the total amount Treasury invested in each Company.  If Fannie or Freddie elected not to pay the dividend in cash, Treasury would receive a dividend in the form of additional Senior Preferred Stock with a face value equal to 12% of the liquidation preference.

In 2012, after the housing market had begun to recover and the Companies were returning to profitability, Treasury and FHFA agreed to the Third Amendment, pursuant to which the 10% Senior Preferred Stock dividend was converted into a "Net Worth Sweep" that required the Companies to pay Treasury a dividend equal to the full amount of their net worth every quarter, minus a small reserve that was set to shrink to zero by 2018.  And because the PSPAs provided that in the event of a liquidation of Fannie Mae or Freddie Mac, the Government would receive a

liquidation distribution that included the amount of any prior unpaid dividend, the Third Amendment guaranteed that even if the Companies were liquidated, Treasury would receive 100% of their net worth.  Thus, the Net Worth Sweep made it impossible for any private shareholder ever to receive any dividend or liquidation distribution from the Companies, no matter how profitable they were.

The Government has reaped immense profits from the Third Amendment.  In total, the Companies have paid $279.8 billion in dividends to Treasury.  Of that amount, approximately $55 billion was paid before the Net Worth Sweep, and approximately $224.8 billion was paid after the Net Worth Sweep.   This total amount of $279.8 billion is approximately $88.4 billion more than Treasury's total investment in the Companies.  Moreover, as of the date of this filing, the total amount of dividends paid under the Net Worth Sweep is roughly $123.6 billion more than Treasury would have received under the 10% dividend provided for in the original PSPAs.  Meanwhile, the principal amount of Treasury's Senior Preferred Stock has not been reduced at all, and still stands at $193.4 billion.

## III.   THE PROPOSED CLASSES

Plaintiffs seek to certify four Classes consisting of:

(1)  All persons and entities who held shares of Fannie Mae Preferred Stock on August 17, 2012 and who were damaged thereby, and their successors in interest (meaning current shareholders) (the "Fannie Preferred Class");

(2)  All persons and entities who held shares of Freddie Mac Preferred Stock on August 17, 2012 and who were damaged thereby, and their successors in interest (meaning current shareholders) (the "Freddie Preferred Class");

(3)  All persons and entities who held shares of Fannie Mae Common Stock on August 17, 2012 and who were damaged thereby, and their successors in interest (meaning current shareholders) (the "Fannie Common Class"); and

(4)  All persons and entities who held shares of Freddie Mac Common Stock on August 17, 2012 and who were damaged thereby, and their successors in interest (meaning current shareholders) (the "Freddie Common Class").

Excluded from all Classes are the Defendants.

## IV.   **ARGUMENT**

### A.   **The Requirements of Rule 23**

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure ("FRCP"). Rule 23(a) provides that a class action may proceed only if the following prerequisites are met: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  FRCP 23(a).

Additionally, Rule 23(b) provides that a class action is maintainable only if the Court finds that:

> **(1)** prosecuting separate actions by or against individual class members would create a risk of:
>
> > **(A)** inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> >
> > **(B)** adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> **(2)** the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> **(3)** the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

FRCP 23(b).

As demonstrated herein, Rules 23(a) and (b) are easily satisfied in this case, and therefore the Court should certify the proposed Classes.

**B.     The Proposed Classes Satisfy the Requirements of Rule 23(a)**

**1.     Rule 23(a)(1) Numerosity is Satisfied**

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable . . . ." FRCP 23(a)(1).  In the District Court for the District of Columbia, "[t]here is no specific threshold that must be surpassed in order to satisfy the numerosity requirement; rather, the determination requires examination of the specific facts of each case and imposes no absolute limitations." *Healthy Futures of Texas v. Dep't of Health & Human Servs.*, No. 1:18-cv-992 (KBJ), 2018 WL 2463074, at *4 (D.D.C. June 1, 2018).  However, as a general rule of thumb, "the numerosity requirement is satisfied and [ ] joinder is impracticable where a proposed class has at least forty members." *Id.* (finding that sixty members that were geographically dispersed throughout the United States satisfied numerosity).

Each of the proposed Classes easily satisfies any test for numerosity, as there are hundreds of millions of shares of Preferred Stock and common stock outstanding, held by many thousands of Class members.  Compl. ¶ 104.  Accordingly, there is no doubt that joinder would be impracticable, to say the least.

**2.     Rule 23(a)(2) Commonality is Satisfied**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class . . . ." FRCP 23(a)(2).  The key to the commonality requirement is whether the members of a proposed class have "suffered the same injury" such that their claims depend upon the resolution of a "common contention." *Healthy Futures of Texas*, 2018 WL 2463074, at *4 (citing *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)).  The Court must ask whether there is a common question of fact or law whose resolution will "resolve an issue that is central to the validity of each

one of the claims in one stroke." *Id.* That inquiry is simplified in cases that challenge "a uniform policy or practice that affects all class members" in the same way, which "clearly gives rise to common questions of fact or law." *Id.*

All aspects of the commonality inquiry are satisfied here for the four Classes. For all Classes, the claims of the members within each Class are based on the same events that affected all Class members in the same way, i.e., the Third Amendment to the PSPAs, which destroyed all Preferred and common stockholders' cash flow rights under any scenario. All stockholders have lost their ability to receive dividends or a liquidation preference, and each has "suffered the same injury" on a per share basis. *Wal-Mart Stores, Inc.*, 564 U.S. at 350. Moreover, there are common questions of law and fact, the resolution of which will "resolve an issue that is central to the validity of each one of the claims in one stroke," including whether Defendants breached the terms of the Certificates for the Preferred Stock and/or the implied covenant of good faith and fair dealing inherent in those Certificates, whether Defendants breached their fiduciary duties to the stockholders, and whether Defendants are liable for damages to the members of the Classes. The resolution of these issues will affect all members of the putative Classes, which itself satisfies the commonality element. *See Daskalea v. Washington Humane Soc'y,* 275 F.R.D. 346, 373 (D.D.C. 2011) ("commonality [ ] is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.") (internal quotations omitted). Accordingly, Plaintiffs have satisfied the commonality requirements of Rule 23(a)(2).

### 3.    Rule 23(a)(3) Typicality is Satisfied

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . . ." FRCP 23(a)(3). Typicality requires the Court to "assess whether the proposed party representative's injury is similar to that of other class members," and "whether the claims of the representative and absent class members are sufficiently

similar so that the representatives' acts are also acts on behalf of, and safeguard the interests of the class." *Healthy Futures of Texas*, 2018 WL 2463074, at *4. To the extent that "each class member's claim arises from the same course of events that led to the claims for the representative parties and each class member makes similar legal arguments to prove the defendant's liability[,] typicality is obviously established." *Id.* In practice, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Daskalea,* 275 F.R.D. at 375.

Here, typicality is satisfied. Plaintiffs' claims share the same essential characteristics as the claims of the proposed Classes because they are based on the same factual and legal predicates. Both Plaintiffs and the putative Class members are holders of Fannie and/or Freddie Preferred Stock or common stock. Plaintiffs and the putative Class members seek a remedy for the same conduct premised upon the same legal theories. Thus, Plaintiffs' claims are typical of the Classes, and the typicality requirement is satisfied.

### 4.      Rule 23(a)(4) Adequacy is Satisfied

The fourth and final prerequisite requires that "the representative parties will fairly and adequately protect the interests of the class." FRCP 23(a)(4). To satisfy adequacy, "a class representative must be part of the class and possess the same interest and suffer the same injury as class members." *Daskalea*, 275 F.R.D. at 377. The Rule 23(a)(4) adequacy-of-representation requirement "tends to merge" with the commonality and typicality requirements of Rule 23(a), which "serve as guideposts" for determining whether a class action should be maintained and whether the class representative's claim and class claims are "so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* To further satisfy the Rule 23(a)(4) adequacy requirement, "the [class] representatives must appear able to vigorously prosecute the interests of the class through qualified counsel." *Id.*

Plaintiffs have no interests that are adverse or antagonistic to the Classes.  Rather, the interests of Plaintiffs and the proposed Class members are aligned because they all assert the same claims based on the same misconduct.  Within each Class, the members have identical interests, proportionate to their shareholdings.  Further, Plaintiffs have retained competent counsel well versed in prosecuting class action litigation.  Accordingly, the adequacy requirement is met.

### C.      The Proposed Class Satisfies the Requirements of Rule 23(b)

Once the prerequisites of Rule 23(a) are satisfied, a class action may be certified if Rule 23(b) is met.  Here, certification under Rule 23(b)(1) is appropriate.

To satisfy Rule 23(b)(1), Plaintiffs must show that:

> **(1)** prosecuting separate actions by or against individual class members would create a risk of:
>
>> **(A)** inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>>
>> **(B)** adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

FRCP 23(b)(1).

Certification under subdivision (b)(1)(A) further requires a legitimate risk that separate actions may establish incompatible standards of conduct.  *Daskalea*, 275 F.R.D. at 365.  In this case there is a legitimate risk that separate actions by individual members of the four Classes could establish incompatible standards of conduct in the event that Defendants were found liable to some Class members but not to others, and therefore certification of the Classes under subdivision (b)(1)(A) is appropriate.

Certification under subdivision (b)(1)(B) is also appropriate.  "Classic examples" of proper 23(b)(1)(B) class actions include actions by shareholders to fix their rights or actions charging a

breach by a fiduciary affecting the members of a class of beneficiaries.  *See Parker v. Bank of Am., N.A.*, 99 F. Supp. 3d 69, 80 (D.D.C. 2015); *Daskalea*, 275 F.R.D. at 366.  This is because shareholder actions implicate "a shared or collective right . . . with the common thread being that the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Daskalea*, 275 F.R.D. at 366.  Such is the case here, where the Classes are composed of private shareholders of the Companies seeking to enforce their rights as a result of Defendants' breaches of contract and fiduciary duty.  Defendants owed the same contractual and fiduciary duties to all Class members, and thus any individual adjudication by a Class member disposes of the interests of absent Class members, which satisfies Rule 23(b)(1)(B).

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that the Court grant Plaintiffs' motion to certify the Classes.


Dated:  August 17, 2018

Respectfully submitted,


*/s/ Hamish P.M. Hume*

KESSLER TOPAZ MELTZER & CHECK, LLP
Eric L. Zagar (*Pro Hac Vice*)
280 King of Prussia Rd.
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
ezagar@ktmc.com

GRANT & EISENHOFER, P.A.
Michael J. Barry (*Pro Hac Vice*)
123 Justison Street
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100
mbarry@gelaw.com

BOIES SCHILLER FLEXNER LLP
Hamish P.M. Hume (D.C. Bar No. 449914)
Stacey K. Grigsby (D.C. Bar No. 491197)
Jonathan M. Shaw (D.C. Bar No. 446249)
James Kraehenbuehl (D.C. Bar No. 1017809)
1401 New York Ave. NW
Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
hhume@bsfllp.com
sgrigsby@bsfllp.com
jshaw@bsfllp.com
jkraehenbuehl@bsfllp.com

BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP
David R. Kaplan (*Pro Hac Vice*)
David R. Stickney (*Pro Hac Vice*)
12481 High Bluff Drive
Suite 300
San Diego, CA 92130
Tel: (858) 793-0070
Fax: (858) 793-0323
davidk@blbglaw.com
davids@blbglaw.com

*Interim Co-Lead Class Counsel*

BOTTINI & BOTTINI, INC.
Frank A. Bottini
7817 Ivanhoe Avenue, Suite 102
La Jolla, CA 92037
Telephone: (858) 914-2001
Facsimile: (858) 914-2002
fbottini@bottinilaw.com

GLANCY PRONGAY & MURRAY LLP
Lionel Z. Glancy
Ex Kano S. Sams II
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
lglancy@glancylaw.com
esams@glancylaw.com

LOWEY DANNENBERG, P.C.
Barbara Hart (pro hac vice)
Thomas M. Skelton
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035

POMERANTZ LLP
Jeremy A. Lieberman
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com

Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

FINKELSTEIN THOMPSON LLP
Michael G. McLellan (Bar #489217)
3201 New Mexico Avenue NW, Suite 395
Washington, DC 20016
Telephone: (202) 337-8000
Facsimile: (202) 337-8090
mmclellan@finkelsteinthompson.com