**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FAIRHOLME FUNDS, INC., *et al*., | |
| Plaintiffs, | |
| v. | Civil No. 13-1053 (RCL) |
| FEDERAL HOUSING FINANCE AGENCY, *et al.*, | |
| Defendants. | |
| ARROWOOD INDEMNITY COMPANY, *et al.*, | |
| Plaintiffs, | |
| v. | Civil No. 13-1439 (RCL) |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, *et al.*, | |
| Defendants. | |
| In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations | Miscellaneous No. 13-1288 (RCL) |
| _____ | <u>CLASS ACTION</u> |
| This document relates to: ALL CASES | |

**DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION OF**
**DENIAL OF MOTION TO DISMISS IMPLIED COVENANT CLAIMS**

Defendants hereby move for partial reconsideration of the Court's Memorandum Opinion
and Orders of September 28, 2018, on the ground that the Court's rationale for dismissing
Plaintiffs' breach-of-contract claims calls for dismissing Plaintiffs' related implied covenant
claims as well.

1

The Court held that Plaintiffs' claims for breach of contract regarding liquidation preferences failed because they were in substance claims for anticipatory breach, which Delaware and Virginia do not recognize for "unilateral contracts, especially when the only remaining performance is the payment of money." Mem. Op. at 11. That rationale applies with equal force to Plaintiffs' ancillary implied covenant claims. An implied covenant claim is nothing more than a species of breach-of-contract claim, and the same limitations on anticipatory breach apply whether the alleged breach is of an express contractual obligation or the implied covenant duties that attach to and supplement those express terms.

The fact that Plaintiffs' implied covenant claims are based on alleged duties related not only to liquidation preferences, but also to dividends, does not lessen the applicability of the limitation on anticipatory breach suits. Dividends and liquidation payments are simply two different forms through which shareholders may be paid a future monetary return on their stock. In both instances, a corporation's performance of the obligations and attendant duties of good faith and fair dealing is due in the future (making the suit anticipatory), while no further contractual performance is required of the shareholder (making the contract unilateral). In securing the reinstatement of their contract-based claims, Plaintiffs emphasized to the D.C. Circuit that "the Third Amendment constitutes an anticipatory repudiation of the contractual provisions governing *both dividends* and liquidation distributions." Cl. Pl. D.C. Cir. Reply at 13 (emphasis added).

The Court's September 28 Opinion did not consider the applicability of the common-law limitation on anticipatory repudiation to Plaintiffs' implied covenant claims. Defendants' opening brief argued that Plaintiffs' breach-of-contract claims should be dismissed on this basis. Defendants' reply applied the argument across the board to all of Plaintiffs' contract-based

claims—an application to which Plaintiffs did not object, nor did they counter, in the sur-replies filed by Plaintiffs and considered by the Court. Since the applicability of this limitation on anticipatory repudiation to the implied covenant claims is a purely legal issue that could dispose of the entire case and will not be elucidated by fact development, it would be more efficient for the Court to address it now than to await a future dispositive motion renewing it. Therefore, Defendants respectfully submit that the Court should now consider whether the anticipatory repudiation analysis in its September 28 Opinion applies to Plaintiffs' implied covenant counts and, because it does, should dismiss those counts as well.

## PROCEDURAL BACKGROUND

Plaintiffs filed these actions challenging the Third Amendment in 2013. As relevant here, they alleged that, by adopting the Third Amendment, Defendants made it impossible for them to receive future liquidation-preference payouts or dividends on their Enterprise stock, which Plaintiffs contended violated both their express contractual rights as shareholders and the implied covenant of good faith and fair dealing associated with those rights.

This Court initially dismissed Plaintiffs' liquidation-preference claims as unripe. *Perry Capital LLC v. Lew*, 70 F. Supp. 3d 208, 233-36 (D.D.C. 2014). The Court dismissed Plaintiffs' dividend claims for failure to state a claim upon which relief may be granted because Plaintiffs' contracts as shareholders vested sole discretion in Defendants whether to declare a dividend. *Id.* at 236-39. Plaintiffs appealed.

In their appellate reply brief, Plaintiffs argued for the first time that their contract-based counts stated valid claims because "the Third Amendment constitutes an anticipatory repudiation of the contractual provisions governing both dividends and liquidation distributions." Cl. Pl.

D.C. Cir. Reply at 13.[1]  Plaintiffs argued that they were "entitled to treat that repudiation as a breach" and "seek damages immediately," notwithstanding that the time for performance and for payment of any liquidation distributions or dividends had not yet arrived.  *Id.* at 13-14 (internal quotation marks omitted).

The D.C. Circuit agreed.  While the time for liquidation-preference payments had not arrived, the Court held that "[u]nder the doctrine of anticipatory breach, 'a voluntary affirmative act which renders the obligor unable . . . to perform' is a repudiation" that can be treated as an immediate breach and basis for suit.  864 F.3d at 632 (quoting Restatement (Second) of Contracts § 250(b)).  With Plaintiffs' liquidation-preference claims thus "better understood as claims for anticipatory breach," the Circuit saw "no prudential reason to defer their resolution" based on the ripeness doctrine.  *Id.* at 633.  The Circuit was not concerned that Plaintiffs did not explicitly call their claims "anticipatory repudiation" until late in the process, because Plaintiffs' allegations that the Third Amendment "nullified" their "contractual rights" by "rendering performance impossible" were always in substance claims for anticipatory breach.  *Id.* at 633 n.26 (internal quotation omitted).  The Circuit emphasized that "[o]ur holding that the claims are ripe sheds no light on the merit of those claims" under Delaware and Virginia substantive law, and thus remanded for this Court to address "in the first instance" whether Plaintiffs "stated claims for breach of contract and breach of the implied covenant."  *Id.* at 633.

---

[1]  Although this quotation comes from the Class Plaintiffs' brief, it equally applies to and binds the Fairholme and Arrowood Plaintiffs.  Those Plaintiffs did not themselves brief issues related to the contract-based claims, but rather "relied on the Class Plaintiffs' brief to advance substantive arguments for reversal of the district court's dismissal of the common law claims seeking damages."  Fairholme & Arrowood Pet. for Panel Reh'g at 6, Nos. 14-5260, 14-5262 (D.C. Cir.).  The Fairholme and Arrowood Plaintiffs described their contract-based claims as "materially identical" to those of the Class Plaintiffs.  *Id.* at 1; *see Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 617 (D.C. Cir. 2017) (explaining that Fairholme and Arrowood were allowed to piggyback on the Class Plaintiffs' arguments as to the breach-of-contract and implied covenant claims).

The Circuit also affirmed this Court's dismissal of Plaintiffs' breach-of-contract claim related to dividends, *id.* at 629, but held that the vesting in Defendants of "complete discretion to declare or withhold dividends" was not alone dispositive of Plaintiffs' ancillary implied covenant claim because "'[w]hen exercising a discretionary right, a party to the contract must exercise its discretion reasonably.'"  *Id.* at 629, 631 (quoting *Gerber v. Enter. Prod. Holdings, LLC*, 67 A.3d 400, 419 (Del. 2013)).  The D.C. Circuit thus remanded those claims as well for this Court to determine in the first instance whether Plaintiffs stated claims under the correct legal standards.

On remand, Plaintiffs filed amended complaints.  The amended complaints once again asserted breach-of-contract claims regarding liquidation preferences, Class SAC Counts I, II, III; Fairholme FAC Count II; Arrowood FAC Count IV, and implied covenant claims regarding liquidation preferences and dividends, Class SAC Counts IV, V, VI; Fairholme FAC Count III; Arrowood FAC Count V.[2]

Defendants moved to dismiss.  As relevant here, Defendants' opening brief argued that Plaintiffs' breach-of-contract claims must be dismissed because Delaware and Virginia do not allow anticipatory-repudiation suits with regard to unilateral contracts where the only remaining performance consists of payment of money.  Defs.' Mot. to Dismiss at 15-17 [ECF No. 68 for Civil No. 13-1053; ECF No. 77 for Civil No. 13-1439; ECF No. 66 for Misc. No. 13-1288].  In reply, Defendants clarified that their position is that both "Plaintiffs' contract and implied covenant counts fail to state viable claims under the state law governing anticipatory repudiation" because "[t]he gravamen of *all* the breach claims advanced by Plaintiffs on remand is that the Third Amendment will make it impossible for the Enterprises to perform certain

---

[2]  This motion uses the same abbreviations for Plaintiffs' amended pleadings as are used in the Court's September 28, 2018 Opinion.

alleged obligations, express or implied, to pay liquidation preferences or dividends to shareholders" in the future.  Defs.' Reply in Supp. of Mot. to Dismiss at 1 [ECF No. 78 for Civil No. 13-1053; ECF No. 86 for Civil No. 13-1439; ECF No. 77 for Misc. No. 13-1288] (emphasis added); *see also*, *e.g.*, *id*. at 3 (Argument I: "The Limits On the Anticipatory Breach Doctrine Bar All of Plaintiffs' Contract-Related Claims"), 5 ("The same 'major limitation' [as in *Glenn v. Fay*, 281 F. Supp. 3d 130, 139 (D.D.C. 2017)] is fatal to all of Plaintiffs' contract and implied covenant claims here."), 11 ("the Court should dismiss all of Plaintiffs' breach of contract claims, whether based on express terms or an implied covenant, as barred by the established limitation on anticipatory repudiation").

In opposition, Plaintiffs argued principally that the D.C. Circuit's decision barred this Court from even considering the issue, and also contended that Delaware and Virginia law did not recognize the limitation on anticipatory repudiation or that it should be disregarded to avoid harsh results.  *See*, *e.g.*, Fairholme & Arrowood Resp. to Defs.' Mot. To Dismiss at 12-16 [ECF No. 76 for Civil No. 13-1053; ECF No. 84 for Civil No. 13-1439].  After Defendants' reply, Plaintiffs filed three sur-replies for the stated purpose of "contest[ing] matters presented to the court for the first time in [Defendants'] reply."  Class Pls.' Mot. for Leave to File Sur-Reply at 1 [ECF No. 78 for Misc. No. 13-1288] (internal quotation marks omitted)[3]; *see* Mem. Op. at 2, 35 (granting motions for leave to file sur-replies and noting that the Court considered the sur-replies).  Those sur-replies neither objected to consideration of Defendants' anticipatory repudiation argument in connection with the implied covenant claims, nor raised any additional arguments against the anticipatory repudiation argument.  The sur-replies likewise made no

---

[3]  Fairholme and Arrowood both "join[ed] the Class Plaintiffs' arguments" and also filed their own sur-replies.  Fairholme & Arrowood Mot. for Leave to File Sur-Reply at 2 [ECF No. 79 for Civil No. 13-1053; ECF No. 87 for Civil No. 13-1439].

distinction either between contract and implied covenant claims, or between liquidation

preferences and dividends, for purposes of applying the limit on anticipatory repudiation.  On the

contrary, Plaintiffs characterized their allegations that the Third Amendment "eliminate[d] any

prospect of . . . dividends" as falling "under the anticipatory breach doctrine."  Fairholme &

Arrowood Sur-Replies at 1-2 [ECF No. 84 for Civil No. 13-1053; ECF No. 92 for Civil No. 13-

1439].

        In its September 28, 2018 Opinion, this Court dismissed Plaintiffs' breach-of-contract

claims on the ground that "Plaintiffs' contract with the GSEs with respect to liquidation

preferences is a unilateral contract" as to which anticipatory breach suits are not permitted.

Mem. Op. at 13-14.  The Court agreed with Defendants that the doctrine of anticipatory breach—

which allows a plaintiff in certain circumstances to sue for anticipated non-performance of a

contractual obligation before that obligation comes due—"traditionally does not apply to

unilateral contracts, especially when the only remaining performance is the payment of money."

*Id.* at 11 (citing *Smyth v. United States*, 302 U.S. 329, 356 (1937); *Glenn v. Fay*, 281 F. Supp. 3d

130, 139 (D.D.C. 2017)).  The Court explained that this limitation applies equally to contracts

that were always unilateral and to "bilateral contracts that have become unilateral by full

performance on one side."  *Id.* (quoting 23 Williston on Contracts § 63:60).  Delaware and

Virginia both follow this limitation.  *Id.* at 12-13.  In other words, the Court held, Delaware and

Virginia do not allow a plaintiff to sue for breach of a unilateral obligation to pay money before

the time for that performance has come, and such a claim must be dismissed as a matter of law.

        Despite dismissing Plaintiffs' breach-of-contract claim because Delaware and Virginia do

not apply the doctrine of anticipatory breach to unilateral contracts, the Court held that the

Plaintiffs stated a claim for breach of the implied covenant of good faith and fair dealing.  The

Court analyzed a separate argument by Defendants that the Third Amendment did not violate the reasonable expectations of the parties, declining to dismiss the implied covenant claims on that basis "[a]t this stage in the proceedings." *Id.* at 14-30. But the Court did not address Defendants' independent argument that Plaintiffs' implied covenant claims are barred by the same limitation on anticipatory repudiation that was dispositive of their underlying breach-of-contract claims, nor did the Court address the inconsistency of applying that limitation to certain contract-based claims but not to others.

## LEGAL STANDARD

"Federal Rule of Civil Procedure 54(b) governs a court's reconsideration of non-final, or interlocutory orders," which include "[a]n order granting a motion to dismiss, in part." *Lopez v. Dist. of Columbia*, 300 F. Supp. 3d 253, 255 (D.D.C. 2018). Under Rule 54(b), such orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see also Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004) (courts may revise interlocutory orders "as justice requires"). Reconsideration may be warranted for a variety of reasons, including where a court has "misunderstood a party" or "erred not in reasoning but in apprehension of the relevant issues." *Hispanic Affairs Project v. Perez*, 319 F.R.D. 3, 6 (D.D.C. 2016) (internal quotation marks omitted); *see also Cobell v. Norton*, 355 F. Supp. 2d 531, 540 (D.D.C. 2005) ("even if the appropriate legal standard does not indicate that reconsideration is warranted, the Court may nevertheless elect to grant a motion for reconsideration if there are other good reasons for doing so"). Here, Defendants seek reconsideration because the Court may not have apprehended that Defendants sought dismissal of *all* of Plaintiffs' contract-based claims, including Plaintiffs' implied covenant claims, based on Delaware and Virginia's limitations on anticipatory-breach suits.

**ARGUMENT**

**PLAINTIFFS' IMPLIED COVENANT CLAIMS FAIL DUE TO THE SAME LIMITATION ON ANTICIPATORY REPUDIATION THAT COMPELLED DISMISSAL OF THE UNDERLYING BREACH-OF-CONTRACT CLAIMS**

This Court correctly held that, under Delaware and Virginia law, a plaintiff may not sue for breach of a unilateral obligation to pay money before the time for that performance has come. On this principle, the Court rejected Plaintiffs' claims for breach of contract with respect to liquidation preferences. The logic is unassailable. Plaintiffs brought "a claim for anticipatory breach" based on the theory that "Defendants effectively repudiated their contractual obligations with regards to the liquidation preference by rendering performance impossible." Mem. Op. at 13. But this claim is foreclosed as a matter of law because the source of Plaintiffs' alleged rights to liquidation preferences—the shareholder-corporation contract—is "a unilateral contract." *Id.* at 14. "Plaintiffs [have already] completed their end of the bargain by purchasing preferred shares," and "the only remaining performance is payment of the preference by Fannie Mae or Freddie Mac upon liquidation." *Id.* Thus, under controlling Delaware and Virginia law, Plaintiffs cannot "declare a breach and sue for immediate payment just because [they have] reason (even compelling reason) to doubt that [Defendants] will pay when due." *Id.* (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Basic Am. Indus., Inc.*, 252 F.3d 911, 915 (7th Cir. 2001)) (first alteration in original).

**A.    The Limit on Anticipatory Repudiation Bars Plaintiffs' Implied Covenant Claims Relating to Liquidation Preferences**

That same reasoning applies to Plaintiffs' claims for breach of the *implied covenant* with respect to the same underlying liquidation preference rights. After all, "[a] violation of the implied covenant of good faith and fair dealing is a breach of contract, which is not separate from other breach-of-contract claims." 17A Am. Jur. 2d Contracts § 673 (West Aug. 2018); *see*

*also MHS Capital LLC v. Goggin*, 2018 WL 2149718, at *11 (Del. Ch. May 10, 2018) ("a claim

for breach of the implied covenant is contractual"); *Albayero v. Wells Fargo Bank, N.A.*, 2011

WL 4748341, at *15 (E.D. Va. Oct. 5, 2011) (breach of implied covenant "gives rise to a breach

of contract claim" (quoting *Frank Brunckhorst Co., LLC v. Coastal Atlantic, Inc.*, 542

F. Supp. 2d 452, 462 (E.D. Va. 2008)).   The D.C. Circuit repeatedly used "contract-based

claims" as an overarching term to embrace both the express-contract and implied covenant

claims.  *See, e.g.*, 864 F.3d at 625, 626, 627, 628, 633 n.27.

        In fact, Virginia courts require that implied covenant violations be pleaded as a form of

breach of contract, and do not recognize such claims pleaded as independent standalone counts.

*See Frank Brunckhorst Co.*, 542 F. Supp. 2d at 465 ("the breach of [implied covenant] duties

gives rise to an action for breach of contract, not a separate claim"); *Carr v. Fed. Nat'l Mortg.

Ass'n*, 92 Va. Cir. 472, 2013 WL 12237855, at *4 (2013) ("It is well-settled that Virginia law

does not recognize an independent cause of action for breach of the implied warranty of good

faith and fair dealing, but it does give rise to a breach of contract claim.").   While Plaintiffs here

pleaded the two claims separately in disregard of this rule, they cannot electively skirt the

substantive limitations Virginia law places on their claims.  To exempt implied covenant claims

from limiting principles governing the underlying contract claims in which they are supposed to

be subsumed would lead to the tail wagging the dog; there is no basis to suppose Virginia courts

would permit such an untenable result.

        Express contract and implied covenant are just alternative ways of complaining about

being deprived of the fruits of one's bargain:  the former argues that the other party did not or

will not abide by specific terms; the latter argues that the other party did something that, while

not violating any specific contractual terms, nevertheless prevents the plaintiff from fully

enjoying the fruits.  Mem. Op. at 15-16.  Critically, if in either case the alleged deprivation relates to performance that has not yet come due—fruits that need not yet be delivered—the claim is in substance one for anticipatory repudiation.  If the contract is unilateral, such a claim will not lie.

Here, the fruits of the contract are the alleged right to receive a liquidation-preference payment.  Plaintiffs' express-contract theory—which the Court already dismissed—was that "upon the dissolution, liquidation, or winding up of Fannie and Freddie," Defendants will not honor Plaintiffs' alleged contractual rights to liquidation-preference payments.  Fairholme FAC ¶¶ 118-124; Arrowood FAC ¶¶ 132-138; *see also* Class SAC ¶¶ 124-144.  Plaintiffs' implied covenant theory is that the exact same outcome results from the Defendants "effectively depriving Plaintiffs . . . of any possibility of receiving . . . a liquidation preference."  Class SAC ¶¶ 150, 157, 164.  The timing of the obligation to be performed is precisely the same, and the alleged deprivation of receipt is precisely the same.  There is no reason in law or logic why the second claim should be permitted to proceed when the first plainly cannot.

Indeed, courts frequently admonish that the implied covenant must be treated as a "limited and extraordinary remedy," *Nemec v. Shrader*, 991 A.2d 1120, 1128 (Del. 2010), and that applying it is a "cautious enterprise."  *MHS Capital*, 2018 WL 2149718, at *11 (quoting *Nemec*, 991 A.2d at 1125).  It would be particularly anomalous to permit implied covenant claims to proceed in circumstances where their express contract counterparts are foreclosed by longstanding common-law limitations.  Indeed, the longstanding common-law limitation on claims for anticipatory breach would swiftly be rendered meaningless if the same claim about the same future fruits of the same bargain could proceed under an implied covenant rubric; the implied covenant is inherent in every contract, so plaintiffs could always avoid the limitation by

restyling their claims as implied covenant challenges.  This Court accordingly should dismiss Plaintiffs' implied covenant claims relating to liquidation preferences under the same standard that applied to the underlying contract claims.

**B.      The Limit on Anticipatory Repudiation Bars Plaintiffs' Implied Covenant Claims Relating to Dividends**

The same limitation on anticipatory repudiation suits also compels dismissal of Plaintiffs' claims for breach of the implied covenant with respect to dividends.  In persuading the D.C. Circuit to revive their previously dismissed contract-based claims, Plaintiffs clearly asserted that "the Third Amendment constitutes *an anticipatory repudiation* of the contractual provisions governing *both dividends* and liquidation distributions."  Cl. Pl. D.C. Cir. Reply at 13 (emphasis added).  In other words, Plaintiffs are not suing for alleged past failure to pay dividends but for anticipated future failure to exercise discretion in determining whether to issue dividends.  By the same logic that barred Plaintiffs' liquidation-preference claims, the limit on anticipatory repudiation requires the dismissal of Plaintiffs' dividend claims as well.

The considerations underlying the Court's application of anticipatory-repudiation principles to the liquidation-preference claims apply equally to the parallel dividend claims. *First*, the liquidation-preference and dividend rights each arise out of *the same underlying corporation-shareholder contract*, which the Court has already held is "a unilateral contract" as to which "Plaintiffs completed their end of the bargain by purchasing preferred shares in the GSEs."  Mem. Op. at 14.

*Second*, in both instances, the crux of Plaintiffs' theory is that the Third Amendment makes it "impossible for shareholders ever to receive dividends or liquidation distributions," *see*, *e.g.*, Class Resp. to Defs.' Mot. to Dismiss at 22; *see also id.* at 29 [ECF No. 72 for Misc. No.

13-1288], the same theory this Court has already held "amounts to a claim for anticipatory breach." Mem. Op. at 13.

*Third*, as to both forms of monetary payment, Plaintiffs allege only that they are "prevent[ed] . . . from receiving" *future* "fruits of the bargain." *See* Fairholme FAC ¶ 126. It is undisputed that since the inception of the conservatorships, for reasons independent of the Third Amendment and not challenged by Plaintiffs, the Conservator has barred Enterprise shareholders from receiving dividends. Plaintiffs' dividend implied covenant claim thus can only be understood as relating to Defendants' obligation to exercise their discretion reasonably with respect to declaration of dividends in the future, if and when present circumstances change. *See* Statement of FHFA Director James B. Lockhart (Sept. 7, 2008), *available at* goo.gl/GwYrS5 ("common stock and [junior] preferred stock dividends will be eliminated."); Mem. Op. at 6 (noting that under the original 2008 PSPAs, no dividends can be paid without Treasury's approval). No Plaintiff alleges that, absent the Third Amendment, the Conservator would have declared, and Treasury would have approved, any dividend between 2013 and the present on any class of stock Plaintiffs own.

The D.C. Circuit's rationale for reviving the implied covenant claims for dividends confirms still further that the claims sound in anticipatory breach. The Court grounded the claims on the stock certificate language providing for the Enterprises to exercise "discretion" in declaring dividends at the close of each quarter. 864 F.3d at 631. The existence of such discretion left open the possible implied covenant claims despite the lack of an enforceable contractual right to dividends. Plaintiffs embraced this theory on remand, asserting that the linchpin of the implied covenant claim was that a party "may not act arbitrarily or unreasonably *when* exercising its contractual discretion" to declare dividends. Fairholme & Arrowood Resp.

to Defs.' Mot. To Dismiss at 20 (emphasis added; internal quotation marks omitted); *accord* Fairholme & Arrowood Resp. to Defs.' Mot. To Dismiss at 20 ("when a contract confers discretion on one party, the implied covenant requires that the discretion be used reasonably and in good faith." (quoting *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 146-47 (Del. Ch. 2009))).

But the exercise of contractual discretion to declare dividends underlying the implied covenant claims is a *future* act distinct from the execution of the Third Amendment.  When the Conservator entered into the Third Amendment in August 2012, it was not engaging in the periodic determination of whether to declare dividends that is the sole focus of the contractual language conferring discretion.  The Third Amendment itself, therefore, could not have been an arbitrary or unreasonable application of that discretion.  Accordingly, it could not have been an immediate breach of the implied covenant obligation to exercise such contractually-conferred discretion reasonably.  Rather, Plaintiffs in essence assert that the Third Amendment amounts to "a voluntary affirmative act which renders the obligor unable . . . to perform" in the future, which the D.C. Circuit described as a paradigmatic anticipatory repudiation.  *Perry Capital*, 864 F.3d at 632 (quoting Restatement (Second) of Contracts § 250(b)); *see also id.* at 633 n.26 (explaining that allegations of "rendering performance impossible" amount in substance to claims for anticipatory repudiation).[4]

---

[4] That the D.C. Circuit explicitly characterized Plaintiffs' liquidation-preference claims as based on anticipatory breach, 864 F.3d at 632-33, does not suggest the same is not true of the dividend claims.  The Court addressed anticipatory breach in the context of the liquidation-preference claims to explain why it considered those claims jurisprudentially ripe.  Because ripeness of the dividend claims was not at issue in the appeal, the Circuit had no need to expound on anticipatory repudiation in its discussion of the dividend claims.

That explains why Plaintiffs first conceived of anticipatory repudiation as the legal construct unlocking the gate for recovery as to "both dividends and liquidation distributions" alike.  *See* Cl. Pl. D.C. Cir. Reply at 13.  Having so staked their ground on an anticipated, future breach, Plaintiffs must abide by the limitations that the relevant jurisdictions place on such claims.  Plaintiffs cannot "declare a breach and sue" now simply because they have "reason (even compelling reason) to doubt" that Defendants will perform their implied covenant obligations with regard to future dividends.  *Cent. States*, 252 F.3d at 915.  The Court should dismiss Plaintiffs' implied covenant counts for failure to state a claim.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court reconsider its September 28 Opinion and Orders denying Defendants' motion to dismiss Plaintiffs' implied covenant claims, and dismiss those claims with prejudice.

Dated:  October 15, 2018          Respectfully submitted,

                              /s/ Howard N. Cayne
                              Howard N. Cayne (D.C. Bar # 331306)
                              Asim Varma (D.C. Bar # 426364)
                              David B. Bergman (D.C. Bar # 435392)
                              ARNOLD & PORTER KAYE SCHOLER LLP
                              601 Massachusetts Ave NW
                              Washington, D.C. 20001
                              (202) 942-5000
                              Howard.Cayne@arnoldporter.com
                              Asim.Varma@arnoldporter.com
                              David.Bergman@arnoldporter.com

                              *Attorneys for Defendant Federal Housing*
                              *Finance Agency and Director Melvin L. Watt*

| s/ Michael J. Ciatti | s/ Meaghan VerGow |
|---|---|
| Michael J. Ciatti  (D.C. Bar # 467177) | Meaghan VerGow  (D.C. Bar # 977165) |
| KING & SPALDING LLP | O'MELVENY & MYERS LLP |
| 1700 Pennsylvania Ave. N.W. | 1625 Eye Street, N.W. |
| Washington, DC 20006 | Washington, DC 20006 |
| Tel: (202) 626-5508 | Tel: (202) 383-5300 |
| Fax: (202) 626-3737 | Fax: (202) 383-5414 |
| mciatti@kslaw.com | mvergow@omm.com |
| | |
| *Attorney for the Federal Home Loan Mortgage Corp.* | *Attorney for the Federal National Mortgage Association* |