# Exhibit A

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

FAIRHOLME FUNDS, INC., et al.,

        *Plaintiffs*,

v.

THE FEDERAL HOUSING FINANCE AGENCY, et al.,

        *Defendants*.

Case No. 1:13-cv-1053-RCL

**PLAINTIFFS' INITIAL DISCLOSURES**

Pursuant to Rule 26(a)(1), Plaintiffs make the following initial disclosures.

I. **Individuals Likely To Have Discoverable Information that Plaintiffs May Use To Support Their Claims.**

A. **Defendant Officers and Employees with Discoverable Information.**

The following individuals are likely to have information that Plaintiffs may use to show that Defendants acted arbitrarily and unreasonably in imposing the Net Worth Sweep, thereby violating the reasonable expectations of the holders of junior preferred shares in Fannie Mae and Freddie Mac ("the Companies") that Plaintiffs now own. Per the Court's Memorandum Opinion of September 28, 2018, such information is relevant to Plaintiffs' claim that Defendants breached the implied covenant of good faith and fair dealing.

Plaintiffs are currently unaware of these individuals' addresses and telephone numbers, but relevant current or former positions are listed based upon information and belief.

    i. **FHFA.**

- Peter Brereton, Associate Director for Congressional Affairs.
- Jan Brown, Office of the Director.
- Wanda DeLeo, Deputy Director, Division of Examination Programs and Support.
- Ed DeMarco, Acting Director.
- Christopher Dickerson, Office of Systemic Risk and Market Surveillance.
- John Greenlee, Deputy Director, Enterprise Regulation.
- Patrick Lawler, Chief Economist.
- James Lockhart, Director.
- Thomas Jamie Newell, Miscellaneous Administration and Program.

1

- Nick Satriano, Chief Accountant.
- Scott Smith, Associate Director, Capital Policy.
- Jeffrey Spohn, Deputy Director, Conservatorship Operations.
- Naa Awaa Tagoe, Senior Associate Director.
- Mary Ellen Taylor, Associate Director, Division of Conservatorship; Associate Director for Agency Communication.
- Mario Ugoletti, Special Advisor (also Director, Treasury Office of Financial Institutions).

  ii. **Fannie Mae**.

- David Benson, Executive Vice President, Capital Markets.
- Duane Creel, Examiner-in-Charge (also for Freddie Mac).
- Terry Edwards, Executive Vice President, Credit Portfolio Management.
- Andre Galeano, Associate Director of Credit Risk (also for Freddie Mac).
- Alan Goldblatt, Vice President, Capital Markets Finance.
- Timothy Mayopoulos, President and Chief Executive Officer.
- Susan McFarland, Executive Vice President and Chief Financial Officer.

  iii. **Freddie Mac**.

- Devajyoti Ghose, Senior Vice President, Division of Investment and Capital Markets.
- Edward Golding, Senior Vice President, Division of Models, Mission, and Research.
- Ross Jay Kari, Chief Financial Officer.
- Donald Layton, Chief Executive Officer.
- Paul Mullings, Senior Vice President and Interim Head of Single-Family Business, Operations, and Information Technology.
- Jerry Weiss, Executive Vice President and Chief Administrative Officer.

  B. **Third Parties with Discoverable Information**.

The following individuals are also likely to have information that Plaintiffs may use to show that Defendants acted arbitrarily and unreasonably in conducting the Net Worth Sweep. Plaintiffs again are unaware of these individuals' addresses and telephone numbers, but relevant current or former positions are listed based upon information and belief.

  i. **Treasury**.

- Timothy Bowler, Deputy Assistant, Office of Capital Markets.
- Adam Chepenik, Senior Policy Advisor.
- Jeff Foster, Senior Policy Advisor.
- Timothy Geithner, Treasury Secretary.
- Jeffrey Goldstein, Under Secretary for Domestic Finance.
- Dan Jester, Contractor.
- Taylor Kawan, Acting Director of Accounting.
- Mary Miller, Under Secretary for Domestic Finance.

2

- Beth Mlynarczyk, Senior Advisor to the Counselor on Housing Finance Policy; Office of Capital Markets.
- Jeremiah Norton, Deputy Assistant Secretary for Financial Institutions.
- Henry Paulson, Secretary.
- Michael Stegman, Counselor to the Secretary for Housing Finance Policy.
- Sam Valverde, Deputy Executive Secretary.

### ii. Other Government Officials.

- Jim Parrott, Senior Advisor, National Economic Council.
- Ben Bernanke, Chair of the Federal Reserve.
- Gene Sperling, Director, National Economic Council.

### iii. Grant Thornton.

- Anne Eberhardt, Forensics and Investigation Practice.
- Lee Errickson, Executive Director.
- E. Bradley Wilson, Managing Partner of Audit, Global Public Sector.

### iv. PwC.

- Michael English, Partner.
- Ben Evans, Senior Manager.
- Bill Lewis, Partner.
- John Oliver, Partner.
- Diana Stoltzfus, Partner.
- Ryan Trzasko, Senior Manager.

### v. Deloitte.

- Jeff Swormstedt, Lead Client Service Partner.
- Adam VanFossen, Audit Senior Manager.
- Troy Vollertsen, Partner.

### vi. FHLBanks.

- James Griffin, Jr., Senior Director, Office of Finance.

## C. Plaintiffs' Officers with Discoverable Information.

The following individuals are likely to have information that Plaintiffs may use to show the number of each series of junior preferred shares in the Companies that Plaintiffs own, which is relevant to Plaintiffs' damages computations.

  **i. Fairholme Plaintiffs.**

- Wayne Kellner, President and Chief Financial Officer, Fairholme Capital Management, LLC
    - <u>Office address</u>: 2601 NE 2nd Ave., Miami, FL 33137
    - <u>Telephone</u>: (305) 434-7713

  **ii. Berkley Plaintiffs.**

- Ed Linekin, Senior Vice President for Investments, W. R. Berkley Corporation
    - <u>Office address</u>: 475 Steamboat Rd., Greenwich, CT 06830
    - <u>Office telephone</u>: (203) 629-3000

**II. Documents, Electronically Stored Information, and Tangible Things In Plaintiffs' Custody that Plaintiffs May Use To Support Their Claims.**

  **A. Liability.**

Pursuant to Rule 26(a)(1)(A)(ii), Plaintiffs herein describe the category and location of the documents and other information showing that Defendants acted arbitrarily and unreasonably in conducting the Net Worth Sweep, thereby violating the reasonable expectations of the holders of the junior preferred shares that Plaintiffs now own. This evidence includes:

- Materials produced by the United States and third parties in *Fairholme Funds, Inc. v. United States*, Case No. 1:13-cv-00465-MMS (Fed. Cl.).

- Certain of the Defendants' own public statements and other publicly available information, which have been described or provided over the course of this litigation. *See, e.g.*, Joint Appendix at 77, 78, 83, 85, 125, 2428, 2438, 4026, *Perry Capital LLC v. Mnuchin*, Case No. 14-5243 (Feb. 16, 2016); *see generally* Amended Complaint, Doc. 67-1; Response to Mtn. to Dismiss, Doc. 76.

- The provisions of the stock certificates for each series of junior preferred shares that Plaintiffs own, which are in Defendants' possession. *See, e.g.*, Ex. C to Defs'. Mtn. to Dismiss (Jan. 10, 2018) (Fannie preferred); Ex. D. to Defs'. Mtn. to Dismiss (Jan. 10, 2018) (Freddie preferred). Provisions of each series are also described in the offering documents for those series, compiled at Fannie Mae's Stock Information webpage[1] and Freddie Mac's Preferred Stock webpage.[2]

---

[1] http://www.fanniemae.com/portal/about-fm/investor-relations/stock-information.html.

[2] http://www.freddiemac.com/investors/preferred-stock.html.

Plaintiffs reserve the right to use any information already shared between the parties or referred to in filings in this or in the Court of Federal Claims litigation to prove all elements of their claim.

### B. Damages.

The documents relevant to Plaintiffs' damages computations are described in Part III and produced as noted therein.

### III. Computation of Each Category of Damages that Plaintiffs Claim.

Plaintiffs are entitled to recover the highest of either restitution, expectancy damages, or reliance damages for Defendants' breach of the implied covenant of good faith and fair dealing. *See* RESTATEMENT (SECOND) CONTRACTS § 378. The following computations of each category are preliminary. Plaintiffs' final computations will presumptively rely upon expert reports and testimony, which Plaintiffs will disclose pursuant to Rule 26(a)(2) and any scheduling order entered in this case.

### A. Restitution.

Plaintiffs are entitled to restitution equal to the prices originally paid for any series of junior preferred shares that Plaintiffs own in the Companies, plus prejudgment interest including interest running from the time of the last dividend received. This amount might be reduced by any dividends on those shares that the Companies paid, but Plaintiffs do not concede that it would be.

The original share prices are provided in the offering documents for each series of share. Although these documents are already in Defendants' possession,[3] Plaintiffs can provide copies if necessary.

The dividends paid on the shares owned by Plaintiffs can be calculated by using the Companies' annual 10-K statements and quarterly 10-Q statements and records reflecting Plaintiffs' holdings. In particular, the 10-K statements can be used to determine how the total preferred dividends were allocated among the various series of stock. By comparing the total number of shares of a particular series outstanding to the total number held by Plaintiffs, one can calculate the proportion of the dividends that are attributable to Plaintiffs' shares.

Records reflecting Plaintiffs' holdings are provided in Exhibits A and B. Although the Companies' annual and quarterly statements are in the Defendants' possession, Exhibit C shows

---

[3] The offering documents for the Companies' preferred shares are compiled as referenced above in footnotes 1 and 2.

the locations of those statements that Plaintiffs have so far found to be publicly available.[4] Again, these computations are preliminary, and Plaintiffs may rely on expert assistance to reach final damages amounts.

The prejudgment interest rate is set by state law. *See* 6 Del. Code § 2301(a) (interest rate under Delaware law, which Fannie Mae bylaws designate as controlling); Va. Code § 6.2-302 (interest rate under Virginia law, which Freddie Mac bylaws designate as controlling).

### B. Expectancy Damages.

Plaintiffs are entitled to expectancy damages equal to the value that holders of Plaintiffs' junior preferred shares would have enjoyed from those shares—including the current value of the shares and their liquidation preferences, and the value of dividend payments on those shares—absent the Net Worth Sweep, plus prejudgment interest including interest running from the time of the last dividend received.

Information potentially relevant to this computation includes the financial status and capital structure of the Companies absent the Net Worth Sweep, as well as the amount (if any) of the quarterly periodic commitment fee that Treasury would have collected from the Companies. Plaintiffs intend to rely on an expert witness to calculate expectancy damages based on all relevant information, and thus are not yet able to offer an exact computation. But Plaintiffs note that a Freddie document shows that the periodic commitment fee would have been at most a small fraction of the outstanding amount of Treasury's funding commitment to the Companies. Defendants also have possession of this document, since they produced it in discovery in the Court of Federal Claims,[5] but Plaintiffs again can provide a copy if necessary.

### C. Reliance Damages.

Plaintiffs are entitled to reliance damages equal to the costs of preparing to perform and of performing the shareholder's obligations under Plaintiffs' junior preferred shares.

These damages equal the original price of Plaintiffs' shares, plus prejudgment interest including interest running from the time of the last dividend received. This amount might be reduced by any dividends on those shares that the Companies paid, but Plaintiffs do not concede that it would be. The documents relevant to this computation are discussed above in Part III.A. Plaintiffs also intend to rely on expert analysis of the information discussed in Part III.B to show that Defendants cannot meet their burden to prove that Plaintiffs' shares would have lost value absent Defendants' breach of the implied covenant of good faith and fair dealing.

---

[4] Specifically, Plaintiffs have located through public channels Fannie Mae's 10-Ks or similar annual reports since 2000, Fannie Mae's 10-Qs since 2003, Freddie Mac's 10-Ks or similar annual reports since 2000, and Freddie Mac's 10-Qs since 2008.

[5] The de-designated version has Bates number FHFA00102167.

## IV. <u>Insurance Agreements</u>.

Plaintiffs are unaware of any insurance policies applicable under Rule 26(a)(1)(A)(iv).

*   *   *

Plaintiffs reserve the right to supplement this disclosure upon discovery of additional material information.

Date: November 5, 2018                                Respectfully submitted,

/s/ Charles J. Cooper
Charles J. Cooper (Bar No. 24870)
ccooper@cooperkirk.com
David H. Thompson (Bar No. 450503)
Peter A. Patterson (Bar No. 998668)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 220-9600
Facsimile: (202) 220-9601

*Attorneys for Plaintiffs*
*Fairholme Funds, Inc., et al.*