# Exhibit E

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FAIRHOLME FUNDS, INC., *et al*., | |
| Plaintiffs, | |
| v. | Civil No. 13-1053 (RCL) |
| FEDERAL HOUSING FINANCE AGENCY, *et al.*, | |
| Defendants. | |
| In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations | |
| _____ | Miscellaneous No. 13-1288 (RCL) |
| This document relates to: ALL CASES | |

## **DEFENDANTS' PROPOSED PRELIMINARY JURY INSTRUCTIONS**

### Introduction; Role of Jury

Now that you have been sworn, I have the following preliminary instructions for your guidance as jurors in this case.

During this trial, you will hear the evidence, decide what the facts are, and then apply those facts to the law that I will give to you.

You and only you will be the judges of the facts. You will have to decide what happened. I play no part in judging the facts. You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be. My role is to be the judge of the law. I make whatever legal decisions have to be made during the

course of the trial, and I will explain to you the legal principles that must guide you in your decisions.  You must follow that law whether you agree with it or not.

The Defendants

In this trial, you will be asked to render verdicts in two separate lawsuits.  These two lawsuits were brought by four different groups of plaintiffs against the same defendants, and they involve the same underlying facts and assert the same legal claim.

The Defendants in these lawsuits are (1) the Federal Housing Finance Agency (often referred to as "FHFA" or "the Conservator"), in its role as Conservator of the companies known as Fannie Mae and Freddie Mac, (2) the Director of FHFA, Sandra L. Thompson, solely in her official capacity, (3) the Federal National Mortgage Association (known as "Fannie Mae" or "Fannie"), and (4) the Federal Home Loan Mortgage Corporation (known as "Freddie Mac" or "Freddie").

Fannie Mae and Freddie Mac are separate companies created by Congress to support the nation's home mortgage system.  During this trial, you will often hear Fannie Mae and Freddie Mac referred to as the "Government-Sponsored Enterprises," or "Enterprises" or "GSEs" for short.

FHFA is a U.S. federal government agency created by Congress in July 2008, in the midst of the 2008 housing and financial crisis, to be the regulator of Fannie Mae and Freddie Mac.  FHFA has served as the Conservator of Fannie Mae and Freddie Mac since September 6, 2008, when FHFA's Director placed Fannie Mae and Freddie Mac into conservatorships in accordance with a federal law enacted by Congress known as the Housing and Economic Recovery Act of 2008, or "HERA" or the "Recovery Act" for short.

In general, a conservatorship is a legal process in which a person or entity is appointed to exercise control and oversight over a company because the company is is at risk of going out of

2

business.  In a conservatorship, the conservator takes over all the powers of the company's directors, officers, and shareholders to operate the business.  Under the Recovery Act, when FHFA acts in its role as Conservator, it may take actions that are beneficial to the public, even if those actions are not in the best interests of Fannie Mae, Freddie Mac, or their shareholders.  Whatever actions FHFA takes as Conservator on behalf of either Fannie Mae or Freddie Mac are deemed to be taken by Fannie Mae or Freddie Mac and are binding on them.  For example, if the Conservator enters into a contract on behalf of Fannie Mae or Freddie Mac, the terms of that contract are binding on Fannie Mae or Freddie Mac, respectively.

As I mentioned, FHFA's Director, Sandra Thompson, is also named as a defendant in this lawsuit solely in her official capacity.  This is done for technical legal reasons.

<u>The Plaintiffs</u>

As I mentioned, this trial involves two separate lawsuits.

One lawsuit is brought by nine affiliated insurance companies, namely: Berkley Insurance Company, Berkley Regional Insurance Company, Acadia Insurance Company, Admiral Indemnity Company, Admiral Insurance Company, Carolina Casualty Insurance Company, Midwest Employers Casualty Insurance Company, Nautilus Insurance Company, Preferred Employers Insurance Company.  I will refer to these companies together as the "Insurance Company Plaintiffs."  The Insurance Company Plaintiffs are holders of junior preferred stock in Fannie Mae and junior preferred stock in Freddie Mac.

The other lawsuit here is a class action.  A class action is a lawsuit that has been brought by one or more plaintiffs on behalf of a larger group of people who have the same legal claims. All of these people together are called a "class," and the specific plaintiffs who bring the lawsuit on behalf of the class are called the "class representatives."  The class representatives who bring

this action are Joseph Cacciapalle, Barry P. Borodkin, Michelle M. Miller, and Timothy J. Cassell.  The class representatives are holders of Fannie Mae junior preferred stock, Freddie Mac junior preferred stock, and/or Freddie Mac common stock.

Here, the class representatives are suing the Defendants on behalf of three separate classes:

1. The first class involves a type of stock known as junior preferred stock.  This class consists of all current holders of junior preferred stock in Fannie Mae as of December 7, 2021, or their successors in interest to the extent shares are sold after December 7, 2021, and before any final judgment or settlement (which I will refer to as the "Fannie Preferred Class")

2. The second class consists of all current holders of junior preferred stock in Freddie Mac as of December 7, 2021, or their successors in interest to the extent shares are sold after December 7, 2021, and before any final judgment or settlement (which I will refer to as the "Freddie Preferred Class"); and

3. The third class involves a different type of stock known as common stock.  This class consists of all current holders of common stock in Freddie Mac as of December 7, 2021, or their successors in interest to the extent shares are sold after December 7, 2021, and before any final judgment or settlement (which I will refer to as the "Freddie Common Class").

None of these classes includes holders of Fannie Mae common stock because no one has brought claims on their behalf.

As a general matter, holders of preferred stock do not have voting rights in a company but have priority over holders of common stock to any dividends a company may declare. Holders of common stock have voting rights.

Unless I distinguish them, I will refer to the Fannie Preferred Class, the Freddie Preferred Class, and the Freddie Common Class collectively as the "Class Plaintiffs."

Similarly, unless I distinguish them, I will refer to the Insurance Company Plaintiffs and the Class Plaintiffs collectively as the "Plaintiffs."

Your verdicts in this case as to the Fannie Preferred Class, the Freddie Preferred Class, and the Freddie Common Class, whatever they may be, will be applicable to each of the members of that specific Class.  The Insurance Company Plaintiffs are not members of any of the three Classes.  You will be asked to separately consider the claims of each of the Fannie Preferred Class, the Freddie Preferred Class, the Freddie Common Class, and the Insurance Company Plaintiffs.

<u>Description of the Case; Summary of Applicable Law</u>

I will now tell you a little bit about what this case is about.

This is a breach of contract lawsuit.  As shareholders in Fannie Mae and/or Freddie Mac, the Plaintiffs are considered to have a contract with that company (or companies), which I will refer to as the shareholder contract.  Unlike other kinds of contracts, the terms of the shareholder contract are not contained in a single document, but rather come from multiple sources, including the stock certificate, the company's charter and bylaws, as well as certain laws affecting Fannie Mae and Freddie Mac which are deemed to be part of the shareholder contract.  As those laws change, the changes automatically become part of the shareholder contract.  For instance, the

terms of the Recovery Act, enacted by Congress in 2008, are part of the shareholder contracts here.

The Plaintiffs in this case claim that the Defendants breached a term of the relevant Fannie and Freddie shareholder contracts known as the "implied covenant of good faith and fair dealing." Specifically, the Plaintiffs claim that the implied covenant was breached by FHFA's decision, acting as Conservator of Fannie and Freddie, to enter into an amendment to different contracts that Fannie and Freddie each have with the U.S. Department of Treasury. Those different contracts are called the Senior Preferred Stock Purchase Agreements. FHFA, separately on behalf of Fannie Mae and Freddie Mac, entered into the Senior Preferred Stock Purchase Agreements with the U.S. Department of Treasury in 2008. The amendment to each of those contracts that is at issue in this case, and that you will hear more about during the trial, is referred to as the Third Amendment.

The Defendants deny the Plaintiffs' claim.

I will give you detailed instructions on the law at the end of the trial, and those instructions will control your deliberations and ultimate decisions. But in order to help you follow the evidence during the trial, I will now give you a brief summary of the elements that the Plaintiffs must prove to make their case:

To prove a breach of the implied covenant of good faith and fair dealing, each of the four groups of Plaintiffs have the burden to prove two things. First, they must prove the Third Amendment violated the reasonable expectations of Fannie Mae and/or Freddie Mac shareholders as of just before the Third Amendment. Second, they also must prove that FHFA, in its role as Conservator of Fannie Mae and Freddie Mac, acted arbitrarily or unreasonably in entering into the Third Amendment on behalf of Fannie Mae and Freddie Mac.

If you find that any group of Plaintiffs met their burden to prove those first two elements, then those Plaintiffs next have the burden to prove that they sustained financial harm caused by the Third Amendment.  Finally, if you find that those Plaintiffs met their burden on the harm element as well, then those Plaintiffs, in order to obtain an award of money damages, have the burden to prove the amount of damages with reasonable certainty.

If you find that any of the four groups of Plaintiffs (the Fannie Preferred Class, the Freddie Preferred Class, the Freddie Common Class, or of the Insurance Company Plaintiffs) failed to meet their burden on any one of those four issues, then your verdict must be for the Defendants as to that group of Plaintiffs.

<u>Conduct of the Jury</u>

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial and until you have heard all of the evidence and retired to the jury room to deliberate, you are not to discuss the case with anyone, not even among yourselves.  If anyone should try to talk to you about the case, including a fellow juror, bring it to my attention promptly.  There are good reasons for this ban on discussions, the most important being the need for you to keep an open mind throughout the presentation of evidence.

If any lawyer, party, or witness does not speak to you or even acknowledge you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk or visit with you, either.  That is why you are asked to wear your juror tags.  It shows that you are someone who is not to be approached in any way.

Second, you are to decide the case solely upon the evidence presented at trial.  Therefore, do not read or listen to anything related to this case that is not admitted into evidence.  By that I mean, if there is a news article, tweet, post, or radio or television report relating to this case, do

not read the article or tweet or post or watch or listen to the report.  Please do not try to find out information from any source outside the confines of this courtroom.

Again, do not reach any conclusion on the claims until all of the evidence is in.  Keep an open mind until you start your deliberations at the end of the case.

<u>The Use of Electronic Technology to Learn or Communicate about a Case</u>

As jurors, you must decide this case based solely on the evidence and law presented to you here in this courtroom.  Until all the evidence and arguments have been presented and you begin to deliberate, you may not discuss this case with anyone, not even your fellow jurors.  After you start to deliberate, you may discuss the case, the evidence, and the law as it has been presented, but only with your fellow jurors.  You cannot discuss it with anyone else until you have returned a verdict and the case has come to an end.  I'll now walk through some specific examples of what this means.

First, this means that, during the trial, you must not conduct any independent research about this case, or the matters, legal issues, individuals, or other entities involved in this case.  Just as you must not search or review any traditional sources of information about this case (such as dictionaries, reference materials, or television news or entertainment programs), you also must not search the internet or any other electronic resources for information about this case or the witnesses or parties involved in it.  The bottom line for the important work you will be doing is that you must base your verdict only on the evidence presented in this courtroom, along with instructions on the law that I will provide.  Second, this means that you must not communicate about the case with anyone, including your family and friends, until you begin your deliberations, when you will discuss the case with only your fellow jurors.  During deliberations, you must continue not to communicate about the case with anyone other than your fellow jurors.

8

Most of us use smartphones, tablets, or computers in our daily lives to access the internet, for information, and to participate in social media platforms.  To remain impartial jurors, however, you must not communicate with anyone about this case, whether in person, in writing, or through email, text messaging, blogs, or social media websites and apps (like Twitter, Facebook/Meta, Instagram, LinkedIn, YouTube, WhatsApp, and Snapchat).

Please note that these restrictions are about all kinds of communications about this case, even those that are not directed at any particular person or group.  Communications like blog posts or tweets can be shared with an ever-expanding circle of people and can have an unexpected impact on this trial.  For example, a post you make to your social media account might be viewable by a witness who is not supposed to know what has happened in this courtroom before he or she has testified.  For these reasons, you must inform me immediately if you learn about or share any information about the case outside of this courtroom, even if by accident, or if you discover that another juror has done so.

Finally, a word about an even newer challenge for trials: persons, entities, and even foreign governments may seek to manipulate your opinions, or your impartiality during deliberations, using the communications I've already discussed or using fake social media accounts.  But these misinformation efforts might also be undertaken through targeted advertising online or in social media.  Many of the tools you use to access email, social media, and the internet display third-party notifications, pop-ups, or ads while you are using them.  These communications may be intended to persuade you or your community on an issue, and could influence you in your service as a juror in this case.  For example, while accessing your email, social media, or the internet, through no fault of your own, you might see popups containing information about this case or the matters, legal principles, individuals or other

9

entities involved in this case.  Please be aware of this possibility, ignore any pop-ups or ads that might be relevant to this case, and certainly do not click through to learn more if these notifications or ads appear.  If you see any pop-ups or ads relating to this case, you must let me know immediately.

Because it is so important to the parties' rights that you decide this case based solely on the evidence presented in the courtroom and my instructions on the law, at the beginning of each day, I may ask you whether you have learned about or shared any information outside of this courtroom.

<u>Bench Conferences</u>

During the trial it may be necessary for me to talk with the lawyers out of your hearing by having a bench conference.  If that happens, please be patient.

We are not trying to keep important information from you.  These conferences are necessary for me to fulfill my responsibility, which is to be sure that evidence is presented to you properly under the law.

We will, of course, do what we can to keep the number and length of these conferences to a minimum.  While I am talking to the lawyers out of your hearing, I may invite you to stand up and stretch and take a short break or perhaps even call a recess if it is a lengthy issue.

I may not always grant an attorney's request for a conference out of your hearing.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

<u>Evidence</u>

The evidence from which you are to find the facts consists of the following:

1.  The testimony of the witnesses;

2.  Documents and other things received as exhibits;

3.  Any facts that are stipulated -- that is, formally agreed to by the parties; and

4.  Any facts that I may instruct you to accept as proved.

The following things are not evidence:

1.  Statements, arguments, and questions of the lawyers for the parties in this case;

2.  Objections by lawyers.

3.  Any testimony I tell you to disregard; and

4.  Anything you may see or hear about this case outside the courtroom.

You must make your decision based only on the evidence that you see and hear in court. Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

There are rules that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence. You should not be influenced by the fact that an objection is made. Objections to questions or exhibits are not evidence. Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question or

11

document.  If it is overruled, treat the answer or document like any other.  If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Also, certain testimony or other evidence may be ordered struck from the record and you will be instructed to disregard this evidence.  Do not consider any testimony or other evidence that gets struck or excluded.  Do not speculate about what a witness might have said or what an exhibit might have shown.

Direct and Circumstantial Evidence

There are two types of evidence that you may use in reaching your verdict.  One type of evidence is called "direct evidence."  An example of "direct evidence" is when a witness testifies about something that the witness knows through his own senses—something the witness has seen, felt, touched, heard, or did.  If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

The other type of evidence is circumstantial evidence.  "Circumstantial evidence" is proof of one or more facts from which you could find another fact.  If a witness testified that they heard thunder and lightning while they slept and that their car was wet when they awoke, that would be circumstantial evidence from which you could conclude that it rained overnight.

You should consider both kinds of evidence that are presented to you.  The law makes no distinction in the weight to be given to either direct or circumstantial evidence.  You are to decide how much weight to give any evidence.

Credibility of Witnesses

In deciding what the facts are, you must weigh the testimony of all the witnesses who have appeared before you.  You are the sole judges of the credibility of the witnesses.  In other

words, you alone determine whether to believe the testimony of any witness and to what extent any witness should be believed.  Judging a witness's credibility means evaluating whether the witness has testified truthfully and whether the witness accurately observed, recalled, and described the matters about which the witness testified.

You may consider anything that in your judgment affects the credibility of any witness.  For example, you may consider the behavior of the witness on the witness stand; whether the witness comes across to you as a truthful individual and one with an accurate memory; whether the witness has any motive for not telling the truth, any interest in the outcome of this case, or any bias, friendship, or animosity toward other people involved in this case; and whether the witness had a full opportunity to observe the matters about which he or she testified.  You also may consider the plausibility or lack of plausibility of the testimony of a witness, and whether the witness's testimony has been contradicted or supported by other evidence.  In resolving any conflict between a witness's testimony and other evidence that you find credible, you may consider whether the conflict involves an important or an unimportant matter, and whether it results from innocent error or intentional falsehood.

Ultimately, you should give the testimony of each witness as much weight as you believe it is fairly entitled to receive.

### Jury Questions for Witnesses

Only the lawyers and I are allowed to ask questions of witnesses.  You are not permitted to ask questions of witnesses.

### Note Taking by Jurors

If you wish, you may take notes during the presentation of evidence, the summations of attorneys at the conclusion of the evidence, and during my instructions to you on the law.  My

Courtroom deputy will arrange for pens, pencils, and paper.  Remember that your notes are for your own personal use—they are not to be given or read to anyone else, including your fellow jurors.

As you see, we have a court reporter here who will be transcribing the testimony during the course of the trial.  But you should not assume that the transcripts will be available for your review during your deliberations.  Nor should you consider notes that you or fellow jurors may take as a kind of written transcript.  Instead, as you listen to the testimony, keep in mind that you will be relying on your recollection of that testimony during your deliberations.  Here are some other specific points to keep in mind about note taking:

1.  <u>Note-taking is permitted, not required</u>.  Each of you may take notes.  No one is required to take notes.

2.  <u>Be brief</u>.  If you choose to take notes, do not feel like you must try to summarize all of the testimony.  Notes are better suited for refreshing your memory as may be needed.  For example, notetaking may be helpful when dealing with measurements, times, distances, identities, and relationships.  Overuse of note-taking may be distracting.  You must determine the credibility of witnesses; so you must observe the demeanor and appearance of each person on the witness stand.  Note-taking must not distract you from that task.  If you wish to make a note, you should not sacrifice the opportunity to make important observations.

3.  <u>Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors</u>.  In your deliberations, give no more and no less weight to the views of a fellow juror just because that juror did or did not take notes.  As I mentioned earlier, your notes are not official transcripts.  They are not evidence, and they are by no

14

means a complete outline of the proceedings or a list of the highlights in the trial. They are valuable, if at all, only as a way to refresh your memory. Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case. You therefore are not to use your notes as authority to persuade fellow jurors of what the evidence was during the trial. Notes are not to be used in place of the evidence.

4. <u>Do not take your notes away from court</u>. I repeat, at the end of each day, please leave your notes in the jury room. If you do take notes, take them with you each time you leave the courtroom and please leave them in the jury room when you leave at night. At the conclusion of the case, after you have used your notes in deliberations, a court officer will collect and destroy them, to protect the secrecy of your deliberations.

<u>Preponderance of the Evidence</u>

This is a civil case. The Plaintiffs are the parties who brought this lawsuit. The Defendants are the parties against whom the lawsuit was filed. The Plaintiffs have the burden of proving their case by what is called the preponderance of the evidence. That means that the Plaintiffs have to prove to you, in light of all the evidence, that what they claim is more likely true than not true. To say it differently: if you were to put the evidence favorable to the Plaintiffs and the evidence favorable to the Defendants on opposite sides of the scales, the Plaintiffs would have to make the scales tip on their side. If you find after considering all the evidence that a claim or fact is more likely true than not true, then the claim or fact has been proved by a preponderance of the evidence. If any group of Plaintiffs fails to meet this burden with respect to any element of their claim, the verdict must be for the Defendants as to that group of Plaintiffs.

15

In determining whether any fact has been proved by a preponderance of evidence in the case, you should, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

<u>Description of Trial Proceedings</u>

The trial will proceed in the following manner:

First, attorneys for the Plaintiffs will make an opening statement to you.  Next, attorneys for the Defendants may make an opening statement.  What is said in the opening statements is not evidence but is simply an outline to help you understand what each party expects the evidence to show.

After the attorneys have made their opening statements, then each party is given an opportunity to present its evidence.

The Plaintiffs go first because the Plaintiffs have the burden of proof.  The Plaintiffs may present witnesses whom counsel for the Defendants may cross-examine, and the Plaintiffs may also present additional evidence, such as documents.  Following the Plaintiffs' case, the Defendants may present witnesses whom counsel for the Plaintiffs may cross-examine, and the Defendants may also present other evidence, such as documents.  Counsel for the Plaintiffs may cross-examine witnesses for the defense.  After each party's main case is presented, they may be permitted to present what is called rebuttal evidence.

After all the evidence has been presented, the attorneys will present to you closing arguments to summarize and interpret the evidence in a way that is helpful to their clients' positions.  As with opening statements, closing arguments are not evidence.  Once the closing

arguments are completed, I will then instruct you on the law.  After that you will proceed to the

jury room to deliberate on your verdict in this case.