# Exhibit F

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FAIRHOLME FUNDS, INC., *et al*., | |
| Plaintiffs, | |
| v. | Civil No. 13-1053 (RCL) |
| FEDERAL HOUSING FINANCE AGENCY, *et al.*, | |
| Defendants. | |
| In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations | |
| | Miscellaneous No. 13-1288 (RCL) |
| This document relates to: ALL CASES | |

### DEFENDANTS' PROPOSED JURY INSTRUCTIONS

Now that all of the evidence is in, I will give you final instructions on the law.

During your deliberations, you will each have a written copy of these instructions. One reason I give you written copies is so that you do not have to take notes about specific instructions as I read them, but you can take notes if you wish. However, if there is any conflict between your notes and the written instructions, these written instructions control.

During your deliberations, you may choose to refer only to a particular portion of the instructions, but you should still consider each instruction in the context of the instructions as a whole. You may not ignore or disregard any portion of the instructions.

It will take me about 30 minutes to read these instructions.  I read them word for word to make sure I give them to you correctly.

First, I will talk about some general rules of law.  Then I will talk about the law concerning the specific claim asserted by the Plaintiffs in this case.

## General Instructions

### Your Role as Jurors

Your function, as the jury, is to decide the facts in this case.  You are the sole judges of the facts.  You alone decide the weight, the effect, and the value of the evidence, and the credibility of each witness.

You should decide the case solely from a fair evaluation of all the evidence—without prejudice, fear, sympathy, or favoritism.  Our system of justice requires that you decide the facts of this case in an impartial manner.  It is a violation of your sworn duty to base your verdict upon anything other than the evidence presented in the case by all parties.

You should not take anything I may have said or done as indicating how I think you should decide this case.  If you believe I have said or done anything, including giving these instructions, that seemed to indicate my opinion about the merits of the case, then you should disregard that indication.  Nothing I have said or done should influence or suggest to you that I favor any party in this case.  I do not.  The verdict in this case is your sole and exclusive responsibility.

My function is to conduct this trial in a fair and efficient manner and to instruct you on the law that applies in this case.

It is your duty to accept the law as I explain it.  Even if you disagree with any of the legal statements in these instructions, or do not understand the reasons for any of them, you are bound to follow them.

During the course of the trial, you have heard references to the terms plaintiffs and defendants. To put it as simply as possible, the plaintiffs are the people or entities who start a lawsuit and the defendants are the people or entities who are sued by the plaintiffs.

In weighing the evidence, you must not attach any significance to the terms plaintiffs and defendants.  In other words, the fact that the plaintiffs have filed a lawsuit against the defendants does not mean that the plaintiffs are entitled to your verdict or that their evidence is entitled to greater weight than the defendants' evidence.  A plaintiff must prove every element of his/her claim against a defendant by a preponderance of the evidence before the plaintiff is entitled to prevail.

In reaching a just verdict, you must consider and decide this case as an action between persons of equal standing in the community and of equal worth.  All persons, including corporations and government entities, stand equal before the law and are to be treated as equals in this court.  In other words, the identity of the parties must not affect your decision.

It is your duty as jurors to consult with each other.  You must decide the case for yourself, but you should do so only after thoroughly discussing it with your fellow jurors.  You should not hesitate to change an opinion when convinced that it is wrong, but you should not surrender your honest beliefs about the effect or weight of evidence merely to return a verdict or solely because of other jurors' opinions.

3

You are not advocates in this matter, but are neutral judges of the facts. Therefore, during your deliberations, your purpose should be to determine the facts and apply the law impartially.

## Inadmissible and Stricken Evidence

There were times during the trial when a lawyer made an objection to a question asked by another lawyer or to an answer given by a witness. It is the duty of a lawyer to make objections if the lawyer believes the question or answer is legally improper. If I sustained an objection to a question, the witness was not allowed to answer it and you should not guess what the answer might have been. Likewise, if I told you to disregard a witness's answer, you may not consider that answer during your deliberations.

Similarly, if I sustained an objection to an exhibit, then you should ignore the exhibit, you should not guess what may have been in that exhibit, and that exhibit should play no part in your deliberations.

## Evaluating Testimony and Evidence

You may consider only the evidence admitted in this case. The evidence consists of the sworn testimony of witnesses, exhibits admitted into evidence, and facts stipulated to by the parties. You should consider all of these types of evidence equally, but the weight you give or do not give to such evidence is up to you. You should consider any facts to which the parties have stipulated or agreed to be undisputed.

In arriving at your verdict, you are to consider only the evidence in the case. However, you are permitted to draw from the evidence such reasonable inferences that you feel are justified in light of your experience and common sense. You should not rely on speculation or guesswork.

Statements and arguments of the lawyers are not evidence.  They are intended only to help you to understand the evidence from each party's perspective.

Likewise, the questions that a lawyer asks are not evidence.  A lawyer's question that contains an assertion of fact is not evidence of that fact.

If I describe or any lawyer describes the evidence you have heard differently from the way you remember it, it is your memory that should control during your deliberations.

### Burden of Proof

The Plaintiffs have the burden of proving their claim at trial.  Each set of Plaintiffs— Fannie Preferred Class, the Freddie Preferred Class, the Freddie Common Class, and the Insurance Company Plaintiffs—must prove each element of their claim by a preponderance of the evidence, which means that they each have to prove that each element is more likely true than not true.  However, if you believe that the evidence is evenly balanced on an issue that the Plaintiffs have to prove, then the Plaintiffs have not carried their burden of proof and your finding on that issue must be for the Defendants.

In determining whether each set of Plaintiffs has carried its burden of proof, you should consider the quality, and not merely the quantity, of the evidence.  In other words, merely having a greater number of witnesses or documents does not necessarily prove a point by a preponderance of the evidence, depending on the quality of such evidence.

In determining whether any fact has been proved by a preponderance of the evidence, you should consider all the evidence bearing on that fact, regardless of who produced it.  A party is entitled to benefit from all evidence that favors that party, even if the other party produced it.

### Direct and Circumstantial Evidence

There are two types of evidence: "direct evidence" and "circumstantial evidence."

An example of "direct evidence" is when a witness testifies about something that the witness knows through his own senses—something the witness has seen, felt, touched, heard, or did.  If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

"Circumstantial evidence" is proof of one or more facts from which you could find another fact.  If a witness testified that they heard thunder and lightning while they slept and that their car was wet when they awoke, that would be circumstantial evidence from which you could conclude that it rained overnight.

You should consider both kinds of evidence that are presented to you.  The law makes no distinction in the weight that should be given to either direct or circumstantial evidence.  You are to decide how much weight to give any evidence, whether direct or circumstantial.

<u>Credibility of Witnesses</u>

In deciding what the facts are, you must weigh the testimony of all the witnesses who have appeared before you.  You are the sole judges of the credibility of the witnesses.  In other words, you alone determine whether to believe the testimony of any witness and to what extent any witness should be believed.  Assessing a witness's credibility means evaluating whether the witness has testified truthfully and also whether the witness accurately observed, recalled, and described the matters about which the witness testified.

You may consider anything that in your judgment affects the credibility of any witness.  For example, you may consider the behavior of the witness on the witness stand; whether the witness comes across to you as a truthful individual and one with an accurate memory; whether the witness has any motive for not telling the truth, any interest in the outcome of this case, or any friendship or animosity toward other people involved in this case; and whether the witness

had a full opportunity to observe the matters about which he or she testified. You also may consider the plausibility or implausibility of the testimony of a witness, and whether the witness's testimony has been contradicted or supported by other evidence. In resolving any conflict between a witness's testimony and other evidence, you may consider whether the conflict involves an important or an unimportant matter, and whether it results from innocent error or intentional falsehood.

Ultimately, you should give the testimony of each witness as much weight as you believe it is fairly entitled to receive.

## Deposition Testimony

During the trial, certain testimony has been presented by way of deposition. The deposition consisted of sworn, recorded answers to questions asked of the witness in advance of the trial by attorneys for the parties to the case. The testimony of a witness who is not present to testify in person from the witness stand may be presented in writing under oath or by video recording. Such testimony is entitled to the same consideration and is to be judged as to credibility, and weighed, and otherwise considered by you, in the same way as if the witness had been present and had testified live from the witness stand.

## Expert Testimony

You have heard testimony from persons identified as experts. These are Dr. Anjan V. Thakor, Dr. Bala G. Dharan, Dr. Joseph R. Mason, Dr. Mukarram Attari, and Dr. S.P. Kothari. These witnesses are considered experts because their training, skill, experience, or education has given them scientific, technical, or other specialized knowledge that other people lack and that might assist you in understanding the evidence or in determining a fact in issue. Expert witnesses may state an opinion about any matter within their expertise and provide the reasons

for the opinion. Expert testimony should be judged just as any other evidence. You may give it as much or as little weight as you think it deserves, considering the expert's education and experience, the reasons given for the opinion, the expert's credibility and all the other evidence in the case.

<u>Impeachment of Witnesses by Prior Inconsistent Statements</u>

The testimony of a witness may be discredited or impeached by showing that he or she has previously made statements which are inconsistent with his or her present courtroom testimony. It is for you to decide whether a witness made a statement on an earlier occasion and whether it was in fact inconsistent with the witness's testimony in court here.

If a witness at trial has been confronted with a prior statement which that witness made, and that prior statement is inconsistent with his or her testimony here in court, then you may consider the prior statement when you assess the truthfulness of the testimony he or she gave in court.

If the witness made the prior inconsistent statement under oath at a deposition, then you may also treat that prior statement as evidence in this case—that is, you may treat what the witness said in that prior statement as evidence like any other evidence in this case.

If you believe that any witness has been discredited or impeached, then you should give his or her testimony the weight, if any, that you conclude it is fairly entitled to receive.

If a witness testified that a prior inconsistent statement is the truth, then you may consider the prior statement both to evaluate the witness's credibility and as evidence of the truth of any fact contained in that prior statement.

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do

something, that was different from the testimony that the witness gave at the trial.  A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it.  People may forget some things or remember other things inaccurately.  If a witness made a misstatement, consider whether you think that misstatement was an intentional falsehood or simply an innocent mistake.  The significance of that may depend on whether it involves an important fact or with only an unimportant detail.

Stipulations of Fact

A "stipulation" is an agreement.  When there is no dispute about certain facts, the attorneys may agree or "stipulate" to those facts.  You must accept a stipulated fact as evidence and treat that fact as having been proved here in court.  I have previously read the list of stipulated facts in this case, which I will also send back with you to deliberations.

Charts and Illustrative Aids

The lawyers have shown you charts and illustrative aids to help explain the facts.  Unless the chart or illustrative aid was admitted into evidence as an exhibit in this case, however, the charts or illustrative aids themselves are not evidence or proof of any facts.  If any chart or summary that was not admitted into evidence does not correctly reflect facts or figures shown by the evidence in the case, then you should disregard that chart or summary.

The Defendants

In this trial, you will be asked to render verdicts in two separate lawsuits.  These two lawsuits were brought by four different groups of plaintiffs against the same defendants, and they involve the same underlying facts and assert the same legal claim.

The Defendants in these lawsuits are (1) the Federal Housing Finance Agency (often referred to as "FHFA" or "the Conservator"), in its role as Conservator of the companies known

as Fannie Mae and Freddie Mac, (2) the Director of FHFA, Sandra L. Thompson, solely in her official capacity, (3) the Federal National Mortgage Association (known as "Fannie Mae" or "Fannie"), and (4) the Federal Home Loan Mortgage Corporation (known as "Freddie Mac" or "Freddie").

Fannie Mae and Freddie Mac are separate companies created by Congress to support the nation's home mortgage system.  During this trial, you will often hear Fannie Mae and Freddie Mac referred to as the "Government-Sponsored Enterprises," or "Enterprises" or "GSEs" for short.

FHFA is a U.S. federal government agency created by Congress in July 2008, in the midst of the 2008 housing and financial crisis, to be the regulator of Fannie Mae and Freddie Mac.  FHFA has served as the Conservator of Fannie Mae and Freddie Mac since September 6, 2008, when FHFA's Director placed Fannie Mae and Freddie Mac into conservatorships in accordance with a federal law enacted by Congress known as the Housing and Economic Recovery Act of 2008, or "HERA" or the "Recovery Act" for short.

In general, a conservatorship is a legal process in which a person or entity is appointed to exercise control and oversight over a company because the company is at risk of going out of business.  In a conservatorship, the conservator takes over all the powers of the company's directors, officers, and shareholders to operate the business.  Under the Recovery Act, when FHFA acts in its role as Conservator, it may take actions that are beneficial to the public, even if those actions are not in the best interests of Fannie Mae, Freddie Mac, or their shareholders.  Whatever actions FHFA takes as Conservator on behalf of either Fannie Mae or Freddie Mac are deemed to be taken by Fannie Mae or Freddie Mac and are binding on them.  For example, if the Conservator enters into a contract on behalf of Fannie Mae or Freddie Mac, the terms of that contract are binding on Fannie Mae or Freddie Mac, respectively.

As I mentioned, FHFA's Director, Sandra Thompson, is also named as a defendant in this lawsuit solely in her official capacity.  This is done for technical legal reasons.

<u>The Plaintiffs</u>

As I mentioned, this trial involves two separate lawsuits.

One lawsuit is brought by nine affiliated insurance companies, namely: Berkley Insurance Company, Berkley Regional Insurance Company, Acadia Insurance Company, Admiral Indemnity Company, Admiral Insurance Company, Carolina Casualty Insurance Company, Midwest Employers Casualty Insurance Company, Nautilus Insurance Company, Preferred Employers Insurance Company.  I will refer to these companies together as the "Insurance Company Plaintiffs."  The Insurance Company Plaintiffs are holders of junior preferred stock in Fannie Mae and junior preferred stock in Freddie Mac.

The other lawsuit here is a class action.  A class action is a lawsuit that has been brought by one or more plaintiffs on behalf of a larger group of people who have the same legal claims. All of these people together are called a "class," and the specific plaintiffs who bring the lawsuit on behalf of the class are called the "class representatives."  The class representatives who bring this action are Joseph Cacciapalle, Barry P. Borodkin, Michelle M. Miller, and Timothy J. Cassell.  The class representatives are holders of Fannie Mae junior preferred stock, Freddie Mac junior preferred stock, and/or Freddie Mac common stock.

Here, the class representatives are suing the Defendants on behalf of three separate classes:

1.  The first class involves a type of stock known as junior preferred stock.  This class consists of all current holders of junior preferred stock in Fannie Mae as of December 7, 2021, or their successors in interest to the extent shares are sold after December 7,

2021, and before any final judgment or settlement (which I will refer to as the "Fannie Preferred Class")

2. The second class consists of all current holders of junior preferred stock in Freddie Mac as of December 7, 2021, or their successors in interest to the extent shares are sold after December 7, 2021, and before any final judgment or settlement (which I will refer to as the "Freddie Preferred Class"); and

3. The third class involves a different type of stock known as common stock.  This class consists of all current holders of common stock in Freddie Mac as of December 7, 2021, or their successors in interest to the extent shares are sold after December 7, 2021, and before any final judgment or settlement (which I will refer to as the "Freddie Common Class").

None of these classes includes holders of Fannie Mae common stock because no one has brought claims on their behalf.

As a general matter, holders of preferred stock do not have voting rights in a company but have priority over holders of common stock to any dividends a company may declare. Holders of common stock have voting rights.

Unless I distinguish them, I will refer to the Fannie Preferred Class, the Freddie Preferred Class, and the Freddie Common Class collectively as the "Class Plaintiffs."

Similarly, unless I distinguish them, I will refer to the Insurance Company Plaintiffs and the Class Plaintiffs collectively as the "Plaintiffs."

Your verdicts in this case as to the Fannie Preferred Class, the Freddie Preferred Class, and the Freddie Common Class, whatever they may be, will be applicable to each of the members of that specific Class.  The Insurance Company Plaintiffs are not members of any of

the three Classes.  You will be asked to separately consider the claims of each of the Fannie Preferred Class, the Freddie Preferred Class, the Freddie Common Class, and the Insurance Company Plaintiffs.

**Background on Plaintiffs' Shareholder Contracts With Fannie Mae and Freddie Mac**

Plaintiffs in this case are shareholders of Fannie Mae and/or Freddie Mac.  Under the law, shareholders are deemed to have contracts with the companies whose stock they own. Those shareholder contracts differ from other kinds of contracts in several important ways.[1]

First, the types of shareholder contracts at issue in this case are not negotiated between the parties in the traditional sense.  Rather, just by purchasing the company's stock, shareholders agree to the terms of the contracts as those terms exist and as they may change over time.[2]  If a person doesn't want to agree to the terms of the shareholder contract, the person may choose not to purchase the shares in the first place or may sell the shares after purchasing them.

Second, unlike other kinds of contracts, shareholder contracts are not reflected in a single document.  The terms of a shareholder's contract with either Fannie Mae or Freddie Mac are contained not only in a written stock certificate (also known as certificates of designation), but also in the corporate charter and bylaws, as well as certain laws affecting the corporation.[3]

Third, the terms of shareholder contracts may change over time, even without a specific agreement of the parties.[4]  For instance, if certain official corporate documents like the

---

[1] *Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*, No. CV 13-1053 (RCL), 2018 WL 4680197, at *8 (D.D.C. Sept. 28, 2018).

[2] *Fairholme Funds*, 2018 WL 4680197, at *9; *Boilermakers Local 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 939 (Del. Ch. 2013).

[3] *Fairholme Funds*, 2018 WL 4680197, at *8.

[4] *Fairholme Funds*, 2018 WL 4680197, at *9; *Boilermakers*, 73 A.3d at 939.

company's corporate charter or bylaws change, those changes automatically become part of the shareholder contract.[5]  Similarly, changes to the background law affecting the nature of the corporation, its governance, and its relationship with shareholders also become part of the shareholder contract.[6]  This can mean changes to the laws of the relevant states (here, the laws of Delaware and Virginia).  In addition, for Fannie Mae and Freddie Mac, which were created by Congress and are subject to extensive federal regulation, certain changes in federal law that apply to them also become part of their shareholder contract.[7]

One of the federal laws that is part of the shareholder contracts here is the Housing and Economic Recovery Act of 2008, which has been referred to throughout the trial as "HERA" or the "Recovery Act."[8]  The Recovery Act established FHFA as the regulator of Fannie and Freddie and also gave the Director of FHFA the power to place Fannie Mae and Freddie Mac into conservatorships, which the Director did in September 2008.  The Recovery Act also details FHFA's powers and functions as conservator of Fannie Mae and Freddie Mac.  The provisions of the Recovery Act are part of the shareholders' contracts with Fannie Mae and Freddie Mac.

**Plaintiffs' Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing**

All contracts, including the shareholder contracts here, are deemed to include a term known as the "implied covenant of good faith and fair dealing."[9]  In this context, the word "implied" means that this term of the contract is not set out in any written document, but rather is

---

[5] *Fairholme Funds*, 2018 WL 4680197, at *9.

[6] *Fairholme Funds*, 2018 WL 4680197, at *9.

[7] *Fairholme Funds*, 2018 WL 4680197, at *9.

[8] *Fairholme Funds*, 2018 WL 4680197, at *9.

[9] *Fairholme Funds*, 2018 WL 4680197, at *7.

deemed by law to be a term of the contract.[10]  In general, the implied covenant requires the parties to the contract to act consistently with their counterparty's reasonable expectations, and to avoid arbitrary or unreasonable conduct in their performance of the contract.[11]

The implied covenant of good faith and fair dealing does not create duties outside the parties' agreement.[12]  Instead, "good faith" simply means that parties must be faithful to the terms of their agreement and its purpose.[13]  And "fair dealing" does not require parties to act fairly, but only to act consistently with the agreement's purpose and terms, even if you think those terms are unfair.[14]  If the agreement entitles a party to take certain actions, then the party does not violate the implied covenant of good faith and fair dealing by taking those actions, even if those actions may not seem fair to you.

Here, the Plaintiffs allege that the Third Amendment to the Senior Preferred Stock Purchase Agreement between the Treasury Department and each of Fannie Mae and Freddie Mac violated the implied covenant of good faith and fair dealing in their shareholder contracts with Fannie Mae and Freddie Mac by eliminating their ability to receive dividends from Fannie Mae and Freddie Mac in the future.  The Defendants deny this claim.

Fannie and Freddie shareholders do not have a right under the shareholder contracts to receive dividends.  This is because their shareholder contracts give the companies (and now

---

[10]  *Fairholme Funds*, 2018 WL 4680197, at *7; *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010).

[11]  *Fairholme Funds*, 2018 WL 4680197, at *7; *Gerber v. Enters. Prods. Holdings, LLC*, 67 A.3d 400, 419 (Del. 2013), *overruled on other grounds by Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808 (Del. 2013).

[12]  *Fairholme Funds*, 2018 WL 4680197, at *7; *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441 (Del. 2005).

[13]  *Fairholme Funds*, 2018 WL 4680197, at *7; *Gerber*, 67 A.3d at 419.

[14]  *Fairholme Funds*, 2018 WL 4680197, at *7; *Gerber*, 67 A.3d at 419.

FHFA in its capacity as Conservator of the companies) sole discretion to decide whether to pay or not pay dividends.[15]  Nevertheless, that discretion about whether to pay or not pay dividends is subject to the implied covenant of good faith and fair dealing in the shareholder contract.[16]

To prevail on their implied covenant claim, each set of Plaintiffs has the burden to prove two elements:

First, each group of Plaintiffs must prove that the Third Amendment violated shareholders' reasonable expectations at the time of contracting, which, as I'll explain shortly, is just before the Third Amendment was executed.[17]  In this case, the Plaintiffs' claim is that the Third Amendment deprived them of their ability to receive dividends from Fannie Mae and Freddie Mac in the future.  Therefore, to establish this element, each group of Plaintiffs must prove that shareholders had a reasonable expectation at that time that Fannie Mae and Freddie Mac would pay them dividends, and they must also prove that it was not within shareholders' reasonable expectations at that time that Fannie Mae and Freddie Mac would pay no dividends in the foreseeable future.  Thus, if it was within shareholders' reasonable expectations at that time that Fannie Mae and Freddie Mac would not pay them dividends in the foreseeable future, then the Third Amendment could not have violated shareholders' reasonable expectations.

---

[15]  *Fairholme Funds*, 2018 WL 4680197, at *10.

[16]  *Fairholme Funds*, 2018 WL 4680197, at *10.

[17]  *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 631 (D.C. Cir. 2017) ("*Perry II*"); *Fairholme Funds*, 2018 WL 4680197, at *7; *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010))); *In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigs.*, No. 1:13-MC-1288-RCL, 2021 WL 5799379, at *8 (D.D.C. Dec. 7, 2021); *TWA Res. v. Complete Prod. Servs., Inc.*, No. CIV.A. N11C-08100 (MMJ), 2013 WL 1304457, at *10–11 (Del. Super. Ct. Mar. 28, 2013) ("*TWA I*"); *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005).

Second, each group set of Plaintiffs must prove that FHFA, as Conservator of Fannie Mae and Freddie Mac, acted arbitrarily or unreasonably by entering into the Third Amendment on behalf of Fannie Mae and Freddie Mac.[18]

Each group of Plaintiffs must prove both of these elements by a preponderance of the evidence.  Therefore, if you find that any set of Plaintiffs failed to prove either one or the other of these elements, or failed to prove both of them, then your verdict must be for the Defendants as to that set of Plaintiffs.

If you find that any group of Plaintiffs have proved both of these elements by a preponderance of the evidence, then you must then determine whether the breach harmed that group(s) of Plaintiffs financially.  If you find that any group of the Plaintiffs have proved both of these elements and financial harm caused by the breach, then you must determine the amount of damages, if any, incurred by that group(s) of Plaintiffs.  Damages means monetary compensation.

### Whether the Third Amendment Violated Shareholders' Reasonable Expectations

I will now explain in more detail how you should go about evaluating the first element of the Plaintiffs' claim, which is whether the Third Amendment violated shareholders' reasonable expectations at the time of contracting.

The time of contracting means the time of the most recent amendment to the shareholder contract, including when there is a change in the relevant law.[19]  Shareholders reasonably expect that a corporation will act in accordance with the law, and therefore conduct that is consistent

---

[18] *Fairholme Funds*, 2018 WL 4680197, at *13; *TWA I*, 2013 WL 1304457, at *11; *Nemec*, 991 A.2d at 1126.

[19] *Fairholme Funds*, 2018 WL 4680197, at *9.

with changes in the law that are incorporated into the shareholder contract cannot violate shareholders' reasonable expectations.[20]

Here, certain changes to the law affecting Fannie Mae and Freddie Mac amended the shareholder contracts and therefore inform shareholders' reasonable expectations.[21]  As I explained earlier, this includes the Recovery Act in July 2008.[22]  The most recent update to the Plaintiffs' shareholder contracts was just before the Third Amendment was executed.[23]  This is the time period that you must use in determining the reasonable expectations of shareholders.

To determine whether shareholders' reasonable expectations regarding dividends were violated, you must decide what a hypothetical reasonable shareholder expected as of just before the Third Amendment was executed, based on information known or available to that hypothetical reasonable shareholder.

The question is what an imaginary or "hypothetical" reasonable shareholder expected.[24]  It is not what an ordinary or average shareholder expected or what any actual shareholder, including any of the Plaintiffs in this case, actually expected.[25]

---

[20] *Fairholme Funds*, 2018 WL 4680197, at *9.

[21] *Fairholme Funds*, 2018 WL 4680197, at *9.

[22] *Fairholme Funds*, 2018 WL 4680197, at *12.

[23] *See* 12 C.F.R. § 1236, 77 FR 33950 (FHFA regulation entitled "Prudential Management and Operations Standards," proposed rule published June 8, 2012, final rule effective August 7, 2012).

[24] *United States v. Litvak*, 889 F.3d 56, 68 (2d Cir. 2018); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 617 (4th Cir. 1999); *In re Nantucket Island Assocs. Ltd. P'ship Unitholders Litig.*, 810 A.2d 351, 375 (Del. Ch. 2002).

[25] *In re ICN/Viratek Sec. Litig.*, No. 87 CIV.4296, 1996 WL 34448146, at *3 (S.D.N.Y. July 15, 1996); *Chris-Craft Indus., Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 363 (2d Cir. 1973); *United States v. Keyser*, 704 F.3d 631, 642 (9th Cir. 2012).

Here, the expectations of the hypothetical reasonable shareholder would be informed by the terms of the shareholder contract itself, which include:

- The terms of the Fannie and Freddie stock certificates and the offering memoranda or other offering materials;[26]

- The terms of the PSPAs, including the prior amendments to the PSPAs;[27]

- The provisions of the Recovery Act;[28]

- The events surrounding the placement of Fannie and Freddie into conservatorships.[29]

The expectations of the hypothetical reasonable shareholder also would be informed by various publicly available information in the marketplace just before the Third Amendment, including:

- Fannie's and Freddie's financial statements that were publicly filed with the SEC;[30]

- Public statements of FHFA, Treasury, and Fannie and Freddie management;[31]

- Reports of financial analysts and credit-rating agencies;[32]

---

[26] *Perry II*, 864 F.3d at 631; *Fairholme Funds*, 2018 WL 4680197, at *9–11.

[27] *Fairholme Funds*, 2018 WL 4680197, at *12–14.

[28] *Perry II*, 864 F.3d at 631; *Fairholme Funds*, 2018 WL 4680197, at *12.

[29] *Fairholme Funds*, 2018 WL 4680197, at *10–11.

[30] *California Pub. Employees' Ret. Sys. v. Chubb Corp.*, No. CIV. NO. 00-4285(GEB), 2002 WL 33934282, at *24 (D.N.J. June 26, 2002); *Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 252 (3d Cir. 2001).

[31] *Perry II*, 864 F.3d at 631; *Fairholme Funds*, 2018 WL 4680197, at *9, *14; *Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 216 (5th Cir. 2004); *United Paperworkers Int'l Union v. Int'l Paper Co.*, 985 F.2d 1190, 1199 (2d Cir. 1993).

[32] *DeMarco v. Robertson Stephens*, 318 F. Supp. 2d 110, 118 (S.D.N.Y. 2004); *California Public Employees' Retirement System v. Chubb Corp.*, 394 F.3d 126, 169 (3d Cir. 2004); *In re*

- News articles.[33]

In determining the reasonable expectations of hypothetical reasonable shareholders here, you also may consider the nature of Fannie and Freddie as highly regulated entities that were created by Congress, which may inform how a reasonable shareholder expects these particular corporations to behave under the shareholder contract.[34]  You should also keep in mind that reasonable shareholders know the risks of investing generally.[35]

### Whether FHFA Acted Arbitrarily or Unreasonably

I will now explain in more detail how you should go about evaluating the second element of the Plaintiffs' claim for breach of the implied covenant, which is whether FHFA, as Conservator of Fannie Mae and Freddie Mac, acted arbitrarily or unreasonably by entering into the Third Amendment on behalf of Fannie Mae and Freddie Mac.

In general, a decision is unreasonable if it is not guided by reason or is irrational.[36]  A decision is arbitrary if it is made without consideration of, or regard for, the relevant facts and circumstances.[37]

---

*Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148 (S.D.N.Y. 2008); *Fogarazzo v. Lehman Bros.*, 263 F.R.D. 90, 103 (S.D.N.Y. 2009); *Smith v. Circuit City Stores, Inc.*, 286 F. Supp. 2d 707, 721 (E.D.Va. 2003); *Cooke v. Manufactured Homes, Inc.*, 998 F.2d 1256, 1262–63 (4th Cir. 1993).

[33] *Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn*, 53 F. Supp. 3d 882, 899 (E.D. La. 2014); *Smith v. Circuit City Stores, Inc.*, 286 F. Supp. 2d 707, 721 (E.D. Va. 2003); *Cooke*, 998 F.2d at 1262–63.

[34] *Fairholme Funds*, 2018 WL 4680197, at *9.

[35] *Greenhouse v. MCG Cap. Corp.*, 392 F.3d 650, 656 (4th Cir. 2004).

[36] Black's Law Dictionary, *Unreasonable* (11th ed. 2019).

[37] Black's Law Dictionary, *Arbitrary* (11th ed. 2019).

Here, if the conduct by FHFA as Conservator is consistent with the law or the shareholder contract, including the terms of the Recovery Act, then that conduct is not arbitrary or unreasonable behavior that gives rise to an implied covenant claim.[38]

In deciding whether FHFA as Conservator acted arbitrarily or unreasonably, you must treat the following points as true:

First, FHFA acted lawfully within the scope of its conservatorship powers under the Recovery Act when it entered into the Third Amendment.[39]  The Recovery Act authorizes FHFA to take any action that it determines is in the best interests of the public, even if that action is not in the best interests of Fannie Mae and Freddie Mac or their shareholders.[40]  And FHFA could have reasonably determined that the Third Amendment was in the best interests of members of the public who rely on a stable secondary mortgage market.[41]

Second, any suggestion that FHFA should have pursued a different strategy based on an imminent financial uptick for Fannie Mae and Freddie Mac was dependent on speculative projections about their future earnings.[42]  Recent experience at the time of the Third Amendment had given FHFA reasons for caution, including the fact that the companies had been repeatedly unable to pay their fixed dividends to Treasury from 2009 to 2011.[43]  The Recovery Act

---

[38] *Fairholme Funds*, 2018 WL 4680197, at *9.

[39] *Collins v. Yellen*, 141 S. Ct. 1761, 1777–78 (2021).

[40] *Collins*, 141 S. Ct. at 1776; *Fairholme Funds*, 2018 WL 4680197, at *15.

[41] *Collins*, 141 S. Ct. at 1777.

[42] *Collins*, 141 S. Ct. at 1777.

[43] *Collins*, 141 S. Ct. at 1777.

permitted FHFA to reject such a strategy in favor of one that FHFA reasonably viewed as less risky and more certain to ensure market stability.[44]

Third, any suggestion that FHFA could have ordered Fannie and Freddie to pay dividends to Treasury "in kind" (meaning increasing the liquidation preference at a 12% rate) rather than in cash (paid at a 10% rate) rests on a misunderstanding of the PSPAs.[45]  Paying Treasury in kind would not have satisfied the companies' cash dividend obligations, and the risk that those cash dividend obligations would consume Treasury's capital commitment in the future would have remained.[46]  Choosing to forgo an option to pay dividends to Treasury in kind in favor of one that eliminated the risk entirely was within FHFA's authority as conservator.[47]

## Harm and Damages

Now I am going to talk to you about issues of harm and damages.  If and only if you find that any group of Plaintiffs have satisfied their burden to prove both of the elements of their claim as described above, then you must decide the question of financial harm as to that group(s) of Plaintiffs.  As with the other elements of their claim, each group of Plaintiffs has the burden to prove by a preponderance of the evidence that they sustained financial harm caused by the Third Amendment.  If you find that any group of Plaintiffs failed to prove that they sustained financial harm caused by the Third Amendment, then your verdict must be for the Defendants as to that group(s) of Plaintiffs.

---

44  *Collins*, 141 S. Ct. at 1777.

45  *Collins*, 141 S. Ct. at 1777.

46  *Collins*, 141 S. Ct. at 1778.

47  *Collins*, 141 S. Ct. at 1778.

If you find that any group of Plaintiffs have proven financial harm caused by the Third Amendment, then you must determine the amount of damages (monetary compensation) to award, if any, to that group(s) of Plaintiffs.  Each group of Plaintiffs has the burden to prove the amount of their damages with reasonable certainty.[48]  Reasonable certainty in this context does not require exact or mathematically precise proof of damages or that future damages are absolutely certain to occur, but it does require a reasonable basis to make such an estimate.[49]  But you may not award damages that are speculative, based on guesswork, or dependent upon remote possibilities that are not reasonably certain to occur.[50]  You may only award an amount of damages that you find the Plaintiffs proved with reasonable certainty.

If you find that any group of Plaintiffs proved both elements of their implied covenant claim and that they were harmed, but that they have failed to prove the amount of damages with reasonable certainty, then you may award a nominal sum of damages to those Plaintiffs, such as of $1.00.  Nominal damages are not given as an equivalent for the wrong but rather merely in recognition of a technical injury and by way of declaring the rights of the Plaintiffs.

The payment of any damages award that you make in this case will be the sole responsibility of Fannie Mae and/or Freddie Mac.  Neither FHFA nor the Director of FHFA nor the federal government will have any responsibility for the payment of any damages award in this case.

---

[48]  *eCommerce Indus., Inc. v. MWA Intel., Inc.*, No. CV 7471-VCP, 2013 WL 5621678, at *13 (Del. Ch. Sept. 30, 2013); *Saks Fifth Ave., Inc. v. James, Ltd.*, 272 Va. 177, 188 (2006).

[49]  *PharmAthene, Inc. v. SIGA Techs., Inc.*, No. CIV.A. 2627-VCP, 2014 WL 3974167, at *8 (Del. Ch. Aug. 8, 2014); *Xeras v. Heiss*, No. 1:12-cv-456, ECF No. 223 (D.D.C. Nov. 16, 2018).

[50]  *Sunrise Continuing Care, LLC v. Wright*, 671 S.E.2d 132, 135 (Va. 2009); *Fletcher Int'l, Ltd. v. Ion Geophysical Corp.*, No. CV 5109-CS, 2013 WL 6327997, at *17 (Del. Ch. Dec. 4, 2013); *Xeras v. Heiss*, 1:12-cv-456, ECF No. 223 (D.D.C. Nov. 16, 2018).

It is up to you to decide the extent of any damages that have been proved and what the appropriate measure of compensation is for those damages.  In determining the amount of any damages that you decide to award, you should be guided by dispassionate common sense.  You must use sound discretion in fixing the amount of damages, drawing reasonable inferences from the facts in evidence.  You may not award damages based on sympathy, prejudice, speculation, or guesswork.

A party that is harmed by a breach of the implied covenant of good faith and fair dealing is entitled to damages in an amount calculated to compensate them for the harm caused by the breach.  The compensation should place the injured party in the same position they would have been in if the breach had not occurred.

You may not award any punitive damages in this case.  This means that you may not base any monetary award on a desire to punish the Defendants, to prevent their conduct from being repeated in the future, or to warn others not to engage in such conduct.  Any monetary award that you make in this case must be calculated solely to provide fair compensation to the Plaintiffs for any actual injuries that you find they sustained, and on no other basis.

The fact that I have instructed you about the proper measure of damages should not be considered as my suggesting which party is entitled to your verdict in this case, or that any of the Plaintiffs are entitled to any damages award at all.  Instructions about the measure of damages are given for your guidance only if you find that a damages award is in order.

## Instructions Regarding Deliberations

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict.  Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors.  During your deliberations, do not hesitate to re-examine

your own opinions and change your mind if you are convinced that you were wrong.  But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case. Remember at all times, you are the judges of the facts.

It may not be useful for a juror, at the start of deliberations, to announce a determination to stand for a particular verdict.  When a juror announces a firm position at the outset, the juror may hesitate to back away after discussion with other jurors.

Furthermore, many juries find it useful to avoid a vote at the very beginning of deliberations.  Calmly reviewing and discussing the case is often a more useful way to begin. Remember that you are not partisans or advocates, but judges of the facts.

You have been allowed to take notes during this trial.  Any notes that you took during this trial are only aids to your memory.  If your memory differs from your notes, you should rely on your memory and not on the notes.  The notes are not evidence.  If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors.  Notes are not entitled to greater weight than the recollection or impression of each juror about the evidence presented at trial.

When you go into the jury room to deliberate, you may take with you a copy of these instructions, the parties' stipulations of fact, the exhibits that I have admitted into evidence, and your notes.  You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.  Consider selecting a foreperson who will encourage civility and mutual respect, who will invite each juror to speak up regarding his or her views about the evidence, and who will promote full and fair consideration of the evidence.

Your verdict must be unanimous.  After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and

date it.  After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

   If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer.  After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom.  Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.  You may now proceed to the jury room to begin your deliberations.