## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| FAIRHOLME FUNDS, INC., et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> THE FEDERAL HOUSING FINANCE AGENCY, et al., <br><br> *Defendants.* | Case No. 1:13-cv-1053-RCL |
| IN RE FANNIE MAE/FREDDIE MAC SENIOR PREFERRED STOCK PURCHASE AGREEMENT CLASS ACTION LITIGATIONS <br> _____ <br><br> This document relates to: <br> ALL CASES | Case No. 1:13-mc-1288-RCL |

## <u>PLAINTIFFS' OMNIBUS MOTION IN LIMINE</u>

## <u>TABLE OF CONTENTS</u>

**Page**

PROCEDURAL HISTORY ............................................................................................. 2

ARGUMENT .................................................................................................................. 3

I.  LEGAL STANDARD ........................................................................................... 3

II.  MOTIONS IN LIMINE ......................................................................................... 5

    A.  Motion In Limine No. 1:  Preclude Defendants From Presenting Evidence Or Argument Regarding Shareholder Expectations That Are Inconsistent With The Legal Standard Set Forth In This Court's 2018 Opinion ...................... 5

        1.  The Court Should Preclude Defendants From Arguing Or Introducing Evidence To Show That Shareholders' Contractual Expectations Are Defined By Public Information In Existence As Of The Date Of The Third Amendment. ...................................................... 7

        2.  The Court Should Preclude Defendants From Arguing That The Net Worth Sweep's Consistency With Shareholder Expectations Depends Solely Upon Public Information And Excludes Information Known Only To FHFA And The GSEs. .............................. 13

    B.  Motion In Limine No. 2: Preclude Defendants From Introducing Into Evidence Any Securities Analyst Reports. .......................................................... 15

    C.  Motion In Limine No. 3: To Preclude Defendants From Presenting Any Evidence Or Making Any Argument Regarding, Discussing, Or Referring In Any Way To The Dismissal Of Any Claims In This Litigation Or Any Decision In Any Related Case, Including, but not Limited to,the Supreme Court's Decision in *Collins v. Yellen*. ................................................................ 18

    D.  Motion In Limine No. 4: To Preclude Defendants From Presenting Any Evidence To Show, Or Arguing To The Jury, That Any Plaintiffs or Class Members Purchased Their Stock After August 17, 2012, The Date Of The Third Amendment, Or Will Receive A Windfall Should They Be Awarded Damages On Their Claim. .................................................................................. 19

    E.  Motion In Limine No. 5: To Preclude Defendants From Presenting Any Testimony, Live Or By Deposition, Of Bruce Berkowitz Or Anyone Associated With The Fairholme Funds. ................................................................ 21

    F.  Motion In Limine No. 6: To Preclude Defendants From Presenting Any Evidence To Show, Or Arguing To The Jury, That Some Plaintiffs And Members Of The Class Are Wealthy Individuals, Large Institutional

Investors, Pension Funds, Sophisticated Investors, Financial Speculators Or Hedge Funds. ................................................................................................ 24

CONCLUSION.................................................................................................................. 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alimenta (U.S.A.), Inc. v. Cargill, Inc.*,
   861 F. 2d 650 (11th Cir. 1988) ...............................................................................23

*Bank of China, New York Branch v. NBM LLC*,
   359 F.3d 171 (2nd Cir. 2004).................................................................................17

*Barnes v. Dist. of Columbia*,
   924 F. Supp. 2d 74 (D.D.C. 2013) ........................................................................3, 4

*Campbell-Crane & Assocs., Inc. v. Stamenkovic*,
   44 A.3d 924 (D.C. 2012) ........................................................................................23

*Collins v. Yellen*,
   594 U.S. ___, 141 S.Ct. 1761 (2021).............................................................1, 18, 19

*Corbrus, LLC v. 8th Bridge Capital, Inc.*,
   No. 2:19-cv-10182, 2021 WL 4439220 (C.D. Cal. Aug. 9, 2021) ...................23, 25

*Corrigan v. Glover*,
   254 F. Supp. 3d 184 (D.D.C. 2017) ........................................................................4

*Crystal v. Foy*,
   562 F. Supp. 422 (S.D.N.Y. 1983) ........................................................................15

*Dunkin' Donuts Inc. v. Romanias*,
   No. 00-cv-1886, 2002 WL 32955492 (W.D. Pa. May 29, 2002) ...........................20

*Eisenstadt v. Allen*,
   No. 95-16255, 1997 WL 211313 (9th Cir. Apr. 28, 1997)....................................16

*EZ Dock, Inc. v. Schafer Sys., Inc.*,
   No. 98-cv-2364, 2003 WL 1610781 (D. Minn. Mar. 8, 2003) ..............................18

*\*Fairholme Funds, Inc. v. FHFA*,
   No. 13-cv-1053, 2018 WL 4680197 (D.D.C. Sept. 28, 2018)........................ *passim*

*Fed. Deposit Ins. Corp. v. Ching*,
   No. 2:13-cv-1710, 2016 WL 8673035 (E.D. Cal. Oct. 14, 2016)...........................20

*Fidelity Nat'l Fin. Inc. v. Friedman*,
   No. 00-cv-6902, 2002 WL 34369457 (C.D. Cal. May 14, 2002)...........................25

*Gonzales v. Barrett Bus. Serv., Inc.*,
   No. 05-cv-104, 2006 WL 1582380 (E.D. Wash. June 6, 2006)............................................23

*Harvey Prop. Mgt. Co., Inc. v. The Travelers Indem. Co.*,
   No. 2:12-cv-1536, 2016 WL 8199740 (D. Ariz. May 12, 2016)...........................................20

*In re Homestore.com, Inc. Sec. Litig.*,
   No. 01-cv-11115, 2011 WL 291176 (C.D. Cal. Jan. 25, 2011)............................................25

*Iacangelo v. Georgetown Univ.*,
   No. 05-2086, 2011 WL 13247933 (D.D.C. Jan. 13, 2011)....................................................23

*In re JDS Uniphase Corp. Sec. Litig.*,
   No. C 02-1486 CW (EDL) (N.D. Cal. Oct. 9, 2007)............................................................26

*Koch v. Koch Indus., Inc.*,
   2 F. Supp. 2d 1385 (D. Kan. 1998).........................................................................................18

*Lohnes v. Level 3 Commc'ns, Inc.*,
   272 F.3d 49 (1st Cir. 2001)......................................................................................................16

*Low v. Trump Univ., LLC*,
   No. 3:10-cv-940, 2016 WL 6732110 (S.D. Cal. Nov. 15, 2016).........................................23

*Mitchell v. Bannum, Inc.*,
   No. 06-cv-491, 2007 WL 3054863 (D.D.C. Oct. 19, 2007).................................................16

*Nemec v. Shrader*,
   991 A.2d 1120 (Del. 2010).......................................................................................................15

*Perry Capital LLC v. Lew*,
   70 F. Supp. 3d 208 (D.D.C. 2014).............................................................................................2

*Perry Capital LLC v. Mnuchin*,
   864 F.3d 591 (D.C. Cir. 2017)...............................................................................................2, 3

*In re Prempro Prod. Liab. Litig.*,
   No. 4:03cv1507, 2007 WL 3217470 (E.D. Ark. Oct. 26, 2007)..........................................20

*Sanderson v. Winner*,
   507 F.2d 477 (10th Cir. 1974).................................................................................................23

*State Farm Mut. Auto Ins. v. Physicians Injury Care Ctr.*,
   No. 6:06-cv-1797, 2009 WL 6357792 (M.D. Fla. Oct. 29, 2009).......................................18

*Tinius v. Carroll Cty. Sheriff Dept.*,
   No. C03-3001, 2004 WL 3103962 (N.D. Iowa Dec. 22, 2004)...........................................18

*United States v. Garcia*,
413 F.3d 201 (2nd Cir. 2005) ........................................................................16

*United States v. Glenn*,
312 F.3d 58 (2nd Cir. 2002) ..........................................................................16

*United States v. Libby*,
453 F. Supp. 2d 35 (D.D.C. 2006) ...................................................................5

*United States v. Ring*,
706 F. 3d 460 (D.C. Cir. 2013) ........................................................................5

*United States v. Slough*,
22 F. Supp. 3d 29 (D.D.C. 2014) ..............................................................3, 4, 5

*United States v. Smith*,
No. 05-12416, 2006 WL 2645113 (11th Cir. Sept. 15, 2006) ...............................18

*Van Houten-Maynard v. ANR Pipeline Co.*,
No. 89 C 377, 1995 WL 317056 (N.D. Ill. May 23, 1995) ...................................23

*In re Vivendi Universal, S.A. Sec. Litig.*,
765 F. Supp. 2d 512 (S.D.N.Y. 2011) .............................................................23

*Williams v. Johnson*,
747 F. Supp. 2d 10 (D.D.C. 2010) ....................................................................4

*In re WorldCom, Inc. Sec. Litig.*,
No. 02-cv-3288, 2005 WL 408137 (S.D.N.Y. Feb. 22, 2005) ..............................26

*Yeti By Molly, Ltd. v. Deckers Outdoor Corp.*,
259 F.3d 1101 (9th Cir. 2001) .......................................................................16

**Statutes**

12 U.S.C. § 4617(f) .................................................................................2, 19

Administrative Procedure Act ............................................................................2

Housing and Economic Recovery Act ......................................................... *passim*

**Other Authorities**

12 C.F.R. Part 1236 ......................................................................................12

Fed. R. Evid. 103 (d) .......................................................................................4

Fed. R. Evid. 401 ............................................................................................4

Fed. R. Evid. 402 ............................................................................................................4

Fed. R. Evid. 403 ...........................................................................................4, 5, 13, 17

Fed. R. Evid. 801(d) .......................................................................................................15

Federal Rule of Civil Procedure 37(c)(1) .....................................................................16

## <u>INTRODUCTION</u>

In accordance with the Federal Rules of Evidence and the Court's inherent authority to manage trial, Plaintiffs respectfully move *in limine* for the Court to preclude Defendants, and all witnesses tendered by Defendants, from directly or indirectly offering evidence concerning, arguing, presenting, referring, making any statement about, or asking witnesses testifying live any questions about the matters discussed below in the presence of prospective jurors, the jury panel, or the ultimate jury in this case.  Plaintiffs respectfully make the following motions *in limine*:

a) For a ruling that Defendants are precluded from introducing evidence or making arguments to the jury about shareholders' reasonable contractual expectations that are inconsistent with the legal standard set forth in this Court's 2018 decision denying Defendants' motion to dismiss, and in particular ruling that:

    1. Defendants are precluded from arguing to the jury or introducing evidence to show that shareholders' contractual expectations are defined by non-contractual, third-party information (such as news reports and analyst reports) in existence as of the date of the Third Amendment, or otherwise using or arguing that any information or evidence is relevant to determining shareholder contractual expectations "at the time of contracting" other than what this Court has already held to be relevant—namely, the contracts themselves, the regulated nature of the GSEs, HERA, the PSPAs, and FHFA's statements at the time of the conservatorship; and

    2. Defendants are precluded from arguing to the jury or introducing evidence to show that the Net Worth Sweep's consistency with reasonable shareholder expectations depends solely upon public information known to shareholders and excludes information known only to FHFA and the GSEs.

b) To preclude Defendants from introducing into evidence any securities analyst reports.

c) To preclude Defendants from presenting any evidence or making any argument regarding, discussing, or referring in any way to the dismissal of any claims in this litigation or any decision in any related case, including, but not limited to, the Supreme Court's decision in *Collins v. Yellen*.

d) To preclude Defendants from presenting any evidence to show, or arguing to the jury, that some Plaintiffs or members of the Class purchased their stock after August 17, 2012, the date of the Third Amendment, or that any Class member will receive a windfall should they be awarded damages on their claim.

e) To preclude Defendants from presenting any testimony, live or by deposition, of Bruce Berkowitz or anyone associated with the Fairholme Funds.

f) To preclude Defendants from presenting any evidence to show, or arguing to the jury, that some Plaintiffs and members of the Class are wealthy individuals, large institutional investors, pension funds, sophisticated investors, financial speculators, or hedge funds.

## PROCEDURAL HISTORY

In 2013, Class Plaintiffs filed suit challenging the Third Amendment and Net Worth Sweep, as did other plaintiffs acting on a non-class basis.[1]  Class Plaintiffs brought claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unconstitutional taking, and breach of fiduciary duty.  The non-class Plaintiffs brought similar claims and also alleged that the Third Amendment was unlawful, not authorized by the Housing and Economic Recovery Act ("HERA"), and arbitrary and capricious under the Administrative Procedure Act ("APA").  *See Perry Capital LLC v. Lew,* 70 F. Supp. 3d 208, 218 (D.D.C. 2014) ("*Perry I*").

This Court dismissed all of Plaintiffs' claims.  On appeal, the D.C. Circuit affirmed the dismissal of the APA claims and held that HERA authorized FHFA to agree to the Net Worth Sweep and therefore § 4617(f) barred Plaintiffs' APA claims and all other claims for declaratory and injunctive relief.  In holding that FHFA did not exceed its authority, the D.C. Circuit explained that Congress explicitly permitted FHFA to act in its own best governmental interests, including taxpayer interests, and did not mandate that FHFA act in the interests of the GSEs[2] or their shareholders.  *Perry Capital LLC v. Mnuchin,* 864 F.3d 591, 606-609 (D.C. Cir. 2017) (*"Perry II"*).  However, the D.C. Circuit reversed the dismissal of Plaintiffs' contract-based claims, holding that direct contract claims were not barred by HERA and Plaintiffs' state law claims against FHFA

---

[1] "Net Worth Sweep" refers to the requirement under the Third Amendment for the GSEs to pay a quarterly dividend to Treasury equal to the entire net worth of each GSE, minus a small reserve shrinking over time to zero.

[2] The "GSEs" (Government Sponsored Entities) include both Fannie Mae and Freddie Mac. "FHFA" refers to the Federal Housing Finance Agency.  "Treasury" refers to the U.S. Department of Treasury.

as conservator for breach of fiduciary duties, breach of contract, and breach of the implied covenant of good faith and fair dealing fell within the scope of HERA's waiver of sovereign immunity and statutes, giving Fannie Mae and Freddie Mac the power to sue and be sued. *See id.* at 628-34.

On remand, Plaintiffs amended their complaints, and Defendants filed a renewed motion to dismiss. This Court dismissed some of Plaintiffs' claims but held that Plaintiffs stated a claim for breach of the implied covenant of good faith and fair dealing. *Fairholme Funds, Inc. v. FHFA,* No. 13-cv-1053, 2018 WL 4680197, at *7–14 (D.D.C. Sept. 28, 2018) (the "2018 Decision"). The 2018 Decision rejected the argument that HERA precludes any reasonable expectation that the Net Worth Sweep would not occur as a matter of law. *Id.* at *13. Rather, the Court held that the question is whether Defendants exercised their discretion arbitrarily or unreasonably in a way that frustrated reasonable shareholder expectations under the contract. *Id.* As the Court explained, certain "provisions of HERA actually advance Plaintiffs' position that they could not reasonably expect the Net Worth Sweep." *Id.* Based on the facts alleged in the complaints, the Court found that "Plaintiffs plausibly allege that they could not have reasonably expected their rights to dividends and liquidation preferences to be extinguished by the Third Amendment." *Id.* at *14.

## ARGUMENT

### I. LEGAL STANDARD

While the Federal Rules of Evidence do not "expressly provide for motions *in limine*, the Court may allow such motions 'pursuant to the district court's inherent authority to manage the course of trials.'" *Barnes v. Dist. of Columbia,* 924 F. Supp. 2d 74, 78 (D.D.C. 2013) (quoting *Luce v. United States,* 469 U.S. 38, 41 n.4 (1984)). "Motions *in limine* are 'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'" *United States v. Slough,* 22 F. Supp. 3d 29, 32 (D.D.C. 2014) (quoting *Barnes,* 924 F. Supp. 2d at 78)). While

factual questions should not be resolved through motions *in limine*, the "parties should target their argument to demonstrating why certain items or categories or evidence should (or should not) be introduced at trial." *Barnes*, 924 F. Supp. 2d at 78.  Thus, motions *in limine* address why "evidence should or should not, *for evidentiary reasons*, be introduced at trial." *Williams v. Johnson*, 747 F. Supp. 2d 10, 18 (D.D.C. 2010) (emphasis in original).

"In evaluating the admissibility of proffered evidence in a pretrial motion in limine the court must assess whether the evidence is relevant and, if so, whether it is admissible, pursuant to Federal Rules of Evidence 401, 402, and 403." *Corrigan v. Glover*, 254 F. Supp. 3d 184, 191 (D.D.C. 2017).  "'The burden is on the introducing party to establish relevancy' . . . as well as admissibility." *Id*. (quoting *Dowling v. United States*, 493 U.S. 342, 351 n.3 (1990)).  While the Court has broad discretion to make judgments about whether certain evidence is sufficiently relevant or overtly prejudicial, "the Court should remember that making counsel object to inadmissible evidence at trial may 'emphasize the evidence before the jury.'" *Barnes*, 924 F. Supp. 2d at 79.  "To the extent practicable, the Court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means." Fed. R. Evid. 103 (d).

This motion addresses matters that are irrelevant and inadmissible and so unfairly prejudicial that, even if an objection were to be timely made and sustained, irreparable harm would be done to Plaintiffs.  Under the Federal Rules of Evidence, "[e]vidence which is not relevant is not admissible." Fed. R. Evid. 402.  Thus, if evidence is irrelevant—i.e., it does not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence," or is not "of consequence to determine the action"—then a party may not present it at trial.  Fed. R. Evid. 401.  *See also Slough*, 22 F. Supp. 3d at 33-34.

In addition, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by the danger . . . of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "The Court balances the probative value of the evidence against the danger of unfair prejudice resulting from its admission. *Slough*, 22 F. Supp. 3d at 35. "Unfair prejudice" as used in Rule 403 "means an undue tendency to suggest decision on any improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 Advisory Comm. Note. *See also United States v. Ring*, 706 F. 3d 460, 472 (D.C. Cir. 2013); *United States v. Libby,* 453 F. Supp. 2d 35, 44 n.8 (D.D.C. 2006).

## II.    MOTIONS IN LIMINE

### A.    Motion In Limine No. 1:  Preclude Defendants From Presenting Evidence Or Argument Regarding Shareholder Expectations That Are Inconsistent With The Legal Standard Set Forth In This Court's 2018 Opinion.

As reflected in the briefing already submitted to the Court relating to Plaintiffs' *Daubert* motion to exclude the testimony of Professor Kothari, Plaintiffs and Defendants have a fundamental disagreement over the legal standard that governs this case.  That disagreement requires an *in limine* ruling from the Court regarding what evidence and argument will be permitted at trial, and what will be precluded.

Based on this Court's 2018 Decision denying the motion to dismiss Plaintiffs' implied covenant claims, Plaintiffs understand the legal standard in this case to be as follows:  the implied covenant of good faith and fair dealing was breached if Defendants, in agreeing to the Net Worth Sweep, "acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the [Plaintiffs] reasonably expected." *Fairholme Funds*, 2018 WL 4680197, at *7 (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010)).  As shown by the Court's reasoning in its 2018 Decision, answering that question requires comparing (a) shareholders' reasonable contractual

expectations formed "at the time of contracting" with (b) the actions taken by the defendant at the time of the alleged breach.  Regarding the former, the Court ruled that "the time of contracting . . . must be the time of the most recent change in contract—whether by amendment or change in law."  *Id.* at *9.  Thus, reasonable contractual expectations in this case are formed by the actual shareholder contracts themselves, as well as the provisions of HERA regarding the conservatorship, the provisions of the PSPAs with Treasury, and the statements made by FHFA at the time the conservatorship was imposed.  *Id.*

Those contractual expectations then must be compared with the actions taken by Defendants in agreeing to the Net Worth Sweep on August 17, 2012.  As this Court stated with respect to the stock certificates, "while Plaintiffs could reasonably expect the GSEs to exercise discretion as it relates to dividends, they could not expect the GSEs to extinguish the possibility of dividends arbitrarily or unreasonably."  *Id*. at *10.  Likewise, as the Court stated with respect to the discretion granted by HERA to act in the public interest, the "question is whether Defendants exercised their discretion arbitrarily or unreasonably in a way that frustrated Plaintiffs' expectations under the contract."  *Id*. at *13.  As recognized by this Court's decision, this inquiry must necessarily take into account all information available to the GSEs and FHFA at the time they took that action, irrespective of whether that information was public.  Indeed, this Court denied the motion to dismiss by pointing to Plaintiffs' allegations about what ***Defendants knew*** when they agreed to the Net Worth Sweep.  *See id.* at *11 (denying motion to dismiss in part because of allegation that "at the time the Third Amendment was enacted, the GSEs, FHFA, and Treasury understood that the GSEs were about to achieve sustained profitability" and "the GSEs and FHFA knew this profitability would permit the GSEs to pay the 10% dividend without the necessity of drawing from the Treasury"); *see also id.* at *12-13.

Thus, this Court's 2018 Decision makes clear that the legal standard in this case requires a comparison between (a) shareholders' reasonable contractual expectations formed "at the time of contracting," taking into account the contracts themselves as well as HERA, the PSPAs, and the statements by FHFA at the time of the conservatorship, with (b) the actions taken by Defendants in agreeing to the Net Worth Sweep on August 17, 2012, taking into account all the facts and circumstances known to Defendants at the time they took that action.

Defendants want to turn this legal standard upside down.  They want to tell the jury that the shareholders' reasonable contractual expectations can be defined by any publicly available information that existed as of August 16, 2012 (the day before the Third Amendment); further, they then want to tell the jury that if the Net Worth Sweep was consistent with that public information, then Plaintiffs must lose the case without the jury ever having to consider whether Defendants' conduct was arbitrary or unreasonable in light of all the non-public facts and circumstances known to Defendants at the time they agreed to the Net Worth Sweep.[3]  This approach has no support in the case law and contradicts this Court's 2018 Decision.  It must therefore be precluded.  This calls for two distinct but related *in limine* rulings set forth below.

**1.    The Court Should Preclude Defendants From Arguing Or Introducing Evidence To Show That Shareholders' Contractual Expectations Are Defined By Public Information In Existence As Of The Date Of The Third Amendment.**

The Court should reiterate its ruling that the reasonable contractual expectations of shareholders are formed by the contracts themselves, as well as by related amendments to the contracts or relevant corporate law, and not by generalized invocations of public information untethered to the contracts.  As this Court explained in its 2018 Decision:

---

[3] *See* ECF No. 168, Reply to Opposition to Plaintiffs' Motion in Limine to Exclude the Opinions of Professor S.P. Kothari at 5-9; *see also* Defendants' Proposed Jury Instructions at 18-19.

> [T]he implied covenant asks 'what the parties would have agreed themselves had they considered the issue in their original bargaining positions at the time of contracting.' . . . [T]his analysis hinges on the parties' 'reasonable expectations at the time of contracting.'

*Fairholme Funds,* 2018 WL 4680197, at *7 (citations omitted).  Here, the question is what the parties would have agreed among themselves, "at the time of contracting," regarding the ability of Defendants to give away 100% of all future GSE dividends to Treasury.

This Court specifically addressed the question of how to define "the time of contracting," explaining that:

> [A]n investor's contract with the corporation includes not only documents such as the stock certificate, certificate of designations, the corporate charter, and bylaws, but also the corporate law under which the corporation is formed and regulated.
>
> \*   \*   \*
>
> For an investor contract, the *time of contracting* for the purposes of the implied covenant inquiry must be the time of the most recent change in contract – whether by amendment or change in law. . . . [A]n investor reasonably expects that the corporation will act in accordance with any such amendment or change in law.

*Id*. at *8-9.

Thus, in evaluating shareholders' reasonable expectations, the Court held that it would consider "the express provisions of Plaintiffs' stock certificates, as well as the nature of the GSEs as highly regulated entities." *Id*.  The Court also held that it would "look to HERA and the FHFA's appointment as conservator in evaluating expectations of the parties," and "[a]s instructed by the D.C. Circuit," it would consider:

> (1) Section 4617(b)(2)(J)(ii) (authorizing the FHFA to act "in the best interests of the [Companies] or the Agency"), (2) Provision 5.1 of the Stock Agreements, J.A. 2451, 2465 (permitting the Companies to declare dividends and make other distributions only with Treasury's consent), and (3) pertinent statements by the FHFA, e.g., J.A. 217 ¶ 8, referencing Statement of FHFA Director James B. Lockhart at News Conference Announcing Conservatorship of Fannie Mae and Freddie Mac (Sept. 7, 2008) (The "FHFA has placed Fannie Mae and Freddie Mac into conservatorship. [Conservatorship] is a statutory process designed to stabilize a troubled institution with the objective of returning the entities to normal business

operations. FHFA will act as the conservator to operate the [GSEs] until they are stabilized.").

*Id.* at 9.[4]

By contrast, reasonable contractual expectations "at the time of contracting" cannot be altered by news reports or third-party statements made long after the conservatorship and PSPAs were set in place. The implied covenant claim is not the same as a Takings claim that looks at "reasonable, investment-backed expectations" as of the time of the Taking. Indeed, in addressing a related issue, this Court already recognized the difference between (a) the reasonable ***contractual*** expectations of shareholders for their implied covenant claim and (b) the reasonable, investment-backed expectations of property owners bringing a Takings claim against the government. *Id.* at *12 (recognizing the difference between what is expected of the government versus what is expected of a "co-contracting party"). For similar reasons, the expectations relevant to an implied covenant claim must be rooted in the contract itself, and cannot be defined by resort to free-floating public information from third parties that is wholly untethered to the contract. As a matter of law, the reasonable contractual expectations of shareholders for the implied covenant claim are based on the contract itself "at the time of contracting." *Id.* at *7. The only basis for expanding what informs those expectations in this case is that the contracts are shareholder contracts, and thus expectations must be updated to reflect "the most recent change in contract—whether by amendment or change in law." *Id.* at *9. That is the only legal basis for going beyond the contract itself to define shareholder expectations.

It is clear from their submissions to date that Defendants have no intention of respecting this law. Their proffered expert, Professor Kothari, seeks to provide an opinion that determines

---

[4] Plaintiffs understand the above reference to the PSPAs to mean that all of the provisions of the PSPAs are relevant to forming expectations at the time of contracting, not just Section 5.1.

what reasonable shareholder expectations were by looking at, for example, press reports and reports from bond analysts from 2011 and 2012.  ECF No. 157 at 5-11.  Plaintiffs have moved to exclude these opinions as contrary to the legal standard.  *Id*.

Further, in their pretrial statement, Defendants assert that information such as "the Enterprises' public statements" prior to the Third Amendment, the statements by "market analysis" that existed "by August 2012," and other such extraneous information is relevant to forming shareholders' contractual expectations.  ECF 173 at 5.  Such evidentiary presentations and arguments are inconsistent with the governing legal standard, will confuse the jury, and must be excluded.

Similarly, in their final jury instructions, Defendants ask the Court to tell the jury the following:

> First, each group of Plaintiffs must prove that the Third Amendment violated **shareholders' reasonable expectations at the time of contracting**, **which, as I'll explain shortly, is just before the Third Amendment was executed**.

ECF 173-6 at numbered page 16 (emphasis added).

This proposed instruction is contrary to law.  The "time of contracting" was not "just before the Third Amendment."  As this Court's 2018 Decision held, the "time of contracting" included both the shareholder contracts themselves (which predate September 2008) as well as "the most recent change in contract—whether by amendment or change in law," which consisted of HERA, the PSPAs, and the statements FHFA made when the conservatorship was imposed in September 2008.  *Fairholme*, 2018 WL 4680197, at *7-9. This Court did not hold that "the time of contracting" extended all the way up to August 2012, or that the contract somehow included all public information that existed as of that time.  Yet Defendants go on in their jury instructions to assert:

-10-

The expectations of the hypothetical reasonable shareholder also would be informed by various publicly available information in the marketplace just before the Third Amendment, including:

- Fannie's and Freddie's financial statements that were publicly filed with the SEC;

- Public statements of FHFA, Treasury, and Fannie and Freddie management;

- Reports of financial analysts and credit-rating agencies;

- News articles.

*Id*. at 173-6 at 19-20.

None of the foregoing information constitutes a "change in contract—whether by amendment or change in law." *Id.* at *9. None of it was in existence "at the time of contracting." And thus, Defendants can introduce none of it as relevant to determining or defining the reasonable contractual expectations of shareholders.

The full implications of Defendants' position shows how untenable it is. Under their view, Defendants would necessarily win the case if FHFA had published a press release in July 2012 saying: "We intend to give Treasury 100% of all future dividends from the GSEs." According to Defendants, that public statement would inform the reasonable contractual expectations of shareholders, and would require judgment for Defendants. But it is absurd to suppose that a defendant can avoid liability for breaching the implied covenant of good faith by pre-announcing its intention to commit that breach. The Court should instead again hold that reasonable contractual expectations are based upon the contract and the limited additional changes to the contracts identified by the Court in its 2018 Decision (i.e., HERA, the PSPAs, and the statements by FHFA at the time of the conservatorship).

In an effort to argue that "the time of contracting" is the date of the Third Amendment in August 2012, Defendants argue in their jury instructions, for the first time, that a 2012 FHFA

regulation somehow changed the shareholder contracts.  This is frivolous.  The FHFA regulation in question is one governing "Prudential Management and Operations Standards," found at 12 C.F.R. Part 1236.  It has nothing to do with the shareholder contracts, and cannot be read to amend them.  It has nothing to do with any aspect of the shareholder structure for the GSEs.  Defendants never cited it when briefing their motions to dismiss or the Kothari *Daubert* motion because it obviously is not relevant.  Further, even if this regulation were somehow accepted as relevant to the contracts, that would not mean that all publicly available information that existed as of the time of the Third Amendment is also relevant to defining the shareholders' reasonable contractual expectations.  This regulation would not justify Defendants' intention to use 2011 and 2012 "news reports" and "analyst reports" to define shareholder expectations.

The "most recent change in contract—whether by amendment or change in law" was (at the latest) the December 24, 2009 Second Amendment to the PSPAs.  Nothing after that time can be considered to have occurred "at the time of contracting."

Defendants should therefore be prohibited from presenting evidence and argument that shareholders expected "something like" the Net Worth Sweep based on publicly available information that post-dated the time of contracting and that is distinct from the sources of shareholder expectations that the Court previously identified in its opinion.  Any possible probative value of such evidence is outweighed by the risk of prejudice and confusion that it will cause the members of the jury.  Defendants will otherwise attempt to present a litany of statements that post-date December 24, 2009, that are taken from various public sources, including securities filings, analyst reports, news or research articles, etc., that speculate that the GSEs may not have been able to pay dividends in the future or may not be permitted to return to profitability.  Any attempt to utilize these statements to argue that the reasonable contractual expectations of shareholders was

consistent with giving away 100% of all future dividends to Treasury would be inconsistent with the legal standard.  It will only serve to confuse the issues and mislead the jurors regarding the question they need to decide.  They should be excluded as irrelevant under FRE 401 and 402, or as more prejudicial than probative under FRE 403.

>     2.    **The Court Should Preclude Defendants From Arguing That The Net Worth Sweep's Consistency With Shareholder Expectations Depends Solely Upon Public Information And Excludes Information Known Only To FHFA And The GSEs.**

Defendants also plan to argue to the jury that Plaintiffs' claims must fail unless they can show that the Net Worth Sweep was inconsistent with the *publicly* available information in August 2012, while ignoring all *nonpublic* information known to Defendants.   Again, Defendants misconstrue the legal standard.

This Court has already ruled that the implied covenant inquiry asks whether Defendants "acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the [Plaintiffs] reasonably expected." *Fairholme*, 2018 WL 4680197, at *7 (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010)).  Further, this Court recognized in its 2018 Decision that the determination of whether Defendants acted arbitrarily or unreasonably must consider all information known to Defendants at the time they agreed to the Net Worth Sweep, irrespective of whether that information was public.  That is why this Court's 2018 Decision holding that Plaintiffs had stated a claim for breach of the implied covenant relied, in part, upon the fact that "Plaintiffs allege that— at the time of the Third Amendment— *the FHFA and the GSEs knew*:

- the GSEs would "be generating large revenues over the coming years, thereby enabling them to pay the 10% annual dividend well into the future" (Class SAC ¶ 53; Arrowood FAC ¶ 64; Fairholme FAC ¶ 69);

- the GSEs' profits would be "in excess of current 10% dividend paid to Treasury" (Class SAC ¶ 53; Arrowood FAC ¶ 67; Fairholme FAC ¶ 71);

- 2012 through 2020 would be the "golden years of GSE earnings" (Class SAC ¶ 54; Arrowood FAC ¶ 53; Fairholme FAC ¶ 56); and

- by 2020, cumulative dividends paid by the GSEs to Treasury would exceed Treasury's total investment (Class SAC ¶ 54).

*Fairholme*, 2018 WL 4680197, at *13 (emphasis added).

Evidence of the facts and circumstances available to Defendants is obviously relevant to determining whether Defendants acted arbitrarily or unreasonably—irrespective of whether those facts or circumstances were publicly known at the time.  Any contrary rule would allow a contracting party to arbitrarily destroy the expectations of its counterparty so long as the evidence of the arbitrariness was known only to the counterparty.  No case supports such a perverse result.

Defendants try to justify their effort to impose a test that ignores nonpublic information by arguing that there are two, independent tests Plaintiffs must satisfy under the implied covenant, and nonpublic information is relevant only to the second one.  According to Defendants, to show a breach of the implied covenant, Plaintiffs must show both: (i) that the Net Worth Sweep was inconsistent with shareholders' reasonable expectations, which they say must be determined based on all the public information that existed as of the time of the alleged breach, but completely ignoring all nonpublic information; and also (ii) that the Net Worth Sweep was arbitrary and unreasonable, taking into account what Defendants knew internally. *See*, *e.g.*, ECF 162, Def. Opp. at 3; *see also id.* at 8.  Under this view, Defendants may avoid liability for arbitrary conduct if the showing of the arbitrary conduct depends in whole or in part on nonpublic information that could not have affected shareholders' reasonable expectations.

As Plaintiffs have argued previously, Defendants are wrong.[5]  First, Defendants incorrectly separate the liability inquiry into two elements:  whether an action was consistent with reasonable

---

[5]  *See* Plaintiffs' Reply To Opposition To Plaintiffs' Motion In Limine To Exclude The Opinions Of Professor S.P. Kothari, filed under seal July 1, 2022, ECF No. 168 at 5-6.

expectations, and whether an action was arbitrary.  The case law, however, shows that the inquiry

into arbitrariness and expectations is unitary.  *See Nemec,* 991 A.2d at 1126 (whether implied

covenant breached depends on whether defendants "acted arbitrarily or unreasonably, ***thereby***

frustrating the fruits of the bargain that the [Plaintiffs] reasonably expected.") (emphasis added)

(cited and quoted in *Fairholme*, 2018 WL 4680197, at \*7).  This stands to reason, since one

obviously reasonable contractual expectation of a contracting party is that its counterparty will not

act arbitrarily or unreasonably to destroy the benefit of its bargain, regardless of what information

the counterparty has at its disposal.  Further, no case holds that an implied covenant claim can be

defeated by showing that the defendant's conduct was consistent with publicly available

information, even if the conduct was arbitrary and unreasonable when considered in light of

nonpublic information known only to the defendant.  As shown above, that would lead to perverse

results.

Accordingly, this Court should preclude Defendants and their experts from arguing that

non-public information known by or available to Defendants at the time of the alleged breach is

not relevant in determining if Defendants breached the implied covenant.

> **B.**  **Motion In Limine No. 2: Preclude Defendants From Introducing Into Evidence Any Securities Analyst Reports.**

Defendants intend to introduce statements from securities analyst reports discussing

aspects of the GSEs' financial condition, such as the GSEs' ability to pay dividends.[6]  The Court

should preclude them.  The reports themselves, which are out of court statements offered for their

truth, fall squarely within the definition of hearsay in Fed. R. Evid. 801(d).  *See Crystal v. Foy*,

562 F. Supp. 422, 431 n.5 (S.D.N.Y. 1983) (noting that an analyst report was a "hearsay statement

---

[6] *See, e.g.* DX080, DX0127, DX0201, DX0204, DX0279, DX0324, DX0325, and DX0542 on
Defendants' Trial Exhibit List (ECF No. 174-1).

made by a third party without first-hand knowledge of [the company's] books"); *Eisenstadt v. Allen*, No. 95-16255, 1997 WL 211313, at *2 (9th Cir. Apr. 28, 1997) (analyst reports are inadmissible hearsay and lack requisite circumstantial guarantees of trustworthiness to qualify for any hearsay exception).

Further, analyst reports constitute improper lay opinion.  Defendants have not designated any securities analysts as experts,[7] nor can they now proffer them to offer lay opinions.  Rule 701(c) "explicitly bars the admission of lay opinions or inferences" that are "based on scientific, technical or other specialized knowledge." *United States v. Glenn*, 312 F.3d 58, 66-67 (2nd Cir. 2002) (quoting Fed. R. Evid. 701(c)).  The requirement was adopted "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." *Id*. at 67 (quoting Fed. R. 701(c) Advisory Comm. Note).  Rule 701(c) thereby prevents "a party from conflating expert and lay opinion testimony thereby conferring an aura of expertise on a witness without satisfying the reliability standard for expert testimony set forth in Rule 702 and the pre-trial disclosure requirements." *United States v. Garcia*, 413 F.3d 201, 215 (2nd Cir. 2005).

---

[7] Federal Rule of Civil Procedure 37(c)(1) mandates the exclusion of expert evidence for failure to make Rule 26(a) disclosures "unless such failure was substantially justified or is harmless."  Any attempt by Defendants to now designate analysts as experts in the several weeks before trial would not be justifiable or harmless. *See Yeti By Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001) (excluding expert testimony because party failed to comply with expert disclosure deadlines); *Lohnes v. Level 3 Commc'ns., Inc.*, 272 F.3d 49, 59 (1st Cir. 2001) (excluding expert evidence because party failed to make Rule 26(a) disclosures and deeming expert affidavit submitted shortly before final pretrial conference as "nothing short of a sneak attack"); *Mitchell v. Bannum, Inc.*, No. 06-cv-491, 2007 WL 3054863, at *1 (D.D.C. Oct. 19, 2007) (precluding party from belated disclosure of expert, reasoning that "late disclosure of expert testimony can necessitate exclusion because the late disclosure deprives [party opponent] of the opportunity to depose the expert, to challenge the expert's credentials and testimony, and to solicit the [party's] own experts").

Any statements or opinions provided by securities analysts in their reports, beyond a mere recitation of facts about the GSEs previously disclosed in SEC filings, clearly derives from the analysts' purported specialized knowledge that renders their reports valuable to the investors who purchase and read them.  Thus, those reports are inadmissible.  *See Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171, 182 (2nd Cir. 2004) (finding error where district court admitted testimony that "reflected specialized knowledge he has because of his extensive experience in international banking"); *Wechsler v. Hunt Health Sys.s, Ltd.*, 198 F. Supp. 2d 508, 529 (S.D.N.Y. 2002) (precluding lay witness testimony by accountant).

Further, the analyst reports are more prejudicial than probative and risk undue prejudice and jury confusion under Fed. R. Evid**.** 403.  There will likely be members of the jury unfamiliar with the nature and purpose of analyst reports, and the introduction of reports by securities analysts cherry-picked by Defendants is likely to confuse the issues before the jury and mislead the jurors, whose task is to determine whether the Net Worth Sweep violated the contractual implied covenant of good faith and fair dealing.  Statements made by unrelated third party observers in analysts' reports have no bearing on that contractual inquiry.

Finally, to the extent that Defendants would seek to introduce analyst reports that post-date December 24, 2009 to establish what shareholders purportedly expected as of the Net Worth Sweep, such reports are separately subject to exclusion for the reasons stated in Motion in Limine No. 1.  *See* Section A(1), above.

Plaintiffs are not seeking through this motion *in limine* to preclude Defendants' expert witnesses from referring to analyst reports where Defendants can establish the foundation required for experts to rely on otherwise inadmissible evidence, and in connection with presenting expert testimony that is otherwise admissible.  Instead, this motion seeks only to preclude Defendants

from offering such reports into evidence for their truth or for purposes of examining or cross-examining other witnesses.

**C.      Motion In Limine No. 3: To Preclude Defendants From Presenting Any Evidence Or Making Any Argument Regarding, Discussing, Or Referring In Any Way To The Dismissal Of Any Claims In This Litigation Or Any Decision In Any Related Case, Including, but not Limited to, the Supreme Court's Decision in *Collins v. Yellen.***

Plaintiffs seek to preclude Defendants from making reference to, or introducing testimony or other evidence concerning, the dismissal of any claims in this action or decisions in this or any related case.  This includes any reference to the decisions in the related *Collins* litigation, including the Supreme Court's decision in *Collins v. Yellen*, 594 U.S. ___, 141 S.Ct. 1761 (2021).

The fact of dismissal of any claim or theory of liability is not relevant to the merits of the remaining claim for breach of the implied covenant of good faith and fair dealing.  Moreover, courts have long recognized the potential for prejudice in permitting reference at trial to the fact that claims have been dismissed or withdrawn.  *See, e.g.*, *State Farm Mut. Auto Ins. v. Physicians Injury Care Ctr.*, No. 6:06-cv-1797, 2009 WL 6357792, at *1 (M.D. Fla. Oct. 29, 2009) (granting motion *in limine* to exclude references to withdrawn causes of action and legal theories); *United States v. Smith*, No. 05-12416, 2006 WL 2645113, at *2 (11th Cir. Sept. 15, 2006) (denying motion *in limine* to admit evidence that certain charges had been "not actioned, dismissed or declined for prosecution"); *Koch v. Koch Indus., Inc.*, 2 F. Supp. 2d 1385, 1409 (D. Kan. 1998) (granting motion *in limine* to preclude references or evidence concerning dismissal or withdrawal of claims; finding that other lawsuits "do not show any relationships or states of mind that would be relevant here"); *EZ Dock, Inc. v. Schafer Sys., Inc.*, No. 98-cv-2364, 2003 WL 1610781, at *15 (D. Minn. Mar. 8, 2003) (prohibiting reference to dismissed claim); *Tinius v. Carroll Cty. Sheriff Dept.*, No. C03-3001, 2004 WL 3103962, at *2 (N.D. Iowa Dec. 22, 2004) (precluding defendants from discussing or making any reference to the fact that parties have been dismissed from case).

-18-

In particular, reference to the U.S. Supreme Court's opinion in *Collins* would be highly prejudicial to Plaintiffs.  In *Collins v. Yellen*, the Supreme Court held that 12 U.S.C. § 4617(f) barred plaintiffs' claims that FHFA exceeded its statutory powers.  As established in Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment, *Collins* does not alter the governing law in this case, nor does it have any impact on Plaintiffs' pending claim.  Even if the Court disagrees with that and holds that *Collins* does impact Plaintiffs' claims in some way, the Court will say so in resolving Defendants' motion for summary judgment and setting the legal standard for trial.  Either way, *Collins* is not for Defendants to parade in front of the jury.  Moreover, any reference to that decision may confuse the jury and improperly (and inaccurately) suggest that the Supreme Court rejected (or supports a rejection) of Plaintiffs' claim in this case, or has endorsed the legal arguments or facts proffered by Defendants. Accordingly, the Court should preclude Defendants from presenting any testimony, documents or other evidence regarding, or making any argument, discussing or referring to, any decision in this case or any related case, including, but not limited to, *Collins*.

### D. Motion In Limine No. 4: To Preclude Defendants From Presenting Any Evidence To Show, Or Arguing To The Jury, That Any Plaintiffs or Class Members Purchased Their Stock After August 17, 2012, The Date Of The Third Amendment, Or Will Receive A Windfall Should They Be Awarded Damages On Their Claim.

As this Court stated in its 2018 Decision: "Rights associated with dividends and liquidation preferences inherent in the securities," and plaintiffs' "bargained-for rights related to dividends and liquidation preferences traveled with the shares to subsequent purchasers." *Fairholme*, 2018 WL 4680197, at *8.  As a matter of law, all investors who currently own stock in the GSEs have standing to assert the claim for breach of the implied covenant, and the right to recover damages for that breach.  All current holders of junior preferred stock of Fannie Mae and common and preferred stock of Freddie Mac are members of the Class.  Accordingly, it is

irrelevant whether any Plaintiff or member of the Class purchased their shares after August 17, 2012, the date of the Third Amendment.  *See Fed. Deposit Ins. Corp. v. Ching*, No. 2:13-cv-1710, 2016 WL 8673035, at *2-3 (E.D. Cal. Oct. 14, 2016) (granting FDIC's motion "to exclude evidence that some defendants purchased additional stock in CVB after the May 5, 2008 dividend" because such additional stock purchase "has no bearing on whether the 2008 dividend met the applicable standard of care at the time defendants approved it").

For the same reason, it is irrelevant whether any Class member will receive more in damages than they paid for their shares.  Defendants should not be permitted to argue that such Class members are receiving a "windfall."   *See Harvey Prop. Mgt. Co., Inc. v. The Travelers Indem. Co.*, No. 2:12-cv-1536, 2016 WL 8199740, at *2 (D. Ariz. May 12, 2016) (granting motion *in limine* to "preclude Defendant from arguing or presenting evidence that a verdict for Plaintiffs may cause higher insurance premiums or that such a verdict would constitute a 'windfall' to Plaintiffs"); *In re Prempro Prod. Liab. Litig.*, No. 4:03cv1507, 2007 WL 3217470, at *1 (E.D. Ark. Oct. 26, 2007) (granting motion *in limine* to "exclude referring to punitives as 'bonus monies' or 'windfalls'"); *Dunkin' Donuts Inc. v. Romanias*, No. 00-cv-1886, 2002 WL 32955492, at *1 (W.D. Pa. May 29, 2002) (granting motion *in limine* to preclude evidence or testimony regarding any "windfall" because "a potential 'windfall' to Plaintiffs . . . is irrelevant to the issues set forth in the Amended Complaint and the Counterclaim").  Plaintiffs are seeking damages premised on the present value of the future stream of dividends of which Defendants have deprived them, and thus neither Defendants' liability nor damages turns on the price at which any particular Plaintiff or Class member purchased their GSE stock.

Additionally, allowing Defendants to present such evidence or argument would be highly prejudicial to Plaintiffs, as it may suggest to the jury that certain Class members have less of a

right (or no right) to proceed on their implied covenant claim simply because they purchased their shares after the date of the Third Amendment.  As a matter of law, that fact has no bearing on their claim or standing to recover.  *Fairholme*, 2018 WL 4680197, at *8 ("[w]hen a share of stock is sold, the property rights associated with the shares, including any claim for breach of those rights and the ability to benefit for any recovery or other remedy, travel with the shares.") (citations omitted).  It would therefore be unduly prejudicial to allow Defendants to suggest that Plaintiffs or Class members should not recover anything, or recover less, as a result of when they purchased their shares, or that Plaintiffs or Class members would receive a windfall as a result of a verdict in their favor.

There is also a risk of jury confusion as to how or whether to consider the date of purchase in evaluating Plaintiffs' claims and awarding damages.  For example, the jury may improperly infer that investors' purchases of shares after the Third Amendment reflect those investors' belief that the Third Amendment was proper and not a breach of the implied covenant, or that late purchases preclude any recovery.  Allowing such evidence would result in an inefficient allocation of time and resources, would waste time, and would distract from the true issues in dispute.  Accordingly, Defendants should be precluded from presenting any testimony, documents or other evidence to show, or arguing to the jury, that any Plaintiff or Class member purchased their shares in the GSEs after August 17, 2012, the date of the Third Amendment, or that any Plaintiff or Class member will receive a windfall should they be awarded damages.

**E.      Motion In Limine No. 5: To Preclude Defendants From Presenting Any Testimony, Live Or By Deposition, Of Bruce Berkowitz Or Anyone Associated With The Fairholme Funds.**

In their Pre-Trial Statement, Defendants have stated that they "intend to present at trial" deposition testimony of Bruce Berkowitz ("Mr. Berkowitz") (ECF No. 173-2).  Mr. Berkowitz is the founder of the various Fairholme Funds that were previously plaintiffs in the *Fairholme* action

(No. 13-1053). However, after the Class was certified, the Fairholme Funds made the decision not to opt out of the Class action (No. 13-1288), and thereafter this Court granted the Fairholme Funds' motion to sever and stay their claims pending resolution of the Class action. *See* Order (ECF No. 164 in No. 1:13-cv-1053) (May 31, 2022). Fairholme is now an absent class member whose testimony is not relevant to the claims at issue in this litigation, and Defendants should not be permitted to present such testimony at trial to the jury.

There is no legitimate reason for offering Mr. Berkowitz's testimony. Instead, Defendants appear interested in fomenting jury antipathy against the Class based on Mr. Berkowitz's wealth, his success as an investor, and Fairholme's status as a private investment fund.[8] Defendants' attempt to sway the jury's perception of the composition, wealth, or sophistication of Class members through use of Mr. Berkowitz's testimony is inappropriate, unduly prejudicial, and irrelevant to Plaintiffs' claims. Mr. Berkowitz's wealth is entirely irrelevant to whether Defendants violated the implied covenant of good faith and fair dealing or what dividends shareholders would have reasonably expected to receive but for the Net Worth Sweep.

Defendants also may be attempting to sway the jury with the fact that Mr. Berkowitz purchased his stock after the Net Worth Sweep. That fact is irrelevant as discussed in MIL No. 4. This Court has held that under Delaware and Virginia law, Plaintiffs' claim for breach of the implied covenant "inhere in the security" regardless of when or by whom that security was purchased. *Fairholme Funds*, 2018 WL 4680197, at *8. Thus, the fact that Fairholme is a wealthy investor that purchased its GSE stock after the Third Amendment as an investment in this lawsuit

---

[8] For example, Defendants have designated portions of Mr. Berkowitz's testimony regarding the amount of money that Fairholme has under management and the nature of Fairholme's clients, which includes high net worth individuals (16:22 – 18:11; 22:8 – 18; 23:6 – 23:8); and testimony stating that Fairholme has earned a significant return on its investments in the GSEs (213:2 – 214:2). *See* ECF No. 173-2, at 7-8).

is not relevant to any issue the jury must decide.  The implied covenant claim is legally theirs and they are entitled to recover from it.  *Id.*[9]

Further, as an absent Class member, Mr. Berkowitz's testimony is both irrelevant and cumulative.  Any subjective testimony regarding Fairholme's expectations of future dividends is irrelevant where determinations regarding shareholders' reasonable expectations must be made on an objective, class-wide basis.  *See, e.g., Low v. Trump Univ., LLC*, No. 3:10-cv-940, 2016 WL 6732110, at *2-3 (S.D. Cal. Nov. 15, 2016) (precluding absent class member testimony regarding "an objective inquiry that can be made on a class-wide basis" because "[a] jury can assess, according to a reasonable person standard, whether the misrepresentations were in fact merely non-actionable puffery without evaluating absent class member testimony.").  Anecdotal evidence of absent class members' expectations is thus irrelevant.  *See id.* at *3; *see also In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 586 n.63 (S.D.N.Y. 2011) (noting that the court granted motion *in limine* to exclude absent class member testimony on individualized issues during

---

[9] *See, e.g., Iacangelo v. Georgetown Univ.*, No. 05-2086, 2011 WL 13247933, at *2 (D.D.C. Jan. 13, 2011) (disallowing "any mention or offer evidence relating to the. . .wealth of 'another party.'"); *Campbell-Crane & Assocs., Inc. v. Stamenkovic*, 44 A.3d 924, 943 (D.C. 2012) (court granting defense's initial request to exclude testimony about defendant's "alleged wealth"); *Gonzales v. Barrett Bus. Serv., Inc.,* No. 05-cv-104, 2006 WL 1582380 at *22 (E.D. Wash. June 6, 2006) (excluding evidence of defendant's financial condition as irrelevant); *Sanderson v. Winner*, 507 F.2d 477, 479 (10th Cir. 1974) (evidence of financial situation of class plaintiff irrelevant, because courts "generally eschew the question whether litigants are rich or poor. Instead, we address ourselves to the merits of the litigation"); *Van Houten-Maynard v. ANR Pipeline Co.,* No. 89 C 377, 1995 WL 317056 at *4 (N.D. Ill. May 23, 1995) ("testimony or reference to the relative wealth, or economic standing of the parties, has no relevance to any of the issues in this case"); *Alimenta (U.S.A.), Inc. v. Cargill, Inc.*, 861 F. 2d 650, 652 (11th Cir. 1988) (affirming grant of motion *in limine* to bar any reference to defendant company's "size in any respect" because such evidence was not relevant to any issue in breach of contract case); *Corbrus, LLC v. 8th Bridge Capital, Inc.*, No. 2:19-cv-10182, 2021 WL 4439220, at *8 (C.D. Cal. Aug. 9, 2021) (excluding from liability phase any evidence of party's net worth as irrelevant to liability and prejudicial).

class trial).[10]  And even if it were not, there would be no basis for singling Mr. Berkowitz out.  If anything, his expectations would be the least relevant given that he did not own stock in the GSEs at the time of the Net Worth Sweep.  The sole reason for singling Mr. Berkowitz out is the illegitimate one of highlighting his wealth and date of purchase.[11]

Defendants should therefore be excluded from presenting and offering the testimony of Mr. Berkowitz into evidence.

F.     **Motion In Limine No. 6: To Preclude Defendants From Presenting Any Evidence To Show, Or Arguing To The Jury, That Some Plaintiffs And Members Of The Class Are Wealthy Individuals, Large Institutional Investors, Pension Funds, Sophisticated Investors, Financial Speculators Or Hedge Funds.**

At trial, Defendants may attempt to present testimony, evidence, or argument referring to Plaintiffs and other Class members being wealthy, sophisticated "hedge fund" speculators.  Similar to the reasoning set forth in Motion in Limine No. 5, these references and characterizations are irrelevant and highly prejudicial and should not be permitted at trial.

The wealth or sophistication (or lack thereof) of Class members has no bearing on any element of Plaintiffs' claims.  No facts about Plaintiffs' size, financial wherewithal, investment strategy, or sophistication have any relevance to Plaintiffs' breach of the implied covenant claim, which, as this Court has held, "inhere in the security" regardless of when or by whom that security was purchased.  *Fairholme Funds*, 2018 WL 4680197, at *8.  Nor are such facts relevant to any classwide issue being tried.  *See*, *e.g.*, *Fidelity Nat'l Fin. Inc. v. Friedman*, No. 00-cv-6902, 2002 WL 34369457, at *1 (C.D. Cal. May 14, 2002) (evidence of corporation's size excluded as

---

[10] This reasoning applies with equal force to Defendants intended use of the deposition testimony of David Shumaway on behalf of Arrowwood Indemnity, which is also no longer a party in this action and is an absent Class member.

[11] These designations can be found at 90:12 – 91:22; 92:7 – 93:1; 93:5 – 95:9; 115:9 – 115:20; 116:2 – 117:6.  *See* ECF No. 173-2, at 7-8.

irrelevant to all issues other than punitive damages); *Alimenta (U.S.A.),* 61 F. 2d at 652 (affirming grant of motion *in limine* to bar any reference to defendant company's "size in any respect" because such evidence was not relevant to any issue in breach of contract case); *Corbrus, LLC*, 2021 WL 4439220, at *8 (excluding from liability phase any evidence of party's net worth as irrelevant to liability and prejudicial).

Plaintiffs and the Class consist of investors large and small, institutions and individuals, wealthy and not wealthy, sophisticated (however defined) and unsophisticated. Characterizations of any Plaintiff or Class member as "large" or "sophisticated" or being a "hedge fund" or "institution" would be solely to prejudice the jury against Plaintiffs and the Class as a whole. The law on the implied covenant protects all who have been damaged by its breach, irrespective of individual or personal circumstances, including the size, sophistication, financial condition, investment strategy, litigation history, or other particular circumstance of any particular investor. *See In re Homestore.com, Inc. Sec. Litig.*, No. 01-cv-11115, 2011 WL 291176, at *1 (C.D. Cal. Jan. 25, 2011) (in a securities class action, granting plaintiff's motion *in limine* to exclude reference to or evidence of: (1) plaintiff's financial condition, because such evidence "is generally not relevant and can be unduly prejudicial, as it can distract the jury from the real issues in the case," and (2) "Plaintiff's involvement in other litigation prior to this action [because it] is also irrelevant and carries with it a high risk of prejudice").

Any references to any Plaintiffs' or Class members' purported sophistication, to the "institutional" investors in the Class, or to the fact that the Class includes large pension funds or hedge funds is therefore based on speculation. Such speculation would mislead the jury as to the composition of the Class, and prejudice the claims of others in the Class. Indeed, such references could suggest to the jury that Plaintiffs possessed specialized knowledge about GSEs with the

further impermissible inference that Plaintiffs and Class members should somehow have known what Defendants were going to do, or were deficient in failing to discover such information. Likewise, any reference to Plaintiffs or any Class members being hedge funds, speculators, or gamblers in the market, or to their financial wherewithal, could mislead or prejudice the jury into believing that Plaintiffs assumed the risk of a breach or could easily withstand any losses on their investments and do not deserve to recover on their claims.  *See In re WorldCom, Inc. Sec. Litig.*, No. 02-cv-3288, 2005 WL 408137, at *4-5 (S.D.N.Y. Feb. 22, 2005) (excluding evidence regarding named plaintiffs' sophistication and individual investment decisions because it "has marginal relevance to the issues to be tried in the plenary trial, and because that limited relevance is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury"; further, "there is a significant danger that the defendants seek to use the evidence about the named plaintiffs to divert the jury's attention from the serious issues before them, including an evaluation of what the defendants themselves did and did not do"); *see also In re JDS Uniphase Corp. Sec. Litig.*, No. C 02-1486 CW (EDL), ECF No. 1692 at 2 (N.D. Cal. Oct. 9, 2007) (granting plaintiff's motion *in limine* to exclude evidence and argument relating to named plaintiffs).   Accordingly, Defendants should be precluded from introducing any testimony, evidence, or argument regarding such individualized facts about Plaintiffs or any member(s) of the Class.

## **CONCLUSION**

For the reasons stated herein, Plaintiffs respectfully request that each of their Motions in Limine be granted.

Dated: August 26, 2022

Respectfully submitted,

/s/ Charles J. Cooper
Charles J. Cooper (Bar No. 24870)
David H. Thompson (Bar No. 450503)
Vincent J. Colatriano (Bar No. 429562)
Peter A. Patterson (Bar No. 998668)
Brian W. Barnes (*Pro Hac Vice*)
**COOPER & KIRK, PLLC**
1523 New Hampshire Avenue, N.W.
Washington, DC 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

*Counsel for Berkley Plaintiffs, et al.*

/s/ Eric. L. Zagar
Eric L. Zagar (*Pro Hac Vice*)
**KESSLER TOPAZ
  MELTZER & CHECK, LLP**
280 King of Prussia Rd.
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
ezagar@ktmc.com

Hamish P.M. Hume (Bar No. 449914)
Samuel C. Kaplan (Bar No. 463350)
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave. NW
Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
hhume@bsfllp.com
skaplan@bsfllp.com

Michael J. Barry (*Pro Hac Vice*)
**GRANT & EISENHOFER, P.A.**
123 Justison Street
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100
mbarry@gelaw.com

Adam Wierzbowski (*Pro Hac Vice*)
**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
adam@blbglaw.com

*Co-Lead Counsel for the Class*