# EXHIBIT 3

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FAIRHOLME FUNDS, INC., *et al.*,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>FEDERAL HOUSING FINANCE AGENCY, *et al.*,<br><br>　　　　Defendants. | Civil No. 13-1053 (RCL) |
| In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations<br><br>_____<br><br>This document relates to:<br>ALL CASES | Miscellaneous No. 13-1288 (RCL) |

**<u>DEFENDANTS' PROPOSED JURY INSTRUCTIONS</u>**

**INSTRUCTION NO. 30**
**Class Action – Defined[1]**

A class action is a lawsuit that has been brought by one or more plaintiffs on behalf of a larger group of people who have the same legal claims. All of these people together are called a "class." Class Action Plaintiffs Joseph Cacciapalle, Michelle M. Miller, Timothy J. Cassell and Barry P. Borodkin bring this action as the class representatives on behalf of three classes of Fannie Mae and Freddie Mac shareholders. The W.R. Berkley Plaintiffs are not class members but bring the same claim as the Class Action Plaintiffs.

You may assume that the evidence at this trial applies to all class members and all of the W.R. Berkley Plaintiffs unless I tell you otherwise. All members of the class and all of the W.R. Berkley Plaintiffs will be bound by the result of this trial.

In this case, the classes consist of the following:

All current holders of junior preferred stock in Fannie Mae (the "Fannie Preferred Class");

All current holders of junior preferred stock in Freddie Mac (the "Freddie Preferred Class"); and

All current holders of common stock in Freddie Mac (the "Freddie Common Class").

There is no class consisting of holders of Fannie Mae common stock because no one has brought a claim on their behalf.

You will be asked to separately consider the claims of each of the Fannie Preferred Class, the Freddie Preferred Class, the Freddie Common Class.

**GIVEN**          _____

**REFUSED**        _____

**GIVEN AS MODIFIED**   _____

---

[1] Adapted from Judicial Council of California Civil Jury Instructions No. 115 (2022 edition).

## INSTRUCTION NO. 31
### Plaintiffs' Shareholder Contracts With Fannie Mae and Freddie Mac

In general, under the law, shareholders, including Plaintiffs, are deemed to have contracts with the companies whose stock they own. Those shareholder contracts differ from other kinds of contracts in several ways.[2]

First, the types of shareholder contracts at issue in this case are not negotiated between the parties in the traditional sense. Rather, by purchasing the company's stock, shareholders agree to the terms of the contracts as those terms exist and as they may change over time.[3] If a person does not want to agree to the terms of the shareholder contract, the person may choose not to purchase the shares in the first place or may sell the shares after purchasing them.

Second, unlike other kinds of contracts, shareholder contracts are not contained in a single document. The terms of a shareholder's contract with a corporation are contained not only in a written stock certificate (also known as a certificate of designation), but also in the corporate charter and bylaws, as well as certain laws affecting the corporation.[4]

Third, the terms of shareholder contracts may change over time without a specific agreement by the parties to those contracts.[5] For instance, if certain official corporate documents such as the company's corporate charter or bylaws change, those changes automatically become part of the shareholder contracts.[6] Similarly, changes to the laws that affect the nature of the corporation, its governance, and its relationship with shareholders also automatically become part of the shareholder contracts.[7] As I explained earlier, in this case, the provisions of the Housing and Economic Recovery Act relating to FHFA's role as Conservator of Fannie Mae and Freddie Mac are part of Plaintiffs' shareholder contracts.[8]

**GIVEN** _____

**REFUSED** _____

**GIVEN AS MODIFIED** _____

---

[2] *Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*, No. CV 13-1053 (RCL), 2018 WL 4680197, at *8 (D.D.C. Sept. 28, 2018).

[3] *Fairholme Funds*, 2018 WL 4680197, at *9; *Boilermakers Local 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 939 (Del. Ch. 2013).

[4] *Fairholme Funds*, 2018 WL 4680197, at *8.

[5] *Fairholme Funds*, 2018 WL 4680197, at *9; *Boilermakers*, 73 A.3d at 939.

[6] *Fairholme Funds*, 2018 WL 4680197, at *9.

[7] *Fairholme Funds*, 2018 WL 4680197, at *9.

[8] *Fairholme Funds*, 2018 WL 4680197, at *9.

## INSTRUCTION NO. 32
### Implied Covenant of Good Faith and Fair Dealing

All contracts, including Plaintiffs' shareholder contracts, are deemed to include a term known as the "implied covenant of good faith and fair dealing."[9] In this context, the word "implied" means that this term of the contract is not set out in any written document, but rather is deemed by law to be a term of the contract.[10] The implied covenant requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct that violates the reasonable expectations of the other party to the contract at the time of contracting.[11]

The implied covenant of good faith and fair dealing does not create duties outside the contracting parties' agreement.[12] Instead, "good faith" simply means that parties must be faithful to the terms of their agreement and its purpose.[13] And "fair dealing" does not require contracting parties to act fairly, but rather to act consistently with the agreement's purpose and terms, even if you think those terms are unfair.[14]

In this case, Plaintiffs allege that FHFA, by entering into the Third Amendment, breached the implied covenant of good faith and fair dealing by eliminating any future possibility of dividends to private shareholders of Fannie Mae and Freddie Mac, thereby causing a decline in the market price of Plaintiffs' shares of the Companies. Defendants deny this claim.

To establish a breach of the implied covenant, each set of Plaintiffs has the burden to prove that FHFA, in its role as the Companies' Conservator, acted arbitrarily or unreasonably by entering into the Third Amendment, thereby violating the reasonable expectations of Fannie Mae and Freddie Mac shareholders at the time of contracting.

Each group of Plaintiffs must prove the alleged breach by a preponderance of the evidence. If you find that any group of Plaintiffs failed to prove the alleged breach by a preponderance of the evidence, then your verdict must be for Defendants as to that set of Plaintiffs.

If you find that any group of Plaintiffs has proved the alleged breach by a preponderance of the evidence, you must then determine whether the breach harmed that group(s) of Plaintiffs

---

[9] *Fairholme Funds*, 2018 WL 4680197, at *7.

[10] *Fairholme Funds*, 2018 WL 4680197, at *7; *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010).

[11] *Fairholme Funds*, 2018 WL 4680197, at *7; *Gerber v. Enters. Prods. Holdings, LLC*, 67 A.3d 400, 419 (Del. 2013), *overruled on other grounds by Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808 (Del. 2013).

[12] *Fairholme Funds*, 2018 WL 4680197, at *7; *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441 (Del. 2005).

[13] *Fairholme Funds*, 2018 WL 4680197, at *7; *Gerber*, 67 A.3d at 419.

[14] *Fairholme Funds*, 2018 WL 4680197, at *7; *Gerber*, 67 A.3d at 419.

financially.  If you find that any group of Plaintiffs has proved both a breach and financial harm caused by that breach, then you must determine the amount of damages, if any, incurred by that group of Plaintiffs.  Damages means monetary compensation.


**GIVEN**                                     _____

**REFUSED**                                _____

**GIVEN AS MODIFIED**      _____

# INSTRUCTION NO. 33
## Breach of the Implied Covenant of Good Faith and Fair Dealing

As I instructed you previously, the implied covenant of good faith and fair dealing requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct that violates the reasonable expectations of the other party to the contract at the time of contracting.

A decision or action is unreasonable if it is not guided by reason or is irrational.[15]

A decision or action is arbitrary if it is made without consideration of, or regard for, the relevant facts and circumstances.[16]

Therefore, in evaluating whether FHFA's decision to enter into the Third Amendment was arbitrary or unreasonable, you should consider whether FHFA's decision was rational and guided by reason, and whether FHFA considered the relevant facts and circumstances known to FHFA at that time in making its decision.

In addition, in evaluating whether FHFA as Conservator acted arbitrarily or unreasonably, you must accept as true that FHFA acted within the scope of its conservatorship powers under the Recovery Act when it entered into the Third Amendment.[17]  The Recovery Act authorizes FHFA to take any action that it determines is in the best interests of the public, even if that action is not in the best interests of Fannie Mae and Freddie Mac or their shareholders.[18] And FHFA could have reasonably determined that the Third Amendment was in the best interests of members of the public who rely on a stable secondary mortgage market.[19]  For this reason, FHFA acted within the scope of its conservatorship powers under the Recovery Act when it entered into the Third Amendment.

You must decide whether FHFA as Conservator acted unreasonably or arbitrarily in reference to the parties' reasonable expectations at the time of contracting.  A party acts reasonably under a contract if it takes actions that are consistent with the reasonable expectations of the other party.  As I instructed you previously, the time of contracting for these purposes is December 24, 2009, the date that the Second Amendment to the PSPAs took effect.

Therefore, you must decide whether it was within the reasonable expectations of shareholders, at the time of the Second Amendment, that FHFA might take some action in the public interest that would result in financial detriment to the private shareholders of Fannie Mae and Freddie Mac.

---

[15] Black's Law Dictionary, *Unreasonable* (11th ed. 2019).

[16] Black's Law Dictionary, *Arbitrary* (11th ed. 2019).

[17] *Collins v. Yellen*, 141 S. Ct. 1761, 1777–78 (2021).

[18] *Collins*, 141 S. Ct. at 1776; *Fairholme Funds*, 2018 WL 4680197, at *15.

[19] *Collins*, 141 S. Ct. at 1777.

In determining the reasonable expectations of shareholders, the question is not what any actual shareholder, including any of the Plaintiffs in this case, actually expected.[20] Instead, the question is what an imaginary or "hypothetical" reasonable shareholder expected, based on information known or available to that hypothetical reasonable shareholder.[21]

Here, the expectations of the hypothetical reasonable shareholder would be informed by the terms of the shareholder contract itself as it existed at the time of the Second Amendment, which include:

- The terms of the Fannie and Freddie stock certificates and the offering memoranda or other offering materials;[22]

- The terms of the PSPAs, including the First and Second Amendments;[23]

- The provisions of the Recovery Act;[24] and

- The events surrounding the placement of Fannie and Freddie into conservatorships.[25]

The expectations of the hypothetical reasonable shareholder also would be informed by information available at the time of the Second Amendment, including:

- Fannie's and Freddie's financial statements that were publicly filed with the SEC;[26] and

- Public statements of FHFA, Treasury, and Fannie and Freddie management.[27]

---

[20] *In re ICN/Viratek Sec. Litig.*, 1996 WL 34448146, at *3 (S.D.N.Y. July 15, 1996); *Chris-Craft Indus., Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 363 (2d Cir. 1973); *United States v. Keyser*, 704 F.3d 631, 642 (9th Cir. 2012).

[21] *United States v. Litvak*, 889 F.3d 56, 68 (2d Cir. 2018); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 617 (4th Cir. 1999); *In re Nantucket Island Assocs. Ltd. P'ship Unitholders Litig.*, 810 A.2d 351, 375 (Del. Ch. 2002).

[22] *Perry II*, 864 F.3d at 631; *Fairholme Funds*, 2018 WL 4680197, at *9–11.

[23] *Fairholme Funds*, 2018 WL 4680197, at *12–14.

[24] *Perry II*, 864 F.3d at 631; *Fairholme Funds*, 2018 WL 4680197, at *12.

[25] *Fairholme Funds*, 2018 WL 4680197, at *10–11.

[26] *California Pub. Employees' Ret. Sys. v. Chubb Corp.*, 2002 WL 33934282, at *24 (D.N.J. June 26, 2002); *Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 252 (3d Cir. 2001).

[27] *Perry II*, 864 F.3d at 631; *Fairholme Funds*, 2018 WL 4680197, at *9, *14; *Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 216 (5th Cir. 2004); *United Paperworkers Int'l Union v. Int'l Paper Co.*, 985 F.2d 1190, 1199 (2d Cir. 1993).

In determining the expectations of the hypothetical reasonable shareholder here, you also may consider the nature of Fannie Mae and Freddie Mac as highly regulated entities that were created by Congress, which may inform how the hypothetical reasonable shareholder expects these particular companies to behave under the shareholder contracts.[28] You should also keep in mind that the hypothetical reasonable shareholder knows the risks of investing generally.[29]

**GIVEN** _____

**REFUSED** _____

**GIVEN AS MODIFIED** _____

---

[28] *Fairholme Funds*, 2018 WL 4680197, at *9.

[29] *Greenhouse v. MCG Cap. Corp.*, 392 F.3d 650, 656 (4th Cir. 2004).

**INSTRUCTION NO. 34**
**Harm and Damages**

Now I am going to talk to you about issues of harm and damages. If and only if you find that any group of Plaintiffs has satisfied its burden to prove a breach of the implied covenant as described above, then you must decide the question of financial harm as to that group of Plaintiffs. Once again, each group of Plaintiffs has the burden to prove by a preponderance of the evidence that they sustained financial harm caused by the Third Amendment. If you find that any group of Plaintiffs failed to prove that they sustained financial harm caused by the Third Amendment, then your verdict must be for Defendants as to that group of Plaintiffs.

If you find that any group of Plaintiffs has proved financial harm caused by the Third Amendment, then you must determine the amount of damages (monetary compensation) to award, if any, to that group. Each group of Plaintiffs has the burden to prove the amount of their damages with reasonable certainty.[30] Reasonable certainty in this context does not require exact or mathematically precise proof of damages or that future damages are absolutely certain to occur, but it does require a reasonable basis to make such an estimate.[31] But you may not award damages that are speculative, based on guesswork, or dependent upon remote possibilities that are not reasonably certain to occur.[32] You may only award an amount of damages that you find any group of Plaintiffs proved with reasonable certainty.

If you find that any group of Plaintiffs proved both a breach of the implied covenant and financial harm from that breach, but that they have failed to prove the amount of damages with reasonable certainty, then you may award a nominal sum of damages to that group of Plaintiffs, such as $1.00. Nominal damages are not given as an equivalent for the wrong but rather merely in recognition of a technical injury and by way of declaring the rights of Plaintiffs.

Any damages award that you make in this case will be the responsibility of Fannie Mae and/or Freddie Mac. Neither FHFA nor the Director of FHFA nor the federal government will be responsible for any damages award in this case.

It is up to you to decide the extent of any damages that have been proved and what the appropriate measure of compensation is for those damages. In determining the amount of any damages that you decide to award, you should be guided by dispassionate common sense. You must use sound discretion in fixing the amount of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, prejudice, speculation, or guesswork.

---

[30] *eCommerce Indus., Inc. v. MWA Intel., Inc.*, 2013 WL 5621678, at *13 (Del. Ch. Sept. 30, 2013); *Saks Fifth Ave., Inc. v. James, Ltd.*, 272 Va. 177, 188 (2006).

[31] *PharmAthene, Inc. v. SIGA Techs., Inc.*, 2014 WL 3974167, at *8 (Del. Ch. Aug. 8, 2014); *Xeras v. Heiss*, No. 1:12-cv-456, ECF No. 223 (D.D.C. Nov. 16, 2018).

[32] *Sunrise Continuing Care, LLC v. Wright*, 671 S.E.2d 132, 135 (Va. 2009); *Fletcher Int'l, Ltd. v. Ion Geophysical Corp.*, 2013 WL 6327997, at *17 (Del. Ch. Dec. 4, 2013); *Xeras v. Heiss*, 1:12-cv-456, ECF No. 223 (D.D.C. Nov. 16, 2018).

2

      A party that is harmed by a breach of the implied covenant of good faith and fair dealing is entitled to damages in an amount calculated to compensate them for the harm caused by the breach.  The compensation should place the injured party in the same position they would have been in if the breach had not occurred.

      You may not award any punitive damages in this case.  This means that you may not base any monetary award on a desire to punish Defendants, to prevent their conduct from being repeated in the future, or to warn others not to engage in such conduct.  Any monetary award that you make in this case must be calculated solely to provide fair compensation to Plaintiffs for any actual injuries that you find they sustained, and on no other basis.

      The fact that I have instructed you about the proper measure of damages should not be considered as my suggesting which party is entitled to your verdict in this case, or that any of Plaintiffs are entitled to any damages award at all.  Instructions about the measure of damages are given for your guidance only if you find that a damages award is in order.

**GIVEN**          _____

**REFUSED**          _____

**GIVEN AS MODIFIED**      _____