**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FAIRHOLME FUNDS, INC., *et al.*, | |
| Plaintiffs, | |
| v. | Civil No. 13-1053 (RCL) |
| FEDERAL HOUSING FINANCE AGENCY, *et al.*, | |
| Defendants. | |
| In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations | |
| _____ | Miscellaneous No. 13-1288 (RCL) |
| This document relates to: ALL CASES | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE
TO SERVE SUPPLEMENTAL EXPERT REPORTS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... i

INTRODUCTION ........................................................................................................1

RELEVANT BACKGROUND .....................................................................................3

ARGUMENT ...............................................................................................................7

I.  Plaintiffs' Supplemental Expert Reports Are Not Proper Under Rule 26(e) Because They Do Not Seek To Correct Anything "Incomplete or Incorrect" in Plaintiffs' Prior Expert Disclosures ............................................................................................7

    A.  Rule 26(e) Only Permits Litigants To Correct "Incomplete or Incorrect" Expert Reports Based on Information Not Previously Available...................................... 7

    B.  Plaintiffs Do Not Identify Anything "Incomplete or Incorrect" in Dr. Mason's or Dr. Dharan's Prior Reports ................................................................................. 9

II.  Plaintiffs Cannot Reopen Expert Discovery Under Rule 16 Because They Cannot Establish Good Cause, Let Alone Manifest Injustice ...........................................13

    A.  Rule 16 Requires a Showing of Manifest Injustice, or at Least Good Cause, To Reopen Expert Discovery at this Stage .......................................................... 13

    B.  Plaintiffs Cannot Establish Good Cause, Let Alone Manifest Injustice, To Reopen Expert Discovery ....................................................................................... 15

        1.  Plaintiffs Have No Excuse for Their Failure To Develop and Disclose Dr. Mason's Supplemental Opinions During Expert Discovery ............. 15

        2.  Plaintiffs Have No Excuse for Their Failure To Develop and Disclose Dr. Dharan's Supplemental Opinions During Expert Discovery............. 19

        3.  Courts Routinely Reject Such Requests Under Rule 16 ........................... 21

CONCLUSION ...........................................................................................................23

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allied Erecting & Dismantling Co., Inc. v. United States Steel Corp.*,
2021 WL 3847782 (N.D. Ohio Aug. 27, 2021) ....................................................................22

*Allied Erecting & Dismantling Co., Inc. v. United States Steel Corp.*,
2021 WL 5850693 (N.D. Ohio Dec. 9, 2021) ......................................................................13

*Bakalar v. Vavra*,
851 F. Supp. 2d 489 (S.D.N.Y. 2011).................................................................................15

*\*Barnes v. District of Columbia*,
289 F.R.D. 1 (D.D.C. 2012)................................................................................11, 13, 15

*Beene v. Ford Motor Co.*,
2011 WL 765982 (D. Colo. Feb. 25, 2011) ........................................................................23

*Bio Med Techs. Corp. v. Sorin CRM USA, Inc.*,
2015 WL 7294791 (D. Colo. Nov. 19, 2015) .......................................................................9

*Campbell v. United States*,
470 F. App'x 153 (4th Cir. 2012) .........................................................................................9

*Capitol Justice LLC v. Wachovia Bank, N.A.*,
706 F. Supp. 2d 34 (D.D.C. 2009)................................................................................10, 11

*Carballido v. Target Corp.*,
2021 WL 1376997 (D. Colo. Apr. 12, 2021)...................................................................9, 19

*\*Cleveland v. Piper Aircraft Corp.*,
985 F.2d 1438 (10th Cir. 1993) ...................................................................15, 22, 23

*Colibri Heart Valve LLC v. Medtronic CoreValve LLC*,
2021 WL 7285995 (C.D. Cal. Nov. 16, 2021).....................................................................18

*Dag Enterprises, Inc. v. Exxon Mobil Corp.*,
226 F.R.D. 95 (D.D.C. 2005).............................................................................................14

*Dormu v. District of Columbia*,
795 F. Supp. 2d 7 (D.D.C. 2011) .......................................................................................11

*Eshelman v. Puma Biotechnology, Inc.*,
2022 WL 1597819 (E.D.N.C. May 19, 2022) .....................................................................14

*Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency,
   No. 1:13-cv-1053-RCL, 2022 WL 11110548 (D.D.C. Oct. 19, 2022)........................... passim

Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency,
   No. 1:13-cv-1053-RCL, 2022 WL 13937460 (D.D.C. Oct. 21, 2022).......................................5

Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency,
   No. 1:13-cv-1053-RCL, 2022 WL 4745970 (D.D.C. Oct. 3, 2022)..........................................4

Hajjar-Nejad v. George Washington Univ.,
   2012 WL 13168550 (D.D.C. Nov. 13, 2012) ...........................................................................9

Hammonds v. Greyhound Bus Co.,
   2017 WL 10545393 (C.D. Cal. Apr. 19, 2017) .....................................................................23

Hoffman v. Tonnemacher,
   2006 WL 3457201 (E.D. Cal. Nov. 30, 2006) ................................................................11, 12

Jackson v. Teamsters Loc. Union 922,
   312 F.R.D. 235 (D.D.C. 2015).................................................................................................8

Johnson v. H.K. Webster, Inc.,
   775 F.2d 1 (1st Cir. 1985).....................................................................................................12

Martin's Herend Imports, Inc. v. Diamond & Gem Trading,
   195 F.3d 765 (5th Cir. 1999) ................................................................................................15

Minebea Co. v. Papst,
   231 F.R.D. 3 (D.D.C. 2005).....................................................................................................8

Mondis Tech. Ltd v. LG Elecs., Inc.,
   2020 WL 1933979 (D.N.J. Apr. 22, 2020) ...........................................................................12

Mondis Tech. v. LG Elecs.,
   2020 WL 6547551 (D.N.J. Nov. 6, 2020) .............................................................................12

Mondis Technology Ltd. v. LG Electronics, Inc.,
   2021 WL 4077563 (D.N.J. Sept. 8, 2021) ............................................................................12

MyGallons LLC v. U.S. Bancorp,
   No. 7:09-CV-057-BR, 2013 WL 12291484 (E.D.N.C. Aug. 9, 2013) ............................22, 23

Nnadili v. Chevron U.S.A., Inc.,
   No. 02–1620 (ESH) (AK), 2005 WL 6271043 (D.D.C. Aug. 11, 2005)..............................11

Palmer v. Asarco Inc.,
   No. 03-CV-0498, 2007 WL 2254343 (N.D. Okla. Aug. 3, 2007) ............................................8

*PharMerica Mountain LLC v. Arizona Rehab Campus LLC,*
2022 WL 1689370 (D. Ariz. May 26, 2022) ...................................................9, 19

*U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.,*
576 F. Supp. 2d 128 (D.D.C. 2008) ............................................................15

*Richardson v. Korson,*
905 F. Supp. 2d 193 (D.D.C. 2012) ..........................................................8, 11

*Rodgers v. Beechcraft Corp.,*
759 F. App'x 646 (10th Cir. 2018) .................................................................8

*\*SD3, LLC v. Rea,*
71 F. Supp. 3d 189 (D.D.C. 2014) ............................................................7, 8

*St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.,*
2007 WL 1589495 (D.D.C. June 1, 2007) .......................................................13

*Steadfast Ins. Co. v. Auto Mktg. Network, Inc.,*
2003 WL 22902604 (N.D. Ill. Dec. 8, 2003) ................................................14, 22

*Thoroughman v. Wis. Cent., Ltd.,*
2020 WL 6781729 (W.D. Wis. Nov. 3, 2020) ...................................................8

*Total Containment, Inc. v. Dayco Products Inc.,*
177 F. Supp. 2d 332 (E.D. Pa. 2001) .........................................................23

*United States v. Science Applications International Corp.,*
301 F.R.D. 1 (D.D.C. 2013) ...............................................................14, 23

*Washington v. Kellwood Co.,*
714 F. App'x 35 (2d Cir. 2017) ...............................................................22

*Washington v. Kellwood Co.,*
2016 WL 5680374 (S.D.N.Y. Sept. 30, 2016) ...................................................21

*Watt v. All Clear Bus. Sols., LLC,*
840 F. Supp. 2d 324 (D.D.C. 2012) ...........................................................15

*White v. McDermott,*
2010 WL 4876025 (D. Conn. Nov. 19, 2010) ...................................................12

*Xereas v. Heiss,*
2021 WL 4698420 (D.D.C. Sept. 24, 2021) (Faruqui, J.) .......................................14

*Yong ex rel. Yong v. The Nemours Found.,*
432 F. Supp. 2d 439 (D. Del. 2006) ...........................................................12

**Rules**

Fed. R. Civ. P. 16(e) ...........................................................................................................14

Fed. R. Civ. P. 26(e)(1)(A) ...................................................................................................7

**Other Authorities**

6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice
    and Procedure* § 1522.2 (3d ed. 2010) ...................................................................15

Fitch Ratings (Fannie Mae), https://www.fitchratings.com/entity/fannie-mae-
    80089159.......................................................................................................................6

Fitch Ratings (Freddie Mac), https://www.fitchratings.com/entity/freddie-mac-
    80089158.......................................................................................................................6

Moody's Ratings (Fannie Mae), https://www.moodys.com/credit-ratings/Federal-
    National-Mortgage-Association-credit-rating-276550/ratings/view-by-class .........................6

Moody's Ratings (Freddie Mac), https://www.moodys.com/credit-ratings/Federal-
    Home-Loan-Mortgage-Corp-credit-rating-276455/ratings/view-by-class ..............................6

## INTRODUCTION

Plaintiffs belatedly seek to supplement the expert record by offering new opinions on matters that could easily have been addressed during the extensive expert discovery period allowed by the Court.  In doing so, Plaintiffs fail to address, let alone demonstrate that they satisfy, the exacting standards for allowing new expert reports after the close of expert discovery. The Court should deny their motion.

During the nearly 8-month window for expert discovery, Plaintiffs served opening and report reports from each of their experts, Drs. Mason, Dharan, and Thakor.  Months after expert discovery closed, on the eve of trial and after the Court granted partial summary judgment in Defendants' favor, Plaintiffs moved for leave to serve a "supplemental report" from Dr. Mason that would have nearly doubled Plaintiffs' alleged damages from $1.6 billion to $2.9 billion. This Court denied the motion in part because Plaintiffs had no excuse for their failure to develop the proposed expert testimony earlier.  Then, during the first trial, the Court rejected Plaintiffs' attempt to elicit testimony from Dr. Mason that he had not previously disclosed.

Now, Plaintiffs again seek leave to serve supplemental expert reports—this time, from both Dr. Mason and Dr. Dharan.  Again, the proposed supplemental reports contain new opinions based on information that was fully available during the expert discovery period, including the same opinion from Dr. Mason that this Court repeatedly rejected during the first trial—that the alleged damages far exceed $1.6 billion.  Plaintiffs' motion should be denied for multiple reasons.

First, Plaintiffs are wrong that the proposed supplemental reports are permissible under Rule 26(e).  That rule creates a narrow exception allowing a litigant to correct "incomplete or incorrect" discovery responses and disclosures.  It does not allow a party to serve a supplemental expert report simply to shore up or bolster the expert's prior opinions, or to add opinions or

information that was previously available.  Here, Plaintiffs do not contend that anything in Dr. Mason or Dr. Dharan's prior reports was "incomplete or incorrect."  Instead, the proposed supplemental reports seek to bolster and add to Dr. Mason's and Dr. Dharan's prior opinions and testimony based on information that has been available to Plaintiffs for years.  Rule 26(e) does not permit supplemental reports in such circumstances, and the Court should reject Plaintiffs' attempt to shoehorn the proposed reports into this wholly inapposite rule.

Second, Plaintiffs ignore and do not even attempt to satisfy the applicable legal standard—Rule 16's requirements for reopening expert discovery.  There is no question that Plaintiffs are seeking to reopen expert discovery, including supplemental expert reports and additional expert depositions, at a very late stage in the case, *i.e.*, before a retrial.  In these circumstances, Rule 16 requires a party to show that they would suffer "manifest injustice" if discovery were not reopened.  Even at earlier stages of a case, a party must always show "good cause" to reopen expert discovery.  Plaintiffs can show neither here.  The Court already held on the eve of the first trial that Plaintiffs lacked good cause to serve a supplemental expert report given their inexcusable failure to develop the proposed expert testimony during expert discovery.  The same is true now.  Plaintiffs could have developed and disclosed the proposed new opinion testimony years ago and offer not a shred of evidence to excuse their failure to do so.  Plaintiffs' motion should be denied because they cannot establish good cause, let alone satisfy Rule 16's higher burden of manifest injustice.

Plaintiffs' motion accordingly should be denied.[1]

---

[1]    In addition to being improper under both Rule 16 and Rule 26(e), Dr. Mason's and Dr. Dharan's proposed supplemental opinions are substantively problematic in key respects.  If the supplemental reports are allowed, Defendants will file motions *in limine* seeking to exclude the opinions at issue at the appropriate time.  But the Court need not address those substantive issues because Plaintiffs have failed to satisfy the standards to permit the supplemental reports.

## RELEVANT BACKGROUND

On August 12, 2021, Plaintiffs served opening reports from their experts Drs. Mason, Dharan, and Thakor.  Dr. Mason's report addressed Plaintiffs' alleged damages under two theories: a "lost dividends" theory and "restitution."  Dr. Dharan's report addressed whether the Third Amendment was reasonably necessary and whether it advanced a goal of restoring the Enterprises to a sound and solvent condition.  Dr. Dharan based his opinions, in part, on his review of various documents produced in litigation.

On February 1, 2022, Defendants served a rebuttal report from their expert Dr. Attari, who critiqued opinions disclosed by Dr. Mason and Dr. Dharan.  Among the materials produced by Dr. Attari was an event-study analysis that his team prepared regarding the price of the Enterprises' stock before and after the Third Amendment was announced on August 17, 2012. On its face, this event study shows a one-day drop in the stock prices from August 16 to 17, 2012, after which the "[p]rice of the common stock recovered in September 2012 and that of the junior preferred stocks recovered during October 2012."  PX-0375 at p. 2–6.

On March 1, 2022, Plaintiffs served reply reports from Drs. Mason, Dharan, and Thakor. Dr. Mason's reply report contained two paragraphs asserting that Dr. Attari's stock-price event study showed harm to shareholders based on the one-day decline in stock prices from August 16 to 17, 2012.  Expert Reply Report of J. Mason ¶¶ 87–88 (Class ECF No. 143-42, Fairholme ECF No. 145-42) ("Mason Reply Report").[2]  Dr. Mason asserted that this stock-price-drop theory of harm resulted in damages of $1.6 billion.  *Id.*  As this Court later explained: "Although Dr. Mason opined in his reply report that the $1.6 billion figure was an underestimate, he did not

---

[2]      "Fairholme ECF No." refers to Case No. 1:13-cv-1053-RCL, and "Class ECF No." refers to Case No. 1:13-mc-1288-RCL.

elaborate on the proper measure of the shares' decline in value." *Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency* ("*Fairholme Reconsideration Ruling*"), No. 1:13-cv-1053-RCL, 2022 WL 11110548, at *2 (D.D.C. Oct. 19, 2022).

On September 23, 2022, this Court granted partial summary judgment in Defendants' favor, rejecting Plaintiffs' primary "lost-dividends" theory of harm (estimated at over $27 billion) as impermissibly speculative, and finding Plaintiffs' "restitution" theory (estimated at roughly $48 billion) barred by 12 U.S.C. § 4617(f). *Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency* ("*Fairholme MSJ Ruling*"), No. 1:13-cv-1053-RCL, 2022 WL 4745970, at *9–12 (D.D.C. Oct. 3, 2022). The Court permitted the case to proceed to trial solely on a "lost-value" theory of harm based on the event study which showed that the one-day decline in the Enterprises' share prices from August 16 to August 17, 2012 was $1.6 billion. *Id.* at *11.

Soon thereafter, Plaintiffs moved for leave to serve a supplemental expert report from Dr. Mason concerning both this "lost-value" theory and purported "reliance" damages. The Court denied the motion, noting that Plaintiffs sought to "resuscitate their primary theory of harm and to introduce two new theories to measure their damages under the ['lost-value'] theory the Court allowed to proceed to trial." *Fairholme Reconsideration Ruling*, 2022 WL 11110548, at *1. On the "lost-value" theory, Plaintiffs sought to present testimony from Dr. Mason that damages were higher than $1.6 billion because Enterprise shares supposedly lost 100% of their value as a result of the Third Amendment. *Id.* at *2. The Court explained that "[c]ourts do not allow supplemental or amended [expert] reports simply at the whim of a party," and "plaintiffs have no adequate excuse for their failure to develop the proposed testimony earlier," as "they were perfectly capable of developing [the testimony] before the close of expert discovery, even if they did not anticipate the Court's ruling on summary judgment." *Id.* Indeed, the Court found,

"Plaintiffs offer no explanation as to why they could not have asked Dr. Mason for that further elaboration in [his prior] report." *Id.*

At the pretrial conference, Plaintiffs again tried to expand Dr. Mason's testimony to opine that Enterprise shares lost 100% of their value as a result of the Third Amendment, amounting to $2.9 billion in damages rather than $1.6 billion. *See Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency* ("*Fairholme MIL Ruling*"), No. 1:13-cv-1053-RCL, 2022 WL 13937460, at *8 (D.D.C. Oct. 21, 2022). The Court rejected this effort as "pure sophistry that ignores the role [of] disclosure of expert testimony during discovery." *Id.*

Then, at the first trial, Plaintiffs tried to elicit testimony from Dr. Mason that was not disclosed in his reports. Dr. Mason testified on direct examination about Dr. Attari's stock-price event study. Trial Tr. 1498:20–1516:7. On cross examination, Defendants' counsel read aloud the sentence in the event study stating that the Enterprises' stock prices recovered in September and October 2012 and asked Dr. Mason if the sentence had been read correctly. *Id.* at 1524:3–6. Dr. Mason confirmed that Defendants' counsel read the sentence correctly. *Id.* at 1524:7. On re-direct, Plaintiffs' counsel attempted to elicit from Dr. Mason further opinions about the recovery, but Defendants objected on the ground that his reports do not disclose any such opinions. *Id.* at 1535:2–1536:5. This Court sustained the objection, rejecting Plaintiffs' argument that Dr. Mason's prior reports somehow implied opinions about the stock-price recovery. *Id.* at 1537:25.

On November 7, 2022, the first trial ended with this Court declaring a mistrial based on a hung jury.

On February 7, 2023, the Court issued an order scheduling the retrial to begin on July 24, 2023.

On February 17, 2023, Plaintiffs filed the instant motion seeking leave to serve "supplemental" expert reports from Dr. Mason and Dr. Dharan. Pls.' Mot. Ex. 2 (hereinafter "Mason Supp. Rep."); Pls' Mot. Ex. 1 (hereinafter "Dharan Supp. Rep."). Dr. Mason's supplemental report asserts that the stock-price "recovery" identified in Dr. Attari's event study does not affect Plaintiffs' alleged damages, and that $1.6 billion in damages is "conservative" because Treasury received $150 billion more in dividends under the Third Amendment than it would have under the 10% fixed dividend. *See generally* Mason Supp. Rep. Dr. Dharan's supplemental report asserts that the Enterprises could have paid dividends to Treasury "in kind" (referred to as the "PIK" option) to address any concern about the erosion of the Treasury Commitment and solve the circular dividend problem, and that the PIK option was "clearly more effective" than the Net Worth Sweep in addressing the erosion/circular draw concern. Dharan Supp. Rep. at 3. The supplemental report also contains a new opinion related to whether cash invested by private preferred shareholders before the conservatorships nevertheless helped the Enterprises from 2008 to 2012, after the conservatorships. *Id.* at 19–20. And the supplemental report identifies more than two dozen additional documents upon which Dr. Dharan now wishes to rely (including some documents that this Court previously found inadmissible). *Id.* at Ex. E ("Supplemental Documents Considered").[3]

---

[3] The documents that Dr. Dharan now wishes to rely upon that were not identified in his prior reports are: Fairholme-DDC-0009617 (PX-0290); FHFA00102594 (PX-0288); FHFA-DDC-0319690; FHFA-DDC-0320331; FM_Fairholme_CFC_00000939; PX-0003-A4; PX-0003-B4; PX-0033; PX-0034; PX-0180; PX-0210; PX-0226; PX-0227; PX-0247; PX-0270; PX-0274; PX-0279; PX-0444; PX-0445; PX-0515; PX-0516; DX-0412; UST00517634 (PX-0295); UST00533618; UST00538681; Fitch Ratings (Fannie Mae), *available at* https://www.fitchratings.com/entity/fannie-mae-80089159; Fitch Ratings (Freddie Mac), *available at* https://www.fitchratings.com/entity/freddie-mac-80089158; Moody's Ratings (Fannie Mae), *available at* https://www.moodys.com/credit-ratings/Federal-National-Mortgage-Association-credit-rating-276550/ratings/view-by-class; Moody's Ratings (Freddie Mac),

**ARGUMENT**

I.  **Plaintiffs' Supplemental Expert Reports Are Not Proper Under Rule 26(e) Because They Do Not Seek To Correct Anything "Incomplete or Incorrect" in Plaintiffs' Prior Expert Disclosures**

Plaintiffs argue that their proposed supplemental expert reports are permissible under Rule 26(e). That is incorrect. Rule 26(e) allows—indeed, requires—parties to correct "incomplete or incorrect" discovery responses and disclosures, including expert reports. But it does not allow—or even contemplate—the service of additional expert reports after the close of expert discovery to bolster or add to an expert's prior opinions. Here, Plaintiffs do not even attempt to argue that there is anything "incomplete or incorrect" about Dr. Mason's or Dr. Dharan's prior disclosures, or that the proposed supplemental reports provide any sort of correction. This is not surprising because the proposed supplemental reports seek only to add to or further support the experts' prior opinions. Rule 26(e) thus does not permit the proposed supplemental Mason and Dharan reports.[4]

A.  **Rule 26(e) Only Permits Litigants To Correct "Incomplete or Incorrect" Expert Reports Based on Information Not Previously Available**

By its plain terms, Rule 26(e) permits a party to supplement its expert disclosures "if the party learns that in some material respect the disclosure or response is *incomplete or incorrect* . . . ." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). "This rule provides a 'limited exception' to the deadlines for expert reports imposed by Rule 26(a)(2)." *SD3, LLC v. Rea*, 71 F. Supp. 3d

---

*available at* https://www.moodys.com/credit-ratings/Federal-Home-Loan-Mortgage-Corp-credit-rating-276455/ratings/view-by-class.

[4]   Plaintiffs' motion repeatedly asserts that Dr. Mason and Dr. Dharan could present their new opinions based solely on their prior reports, without any supplemental reports at all. *See, e.g.*, Pls.' Mot. at 1–3. That is incorrect. As described below, their prior reports do not disclose any of their proposed supplemental opinions. Nor can Dr. Dharan offer his supplemental opinions "in a manner consistent with proper rebuttal testimony at trial . . . even without a supplemental report." Pls.' Mot. at 7–8. Experts must disclose rebuttal testimony during expert discovery, and Dr. Dharan failed to disclose his supplemental opinions previously.

189, 194 (D.D.C. 2014) (Lamberth, J.) (quoting *Richardson v. Korson,* 905 F. Supp. 2d 193, 199 (D.D.C. 2012)).  "It 'does not grant a license to supplement a previously filed expert report because a party wants to.'"  *Id.* (quoting same).  "As interpreted by decisions of this district, Rule 26(e)'s exception is 'narrow' and *only* permits supplemental reports for the purpose of 'correcting inaccuracies or adding information that was not available at the time of the initial report.'"  *Id.* (quoting *Minebea Co. v. Papst,* 231 F.R.D. 3, 6, (D.D.C. 2005)) (emphasis added).

As numerous courts have explained, Rule 26(e) does not allow a party to "submit a supplemental expert report that . . . seeks to strengthen or deepen opinions expressed in the original expert report."  *Palmer v. Asarco Inc.*, No. 03-CV-0498, 2007 WL 2254343, at *3 (N.D. Okla. Aug. 3, 2007) (internal quotation marks and citations omitted).  A party's duty to supplement under Rule 26(e) "does not authorize an expert to forage around for further support for his opinions after his deposition has been taken."  *Thoroughman v. Wis. Cent., Ltd.*, 2020 WL 6781729, at *1 (W.D. Wis. Nov. 3, 2020).  Rather, "[p]reviously proposed opinions should stand on their own and do not need further emphasis."  *Rodgers v. Beechcraft Corp.*, 759 F. App'x 646, 663 (10th Cir. 2018).

Applying these settled principles, courts in this District and elsewhere have repeatedly rejected supplemental reports that do not seek to correct anything incomplete or incorrect in an expert's prior disclosures, but rather seek to bolster or add to the expert's opinions with information that was readily available to the expert prior to their previous report.  *See, e.g.*, *SD3*, 71 F. Supp. 3d at 195 (finding that an expert's disclosure was not a proper Rule 26(e) supplement because the expert went beyond "correct[ing] inaccuracies in his deposition testimony" and "found additional evidence that further substantiated his previously stated expert opinions"); *Jackson v. Teamsters Loc. Union 922*, 312 F.R.D. 235, 236–37 (D.D.C. 2015)

(rejecting plaintiff's characterization of an expert disclosure as a Rule 26(e) disclosure and denying plaintiff's motion to serve a supplemental report); *Hajjar-Nejad v. George Washington Univ.*, 2012 WL 13168550, at *2 (D.D.C. Nov. 13, 2012) ("The failure to incorporate certain information that was available at the time of preparation of Plaintiff's initial expert report does not constitute grounds for supplementation pursuant to Rule 26(e)."); *PharMerica Mountain LLC v. Arizona Rehab Campus LLC*, 2022 WL 1689370, at *4 (D. Ariz. May 26, 2022) (striking proposed expert disclosure which "serv[ed] to strengthen or shore up [the expert's] original report and therefore [wa]s beyond the scope of proper supplementation"); *Carballido v. Target Corp.*, 2021 WL 1376997, at *2 (D. Colo. Apr. 12, 2021) (striking plaintiff's expert disclosure, which plaintiff characterized as a Rule 26(e) supplement, because it in fact sought to bolster prior opinions); *Bio Med Techs. Corp. v. Sorin CRM USA, Inc.*, 2015 WL 7294791, at *5 (D. Colo. Nov. 19, 2015) (explaining that an expert's "cit[ation] [of] additional information to bolster the opinions contained in the initial [r]eport" was "the opposite" of a proper Rule 26(e) supplement).

Courts scrutinize proposed supplemental expert disclosures to ensure they meet the requirements of Rule 26(e)—*i.e.*, correcting "incomplete or incorrect" prior disclosures—because there must be an end to expert discovery.  "To construe Rule 26(e) supplementation to apply whenever a party wants to bolster or submit additional expert opinions would wreak havoc in docket control and amount to unlimited expert opinion preparation." *Campbell v. United States*, 470 F. App'x 153, 157 (4th Cir. 2012) (quotation marks and alterations omitted).

### B.     Plaintiffs Do Not Identify Anything "Incomplete or Incorrect" in Dr. Mason's or Dr. Dharan's Prior Reports

Plaintiffs' motion does not even acknowledge, much less apply, the plain text of Rule 26(e) limiting supplemental expert reports to the correction of "incomplete or incorrect" prior disclosures.  Plaintiffs do not argue that anything in Dr. Mason's or Dr. Dharan's prior reports is

"incomplete or incorrect."  Nor do Plaintiffs contend that the proposed supplemental reports provide any sort of correction.  Plaintiffs' motion should be denied on this basis alone.

Furthermore, Plaintiffs do not contend that anything in Dr. Mason's or Dr. Dharan's proposed supplemental reports is based on information that was unavailable when their prior reports were disclosed in August 2021 and March 2022.  Nor could they, as both proposed reports rely on materials that were produced to Plaintiffs and thus available to their experts years ago.[5]

None of the cases cited by Plaintiffs supports their position that Rule 26(e) allows supplemental expert reports that contain new opinions and/or disclosures intended to bolster an expert's prior opinions.  In *Capitol Justice LLC v. Wachovia Bank, N.A.*, 706 F. Supp. 2d 34 (D.D.C. 2009) (Lamberth, J.), the Court allowed a supplemental expert report under Rule 26(e) because it was served only nine weeks after the expert's initial report, and subsequently, "during his deposition, [the expert] stated that his initial report was incomplete, and thus demonstrated that supplementation was proper."  *Id.* at 39 (citation omitted).  The supplemental report, moreover, "made changes only to the inputs and calculations within the damage model in order to produce a more complete and accurate report."  *Id.* at 38 (internal quotation marks omitted). In contrast, here, neither Plaintiffs nor their experts assert that there is anything incomplete or incorrect in their prior reports.  Moreover, Dr. Mason's and Dr. Dharan's reply reports were

---

[5]     A small number of documents cited in the proposed supplemental disclosures post-date Plaintiffs' experts' March 1, 2022 rebuttal reports, including PX-515 (A Moody's Investor Service Report from October 2022) and PX-516 (A Fitch Ratings Report from March 21, 2022)—two documents this Court refused to admit into evidence at the first trial because "these are 2022 documents that are irrelevant."  Trial Tr. 2432:19–20.  The experts also now rely upon the trial exhibits of Plaintiffs' summary witness which are based on information that was readily available to Plaintiffs' experts at the time they authored their prior reports.

served a year ago, and these experts have already been deposed (and cross-examined at the first

trial) about the content of those reports.

     Other cases from this District that Plaintiffs cite are equally inapposite as none deal with

attempts to substantively add and bolster opinions well after both the expert-discovery period

and the initial trial on the merits.  *See Barnes v. District of Columbia*, 289 F.R.D. 1, 11 (D.D.C.

2012) (Lamberth, J.) ("The plaintiffs' experts filed their [supplemental] reports within the time

allotted by this Court" and thus the reports were "timely."); *Richardson v. Korson*, 905 F. Supp.

2d 193, 195, 198–200 (D.D.C. 2012) ("reluctantly permit[ting]" a supplemental expert report

because "no trial date ha[d] yet been set" and without the supplemental report the plaintiff's

claims would be dismissed in full); *Dormu v. District of Columbia*, 795 F. Supp. 2d 7, 29

(D.D.C. 2011) (at summary judgment, considering a supplemental report that merely identified

by name the specific "national and local police standards" that were referenced in the expert's

initial report); *Nnadili v. Chevron U.S.A., Inc.*, No. 02–1620 (ESH) (AK), 2005 WL 6271043, at

*1 (D.D.C. Aug. 11, 2005) (allowing a supplemental report that was served during expert

discovery, months before the opposing party's rebuttal reports were due).

     The cases Plaintiffs cite from other jurisdictions likewise do nothing for them.  For

instance, in *Hoffman v. Tonnemacher*, 2006 WL 3457201, at *1, 4 (E.D. Cal. Nov. 30, 2006), the

court allowed a party to disclose a new expert for a retrial to replace a prior expert who had

become unavailable, finding that the party would suffer manifest injustice if forced to retry the

case with no expert at all.  This is clearly not the case here.  *Hoffman* in fact supports denial of

Plaintiffs' motion because, although not noted by Plaintiffs, the court also *denied* a separate

request to expand the scope of witness testimony at the retrial, finding that there was no manifest

injustice when "the need for or import of her testimony should have been apparent" previously.

*Id.* at *5; *see also Yong ex rel. Yong v. The Nemours Found.*, 432 F. Supp. 2d 439, 441–42 (D. Del. 2006) (allowing party to designate a new expert to testify on the same subject as another expert at retrial, but denying request to allow disclosure of a new expert who "would add new evidence and issues to the retrial" because "as a general rule, a retrial should not involve the addition of new issues, evidence, or witnesses").

Contrary to Plaintiffs' characterization, *Mondis Technology Ltd. v. LG Electronics, Inc.*, 2021 WL 4077563 (D.N.J. Sept. 8, 2021), did not involve application of any Rule 26(e) "principle." Pls.' Mot. 2. That case, rather, involved a significant change of circumstances between trials and a finding akin to manifest injustice absent supplementation: the court vacated the plaintiff's primary damages theory following the first trial but allowed service of "an updated expert report" before the second trial to be "based solely on the evidence presented at the previous trial." *Mondis Tech. Ltd v. LG Elecs., Inc.*, 2020 WL 1933979, at *1, *5 (D.N.J. Apr. 22, 2020). Importantly, the court subsequently rejected that plaintiff's multiple attempts to further expand its expert's opinions before the second trial, stating: "[t]he Court is tired of this nonsense." *Mondis Tech. v. LG Elecs.*, 2020 WL 6547551, at *1 (D.N.J. Nov. 6, 2020). Here, there is no change in circumstances or manifest injustice that would permit Plaintiffs to supplement their opinions at this stage.[6]

---

[6]   The decision in *Johnson v. H.K. Webster, Inc.*, 775 F.2d 1 (1st Cir. 1985), is irrelevant because it did not involve any expert supplementation issue. Rather, the court merely addressed whether an expert should have been permitted to testify about an issue at trial where the expert arguably had *failed* to disclose that opinion during discovery. *See id.* at *5–9. Plaintiffs also cite *White v. McDermott*, 2010 WL 4876025, at *2 (D. Conn. Nov. 19, 2010), but other courts have rightly distinguished that decision and denied requests to inject new expert opinion testimony before a retrial absent an appropriate showing under Rule 16. *See, e.g.*, *Allied Erecting & Dismantling Co., Inc. v. United States Steel Corp.*, 2021 WL 5850693, at *10 (N.D. Ohio Dec. 9, 2021) ("This is . . . a classic attempt at a 'do-over.'").

Other than these inapposite cases, Plaintiffs cite nothing to support their ability to supplement their prior expert disclosures under Rule 26(e), and their Motion should be denied.

## II. Plaintiffs Cannot Reopen Expert Discovery Under Rule 16 Because They Cannot Establish Good Cause, Let Alone Manifest Injustice

Although Plaintiffs never say so, they are in fact seeking to reopen expert discovery. *See Fairholme Reconsideration Ruling*, 2022 WL 11110548, at *2 ("Plaintiffs ask the Court to *reopen expert discovery* and allow them to serve new a supplemental report by their existing expert, Dr. Joseph Mason[.]" (emphasis added)). It is therefore Federal Rule of Civil Procedure 16—not Rule 26(e)—that properly governs their motion. Under Rule 16(b), a party must show "good cause" to reopen expert discovery. Under Rule 16(e), which applies to later requests to reopen expert discovery after entry of a final pretrial order, the standard is stricter: the moving party must establish that it would suffer a manifest injustice if discovery were not reopened. Plaintiffs cannot meet either standard.

### A. Rule 16 Requires a Showing of Manifest Injustice, or at Least Good Cause, To Reopen Expert Discovery at this Stage

It is well settled that "[f]iling an expert disclosure or a supplement thereto after the close of discovery requires leave of the Court pursuant to [Rule 16]." *St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*, 2007 WL 1589495, at *6 (D.D.C. June 1, 2007); *Barnes*, 289 F.R.D. at 7 (request to serve additional expert reports fell "under Rule 16(b) . . . because it asks to modify the discovery deadlines contained in a scheduling order"). Accordingly, Plaintiffs' "attempt to escape the strictures of [Rule 16] . . . by recasting their efforts under . . . Rule 26's requirements to supplement discovery . . . is misguided and unavailing." *Dag Enterprises, Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 108 (D.D.C. 2005).

Once a final pretrial order has been entered, Rule 16(e) and its local counterpart mandate that such pretrial orders "shall control the subsequent course of the action . . . [and] shall be

modified only to prevent *manifest injustice*." Fed. R. Civ. P. 16(e) (emphasis added); *see also* Local Rule 16.5(a)(3) ("[N]o departures from the final Pretrial Order shall be permitted except to prevent manifest injustice."). While neither the D.C. Circuit nor this Court has decided whether Rule 16(e)'s manifest-injustice standard applies in the context of a retrial,[7] it is "the governing standard applied by most courts with respect to retrials." *Steadfast Ins. Co. v. Auto Mktg. Network, Inc.*, 2003 WL 22902604, at *2 (N.D. Ill. Dec. 8, 2003); *see also Eshelman v. Puma Biotechnology, Inc.*, 2022 WL 1597819, at *1–2 (E.D.N.C. May 19, 2022) ("[T]he court applies a 'manifest injustice' standard to requests for additional discovery in advance of a retrial."). As the Tenth Circuit explained:

> [I]f the trial court perceives in limiting evidentiary proof in a new trial, a *manifest injustice*, to one side or the other, the court must retain broad latitude and may with proper notice allow additional witnesses and relevant proof. In this regard, if a party makes a timely motion to produce new and material evidence *which was not otherwise readily accessible or known*, the court should, within the exercise of discretion, consider *whether denial of the new evidence would create a manifest injustice*.

*Cleveland v. Piper Aircraft Corp.*, 985 F.2d 1438, 1450 (10th Cir. 1993) (emphases added) (citation omitted); *see also Martin's Herend Imports, Inc. v. Diamond & Gem Trading*, 195 F.3d 765, 775 (5th Cir. 1999) (reciting same Rule 16(e) manifest-injustice standard).

Absent a final pretrial order—*i.e.*, when the request comes after the deadlines set forth in a scheduling order but before trial itself—requests to serve reopen expert discovery are subject to

---

[7]  In *Xereas v. Heiss*, 2021 WL 4698420, at *1 n.1 (D.D.C. Sept. 24, 2021) (Faruqui, J.), the court noted that "Rule 16(e) states that modification of a final pretrial order is permissible only to 'prevent manifest injustice' . . . . Arguably, because a final pretrial order was issued before the first trial, the appropriate standard for reopening discovery here is manifest injustice." But the court declined to resolve whether manifest injustice or the Rule 16(b) "good cause" standard applied to that situation, finding that "the plaintiff [could not] demonstrate good cause, let alone manifest injustice." *Id.* Similarly, in *United States v. Science Applications International Corp.*, 301 F.R.D. 1, 3 (D.D.C. 2013), the court noted that "[n]either the D.C. Circuit nor the Supreme Court has spoken on what standard is applicable to a motion to reopen discovery prior to a retrial" and concluded that it was unnecessary to decide this question.

Rule 16(b). *Barnes*, 289 F.R.D. at 7, 14. Under Rule 16(b), reopening expert discovery "require[s] a showing of good cause." *U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.*, 576 F. Supp. 2d 128, 133 (D.D.C. 2008). "What constitutes good cause . . . necessarily varies with the circumstances of each case." *Watt v. All Clear Bus. Sols., LLC*, 840 F. Supp. 2d 324, 326 (D.D.C. 2012) (quoting 6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1522.2 (3d ed. 2010)). As this Court previously explained in this case, a party cannot establish good cause to reopen expert discovery when—as here—a party "ha[s] no adequate excuse for their failure to develop the proposed testimony earlier." *Fairholme Reconsideration Ruling*, 2022 WL 11110548, at *2; *see also Bakalar v. Vavra*, 851 F. Supp. 2d 489, 493 (S.D.N.Y. 2011) ("A significant consideration is whether there has already been adequate opportunity for discovery.").

### B. Plaintiffs Cannot Establish Good Cause, Let Alone Manifest Injustice, To Reopen Expert Discovery

Here, Plaintiffs do not argue that they have any good cause to reopen expert discovery or that they would suffer any manifest injustice if limited to presenting the expert testimony they previously disclosed during expert discovery. Because Plaintiffs do not and cannot identify any excuse for failing to disclose Dr. Mason's and Dr. Dharan's proposed supplemental opinions sooner, or any manifest injustice they would suffer if those supplemental opinions were excluded, their request to reopen expert discovery should be denied.

#### 1. Plaintiffs Have No Excuse for Their Failure To Develop and Disclose Dr. Mason's Supplemental Opinions During Expert Discovery

Plaintiffs do not offer any justification for failing to develop Dr. Mason's proposed supplemental opinions during expert discovery, as required to establish good cause under Rule 16(b). Nor do Plaintiffs assert that they would suffer any "manifest injustice" if Dr. Mason's supplemental report is not allowed, as required under Rule 16(e).

15

Dr. Mason's supplemental report offers opinions about the stock-price "recovery," but Dr. Mason indisputably could have disclosed such opinions when he authored his reply report in March 2022.  Dr. Mason had Dr. Attari's stock-price event study and addressed it in two paragraphs of his reply report.  *See* Mason Reply Rep. ¶¶ 87–88.  On its face, that event study states: "Price of the common stock *recovered* in September 2012 and that of the junior preferred stocks *recovered* during October 2012."  PX-0375 at 2 (emphases added).  The event study also contains a graph that depicts the increase in Enterprise share prices after August 17, 2012.  *Id.* Dr. Mason could have addressed this aspect of the event study in his reply report, but he failed to do so.  His reply report does not even mention it.  Plaintiffs do not offer any reason for this failure, and as the Court previously noted, it is no excuse that Plaintiffs "did not anticipate the Court's ruling on summary judgment" limiting Dr. Mason's testimony to the $1.6 billion "lost-value" theory of harm.  *Fairholme Reconsideration Ruling*, 2022 WL 11110548, at *2.

Plaintiffs make much of the fact that Dr. Mason was asked one question about the contents of the event study on cross-examination.  Pls.' Mot. 9–10, 12.  But, as the transcript makes clear, that question was limited to confirming that the event study contained one sentence above "recovery."  *Id.* at 9.  And, as noted above, Dr. Mason had access to the event study and was aware of all of its contents prior to his March 2022 reply report and could have addressed the "recovery" point in that reply report.  The fact that Dr. Mason was simply asked to confirm what the event study said on the stand is, thus, irrelevant.

Plaintiffs also do not offer any excuse for their failure to develop Dr. Mason's proposed supplemental opinion that his $1.6 billion damages calculation is "conservative" due to the $150 billion in supposed "excess value" that Treasury received as a result of the Third Amendment.

Indeed, Plaintiffs' attempt to introduce this supplemental opinion conflicts with multiple of this Court's prior rulings.

First, this latest iteration is no different than Plaintiffs' prior unsuccessful attempts to have Dr. Mason testify that his $1.6 billion damages calculation is "understated"—Plaintiffs have simply replaced the word "understated" with "conservative" and suggested that their actual damages may be closer to *$150 billion*.  In its October 11, 2022 decision, the Court ruled that Dr. Mason's opinion that $1.6 billion "understated" the alleged damages was not sufficient to disclose a higher damages calculation of $2.9 billion because Dr. Mason "*did not elaborate on the proper measure of the shares' decline in value.*"  *Fairholme Reconsideration Ruling*, 2022 WL 11110548, at *2 (emphasis added).  Dr. Mason cannot now provide a completely different rationale for why his $1.6 billion damages calculation is purportedly "conservative."  The Court similarly found that Plaintiffs "have no adequate excuse for their failure to develop the proposed testimony earlier," and that Plaintiffs were "perfectly capable of developing [such testimony] before the close of expert discovery, even if they did not anticipate the Court's summary judgment ruling."  *Id.*

Second, the Court previously accepted Plaintiffs' representation that they would not draw the sort of comparison that Dr. Mason now seeks to present—*i.e.*, $1.6 billion is some sort of "bargain."  Near the end of the first trial, Defendants filed a motion *in limine* to preclude Plaintiffs from explicitly making this very comparison before the jury in their closing arguments. At the hearing on the motion, Plaintiffs represented to the Court: "We are not going to argue for more than 1.6 billion.  ***We are not going to suggest that 1.6 billion is a bargain because we suffered so much more harm.***"  Trial Tr. 2439:3–5 (emphasis added).  Upon this representation, the Court denied Defendants' motion *in limine*, stating: "I think you're within the bounds of what

17

-- as long as you stick in the bounds of what you're representing.  So I will deny the Motion in Limine.  I think you're right on the line but I don't think it's a basis for a Motion in Limine." *Id.* at 2440:14–18; *see Colibri Heart Valve LLC v. Medtronic CoreValve LLC*, 2021 WL 7285995, at *13–14 (C.D. Cal. Nov. 16, 2021) ("[I]t would be improper for [a plaintiff] to make . . . an argument that the requested damages are 'just pennies on the dollar.'" (citation omitted)).  Plaintiffs cannot reverse course and have their expert do exactly what they represented to this Court that they would not do.

Dr. Mason asserts that his new opinions were somehow implicitly "included" in his prior disclosures.  Mason Supp. Rep. ¶ 6.  As support, he can point to only two short paragraphs in his reply report, which state:

> I understand that Dr. Attari supervised an event study whereby he evaluated the statistical significance of the equity share price declines in response to the NWS and evaluated the market value decline. … [B]ased on my review of the documents produced on this topic by Defendants, adoption of Defendants' method and analysis of the decline in share price would appear to yield damages of approximately $1.6B based on the decline in the GSE share price.

Mason Reply Rep. at ¶¶ 87–88; *see also* Mason Supp. Rep. at ¶ 5.  Contrary to Dr. Mason's *ipse dixit*, this language does not plausibly "include[] the conclusion that the so-called price 'recovery' noted by Dr. Attari in no way mitigated the harm the NWS caused GSE shareholders or the damages resulting from that harm through the remainder of 2012."  Mason Supp. Rep. ¶ 6.  Plaintiffs also assert that those two short paragraphs in Dr. Mason's reply report "implicit[ly]" disclose his supplemental opinion that $1.6 billion in damages is "conservative" in light of the $150 billion in additional dividends supposedly paid to Treasury due to the Third Amendment.  *See id.* ¶ 18.  But those two paragraphs on their face disclose no such thing.  Dr. Mason's reply report nowhere links his $1.6 billion damages calculation to the amount paid in dividends to Treasury.  That Dr. Mason initially disclosed only two paragraphs about the share-price decline

does not give him license to expand it long after discovery closed.  *See PharMerica Mountain LLC*, 2022 WL 1689370, at *4 (striking proposed supplemental expert report which served only to strengthen or bolster an earlier report ); *Carballido*, 2021 WL 1376997, at *2 (same).

Plaintiffs should not be permitted to inject supplemental expert opinions that they could have developed and disclosed during expert discovery.  They have not asserted any justification for their failure to develop these opinions from Dr. Mason earlier, and they do not and cannot identify any manifest injustice that they would suffer absent his supplemental disclosure.

### 2.    Plaintiffs Have No Excuse for Their Failure To Develop and Disclose Dr. Dharan's Supplemental Opinions During Expert Discovery

Each of Dr. Dharan's supplemental opinions could have been asserted in his prior reports, and Plaintiffs provide no excuse or justification for their prior omission.  For example, Plaintiffs included allegations about the PIK option on the face of their complaint (*see, e.g.*, Am. Class Compl. ¶¶ 8–12, Class ECF No. 71) and have throughout the litigation used the PIK option to attack the Net Worth Sweep.  They have known about this issue for years.  They do not and cannot provide any good cause for the delay in disclosing PIK opinions, and they certainly cannot explain how their supplemental disclosure is necessary to prevent manifest injustice.

Indeed, not only did Dr. Dharan fail to disclose his new PIK opinions within the court-ordered discovery deadlines, he *disclaimed* having such opinions because, as he explained, he had not even undertaken the necessary analysis.  Dr. Dharan opines in his supplemental report that paying dividends "in-kind" at a 12% rate "was a viable and superior option [to the Net Worth Sweep] for addressing concerns" about the Enterprises' inability to afford the 10% dividend.  Dharan Supp. Rep. ¶ 13; *see also id*. ¶ 11 ("the PIK option would have been superior").  However, when asked directly at his deposition if he had an opinion whether the PIK option would have been superior to the Net Worth Sweep, Dr. Dharan said no:

> I have not done the analysis of which is better option independent of all other contexts.  So I did not need to do that analysis given what I was working on, which is, is the Third Amendment even reasonably necessary?

Dr. Bala Dharan Dep. (Apr. 6, 2022) ("2022 Dharan Dep.") (excerpts attached as **Exhibit A**) at 161:22–162:4; *see also id*. at 177:8–10 ("My belief about which is preferable is not the scope of my analysis here."); *id*. at 178:14–16 ("I already said I did not do a comparative analysis of these alternatives because that's beyond the scope.").  According to Dr. Dharan's own deposition testimony, he could have done the analysis at issue during discovery, but he did not do so.

Dr. Dharan's supplemental report also addresses Dr. Attari's bond event study (*see* Dharan Supp. Rep. ¶¶ 14–26), but Dr. Dharan already addressed that study at length in his prior reply report.  *See* Rebuttal Expert Report of Dr. Bala Dharan ¶¶ 39–43 (Class ECF No. 164-3, Fairholme ECF No. 171-3) ("Dharan Rebuttal Rep.").  Neither Plaintiffs nor Dr. Dharan explain why he could not have developed and disclosed his proposed supplemental opinions about the bond event study during expert discovery.  Indeed, Dr. Dharan's supplemental report simply surveys documents produced in discovery years ago and asserts that they "support my opinion." Dharan Supp. Rep. ¶¶ 17–24.

Similarly, Dr. Dharan's supplemental report adds opinions about certain "non-cash accounting adjustments" and the funds invested by private preferred stockholders before the conservatorships.  Dharan Supp. Rep. ¶¶ 38–41; *see also* Pls.' Mot. at 7.  But again, neither Plaintiffs nor Dr. Dharan explain why he could not have offered these opinions sooner.  The "non-cash accounting adjustments" (*i.e.*, DTAs and loan loss reserves) are discussed in Plaintiffs' complaint and Dr. Dharan's prior reports.  *See* Am. Class Compl. ¶¶ 9–10 (Class ECF No. 71); Expert Report of Bala G. Dharan ¶¶ 13–14, 20, 98–119 (Class ECF No. 164-2, Fairholme ECF No. 171-2) ("Dharan Opening Rep."); Dharan Rebuttal Rep. ¶¶ 13, 19–21, 26–28.  And Dr. Dharan's supplemental opinions about the funds invested by private preferred

shareholders rests of the Enterprises' publicly available SEC filings.  *See* Dharan Supp. Rep. ¶ 41.  There is no reason why Dr. Dharan could not have included his supplemental opinions on these matters during the expert discovery period.

Dr. Dharan also now wishes to testify that he is relying upon over two dozen additional documents (several of which the Court found inadmissible at the first trial), but Plaintiffs do not and cannot offer any excuse for Dr. Dharan's failure to consider or rely upon those documents during expert discovery.  Plaintiffs have had these documents in their possession for years, but they were not included on Dr. Dharan's prior lists of materials considered.  *See supra* at note 3.  Thus, Dr. Dharan by definition formed his prior opinions without relying upon or even considering those documents.  Indeed, Dr. Dharan purports to rely on these documents solely as "supplemental support for opinions and testimony [] *previously given*."  Dharan Supp. Rep. ¶ 1 (emphasis added).  This is not a proper basis for supplementation.

In sum, Plaintiffs have not attempted to show—and cannot show—that they would suffer manifest injustice if Dr. Dharan were unable to present his new opinions at trial.  Nor have they attempted to demonstrate good cause to allow Dr. Dharan to disclose these new opinions now.  Accordingly, Plaintiffs' request to serve Dr. Dharan's supplemental report should be denied.

### 3.    Courts Routinely Reject Such Requests Under Rule 16

Courts have regularly refused to reopen expert discovery between a first and second trial.  *See, e.g.*, *Washington v. Kellwood Co.*, 2016 WL 5680374, at *7–8 (S.D.N.Y. Sept. 30, 2016), *aff'd*, 714 F. App'x 35 (2d Cir. 2017) (finding no manifest injustice in denying a request to reopen expert discovery where the moving party "made a deliberate tactical decision to rely on one expert in the first trial" and sought to introduce new damages opinions on retrial); *Steadfast Ins. Co. v. Auto Mktg. Network, Inc*., 2003 WL 22902604, at *2 (N.D. Ill. Dec. 8, 2003) (finding no manifest injustice in denying a request to reopen expert discovery when "the only thing that

has changed in the meantime is [the moving party] has retained new counsel, who would like to present this case to the jury in a different manner than previous counsel").  Indeed, courts have denied parties' requests to supplement or bolster their expert disclosures before a retrial where any detriment to moving party "is attributable to [its] own conscious decisions and strategy." *Steadfast*, 2003 WL 22902604 at *2.

When Plaintiffs previously sought to reopen expert discovery between this Court's summary judgment ruling and the first trial, the Court found that Plaintiffs "[had] no adequate excuse for their failure to develop the proposed testimony earlier," "were perfectly capable of developing [the proposed expert testimony] before the close of expert discovery, even if they did not anticipate the Court's ruling on summary judgment," and "offer no explanation as to why they could not have asked Dr. Mason for that further elaboration in [his prior] report." *Fairholme Reconsideration Ruling*, 2022 WL 11110548, at *3.  That the first trial ended in a hung jury is not an invitation for Plaintiffs to try again the second time around.  "A new trial means just that; it does not also include new discovery."  *Allied Erecting & Dismantling Co., Inc. v. United States Steel Corp.*, 2021 WL 3847782, at *4 (N.D. Ohio Aug. 27, 2021); *Cleveland*, 985 F.2d at 1449 (noting that a retrial is "not an invitation to reopen discovery").

The facts of this case are similar to *MyGallons LLC v. U.S. Bancorp*, No. 7:09-CV-057-BR, 2013 WL 12291484, at *1 (E.D.N.C. Aug. 9, 2013), and call for the same result.  There, the court denied plaintiff's request to reopen expert discovery before a retrial, finding that no "manifest injustice would result to [plaintiff] in the absence of" the requested new discovery.  *Id.* at *2.  As the court explained, a retrial "is not meant to provide the plaintiff with an opportunity to improve his or her case" and therefore "should not involve the addition of new issues, evidence or witnesses."  *Id.* at *1.  So too here.  Plaintiffs are entitled to a retrial, but they are not

entitled to a second bite at the expert discovery apple. *See, e.g.*, *Cleveland*, 985 F. 2d at 1449–50 ("realiz[ing] there may be a better way to try a case the second time around" does not entitle a party to reopen discovery); *Total Containment, Inc. v. Dayco Products Inc.*, 177 F. Supp. 2d 332, 339 (E.D. Pa. 2001) ("[P]laintiff omits evidence necessary to sustain its damage award at its peril."); *Hammonds v. Greyhound Bus Co.*, 2017 WL 10545393, at *5 (C.D. Cal. Apr. 19, 2017) ("A party's regret over an 'unwise tactical choice' 'not to attempt to obtain the requested material prior to the first trial, only to now realize that this was a 'mistake,'' is not the kind of 'manifest injustice' that Rule 16(e) was designed to remedy." (quoting *Beene v. Ford Motor Co.*, 2011 WL 765982, at *2 (D. Colo. Feb. 25, 2011))).  For example, in *Total Containment*, the court precluded plaintiff from introducing evidence regarding a theory that plaintiff had "entirely neglected" to pursue in the first trial and, instead, limited discovery to post-trial events. 177 F. Supp. 2d at 339.

This is true under Rule's 16(b)'s good cause standard as well.  For example, in *United States v. Sci. Applications Int'l Corp.*, 301 F.R.D. 1, 3–4 (D.D.C. 2013), the court found that the moving party's request to reopen discovery as to issues from "before the [prior] close of discovery" failed to meet the "good cause" standard when the "need for evidence" on those issues "should have been apparent from the outset of the litigation" and the parties had ample time to conduct the discovery at issue during the previously allotted time period.

The Court should reach the same conclusion here and deny Plaintiffs' attempt to shore up their experts' testimony with opinions that they could have disclosed previously but did not.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to serve Dr. Mason's and Dr. Dharan's supplemental reports should be denied.

Dated: March 10, 2023                    Respectfully submitted,

                                        /s/ Asim Varma
Asim Varma (D.C. Bar # 426364)
Jonathan Stern (D.C. Bar # 375713)
David B. Bergman (D.C. Bar # 435392)
Ian S. Hoffman (D.C. Bar # 983419)
R. Stanton Jones (D.C. Bar # 987088)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave. NW
Washington, DC 20001
(202) 942-5000
Asim.Varma@arnoldporter.com
Jonathan.Stern@arnoldporter.com
David.Bergman@arnoldporter.com
Ian.Hoffman@arnoldporter.com
Stanton.Jones@arnoldporter.com

*Attorneys for Defendant Federal Housing*
*Finance Agency*

| | |
|---|---|
|  /s/ Michael J. Ciatti |  /s/ Meaghan VerGow |
| Michael J. Ciatti (D.C. Bar #467177) | Meaghan VerGow (D.C. Bar # 977165) |
| KING &SPALDING LLP | O'MELVENY &MYERS LLP |
| 1700 Pennsylvania Ave. NW | 1625 Eye Street NW |
| Washington, DC 20006 | Washington, DC 20006 |
| Tel: (202) 626-5508 | Tel: (202) 383-5300 |
| Fax: (202) 626-3737 | Fax: (202) 383-5414 |
| mciatti@kslaw.com | mvergow@omm.com |
| | |
| *Attorney for the Federal Home Loan* | *Attorney for the Federal National Mortgage* |
| *Mortgage Corp.* | *Association* |