# EXHIBIT A

Page 1

```
 1              UNITED STATES DISTRICT COURT
                    DISTRICT OF COLUMBIA
 2

    - - - - - - - - - - - - - -x
 3   In re Fannie                :
     Mae/Freddie Mac Senior       :
 4   Preferred Stock              :
     Purchase Agreement           :  Misc Action No.
 5   Class Action                 :  13-mc-1288 (RCL)
     Litigations                  :
 6                                :
     THIS DOCUMENT RELATES        :
 7   TO ALL CASES.                :
    - - - - - - - - - - - - - -x
 8
 9
10
11
12                           - - -
13              Wednesday, April 6, 2022
14                           - - -
15     Confidential and Subject to Protective Order
16
17
18
19  Remote Zoom videotaped deposition of BALA
20  DHARAN, Ph.D., beginning at 9:33 a.m., before
21  Christina S. Hotsko, RPR, CRR, when were present on
22  behalf of the respective parties:
```

```
 1            A P P E A R A N C E S  (Via Zoom)
 2   On behalf of Plaintiffs:
        RICHARD D. GLUCK, ESQUIRE
 3      Bernstein Litowitz Berger & Grossman, LLP
        2121 Avenue of the Stars, Suite 2575
 4      Los Angeles, California 90067
        (858) 720-3194
 5      rich.gluck@blbglaw.com
 6      JOHN C. KAIRIS
        Grant & Eisenhofer, PA
 7      123 Justison Street, Seventh Floor
        Wilmington, Delaware 19801
 8      (302) 622-7160
        jkairis@gelaw.com
 9
10   On behalf of FHFA and the Defendants:
        DAVID B. BERGMAN, ESQUIRE
11      ASIM VARMA, ESQUIRE
        JONATHAN L. STERN, ESQUIRE
12      SETH ENGEL, ESQUIRE
        Arnold & Porter Kaye Scholer, LLP
13      601 Massachusetts Avenue, Northwest
        Washington, DC 20001-3743
14      (202) 942-5180
        david.bergman@arnoldporter.com
15
16   On behalf of Freddie Mac Defendants:
        TAYLOR T. LANKFORD, ESQUIRE
17      King & Spalding, LLP
        1700 Pennsylvania Avenue, Northwest Suite 200
18      Washington, D.C. 20006
        (202) 626-5514
19      tlankford@kslaw.com
20
21
22
```

Page 3

1      A P P E A R A N C E S   (Continued)
2  On behalf of Fannie Mae Defendants:
       MAXWELL E. LOOS, ESQUIRE
3      O'Melveny & Myers, LLP
       1625 Eye Street, Northwest
4      Washington, D.C. 20006
       (202) 383-5340
5      mloos@omm.com
6
   On behalf of the FHFA Defendants:
7      MICHAEL SITCOV, ESQUIRE
       Federal Housing Finance Agency
8      400 Seventh Street, Southwest, Eighth Floor
       Washington, D.C. 20219
9      michael.sitcov@fhfa.gov
10
   Also Present:
11     Scott Forman, Video Technician
       Michael Barry
12     Faith Fazilet
       Sam Lynch
13
14
15
16
17
18
19
20
21
22

1      THE WITNESS:  I think this is -- you're
2 really asking the same question in a different
3 way.  Have I done this type of analysis comparing
4 payment-in-kind versus paying in cash?  But that's
5 not the way management or FHFA or Treasury, any of
6 them, approached payment-in-kind.
7      Payment-in-kind is really like a safety
8 valve that I'm describing here as an alternative,
9 meaning in those quarters where the net worth is
10 not adequate to pay dividends without running into
11 negative net worth, this alternative is present
12 and available in the existing agreements.  And so
13 it makes sense for Dr. Attari to look at that
14 alternative in evaluating the question that he was
15 asked.
16 BY MR. BERGMAN:
17      Q.  Do you have an opinion whether
18 payment-in-kind was better than the net worth
19 sweep for FHFA?
20      MR. GLUCK:  Object to the form.  Asked
21 and answered.  Beyond the scope.
22      THE WITNESS:  Yeah, I have not done the

1  analysis of which is better option independent of
2  all other contexts.  So I did not need to do that
3  analysis given what I was working on, which is, is
4  the third amendment even reasonably necessary?
5       But for Dr. Attari's question, it becomes
6  useful and, in fact, necessary to look at
7  alternatives available to management in the
8  context of third amendment.
9  BY MR. BERGMAN:
10     Q.  Do you have an opinion whether FHFA could
11 have concluded that it was better for the public
12 interest for the enterprises to pay circular
13 dividends rather than payment-in-kind dividends?
14        MR. GLUCK:  Object to the form.  It's an
15 incomplete hypothetical.  It's vague and
16 ambiguous.  It calls for speculation.
17        THE WITNESS:  Can you repeat this
18 question or can the reporter repeat the question?
19        MR. BERGMAN:  Yeah.  Madam reporter,
20 would you mind.
21        (The reporter read the record as
22        requested.)

Page 177

1  BY MR. BERGMAN:
2      Q.  Do you believe that the arrangement that
3  you describe in paragraph 34 -- the 2019 letter
4  agreement, you call it -- do you believe that that
5  arrangement is preferable to the third amendment?
6          MR. GLUCK:  Object to the form.  Beyond
7  the scope.
8          THE WITNESS:  Again, it's -- my belief
9  about which is preferable is not the scope of my
10 analysis here.
11         What I state here is that Dr. Attari did
12 not consider this alternative in his analysis.
13 That's really what my point here in this section
14 is.  It's not whether I believe that this is
15 better.  That's the kind of analysis that he
16 should have done.  He didn't do.
17         And my last sentence in that paragraph
18 says that "There is no reason this same method
19 would not have served the goals claimed by
20 Dr. Attari as effectively in 2012 as the net worth
21 sweep."
22         But that's the level of scope of my

1   analysis on that.
2   BY MR. BERGMAN:
3       Q.  So do you have an opinion on whether the
4   2019 letter agreement would have been better for
5   the public than the net worth sweep?
6           MR. GLUCK:  Object to the form.  Beyond
7   the scope.
8           THE WITNESS:  Well, that's the type of
9   analysis Dr. Attari failed to do.  That's my point
10  here, that he didn't do that.
11  BY MR. BERGMAN:
12      Q.  And I'm just asking, did you do that
13  analysis?
14      A.  I already said I did not do a comparative
15  analysis of these alternatives because that's
16  beyond the scope.  The only reason why it's beyond
17  the scope is that I had already concluded that the
18  net worth sweep was not necessary, that there was
19  no problem that needed to be solved in an
20  imminent, urgent way, as I described in my first
21  report.  So I did not need to pursue these
22  alternatives.

Page 365

1  Thank you.
2   FURTHER EXAMINATION BY COUNSEL FOR DEFENDANT FHFA
3  BY MR. BERGMAN:
4      Q.  Quick question for you, Dr. Dharan:  Have
5  you spoken with David Benson at all?
6      A.  No.
7      Q.  Okay.  Thank you.
8          MR. BERGMAN:  Nothing further.
9          MR. GLUCK:  Thank you for your time,
10 Dr. Dharan.
11         THE WITNESS:  Thank you.
12         VIDEO TECHNICIAN:  Are we concluded?
13         MR. BERGMAN:  Yes, we are.
14         VIDEO TECHNICIAN:  All right.  Stand by,
15 please.
16         This marks the end of the deposition.
17 We're going off the record.  The time is 6:03 p.m.
18         (Whereupon, at 6:03 p.m., the
19         confidential remote videotaped deposition
20         of BALA DHARAN, Ph.D., was concluded.)
21
22