**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BERKLEY INSURANCE CO., *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>FEDERAL HOUSING FINANCE AGENCY, *et al.*,<br><br>        Defendants. | Civil No. 13-1053 (RCL) |
| In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations<br><br>_____<br><br>This document relates to:<br>ALL CASES | Miscellaneous No. 13-1288 (RCL) |

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO SERVE SUPPLEMENTAL EXPERT REPORTS

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 3

    I.    Defendants Misapply the Relevant Legal Standards Applicable To This
        Factual Context. ......................................................................................... 3

    II.   Defendants Falsely Portray the Substance and Purpose of Dr. Mason's
        Supplemental Report and Ignore the Import of Their Counsel's Questions
        and Argument at Trial. ............................................................................. 10

        A.    Defendants Try to Distract the Court from the Fact That Dr.
              Mason's Supplement Addresses Misleading Questions and
              Arguments They Made at Trial. ............................................... 11

        B.    Dr. Mason's Supplemental Report Is Limited to Rebutting
              Defendants' Misleading Argument and Supporting His $1.6 Billion
              Damage Number. ..................................................................... 12

    III.  Dr. Dharan's Supplementation Is Proper Because It Supports Previously
        Offered Opinions, Rebuts New Opinions and Argument Offered By
        Defendants at Trial On Those Subjects, and Does Not Prejudice
        Defendants. .............................................................................................. 16

        A.    The Supplemental Report's Analysis of the Payment-in-Kind
              Alternative Reflects Opinions Offered at Trial and Responds to
              New Opinions Offered at Trial by Dr. Attari on the Subject.................... 18

        B.    The Supplemental Analysis of Dr. Attari's Event Study Responds
              to Dr. Attari's Testimony at Trial on the Event Study, Which Itself
              Contradicted What Defendants Told the Court Dr. Attari Would
              Say............................................................................................ 21

        C.    Defendants Offer No Basis for Opposing Dr. Dharan's
              Supplementation of His Opinions Concerning the Lack of Need for
              the Net Worth Sweep. .............................................................. 22

        D.    Dr. Dharan's Supplementation of His Analysis of Non-Cash
              Adjustments Falls Well Within the Scope of Prior Opinions and
              Rebuts Testimony and Closing Argument Offered at Trial by
              Defendants. ............................................................................. 23

CONCLUSION........................................................................................................ 24

i

# TABLE OF AUTHORITIES

## Cases

*Allied Erecting & Dismantling Co., Inc. v. United States Steel Corp.*,
  2021 WL 3847782 (N.D. Ohio Aug. 27, 2021) ................................................................. 9

*Barnes v. Dist. of Columbia*,
  289 F.R.D. 1 (D.D.C. 2012)............................................................................... 7, 8, 10

*Bazarian Int'l Fin. Assocs., LLC v. Desarrollos Aerohotelco, C.A.*,
  315 F. Supp. 3d 101 (D.D.C. 2018) .................................................................... 1, 4

*Bio Med Techs. Corp. v. Sorin CRM USA, Inc.*,
  2015 WL 7294791 (D. Colo. Nov. 19, 2015) ...................................................... 10

*Campbell v. United States*,
  470 F. App'x 153 (4th Cir. 2012) ........................................................................ 9

*Capitol Justice LLC v. Wachovia Bank, N.A.*,
  706 F. Supp. 2d 34 (D.D.C. 2009) ................................................................... 6, 17

*Carballido v. Target Corp.*,
  2021 WL 1376997 (D. Colo. Apr. 12, 2021) ....................................................... 9

*Cleveland v. Piper Aircraft Corp.*,
  985 F.2d 1438 (10th Cir. 1993) ........................................................................... 9

*Dag Enterprises, Inc. v. Exxon Mobil Corp.*,
  226 F.R.D. 95 (D.D.C. 2005)............................................................................... 9

*Eshelman v. Puma Biotechnology, Inc.*,
  2022 WL 1597819 (E.D.N.C. May 19, 2022) ..................................................... 9

*Est. of W. v. Domina L. Grp.*,
  2019 WL 10888714 (S.D. Iowa May 21, 2019), *aff'd*, 981 F.3d 652 (8th Cir. 2020).............. 4

*Fairholme Funds, Inc. v. Federal Housing Finance Agency*,
  2018 WL 4680197 (D.D.C. Sept. 28, 2018) ...................................................... 15

*Fairholme Funds, Inc. v. Federal Housing Finance Agency*,
  2022 WL 11110548 (D.D.C. Oct. 19, 2022) ...................................................... 15

*Hajjar-Nejad v. George Washington Univ.*,
  2012 WL 13168550 (D.D.C. Nov. 13, 2012) ..................................................... 9

*Hammonds v. Greyhound Bus Co.*,
  2017 WL 10545393 (C.D. Cal. Apr. 19, 2017) .................................................. 9

*Heller v. Dist. of Columbia*,
  952 F. Supp. 2d 133 (D.D.C. 2013) ........................................................ 4

*Hill v. Reederei F. Laeisz G.M.B.H., Rostock*,
  435 F.3d 404 (3d Cir. 2006) .............................................................. 1, 4

*Jackson v. Teamsters Loc. Union 922*,
  312 F.R.D. 235 (D.D.C. 2015) ............................................................. 9

*Martin's Herend Imports, Inc. v. Diamond & Gem Trading*,
  195 F.3d 765 (5th Cir. 1999) ............................................................. 9

*MyGallons LLC v. U.S. Bancorp*,
  2013 WL 12291484 (E.D.N.C. Aug. 9, 2013) .............................................. 9

*Nnadili v. Chevron U.S.A., Inc.*,
  2005 WL 6271043 (D.D.C. Aug. 11, 2005) .............................................. 5, 6

*Palmer v. Asarco Inc.*,
  2007 WL 2254343 (N.D. Okla. Aug. 3, 2007) ............................................ 9

*PharMerica Mountain LLC v. Arizona Rehab Campus LLC*,
  2022 WL 1689370 (D. Ariz. May 26, 2022) .............................................. 9

*Pogue v. Diabetes Treatment Ctrs. of Am.*,
  576 F. Supp. 2d 128 (D.D.C. 2008) .................................................... 10

*Richardson v. Korson*,
  905 F. Supp. 2d 193 (D.D.C. 2012) ..................................................... 6

*Rodgers v. Beechcraft Corp.*,
  759 F. App'x 646 (10th Cir. 2018) ...................................................... 9

*SD3, LLC v. Rea*,
  71 F. Supp. 3d 189 (D.D.C. 2014) ................................................. passim

*St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*,
  2007 WL 1589495 (D.D.C. June 1, 2007) ................................................ 9

*Steadfast Ins. Co. v. Auto Mktg. Network, Inc.*,
  2003 WL 22902604 (N.D. Ill. Dec. 8, 2003) ............................................. 9

*Thoroughman v. Wis. Cent., Ltd.*,
  2020 WL 6781729 (W.D. Wis. Nov. 3, 2020) ............................................. 9

*Total Containment, Inc. v. Dayco Products Inc.*,
  177 F. Supp. 2d 332 (E.D. Pa. 2001) ................................................... 9

*United States v. Gatling*,
    96 F.3d 1511 (D.C. Cir. 1996) ......................................................................................... 17

*United States v. Phillip Morris USA, Inc.*,
    2022 WL 1101730 (D.D.C. April 13, 2022) ...................................................................... 17

*United States v. Sci. Applications Int'l Corp.*,
    301 F.R.D. 1 (D.D.C. 2013) .............................................................................................. 10

*United States v. Science Applications Int'l Corp.*,
    301 F.R.D. 1 (D.D.C. 2013) ................................................................................................ 8

*Washington v. Kellwood Co.*,
    2016 WL 5680374 (S.D.N.Y. Sept. 30, 2016) ................................................................... 9

## **Rules**

Fed. R. Civ. P. 16 ................................................................................................... passim

Fed. R. Civ. P. 26 ................................................................................................... passim

Fed. R. Civ. P. 37 ................................................................................................... passim

Fed. R. Evid. 703 .............................................................................................................. 4

## **Treatises**

Wright & Miller, *Federal Practice and Procedure*
    § 2504 (3d ed. 2002) .......................................................................................................... 9

## INTRODUCTION

Plaintiffs have provided Defendants with supplemental reports from two of their experts, Drs. Bala Dharan and Joseph Mason.  Each of the points made in these reports responds to evidence, argument, or expert testimony presented by Defendants at the first trial.  Each of the points relates solely to the opinions given by these experts at trial, and none of them purport to give new or different opinions.  Dr. Dharan addressed the topics in the supplemental report at trial without objection from Defendants.  The supplement unpacks his analysis in order to respond to what Defendants presented at trial.  Dr. Mason's supplemental report addresses a misleading question and line of argument presented by Defendants at trial that Dr. Mason was prevented from addressing, and that he now addresses in a short and narrow supplement.

In their opposition, Defendants argue that the only way Plaintiffs' experts are permitted to supplement their reports is if they can meet the "incomplete or incorrect" standard under Rule 26(e), which they say requires Plaintiffs to show an error in a prior report or the emergence of new, previously unavailable information.  This restrictive approach to expert disclosures does not accord with the case law and the rules as applied to contexts similar to this one.

First, as shown by the testimony of both Dr. Dharan and Defendants' expert Dr. Attari at trial, experts are routinely permitted to testify at trial in response to evidence, argument, or expert testimony presented by the other side at that trial.  *See, e.g.*, *Hill v. Reederei F. Laeisz G.M.B.H., Rostock*, 435 F.3d 404, 423 (3d Cir. 2006) (permitting expert testimony "elicited in rebuttal of" an opposing expert's testimony as "thoroughly in accord with Federal Rule of Evidence 703.").  This is part and parcel of the established proposition that Rule 26(a)(2)(B) "contemplates that the expert will supplement, elaborate upon, and explain his report in his oral testimony."  *Bazarian Int'l Fin. Assocs., LLC v. Desarrollos Aerohotelco, C.A.*, 315 F. Supp. 3d 101, 114 (D.D.C. 2018) (cleaned up).  The points being made in the supplements offered by Drs. Dharan and Mason go no further

than that here.  It would be especially perverse to preclude Dr. Dharan from giving the same testimony he gave at the first trial just because he has now provided more support for it in his supplemental disclosure.  In their opposition, Defendants fail to come to grips with the fact that Plaintiffs' experts are simply addressing points Defendants or their experts made at trial that are misleading or inaccurate.

Second, as shown below, Plaintiffs satisfy the standard for supplementation under Rule 26(e).  Particularly in the context of a retrial, courts have permitted experts to supplement their disclosures to address the evidence presented at the first trial and to ensure as complete a disclosure as possible.

Third, even when Rule 26(e) may not be technically satisfied, many courts, including this one, have relied on the standard for exclusion under Rule 37, and have held that where the delayed disclosure is either "substantially justified" or "harmless" to the opposing party, it should be permitted.  *See, e.g.*, *SD3, LLC v. Rea*, 71 F. Supp. 3d 189, 195 (D.D.C. 2014) (Lamberth, J.). Here, both things are true.  In particular, there is no conceivable prejudice to Defendants in allowing this disclosure, which was made in abundance of caution to ensure full transparency. Defendants have not even attempted to show prejudice, and for that reason alone the motion should be granted.

While not necessary to show here, Plaintiffs would also satisfy either the "good cause" or the "manifest injustice" standard if they needed to do so.  Given that the supplements principally respond to what Defendants did at trial, Plaintiffs have "good cause" for presenting them now. Further, it would be a manifest injustice to prevent Plaintiffs' experts from testifying as to the points made in these two supplements.  The points are inextricably part of the testimony and opinions they previously disclosed, and are provided in the interest of full transparency to address

2

misleading or inaccurate points made by Defendants or their experts at trial.  Plaintiffs ask the Court to address each point in the supplements one by one, to recognize how the point relates to prior testimony and to what Defendants and their expert said at trial, and to weigh the interests of justice in allowing the testimony against the total lack of prejudice to Defendants.  Plaintiffs' motion should be granted.

## ARGUMENT

### I.   Defendants Misapply the Relevant Legal Standards Applicable To This Factual Context.

Plaintiffs' request for supplementation arises in the unique procedural posture of a retrial and with the benefit of specific testimony, questioning, and argument from the first trial that bears directly on the supplementation request and on opinions previously offered by Drs. Dharan and Mason.  The supplemental reports do not "offer entirely new opinions" or "fundamentally change the opinions already offered," but instead "merely supplement" the experts' previous reports.  *SD3*, 71 F. Supp. 3d at 195.  As stated previously, the analysis supports opinions already offered and other than identifying additional materials relied on, could have been offered without the need for a supplemental report under well-established principles permitting rebuttal of evidence and testimony offered during trial.  Plaintiffs offer the supplemental reports "to leave no doubt as to the anticipated scope" of Dr. Mason and Dr. Dharan's upcoming testimony "and to ensure that Defendants have ample notice and opportunity to respond."  ECF No. 291 ("Mot.") at 2–3.

Rather than simply take advantage of the months of advance notice to depose Plaintiffs' experts and offer any rebuttal report on the narrow issues addressed, Defendants oppose supplementation without any basis for doing so.  They do not identify any new opinions that are being offered, nor do they claim that they would be prejudiced.  Instead, their argument is that no matter how harmless, Plaintiffs' experts may not supplement their prior reports because those

3

reports were not "incomplete" or "incorrect," because the additional material relied on was available previously, and because Plaintiffs do not meet Rule 16's "good cause" or "manifest injustice" standard.  These arguments are wrong as a matter of law and fact.

Rule 26(a)(2)(B) itself allows for supplementation.  Courts within this District recognize that Rule 26(a)(2)(B) "does not limit an expert's testimony simply to reading his report, but rather contemplates that the expert will supplement, elaborate upon, and explain his report in his oral testimony." *Bazarian Int'l Fin. Assocs., LLC*, 315 F. Supp. 3d at 114 (cleaned up).  That is because an "expert report" is "not the end of the road, but a means of providing adequate notice to the other side to enable it to challenge the expert's opinions and prepare to put on expert testimony of its own." *Heller v. Dist. of Columbia*, 952 F. Supp. 2d 133, 139 (D.D.C. 2013); *see also Est. of W. v. Domina L. Grp.*, 2019 WL 10888714, at *11 (S.D. Iowa May 21, 2019), *aff'd*, 981 F.3d 652 (8th Cir. 2020) (collecting cases across "federal circuit courts" clarifying that Rule 26 allows an "expert testifying at trial" to "supplement, elaborate upon, [and] explain . . . his report").

Further, experts may testify to opinions based on any "facts or data" that "experts in the particular field would reasonably rely" on, including evidence "***present[ed] at the trial***."  Fed. R. Evid. 703 & advisory committee's note (emphasis added).  A trial court thus may properly admit an "expert opinion offered in response to prior trial testimony" even where, unlike here, the expert offers an entirely new opinion.  *Hill*, 435 F.3d at 423 (holding that even though an expert's report did "not contain the other opinion" that the expert "offered at trial," the opinion was proper because it was "elicited in rebuttal of" a testifying witness's "account of the accident").  "Such a rebuttal is thoroughly in accord with Federal Rule of Evidence 703." *Id.*

Two aspects of the supplemental reports justify granting the motion under this standard. First, they do not offer new opinions, but merely provide additional support for previously

4

articulated and disclosed opinions.  The information contained in each supplemental report is not "so substantially different from the" initial reports that it "cannot reasonably be said to supplement the initial expert report" under Rule 26(e).  *Nnadili v. Chevron U.S.A., Inc.*, 2005 WL 6271043, at *2 (D.D.C. Aug. 11, 2005) (permitting the plaintiff to offer a supplemental expert report under Rule 26(e) advancing "a *newly developed* meta-analysis") (emphasis added).

Second, the reports comment on testimony and argument offered by Defendants at trial. They therefore functionally equate to testimony offered at trial except that they provide far *more notice* and far *more opportunity* to Defendants than they would have had if the testimony had merely been offered in rebuttal at trial.

Moreover, and contrary to Defendants' arguments in the Opposition, Plaintiffs' request to serve supplemental expert reports is not limited to Rule 26(e).[1]  Thus, even if the supplemental reports do not meet Rule 26(e), they may be served under Rule 37 because Defendants will not be prejudiced and supplementation is substantially justified.  *SD3*, 71 F. Supp. 3d at 194–95.  As a court within this District recognized, "Technical compliance" with Rule 26(e)'s limitations "has not always proved fatal, since courts have instead applied a more flexible approach, focusing on

---

[1] Indeed, the introduction to the Motion stated explicitly that:

> Case law holds that experts may supplement their reports to support their prior opinions so long as there is no prejudice to the other side. That includes allowing supplemental expert reports after a mistrial and before a retrial—indeed, while not requested here, courts allow parties to present entirely new experts and new expert opinions before a retrial. Here, the supplemental reports merely address facts and issues underlying the same opinions already provided at the first trial. Indeed, Plaintiffs believe the expert testimony disclosed in these supplemental reports would be admissible at trial even if no supplemental reports were provided.

Mot. at 1 (citing cases at pages 2–3).

the prejudicial effect of the late disclosure." *Richardson v. Korson*, 905 F. Supp. 2d 193, 199 (D.D.C. 2012).  Factors considered by this Court in deciding whether supplementation is harmless include whether (i) the "report is submitted well in advance of trial, leaving the opposing party time to adjust its trial preparation in light of the new information provided regarding the expert's opinion;" (ii) "whether discovery can be briefly reopened to allow the opposing party to depose the expert in response to the supplement;" and (iii) "whether the proposed supplement would offer entirely new opinions or fundamentally change the opinions already offered or would merely supplement and fill in the gaps of a previous disclosure," and "therefore does not blindside defendants with new information."  *SD3*, 71 F. Supp. 3d at 194–95.  As shown in our opening motion and below in Sections II and III, the supplements offered by Plaintiffs' experts satisfy each of these factors.

In the Motion, Plaintiffs cited multiple decisions assessing the supplementation of existing expert reports under the Rule 37 standard of harmlessness or substantial justification, not Rule 16. *See, e.g.*, *SD3*, 71 F. Supp. 3d at 194–95 (assessing supplementation request under Rule 26(e) and Rule 37(c)); *Capitol Justice LLC v. Wachovia Bank, N.A.*, 706 F. Supp. 2d 34, 38–40 (D.D.C. 2009) (same); *Richardson*, 905 F. Supp. 2d at 200 (same); *Nnadili*, 2005 WL 6271043, at **1–2 (same); *see also Dormu v. Dist. of Columbia,* 795 F. Supp. 2d at 28 n.16 (assessing supplement under Rule 26 and focusing on the harm caused by the supplemental disclosure).  Defendants have no answer.  Instead, despite Plaintiffs' citation to numerous decisions permitting supplementation where a party is not prejudiced, Defendants completely ignore the lack of prejudice in their Opposition—effectively conceding there is no prejudice here.

Further, each relevant Rule 37 factor identified by this Court is present.  First, Plaintiffs provided the supplemental reports to Defendants upon Defendants' request on February 10,

2023—over seven months prior to trial—and consistent with a briefing schedule approved by this Court.  ECF No. 282 at 3.  Second, despite seeking to preclude Plaintiffs from formally serving the supplemental reports, Defendants have requested to take their depositions within the next few weeks—well in advance of trial.[2]  Defendants thus will have a "fair opportunity to respond" to Plaintiffs' reports by deposing Plaintiffs' experts for trial purposes.  *Barnes v. Dist. of Columbia*, 289 F.R.D. 1, 13 (D.D.C. 2012) (Lamberth, J.); *SD3*, 71 F. Supp. 3d at 194 (finding that the defendants will have "ample opportunity to internalize the new information provided by [the expert] into its trial strategy").  The supplemental reports "are not a substantial alteration" of the experts' "prior opinions that would blindside" Defendants with new information.  *SD3*, 71 F. Supp. 3d at 195.  Instead, Plaintiffs' experts prepared the supplemental reports in response to specific defense testimony, questioning, and argument from the first trial (as of October 2022), thus foreclosing any claim of surprise.  *See* Mot. at 2–3 (citing *Dormu*, 795 F. Supp. 2d at 28 n.16 (holding no unfair surprise where the "supplemental affidavit sets forth references, not new opinions"); *White v. McDermott*, 2010 WL 4876025, at *2 (D. Conn. Nov. 19, 2010) (finding no prejudice where the defendant was on notice of the testimony the plaintiff sought to introduce during the first trial)).

Finally, even assuming the standard of Rule 16 must be met, the requested supplementation readily satisfies it whether the standard of "good cause" or "manifest injustice" is applied.[3]  As this Court has recognized, Rule 16 gives "the Court considerable discretion" in deciding whether

---

[2]  Plaintiffs have responded by agreeing to make Drs. Dharan and Mason available for deposition.

[3]  While unnecessary to reach the issue, the "good cause" standard is the correct one to apply.  "Manifest injustice" applies where a pretrial order is modified.  The pretrial order for the retrial expressly contemplated the motion to supplement, and all parties agree that it was appropriate to establish a new pretrial order for the retrial, replacing the one that governed the original trial.  *See* ECF No. 292.

good cause exists to reopen and extend discovery. *Barnes*, 289 F.R.D. at 14. As explained above and *infra*, the requested supplementation responds to various *new* opinions offered by Dr. Attari at trial, other testimony offered by Defendants' fact witnesses at trial, and inaccurate closing argument and misleading cross-examination offered by Defendants' counsel. The cause of justice would be thwarted by allowing Defendants to offer such new arguments and evidence while using transparent procedural gamesmanship to shield themselves from the evidence that refutes it, especially since which they are being given ample opportunity to respond and seek to depose Plaintiffs' experts on the very reports they seek to exclude.

Further, even without the new opinions and argument offered by Defendants, the factors considered by courts in this District as to whether to reopen discovery overlap with the substantial justification standard under Rule 37: "(1) whether trial is imminent; (2) whether the request is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court; (5) the foreseeability of the need for additional discovery in light of the time allotted by the district court; and (6) the likelihood that discovery will lead to relevant evidence." *United States v. Science Applications Int'l Corp.*, 301 F.R.D. 1, 3 (D.D.C. 2013).

Here, trial is not imminent, and Defendants have not asserted any prejudice. Plaintiffs submitted their motion to file supplemental expert reports within the guidelines established by the Court. As Plaintiffs noted in the Motion, the requested supplementation is narrow in scope and consistent with the existing expert opinions, Federal Rule of Evidence 703, and proper rebuttal evidence. Motion at 2–4, 7–8. Plaintiffs diligently pursued discovery through the first trial, and the supplemental expert reports are narrowly tailored to address testimony and argument during the presentation of evidence at the first trial, and subsequent to the declaration of a mistrial. *See*

*generally* 9B Wright & Miller, *Federal Practice and Procedure* § 2504 (3d ed. 2002) (indicating

preference "to avoid a hung jury").  Finally, the parties have agreed that Defendants may depose

Plaintiffs' experts well in advance of trial on the information presented in the narrow supplements.

Cases that Defendants cited are inapposite.  Those that actually involved the exclusion of

supplemental expert testimony involved some combination of new opinions or experts, unfair

surprise, and the associated potential for unfair prejudice to the other party.[4]  At the same time,

---

[4] *See Palmer v. Asarco Inc.*, 2007 WL 2254343, at *3 (N.D. Okla. Aug. 3, 2007) ("essentially a
new expert report with new opinions" that would "likely disrupt the trial date and cause significant
prejudice to defendants"); *Thoroughman v. Wis. Cent., Ltd.*, 2020 WL 6781729, at *1–2 (W.D.
Wis. Nov. 3, 2020) (new "study and analysis"); *Rodgers v. Beechcraft Corp.*, 759 F. App'x 646,
663 (10th Cir. 2018) ("new opinions," including "a novel argument"); *Jackson v. Teamsters Loc.
Union 922*, 312 F.R.D. 235, 237 (D.D.C. 2015) (new damages calculation; court had already
allowed submission of a third and fourth expert report after expert's initial deposition, permitted
additional deposition on those reports, and ordered that no further reports would be accepted);
*Hajjar-Nejad v. George Washington Univ.*, 2012 WL 13168550, at *2 (D.D.C. Nov. 13, 2012)
(submission of additional rebuttal report outside of deadlines set by scheduling order without
requesting leave of court and with no intervening trial and thus with no assertion that the expert
was commenting on trial testimony); *PharMerica Mountain LLC v. Arizona Rehab Campus LLC*,
2022 WL 1689370, at *1 (D. Ariz. May 26, 2022) ("at least six new opinions not contained in the
original report"); *Carballido v. Target Corp.*, 2021 WL 1376997, at *2 (D. Colo. Apr. 12, 2021)
(sixth supplemental expert disclosure; introduced new sur-rebuttal evidence); *Campbell v. United
States*, 470 F. App'x 153, 157 (4th Cir. 2012) (plaintiff failed to designate an expert witness;
supplement attempted to "recast" opinions to comply with Rule 26(a) initial disclosure
requirements); *St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*, 2007 WL 1589495,
at *5 (D.D.C. June 1, 2007) (original expert report never filed; defendant attempted to pass off
initial report as "supplement"); *Dag Enterprises, Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 109
(D.D.C. 2005) (plaintiffs "basically 'substituting another report' for the ones that they already have
submitted" under a "totally new theory"); *Total Containment, Inc. v. Dayco Products Inc.*, 177 F.
Supp. 2d 332, 335, 9 (E.D. Pa. 2001) (new damages theory based on documents not produced
during discovery); *Steadfast Ins. Co. v. Auto Mktg. Network, Inc.*, 2003 WL 22902604, at *2 (N.D.
Ill. Dec. 8, 2003) (new expert witness); *Cleveland v. Piper Aircraft Corp.*, 985 F.2d 1438, 1449–
50 (10th Cir. 1993) (same); *Washington v. Kellwood Co.*, 2016 WL 5680374, at *7–8 (S.D.N.Y.
Sept. 30, 2016), *aff'd*, 714 F. App'x 35 (2d Cir. 2017) (same); *Allied Erecting & Dismantling Co.,
Inc. v. United States Steel Corp.*, 2021 WL 3847782, at *4 (N.D. Ohio Aug. 27, 2021) (same);
*MyGallons LLC v. U.S. Bancorp*, 2013 WL 12291484, at *1 (E.D.N.C. Aug. 9, 2013) (same);
*Hammonds v. Greyhound Bus Co.*, 2017 WL 10545393, at *5–*9 (C.D. Cal. Apr. 19, 2017)
(same); *Eshelman v. Puma Biotechnology, Inc.*, 2022 WL 1597819, at *3 (E.D.N.C. May 19, 2022)
(granting new expert); *Martin's Herend Imports, Inc. v. Diamond & Gem Trading*, 195 F.3d 765,
775 (5th Cir. 1999) (new declarations of seven witnesses); *U.S. ex rel. Pogue v. Diabetes*

Defendants misleadingly cite snippets from various decisions of this Court that allow supplemental expert testimony based on the absence of prejudice and thus support supplementation here. *See SD3*, 71 F. Supp. 3d at 194–95 (supplement admitted because any prejudice accruing due to late filing was minimized by ability to take deposition of expert before trial and fact that expert's opinions were not "substantial alteration" of prior opinions but instead merely provided "further support for his prior contentions"); *Barnes*, 289 F.R.D. at 13–17 (supplemental expert reports accepted under Rule 26; separate request to designate new experts denied under Rule 16); *see also Bio Med Techs. Corp. v. Sorin CRM USA, Inc.*, 2015 WL 7294791, at *5 (D. Colo. Nov. 19, 2015) (supplement admitted because untimeliness "substantially justified or harmless").

Guided by these principles, Plaintiffs address arguments as to each witness in turn.

## II. Defendants Falsely Portray the Substance and Purpose of Dr. Mason's Supplemental Report and Ignore the Import of Their Counsel's Questions and Argument at Trial.

Defendants oppose Dr. Mason's supplemental report by distorting its content and purpose—asserting that it merely offers the "same opinion" that "this Court repeatedly rejected during the first trial—that the alleged damages far exceed $1.6 billion." Def. Opp'n at 1. That is wrong. The supplemental report responds directly to Defendants' attempt at trial to suggest, without any support, that a post-Net Worth Sweep increase in the stock price somehow mitigated or eliminated the $1.6 billion in damages reflected in Dr. Attari's event study. Dr. Mason's rejection of that suggestion was necessarily implicit in his opinion that the event study showed that shareholders sustained $1.6 billion in damages. The supplemental report simply clarifies the opinion by making it explicit.

---

*Treatment Ctrs. of Am.*, 576 F. Supp. 2d 128, 133 (D.D.C. 2008) (Lamberth, J.) (request to reopen fact discovery for full deposition of fact witness); *United States v. Sci. Applications Int'l Corp.*, 301 F.R.D. 1, 3–5 (D.D.C. 2013) (permitting additional expert discovery on limited topics).

**A. Defendants Try to Distract the Court from the Fact That Dr. Mason's Supplement Addresses Misleading Questions and Arguments They Made at Trial.**

During their cross-examination of Dr. Mason at trial, defense counsel read a sentence from Dr. Attari's event study stating that the "Price of the common stock *recovered* in September 2012 and that of the junior preferred stocks *recovered* during October 2012," and then carefully asked Dr. Mason merely to confirm that this sentence was read correctly. Mot. at 9 (citing Trial Tr. 1524:1–:7). This was followed by two questions designed to emphasize that September 2012 was the month after the Net Worth Sweep and October was two months after. Trial Tr. 1524:11–:17.

At closing argument, Defendants' counsel argued that the $1.6 billion in damages had been fully recovered—i.e., that "shareholders didn't lose that one-day reduction in share price for 10 years, as plaintiffs claim. The share prices started to increase immediately in 2012." *Id.* at 2688:6–:8.

Defendants fail to address the fact that Dr. Mason's testimony is offered in direct response to these questions and this closing argument. While they try to take advantage of the fact that the Court sustained an objection to Plaintiffs' questioning of Dr. Mason on re-direct, Def. Opp'n at 5, they do not actually address the issue: i.e., Defendants made a manifestly misleading argument by insinuating that the $1.6 billion in harm caused by the Net Worth Sweep was remedied by later stock price changes, even though the Net Worth Sweep remained in effect and has continued to give 100% of all profits to Treasury. Dr. Mason would not have opined that the $1.6 billion represented a minimal harm to shareholder had he accepted this false argument, and he is entitled to explain why it is wrong. Because Defendants have no answer to this, they try to misrepresent what Dr. Mason's supplemental report actually says.

### B. Dr. Mason's Supplemental Report Is Limited to Rebutting Defendants' Misleading Argument and Supporting His $1.6 Billion Damage Number.

Defendants insinuate that Dr. Mason is somehow trying to "reverse course" and seek to give an opinion that damages are larger than $1.6 billion, or that damages of $1.6 billion are a "bargain." Def. Opp'n at 16-17. That is simply not what Dr. Mason's supplement does.

As stated in the first paragraph of Dr. Mason's supplement:

> While Defendants' counsel suggested in trial and at closing that share price fluctuations unrelated to the Net Worth Sweep ("NWS") mitigated damages later in 2012, there is no sound economic basis to support the notion that subsequent changes in the stock prices represented a "recovery" that would offset damages arising from the NWS.

ECF No. 291-2 ("Mason Suppl. Rpt.") ¶ 1. Dr. Mason explains that this suggestion makes no economic sense because the Net Worth Sweep took away any and all ability to benefit from future profits, and there were no subsequent events that mitigated its effects. *See id.* Section II(A). That is the entire substance of Section II(A) of the supplement. That Dr. Mason would have considered whether the harm caused by the NWS had been mitigated in rendering his opinion is wholly consistent with the nature of an event study, Dr. Mason's extensive experience,[5] and Dr. Mason's trial testimony (as summarized on pages 8–9 of the Motion) that he reviewed the entirety of the information and data connected to the event study—which necessarily included an assessment of the so-called "recovery" language set forth in the PowerPoint report.[6]   Notably, despite calling

---

[5] Dr. Mason has testified that he has served as an expert witness on more than fifty occasions, with "most" of his engagements involving "valuation and damages," including through the use of event studies. Trial Tr. 1496–97, 1500; *id.* at 1505–06 (rendering opinion based on his years of experience of performing event studies).

[6] Defendants' claim that *Hoffman v. Tonnemacher*, 2006 WL 3457201, at *1 (E.D. Cal. Nov. 30, 2006) "supports denial of Plaintiffs' motion" because the court "*denied* a separate request to expand the scope of witness testimony at the retrial," Def. Opp'n at 11, misreads the holding of that opinion. In *Hoffman*, the Court "excluded the testimony" of a proposed expert at the original trial because the plaintiffs failed to comply with Rule 26(a)(1)(A). *Id.* Unlike here, the expert never testified at trial (and never faced questions regarding the scope of her opinion); rather, the court found no basis to alter its previous ruling excluding the witness as a Rule 26 sanction. *Id.*

Dr. Attari in their case-in-chief, Defendants did not ask him a single question about the equity event study—which further confirms the accuracy of Dr. Mason's testimony and supplemental report and invalidates Defendants' argument that there was a "recovery" in the GSE stock price related to the NWS. Accordingly, changes "in GSE share prices identified as a 'recovery' by Defendants are unrelated to the NWS and thus irrelevant to the harm." *Id.* ¶¶ 11–12.

Section II(B) of Dr. Mason's supplement further addresses the suggestion of Defendants' counsel on cross-examination and in closing that the post-Net Worth Sweep stock price increases were a "recovery" that mitigated or eliminated the $1.6 billion in damages caused by the Net Worth Sweep. He merely explains that, had there been no Net Worth Sweep:

> the stock prices would have fluctuated on subsequent news after August 17, 2012 – beginning at their levels from August 16, 2012 (before the NWS) and *not* from the suppressed levels from after the NWS. Since the stock price increases after August 17, 2012 have nothing to do with the NWS, they cannot in any way mitigate or offset damages in this matter.

*Id.* ¶ 13.

Defendants ignore the opinions in Sections II(A) and (B). Accordingly, they offer no basis for disputing that they should be permitted.

The only word Defendants quote from Dr. Mason's supplement is "conservative," which appears in Section II(C) (the last section of the supplement). Defendants misrepresent the significance of this word by suggesting Dr. Mason is either trying to resurrect his opinion that damages should be at least $2.9 billion, or to opine that $1.6 billion in damages is a "bargain." First, Dr. Mason makes no effort to resurrect his opinion that damages should be the full share value of $2.9 billion, so any such insinuation is false.[7] Second, the colloquy to which Defendants

---

[7] Nor do Plaintiffs seek reconsideration of the Court's prior opinion precluding a damages opinion of $2.9 billion. *See* Mot. at 11 n.3. In its prior ruling, the Court found that Plaintiffs sought to "introduc[e] a *new model* to calculate the version of expectation damages that the Court allowed

cite regarding Plaintiffs not being permitted to argue that $1.6 billion was a "bargain" related to a motion made before the closing argument to preclude Plaintiffs from saying anything about the $33 billion invested by private preferred shareholders into Fannie Mae and Freddie Mac, in exchange for shares that received a total of $5 billion in dividends. Trial Tr. 2435:21–2436:21. During that argument, Plaintiffs' counsel agreed he would not suggest that the $33 billion invested by private preferred shareholders was a measure of damages or relevant to how damages would be measured. *Id.* at 2439:2–:5. The Court therefore allowed Plaintiffs to reference these investment numbers. *Id.* at 2440:14–:20. The discussion had nothing to do with Plaintiffs seeking a damages award exceeding $1.6 billion, or that figure being a "conservative" number.[8]

Indeed, Dr. Mason's reference to the $1.6 billion measure of damages as being "conservative" is entirely consistent with his existing opinion, as this Court expressly recognized

---

to proceed." *Fairholme Funds, Inc.*, 2022 WL 11110548, at *2. That ruling is inapposite here, where there is no "new model" or opinion contrary to the Court's summary judgment ruling limiting Dr. Mason's testimony to the $1.6 billion lost value theory of harm. Rather, Plaintiffs seek to supplement Dr. Mason's explanation relating to his *existing damages model* that is consistent with his preexisting opinion, corrects any perceived incompleteness of that preexisting opinion, and prevents Defendants from confusing the jury by misleading them as to the scope of Dr. Mason's opinion.

[8] There is no basis here for Defendants' claims that Plaintiffs will "reverse course" and seek a different measure of damages or argue that damages of $1.6 billion are a "bargain." Def. Opp'n at 16–17. Plaintiffs' counsel informed the jury in his opening statement that "we're going to ask for" a "judgment of $1.6 billion, with prejudgment interest." Trial Tr. 315:11–:13. Dr. Mason testified at trial that *the* measure of damages is $1.61 billion. *Id.* 151:24–1516:7. Likewise, Plaintiffs' counsel argued at closing that damages were $1.6 billion and prejudgment interest. *Id.* 2572:24-2575:9. Unless defense counsel opens the door (and absent leave of Court), Plaintiffs will introduce the same opinion and argument at the retrial—with the only difference being that Dr. Mason will explain why there was no "recovery" in the stock price to correct the misleading argument of defense counsel.

It is possible Plaintiffs will ask the Court to reconsider its prior ruling on Plaintiffs' desire to present reliance damages, or at least to clarify the reasons for precluding that presentation for purposes of appeal. However, that potential effort will not rely on anything in Dr. Mason's supplement, which obviously says nothing about reliance damages.

on multiple occasions.  *See, e.g.*, *Fairholme Funds, Inc. v. Federal Housing Finance Agency*, 2022 WL 11110548, at *2 (D.D.C. Oct. 19, 2022) ("Dr. Mason previously opined that a measure of expectation damages based on lost share value would total approximately $1.6 billion based on a 50 to 60 percent decline in value estimated by one of defendants' experts, although he cautioned that that measure 'understates damages . . . because it does not fully encompass the shares' fundamental value.'").  In his supplement, Dr. Mason merely reiterates this prior opinion in the context of explaining why the GSE shares have never recovered the harm caused by the Net Worth Sweep, and have never remedied the NWS's "ongoing impact on the GSEs and shareholders." Mason Suppl. Rpt. ¶ 15.  Because the ongoing Net Worth Sweep has caused approximately $150 billion in excess value to go to one shareholder (Treasury) at the expense of all private shareholders, it "necessarily harms the other, private shareholders."  *Id.*  That conclusion mirrors this Court's finding in its order denying dismissal that the NWS "decreases the value of all securities other than the PSPAs by eliminating the possibility of profits accruing in any way to their benefit."  *Id.* ¶ 16 & n.29 (*citing Fairholme Funds, Inc. v. Federal Housing Finance Agency*, 2018 WL 4680197, at *14 (D.D.C. Sept. 28, 2018)).

***

Plaintiffs' requested supplementation is therefore proper.  Dr. Mason's supplemental report is narrowly tailored and consistent with his existing damages model, corrects any perceived incompleteness of that preexisting opinion, and is substantially justified to prevent Defendants from confusing the jury by misleading them as to the scope of Dr. Mason's opinion. *Capitol Justice LLC*, 706 F. Supp. 2d at 38–40 (permitting supplementation under Rule 26(e) and 37(c)); *SD3*, 71 F. Supp. 3d at 189 (supplemental report admissible where it "would merely supplement and fill in the gaps of a previous disclosure").  In fact, Defendants have not asserted that they will suffer any

prejudice if Dr. Mason testifies consistent with his supplemental report and have requested to take Dr. Mason's deposition well in advance of trial.

Further, Plaintiffs demonstrate good cause under Rule 16 even though it is not the applicable standard. Plaintiffs have diligently sought supplementation of existing opinions, within the scheduling order agreed upon by Defendants and approved by the Court months before trial. Plaintiffs have provided a complete and transparent description of the expected trial testimony, which will eliminate any confusion as to the scope of Dr. Mason's testimony. The only possible harm here would attach if Defendants preclude supplementation offered in response to their trial conduct, all the while gaining a litigation advantage by deposing Dr. Mason in the interim. *See, e.g.*, *Science Applications Int'l Corp.*, 301 F.R.D. at 3.

There is thus no basis to exclude Dr. Mason's supplemental report.

### III.   Dr. Dharan's Supplementation Is Proper Because It Supports Previously Offered Opinions, Rebuts New Opinions and Argument Offered By Defendants at Trial On Those Subjects, and Does Not Prejudice Defendants.

Like Dr. Mason, Dr. Dharan does not include any new opinions in his supplement. The information in the supplemental report is narrow in scope, fully consistent with Dr. Dharan's existing opinions and testimony, and offered in direct response to new evidence and arguments offered by Defendants at trial. Defendants' sole argument in response is that Dr. Dharan could have offered the analysis at an earlier point. As Plaintiffs show with respect to each aspect of his analysis below, that analysis is misplaced for three reasons.

First, as set forth in detail above, Defendants are wrong that an expert is prohibited from providing testimony not specifically set forth in an expert report. In fact, Defendants effectively ignored Plaintiffs' argument (and supporting precedent) that the information in Dr. Dharan's supplemental report is proper rebuttal testimony given the scope of Dr. Dharan's existing opinions. Mot. at 5–6. Defendants instead relegate to a footnote (without any supporting precedent) their

suggestion that Dr. Dharan cannot present rebuttal testimony at trial—even if such testimony squarely contradicts or rebuts evidence discussed by an opposing expert.   Def. Opp'n at 7 n.4. "Whether rebuttal testimony is proper does not turn on whether the proffering party could have anticipated the relevance or importance of its subject matter beforehand. Rather, 'rebuttal expert testimony is permitted ... where it 'is intended to contradict or rebut evidence *on the same subject matter* identified by another party.'" *United States v. Phillip Morris USA, Inc.*, 2022 WL 1101730, at \*7 (D.D.C. April 13, 2022) (citations omitted); *United States v. Gatling*, 96 F.3d 1511, 1523 (D.C. Cir. 1996) (permitting new expert testimony at trial to directly refute testimony of a defendant).   Here, there is no dispute that Dr. Dharan's initial reports covered the same subject matter, and his proposed supplementation rebuts testimony and closing argument offered at trial by Defendants.   As a result, it would make no sense at all to deny the supplemental report because the same analysis could simply be offered in rebuttal at trial.   Allowing the report would eliminate any confusion about what is permitted in addition to giving Defendants the opportunity to offer a rebuttal report and to depose Dr. Dharan on these subjects.

Second, while Rule 26(e) permits supplementation—because the additional or corrective information is based upon information that arose at trial and is necessary to provide a complete statement of the facts or data considered by Dr. Dharan and the bases and reasons for his existing opinions—supplementation is also proper because it is substantially justified by Defendants' trial conduct, and because Defendants are unable to identify any prejudice whatsoever.   *See Capitol Justice LLC,* 706 F. Supp. 2d at 38 (Rule 26(e) "anticipates that in complex litigation an expert witness may 'refine . . . his or her opinion as he or she prepares for trial.'"); *see SD3*, 71 F. Supp. 3d at 194 (assessing supplementation request under Rule 26(e) and Rule 37(c)).   Defendants do not identify the existence of any prejudice, let alone how they will be harmed by now having

received a complete preview of Dr. Dharan's testimony months in advance of trial and will have the opportunity to depose him on the supplemental report they seek to preclude.

Finally, for the same reasons outlined above as to Dr. Mason, Plaintiffs demonstrate good cause under Rule 16 to serve Dr. Dharan's supplemental report.

### A. The Supplemental Report's Analysis of the Payment-in-Kind Alternative Reflects Opinions Offered at Trial and Responds to New Opinions Offered at Trial by Dr. Attari on the Subject.

Dr. Dharan's supplemental report includes additional analysis supporting his previously stated opinions that the payment-in-kind option would have addressed FHFA's purported reason for agreeing to the Net Worth Sweep at least as effectively as the Net Worth Sweep without taking 100% of the GSEs' profits, and thus without harming the GSEs and shareholders. Defendants oppose supplementation of Dr. Dharan's opinions on the payment-in-kind option, but their sole discussion of the analysis asserts only that he could have offered the opinions at an earlier point. Defendants do not attempt to identify any prejudice that they would suffer from permitting supplementation. Further, they ignore that everything in the supplemental report appropriately rebuts opinions on the payment-in-kind option that Defendants' expert, Dr. Attari, offered *for the first time at trial*.

As stated in Dr. Dharan's supplemental report:

> Dr. Attari's rebuttal report did *not* address the viability of the PIK option provided in the Certificates for potential use by GSEs. Nevertheless, *he testified at trial* that using the PIK option would not have "solved the circular dividend problem," and would instead have made the GSEs' situation "worse." Dr. Attari's testimony on this issue is incorrect.

ECF No. 291-1 ("Dharan Suppl. Rpt.") ¶¶ 3–4 (citing Trial Tr. 1961:9–:13, 1964:7–:9) (emphasis added).

Defendants disregard Dr. Attari's testimony and nowhere dispute that Dr. Dharan's supplemental report appropriately responds to Dr. Attari testimony that was not disclosed until

trial.  That should be the end of the analysis, and Dr. Dharan's testimony on the PIK option must be permitted.

Indeed, by providing Dr. Dharan's full rebuttal of Dr. Attari's PIK testimony in a supplement, Plaintiffs have given Defendants the opportunity to depose him on those opinions *and* to offer a rebuttal report and have their expert address Dr. Dharan's opinions in his testimony. Arguably, none of that was required.  Plaintiffs could simply have gone to trial and once again asked Dr. Dharan to rebut Dr. Attari's previously-undisclosed PIK testimony by addressing it at trial.

Dr. Dharan's PIK analysis in his supplement also falls squarely within opinions he offered prior to the first trial.  Dr. Dharan previously opined in his prior rebuttal report that in lieu of the Net Worth Sweep, "FHFA could have announced that future dividends that exceeded the GSEs' net worth in a particular quarter would be paid in kind . . . This would have left the commitment available to address shortfalls occurring in the ordinary course of business, including in stress scenarios." Dharan Rebuttal Rpt. ¶ 32.  He further explained that there "is no reason" the payment in kind option "would not have served the goals claimed by Dr. Attari as effectively in 2012 as the Net Worth Sweep."  *Id.* ¶ 34.  Dr. Dharan offered the same testimony at trial—i.e., that the payment-in-kind option was preferable for addressing the alleged problem of circular draws given that it would have eliminated the need for circular draws without depriving the GSEs of their capital and forcing them to pay the Deferred Tax Assets in cash.  Trial Tr. 1256:14–1257:20.

Relatedly, Dr. Dharan has from the outset opined that the Net Worth Sweep made the GSEs worse off by depriving them of all of their capital for no good reason.  Dharan Rpt. ¶¶ 79–81, 91; Trial Tr. 1136:9–1137:8; 1270:13–:22.  Further, he has opined that it forced them to pay the

Deferred Tax Assets out in cash when it was entirely unnecessary to do so.  Dharan Rpt. ¶ 113; Trial. Tr. 1272:17–:24; 1274:5–:13.

Defendants fail to identify anything in the supplemental report that goes beyond the scope of Dr. Dharan's prior testimony and reports.  Instead, they assert that Dr. Dharan disclaimed "such opinions" in his deposition.  This is misleading.  The first deposition snippet cited by Defendants responded to a vague (and thus properly objected to) question as to whether "payment-in-kind was better than the Net Worth Sweep *for FHFA*" without explaining what that meant or rooting the question in the stated goals of the Net Worth Sweep.  ECF No. 293-1 ("Dharan Dep. Tr.") at 161:17–:19.  The second deposition snippet quoted by Defendants asked whether the "*2019 letter agreement*" was "preferable to the third amendment."  *Id.* at 177:2–:5, 178:3–:5 (emphasis added). The answers to those questions did not in any way contradict Dr. Dharan's opinions and analysis that the payment-in-kind option would have addressed the supposed circular dividend problem as effectively, or in certain circumstances, more effectively than the Net Worth Sweep.  Indeed, in a part of the excerpts that Defendants fail to quote, Dr. Dharan specifically referenced his prior opinion that "[t]here is no reason this same method would not have served *the goals claimed by Dr. Attari* as effectively *in 2012* as the Net Worth Sweep."  *Id.* at 177:18–:21 (emphasis added).

Further, Dr. Dharan offered additional testimony at trial on the payment in kind option, *see* Trial Tr. 1130:1–:13, 1256:23–1257:20, 1335:23–:25, after Acting Director DeMarco testified on the subject, *id.* at 750:6–751:19, 896:1–:21.  And, as already discussed, Dr. Attari then offered new opinions that he had never previously offered.  *See supra*, Dharan Suppl. Rpt. ¶¶ 3–4.  Thus, even if Dr. Dharan's initial opinions on payment-in-kind were limited in the way that Defendants claim—which they were not—it would not matter because allowing supplementation is harmless and because Dr. Attari offered new opinions that justify rebuttal.

**B. The Supplemental Analysis of Dr. Attari's Event Study Responds to Dr. Attari's Testimony at Trial on the Event Study, Which Itself Contradicted What Defendants Told the Court Dr. Attari Would Say.**

As shown previously, Dr. Dharan also identifies supplemental support addressing Dr. Attari's event study demonstrating "the lack of concern relating to GSE debt during 2012." Dharan Suppl. Rpt.¶ 23; *see id.* ¶¶ 14–26.  The parties agree that Dr. Dharan has extensively addressed this topic previously, and Defendants do not claim that he is offering any new opinions. Defendants claim only that he could have cited to these documents at an earlier date. But, again, they do not claim they would be unduly prejudiced by allowing Dr. Dharan to discuss the documents as additional support for the previously offered opinions.

Further, Dr. Dharan's supplemental report rebuts testimony that Dr. Attari offered at trial on this subject.  Trial Tr. 1965:13–1969:1, 2117:12–:15; Dharan Suppl. Rpt. ¶¶ 14–26.  The testimony Dr. Attari offered contradicted Defendants' prior representations to the Court and to Plaintiffs as to what that testimony would address.  Plaintiffs' motion in limine had argued that Dr. Attari's GSE bond event study should be excluded because Defendants could not account for alternative causes of the decline in yield spreads in August 2012, including anticipated decline in supply caused by other aspects of the Third Amendment.  ECF No. 161 at 3–7.  In opposing that motion, Defendants insisted that Dr. Attari's opinion was limited to asserting that the ***Third Amendment generally*** caused the decline in the yield spreads, and would not argue that the ***Net Worth Sweep in particular*** did so.  ECF No. 168 at 6.  The Court credited this explanation as the basis for denying Plaintiff's motion.  ECF No. 221 at 2–3.

At trial, however, Defendants went back on what they told the Court.  Dr. Attari testified that the decline in yield spreads reflected increased confidence in the GSEs' creditworthiness due to the Net Worth Sweep purportedly addressing market concern over circular dividends.  Trial Tr.

21

1964:14–:24, 1965:13–:17, 1968:3–1970:3; 2117:12–:15; *see also id.* 1917:17–1930:15.[9]  Dr.

Dharan's supplement rebuts this previously un-disclosed testimony by analyzing documents and

data demonstrating that it was the anticipated decline in supply of GSE bonds that provides a far

more plausible explanation for the decline in yield spreads in August 2012, and that, at a minimum,

Dr. Attari has no methodologically sound basis to account for this confounding factor.  Dharan

Suppl. Rpt. § III.  The supplement therefore rebuts the opinions that Dr. Attari offered at trial and

fall well within the scope of Dr. Dharan's prior opinions on the subject.

### C.  Defendants Offer No Basis for Opposing Dr. Dharan's Supplementation of His Opinions Concerning the Lack of Need for the Net Worth Sweep.

Defendants oppose Dr. Dharan's reliance on additional documents and testimony as to the

lack of any need for the Net Worth Sweep to address concerns about circular dividends materially

eroding the Treasury Commitment.  *See id.* ¶¶ 27–37.  Again, there is no question that Dr. Dharan

is simply offering commentary on testimony and documents offered at trial to support preexisting

opinions he has given from the start.  Defendants would sustain no prejudice from permitting this

supplementation but instead will have the opportunity to depose Dr. Dharan and offer any rebuttal

testimony they wish.  Defendants do not claim they would be prejudiced, nor do they discuss the

content of any of the documents or testimony to which Dr. Dharan refers.  Instead, Defendants rely

solely on the fact that the materials were not included in the materials considered in Dr. Dharan's

original reports.  Def. Opp'n at 21 (arguing that the documents "were not included on Dr. Dharan's

prior lists of materials considered").

---

[9] Dr. Attari's attribution of the decline in yield spreads to the Net Worth Sweep confirmed Plaintiffs' prior contentions that this was its true purpose, that any suggestion otherwise was disingenuous, and that the opinion that the Third Amendment generally caused it was far more unduly prejudicial than probative.  Plaintiffs thus anticipate renewing their motion to exclude the event study at the appropriate time.

Again, this argument ignores both the absence of prejudice and the role that the documents and testimony played *at trial*. Defendants therefore have no answer to the fact that the contents of the supplemental report would have been appropriate commentary on evidence and rebuttal to the testimony of Defendants' fact and expert witnesses on the scope of the Net Worth Sweep. For example, FHFA's Chief Accountant testified that an email asserting that the "amendments are designed to demonstrate wind-down" referred only to the accelerated decline of the retained portfolio, not to the taking of 100% of the GSEs' profits in perpetuity. Trial Tr. 2235:14–2236:11. Dr. Dharan explains that this absurd testimony makes no sense as a matter of accounting. Dharan Suppl. Rpt. ¶¶ 33–34. It would not have been possible to offer this opinion previously because the testimony had not yet been offered.

### D. Dr. Dharan's Supplementation of His Analysis of Non-Cash Adjustments Falls Well Within the Scope of Prior Opinions and Rebuts Testimony and Closing Argument Offered at Trial by Defendants.

A central topic of Dr. Dharan's trial testimony and prior reports was the role of non-cash accounting adjustments to the GSEs' financial well-being during conservatorship, including extensive testimony on the accounting treatment of the GSEs' Deferred Tax Assets. *E.g.*, Trial Tr. 1239:12–1242:22, 1246:25–1247:15, 1252:1–:20; Dharan Rpt. ¶¶ 98–119; Dharan Rebuttal Rpt. Section III(A)–(B); Dharan Suppl. Rpt., Ex. D. Dr. Dharan's supplemental report merely contains additional analysis on this topic. Dharan Suppl. Rpt. ¶¶ 38–41. Again, Defendants fail to identify any prejudice they would suffer from permitting this supplementation given the opportunity to depose Dr. Dharan and offer any rebuttal testimony. Instead, Defendants oppose supplementation solely based on their assertion that there is "no reason why Dr. Dharan could not have included his supplemental opinions on these matters during the expert discovery period." Def. Opp'n at 21.

Again, Defendants ignore that Dr. Dharan's supplemental analysis directly responds to testimony and argument offered by Defendants *at trial* on these issues. As explained in Plaintiff's

motion, Dr. Attari and Defendants' counsel told the jury that the cash invested by the preferred stockholders was "lost" or "gone" by the end of 2008.  *See* Mot. at 7.  Dr. Dharan directly addresses this testimony and argument and explains why it is wrong.   Dharan Suppl. Rpt. ¶¶ 39–41. Defendants ignore this testimony and argument.   Thus, in addition to failing to identify any prejudice from permitting the testimony, Defendants offer no basis for disputing that the supplementary analysis properly addresses trial testimony and argument from Defendants and their expert on matters within the scope of his previously disclosed opinions.   It therefore should be permitted both for that reason and because of the absence of any prejudice to Defendants.   Further, given that the testimony would be entirely proper rebuttal testimony if Defendants attempted to offer the same testimony at trial, allowing the supplemental report will merely provide advance notice to Defendants and avoid any potential confusion for all parties about what testimony will be permitted.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully ask the Court to grant the Motion and permit Plaintiffs to use the supplemental expert reports of Dr. Mason and Dr. Dharan previously served on Defendants.

Dated:  March 21, 2023

Respectfully submitted,

/s/ Hamish P.M. Hume
Hamish P.M. Hume (Bar No. 449914)
Samuel C. Kaplan (Bar No. 463350)
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave. NW
Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
hhume@bsfllp.com
skaplan@bsfllp.com

24

Eric L. Zagar (*Pro Hac Vice*)
**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
280 King of Prussia Rd.
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
ezagar@ktmc.com

Michael J. Barry (*Pro Hac Vice*)
**GRANT & EISENHOFER, P.A.**
123 Justison Street
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100
mbarry@gelaw.com

Adam Wierzbowski (*Pro Hac Vice*)
**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
adam@blbglaw.com

*Co-Lead Counsel for the Class*