# EXHIBIT A

UNITED STATES DISTRICT AND BANKRUPTCY COURTS
FOR THE DISTRICT OF COLUMBIA

IN RE: FANNIE MAE/FREDDIE MAC SENIOR PREFERRED STOCK PURCHASE AGREEMENT CLASS ACTION LITIGATIONS
--------------------------------/

Civil No. 13-MC-1288
13-CV-1053

FAIRHOLME FUNDS, INC., et al.,

Plaintiffs,

v.

FEDERAL HOUSING FINANCE AGENCY, et al.,

Defendants.

---------------------------/

Washington, D.C.

October 12, 2022

1:00 p.m.

TRANSCRIPT OF PRETRIAL CONFERENCE
BEFORE THE HONORABLE ROYCE C. LAMBERTH
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs: HAMISH HUME, ESQUIRE
SAM KAPLAN, ESQUIRE
LEE RUDY, ESQUIRE
ERIC ZAGAR, ESQUIRE
KENYA DAVIS, ESQUIRE
BRIAN BARNES, ESQUIRE

For the Defendants: JONATHAN STERN, ESQUIRE
IAN HOFFMAN, ESQUIRE
STANTON JONES, ESQUIRE
DAVID BERGMAN, ESQUIRE
ASIM VARMA, ESQUIRE

Court Reporter

Lisa K. Bankins RMR FCRR RDR
United States District Court
District of Columbia
333 Constitution Avenue, NW
Washington, D.C. 20001

Proceedings recorded by mechanical stenography, transcript produced by notereading.

dividend's schedule this year." This is Mr. DeMarco. "Since the Secretary raised the possibility of a P.R. covenant" -- that's principal reduction -- "DeMarco no longer sees the urgency of amending the PSPA's this year. He has raised two competing reasons for this new position. Number one, that GSE's will be generating large revenues over the coming years. Thereby, enabling them to pay the 10% annual dividend well into the future even with the caps."

That is treasury's report in an official government record of what the Acting Director of the FHFA told to the Secretary of Treasury. That's a party admission at every level of the chain as well as an official government record. It is not a hearsay problem and nothing could be more relevant to the issue in this case. So there are, you know, maybe a couple of dozen documents at issue. This is the most important. There are a number of very important ones from the treasury. We think they come in.

My colleague, Mr. Zagar, can address -- we have two basic hearsay arguments of why it's not hearsay. The first is there is a joint venture exception and they have two agencies here that are clearly working together to wind down these enterprise and implement their policy and they agreed to do this sweep together and documents

who says that he is reporting what then Treasury Secretary Geitner told him was quote the essence of a discussion that Secretary Geitner had reportedly had with Mr. DeMarco. So on the face of this document, you have multiple layers of hearsay.

THE COURT: Why does that matter if it's a government record?

MR. JONES: It isn't a public record within the meaning of the narrow public records exception that the plaintiffs have invoked. Plaintiffs have invoked one branch of the public records exception; that is, the exception for public records that set out the activities of the agency. That exception has long been construed to allow very narrowly just factual records that memorialized the agency's actual activities. This is talking about things like receipts or ledgers of disbursements or a registry of applicants to an office.

And in fact the Federal Advisory Committee notes to this branch of the public records exception explain this piece of the public records exception comes from a U.S. Supreme Court decision from about a hundred years ago called Chesapeake that involved Treasury Department records. It's just a coincidence that this public records exception comes from an old Supreme Court case about treasury documents. And the documents in that case were

treasury is committed to help achieve this objective." The second heading, Overview. "This is a collaborative meeting to address these issues in collaboration with the FHFA." Go further down, the second to last topic. "Express willingness to consider restructuring calculation of treasury's dividend payments from a fixed 10% annual rate to a variable payment based on available positive net worth." We know what that is. This is back in January of 2012, you know, some six or seven months before. But this is where it was first talked about.

The final topic in this memo for Secretary Geitner. "Express willingness to work with FHFA to draft policy papers on our housing market and GSE reform goals." And in context, you can tell when this uses the word "our," it means our, FHFA and treasury together.

So this is exactly what Rule 801(d)(2)(E) is about. When you have two parties, whatever their nominal roles may be. Defendants say, well, they were on opposite sides of the contract, how could they be working together? That's how government works. That's often how business works. Even people who are nominally adversaries often work together. Even people in this room who are nominally adversaries often work together to achieve things like not overburdening the Court with deposition transcripts. So just because they don't agree on absolutely everything,

just because they're not joined at the hip, they're not partners, they're not principal and agents, the rule does not require any of those things. All the rule requires is that they be working together towards a common goal and it admits what it would otherwise be hearsay that goes towards that common goal. That's exactly what these documents -- and obviously, I don't have time to go through all 22 documents, but there are all of a kind. They're memos, agendas, emails between and among people at treasury and at FHFA talking about their common goals and why they have them, what they intend to do to promote them. That's exactly what this rule is intended to allow in.

A broader point that I probably should have made off the top. There is no dispute that these documents are authentic. Defendants have stipulated to their authenticity.

With respect to the Rule 803(8)(a)(1), public records exception, there is a requirement under that rule that the documents be trustworthy or at least that there's no evidence that they are not trustworthy. The defendants have made no argument that they are not trustworthy. So the big things that we worry about for hearsay for out-of-court statements, is it authentic, is it trustworthy, there's no dispute. It is authentic. It is

trustworthy. So we're talking about does it meet the technical definition of this or that. I would submit that they all do. And more importantly, they meet the policy reasons for why certain documents that would otherwise be hearsay should come in. There could be hard to give a better example than the documents that we're talking about here. Thank you, Your Honor.

THE COURT: Thank you.

MR. JONES: Your Honor, can I make one quick point?

THE COURT: Yes.

MR. JONES: I had heard Your Honor to say earlier that the co-conspirator exception can't apply here and I agree with that. So I didn't make an extended argument. It's all set forth in our papers.

I would make just one quick point in response to what you just heard. I think if I just heard correctly from plaintiffs' counsel that under their expansive interpretation of the co-conspirator exception to hearsay, the defendants' counsel and the plaintiffs' counsel in this case are in a joint venture and our statements would be not hearsay, right, because we're working together towards a common goal of reducing the number of deposition objections that Your Honor has to deal with at night during the trial. That's not -- we're certainly working

documents. So I'm not going to belabor it. But just on the PX 205 document, Your Honor, there is double layers of hearsay. I'm intruding on Mr. Jones' territory. But we cite a variety of cases in our hearsay opposition motion that have extremely similar facts where one person is recounting what someone else told them about what happened in a meeting and we don't have the declarants here talking about at first hand. You know, somebody taking the stand saying Mr. DeMarco told me X at this meeting. This is a pure multi-level hearsay document.

And I, frankly, don't follow a lot of Mr. Hume's arguments about whether FHFA was surprised or something or an embedded assumption about surprise. The issue is in fact whether a particular document was shared for these particular -- for the 22 documents or 16 documents that are at issue with our motion, that is relevant because if they want to ask our witnesses what was discussed with treasury or what they understood treasury to be doing or not doing, I think that would be more fair game than following it up with, well, here is a document that reflects what treasury supposedly said or did even though, you know, it could be written by a treasury staffer, you know, drafting notes and confronts our witnesses with that.

Again, there's just a lot of blurring of lines

CERTIFICATE OF REPORTER

I, Lisa K. Bankins, an Official Court Reporter for the United States District and Bankruptcy Courts for the District of Columbia, do hereby certify that I reported, by machine shorthand, in my official capacity, the proceedings had and testimony adduced upon the pretrial conference in the case of the In Re: Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations and Fairholme Funds, Inc., et al. v. Federal Housing Finance Agency, et al. Civil Number 13-MC-1288 and 13-CV-1053, in said court on the 12th day of October, 2022.

I further certify that the foregoing 154 pages constitute the official transcript of said proceedings, as taken from my machine shorthand notes, together with the backup tape of said proceedings to the best of my ability.

In witness whereof, I have hereto subscribed my name, this 14th day of October, 2022.

Lisa K. Bankins

Lisa K. Bankins
Official Court Reporter