# EXHIBIT L

Timothy J. Bowler                CONFIDENTIAL - PROTECTED INFORMATION                July 1, 2015
                        To Be Disclosed Only in Accordance with Protective Order              Washington, D.C.

Page 1

1        IN THE UNITED STATES COURT OF FEDERAL CLAIMS

2    - - - - - - - - - - - - - - - X

3    FAIRHOLME FUNDS, INC., et al., :

4         Plaintiffs,              :

5              v.                  : Case No. 13-465C

6    THE UNITED STATES,            :

7         Defendant.               :

8    - - - - - - - - - - - - - - - X

9                          Washington, D.C.

10                         Wednesday, July 1, 2015

11       CONFIDENTIAL - PROTECTED INFORMATION TO BE

12    DISCLOSED ONLY IN ACCORDANCE WITH PROTECTIVE ORDER

13            Deposition of TIMOTHY J. BOWLER, a witness

14   herein, called for examination by counsel for

15   Plaintiffs in the above-entitled matter, pursuant to

16   notice, the witness being duly sworn by MARY GRACE

17   CASTLEBERRY, a Notary Public in and for the District

18   of Columbia, taken at the offices of Cooper & Kirk,

19   1523 New Hampshire Avenue, N.W., Washington, D.C., at

20   9:30 a.m., Wednesday, July 1, 2015, and the

21   proceedings being taken by Stenotype by MARY GRACE

22   CASTLEBERRY, RPR, and transcribed under her direction.

Timothy J. Bowler                CONFIDENTIAL - PROTECTED INFORMATION                July 1, 2015
                     To Be Disclosed Only in Accordance with Protective Order         Washington, D.C.

Page 2

```
 1    APPEARANCES:

 2

 3         On behalf of the Plaintiffs:

 4              PETE PATTERSON, ESQ.

 5              DAVID H. THOMPSON, ESQ.

 6              HOWARD SLUGH, ESQ.

 7              CHARLES J. COOPER, ESQ.

 8              VINCENT J. COLATRIANO, ESQ.

 9              Cooper & Kirk

10              1523 New Hampshire Avenue, NW

11              Washington, D.C.  20036

12              (202) 220-9600

13

14         On behalf of the U.S. DOJ:

15              GREGG M. SCHWIND, ESQ.

16              RETA BEZAK, ESQ.

17              ELIZABETH M. HOSFORD, ESQ.

18              KENNETH M. DINTZER, ESQ.

19              U.S. Department of Justice

20              1100 L Street, NW

21              Washington, D.C.  20530

22              (202) 353-2345
```

Timothy J. Bowler  CONFIDENTIAL - PROTECTED INFORMATION  July 1, 2015
To Be Disclosed Only in Accordance with Protective Order  Washington, D.C.

Page 3

```
 1   APPEARANCES: (Continued)

 2

 3       On behalf of the Treasury:

 4           KATHLEEN M. COCHRANE, ESQ.

 5           BRENDAN J. CRIMMINS, ESQ.

 6           KATHERINE BRANDES, ESQ. (Telephonically)

 7           U.S. Department of the Treasury

 8           1500 Pennsylvania Avenue, NW

 9           Washington, D.C.  20220

10           (202) 622-0351

11

12       On behalf of the FHFA:

13           MICHAEL SITCOV, ESQ. (Telephonically)

14           U.S. Department of Justice

15           Civil Division, Federal Programs Branch

16           20 Massachusetts Ave, NW, Room 7108

17           Washington, D.C.  20530

18           (202) 514-4960

19

20

21

22
```

Timothy J. Bowler          CONFIDENTIAL - PROTECTED INFORMATION                July 1, 2015
              To Be Disclosed Only in Accordance with Protective Order        Washington, D.C.

Page 27

1      Q.     And what did they tell you about the job
2  you were doing?
3      A.     That was going to run -- the job they
4  wanted me to take was replacing a gentleman named
5  Matthew Kabaker who ran the office of capital markets
6  at the Treasury Department so the job I would take
7  would be running the office of capital markets as the
8  deputy assistant secretary and would do markets
9  policy-based work.
10     Q.     And was it anticipated that your work
11 would deal with Fannie and Freddie at that point?
12     A.     Yes.  The work was going to involve just
13 the housing finance markets so that was going to be
14 one of the key areas.  However, it was a broad -- I
15 mean, it was a really, really broad job so it covered
16 like implementation of Dodd-Frank work, it covered
17 just working on -- thinking through like strategies
18 for Europe because when I joined in 2011, August of
19 2011, the financial markets got up into a big tizzy
20 again because you had problems with Greece and it was
21 unclear whether Greece was going to default again.
22 And then unfortunately the country was downgraded by

Timothy J. Bowler                CONFIDENTIAL - PROTECTED INFORMATION                July 1, 2015
                       To Be Disclosed Only in Accordance with Protective Order            Washington, D.C.

Page 68

```
 1      Q.    And did those officials work with
 2  officials from any other agencies?
 3      A.    Can you be more specific?  Office of
 4  Capital Markets officials worked --
 5      Q.    Any other agencies outside the Department
 6  of Treasury in coming up with options for changing
 7  the dividend structure?
 8      A.    I don't know.  I don't know.
 9      Q.    Did you work with anyone from other
10  agencies?
11      A.    So I just want to be clear.  We negotiated
12  with FHFA the changes to the preferred stock purchase
13  agreements that were made in August of 2012.  That
14  was the only party that we negotiated with in regard
15  to modifying those agreements.  They were the only
16  party at the table.
17      Q.    But before the negotiation phase, was FHFA
18  involved at all in Treasury's effort to come up with
19  options for addressing the dividend structure?
20      A.    I can't remember.
21                  (Bowler Exhibit No. 5 was
22                  marked for identification.)
```

Case 1:13-mc-01288-RCL   Document 294-12   Filed 05/26/23   Page 7 of 16

Timothy J. Bowler                CONFIDENTIAL - PROTECTED INFORMATION                July 1, 2015
                     To Be Disclosed Only in Accordance with Protective Order        Washington, D.C.

Page 152

1   PSPA covenant something different?

2       A.   I guess I would want to see the underlying
3   document so I can't respond to that. But in general,
4   covenants were section 5.

5       Q.   And who were Brian Deese and Jim Parrott?

6       A.   Who were they?

7       Q.   Yes.

8       A.   I mean, they still are alive.

9       Q.   Who are they?

10      A.   Sorry.

11      Q.   At this time, what was their role?

12      A.   Brian Deese worked at the National
13  Economic Council and Jim Parrott worked at the
14  National Economic Council, and both of them were
15  involved in housing policy for the Administration.

16      Q.   And to what extent were they involved in
17  the process of amending the PSPAs?

18      A.   As Treasury staff negotiated with FHFA
19  staff, the Treasury staff, we, broadly working on
20  this, would propose the National Economic Council as
21  to developments and the two people that we proposed
22  would be Brian Deese and Jim Parrott.

Timothy J. Bowler                CONFIDENTIAL - PROTECTED INFORMATION                July 1, 2015
                          To Be Disclosed Only in Accordance with Protective Order                Washington, D.C.

Page 153

```
 1      Q.    And was the net worth sweep proposal shown
 2   to Brian Deese and Jim Parrott?
 3      A.    I don't know.
 4      Q.    Do you know whether they had any input
 5   into the net worth sweep proposal?
 6      A.    Into the switching --
 7      Q.    Into the switching from a fixed dividend
 8   to a variable dividend?
 9      A.    I don't remember having a specific
10   conversation with Brian Deese about that.  I remember
11   Jim Parrott saying that he was comfortable with
12   moving to a variable dividend relative to the fixed
13   10 percent dividend.
14      Q.    And was --
15            MR. SCHWIND:  May I have one minute here?
16            MR. PATTERSON:  Yes.
17            (Witness confers with counsel.)
18            THE WITNESS:  Sorry.
19   BY MR. PATTERSON:
20      Q.    Was Gene Sperling at all involved in the
21   process of amending the dividend structure of the
22   PSPAs?
```

Timothy J. Bowler                CONFIDENTIAL - PROTECTED INFORMATION                July 1, 2015
                        To Be Disclosed Only in Accordance with Protective Order         Washington, D.C.

Page 234

1   December 31st, 2012.

2        Q.   And you'll recall a document we looked at

3   earlier which said that the amendment could happen in

4   late May or some time in the May 2012 time frame.  Do

5   you recall that?

6        A.   That's correct.

7        Q.   What happened that caused it not to be

8   implemented at that time but rather in August?

9        A.   Why?  It was just the negotiations with

10  FHFA around the third amendment took longer than I

11  expected.

12       Q.   Was there anything in particular that was

13  holding things up?

14       A.   We had to figure out how the formula for

15  the dividend was going to work, we had to figure out

16  covenants associated with the improvements of the

17  covenant package that was in the document that would

18  lead to, you know, in our hope, better risk

19  management at the GSEs and a reduction in potential

20  future losses of the GSEs.  And that just took far

21  longer than I expected, and for that matter, I think

22  Treasury staff expected, that was working on the

Timothy J. Bowler                CONFIDENTIAL - PROTECTED INFORMATION                July 1, 2015
                         To Be Disclosed Only in Accordance with Protective Order        Washington, D.C.

Page 236

```
 1            Was Treasury responsible for initially

 2   drafting the documents?

 3       A.    May I talk to my lawyer for just a second?

 4             (Witness confers with counsel.)

 5             THE WITNESS:  Yes.

 6   BY MR. PATTERSON:

 7       Q.    And who at Treasury was responsible for

 8   that?

 9       A.    May I talk to my counsel again?

10       Q.    Okay.

11             MR. SCHWIND:  You can answer.

12             THE WITNESS:  Can I --

13             (Witness confers with counsel.)

14             THE WITNESS:  The general counsel's

15   office.

16   BY MR. PATTERSON:

17       Q.    And after the general counsel's office

18   drafted the documents, did any nonlawyers outside of

19   Treasury review that draft?

20       A.    Nonlawyers out --

21       Q.    Nonlawyers within Treasury, I'm sorry.

22       A.    I'm sorry, I'm confused.  Can you tell me
```

Case 1:13-mc-01288-RCL   Document 294-12   Filed 05/26/23   Page 11 of 16

Timothy J. Bowler                CONFIDENTIAL - PROTECTED INFORMATION                July 1, 2015
                    To Be Disclosed Only in Accordance with Protective Order         Washington, D.C.

Page 237

1  exactly what that means?

2      Q.   Who at Treasury reviewed it after the

3  general counsel's office drafted the documents?

4      A.   Oh, the policy team working on the third

5  amendment.

6      Q.   And who was that?

7      A.   I can't recall everybody but it was me,

8  most likely Jeff Foster and most likely Michael

9  Stegman.

10     Q.   And when was the draft shared with FHFA?

11     A.   And I believe Mary Miller saw the

12 documents as well.

13     Q.   And when was the draft shared with FHFA?

14     A.   I can't remember what day but at some

15 point in time in early August.

16          MR. SCHWIND:  Objection, vague.  Do you

17 mean, yes, at this time frame in August or --

18          MR. PATTERSON:  Yes, at this time frame in

19 August.

20          MR. SCHWIND:  Okay.

21          MR. PATTERSON:  Where he says "I've not

22 seen the proposed documents yet."

Timothy J. Bowler
CONFIDENTIAL - PROTECTED INFORMATION
To Be Disclosed Only in Accordance with Protective Order
July 1, 2015
Washington, D.C.

Page 240

1  National Economic Council, is that correct?

2    A.    Uh-huh.

3    Q.    And how about Dana Hyde?

4    A.    I believe she was an employee at the time

5  at the Office of Management and Budget.

6    Q.    And did you brief them on the PSPA

7  changes?

8    A.    I recall going over there that afternoon

9  and walking them through the discussions we were

10  having with FHFA around changes to the preferred

11  stock purchase agreement.

12    Q.    And did they have any response to those

13  changes?

14        MR. SCHWIND:  May I have a second to

15  confer with my client about the potential application

16  of privilege?

17        MR. PATTERSON:  Sure.

18        (Witness confers with counsel.)

19        MR. SCHWIND:  Reask the question, please.

20  BY MR. PATTERSON:

21    Q.    Yes.  Did they have any response to the

22  proposed changes to the PSPAs?

Timothy J. Bowler　　　CONFIDENTIAL - PROTECTED INFORMATION　　　July 1, 2015
To Be Disclosed Only in Accordance with Protective Order　　　Washington, D.C.

Page 247

```
 1        A.     Yes.
 2        Q.     Did you send any of those Q&As over to the
 3   White House?
 4        A.     I don't know if I did or didn't.
 5        Q.     Did you discuss the third amendment with
 6   anyone at the White House?
 7        A.     May I talk to my counsel again real quick?
 8        Q.     Yes.
 9               (Witness confers with counsel.)
10               THE WITNESS:  So I told Jim Parrott at the
11   National Economic Council that we were continuing to
12   plan to move forward with executing the third
13   amendment that week assuming that there were no
14   surprises or anything came up, and that we were
15   preparing Q&As in case we were asked questions
16   around -- by outside stakeholders as to what is the
17   third amendment.
18   BY MR. PATTERSON:
19        Q.     And was there anyone else at the White
20   House that you communicated with about the third
21   amendment during this time frame?
22        A.     Not that I can recall or not that I can
```

Timothy J. Bowler  CONFIDENTIAL - PROTECTED INFORMATION  July 1, 2015
To Be Disclosed Only in Accordance with Protective Order  Washington, D.C.

Page 248

1  remember.  My primary point of contact was Jim
2  Parrott, National Economic Council.
3              (Bowler Exhibit No. 32 was
4              marked for identification.)
5  BY MR. PATTERSON:
6      Q.   You've been handed an exhibit marked
7  Bowler 32.  It says in the bottom right-hand corner
8  UST00005739.  It's an email from the
9  ExecSecProcessUnit to some folks including yourself;
10 you're cc'd on this.  Subject is "Notice of TFG
11 signed action" and it says third amendments to the
12 senior preferred stock purchase agreements with
13 Fannie Mae and Freddie Mac approved.
14             So if you turn the page, you'll see this
15 is the action memorandum of Secretary Geithner in
16 which he approved the third amendment, is that
17 correct?
18     A.   I believe that to be the case but let
19 me --
20     Q.   Sure.
21     A.   Yes, I believe this to be the action memo
22 the Secretary approved to execute the third

Timothy J. Bowler  CONFIDENTIAL - PROTECTED INFORMATION  July 1, 2015
To Be Disclosed Only in Accordance with Protective Order  Washington, D.C.

Page 259

1     Q.    It says the primary objective is, "To meet
2  with the CEOs of Fannie Mae and Freddie Mac, as well
3  as FHFA Acting Director Ed DeMarco, to introduce and
4  review the changes to the senior preferred stock
5  purchase agreements (PSPAs) that Treasury and FHFA
6  intend to execute on Friday."
7           Who from the government spoke at this
8  meeting?
9     A.    Secretary Geithner very briefly and then I
10 walked through the term sheet and Mary Miller made
11 some comments.
12    Q.    And did anyone from FHFA address Fannie
13 and Freddie in this meeting?
14    A.    I don't remember if Acting Director
15 DeMarco addressed Fannie or Freddie.  He was in the
16 meeting.
17    Q.    And how did Fannie and Freddie respond to
18 being told about the third amendment?
19    A.    I remember two things clearly.  One, Don
20 Layton saying I'm going to walk through the
21 adjustment from the fixed dividend to the variable
22 dividend.  He said that solved the dividend issue.

Case 1:13-mc-01288-RCL   Document 294-12   Filed 05/26/23   Page 16 of 16

Timothy J. Bowler                CONFIDENTIAL - PROTECTED INFORMATION                July 1, 2015
                        To Be Disclosed Only in Accordance with Protective Order        Washington, D.C.

Page 308

1          CERTIFICATE OF REPORTER

2   UNITED STATES OF AMERICA ) ss.:

3   DISTRICT OF COLUMBIA     )

4        I, MARY GRACE CASTLEBERRY, RPR, the officer

5   before whom the foregoing deposition was taken, do

6   hereby certify that the witness whose testimony

7   appears in the foregoing deposition was duly sworn by

8   me; that the testimony of said witness was taken by

9   me to the best of my ability and thereafter reduced

10  to typewriting under my direction; that I am neither

11  counsel for, related to, nor employed by any of the

12  parties for the action in which this deposition was

13  taken, and further that I am not a relative or

14  employee of any attorney or counsel employed by the

15  parties thereto, nor financially or otherwise

16  interested in the outcome of the action.

17

18           -----------------------------

19                   Notary Public in and for

20                   The District of Columbia

21

22  My commission expires: 07/14/2016