UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BERKLEY INSURANCE CO.**, *et al.*, | |
| *Plaintiffs,* | |
| **v.** | Case No. 1:13-cv-1053-RCL |
| **FEDERAL HOUSING FINANCE AGENCY**, *et al.*, | |
| *Defendants.* | |
| **In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations** | Case No. 1:13-mc-1288-RCL |
| This Order relates to: ALL CASES | <u>CLASS ACTION</u> |

<u>**MEMORANDUM OPINION**</u>

Some parties just won't take no for an answer. Ever since this Court issued its summary judgment decision prior to the first trial in these cases, *see Fairholme Funds, Inc. v. FHFA* ("*Fairholme I*"), Nos. 13-cv-1053, 13-mc-1288, 2022 WL 4745970 (D.D.C. Oct. 3, 2022), plaintiffs have sought to turn back the clock on the orderly process of litigation in order to avoid its consequences. Now plaintiffs in both No. 13-cv-1053 ("the Berkley Plaintiffs") and No. 13-mc-1288 ("the Class Action Plaintiffs") once again seek, in effect, to reopen expert discovery; and the Berkley Plaintiffs also seek leave to argue for a measure of damages the Court has already held to be unavailable as a matter of law.

1

Before the Court are Plaintiffs' Motion to Serve Supplemental Expert Reports ("Supp. Expert Rep. Mot."), Berkley ECF No. 291, Class ECF No. 276,[1] and the Berkley Plaintiffs' Motion to Present Evidence and Arguments Concerning Reliance Damages ("Reliance Damages Mot."), Berkley ECF No. 296. For the reasons that follow, the Court will **DENY** both motions.

## I.   BACKGROUND

The factual and procedural background of this matter are recounted at length in multiple prior opinions. *See Fairholme I*, 2022 WL 4745970, at *1–3; *Fairholme Funds, Inc. v. FHFA*, No. 1:13-cv-1053-RCL, 2018 WL 4680197, at *1–4 (D.D.C. Sept. 28, 2018); *Perry Capital LLC v. Lew*, 70 F. Supp. 3d 208, 214–19 (D.D.C. 2014). The Court will therefore summarize the relevant background only as necessary to resolve the motions at hand.

These suits grow out of the "Net Worth Sweep," an agreement between the Federal Housing Finance Agency ("FHFA"), as conservator for the government-sponsored entities ("GSEs") Fannie Mae and Freddie Mac, and the U.S. Department of the Treasury ("Treasury") requiring the GSEs to pay 100 percent of their net profits in excess of a predetermined capital reserve to Treasury as compensation for Treasury's bailout of the GSEs following the 2008 financial crisis. Both sets of plaintiffs filed their complaints in 2013. *See* Berkley ECF No. 1, Class ECF No. 1. After years of extensive litigation, the parties filed cross-motions for summary judgment in April 2022, Berkley ECF Nos. 145, 146, Class ECF Nos. 143, 144, and a month later, the Court set a trial date for October 17, 2022, *see* Berkley ECF No. 167, Class ECF No. 160.

In its summary judgment opinion, the Court held that plaintiffs' primary theory of harm— that the Net Worth Sweep deprived them of dividends that they otherwise would have received—

---

[1] The Court will use "Berkley ECF No." to refer to docket numbers in No. 13-cv-1053 and "Class ECF No." to refer to docket numbers in No. 13-mc-1288.

was barred as a matter of law because it relied on the impermissibly speculative assumption that Treasury would have allowed FHFA to pay down Treasury's Liquidation Preference[2] in the GSEs enough that the GSEs would have been able to pay dividends to other shareholders. *See Fairholme I*, 2022 WL 4745970, at *9–10. The Court also held that one of plaintiffs' proposed remedies, rescission and restitution, was barred by a provision of the Recovery Act, or "HERA," prohibiting nonmonetary remedies for the FHFA's actions as conservator. *See id.* at *11–12. However, the Court allowed an alternative theory of harm to proceed to trial, one based on the loss in share value that the Net Worth Sweep allegedly caused by effectively eliminating the dividend rights that came with those shares. *See id.* at *11.

Shortly after the Court issued its summary judgment decision, both sets of plaintiffs filed a motion for leave to amend their pretrial statement, serve a supplemental expert report, and adjust the trial schedule, Berkley ECF No. 203, Class ECF No. 195, as well as a motion for clarification and/or partial reconsideration, Berkley ECF No. 204, Class ECF No. 196. The Court denied both motions. *See Fairholme Funds v. FHFA* ("*Fairholme II*"), Nos. 13-cv-1053-RCL, 13-mc-1288-RCL, 2022 WL 11110548 (D.D.C. Oct. 11, 2022). The first of those motions, and the Court's decision denying it, involved two of the same requests at issue in the present motions: (1) to serve a supplemental expert report by existing expert witness Dr. Joseph Mason, and (2) to present evidence and arguments concerning reliance damages. The Court denied both requests, in part because they came on the eve of trial. As to the former request, the Court further reasoned that plaintiffs had no excuse for failing to develop Dr. Mason's testimony earlier. *Id.* at *2–3. And as to the latter request, the Court also concluded that reliance damages were unavailable as a matter

---

[2] The Liquidation Preference is "a priority right before all other stockholders to receive distributions from assets in the event of a liquidation." *Fairholme I*, 2022 WL 4745970, at *2.

of Delaware and Virginia law, which govern the claims in these cases, since the sum sought—$48 billion—far exceeded ascertainable expectation damages. *Id.* at *3–4.

The Court held the jury trial as scheduled, beginning on October 17, 2022. *See* Minute Entry (Oct. 17, 2022). After three weeks, the jury hung, and the Court declared a mistrial. *See* Minute Entry (Nov. 7, 2022).

On February 7, 2023, the Court set a second jury trial to begin on July 24, 2023. *See* Minute Order (Feb. 7, 2023). Thereafter, plaintiffs in both cases filed a motion to serve supplemental expert reports by Dr. Mason and another existing expert, Dr. Bala Dharan. Defendants filed an opposition ("Supp. Expert Rep. Opp'n"), Berkley ECF No. 293, Class ECF No. 283, and plaintiffs filed a reply ("Supp. Expert Rep. Reply"), Berkley ECF No. 294, Class ECF No. 284. That motion is now ripe for review.

Subsequently, the Berkley Plaintiffs, but not the Class Action Plaintiffs, filed a motion for leave to present evidence and arguments concerning reliance damages, asking "the Court to reconsider its prior ruling precluding the Berkley Plaintiffs from seeking reliance damages in this case—or, in the alternative, to clarify that the basis for precluding such damages is solely the Court's ruling that they are unavailable as a matter of law, not any issue of timeliness or prejudice to defendants." Reliance Damages Mot. at 2. Defendants filed an opposition ("Reliance Damages Opp'n"), Berkley ECF No. 298, and the Berkley Plaintiffs filed a reply ("Reliance Damages Reply"), Berkley ECF No. 299. That motion is also ripe for review.

## II.   LEGAL STANDARDS

### A. Supplemental Expert Reports and Reopening Expert Discovery

Federal Rule of Civil Procedure 26(e)(1) provides as follows:

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:

(A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

(B) as ordered by the court.

Although that rule is phrased in terms of parties' *obligations*, courts have interpreted it to place certain limits on parties' ability to *voluntarily* serve supplemental discovery materials. "Courts do not allow supplemental or amended [expert] reports simply at the whim of a party;" in general, "they are permitted: '(1) upon court order; (2) when the party learns that the earlier information is inaccurate or incomplete; or (3) when answers to discovery requests are inaccurate or incomplete.'" *Barnes v. District of Columbia*, 289 F.R.D. 1, 6–7 (D.D.C. 2012) (quoting *Minebea Co., Ltd. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005)).

When a party seeks to serve an expert report that is not merely supplemental, that is effectively a request to reopen expert discovery, and thus it "falls under [Federal Rule of Civil Procedure] 16(b) . . . because it asks to modify the discovery deadlines contained in a scheduling order." *Cf. id.* at 14. That rule provides in relevant part that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Furthermore, once a court enters a final pretrial order, it may modify that order "only to prevent manifest injustice." Fed. R. Civ. P. 16(e).

## B. Reconsideration, Clarification, and the Law of the Case Doctrine

Motions for reconsideration of a prior order are governed by Federal Rule of Civil Procedure 60(b). Rule 60(b) motions are discretionary and allow the court to relieve a party or attorney "from a final judgment, order, or proceeding" for one of a list of enumerated reasons, such as "mistake, inadvertence, surprise, or excusable neglect"; "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under

Rule 59(b)"; or "fraud . . . , misrepresentation, or misconduct by an opposing party." Fed. R. Civ.

P. 60(b)(1)–(3); *see Jordan v. U.S. Dep't of Labor*, 331 F.R.D. 444, 448–49 (D.D.C. 2019). "In

addition to the enumerated grounds for relief listed in Rule 60(b)(1) through (5), Rule 60(b)(6)

permits relief based on 'any other reason that justifies relief.'" *Walsh v. Hagee*, 316 F.R.D. 2, 4

(D.D.C. 2015) (quoting Fed. R. Civ. P. 60(b)(6)). "This catchall provision has been interpreted to

apply when a party demonstrates 'extraordinary circumstances.'" *Marino v. Drug Enf't Admin.*,

685 F.3d 1076, 1079 (D.C. Cir. 2012) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*,

507 U.S. 380, 393 (1993)).

"Although no Federal Rule of Civil Procedure specifically governs 'motions for

clarification,' these motions are generally recognized and allowed by federal courts . . . . The

general purpose of a classic 'motion for clarification is to explain or clarify something ambiguous

or vague[.]'" *Barnes*, 289 F.R.D. at 13 n.6 (brackets in original) (citing *United States v. Philip

Morris USA Inc.*, 793 F. Supp. 2d 164, 168–69 (D.D.C. 2011) and quoting *Resolution Trust Corp.

v. KPMG Peat Marwick*, No. 92-cv-1373, 1993 WL 211555, at *2 (E.D. Pa. June 8, 1993)).

Also relevant to resolution of the Berkley Plaintiffs' motion is the law of the case doctrine.

That doctrine "refers to a family of rules embodying the general concept that a court involved in

later phases of a lawsuit should not re-open questions decided . . . by that court or a higher one in

earlier phases." *Wye Oak Technology, Inc. v. Republic of Iraq*, 24 F.4th 686, 697 (D.C. Cir. 2022)

(ellipsis in original) (internal quotation marks omitted) (quoting *Crocker v. Piedmont Aviation,

Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995)).

### III.   DISCUSSION

The Court will deny both of the present motions for many of the same reasons it denied

similar relief on the eve of the first trial, as well as one additional reason: Although the trial date

is further away this time, it would be unfair to allow plaintiffs to effectively reopen expert

discovery and/or inject an additional damages theory unavailable at the first trial simply because

they managed to convince a jury to at least hang.

### A.  Plaintiffs May Not Serve Supplemental Expert Reports

Not content to play with the evidentiary hand they were dealt for the first trial, plaintiffs

seek to draw a few new cards, in the form of supplemental expert reports by Dr. Dharan and Dr.

Mason. In plaintiffs' words, Dr. Dharan's proposed report adds four points to the opinions laid out

in his previous reports and his trial testimony:

> First, Dr. Dharan provides additional analysis regarding the
> payment-in-kind (PIK) option that he addressed in his initial expert
> report and testified about at trial . . . . Second, Dr. Dharan identifies
> supplemental support in response to [defense expert] Dr. Attari's
> event study by showing the absence of concern among GSE bond
> and MBS investors, a topic that Dr. Dharan addressed in his Rebuttal
> Report  . . . . Third, Dr. Dharan refers to multiple documents
> admitted [at] trial, as well as additional documents produced by
> FHFA and Treasury, supporting his preexisting opinion that the Net
> Worth Sweep was not reasonably needed to address any concerns
> over circular draws eroding the Treasury Commitment . . . . Fourth,
> Dr. Dharan supplements his trial testimony about "the outsized role
> played by non-cash accounting adjustments on the GSEs' financial
> performance between 2008 and 2021, particularly 2008 to 2013," in
> support of which he presented data (at trial) showing the impact that
> DTA valuation allowances and loan loss reserves (non-cash
> accounting adjustments) had on the GSEs' reported comprehensive
> income.

Supp. Expert Rep. Mot. at 4–7 (emphases and citations omitted). Dr. Mason's proposed report

addresses a single topic: his opinion that any loss in stock value caused by the announcement of

the Net Worth Sweep was not mitigated by a subsequent recovery in stock price. *See id.* at 8–11.

As an initial matter, the proposed reports are not merely supplemental in nature. That is,

plaintiffs do not assert that they seek to supplement or correct anything in the initial expert reports

that was "incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). Rather, they seek to *bolster* both

experts' existing testimony. In effect, plaintiffs are really asking the Court to reopen expert

discovery so that they can shore up points of their experts' opinions that they did not anticipate would feature as heavily at trial as they did. The motion is thus governed by Rule 16, not Rule 26(e).

As both parties note, neither the D.C. Circuit nor any court in this district has decided whether a request to reopen discovery between a trial and a retrial is governed by Rule 16(b)(4)'s "good cause" standard or Rule 16(e)'s "manifest injustice" standard. *See* Supp. Expert Rep. Opp'n at 14; Supp. Expert Rep. Reply at 7. This Court need not decide that question, because plaintiffs fail to meet even the lower bar of good cause.

Plaintiffs' stated "good cause" justification for Dr. Dharan's proposed report is that it "responds to various *new* opinions offered by Dr. Attari at trial, other testimony offered by Defendants' fact witnesses at trial, and inaccurate closing argument and misleading cross-examination offered by Defendants' counsel." Supp. Expert Rep. Reply at 8 (double emphasis in original). But that is not good cause to serve an entirely new report. To the extent that Dr. Dharan wishes to opine on expert testimony or other evidence that defendants may present at trial, plaintiffs are free to re-call him in their rebuttal case. Assuming it is otherwise admissible, such testimony would be entirely permissible under Rule 703, which allows an expert to apply his previously disclosed methodology to evidence "present[ed] at the trial," without filing a report outlining that specific opinion in advance. Fed. R. Evid. 703 Advisory Committee Note; *see Hill v. Reederei F. Laeisz G.M.B.H., Rostock*, 435 F.3d 404, 423 (3d Cir. 2006). And plaintiffs make no meaningful attempt to show good cause for Dr. Mason's proposed report, merely arguing that it would not *prejudice* defendants because it was disclosed far enough in advance of trial and

relates to an opinion discussed in his prior report. *See* Supp. Expert Rep. Mot. at 8–12; Supp. Expert Rep. Reply at 16.[3]

More broadly, the interim period between a first and second trial is not, absent extenuating circumstances, a proper time to reopen expert discovery. "Federal trial courts enjoy wide discretion in handling pretrial discovery matters," *Childers v. Slater*, 197 F.R.D. 185, 187 (D.D.C. 2000), and "[i]f a new trial is granted, . . . . [d]ecisions respecting the admission of additional witnesses and proof should be guided by considerations of fairness and justice to all parties," Wright & Miller, 11 Fed. Prac. & Proc., Civ. § 2803 (3d ed. Apr. 2023 update). This Court will not exercise its discretion in a manner that disrupts the orderly process of litigation and subverts basic principles of fairness to the nonmoving party. Generally speaking, "[a] new trial means just that; it does not also include new discovery." *Allied Erecting and Dismantling Co., Inc. v. U.S. Steel Corp.*, No. 4:12-cv-1390, 2021 WL 3847782, at *4 (N.D. Ohio Aug. 27, 2021). It would be patently unfair to defendants if the Court simply allowed plaintiffs, who generally bear the burden of proof in civil suits, a second chance to bolster a record on which they were unable to secure a unanimous verdict the first time around.

While plaintiffs cite some cases in which courts have allowed parties to serve supplemental or additional expert reports after the close of discovery, all but one of them are inapposite. Some did not involve a retrial. *See Barnes* 289 F.R.D. at 4–5; *Richardson v. Korson*, 905 F. Supp. 2d 193, 195–96 (D.D.C. 2012); *Dormu v. District of Columbia*, 795 F. Supp. 2d 7, 15–16 (D.D.C. 2011), *Nnadili v. Chevron U.S.A., Inc.*, Nos. 02-cv-1620-ESH-AK, 03-1593-ESH-AK, 2005 WL 6271043, at *1 (D.D.C. Aug. 11, 2005). Others involved special considerations or limitations not

---

[3] The Court reserves decision as to whether to reconsider its ruling at the first trial sustaining defendants' objection to Dr. Mason's testimony regarding a "recovery" in stock price, which was arguably based on an application of previously disclosed methodology to other testimony presented at trial.

at issue here. *See Mondis Tech. Ltd. v. LG Electronics, Inc.*, No. 15-cv-4431-SRC, 2020 WL 1933979, at *5 (D.N.J. Apr. 22, 2010) (after vacating jury's damages award and ordering retrial, allowing plaintiff to serve new expert report "based solely on the evidence presented at the previous trial"); *Hoffman v. Tonnemacher*, No. 04-cv-5714-AWI, 2006 WL 3457201, at *3–4 (E.D. Cal. Nov. 30, 2006) (allowing new expert to testify at retrial when expert who testified at first trial became unavailable); *Yong ex rel. Yong v. The Nemours Foundation*, 432 F. Supp. 2d 439, 441–42 (D. Del. 2006) (allowing plaintiffs to call new expert witness at retrial *in lieu* of expert witness who sought to testify on same subject at first trial but was disqualified from doing so).

   The only case plaintiffs cite in which a court in a similar posture allowed additional expert discovery between a trial and a retrial is an unpublished, out-of-circuit decision that also required the nonmoving party to pay attorneys' fees occasioned by the additional discovery. *See White v. McDermott*, No. 3:08-cv-634-JBA, 2010 WL 4876025, at *2–3 (D. Conn. Nov. 19, 2020). At least one other court has distinguished and declined to follow that case. *See Allied Erecting and Dismantling Co., Inc.*, No. 4:12-cv-1390, 2021 WL 5850693, at *5 (N.D. Ohio Dec. 9, 2021). This Court will do the same. Plaintiffs have not offered to pay defendants' way through the additional discovery, and at any rate, as just explained, the Court concludes in its discretion that it would be unfair to defendants to turn back the clock at this juncture.

   For these reasons, the motion for leave to serve supplemental expert reports will be denied.

## B. The Berkley Plaintiffs May Not Seek Reliance Damages

   Finally, the Berkley Plaintiffs' motion for leave to seek reliance damages at the retrial— which the Class Action Plaintiffs do not join—merits little discussion. The Court denied the same request just before the first trial, when plaintiffs sought leave to amend their pretrial statement, reasoning that granting the request would prejudice defendants because it came on the eve of trial,

and that reliance damages were barred as a matter of Delaware and Virginia law. *See Fairholme II*, 2022 WL 11110548, at \*3–4. Although the first reason no longer applies, the Court stands by the second and adds another.

The Berkley Plaintiffs' request is, in effect, nothing more than one for reconsideration of the Court's prior ruling on the availability of reliance damages. Defendants point out that "the Berkley Plaintiffs' motion does 'not even cite, much less apply, the stringent standard for reconsideration of a court's prior order'" under Rule 60(b). Reliance Damages Opp'n at 1 (quoting *Fairholme II*, 2022 WL 11110548, at \*6). True though that may be, the Berkley Plaintiffs are technically correct that, because they are not seeking reconsideration of the "order" that denied them a chance to amend their first pretrial statement, Rule 60(b) does not apply. *See* Reliance Damages Reply at 3; Fed. R. Civ. P. 60(b).

Nevertheless, the Court stands by its prior holding that reliance damages are unavailable as a matter of law, which is the law of this case. *See Wye Oak*, 24 F.4th at 697. The Berkley Plaintiffs acknowledge that the law of the case "doctrine would apply, at most, to the merits of seeking reliance damages," Reliance Damages Mot. at 4 (emphasis removed), and they make no effort to explain why the Court should depart from that doctrine here, except to rehash the same arguments they made before. The Court stands by its prior reasoning and reaffirms that reliance damages are unavailable here as a matter of Delaware and Virginia law because "plaintiffs asserting contract claims cannot recover reliance damages so far in excess of ascertainable expectation damages that they would necessarily place those plaintiffs in a better position than they would have been in had the contract been performed." *Fairholme II*, 2022 WL 11110548, at \*4.

Furthermore, even if the Court had reason to reconsider its prior holding on the merits, it would exercise its inherent "trial-management discretion" to preclude the injection of a new damages measure between the first and second trials, based on fairness concerns similar to those discussed above with respect to the proposed supplemental expert reports. *Cf. id.* at *3. Again, "[i]f a new trial is granted, . . . . [d]ecisions respecting the admission of additional witnesses and proof should be guided by considerations of fairness and justice to all parties," Wright & Miller, 11 Fed. Prac. & Proc., Civ. § 2803. Even assuming there would be no need to take additional discovery, it would be fundamentally unfair to defendants to require the presentation of evidence and arguments on an entirely new and substantial issue at the second trial simply because the jury hung at the first. That is particularly true where the issue "was alluded to once four [now five] years ago and never developed during discovery." *Fairholme II*, 2022 WL 11110548, at *3.

For these reasons, the Court will deny the Berkley Plaintiffs' motion for leave to seek reliance damages.

## IV.   CONCLUSION

For the foregoing reasons, the Court will **DENY** Plaintiffs' Motion to Serve Supplemental Expert Reports, and the Court will **DENY** the Berkley Plaintiffs' Motion to Present Evidence and Arguments Concerning Reliance Damages. A separate Order shall issue this date.

Date: June ⟍2⟋, 2023

Royce C. Lamberth
United States District Judge