**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| FAIRHOLME FUNDS, INC., *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>FEDERAL HOUSING FINANCE<br>AGENCY, *et al.*,<br><br>　　　　　Defendants. | Civil No. 13-1053 (RCL) |
| In re Fannie Mae/Freddie Mac Senior<br>Preferred Stock Purchase Agreement Class<br>Action Litigations<br><br>_____<br><br>This document relates to:<br>ALL CASES | Miscellaneous No. 13-1288 (RCL) |

## <u>DEFENDANTS' OMNIBUS MOTION TO REVISE JURY INSTRUCTIONS</u>

Defendants Federal Housing Finance Agency ("FHFA" or "Conservator"), as Conservator for the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac," and together with Fannie Mae, the "Enterprises"), and the Enterprises hereby move to revise the jury instructions given at the first trial as follows:

I.　　　　Motion To Revise Jury Instruction #1: Explaining an "Unreasonable" Action;

II.　　　　Motion To Revise Jury Instruction #2: Regarding Virginia Prejudgment Interest; and

III.　　　　Motion To Revise Jury Instruction #3: Regarding Nominal Damages.

The reasons supporting the revisions of the foregoing are set forth in the accompanying Memorandum in Support, and the relief requested is reflected in the Proposed Order being field with this motion.

Dated: June 9, 2023

Respectfully submitted,

  /s/ Asim Varma
Asim Varma (D.C. Bar # 426364)
Jonathan L. Stern (D.C. Bar # 375713)
David B. Bergman (D.C. Bar # 435392)
Ian S. Hoffman (D.C. Bar # 983419)
R. Stanton Jones (D.C. Bar # 987088)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave NW
Washington, D.C. 20001
(202) 942-5000
Asim.Varma@arnoldporter.com
Jonathan.Stern@arnoldporter.com
David.Bergman@arnoldporter.com
Ian.Hoffman@arnoldporter.com
Stanton.Jones@arnoldporter.com

*Attorneys for Defendant Federal Housing Finance Agency*


  /s/ Michael J. Ciatti
Michael J. Ciatti (D.C. Bar #467177)
KING & SPALDING LLP
1700 Pennsylvania Ave. N.W.
Washington, DC 20006
Tel: (202) 661-7828
Fax: (202) 626-3737
mciatti@kslaw.com

*Attorney for the Federal Home Loan Mortgage Corp.*

  /s/ Meaghan VerGow
Meaghan VerGow (D.C. Bar # 977165)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414
mvergow@omm.com

*Attorney for the Federal National Mortgage Association*

ii

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FAIRHOLME FUNDS, INC., *et al*., | |
| Plaintiffs, | |
| v. | Civil No. 13-1053 (RCL) |
| FEDERAL HOUSING FINANCE AGENCY, *et al.*, | |
| Defendants. | |
| In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations | |
| _____ | Miscellaneous No. 13-1288 (RCL) |
| This document relates to: ALL CASES | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF OMNIBUS MOTION TO REVISE JURY INSTRUCTIONS

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... ii

ARGUMENT ....................................................................................................... 1

I.     Motion To Revise Jury Instruction #1: Explaining an "Unreasonable" Action ................. 1

     A.    The Revised Instructions Are Supported by the Court's Rulings and Clarify the Relationship Between the Reasonableness of Defendants' Action and Shareholders' Objectively Reasonable Expectations Under the Shareholder Contracts at the Time of Contracting ...................................................... 4

     B.    The Revised Instructions Explain That Multiple Options Can Be Reasonable in a Given Set of Facts or Circumstances ................................................. 7

II.    Motion To Revise Jury Instruction #2: Regarding Virginia Prejudgment Interest ............ 9

     A.    Settled Virginia Law Requires the Jury To Weigh Two Competing Rationales in Deciding Whether to Award Prejudgment Interest ........................................... 10

     B.    The Prejudgment Interest Instruction From the First Trial Erroneously Omitted the "Bona Fide Legal Dispute" Factor Under Virginia's Balancing Test ............ 12

III.   Motion To Revise Jury Instruction #3: Regarding Nominal Damages............................ 14

CONCLUSION.................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**                                                                                                                          **Page**

*Almubarak v. Shahin*,
   1:19-cv-00358, 2021 WL 1846823 (E.D. Va. Mar. 26, 2021) ....................................11, 12, 13

*Breton, LLC v. Graphics Arts Mut. Ins. Co.*,
   No. 1:09-cv-60, 2010 WL 678128 (E.D. Va. Feb. 24, 2010) ..................................................12

*\*Continental Ins. Co. v. City of Virginia Beach*,
   908 F. Supp. 341 (E.D. Va. 1995) .......................................................................................11

*Citadel Holding Corp. v. Roven*,
   603 A.2d 818 (Del. 1992) ....................................................................................................10

*Cities of Batavia v. FERC*,
   672 F.2d 64 (D.C. Cir. 1982) ................................................................................................8

*Dunlap v. State Farm Fire & Cas. Co.*,
   878 A.2d 434 (Del. 2005) ......................................................................................................6

*Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*,
   1:13-CV-1053-RCL, 2022 WL 13937460 (D.D.C. Oct. 21, 2022) ................................ *passim*

*Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*,
   No. 1:13-cv-1053-RCL, 2022 WL 4745970 (D.D.C. Oct. 3, 2022) ................................4, 6, 8

*Foltz v. U.S. News & World Report, Inc.*,
   663 F. Supp. 1494 (D.D.C. 1987) .........................................................................................8

*Fortson v. Garrison Prop. & Cas. Ins. Co.*,
   No. 1:19-CV-294, 2022 U.S. Dist. LEXIS 14520 (M.D.N.C. Jan. 13, 2022) .........................9

*Gill v. Rollins Protective Services Co.*,
   836 F.2d 194 (4th Cir. 1987) ........................................................................................12, 13

*Heritage Disposal & Storage, L.L.C. v. VSE Corp.*,
   1:15-cv-1484, 2017 WL 361547 (E.D. Va. Jan. 24, 2017) ................................................9, 11

*Hewitt v. Hutter*,
   432 F. Supp. 795 (W.D. Va. 1977) ......................................................................................11

*Lum v. Nationwide Mut. Ins. Co.*,
   No. 78C-MY-55, 1982 WL 1585 (Del. Super. Ct. Apr. 27, 1982) ........................................10

*Miller v. HCP & Co.*,
   No. CV 2017-0291, 2018 WL 656378 (Del. Ch. Feb. 1, 2018) .............................................5

*Moore Bros. Co. v. Brown & Root, Inc.*,
    207 F.3d 717 (4th Cir. 2000) .................................................................10, 11, 13

*Oberwetter v. Hilliard*,
    680 F. Supp. 2d 152 (D.D.C. 2010) ...............................................................8

*\*Tech. & Supply Mgmt., LLC v. Johnson Controls Bldg. Automation Sys., LLC*,
    1:16-cv-303, 2017 WL 3219281 (E.D. Va. July 28, 2017) .................................11

*United Distrib.Cos. v. FERC*,
    88 F.3d 1105 (D.C. Cir. 1996) .....................................................................8

*\*Wells Fargo Equip. Fin., Inc. v. State Farm Fire and Cas. Co.*,
    823 F. Supp. 2d 364 (E.D. Va. 2011) ............................................... *passim*

**Statutes, Rules & Regulation**

Va. Code § 8.01-382 ...................................................................................10

**Other Authorities**

BLACK'S LAW DICTIONARY (11th ed. 2019) ....................................................4

*Laesseter v. Kerr*,
    No. CL0432, 2006 WL 2630961 (Va. Cir. Ct.) (Jury Insturction) .........................12

Delaware Civil Pattern Jury Instruction 22.24. ...............................................14

For the reasons set forth below, Defendants respectfully request that, for the upcoming retrial, the Court revise certain of the Final Jury Instructions that were used at the first trial.

## ARGUMENT

## I.     Motion To Revise Jury Instruction #1: Explaining an "Unreasonable" Action

To establish a breach of implied covenant in this case, Plaintiffs must prove by a preponderance of the evidence that "FHFA's actions in agreeing to the Net Worth Sweep *arbitrarily or unreasonably* violated shareholders' objectively reasonable expectations under the shareholder contracts . . . ." Final Jury Instrs. at 8 (*Fairholme* ECF No. 240; Class ECF No. 250) (emphasis added).[1]  At the first trial, the jury was instructed that the relevant objectively reasonable expectations of shareholders were those as of December 24, 2009, when the Second Amendment was executed.  *Id.*; *see also Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency* ("*Fairholme MIL Ruling*"), 1:13-CV-1053-RCL, 2022 WL 13937460, at *5–6 (D.D.C. Oct. 21, 2022).  And after the parties submitted competing proposals defining the key terms "arbitrary" and "unreasonable," the Court adopted Plaintiffs' proposed instruction and instructed the jury:

> In general, arbitrary actions or decisions are those that are taken or made without appropriate consideration of or regard for the existing facts and circumstances, or that are not supported by fair, solid, and substantial cause in light of all the facts and circumstances; while unreasonable actions or decisions are those that are not guided by reason, that are beyond what can be expected or beyond the limits of acceptability or fairness, or that are lacking justification in fact or circumstance.

Final Jury Instrs. at 8.

During deliberations at the first trial, the jury sent a note stating: "Members of the jury have requested to have the terms 'arbitrarily' and 'unreasonably' explained in layman's terms, more plain language, and/or not in such legal language."  Jury Note No. 3 (*Fairholme* ECF No.

---

[1]     "*Fairholme* ECF No." refers to Case No. 1:13-cv-1053-RCL, and "Class ECF No." refers to Case No. 1:13-mc-1288-RCL.

250; Class ECF No. 259).  After consulting with the parties, the Court returned a note directing

the jury to the same instruction set forth above.  *See* Response to Jury Note No. 3 (*Fairholme*

ECF No. 260; Class ECF No. 251); Trial Tr. 2855:13–2856:6.

Defendants respectfully request that the Court revise the jury instructions to provide more

guidance and context to the jury on the application of the legal standard—including the meaning

of the term "unreasonable"—to the facts of this case.  In particular, the jury instructions from the

first trial described a "general" meaning of arbitrary and unreasonable decisions, and the

instructions separately identified the elements of the implied covenant claim that Plaintiffs must

prove.  Final Jury Instrs. at 9.  But that abstract explanation of arbitrary or unreasonable actions

may be difficult for jurors to understand and apply, as illustrated by the jury's request for

clarification during the first trial.  Accordingly, Defendants propose that the Court revise the jury

instructions on pages 8 and 9 as reflected by the mark-up below, and attached hereto as Exhibit

A, with proposed new text in red and proposed deletions struck through:

> All contracts, including plaintiffs' shareholder contracts, contain an implied
> covenant of good faith and fair dealing. The implied covenant of good faith and
> fair dealing is not spelled out in the express terms of the contract, and it does not
> add any new terms to the contract. Rather, it is an obligation to be faithful to the
> meaning and purpose of the parties' agreement.
>
> A party to a contract violates the implied covenant of good faith and fair dealing if
> it acts arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that
> the asserting party reasonably expected.  In general, arbitrary actions or decisions
> are those taken or made without appropriate consideration of or regard for the
> existing facts and circumstances, or that are not supported by fair, solid, and
> substantial cause in light of all the facts and circumstances; while unreasonable
> actions or decisions are those that are not guided by reason, that are beyond what
> can be expected or beyond the limits of acceptability or fairness, or that are
> lacking justification in fact or circumstance.  There can be multiple reasonable
> options in a given set of facts and circumstances.  Where plaintiffs allege a
> violation of the implied covenant of good faith and fair dealing, the finder of fact
> must assess what is arbitrary or unreasonable based on the parties' objectively
> reasonable expectations under the contract.  In evaluating whether a decision was
> reasonable based on the parties' objectively reasonable expectations under the

2

contract, you may consider the decision maker's objectives, obligations, and the facts and circumstances at the time the action was taken.

~~In addition, a plaintiff alleging a violation of the implied covenant must show that the alleged breach caused them financial harm.~~

In this case, plaintiffs allege that FHFA, in agreeing to the Net Worth Sweep as a part of the Third Amendment to the PSPAs with Treasury, breached the implied covenant of good faith and fair dealing by eliminating any possibility that shareholders other than Treasury would receive dividends in the future, thereby depriving plaintiffs' shares of much of their value.

Defendants respond that based on the parties' objectively reasonable expectations under the contract as of December 24, 2009, the Net Worth Sweep was reasonable because it was justified by facts and circumstances known to FHFA in August 2012.

To establish a breach of the implied covenant of good faith and fair dealing in this case, each class of plaintiffs must prove by a preponderance of the evidence that (1) FHFA's actions in agreeing to the Net Worth Sweep arbitrarily or unreasonably violated shareholders' objectively reasonable expectations under the shareholder contracts and (2) as a result, plaintiffs' shares became less valuable.

Your assessment of ~~In assessing~~ what plaintiffs' reasonable expectations ~~were~~ under the contracts in this case must be based on their reasonable expectations as of December 24, 2009.  In making that assessment, you may consider the text of the certificates of designation that came with plaintiffs' shares, as well as the terms of the Housing and Economic Recovery Act or "HERA," the Senior Preferred Stock Purchase Agreements or "PSPAs" between Treasury and FHFA and the first two amendments to those agreements, the nature of Fannie Mae and Freddie Mac as government sponsored entities or "GSEs," and public statements by FHFA explaining the beginning of the conservatorship in 2008. While HERA authorized FHFA to act in the best interests of the GSEs, the FHFA, or the public, FHFA's exercise of that statutory authority can still have violated the implied covenant of good faith and fair dealing if it exercised that authority in a way that arbitrarily or unreasonably violated plaintiffs' reasonable expectations under the contract. In addition, you should keep in mind that the question is not what any actual shareholder, including any of the plaintiffs in this case, ~~subjectively~~ expected.  Instead, the question is what an imaginary or hypothetical "reasonable" shareholder would have expected, based on information known or available to that hypothetical reasonable shareholder as of December 24, 2009.

As discussed further below, these revised instructions are consistent with the Court's

rulings and the relevant caselaw, and they provide more guidance to the jury.

3

**A.  The Revised Instructions Are Supported by the Court's Rulings and Clarify the Relationship Between the Reasonableness of Defendants' Action and Shareholders' Objectively Reasonable Expectations Under the Shareholder Contracts at the Time of Contracting**

For purposes of an implied covenant claim, the jury must evaluate whether FHFA's decision to agree to the Third Amendment *unreasonably* violated shareholders' objectively reasonable expectations under their shareholder contracts as of December 24, 2009.  "The question is not whether defendants acted reasonably *in the abstract*—rather, '[w]hen conducting this analysis, [a fact finder] must assess the parties' reasonable expectations at the time of contracting.'"  *Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency* ("*Fairholme MSJ Ruling*"), No. 1:13-cv-1053-RCL, 2022 WL 4745970, at *5 (D.D.C. Oct. 3, 2022) (citations omitted) (emphasis in original).  Thus, the assessment of whether an action was unreasonable must be informed by the expectations of shareholders under the shareholder contracts at the time of contracting (here, as of December 24, 2009).  However, the jury instructions from the first trial, adopted from Plaintiffs' proposed instructions, omit that connection by defining the term "unreasonable" to include a decision or action "beyond what can be expected" or "beyond the limits of . . . fairness."  Final Jury Instrs. at 9.  The jury found the definition confusing.

Even case law addressing the term "unreasonable" in a broader context does not support that an action is "unreasonable" if it is "beyond what can be expected."  The cases, dictionaries, and other sources cited by Plaintiffs do not support the instruction's direction to evaluate whether an action was "unreasonable" in terms of "what can be expected."  *See* Pls. Proposed Jury Instrs. at 37–38 n.30 (*Fairholme* ECF No. 178-4), at 6 n.4 (Class ECF No. 224-2) (citing sources); *see, e.g.*, Unreasonable, BLACK'S LAW DICTIONARY (11th ed. 2019) ("1. Not guided by reason; irrational or capricious.").  Therefore, the notion of what is "expected" should be removed from the general definition of "unreasonable."

4

In addition to lacking support in the law, the "beyond what can be expected" language is confusing and circular.  In this case, it is critical for the jury to understand the concept of shareholder expectations under the shareholder contracts because those expectations determine whether FHFA's decision to enter into the Third Amendment frustrated the shareholders' bargain.  As this Court has explained, "whether defendants acted arbitrarily or unreasonably and thereby breached the implied covenant is *determined in reference to plaintiffs' reasonable expectations*." *Fairholme MIL Ruling*, at *3 (emphasis added).  Moreover, "a party to a contract violates the implied covenant of good faith and fair dealing if it acts arbitrarily or unreasonably, *thereby* frustrating the fruits of the bargain that the asserting party reasonably *expected*."  Final Jury Instrs. at 8 (emphasis added).  Taken as a whole, the instructions from the first trial may not adequately identify the link between the jury's consideration of the alleged unreasonableness of FHFA's actions and shareholders' reasonable expectations under the shareholder contracts at the time of contracting.  In particular, using the phrase "beyond what can be expected" to define whether an action is unreasonable might muddle the jury's understanding of the applicable legal standard for Plaintiffs' implied covenant claim.  When combined with "expectations," the current definition of "unreasonable" is circular, with the jury being tasked to determine shareholders' "reasonable expectations" based on "what can be expected."

The instructions also define "unreasonable" to mean "beyond the limits of . . . fairness."  Final Jury Instrs. at 8.  But whether a particular action is "fair" is relevant only to determining whether challenged "actions [were] consonant with the terms of the parties' agreement and its purpose."  *Miller v. HCP & Co.*, No. CV 2017-0291, 2018 WL 656378, at *9 (Del. Ch. Feb. 1, 2018), *aff'd sub nom. Miller v. HCP Trumpet Invs., LLC*, 194 A.3d 908 (Del. 2018) (quotation marks omitted).  The implied covenant does not "circumvent the parties' bargain, or [ ] create a

5

'free-floating duty[ ]unattached to the underlying legal document." *Dunlap v. State Farm Fire &*
*Cas. Co.*, 878 A.2d 434, 442 (Del. 2005).  Thus, introducing an abstract notion of "fairness" as
an independent basis for finding a breach of the implied covenant is confusing and potentially
misleading because it is not tethered to shareholders' reasonable expectations under the
shareholder contracts at the time of contracting.

Defendants accordingly propose that the phrases "beyond what can be expected" and
"beyond the limits of . . . fairness" be deleted from the definition of "unreasonable" in the jury
instructions because the phrases do not appropriately guide the jury in assessing "whether
[FHFA] acted arbitrarily or unreasonably" as "determined in reference to plaintiffs' reasonable
expectations" under the shareholder contracts at the time of contracting.  *Fairholme MIL Ruling*,
at *3.  As this Court has held, "[w]hether defendants acted reasonably and whether they violated
plaintiffs' reasonable expectations are not two separate prongs; rather, the former is determined
*in reference* to the latter."  *Fairholme MSJ Ruling*, at *6 (original emphasis).

In addition to omitting those phrases that are confusing and at odds with the legal
standard applicable to Plaintiffs' claim, Defendants propose certain additional language to
clarify the instructions further.  First, the Court should add clarifying language that focuses
the jury on what to consider in assessing the reasonableness of FHFA's action in the context
of this case, namely: "In evaluating whether a decision was reasonable based on the parties'
objectively reasonable expectations under the contract, you may consider the decision maker's
objectives, obligations, and the facts and circumstances at the time the action was taken."  This
proposed sentence breaks down the definition of unreasonable actions—"those that are not
guided by reason or that are lacking justification in fact or circumstance"—into its components:
what were the objectives of the action, why was the action taken, and was it guided by reasons in

light of the facts and circumstances at the time.  As such, it allows the same legal standard to be more easily consumed by the lay juror.

Second, Defendants also propose adding in the appropriate places in the instructions that the relevant reasonable expectations of shareholders are those as of December 24, 2009.  This Court has previously acknowledged that information after December 24, 2009 can be "relevant to the *circumstances* surrounding the adoption of the Third Amendment, and whether FHFA, in its role as conservator, reacted to those circumstances in a manner that shareholders reasonably could have expected given the most recent, meaningful change in the contract."  *Fairholme MIL Ruling*, at *6.  Because an extensive amount of information in the cases occurs after December 24, 2009, adding the date into the jury instructions will reinforce that the reasonable expectations arise from the contract alone as of December 24, 2009, and not from some other source.

Finally, while Plaintiffs' claim is summarized in the instructions, Defendants' position is nowhere summarized.  Stating the Defendants' position after the Plaintiffs' position again connects the dots between the legal standard and the facts of this case, and would facilitate the jury's understanding of the issues they are to consider as fact finder.  Moreover, the new language fairly balances the instruction by providing both Plaintiffs' and Defendants' position. The proposed language is: "Defendants respond that based on shareholders' objectively reasonable expectations under the shareholders contracts as of December 24, 2009, the Net Worth Sweep was reasonable because it was justified by facts and circumstances known to FHFA in August 2012."

### B.    The Revised Instructions Explain That Multiple Options Can Be Reasonable in a Given Set of Facts or Circumstances

In light of the jury's request for greater clarity and less legalese in the first trial, Defendants propose to provide further guidance relevant to this case by adding the following

sentence to the instructions: "There can be multiple reasonable options in a given set of facts and circumstances." This addition is particularly appropriate here because the Court has already held that FHFA had no statutory duty to make decisions that were best for shareholders—Defendants' obligation under the shareholder contracts was to forgo arbitrary or unreasonable decisions that would frustrate the reasonable expectations of shareholders under the shareholder contracts at the time of contracting. *Fairholme MSJ Ruling*, at *5 (citations omitted).

"Reasonable" and its variants are terms applied by courts in many contexts where the challenged conduct is evaluated through comparison to the conduct of a hypothetical "reasonable" person. In no context does assessment of whether the defendant acted reasonably require that the defendant select the best option among reasonable alternatives. For example, in cases where the applicable standard is whether the challenged act was arbitrary or capricious, a finding that the option selected was reasonable under the circumstances, even if not the best option from the plaintiffs' perspective, is sufficient to demonstrate that the action was not arbitrary and capricious. *See, e.g.*, *Foltz v. U.S. News & World Report, Inc.*, 663 F. Supp. 1494, 1514, 1519 (D.D.C. 1987) (trustee with fiduciary duty to ERISA plan participants was not required to select alternative that maximized benefits to departing employees but only required to choose among reasonable alternatives); *United Distribution Cos. v. FERC*, 88 F.3d 1105, 1169 (D.C. Cir. 1996) (the existence of a second reasonable action does not make the action chosen unreasonable) (citing *Cities of Batavia v. FERC,* 672 F.2d 64, 84 (D.C. Cir. 1982) (the selected course "need only be reasonable, not theoretically perfect")).

Cases in other contexts likewise make clear that the facts and circumstances of a case may allow for multiple reasonable alternatives. *See, e.g.*, *Oberwetter v. Hilliard*, 680 F. Supp. 2d 152, 164–65 (D.D.C. 2010), *aff'd*, 639 F.3d 545 (D.C. Cir. 2011) (a prohibition does not violate

the First Amendment if "[t]he [g]overnment's decision to restrict access to a nonpublic forum [is] reasonable; it need not be the most reasonable or the only reasonable limitation") (internal citation omitted)); *Fortson v. Garrison Prop. & Cas. Ins. Co.*, No. 1:19-CV-294, 2022 U.S. Dist. LEXIS 14520, at *24 (M.D.N.C. Jan. 13, 2022) ("Whatever 'reasonable' means, it does not mean 'perfect' or 'the best practice.'").

The addition of the sentence "[t]here can be multiple reasonable options in a given set of facts and circumstances" provides appropriate clarification to the jury that is fully consistent with the law and should avoid potential juror confusion in the second trial.

## II.        Motion To Revise Jury Instruction #2: Regarding Virginia Prejudgment Interest

Settled Virginia law requires that, in deciding whether to award prejudgment interest, a jury must weigh (1) "the desire to make the prevailing party whole" against (2) "the losing party's right to litigate a bona fide legal dispute." *Heritage Disposal & Storage, L.L.C. v. VSE Corp.*, 1:15-cv-1484, 2017 WL 361547, at *14 (E.D. Va. Jan. 24, 2017). A jury's decision whether to award prejudgment interest must be based on weighing these "two competing rationales, the first weighs in favor of granting prejudgment interest while the second cautions against its award." *Wells Fargo Equip. Fin., Inc. v. State Farm Fire and Cas. Co.*, 823 F. Supp. 2d 364, 366 (E.D. Va. 2011).

Contrary to this settled law, the jury instruction on Virginia prejudgment interest at the first trial, which was adapted from Plaintiffs' proposal, mentioned only the first of the two competing considerations (the desire to make the prevailing party whole, which favors awarding interest) and omitted the second consideration (a losing party's right to litigate a legitimate legal dispute, which cautions against awarding interest), which was included in Defendants' proposed jury instruction. By omitting half of the test, that instruction is materially incomplete in a manner that erroneously and unfairly advantages Plaintiffs and prejudices Defendants. The

instruction should be revised to identify *both* competing rationales that the jury must consider under Virginia law in deciding whether to award prejudgment interest.[2]

**A.  Settled Virginia Law Requires the Jury To Weigh Two Competing Rationales in Deciding Whether to Award Prejudgment Interest**

Under Virginia law, the factfinder—here, the jury—has discretion to award prejudgment interest.  In any "action at law or suit in equity, the final order, verdict of the jury . . . *may* provide for interest on any principal sum awarded, or any part thereof, and fix the period at which the interest shall commence."  Va. Code § 8.01-382 (emphasis added).  "In exercising its discretion, [the jury] 'must weigh the equities in a particular case to determine whether an award of prejudgment interest is appropriate.'"  *Wells Fargo Equip.*, 823 F. Supp. 2d at 366 (quoting *Moore Bros. Co. v. Brown & Root, Inc.*, 207 F.3d 717, 727 (4th Cir. 2000)).

"Underlying a [jury's] weighing of the equities are *two competing rationales*, the first weighs in favor of granting prejudgment interest while the second cautions against its award."  *Id.* (emphasis added).  "The first is a notion that the party, denied use of money to which it is rightfully entitled, should be compensated for that loss, and full compensation includes interest."  *Id*.  "By contrast, under the second rationale," prejudgment interest may be unwarranted "when the legal dispute is bona fide."  *Id.* at 366-67.  "Under this line of reasoning, … equity counsels

---

[2]    This motion addresses the jury instruction under Virginia law applicable only to Plaintiffs' claim against Freddie Mac.  It does not address the Delaware law that applies to the claim against Fannie Mae because under Delaware law, the Court, not the jury, would decide whether to award prejudgment interest.  *See Citadel Holding Corp. v. Roven*, 603 A.2d 818, 826 (Del. 1992).  Like Virginia law, Delaware law restricts the circumstances in which prejudgment interest should be awarded, and, at the appropriate time, Defendants are prepared to provide the Court with briefing about the principles that would govern a decision whether to award prejudgment interest on an award of damages against Fannie Mae.  *See, e.g., Lum v. Nationwide Mut. Ins. Co.*, No. 78C-MY-55, 1982 WL 1585, at *5 (Del. Super. Ct. Apr. 27, 1982), *aff'd*, 461 A.2d 693 (Del. 1983) ("Pre-judgment interest should only be awarded in those cases in which the amount of damages owed by the defendant is so readily ascertainable … that the defendant could have opted to simply pay the plaintiff immediately, rather than force him or her to obtain judicial relief through litigation").

against penalizing the defendants for exercising their right to litigate any bona fide legal questions by imposing on them an obligation to pay a large sum of prejudgment interest." *Id.* at 367 (citation, internal quotation marks, and bracketing omitted).  Thus, "the existence of a bona fide legal dispute" may guide a jury "against granting prejudgment interest"; it is "a factor" that juries "may appropriately consider within their equitable determination" about prejudgment interest. *Id.*; *see also Almubarak v. Shahin*, 1:19-cv-00358, 2021 WL 1846823, at *3 (E.D. Va. Mar. 26, 2021) (noting that the "existence of a bona fide dispute tilts the scale in favor of denying prejudgment interest").

Applying these settled principles, factfinders have denied prejudgment interest where the case involved a bona fide legal dispute, even though the plaintiff ultimately prevailed.  For example, in *Continental Ins. Co. v. City of Virginia Beach*, prejudgment interest was denied in a breach-of-contract case because "the problems arose over the interpretation of a contract, prejudgment interest is high, and both parties acted in good faith."  908 F. Supp. 341, 349 (E.D. Va. 1995); *see also, e.g.*, *Tech. & Supply Mgmt., LLC v. Johnson Controls Bldg. Automation Sys., LLC*, 1:16-cv-303, 2017 WL 3219281, at *20 (E.D. Va. July 28, 2017) (denying prejudgment interest where successful contract claim "was subject to a substantial and bona fide dispute"); *Heritage*, 2017 WL 361547, at *14 (denying prejudgment interest where successful contract claim "was the subject to a good faith dispute"); *Moore Bros. Co.*, 207 F.3d at 727 (affirming denial of prejudgment interest where "legitimate controversy existed" in contractual dispute); *Hewitt v. Hutter*, 432 F. Supp. 795, 800 (W.D. Va. 1977) (denying prejudgment interest where "the court was required to resolve some difficult issues regarding the validity of a contract," and "the arguments advanced by the defendants were not entirely without merit"), *aff'd*, 574 F.2d 182 (4th Cir. 1978).

Under these settled principles of Virginia law, a jury must be instructed on *both* of the

competing rationales that guide the jury's discretionary determination whether to award

prejudgment interest.[3] It would be plain legal error to omit either of the competing rationales.

### B. The Prejudgment Interest Instruction From the First Trial Erroneously Omitted the "Bona Fide Legal Dispute" Factor Under Virginia's Balancing Test

Contrary to the settled law set out above, the jury instruction on prejudgment interest at

the first trial referenced only the first half of Virginia's balancing test and omitted any mention

of the "bona fide legal dispute" factor.  That instruction, which the Court adapted from Plaintiffs'

proposal, stated in full:

> Under Virginia law, which applies to the claims of the Freddie Mac common and
> junior preferred shareholders, if you decide to award damages to those plaintiffs in
> any amount, you may award prejudgment interest at the rate of 6% per year and fix
> a date from which interest is to begin.  *Prejudgment interest is permitted by statute*
> *and is designed to compensate the plaintiffs for the loss sustained by not having the*
> *value they were entitled to have at the time they were entitled to have it.*  If you
> decide that an award of prejudgment interest is necessary to make the Freddie Mac
> junior preferred and common shareholders whole, it is within your discretion to
> choose the date from which that interest should begin, at any point from the date
> that the injury (if any) to the Freddie Mac junior preferred and common
> shareholders occurred to the date of the trial.

Final Jury Instrs. at 10 (*Fairholme* ECF No. 240; Class ECF No. 250) (emphasis added).[4]

---

[3]     There is no form jury instruction for prejudgment interest in Virginia.  However, the
following jury instruction from a Virginia state court confirms that a jury must consider the
defendant's right to litigate a bona fide legal dispute: "In deciding whether to grant prejudgment
interest *you should consider the legitimacy of the controversy*, any delay which is attributable to
individual parties, and any specific loss sustained by the Plaintiff in not immediately receiving
the amount to which he was entitled."  *Laesseter v. Kerr*, No. CL0432, 2006 WL 2630961 (Va.
Cir. Ct. Feb. 2006) (Jury Instruction) (emphasis added).

[4]     During the first trial, Plaintiffs argued that the Fourth Circuit's decision in *Gill v. Rollins*
*Protective Services Co.*, 836 F.2d 194 (4th Cir. 1987), precluded a jury instruction that included
the "bona fide legal dispute" factor.  Trial Tr. 2468:21–69:6.  This is wrong.  First, as many
courts have held, *Gill* simply rejected the notion that prejudgment interest may *never* be awarded
if there is a "bona fide legal dispute."  836 F.2d at 199; *see* also *Wells Fargo Equip.*, 823 F.
Supp. 2d at 366; *Almubarak*, 2021 WL 1846823, at *3; *Breton, LLC v. Graphics Arts Mut. Ins.*
*Co.*, No. 1:09-cv-60, 2010 WL 678128, at *4 (E.D. Va. Feb. 24, 2010).  It did not hold that a jury
may not consider the "bona fide legal dispute" factor as part of its consideration of whether to

On its face, this instruction states only one of the two competing rationales required under Virginia law that guide a jury's determination regarding prejudgment interest— specifically, the first rationale that "weighs in favor of granting prejudgment interest." *Wells Fargo Equip.*, 823 F. Supp. 2d at 366.  The instruction omits entirely the required second competing rationale—that is, the "existence of a bona fide dispute" which "tilts the scale in favor of denying prejudgment interest." *Almubarak*, 2021 WL 1846823, at *3.  This is erroneous and should be corrected for three main reasons.

*First*, the instruction's omission of the "bona fide legal dispute" factor is inconsistent with settled Virginia law, as described above.  *See supra* Part I.  It is therefore legally erroneous.

*Second*, the omission of the "bona fide legal dispute" factor is prejudicial to Defendants. The instruction states that prejudgment interest "is designed to compensate the plaintiffs," which suggests that the legal test is focused *only* on benefitting Plaintiffs.  Final Jury Instrs. at 10 (*Fairholme* ECF No. 240; Class ECF No. 250).  The instruction prejudices Defendants by focusing solely on the need to compensate Plaintiffs without the countervailing half of the balancing test that favors Defendants by cautioning against prejudgment interest when the case involved a bona fide legal dispute.

*Third*, the erroneous omission of the "bona fide legal dispute" factor is material here because a jury could easily conclude that this case is a bona fide legal dispute.  Indeed, the fact that the jury hung at the first trial conclusively establishes that the dispute here is a bona fide legal dispute.

---

award prejudgment interest.  Second, courts applying *Gill* hold that the existence of a bona fide legal dispute remains a factor to be considered.  *E.g.*, *Wells Fargo Equip.*, 823 F. Supp. 2d at 366; *Almubarak*, 2021 WL 1846823, at *3.  Third, the Fourth Circuit has *subsequently* affirmed denial of prejudgment interest under Virginia law precisely because of a bona fide legal dispute. *See Moore Bros.*, 207 F.3d at 727.

For these reasons, the jury instruction should be revised to set forth *both* of the competing

rationales so that jurors can weigh them as required by Virginia law.  Defendants' proposed jury

instruction, attached hereto as Exhibit B, articulates both factors of the legal test under Virginia

law.  It states:

> In deciding whether or not to award prejudgment interest, Virginia law requires that you consider *whether there was a bona fide legal dispute* between the parties (that is, whether or not there was a legitimate or good faith controversy between the parties), which, if present, weighs against awarding prejudgment interest, ***and whether Plaintiffs sustained any loss in not receiving the amount of money*** that you may have awarded as damages at the time Plaintiffs were entitled to receive it, which weighs in favor of awarding prejudgment interest.

Exhibit B (emphasis added).[5]

## III.       Motion To Revise Jury Instruction #3: Regarding Nominal Damages

Defendants hereby propose adding an instruction on nominal damages, as set forth in the

attached Exhibit C.  This instruction is adapted from Delaware Civil Pattern Jury Instruction

22.24.

### CONCLUSION

For the foregoing reasons, the Court should:

I.        Revise the jury instructions' explanation of an "unreasonable" action;

II.       Revise the jury instruction on Virginia prejudgment interest; and

III.      Revise the jury instruction to address nominal damages.

---

[5] This language also clarifies for the jury which factor weighs against and which factor weighs in favor of awarding prejudgment interest, thus reducing risk of juror confusion.

Dated: June 9, 2023                    Respectfully submitted,

                                       /s/ Asim Varma
                                       Asim Varma (D.C. Bar # 426364)
                                       Jonathan L. Stern (D.C. Bar # 375713)
                                       David B. Bergman (D.C. Bar # 435392)
                                       Ian S. Hoffman (D.C. Bar # 983419)
                                       R. Stanton Jones (D.C. Bar # 987088)
                                       ARNOLD & PORTER KAYE SCHOLER LLP
                                       601 Massachusetts Ave NW
                                       Washington, D.C. 20001
                                       (202) 942-5000
                                       Asim.Varma@arnoldporter.com
                                       Jonathan.Stern@arnoldporter.com
                                       David.Bergman@arnoldporter.com
                                       Ian.Hoffman@arnoldporter.com
                                       Stanton.Jones@arnoldporter.com

                                       *Attorneys for Defendant Federal Housing
                                       Finance Agency*


 /s/ Michael J. Ciatti                      /s/ Meaghan VerGow
Michael J. Ciatti (D.C. Bar # 467177)   Meaghan VerGow (D.C. Bar # 977165)
KING & SPALDING LLP                     O'MELVENY & MYERS LLP
1700 Pennsylvania Ave. N.W.             1625 Eye Street, N.W.
Washington, DC 20006                    Washington, DC 20006
Tel: (202) 661-7828                     Tel: (202) 383-5300
Fax: (202) 626-3737                     Fax: (202) 383-5414
mciatti@kslaw.com                       mvergow@omm.com

*Attorney for the Federal Home Loan     *Attorney for the Federal National Mortgage
Mortgage Corp.*                         Association*