# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BERKLEY INSURANCE CO., *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 1:13-cv-1053-RCL |
| FEDERAL HOUSING FINANCE AGENCY, *et al.*, | |
| Defendants. | |
| In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations | |
| _____ | Case No. 1:13-mc-1288-RCL |
| This document relates to: ALL CASES | |

## REPLY IN SUPPORT OF DEFENDANTS' OMNIBUS
## <u>MOTION TO REVISE JURY INSTRUCTIONS</u>

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

I.    The Court Should Adopt Defendants' Proposed Language to Clarify the Meaning of
      Arbitrary and Unreasonable .......................................................................................... 1

    A.    Plaintiffs Cannot Deny the Relevance of Existing Facts and Circumstances at
        the Time of the Challenged Decision.................................................................... 1

    B.    Defendants' "Multiple Reasonable Options" Language Is Appropriate................. 4

    C.    The Description of "Unreasonable" As "Beyond What Can Be Expected or
        Beyond the Limits of Acceptability or Fairness" Is Confusing and Should Be
        Omitted ................................................................................................................. 5

    D.    It Is Appropriate for the Instructions to Reflect Defendants' Response to
        Plaintiffs' Allegations Alongside the Underlying Allegations ............................. 6

II.   The Court Should Revise the Jury Instruction Regarding Virginia Prejudgment Interest
      to Reflect Both Competing Rationales the Jury Must Consider Under Virginia Law........ 8

III.  The Court Should Add a Nominal Damages Instruction .................................................. 12

CONCLUSION................................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Almubarak v. Shahin*,
  No. 1:19-cv-00358, 2021 WL 1846823 (E.D. Va. Mar. 26, 2021)............................................9

*Am. Healthcare Admin. Servs., Inc. v. Aizen*,
  285 A.3d 461 (Del. Ch. 2022)..............................................................................................5

*ASB Allegiance Real Est. Fund v. Scion Breckenridge Managing Member, LLC*,
  50 A.3d 434 (Del. Ch. 2012)..............................................................................................6

*Breton, LLC v. Graphics Arts Mut. Ins. Co.*,
  No. 1:09-cv-60, 2010 WL 678128 (E.D. Va. Feb. 24, 2010) ...........................................9

*Crist v. Metro. Mortg. Fund, Inc.*,
  343 S.E.2d 308 (Va. 1986)..........................................................................................12, 13

*\*Fairholme Funds, Inc. v. FHFA*,
  Nos. 13-cv-1053, 13-mc-1288, 2022 WL 13937460 (D.D.C. Oct. 21, 2022) ......................2, 4

*\*Gerber v. Enter. Prods. Holdings, LLC*,
  67 A.3d 400 (Del. 2013) ...............................................................................................5, 6

*Heritage Disposal & Storage, L.L.C. v. VSE Corp.*,
  No. 1:15-cv-1484, 2017 WL 361547 (E.D. Va. Jan. 24, 2017)........................................9

*Ivize of Milwaukee, LLC v. Compex Litig. Support, LLC*,
  C.A. Nos. 3158, 3406, 2009 WL 1111179 (Del. Ch. Apr. 27, 2009)...............................12

*Lake Treasure Holdings, Ltd. v. Foundry Hill GP LLC*,
  C.A. No. 6546, 2014 WL 5192179 (Del. Ch. Oct. 10, 2014)..........................................12

*LaPoint v. AmerisourceBergen Corp.*,
  No. Civ.A. 327, 2007 WL 2565709 (Del. Ch. Sept. 4, 2007)..........................................12

*Lasseter v. Kerr*,
  No. CL0432, 2006 WL 2630961 (Va. Cir. Ct. Feb. 2006) ..............................................9

*United States ex rel. McKenney's, Inc. v. Leebcor Servs., LLC*,
  622 F. Supp. 3d 165 (E.D. Va. 2022) ............................................................................9

*Minn. Laws. Mut. Ins. Co. v. Batzli*,
  No. 3:09CV432, 2010 WL 2024487 (E.D. Va. May 19, 2010)........................................12

*Moore Bros. Co. v. Brown & Root, Inc.*,
    207 F.3d 717 (4th Cir. 2000) ...................................................................................9

*Powell v. AmGuard Ins. Co.*,
    C.A. No. K17C-11-003, 2019 WL 4509165 (Del. Super. Ct. Sept. 19, 2019) .................12, 13

*In re Reed*,
    624 B.R. 155 (Bankr. E.D. Va. 2020) .........................................................................9

*Reid v. Ayscue*,
    436 S.E.2d 439 (1993) ............................................................................................10

*Shepard v. Capitol Foundry of Va., Inc.*,
    554 S.E.2d 72 (Va. 2001) ........................................................................................11

*Univ. Support Servs., Inc. v. Galvin*,
    Chancery No. 126614, 1996 WL 1065541 (Va. Cir. Ct. May 20, 1996) ...............................12

*USH Ventures v. Glob. Telesystems Grp., Inc.*,
    796 A.2d 7 (Del. Super. Ct. 2000) ...........................................................................12

*W.C. English, Inc. v. Rummel, Klepper & Kahl, LLP*,
    No. 6:17-cv-00018, 2021 WL 4782274 (W.D. Va. Oct. 13, 2021) ..................................9, 10

*\*Wannall v. Honeywell, Inc.*,
    775 F.3d 425 (D.C. Cir. 2014) ...............................................................................8, 9

*Wells Fargo Equip. Fin., Inc. v. State Farm Fire & Cas. Co.*,
    823 F. Supp. 2d 364 (E.D. Va. 2011) .........................................................................9

*Wilson v. H & L Inv. Corp.*,
    Chancery No. 98-24, 1998 WL 972245 (Va. Cir. Ct. June 16, 1998) ...................................13

**Other Authorities**

RK&K's Mem. in Supp. of Renewed Mot. for J. As a Matter of Law .........................................10

Defendants respectfully submit this reply brief in support of their Omnibus Motion to Revise Jury Instructions.

## I.      The Court Should Adopt Defendants' Proposed Language to Clarify the Meaning of Arbitrary and Unreasonable

Defendants have proposed modest clarifying changes to the "reasonableness" instruction given at the first trial, which drew a jury note expressing confusion and seeking clarification. Defendants' proposed changes are entirely consistent with, but would improve and enhance, the prior instruction.  Plaintiffs' arguments against the proposed changes conflict with the original instruction, the Court's prior rulings, and their own arguments and theory of the case.

### A.      Plaintiffs Cannot Deny the Relevance of Existing Facts and Circumstances at the Time of the Challenged Decision

First, Plaintiffs take the surprising position that the facts and circumstances confronting a decision maker at the time of the decision itself—as opposed to at the "time of contracting," potentially years earlier—are irrelevant to assessing whether that decision was arbitrary or unreasonable.  Opp. at 1-2.  However, the original instruction given in the first trial—to which Plaintiffs do not object and never objected—already defines arbitrary actions or decisions as those taken or made without regard for "the *existing* facts and circumstances."  Final Jury Instrs. at 8 (Class ECF No. 250; Berkley ECF No. 240) (emphasis added).[1]  Defendants' proposed revision confirming that the jury "may consider the decision maker's objectives, obligations, and the facts and circumstances at the time the action was taken" simply fleshes out that concept, which the single word "existing" in the middle of a long instruction may not adequately convey to jurors.

---

[1]      "Class ECF No." refers to Case No. 1:13-mc-1288-RCL, and "Berkley ECF No." refers to Case No. 1:13-cv-1053-RCL.

The Court has already rejected Plaintiffs' argument that the time of contracting (December 24, 2009) should serve as "an evidentiary cutoff point." *Fairholme Funds, Inc. v. FHFA* ("*MIL Ruling*"), Nos. 13-cv-1053, 13-mc-1288, 2022 WL 13937460, at *6 (D.D.C. Oct. 21, 2022).  Before the first trial, the Court ruled that information at the time of the Third Amendment in August 2012 could be relevant to evaluating the reasonableness of FHFA's decision even if it did not inform the parties' reasonable expectations at the time of contracting— such information still "might be relevant to the *circumstances* surrounding the adoption of the Third Amendment, and whether FHFA, in its role as conservator, reacted to those circumstances in a manner that shareholders reasonably could have expected given the most recent, meaningful change in the contract." *Id.*

Indeed, Plaintiffs themselves rely extensively on facts and circumstances confronting FHFA at the time of its decision to enter into the Third Amendment in August 2012.  Over 400 of the 656 exhibits on Plaintiffs' exhibit list postdate December 24, 2009, and information available as of August 2012 serves as a primary basis for the testimony of Plaintiffs' expert, Dr. Bala Dharan.  *See, e.g.*, Trial Tr. 1097:10-1098:8 (explaining that his opinion that the net worth sweep "was not reasonably necessary" was based "on information that management had . . . at the time of the Third Amendment");[2] *id.* at 1256:14-18 (opining that there was no circular draw problem based on internal projections in 2012); Expert Report of Bala G. Dharan, Ph.D. (Aug. 12, 2021) ¶¶ 143-76 (opining on the state of the Enterprises in 2012 leading up to the Net Worth Sweep based in part on SEC filings from 2012).  And Plaintiffs have engaged in two months of motion practice to preserve or advance their ability to introduce evidence from 2012 that they

---

[2]     The trial transcripts from the first trial are docketed at ECF Nos. 263-289 on the *Berkley* docket, No. 1:13-cv-1053-RCL; the transcripts are not docketed on the Class docket.  This brief cites to the page–line numbers in the transcripts themselves.

consider relevant because it bears on the facts and circumstances that existed at the time of FHFA's decision.  That includes but is not limited to evidence that they argue shows FHFA's stated rationale was a pretext for other motivations.  *See, e.g.*, Pls.' Mot. in Lim. for Admission of PX 550, PX 226, PX 562, PX 274, and PX 279 (Class ECF No. 294; Berkley ECF No. 308) (arguing in support of five documents from 2012); Pls.' Opp. to Defs.' Mot. to Revisit the Ct.'s Evidentiary Ruling Admitting Pls.' Ex. 205 (Class ECF No. 305; Berkley ECF No. 317) (arguing in support of the inclusion of a memo from 2012); Pls.' Opp. to Defs.' Omnibus Mot. in Lim. at 24 (Class ECF No. 304; Berkley ECF No. 316) (arguing that Defendants' real motive in 2012 was "wind down").  And, at the first trial, Plaintiffs urged the jury to consider this post-2009 evidence to conclude that FHFA had acted arbitrarily and unreasonably based on the facts and circumstances *in August 2012*.  *See, e.g.*, Trial Tr. 2554:16-2558:8 (arguing that FHFA should have withheld cash dividends and instead paid "in-kind" dividends at 12% rate); *id.* at 2549:2-2550:1 (arguing that Mr. DeMarco should have considered "alternatives," including negotiating for "the lesser of the net worth and ten percent").  Plaintiffs do not and cannot reconcile their core trial themes revolving around FHFA's motives and reasoning for its actions in August 2012 with their assertion here that the jury is not supposed to consider "the decision maker's objectives, obligations, and the facts and circumstances at the time the action was taken."

Contrary to Plaintiffs' contentions (Opp. at 2-3), instructing the jury to consider existing facts and circumstances at the time of the Third Amendment (August 2012) is neither "one-sided" nor inconsistent with focusing on the time of contracting (December 2009) as the relevant period for measuring the parties' *reasonable expectations*.  That is the very distinction this Court drew in holding that, while only information extant as of December 2009 could inform the parties' reasonable expectations, "resolving [that point] in [Plaintiffs'] favor will not quite have

the effect they likely expect" because information available in August 2012 remains relevant to how FHFA reacted to the circumstances that prompted the Third Amendment.  *MIL Ruling* at *5; *see also id.* at *3 ("[P]laintiffs could logically argue that shareholders would have reasonably expected at the time of contracting that FHFA as conservator would act in good faith on whatever information *it* had at the time of the alleged breach.").

Finally, Plaintiffs' suggestion that Defendants' proposed revisions "tell[] the jury to focus on the wrong point in time" for reasonable expectations (Opp. at 3) is meritless.  Defendants' revisions specifically reinforce *three times* that reasonable expectations are to be measured as of December 24, 2009.[3]

## B.    Defendants' "Multiple Reasonable Options" Language Is Appropriate

Plaintiffs take umbrage at Defendants' proposed sentence clarifying that "[t]here can be multiple reasonable options in a given set of facts and circumstances."  Opp. at 1-2.  But, contrary to Plaintiffs' characterization, this language does not tell the jury in a declarative way "*that* FHFA *had* 'multiple reasonable options' when considering the Net Worth Sweep."  *Id.* at 2 (emphasis added).  Rather, it is stated in the abstract as a generic (and well-supported) legal proposition that the jury can consider and apply as they evaluate the evidence.  Further, Plaintiffs' insistence that other options are "irrelevant—and possibly untrue" (Opp. at 3) flies in the face of their own theory of the case.  As discussed, the centerpiece of Plaintiffs' case in the first trial was that FHFA had other "alternatives" for dealing with the situation as of August 2012 that led to adoption of the Third Amendment.  *See* Trial Tr. 1256:25-1259:6 (Plaintiffs' expert

---

[3]       "Defendants respond that based on the parties' objectively reasonable expectations under the contract *as of December 24, 2009*. . . .  Your assessment of plaintiffs' reasonable expectations under the contracts in this case must be based on their reasonable expectations *as of December 24, 2009*. . . . [T]he question is what an imaginary or hypothetical 'reasonable' shareholder would have expected, based on information known or available to that hypothetical reasonable shareholder *as of December 24, 2009*."  Mot. at 3 (emphases added).

Dr. Dharan testifying that FHFA should have considered the payment-in-kind option, among other alternatives).  If that is their case, the jury should be instructed on the law—and the law recognizes that more than one course of action may be reasonable.  *See* Mot. at 7-9 (collecting cases).

### C.   The Description of "Unreasonable" As "Beyond What Can Be Expected or Beyond the Limits of Acceptability or Fairness" Is Confusing and Should Be Omitted

Plaintiffs object to deleting language from the instruction that defines "unreasonable" actions or decisions as those "that are beyond what can be expected or beyond the limits of acceptability or fairness."  Opp. at 3-5.  As Defendants explained, however, the problem with this language is that it invites the jury to consider open-ended, subjective notions of "fairness" and "acceptability" without regard to the objective legal standards in which the implied covenant claim is anchored.  Mot. at 5-6.  Plaintiffs themselves emphasize that the implied covenant "is not a 'free-floating duty.'"  Opp. at 2 (quoting *Gerber v. Enter. Prods. Holdings, LLC*, 67 A.3d 400, 418-19 (Del. 2013)).  The existing "acceptability" and "fairness" language suggests just such a (non-existent) "free-floating duty" to a reasonable juror.

Plaintiffs observe that "[t]he concept of 'fair dealing' . . . refers to 'a commitment to deal "*fairly*" in the sense of consistently with the terms of the parties' agreement and its purpose.'"  Opp. at 5 (quoting *Am. Healthcare Admin. Servs., Inc. v. Aizen*, 285 A.3d 461, 480 (Del. Ch. 2022)).  But that quotation proves Defendants' point and illustrates the problem with the existing language in the instruction—the current instruction simply refers to "beyond the limits of . . . fairness" in the abstract, without particularizing the concept of fairness, while, in contrast, the exact Delaware case quoted by Plaintiffs specifies that "fairness" means "consistently with the terms of the parties' agreement and its purpose."  *Id.*  Plaintiffs also argue that "acceptability" should remain in the instruction because it equates to "what the parties would have agreed to

themselves had they considered the issue in their original bargaining positions at the time of contracting." Opp. at 5 (quoting *Gerber*, 67 A.3d at 418). But they do not seriously contend that any juror hearing the word "acceptability" by itself would understand it that way absent elaboration (which the current instruction does not provide).

The phrase "beyond what can be expected" is likewise unwarranted because it is ambiguous and open-ended. Plaintiffs contend that it is appropriate because the implied covenant standard "depends on the parties' original contractual *expectations*." Opp. at 4 (quoting *ASB Allegiance Real Est. Fund v. Scion Breckenridge Managing Member, LLC*, 50 A.3d 434, 442 (Del. Ch. 2012)). However, the contracting parties' objectively reasonable expectations are covered in the overall reasonableness instruction over a half-dozen times, including in the sentence immediately preceding the one from which Defendants propose to strike "beyond what can be expected." Unlike these other references, which are carefully crafted to track the relevant legal standard, "beyond what can be expected" is nebulous and raises a risk of juror misunderstanding or confusion. Additionally, the definition is circular, referring jurors to "what can be expected" to determine shareholders' "reasonable expectations." *See* Mot. at 5. The Court should accordingly revise the instruction to remove this phrase, along with the phrase "beyond the limits of acceptability or fairness."

## D.   It Is Appropriate for the Instructions to Reflect Defendants' Response to Plaintiffs' Allegations Alongside the Underlying Allegations

Plaintiffs object to Defendants' proposed new sentence reflecting Defendants' response to Plaintiffs' claims.[4] Opp at 5-6. However, contrary to Plaintiffs' portrayal, the new sentence

---

[4]   The proposed sentence reads, "Defendants respond that based on the parties' objectively reasonable expectations under the contract as of December 24, 2009, the Net Worth Sweep was reasonable because it was justified by facts and circumstances known to FHFA in August 2012." Mot. at 3.

is not "argumentative."  It is no less neutral or more argumentative than the statement immediately preceding it, beginning with, "In this case, Plaintiffs allege . . . ."  The proposed new sentence simply restores equilibrium.

Nor does that sentence "mischaracterize[] the law governing claims for breach of the implied covenant" (Opp. at 6); indeed, it does not make any assertion about the law at all.  It begins with the words "Defendants respond that . . . ," which no one would confuse for a statement by the Court declaring what the law is.  Plaintiffs suggest that the proposed sentence ignores that reasonable expectations are measured as of "the time of contracting" (Opp. at 6) (emphasis removed), but that criticism is difficult to understand when the proposed new language specifically alludes to "the parties' objectively reasonable expectations under the contract as of December 24, 2009."  Plaintiffs identify no basis to expect any risk of juror confusion.

*** 

In sum, Defendants' proposed revisions to the reasonableness instruction, which elicited a jury note expressing confusion in the first trial, provide additional clarity and balance and accurately state the law, consistent with this Court's prior rulings and how both sides have litigated the case.  Plaintiffs' objections are without merit, and the Court should adopt Defendants' proposed revisions.[5]

---

[5]     With respect to the removal of the sentence "[A] plaintiff alleging a violation of the implied covenant must show that the alleged breach caused them financial harm," that language is already included elsewhere in the instructions, in the section addressed to the issue of harm (Final Jury Instrs. at 8, 9 (Class ECF No. 250; Berkley ECF No. 240)).  Defendants therefore propose deleting it from the reasonableness instruction for the sake of avoiding redundancy, not for any substantive reason.

With respect to striking the word "subjectively" from the penultimate sentence of the reasonableness instruction, Defendants submit that the relevant language is clear that "the question is what an imaginary or hypothetical 'reasonable' shareholder would have expected"

## II.   The Court Should Revise the Jury Instruction Regarding Virginia Prejudgment Interest to Reflect Both Competing Rationales the Jury Must Consider Under Virginia Law

The Court should grant Defendants' motion and revise the jury instructions to convey *both* of the competing rationales that Virginia law requires jurors to consider when deciding whether to award prejudgment interest—not the lopsided and incomplete instruction Plaintiffs request that mentions only the rationale that weighs in favor of awarding prejudgment interest.

Defendants' motion cited extensive case law holding that, under Virginia law, in deciding whether to award prejudgment interest, a jury *must* weigh *two* competing rationales: (1) "the desire to make the prevailing party whole," and (2) "the losing party's right to litigate a bona fide legal dispute." Mot. at 9-14.[6]  Plaintiffs do not mention, let alone distinguish, *any* of the cases cited by Defendants, nor do they dispute that Virginia law requires the jury to weigh these two competing rationales when deciding whether to award prejudgment interest.  Thus, Plaintiffs should be deemed to have conceded that Virginia law requires the jury to weigh these two competing rationales.  *See Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded." (citation omitted)).[7]

---

and "not what any actual shareholder" expected.  The adverb "subjectively," which has a specialized legal meaning, is therefore unnecessary and may lead to juror confusion.

[6]      Plaintiffs' complaint about Defendants' reference to the previous mistrial misses the mark.  Opp. at 7 n.5.  Defendants do not seek to introduce evidence that a mistrial occurred or to remove the jury's discretion to award prejudgment interest (if the jury finds liability).  Rather, the mistrial simply shows that, if properly instructed on both considerations regarding prejudgment interest, a reasonable jury could conclude that prejudgment interest is not appropriate because this case, at a minimum, involves a "bona fide legal dispute."  Mot. at 13.  Thus, the failure to include this factor would be material and would prejudice Defendants because a jury could easily find there is a "bona fide legal dispute."  *Id.*

[7]      Defendants' motion also refuted the arguments Plaintiffs made during the first trial in support of the instruction.  *See* Mot. at 12 n.4.  Again, Plaintiffs do not challenge Defendants'

Plaintiffs do not deny that the jury instruction from the first trial states only the first competing rationale—that is, the concept of making the plaintiffs whole, which weighs in favor of awarding prejudgment interest.  *See* Mot. at 12.  In the same vein, Plaintiffs do not deny that the prior instruction omits the second rationale—namely, the defendants' right to litigate a "bona fide legal dispute"—which weighs *against* awarding prejudgment interest.  And Plaintiffs make no attempt to explain how, absent a revision to the prior instruction, the jury at this second trial could conceivably give the requisite consideration to that omitted rationale.  Plaintiffs' opposition therefore amounts to an open request to instruct the jury in a manner that erroneously urges them to award prejudgment interest without the mandatory balancing.

In the face of these material concessions, Plaintiffs do nothing but cite one unpublished case in support of their favored instruction—*W.C. English, Inc. v. Rummel, Klepper & Kahl, LLP*, No. 6:17-cv-00018, 2021 WL 4782274 (W.D. Va. Oct. 13, 2021)—which gave an instruction similar to the one they request.  Opp. at 7.  The fact that Plaintiffs cannot point to a single published case to support their instruction is telling, especially given the weight of published and unpublished authority supporting Defendants' proposed instruction.[8]  *W.C.*

---

arguments or any of the case law cited, thus conceding that the grounds they presented the Court for granting the instruction in the first trial were erroneous.  *Wannall*, 775 F.3d at 428.

[8] *E.g., Moore Bros. Co. v. Brown & Root, Inc.*, 207 F.3d 717, 727 (4th Cir. 2000) (affirming denial of prejudgment interest under Virginia law because of a bona fide legal dispute); *United States ex rel. McKenney's, Inc. v. Leebcor Servs., LLC*, 622 F. Supp. 3d 165, 176 (E.D. Va. 2022) (stating two-competing-rationales test); *In re Reed*, 624 B.R. 155, 177-78 (Bankr. E.D. Va. 2020) (same); *Wells Fargo Equip. Fin., Inc. v. State Farm Fire & Cas. Co.*, 823 F. Supp. 2d 364, 366-67 (E.D. Va. 2011) (same); *see also Lasseter v. Kerr*, No. CL0432, 2006 WL 2630961 (Va. Cir. Ct. Feb. 2006) (jury instruction with two-competing-rationales test); *Almubarak v. Shahin*, No. 1:19-cv-00358, 2021 WL 1846823, at *3 (E.D. Va. Mar. 26, 2021) (stating two-competing-rationales test); *Heritage Disposal & Storage, L.L.C. v. VSE Corp.*, No. 1:15-cv-1484, 2017 WL 361547, at *14 (E.D. Va. Jan. 24, 2017) (same); *Breton, LLC v. Graphics Arts Mut. Ins. Co.*, No. 1:09-cv-60, 2010 WL 678128, at *4 (E.D. Va. Feb. 24, 2010) (same).

9

*English* nowhere discusses, let alone disagrees with, the legion of cases establishing that juries *must* consider—and thus should be instructed on—both competing interests under Virginia law. Indeed, in a case cited by the court in *W.C. English*, the Virginia Supreme Court held that a trial court did not abuse its discretion in refusing to award prejudgment interest where "a legitimate controversy existed." *Reid v. Ayscue*, 436 S.E.2d 439, 442 (1993).

As importantly, *W.C. English* is inapposite because it does not address the issue raised in Defendants' motion—whether, if requested, a prejudgment interest instruction should include both the rationale in favor of awarding prejudgment interest (the desire to make the plaintiff whole) and the factor against doing so (the defendant's right to litigate a bona fide legal dispute). Importantly, the defendant there did *not* propose an instruction that included both competing rationales that the jury must consider and weigh under Virginia law.  Rather, the defendant argued that the existence of a good-faith legal dispute categorically foreclosed prejudgment interest.  *See* RK&K's Mem. in Supp. of Renewed Mot. for J. As a Matter of Law at 26 n.4 (attached as **Exhibit A**).[9]

But as explained in Defendants' motion (Mot. at 12 n.4), courts applying Virginia law have rejected the notion that prejudgment interest may *never* be awarded if there is a "bona fide legal dispute" (*i.e.*, the parties acted in good faith).  And that is *not* what Defendants are asking this Court to instruct the jury here.  Importantly, however, these Virginia courts hold that the

---

[9] The defendant in *W.C. English* both (i) moved for a directed verdict on prejudgment interest on the ground that the jury should not have awarded it because there was a bona fide legal dispute and (ii) asked for a new trial with a prejudgment interest jury instruction, stating, "[g]enerally, prejudgment interest should not be awarded when the dispute involves the interpretation of the contract, the prejudgment interest amount is high, and both parties acted in good faith."  Ex. A (RK&K Mem.) at 26 n.4 (citation omitted); *see W.C. English*, 2021 WL 4782274, at *6.  Thus, neither motion involved the Court addressing the issue presented in Defendants' motion: whether a jury should consider both competing interests under Virginia law.

existence of a "bona fide legal dispute" is a factor the jury must consider. *See supra* at 8; *see also* Mot. at 14. That is all that Defendants are asking this Court to instruct the jury.

Plaintiffs also suggest that the Virginia Supreme Court approved an instruction similar to theirs in *Shepard v. Capitol Foundry of Va., Inc.*, 554 S.E.2d 72 (Va. 2001). *See* Opp. at 7. Not so. The instruction given in *Shepard* was as follows:

> As to interest, you have a choice. You may award interest. You may not award interest. It is up to you. If you do award interest, you have a choice from the date of the accident up until the date of the trial. Or you have a choice of not to award interest . . . .

*Shepard*, 554 S.E.2d at 722. This is not the lopsided instruction Plaintiffs are requesting here. While the instruction in *Shepard* did not detail either of the competing rationales, it was at least evenhanded in stating that the jury has an equal ability to award or not award prejudgment interest. It did not, as Plaintiffs ask this Court to do, provide *only* the rationale in favor of awarding prejudgment interest (*i.e.*, it did not mention that prejudgment interest was intended "to make the prevailing party whole").

In sum, Plaintiffs do not dispute that, under settled Virginia law, the jury must consider two competing rationales when deciding whether to award prejudgment interest. Nor do Plaintiffs dispute that the prior jury instruction wholly omits the second rationale (the one that weighs against awarding prejudgment interest). Plaintiffs' justification for this approach is unpersuasive and should be rejected. The Court accordingly should grant Defendants' motion and provide a prejudgment interest instruction that accurately reflects Virginia law and includes both competing rationales that a jury must consider when deciding whether to award prejudgment interest.

### III.     The Court Should Add a Nominal Damages Instruction

Plaintiffs' opposition fails to rebut the propriety of Defendants' proposed nominal damages instruction.  Plaintiffs' contention that a nominal damages instruction is inappropriate whenever a plaintiff has mustered "proof of actual injury," Opp. at 8, misstates the applicable law.  The mere existence of an injury is not by itself sufficient to support a compensatory damages award—if it were, a nominal damages instruction would never be appropriate.  Instead, Delaware and Virginia law are clear that "[i]n the event a plaintiff proves a contractual breach, but fails to set forth a legally sufficient basis for a damages award, a plaintiff may only recover nominal damages."  *Powell v. AmGuard Ins. Co.*, C.A. No. K17C-11-003, 2019 WL 4509165, at *5 (Del. Super. Ct. Sept. 19, 2019) (citations omitted); *accord Crist v. Metro. Mortg. Fund, Inc.*, 343 S.E.2d 308, 311 (Va. 1986) (affirming award of nominal damages where there was a breach of contract but "damages, if any, [could not] be established with reasonable certainty").  Courts applying this principle regularly permit—or even, where the evidence warrants it, restrict the jury to—an award of nominal damages.[10]

---

[10] *See, e.g.*, *Lake Treasure Holdings, Ltd. v. Foundry Hill GP LLC*, C.A. No. 6546, 2014 WL 5192179, at *13 (Del. Ch. Oct. 10, 2014) (awarding nominal damages where plaintiffs "failed to provide a basis for a responsible estimate of damages reasonably related to their injuries"); *Minn. Laws. Mut. Ins. Co. v. Batzli*, No. 3:09CV432, 2010 WL 2024487, at *4-5 (E.D. Va. May 19, 2010) (setting aside jury award and awarding $1 in nominal damages due to "failure to prove actual damages," after "thorough review of Virginia law on contract damages"); *Ivize of Milwaukee, LLC v. Compex Litig. Support, LLC*, C.A. Nos. 3158, 3406, 2009 WL 1111179, at *12 (Del. Ch. Apr. 27, 2009) (awarding nominal damages of $1 where plaintiff "failed to prove the amount of its damages with the required certainty" at trial); *LaPoint v. AmerisourceBergen Corp.*, No. Civ.A. 327, 2007 WL 2565709, at *10 (Del. Ch. Sept. 4, 2007) (awarding nominal damages of $0.06 where plaintiffs could not "fix damages to a reasonable degree of certainty" at trial); *USH Ventures v. Glob. Telesystems Grp., Inc.*, 796 A.2d 7, 21-23 (Del. Super. Ct. 2000) (holding plaintiffs could recover only nominal damages on contract claim where jury would be unable to decide complex causation issue); *Univ. Support Servs., Inc. v. Galvin*, Chancery No. 126614, 1996 WL 1065541, at *6 (Va. Cir. Ct. May 20, 1996) (awarding $5 in nominal damages on breach of contract claim).

The proposed nominal damages instruction here properly captures Plaintiffs' burden of proof on damages under Delaware and Virginia law and *permits* the jury to make a finding that Plaintiffs have been harmed in some uncertain or unquantifiable amount.  A plaintiff in a contract action must establish the amount of damages with "*reasonable certainty*."  *Powell*, 2019 WL 4509165, at *5 (emphasis added).  *Accord Crist*, 231 343 S.E.2d at 311; *Wilson v. H & L Inv. Corp.*, Chancery No. 98-24, 1998 WL 972245, at *10 (Va. Cir. Ct. June 16, 1998).  At the close of all evidence, the jury will be free to reject the theory that Plaintiffs' damages calculation—the $1.6 billion decline in market value following the Third Amendment—is a reasonably certain measure of the harm Plaintiffs allegedly suffered as a result of the Third Amendment's elimination of possible future dividends.  Consistent with Delaware and Virginia law, the proposed nominal damages instruction will permit the jury to award the damages, if any, that it concludes are supported by the evidence.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should:

I.      Revise the jury instructions' explanation of an "unreasonable" action;

II.     Revise the jury instruction on Virginia prejudgment interest; and

III.    Instruct the jury on nominal damages.

Dated: June 30, 2023

Respectfully submitted,

*/s/ Asim Varma*

Asim Varma (D.C. Bar # 426364)
Jonathan L. Stern (D.C. Bar # 375713)
David B. Bergman (D.C. Bar # 435392)
Ian S. Hoffman (D.C. Bar # 983419)
R. Stanton Jones (D.C. Bar # 987088)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Tel.: (202) 942-5000
Fax: (202) 942-5999
Asim.Varma@arnoldporter.com
Jonathan.Stern@arnoldporter.com
David.Bergman@arnoldporter.com
Ian.Hoffman@arnoldporter.com
Stanton.Jones@arnoldporter.com

*Attorneys for Defendant Federal Housing Finance Agency*

*/s/ Michael J. Ciatti*

Michael J. Ciatti (D.C. Bar # 467177)
KING & SPALDING LLP
1700 Pennsylvania Ave. NW
Washington, DC 20006
Tel.: (202) 661-7828
Fax: (202) 626-3737
mciatti@kslaw.com

*Attorney for the Federal Home Loan Mortgage Corp.*

*/s/ Meaghan VerGow*

Meaghan VerGow (D.C. Bar # 977165)
O'MELVENY & MYERS LLP
1625 Eye St. NW
Washington, DC 20006
Tel.: (202) 383-5300
Fax: (202) 383-5414
mvergow@omm.com

*Attorney for the Federal National Mortgage Association*