# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BERKLEY INSURANCE, CO., *et al*., <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL HOUSING FINANCE AGENCY, *et al.*, <br><br> Defendants. | Case No. 1:13-cv-1053 (RCL) |
| In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations <br><br> _____ <br><br> This document relates to: <br> ALL CASES | Case No. 1:13-mc-1288 (RCL) |

### DEFENDANTS' MOTION IN LIMINE NO. 5: TO EXCLUDE EVIDENCE FEATURING POST HOC STATEMENTS BY FORMER FHFA DIRECTORS <u>MELVIN WATT AND MARK CALABRIA</u>

Defendants Federal Housing Finance Agency ("FHFA" or "Conservator"), as Conservator for the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac," and together with Fannie Mae, the "Enterprises"), and the Enterprises hereby move for the Court to exclude ten proposed exhibits—PX-0585, PX-0586, PX-0587, PX-0587-A, PX-0588, PX-0589, PX-0589-A, PX-0590, PX-0591, PX-0592—for the reasons set forth in the accompanying Memorandum in Support.  A proposed order is being filed with this motion.

Dated: July 10, 2023                                Respectfully submitted,

                                                     _/s/ Asim Varma_____
                                                     Asim Varma (D.C. Bar # 426364)
                                                     Jonathan L. Stern (D.C. Bar # 375713)
                                                     David B. Bergman (D.C. Bar # 435392)
                                                     Ian S. Hoffman (D.C. Bar # 983419)
                                                     R. Stanton Jones (D.C. Bar # 987088)
                                                     ARNOLD & PORTER KAYE SCHOLER LLP
                                                     601 Massachusetts Ave NW
                                                     Washington, D.C. 20001
                                                     (202) 942-5000
                                                     Asim.Varma@arnoldporter.com
                                                     Jonathan.Stern@arnoldporter.com
                                                     David.Bergman@arnoldporter.com
                                                     Ian.Hoffman@arnoldporter.com
                                                     Stanton.Jones@arnoldporter.com

                                                     *Attorneys for Defendant Federal Housing*
                                                     *Finance Agency*

 /s/ Michael J. Ciatti
Michael J. Ciatti (D.C. Bar # 467177)
KING & SPALDING LLP
1700 Pennsylvania Ave. N.W.
Washington, DC 20006
Tel: (202) 661-7828
Fax: (202) 626-3737
mciatti@kslaw.com

*Attorney for the Federal Home Loan
Mortgage Corp.*

 /s/ Meaghan VerGow
Meaghan VerGow (D.C. Bar # 977165)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414
mvergow@omm.com

*Attorney for the Federal National Mortgage
Association*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BERKLEY INSURANCE, Co., *et al*., | |
| Plaintiffs, | |
| v. | Case No. 1:13-cv-1053 (RCL) |
| FEDERAL HOUSING FINANCE AGENCY, *et al.*, | |
| Defendants. | |
| In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations | |
| _____ | Case No. 1:13-mc-1288 (RCL) |
| This document relates to: ALL CASES | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE NO. 5: TO EXCLUDE EVIDENCE FEATURING POST HOC STATEMENTS BY FORMER FHFA DIRECTORS MELVIN WATT AND MARK CALABRIA**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION .................................................................................... 1

LEGAL STANDARD ............................................................................... 4

ARGUMENT ............................................................................................ 5

I.     The Former Directors' Post Hoc Statements About the Enterprises' Inability to
       "Build Capital" Should Be Excluded Under Federal Rules of Evidence 402 and 403 ........... 5

   A.   The Former Directors' Post Hoc Statements Are Irrelevant .............................................. 5

   B.   The Former Directors' Statements Should Be Excluded Under Rule 403 ...................... 10

II.    Many of the Proposed Exhibits Are Inadmissible for Additional Reasons ......................... 15

CONCLUSION ........................................................................................ 18

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aliotta v. Nat'l R.R. Passenger Corp.*,
   315 F.3d 756 (7th Cir. 2003) ...................................................5

*Collins v. Yellen*,
   141 S. Ct. 1761 (2021) ........................................................13

*Dowling v. United States*,
   493 U.S. 342 (1990) .............................................................4

*Fairholme Funds, Inc. v. FHFA*,
   Nos. 13-cv-1053, 13-mc-1288, 2018 WL 4680197 (D.D.C. Sept. 28, 2018) ..........6

*United States ex rel. Miller v. Bill Harbert Int'l Constr. Inc.*,
   No. 95-cv-1231, 2007 WL 861110 (D.D.C. Mar. 20, 2007) .....................4

*Old Chief v. United States*,
   519 U.S. 172 (1997) ...........................................................13

*Perry Cap. LLC v. Mnuchin*,
   864 F.3d 591 (D.C. Cir. 2017) ...............................................13

*Sutton v. Washington Metro. Area Transit Auth.*,
   No. CIV.A. 07-1197 (JDB), 2008 WL 8822521 (D.D.C. Aug. 27, 2008) ...............5

*Talavera v. Glob. Payments, Inc.*,
   No. 21-CV-1585, 2023 WL 3080701 (S.D. Cal. Apr. 25, 2023) .....................17

*In re Urethane Antitrust Litig.*,
   No. 2:08-5169, 2015 WL 9294670 (D.N.J. Dec. 21, 2015) ........................17

*Whole Foods Mkt. Grp., Inc. v. Wical L.P.*,
   No. 1:17-cv-01079, 2019 WL 6910168 (D.D.C. Oct. 22, 2019) ....................5

**Rules**

Fed. R. Evid. 401 ..................................................................4, 5

Fed. R. Evid. 402 ..................................................................1, 4

Fed. R. Evid. 403 ...............................................................*passim*

Fed. R. Evid. 701 .................................................................5, 17

**Other Authorities**

*FHFA Director Mark Calabria's Statement at The Brookings Institution on May 11, 2021*, Fed. Hous. Fin. Agency (May 14, 2021), https://www.fhfa.gov/Media/PublicAffairs/Pages/FHFA-Director-Mark-Calabrias-Statement-at-The-Brookings-Institution-on-May-11-2021.aspx.............................3

*FHFA Search / Public Affairs*, Fed. Hous. Fin. Agency, https://www.fhfa.gov/search/Pages/public-affairs-results.aspx?k=Calabria.................................................................4

*FHFA Search / Public Affairs*, Fed. Hous. Fin. Agency, https://www.fhfa.gov/search/Pages/public-affairs-results.aspx?k=Watt ..................................3

Interview by Vonnie Quinn, Bloomberg Television, with Mark Calabria, Dir., Fed. Hous. Fin. Agency, at 6:10–56 (Sept. 16, 2019), https://bit.ly/2FmEnIA ......................12

Michael Krimminger & Mark A. Calabria, *The Conservatorships of Fannie Mae and Freddie Mac: Actions Violate HERA and Established Insolvency Principles* 49-51 (CATO Inst., Working Paper No. 26; Ctr. for Monetary & Fin. Alts., Working Paper No. 2, 2015), https://bit.ly/3bO8bdg.......................................12, 13

## INTRODUCTION

On June 29, 2023, Plaintiffs supplemented their exhibit list to add 10 new exhibits featuring statements from 2015 to 2020 by two former FHFA Directors whose tenures significantly *post-dated* the Third Amendment.  The exhibits at issue are two video clips and eight documents featuring congressional testimony and speeches by former Directors Melvin Watt and Mark Calabria, in which they attribute the Enterprises' inability to build capital to the Third Amendment.[1]  Statements made years after the Third Amendment under changed economic circumstances by former FHFA Directors with different policy perspectives and objectives cannot conceivably be relevant to the determination of whether Mr. DeMarco's decision to agree to the Third Amendment in August 2012 was arbitrary or unreasonable.  All these exhibits should be excluded under Federal Rules of Evidence 402 and 403 because they contain irrelevant and unduly prejudicial material that will confuse the jury.  Several of them are excludable for additional reasons, including that they contain improper lay opinion.

First, Mr. Watt and Dr. Calabria's numerous statements attributing the Enterprises' inability to build capital to the Net Worth Sweep are irrelevant.  Neither of them had any involvement in the negotiation or execution of the Third Amendment—a point that Plaintiffs themselves have pressed in seeking to exclude other witnesses' testimony about the Third Amendment.  The former Directors' opinions therefore are not relevant to the reasonableness of Mr. DeMarco's decision in August 2012.  The jury is likely to conclude that their opinions referring to the Enterprises' "inability to build capital" are criticisms of Mr. DeMarco's decision to agree to the Third Amendment, and these statements may very well be critical of his decision.

---

[1]    The eight documents at issue are attached hereto as **Exhibits A through H**.  Upon request, Defendants can provide chambers with the two videos clips (PX-0587-A and PX-0589-A) that correspond to two of the documents (PX-0587 and PX-0589).

But the opinions of the successor Directors, who faced different issues and had different priorities and perspectives on housing policy years *after* the execution of the Third Amendment, have no relevance to the limited implied covenant inquiry in this case.

Second, even if Mr. Watt and Dr. Calabria's opinions from 2015 to 2020 had some relevance (and they do not), any minimal probative value would be substantially outweighed by Rule 403's dangers. The introduction of post hoc statements from individuals who had no involvement with the Third Amendment will likely confuse the issues before the jury by interjecting into the case hindsight bias, the dynamics of evolving policy preferences among Mr. DeMarco's successors, and statements that are inextricably linked to each Director's view of how he intended to exercise the broad discretion HERA afforded the Conservator. Mr. DeMarco acted within his statutory authority in agreeing to the Third Amendment; that other Directors *during their tenur*e—following Mr. DeMarco's tenure—might choose to exercise that authority in a different way under different circumstances would only serve to confuse the issues before the jury. Neither Mr. Watt nor Dr. Calabria were standing in the shoes of Mr. DeMarco at the place and time of the Third Amendment. Their opinions have no bearing on the only issue before the jury—whether in August 2012 the Defendants acted in accordance with their implied duty of good faith and fair dealing.

Further, it would be improper for the jury to infer that the former Directors' opinions about the Enterprises' inability to build capital years later is solely attributable to FHFA's agreement to the Third Amendment in August 2012. There is no record evidence that Mr. DeMarco believed that the Third Amendment would be in place forever. The exhibits sought to be introduced by the Plaintiffs could lead the jury to infer that the succeeding Directors did not have the authority that Mr. DeMarco had to agree to an amendment of the PSPAs that could

address their concerns about the lack of capital.  But it is undisputed that both Mr. Watt and Dr.

Calabria did agree to amendments to the PSPAs.[2]

Moreover, the introduction of these exhibits would create a substantial likelihood of

unfair prejudice to Defendants, because the jury is likely to place undue weight on statements by

the former leaders of FHFA reflecting hindsight-infected policy disagreements.  The prejudice is

compounded by the fact that Defendants would be left scrambling on the eve of trial to develop a

response and provide the jury with the context of Mr. Watt and Dr. Calabria's statements,

including the amendments to which they agreed—and the Parties' presentation of that competing

evidence at trial is likely only to confuse, not illuminate, the issues in dispute.[3]

---

[2]     *See* Joint Statement of Undisputed Facts ¶¶ 43-45 (Class ECF No. 230) (detailing the
terms of the 2017, 2019, and 2021 letter agreements).  Plaintiffs acknowledge an amendment to
the PSPAs ended the cash Net Worth Sweep dividend payments, but they contend that the new
structure, an increase in the liquidation preference equal to the Enterprises' net worth, has the
same impact on the Enterprises.  Trial Tr. 2570:20-24 (Plaintiffs asserting in closing argument
that the Enterprises are "now keeping money, but Treasury owns it all").  Dr. Calabria, however,
saw a benefit to them, stating in May 2021 that the "PSPA amendments that FHFA and Treasury
announced [in 2021] . . . effectively end the net worth sweep" and "allow[] Fannie and Freddie to
build capital to meet the requirements set out in the capital rule that FHFA finalized last fall."
*FHFA Director Mark Calabria's Statement at The Brookings Institution on May 11, 2021*, Fed.
Hous. Fin. Agency (May 14, 2021), https://www.fhfa.gov/Media/PublicAffairs/Pages/FHFA-
Director-Mark-Calabrias-Statement-at-The-Brookings-Institution-on-May-11-2021.aspx.
Indeed, as of March 31, 2023, Fannie Mae's net worth was $64 billion and Freddie Mac's net
worth was $39.1 billion.  Fannie Mae Form 10-Q for 1Q 2013 at p.2 (excerpt attached as **Exhibit
I**); Freddie Mac Form 10-Q for 1Q 2013 at p.2 (excerpt attached as **Exhibit J**).

[3]     Plaintiffs seek to introduce Mr. Watt's remarks from only three occasions during his five-
year tenure at FHFA, during which, at a minimum, he gave 18 speeches, testified before
Congress on 7 occasions, and issued 12 public statements.  *See FHFA Search / Public Affairs*,
Fed. Hous. Fin. Agency, https://www.fhfa.gov/search/Pages/public-affairs-results.aspx?k=Watt
(search results for "Watt").  Likewise, Plaintiffs seek to introduce Dr. Calabria's remarks from
only five occasions during his two-year tenure at FHFA, during which, at a minimum, he gave
12 speeches, testified before Congress on 4 occasions, and issued 8 public statements.  *See
FHFA Search / Public Affairs*, Fed. Hous. Fin. Agency, https://www.fhfa.gov/search/Pages/
public-affairs-results.aspx?k=Calabria (search results for "Calabria").

Third, five of the exhibits are inadmissible for additional reasons.  Two of them (PX-0585 and PX-0586) feature statements about the dividends and other value transferred to Treasury after the Third Amendment, which Defendants have separately moved to exclude under Federal Rules of Evidence 402 and 403.  *See* Defs.' Omnibus Mot. at 19-28 (Class ECF No. 289, Berkley ECF 303).  And three of the new exhibits (PX-0588, PX-0589, and PX-0589-A) contain statements by Dr. Calabria providing his views on the legal constraints imposed by the Housing and Economic Recovery Act of 2008 ("HERA").  These statements should be excluded as improper lay witness opinions.

The Court should therefore exclude PX-0585, PX-0586, PX-0587, PX-0587A, PX-0588, PX-0589, PX-0589-A, PX-0590, PX-0591, and PX-0592 from evidence for the second trial.[4]

## LEGAL STANDARD

The proponent of evidence must establish its relevancy.  *Dowling v. United States*, 493 U.S. 342, 351 n.3 (1990).  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401; *see also United States ex rel. Miller v. Bill Harbert Int'l Constr. Inc.*, No. 95-cv-1231, 2007 WL 861110, at *1 (D.D.C. Mar. 20, 2007) (Lamberth, J.).  "Irrelevant evidence is not admissible."  Fed. R. Evid. 402; *see also* Advisory Committee's Notes on Fed. R. Evid. 401 ("Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the

---

[4]     Pursuant to the Parties' agreement, Defendants served their objections to these exhibits today, July 10.  This motion addresses only some of Defendants' objections, and Defendants reserve their right to raise any of the other objections at a later date if necessary.  Pursuant to L. Civ. R. 7(m), counsel for the Parties have conferred, and Plaintiffs have stated that they intend to oppose this motion.  The Parties have agreed that Plaintiffs will file their brief in opposition by 6:00 pm on Friday, July 14 and that Defendants will file their reply brief on Monday, July 17.

case.").  Even if relevant, courts may exclude evidence "if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, waste of time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403; *Whole Foods Mkt. Grp., Inc. v. Wical L.P.*, No. 1:17-cv-01079, 2019 WL 6910168, at *4 (D.D.C. Oct. 22, 2019) (Lamberth, J.).

Under Federal Rule of Evidence 701, "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Rule 701's carefully crafted limitations apply not only to live testimony but also to the introduction of out-of-court statements into evidence.  *See Sutton v. Washington Metro. Area Transit Auth.*, No. CIV.A. 07-1197 (JDB), 2008 WL 8822521, at *1 (D.D.C. Aug. 27, 2008) (holding a segment of a video recording would be "inadmissible under Fed. R. Evid. 701" because it captured a conversation involving statements "based on scientific, technical, or other specialized knowledge" made by a lay witness); *see also Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d 756, 763 (7th Cir. 2003) (holding there is "no good reason why unqualified and unreliable [specialized] knowledge should be exempted from the expert evidence rules" simply because an out-of-court statement qualifies as a party-opponent admission).

## ARGUMENT

I.   **The Former Directors' Post Hoc Statements About the Enterprises' Inability to "Build Capital" Should Be Excluded Under Federal Rules of Evidence 402 and 403**

   A.   **The Former Directors' Post Hoc Statements Are Irrelevant**

   Mr. Watt and Dr. Calabria had no involvement in the negotiation of the Third Amendment.  By definition, their opinions cannot be relevant to the reasonableness of Mr.

5

DeMarco's decision years earlier to enter into the Third Amendment.

To prevail on their implied covenant claim, Plaintiffs must prove that FHFA's decision to enter the Third Amendment *in August 2012* arbitrarily or unreasonably violated shareholders' objectively reasonable expectations under the shareholder contracts as of December 2009, and that as a result, Plaintiffs' shares lost market value on August 17, 2012.  Final Jury Instructions at 9 (Class ECF No. 250, Berkley ECF No. 240); *see also Fairholme Funds, Inc. v. FHFA*, Nos. 13-cv-1053, 13-mc-1288, 2018 WL 4680197, at *13 (D.D.C. Sept. 28, 2018).  Importantly, the inquiry into the reasonableness of FHFA's decision is made with refence to the "existing facts and circumstances" at the time of the Third Amendment.  Final Jury Instructions at 8 (Class ECF No. 250, Berkley ECF No. 240).

With respect to this inquiry, Plaintiffs themselves have asserted that "the *post hoc* opinions of lay witnesses who had no involvement in, nor even any knowledge of, the Third Amendment until after it had been agreed to will not assist the jury in deciding this case."  Pls.' Omnibus Reply at 7 (Class ECF No. 313, Berkley ECF No. 324).  According to Plaintiffs, such witnesses' after-the-fact "opinions about and reactions to the implementation of the Net Worth Sweep have no bearing on any issue of consequence in this case."  Pls.' Omnibus Mot. at 8 (Class ECF No. 292, Berkley ECF No. 307).  Yet Plaintiffs now seek to introduce opinions of individuals even more remote in time to the Third Amendment taking effect.

Plaintiffs are correct that the post hoc opinions of lay witnesses who were not involved with any of the contracting parties at the time of the Third Amendment are wholly irrelevant, because such witnesses have no percipient knowledge of the facts and circumstances that gave rise to the negotiation and execution of the Third Amendment.  Mr. Watt and Dr. Calabria did not join FHFA until 2014 and 2019, respectively.  At the time of the Third Amendment, Mr.

Watt was a member of Congress and Dr. Calabria worked at the Cato Institute.  Neither Mr. Watt nor Dr. Calabria played any role in the negotiation or execution of the Third Amendment.[5]

All 10 of the new exhibits reflect these former officials' opinions about and reactions to the Net Worth Sweep during their respective tenures, which have no bearing on any fact of consequence to Plaintiffs' implied covenant claim.  For example:

- **PX-0585 (Ex. A) at 3 -- Jan. 27, 2015 Statement by Mr. Watt:** "While steps taken in the conservatorships have helped stabilize the Enterprises' financial condition and the mortgage market, significant challenges remain . . . [including the fact that] the Enterprises do not have the ability to build capital."

- **PX-0586 (Ex. B) at 4 -- Feb. 18, 2016 Statement by Mr. Watt:** "The most serious risk and the one that has the most potential for escalating in the future is the Enterprises' lack of capital. . . . Fannie Mae and Freddie Mac are currently unable to build capital under the provisions of the PSPAs. The agreements require each Enterprise to pay out comprehensive income generated from business operations as dividends to the Treasury Department . . . "

- **PX-0587 (Ex. C) at 5 & PX-0587-A at 2:07-20 -- Oct. 3, 2017 Statement by Mr. Watt:** "What I have been very transparent and open about is that it is really irresponsible to try to run any business without some kind of capital cushion."

- **PX-0588 (Ex. D) at 2 -- May 20, 2019 Statement by Dr. Calabria:** "We need to reform our housing finance system because we never really fixed it after the housing collapse more than a decade ago."

- **PX-0588 (Ex. D) at 2 -- May 20, 2019 Statement by Dr. Calabria:** "With a leverage ratio of nearly one thousand to one, the GSEs' balance sheet capital

---

[5]      Defendants have explained why certain contemporaneous "reaction" testimony by high-ranking officials who were actually working at FHFA or one of the Enterprises at the time of the negotiation and execution of the Third Amendment should be admitted.  *See* Defs.' Opp'n to Pls.' Omnibus Mot. at 13-14 (Class ECF No. 309, Berkley ECF No. 320).  As Defendants have explained, the testimony of those officials is relevant for two reasons that do not apply to the statements of Mr. Watt and Dr. Calabria at issue here.  First, these officials' contemporaneous reactions to the Third Amendment reinforce the circumstances surrounding FHFA's decision in August 2012.  *Id.* at 14.  The same cannot be said for Mr. Watt and Dr. Calabria's hindsight-driven reactions years later.  Second, Plaintiffs themselves have put at issue the views of these particular officials by suggesting that Mr. DeMarco should have consulted them at the time.  *Id.* at 13.

cushion is razor thin relative to their huge amount of assets. As a result, they remain vulnerable to fluctuations in housing prices, interest rates, and macroeconomic conditions. This leaves American taxpayers increasingly exposed to bearing the risks of these mortgage giants through another bailout."

- **PX-0588 (Ex. D) at 5 -- May 20, 2019 Statement by Dr. Calabria: "**As a regulator, my primary concern is that the GSEs maintain capital levels commensurate with their risk profiles. And over time I think Fannie and Freddie ought to operate under essentially the same capital rules as other large financial institutions. So, the path out of the conservatorships that we will establish for Fannie and Freddie is not going to be calendar dependent. It will be driven, first and foremost, by their ability to raise capital. An important step on the path to building the necessary capital will be to address the Net Worth Sweep."

- **PX-0589 (Ex. E) at 4-5 -- June 13, 2019 Statement by Dr. Calabria:** "My primary concern is that Fannie and Freddie maintain capital levels commensurate with their risk profiles. Over time I think they should operate under essentially the same capital rules as other large financial institutions. An important step will be to address the Net Worth Sweep."

- **PX-0589-A at 0:55-1:15 -- June 13, 2019 Statement by Dr. Calabria:** "My primary concern today is that the capital levels of Fannie and Freddie are not commensurate with the risk they take.  Over time, I believe they should ultimately operate under the same capital rules as other large financial institutions.  One important step that I hope to make in concert with Treasury to help build capital is an end to the Net Worth Sweep."

- **PX-0590 (Ex. F) at 2 -- Oct. 22, 2019 Statement by Dr. Calabria:** "[T]here will be defaults when the tide turns and, at their current levels of capital, Fannie Ma[e] and Freddie Ma[c] will fail in a downturn."

- **PX-0591 (Ex. G) at 16 -- Sept. 14, 2020 Statement by Dr. Calabria:** "My job and my statutory mission is to make sure fail the Enterprises never again fail the millions of families whose financial futures depend on a stable mortgage market. To do this, they must build capital."

- **PX-0592 (Ex. H) at 4 -- Oct. 19, 2020 Statement by Dr. Calabria:** "Most financial institutions are required to maintain reserves of loss-absorbing capital exactly for situations like this. By contrast, Fannie and Freddie were required for years to send almost every penny of their loss-absorbing capital to the U.S. Treasury. As a result, when I walked in the door at FHFA, Fannie and Freddie were leveraged about 1,000 to 1. If the Enterprises had still been leveraged 1,000 to 1, they would have already failed in response to COVID. On the other hand, if Fannie and Freddie had more capital when COVID hit, they would have been able to provide even more support."

- **PX-0592 (Ex. H) at 5 -- Oct. 19, 2020 Statement by Dr. Calabria:** "But there is much more that needs to be done to ensure the stability of our housing finance markets. In particular, the Enterprises must build capital. We have made progress on that front. Fannie and Freddie's combined leverage ratio is now down to roughly 250 to 1. This is certainly better than 1,000 to 1. But it is not close to safety and soundness. In their current condition, Fannie and Freddie will fail in a serious housing downturn. Capital absorbs losses and enables the Enterprises to continue supporting borrowers and the mortgage market during times of stress. The more capital an Enterprise has, the more support it can provide."

- **PX-0592 (Ex. H) at 6 -- Oct. 19, 2020 Statement by Dr. Calabria:** "It was insufficient capital that triggered the conservatorships. And building private capital is a necessary precondition to ending them."

These statements from 2015 to 2020 shed no light on the reasonableness of FHFA's actions based on the facts and circumstances existing in August 2012, or on whether the Third Amendment violated shareholders' reasonable expectations under the shareholder contracts as of December 2009.  To the extent these statements are implied criticisms of Mr. DeMarco's decision, they were made with the benefit of 20/20 hindsight, based on actual outcomes years later, and are completely irrelevant to the reasonableness of actions taken under conditions of uncertainty in August 2012.  Plaintiffs' own expert, Dr. Dharan, recognized this issue with respect to his analysis of whether the Net Worth Sweep was "something reasonable shareholders could expect," choosing to "restrict[] [his] analysis" to "information that [FHFA and the Enterprises] had at the time of the Third Amendment," to "put[] [him]self essentially in the same place that [the decisionmakers] were in at the time."  Trial Tr. 1097:19-1098:8.[6]  Importantly, each of the Directors faced a different set of circumstances, including the Enterprises' financial performance in the interim years, the lack of congressional action (which each successor Director

---

[6]     The trial transcripts from the first trial are docketed at ECF Nos. 263-289 on the *Berkley* docket, No. 1:13-cv-1053-RCL; the transcripts are not docketed on the Class docket.  In this brief, Defendants cite to the page–line numbers in the transcripts themselves.

testified was necessary), and the length of the conservatorships.  And each of the Directors began their tenures at FHFA with their own set of policy preferences such as their views on the goals of the conservatorships.[7]  But the fact that Mr. Watt and Dr. Calabria expressed a policy preference for the Enterprises to build capital years after the execution of the Third Amendment has no bearing on the reasonableness of Mr. DeMarco's decision in 2012.  The statements are therefore irrelevant.

At the first trial, this Court correctly excluded evidence that had no contemporaneous connection to the negotiation and execution of the Third Amendment.  *See* Trial Tr. 2432:19-21 (excluding "2022 documents" as irrelevant).  The Court should likewise exclude these 10 exhibits, containing post hoc statements from 2015 to 2020, because they too are irrelevant.

### B.      The Former Directors' Statements Should Be Excluded Under Rule 403

Even if Mr. Watt and Dr. Calabria's statements at issue were somehow relevant (and they are not), they should be excluded under Rule 403.  Any conceivable probative value from long after-the-fact opinions by those wholly uninvolved with the Third Amendment, imbued as they are with competing policy preferences and hindsight bias, is *de minimis*.  And the risks of confusing the issues, unfair prejudice to Defendants, and needlessly presenting cumulative evidence are substantial.

*First*, various portions of the proposed exhibits are likely to confuse the issues before the jury.

All 10 exhibits invite the jury to judge FHFA's decision through the lens of hindsight and stray from the proper inquiry in this case:  whether FHFA acted arbitrarily or unreasonably in

---

[7]      Dr. Calabria, in particular, publicly stated that his goal was to eliminate the Net Worth Sweep.  *See* PX-0588 (Ex. D) at 5; PX-0589 (Ex. E) at 5.

August 2012, when it entered into the Third Amendment, based on "the existing facts and circumstances," thereby frustrating shareholders' reasonable expectations under the shareholders' contracts as of December 2009.  Final Jury Instructions at 8 (Class ECF No. 250, Berkley ECF No. 240).  Flooding the jury with various post hoc statements by Mr. DeMarco's successors—who were neither involved in negotiating and executing the Third Amendment, nor employed by one of the contracting parties in August 2012—risks confusing the relevant inquiry.

Further, the statements involve a multitude of complex, competing policy considerations that would have impacted Mr. Watt and Dr. Calabria's statements long after the Third Amendment took effect.  The introduction of cherry-picked post hoc statements elides how FHFA policy goals evolved over an extended period of time under different leaders, who were appointed by different Presidents with different risk tolerance than their predecessors.  A jury is unlikely to grasp that Mr. Watt and Dr. Calabria had perspectives that were informed by circumstances unknown to FHFA at the time of the Third Amendment.  Mr. DeMarco had just been through the bruising Great Recession that had brought the Enterprises to insolvency.  Consistent with his imperative and his statutory authority, he acted to serve the public interest by protecting the Treasury Commitment over the shareholders' interests.  Indeed, as noted above, each former Director had their own set of policy preferences that they believed also served the public interest.  That is normal.  But their policy preferences (*i.e.*, for the Enterprises to build capital after a number of years of profitability) are irrelevant to the reasonableness of Mr. DeMarco's decision in August 2012.  If the jury were to hear Mr. Watt and Dr. Calabria's statements, the jury would likely be confused as to how evolving policy preferences over the span of 2015 to 2020 relate to FHFA's decision in 2012, which was based upon the actual circumstances that FHFA faced at that earlier time, including the uncertainty of when the

housing market would recover.

The introduction of the former Directors' statements could also confuse the jury by leading it to infer—incorrectly—that they did not have the authority to agree to an amendment to the PSPAs that could address the Directors' concerns in 2015–2020 about the Enterprises' inability to build capital.  There is no record evidence that Mr. DeMarco believed that the Third Amendment would last forever.  It is undisputed that both Mr. Watt and Dr. Calabria agreed to amendments to the PSPAs.  *See* Joint Statement of Undisputed Facts ¶¶ 43-45 (Class ECF No. 230).  If Plaintiffs' exhibits are admitted, the jury is likely to be confused by a skewed and miniscule slice of the story.  Flooding the jury with context is not the solution.  How or why the successor Directors agreed to amendments of the PSPAs years later is too far afield from the question that the jury will consider.

In addition, six of the ten proposed exhibits (PX-0588, PX-0589, PX-0589-A, PX-0590, PX-0591, and PX-0592) feature statements by Dr. Calabria, who prior to the Supreme Court's decision in *Collins* asserted that the Net Worth Sweep violated HERA.  Before joining FHFA in 2019, Dr. Calabria, an economist, published a paper asserting that the Net Worth Sweep violated HERA's conservatorship provisions.  *See* Michael Krimminger & Mark A. Calabria, *The Conservatorships of Fannie Mae and Freddie Mac: Actions Violate HERA and Established Insolvency Principles* 49-51 (CATO Inst., Working Paper No. 26; Ctr. for Monetary & Fin. Alts., Working Paper No. 2, 2015), https://bit.ly/3bO8bdg (arguing that "through the Third Amendment, Treasury and FHFA have expressly rejected complying with [HERA's] requirements").  After his appointment as FHFA Director in 2019, Dr. Calabria gave a statement in a media interview to the same effect.  *See* Interview by Vonnie Quinn, Bloomberg Television, with Mark Calabria, Dir., Fed. Hous. Fin. Agency, at 6:10–56 (Sept. 16, 2019),

https://bit.ly/2FmEnIA (stating that the Net Worth Sweep was "of questionable legality"). Those statements are now known to be incorrect. The Supreme Court unanimously held in 2021 that FHFA, in its capacity as conservator, acted within its statutory powers and functions under HERA in entering into the Third Amendment. *Collins v. Yellen*, 141 S. Ct. 1761, 1777-78 (2021). Moreover, this Circuit has held that "[e]ntirely absent from the Recovery Act's text is any mandate, command, or directive to build up capital for the financial benefit of the Companies' stockholders." *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 607 (D.C. Cir. 2017). Dr. Calabria's statements about the negative impact of the Enterprises' inability to build capital under the Net Worth Sweep were bound up in his view, since rejected by the Supreme Court, that the Third Amendment violated HERA. *See* Krimminger & Calabria, *supra*, at 49-51. Allowing Plaintiffs to present Dr. Calabria's opinions about the Third Amendment and its impact would leave the jury with the confusing task of interpreting how his statements in 2019 and 2020 were linked to his view before the *Collins* decision and affect the reasonableness of FHFA's actions in 2012.

*Second*, permitting Plaintiffs to introduce these post hoc statements would create a substantial likelihood of unfair prejudice to Defendants. The term "unfair prejudice" refers to "the capacity of some concededly relevant evidence to lure the factfinder into [rendering a verdict] on a ground different from proof specific to the [claim] charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997); *see also* Advisory Committee's Notes on Fed. R. Evid. 403 (describing "unfair prejudice" as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.").

The proposed exhibits contain various statements that threaten to draw the jury's ire toward Defendants and induce a decision on an improper basis—namely, an emotional one. For

example, Plaintiffs seek to introduce the transcript and/or video recording of Congressional

testimony from 2017, in which a member of Congress asks Mr. Watt, in an emotionally charged

tone, whether middle-income homeowners "know" or "have been told" that they "are paying

extra on their mortgage so that the United States government's books look better than they

should," even when "those people are still paying income taxes and corporate taxes and all the

other taxes that everybody else pays."  PX-0587 at 4 (Ex. C); PX-0587-A (video recording).  But

cherry-picked congressional statements in the form of questions to the former Directors do not

aid the jury.  Further, Plaintiffs seek to introduce a 2020 remark by Dr. Calabria that the

Enterprises "would have been able to provide even more support" in response to the COVID-19

pandemic if they "had more capital when COVID hit."  PX-0592 at 4 (Ex. H).  These statements,

suggesting that the Third Amendment somehow contributed to increased taxes and limited the

response to the pandemic, are likely to be polarizing and in any event bear no relation to what

FHFA knew and the circumstances it faced in August 2012.  Thus, these and other similar

statements could only serve to induce the jury to render a decision on an improper basis.

The substantial likelihood of unfair prejudice to Defendants is compounded by the fact

that the statements at issue were made by former Directors of FHFA.  There is substantial risk

that the jury will simply attribute relevance to their statements based upon the positions that the

declarants held years *after* the Third Amendment took effect, even though their statements are

not probative of whether FHFA acted arbitrarily or unreasonably in August 2012.  Moreover, if

the exhibits were deemed admissible, Defendants would need to develop and present a

response—such as supplementing their own exhibit list to tell the whole story—due to the

position that Mr. Watt and Dr. Calabria held.  But trial is two weeks away, further compounding

the unfair prejudice that would result from the introduction of these 10 exhibits.  In addition, as

explained above, introducing additional exhibits to provide the jury with a more complete picture of Mr. Watt and Dr. Calabria's statements would create a sideshow at trial and amplify juror confusion.

*Third*, to the extent Plaintiffs seek to introduce these exhibits to demonstrate the terms of the Third Amendment, such evidence is needlessly cumulative because the Third Amendment speaks for itself. Some of Mr. Watt and Dr. Calabria's statements at issue merely summarize how the Net Worth Sweep operates. *See, e.g.*, PX-0587 at 4 (Ex. C) (Mr. Watt stating that Enterprise profits go to Treasury); PX-0592 at 4 (Ex. H) (Dr. Calabria stating that "Fannie and Freddie were required for years to send almost every penny of their loss-absorbing capital to the U.S. Treasury"). But the Third Amendment itself makes this clear. *See* DX-0535 § 3 (Fannie Mae) (attached as **Exhibit K**); DX-0536 § 3 (Freddie Mac) (attached as **Exhibit L**). Moreover, Plaintiffs' experts can testify at the retrial, as they did at the first trial, about the terms of the Third Amendment. *See, e.g.*, Trial Tr. 1103:22-1104:4 (Dr. Dharan testifying about how the Net Worth Sweep operated to sweep the Enterprises' profits to Treasury), *id.* 1511:4-6 (Dr. Mason testifying about the terms of the Third Amendment).

In sum, the Court should also exclude the 10 exhibits at issue under Federal Rule of Evidence 403, because any probative value is substantially outweighed by the dangers of confusing the issues, unfair prejudice to Defendants, and needlessly presenting cumulative evidence.

## II.   **Many of the Proposed Exhibits Are Inadmissible for Additional Reasons**

Many of Plaintiffs' new exhibits are inadmissible for additional reasons.

*First*, two of the proposed exhibits (PX-0585 and PX-0586) contain statements about

dividends and value transferred to Treasury after the Third Amendment.[8]  Specifically, Mr. Watt

referenced such post-Third Amendment value transfers on two separate occasions:

- **PX-0585 (Ex. A) at 4 -- Jan. 27, 2015 Statement by Mr. Watt:** "The cumulative amount of draws that Fannie Mae has received from the Treasury to date under its PSPA is $116.1 billion. Through September 30, 2014, Fannie Mae has paid $130.5 billion in cash dividends to Treasury on the company's senior preferred stock. Under the PSPA, dividends do not offset prior Treasury draws."

- **PX-0585 (Ex. A) at 4 -- Jan. 27, 2015 Statement by Mr. Watt:** "The cumulative amount of draws that Freddie Mac has received from the Treasury to date under its PSPA is $71.3 billion. Through September 30, 2014, Freddie Mac has paid $88.2 billion in cash dividends to Treasury on the company's senior preferred stock. Under the PSPA, dividends do not offset prior Treasury draws."

- **PX-0586 (Ex. B) at 2 -- Feb. 18, 2016 Statement by Mr. Watt:** "Since the beginning of conservatorship through the end of 2015, the Enterprises paid approximately $241 billion in dividends to the Treasury Department."

As explained in Defendants' separate motion in limine, evidence concerning dividends and value

transferred to Treasury after the Third Amendment is not relevant to "whether FHFA acted

arbitrarily or unreasonably in entering into the Third Amendment or to the damages Plaintiffs

may claim."  Defs.' Omnibus Mot. at 19 (Class ECF No. 289, Berkley ECF 303).  This is

because, as noted earlier, the assessment of whether FHFA acted arbitrarily or unreasonably by

entering into the Third Amendment must be based on FHFA's objectives and the uncertainty the

Enterprises' faced as of August 2012, not through the lens of what transpired after the fact.  And

Plaintiffs admit that post-Third Amendment transfers are "not . . . the basis for damages."  Trial

Tr. 2569:23–2570:1.  Accordingly, evidence of post-Third Amendment value transfers can only

serve to taint the jury's decision-making with hindsight bias and confuse the jury about the

---

[8]     As part of the meet and confer process earlier today, Plaintiffs advised that they do not intend to introduce excerpts from the relevant speeches of Directors Watt and Calabria regarding the amount of dividend payments.  Thus, at a bare minimum, the Court should exclude those portions of the exhibits at issue.

relevant inquiry.  *See supra* Section I.B.

*Second*, three of the proposed exhibits (PX-0588, PX-0589, and PX-0589-A) should be excluded under Rule 701 because they contain Dr. Calabria's legal opinions about the scope of the Conservator's authority under HERA.  On multiple occasions in 2019, Dr. Calabria, who is not a lawyer, opined upon what he thought HERA required with respect to the conservatorships:

- **PX-0588 (Ex. D) at 5 -- May 20, 2019 Statement by Dr. Calabria:** "In fact, if you look at the statute, it contemplates an end to the conservatorships. . . . The law requires me to do what I can within my powers to fix the GSEs and then release them from conservatorship – and that's exactly what I intend to do."

- **PX-0589 (Ex. E) at 4 -- June 13, 2019 Statement by Dr. Calabria:** "It has now been more than a decade. This is at odds with what is contemplated in the statute. . . . I want to emphasize that having worked on [HERA], the framework of the statute, that what has been followed is at odds with the statute."

- **PX-0589-A at 0:25-33 -- June 13, 2019 Statement by Dr. Calabria:** "I want to emphasize that having worked on the statute, the framework of the statute, that what has been followed is at odds with the statute."

All these statements should be excluded because they each purport to provide a legal opinion, which is the province of the Court.[9]  *See* Fed. R. Evid. 701; *Talavera v. Glob. Payments, Inc.*, No. 21-CV-1585, 2023 WL 3080701, at *5 (S.D. Cal. Apr. 25, 2023) (sustaining an objection to an exhibit which featured a party's "personal legal opinions," which was "improper" under Rule 701).  Indeed, "lay opinions as to the legality of certain business practices raises a host of admissibility issues."  *In re Urethane Antitrust Litig.*, No. 2:08-5169, 2015 WL 9294670, at *2 (D.N.J. Dec. 21, 2015) (referencing Fed. R. Evid. 701, 704).

---

[9]     Defendants understand that Dr. Calabria was involved in the drafting of HERA.  But the interpretation of HERA is within the purview of the courts.  Presenting the jury with Dr. Calabria's opinion regarding the scope of FHFA's authority under HERA constitutes improper lay witness testimony and would be distinctly prejudicial.

17

**CONCLUSION**

For the foregoing reasons, the Court should exclude PX-0585, PX-0586, PX-0587, PX-0587-A, PX-0588, PX-0589, PX-0589-A, PX-0590, PX-0591, and PX-0592 from evidence for the second trial.

Dated: July 10, 2023                    Respectfully submitted,

                                        */s/ Asim Varma*
                                        Asim Varma (D.C. Bar # 426364)
                                        Jonathan L. Stern (D.C. Bar # 375713)
                                        David B. Bergman (D.C. Bar # 435392)
                                        Ian S. Hoffman (D.C. Bar # 983419)
                                        R. Stanton Jones (D.C. Bar # 987088)
                                        ARNOLD & PORTER KAYE SCHOLER LLP
                                        601 Massachusetts Ave. NW
                                        Washington, DC 20001
                                        (202) 942-5000
                                        Asim.Varma@arnoldporter.com
                                        Jonathan.Stern@arnoldporter.com
                                        David.Bergman@arnoldporter.com
                                        Ian.Hoffman@arnoldporter.com
                                        Stanton.Jones@arnoldporter.com

                                        *Attorneys for Defendant Federal Housing
                                        Finance Agency*

*/s/ Michael J. Ciatti*                 */s/ Meaghan VerGow*
Michael J. Ciatti (D.C. Bar # 467177)   Meaghan VerGow (D.C. Bar # 977165)
KING & SPALDING LLP                     O'MELVENY & MYERS LLP
1700 Pennsylvania Ave. NW               1625 Eye St. NW
Washington, DC 20006                    Washington, DC 20006
Tel.: (202) 661-7828                    Tel.: (202) 383-5300
Fax: (202) 626-3737                     Fax: (202) 383-5414
mciatti@kslaw.com                       mvergow@omm.com

*Attorney for the Federal Home Loan     *Attorney for the Federal National Mortgage
Mortgage Corp.*                         Association*