UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| BERKLEY INSURANCE CO., et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> THE FEDERAL HOUSING FINANCE AGENCY, et al., <br><br> *Defendants*. | Case No. 1:13-cv-1053-RCL |
| IN RE FANNIE MAE/FREDDIE MAC SENIOR PREFERRED STOCK PURCHASE AGREEMENT CLASS ACTION LITIGATIONS <br><br> _____ <br><br> This document relates to: <br> ALL CASES | Case No. 1:13-mc-1288-RCL |

**Plaintiffs' Motion to Revise Juror Voir Dire Questionnaire**

Plaintiffs are in receipt of today's correspondence from the Court regarding the Juror Voir Dire Questionnaire (the "Questionnaire"). In accordance with the parties' prior meeting and conferring regarding voir dire questions, Plaintiffs respectfully move the Court to include two additional questions in the Questionnaire. Defendants have advised Plaintiffs that they do not oppose the addition of the following question (the "Agreed Question"):

> Do you have any strong feelings or beliefs, positive or negative, about the stock market or investors who buy shares in companies that might make it difficult for you to serve as a fair or impartial juror in this case? __yes __no

Defendants have advised Plaintiffs that they oppose the addition of the following question (the "Disputed Question"):

> In a financial dispute between the U.S. government, on one hand, and a company's shareholders, on the other hand, before hearing any evidence in the case, do you think you might tend to favor either the government or the shareholders?  Yes ___ No___

After Defendants objected to the original iteration of the Disputed Question, Plaintiffs proposed a substantive revision, to which Defendants again objected without further explanation. For the reasons discussed herein, Plaintiffs respectfully request that the Court include both the Agreed Question and the Disputed Question in the Questionnaire to elicit information about whether prospective jurors maintain actual bias in favor of Plaintiffs or Defendants—the core purpose of voir dire.

## I. LEGAL STANDARD

It is well established that questions regarding juror impartiality are critical to the voir dire process:[1]

> A jury's impartiality may not be assumed without inquiry, as in the case of a judge. Jurors are drawn from the general body of the community for a short term of service, usually lasting a few weeks, and then return to their customary occupations with neither training nor traditions of impartiality. They must often be unaware of their own disqualification in specific cases, especially since the standards for jury service differ in various parts of the country. Litigants therefore have the right, at the least, to some surface information regarding the prospective jurors. Such information may uncover ground for challenge for cause. If it does not, it will be available in the intelligent use of the peremptory challenge, which is the antithesis of challenge for cause.

Courts also enjoy wide discretion in searching out and eliminating potential bias.  *See Mu'Min v. Virginia,* 500 U.S. 415, 427 (1991); *see also Ritchie v. Rogers*, 313 F.3d 948, 961–63 (6th Cir. 2002); *Bachynski v. Warren*, 96 F. Supp. 3d 680, 695–96 (E.D. Mich. 2015) (stating that

---

[1] Charles Alan Wright & Arthur R. Miller, 9B Fed. Prac. & Proc. Civ. § 2482 (Voir Dire Examination) (3d ed. 1998) (*quoting Kiernan v. Van Schaik*, C.A.3d, 1965, 347 F.2d 775, 779 (Freedman, J.), noted 1966, 51 Cornell L.Q. 837.

there are no particular tests or formulas to identify and eliminate potential juror bias) (citation and internal quotations omitted), *rev'd on other grounds*, *Bachynski v. Stewart*, 813 F.3d 241 (6th Cir. 2015).  The standard for whether a prospective juror should be removed for cause is whether the juror holds a particular belief or opinion that will prevent or substantially impair the performance of their duties in accordance with their instructions and oath.  *See Wainwright v. Witt*, 469 U.S. 412, 433 (1985).  In other words, to qualify as impartial, a juror must not be impaired from making a decision on only the evidence presented.  *See U.S. v. Sampson*, 820 F. Supp. 2d 151, 156 (D. Mass. 2011).

## II.     ARGUMENT

Courts routinely utilize voir dire to survey whether prospective jurors maintain bias against one of the parties.  *See, e.g.*, *Cravens v. Smith*, 610 F.3d 1019 (8th Cir. 2010) (juror's responses during voir dire regarding disfavor of insurance companies and admission that he believed he would side against insurance company even after hearing evidence demonstrated that juror lacked impartiality or the appearance of impartiality).  The capacity of the addition of the Disputed Question to elicit ***actual*** bias against a party is just as important as other questions that seek to elicit personal information or opinions ***implying*** bias.[2]  Giving prospective jurors the opportunity to identify their own biases for or against a party will promote efficiency and allow jurors to raise high-level biases that may not be elicited by other voir dire questions.  Moreover, considering Washington D.C.'s unique juror pool, it is likely that a significant portion of the venire may have particularly strong biases in favor of or against the government.  The most efficient method to

---

[2] *See Treesh v. Bagley*, 612 F.3d 424, 437 (6th Cir. 2010) ("Bias may be actual or implied. Actual bias is 'bias in fact'—the existence of a state of mind that leads to an inference that the person will not act with entire impartiality. The doctrine of presumed or implied, as opposed to actual, bias provides that, in certain 'extreme' or 'exceptional' cases, courts should employ a conclusive presumption that a juror is biased.") (citation and internal quotations omitted).

determine if a juror would knowingly be biased in judging a dispute involving the government is by directly asking that question in the jury questionnaire. The Disputed Question should, therefore, be non-controversial, yet Defendants oppose including it.

The essence of Defendants' objection to the Disputed Question, as Defendants' Counsel communicated through email to Plaintiffs' Counsel, is that it purportedly (1) "provides an overly simplistic, potentially misleading view of the case," and (2) "goes against the concept that jurors need to wait to hear the evidence and instructions before making a decision." *See* email from Defendants' Counsel dated July 19, 2023, attached herein as **Exhibit A**. Neither of these arguments has any merit.

As to Defendants' first argument, it is difficult to understand how the Disputed Question conveys an "overly simplistic" or "misleading" "view" of this Action, especially in comparison to the other agreed-upon voir dire questions. Indeed, the Disputed Question provides no "view of the case" other than to identify Plaintiffs' status as corporate stockholders and Defendants' status as a government agency and related entities, which are not disputed and will be evident to the jury within the first minute of opening arguments. Further, Defendants' prime justification for the Net Worth Sweep is that the government was permitted to act in the public interest and disregard the interests of stockholders.[3] Under these circumstances, it is entirely sensible and in no way prejudicial to pose to prospective jurors the Disputed Question, a neutral question that merely asks them if they self-identify as having a bias in favor of one side or the other.

---

[3] *See, e.g.*, Trial Tr. 2679:1-6 ("So now Mr. DeMarco has to act. He has to act to protect the public interest. Not to maximize profits. Not to act in the financial interest of the shareholder, but to do what he's authorized and required to do under the law, to protect the interests of the public and to fulfill FHFA's public mission.").

As to Defendants' second argument, the Disputed Question is rooted precisely in "the concept that jurors need to wait to hear the evidence and instructions before making a decision." The rationale for the Disputed Question is to identify prospective jurors who may hold pre-existing strong beliefs that could impair their ability to evaluate the evidence impartially and follow this Court's instructions,[4] *i.e.*, to determine if any prospective jurors would knowingly *not* be able "to wait to hear the evidence and instructions before making a decision." In no way does the Disputed Question suggest that prospective jurors *should* make a decision before the presentation of evidence and instructions from the Court; if anything, the question implies that doing so would be problematic. The Disputed Question, like all voir dire questions, is just a preliminary tool to elicit more information about any existent bias in favor of either party, and therefore is entirely proper and appropriate.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court include both the Agreed Question and the Disputed Question in the Questionnaire.

Dated: July 21, 2023                                     Respectfully Submitted,

*/s/ Charles J. Cooper*                                  */s/ Eric L. Zagar*
Charles J. Cooper (Bar No. 24870)                        Eric L. Zagar (*Pro Hac Vice*)
David H. Thompson (Bar No. 450503)                       **KESSLER TOPAZ**
Vincent J. Colatriano (Bar No. 429562)                     **MELTZER & CHECK, LLP**
Peter A. Patterson (Bar No. 998668)                      280 King of Prussia Rd.
Brian W. Barnes (*Pro Hac Vice*)                         Radnor, PA 19087
**COOPER & KIRK, PLLC**                                  Tel: (610) 667-7706
1523 New Hampshire Avenue, N.W.                          Fax: (610) 667-7056
Washington, DC 20036                                     ezagar@ktmc.com
Tel: (202) 220-9600
Fax: (202) 220-9601                                      Hamish P.M. Hume (Bar No. 449914)
ccooper@cooperkirk.com                                   Samuel C. Kaplan (Bar No. 463350)
                                                         **BOIES SCHILLER FLEXNER LLP**

---

[4] *See Thompson v. Altheimer & Gray*, 248 F.3d 621 (7th Cir. 2001) (finding that trial court was required to obtain unequivocal, credible assurances that juror could follow instructions and suspend judgment until after the presentation of evidence).

*Counsel for Berkley Plaintiffs, et al.*

1401 New York Ave. NW
Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
hhume@bsfllp.com
skaplan@bsfllp.com

Michael J. Barry (*Pro Hac Vice*)
John Kairis *(Pro Hac Vice)*
Rebecca Musarra *(Pro Hac Vice)*
**GRANT & EISENHOFER, P.A.**
123 Justison Street
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100
mbarry@gelaw.com
jkairis@gelaw.com
rmusarra@gelaw.com

Adam Wierzbowski (*Pro Hac Vice*)
**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
adam@blbglaw.com

*Co-Lead Counsel for the Class*