**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| BERKLEY INSURANCE CO., et al.,<br><br>        *Plaintiffs*,<br><br>        v.<br><br>THE FEDERAL HOUSING FINANCE AGENCY, et al.,<br><br>        *Defendants.* | Case No. 1:13-cv-1053-RCL |
| IN RE FANNIE MAE/FREDDIE MAC SENIOR PREFERRED STOCK PURCHASE AGREEMENT CLASS ACTION LITIGATIONS<br>_____<br><br>This document relates to:<br>ALL CASES | Case No. 1:13-mc-1288-RCL |

**PLAINTIFFS' MOTION REQUESTING AN ORDER OVERRULING**
**DEFENDANTS' IMPROPER OBJECTIONS CONCERNING**
<u>**DR. JOSEPH MASON'S TESTIMONY ON JULY 27, 2023**</u>

**I.     Introduction**

Plaintiffs file this Motion to address (1) a pending objection to Plaintiffs' re-direct examination of their damages expert, Dr. Joseph Mason, and (2) an objection that the Court sustained during that re-direct examination that was lodged in violation of an explicit agreement between the parties.

**First**, in the pending objection, Defendants seek to prevent Plaintiffs from following up on questions that Defendants raised in cross-examination on the basis that the testimony was not affirmatively included in Dr. Mason's expert reports. The rule Defendants would propose is that Defendants may ask about areas beyond the scope of an expert's report, but then the expert should not be allowed to explain those answers on re-direct if he did not affirmatively include them in the report. This rule finds no support in the law. Plaintiffs should be allowed to ask a limited series of questions to respond to the questions Defendants asked on cross-examination.

**Second**, in the prior (sustained) objection, Defendants flagrantly violated the terms of a carefully negotiated agreement about the relevance of post-Net Worth Sweep price movements in Fannie Mae and Freddie Mac stock. The agreement barred certain lines of questioning and left others specifically on the table. The question that Plaintiffs' counsel asked Dr. Mason was drawn almost verbatim from the parties' agreement, which was memorialized via email and included in Plaintiffs' Pretrial Statement lodged with the Court. Defendants' objection to the question violated the agreement. Meanwhile, on cross-examination, Defendants compounded their violation by displaying two stock price charts showing the GSEs' post-Net Worth Sweep stock price movements, and asking Dr. Mason to confirm no less than six times within ten transcript pages whether the Net Worth Sweep happened "eleven years ago." Plaintiffs submit that the Court should give a curative instruction to the effect that post-Net Worth Sweep movements in the GSEs'

1

stock price are not relevant to damages. Defendants should be hard-pressed to oppose such an instruction, since the parties' agreement sought to memorialize this very point.

II.   **The Court Should Overrule Defendants' Improper Objection To Plaintiffs' Re-Examination Of Dr. Mason On Issues Raised In Defendants' Cross-Examination And Covered In Plaintiffs' Re-Direct At The Last Trial**

Yesterday, during re-direct examination, Defendants improperly objected and sought to block Plaintiffs from re-examining their damages expert, Dr. Joseph Mason, Ph.D., on whether he considered an alternative cause of the August 17, 2012 stock drop. Defendants had just cross-examined Dr. Mason on whether the accelerated reduction of Fannie Mae and Freddie Mac's retained mortgage portfolio, which was also announced on August 17, 2012, might have been a cause of the GSEs' stock price declines. When Plaintiffs sought to ask Dr. Mason on re-direct examination why he believed that the Net Worth Sweep, rather than the accelerated reduction of the mortgage portfolio, was the true cause of the stock price drop, Defendants objected on the ground that Dr. Mason's answer to the question was not contained within his expert reports.

Plaintiffs should be allowed to ask Dr. Mason to explain his answer, elicited on cross-examination, that it was the Net Worth Sweep, rather than the accelerated reduction of the retained portfolio, that caused the GSEs' stock price declines. Defendants know what Dr. Mason's answer to the question will be, because he gave this exact testimony on re-direct examination in the last trial, with no objection by Defendants. The evidentiary rule that Defendants urge on this Court, meanwhile, would allow a party to ask an expert anything they wish, regardless of whether the opinions are found within the expert's report, but then bar the expert from elaborating on those same answers when being re-directed. Defendants' pending objection should be overruled. Plaintiffs will then only ask a short series of questions on this topic, which will amount to no more than five minutes of testimony.

### A.     Relevant Law:  Parties Are Permitted To Re-Direct On Any Issues Raised In Cross-Examination

It is well-established that redirect examination is essential to "repl[y] to [a] new matter adduced on cross-examination" and, moreover, the ability to redirect is "deemed a matter of right." *See, e.g.,* 1 Kenneth S. Broun *et. al.*, 1 McCormick on Evidence § 32 (7th ed. 2013).  Re-direct examination can be necessary in many situations to cure prejudice, including attacks on credibility, resulting from defendants' cross-examination questions.  *Dobson v. United States*, 426 A.2d 361, 365 (D.C. 1981) ("[R]edirect examination is limited to matters which were first raised on cross-examination, to which the opposing party is merely responding on redirect.") (quoting *Singletary v. United States*, 383 A.2d 1064, 1073 (D.C.1978)); *Hilton v. United States*, 435 A.2d 383, 389 (D.C.1981); *Copes v. U.S.*, 345 F.2d 723, 725 (D.C. Cir. 1964) ("[I]t was proper on redirect to explain and complete her testimony on cross-examination."); *Lust v. Sealy, Inc.*, 383 F.3d 580, 587 (7th Cir. 2004) (collecting cases); *see also Josephs v. Harris Corp.*, 677 F.2d 985, 989–90 (3d Cir. 1982) (finding district court committed abuse of discretion by restricting plaintiffs' ability to conduct redirect examination to correct impression after cross-examination that plaintiffs' expert lacked support for opinion); *United States v. Marzano*, 160 F.3d 399, 402 (7th Cir. 1998) (finding that, when cross-examination revealed that witness had omitted mention of misdemeanor, it was error for district court to disallow explanation of that omitted misdemeanor on redirect; stating that if the witness had "been allowed to explain the nature of his conviction, the credibility of his testimony that he had forgotten it when he filled out the form would have been enhanced. We cannot think of any reason why he was not permitted to explain.").

> B.     At The Last Trial, Dr. Mason Testified On Both Cross-Examination And Re-Direct Examination About The Impact Of The Accelerated Reduction Of The Mortgage Portfolio On The Enterprises' Stock Prices

At the last trial, Defendants' cross-examination of Dr. Mason focused heavily on whether the event study conducted by their expert (Dr. Attari) failed to account for the impact of the accelerated mortgage portfolio reduction. Defendants' questions on this topic span eight (8) of the twelve (12) pages of Mason's cross-examination from the Trial 1 transcript.[1] Dr. Mason told Defense counsel that the portfolio reduction acceleration was not the cause of the Enterprises' stock price declines. For example, in response to Defendants' question about whether "the event study" analyzed "the impact of the net worth sweep on the stock prices and any impact of the acceleration of the reduction of the retained mortgage portfolios," Dr. Mason testified that it was "not a potential cause of the decline."[2] Moreover, Dr. Mason confirmed that he *did* consider this exact issue, testifying for example that he "looked at other news" on the "day of the announcement of the Third Amendment."[3]

On re-direct of Dr. Mason, Plaintiffs addressed the same issue. In response, Defendants did not raise a single objection, acknowledging that Plaintiff was entitled to explore this issue on re-direct. There, Dr. Mason testified that the acceleration of the portfolio reduction was already known to the market—and thus could not have caused the stock price declines—and re-confirmed his opinion that it was the "net worth sweep" that "caused the GSE shares to lose half value in August of 2012."[4]

---

[1] Trial 1 Tr. 1526:17-1534:23.

[2] *Id*. at 1529:15-22.

[3] *Id*. at 1531:7-17.

[4] *See Id*. at 1538:3-1539:14.

4

Defendants also raised the mortgage portfolio reduction issue again in their examination of Dr. Mason during his April 26, 2023 deposition.[5]

### C. At This Trial, Defendants Again Asked Dr. Mason About The Accelerated Reduction During Cross-Examination

At this trial, anticipating (correctly) that Defendants would yet again cross-examine on this same issue, Plaintiffs specifically asked Dr. Mason whether there is "any reason to believe that anything besides the net worth sweep could have caused the huge decline in stock price on August 17, 2012"—to which Dr. Mason testified "No."[6] Plaintiffs also asked Dr. Mason whether the portfolio reduction acceleration "caused the stock price declines" on August 17, 2012—to which Dr. Mason also testified "No."[7]

As expected, Defendants' cross-examination of Dr. Mason again focused on the purported impact of the acceleration in the portfolio reduction. For example, Defendants asked whether the event study tried "to analyze how much of the $1.6 billion stock price drop may have been caused by the net worth sweep and how much of that drop may have been caused by this other acceleration of the reduction of the retained mortgage portfolios"—to which Dr. Mason replied "That's right … Defendants' event study does not do that."[8]

On re-direct, given Defendants' cross-examination on this issue, Plaintiffs sought to conduct re-direct examination of Dr. Mason on the purported impact of the portfolio reduction acceleration. Unlike the last trial, however, Defendants objected and sought to block to Plaintiffs'

---

[5] Dep. Tr. of Dr. Joseph Mason (Apr. 26, 2023) at 235:1-237:14.
[6] Trial 2 Tr. (July 27, 2023, Afternoon Session) ("Trial 2 Tr.") at 70:8-11.
[7] *Id.* at 70:12-20.
[8] *Id.* at 95:19-24.

5

efforts to fully and fairly re-direct Dr. Mason.[9]  Defendants' objection was improper and should be overruled.

### D. Just Like Last Trial, Plaintiffs Should Be Permitted To Re-Direct On The Impact Of The Accelerated Reduction On Re-Direct

The law is clear.  Because Defendants cross-examined Dr. Mason concerning the impact of the portfolio reduction acceleration on the Enterprises' stock prices, Plaintiffs are entitled to fully re-examine Dr. Mason on the same issue.  *See, e.g., U.S. v. Smith*, 822 F.3d 755 (5th Cir. 2016) (finding that the district court properly allowed prosecutor's redirect examination of witness that was within scope of matters raised in cross-examination of witness); *U.S. v. Bright*, 630 F.2d 804 (5th Cir. 1980) (finding that where defense counsel implied in cross-examination that FBI was responsible for informant's death, state could redirect to ask witness about cause of informant's death); *U.S. v. Lehr*, 562 F. Supp. 366 (E.D. Pa. 1983), *aff'd*, 727 F.2d 1101 (3d Cir. 1984) (finding that defendant undermined motive on cross-examination, so prosecution could show on redirect that witness worked for government due to defendant's death threat); *U.S. v. Kroh*, 915 F.2d 326 (8th Cir. 1990); *Polk v. Yellow Freight System, Inc.*, 876 F.2d 527 (6th Cir. 1989) (holding that cross-examination hypothetical opened door to area of questioning in redirect examination); *U.S. v. Gutierrez*, 576 F.2d 269 (10th Cir. 1978) (finding that government agent was cross-examined about organizational structure of drug enforcement agency so redirect question eliciting description of drug rings was proper, although testimony would have been prejudicial in absence of cross).

---

[9] *Id*. at 106:12-18 (Q. So what is your opinion about whether it was the net worth sweep or what we've just been talking about, this accelerated reduction, that actually caused Fannie and Freddie's preferred and common stock to fall by 50 percent on one day?  MR. JONES:  Objection, Your Honor.  Could we be heard on this briefly?).

6

The decision in *C.P. Interests Inc. v. California Pools Inc.*, is instructive.  238 F.3d 690, 699 (5th Cir. 2001).  There, the court confronted a situation where an expert witness had been cross-examined on issues beyond the scope of that expert's report.  In light of the cross-examination, the court held that the expert was no longer confined to the scope of the report in redirect.

To be sure, this is what happened at the last trial—with no objection by Defendants.  The same approach should be taken here—and Defendants have provided no basis for the Court to reverse course.

### E. Plaintiffs Will Be Prejudiced if Precluded From Re-Examining On This Issue

If not permitted to re-direct, Plaintiffs will be prejudiced in at least two important ways.  *First*, Plaintiffs will be deprived of their right to fully and fairly re-examine Dr. Mason on the same issues that Defendants chose to raise in their cross-examination.  This is inherently prejudicial.  *Second*, the jury will be left with the mistaken impression that Dr. Mason did not consider the impact of the portfolio reduction acceleration on the Enterprises' stock prices.  This is incorrect given Dr. Mason's testimony in Trial 1—and Defendants know it.  Moreover, it would be especially prejudicial to block Plaintiffs from re-examination on this issue (as Defendants have sought to do) given that Dr. Mason's testimony is Plaintiffs' only source of evidence regarding damages in this case.

In sum, Plaintiffs respectfully submit that Defendants' objection should be overruled.

## III. Plaintiffs Seek a Curative Instruction About Supposed "Price Recovery" Evidence and the Ability to Inquire Into Why Damages Persist to Today

Plaintiffs hereby seek a curative instruction that events post-dating the Net Worth Sweep are not relevant to the question of damages.  This exact topic was the subject of a carefully-negotiated agreement between the parties, which Plaintiffs included in their Pretrial Statement.

7

ECF No. 321 at 12-14.  That agreement barred Defendants from presenting evidence or argument, through Plaintiffs' expert Dr. Mason or otherwise, that stock price movements after the Net Worth Sweep might be relevant to damages.  *Id.* at 14.  It also preserved for Plaintiffs the ability to inquire about specific designated topics.  *Id.* at 13-14.

Yesterday afternoon, July 27, 2023, Plaintiffs attempted to ask a question on re-direct on one of those specifically-designated topics.  The question would have been for Dr. Mason to explain what he meant by his testimony that the harm from the Net Worth Sweep persists today.  Trial 2 Tr. at 102:25-103:3.  The parties' agreement specifically reserved for Plaintiffs the ability to inquire as to (1) whether the $1.6 billion in damages estimated at the announcement of the Net Worth Sweep applies today (ECF No. 276-2 (Mason Supplemental Report) at ¶7 ); and (2)  whether Dr. Mason is of the opinion that there has not been a change in the Net Worth Sweep policy that would mitigate damages in the case.  *Id.* at ¶9.  Defendants' objection violated the clear terms of the parties' agreement.

At the same time, Defendants violated the same agreement between the parties by presenting two stock price charts to the jury that showed Fannie and Freddie's stock prices increasing in the months after the Net Worth Sweep.  Trial 2 Tr. 84.  While these stock charts sat before the jury, Defendants asked Dr. Mason a series of meaningless questions, not meant to elicit any relevant testimony, such as, "if you look at the blue [line], that's just adding the gray and orange lines together" and "[t]he blue is just mathematically the market value of the common and the junior preferred together. Right?" *Id.* at 91:6-9.  Defendants also reminded the jury ***six times*** in ten pages of the trial transcript that the Net Worth Sweep was "eleven years ago." Trial 2 Tr. at 83-92.

8

Defendants' flagrant violation of the parties' agreement has caused substantial prejudice to Plaintiffs. Plaintiffs were not only prevented from having Dr. Mason explain *why* the damage suffered by Fannie and Freddie stockholders still persists today, but Defendants compounded this inequity by then parading irrelevant evidence of post-Net Worth Sweep stock price movements before the jury. Defendants' use of the parties' agreement as both a sword and shield should not be allowed to stand. A curative instruction is warranted. Defendants should be hard-pressed to oppose such an instruction, since it simply corroborates the spirit of the parties' prior agreement, namely, that post-Net Worth Sweep price evidence is irrelevant to the jury's consideration of damages.

Defense counsel have breached an agreement between the parties to not argue or present evidence to the jury of a supposed "recovery" in the prices of Fannie and Freddie stock. As discussed in detail below, during yesterday's proceedings, Defendants falsely accused Plaintiffs of violating the Parties' agreement on "price recovery" evidence, and then Defendants violated the agreement themselves.

### A. Defendants' Objection to Questioning on *Why* Damages Persist to Today Should Not Have Been Sustained

Yesterday, Plaintiffs' counsel asked Dr. Mason in redirect about his testimony that "the damages from the net worth sweep still persist today" and if that was an accurate quote from his testimony. Trial 2 Tr. at 101:2-4. That straightforward question elicited an objection from Defendants, who claimed that the question was somehow outside the scope of the parties' agreement on supposed "price recovery" evidence. *Id*. at 101:11-20. Plaintiffs' counsel elaborated that he would seek to "go back to the direct testimony" where he had asked Dr. Mason "[d]oes this damage still persist today" and "ask him to explain what he meant by that." *Id*. at 102:25-103:3. The Court sustained Defendants' objection to that type of questioning. *Id.* at 103:21.

9

The parties' agreement barred Defendants from objecting to Plaintiffs' question. The Parties' "price recovery" agreement specifically allowed Plaintiffs to ask about why the damages from the Net Worth Sweep persist today. During the colloquy on this topic, defense counsel overstated the scope of the parties' agreement, claiming that Plaintiffs had categorically "agreed that they would not present testimony from Dr. Mason's supplemental report." *Id*. 101:11-17. To the contrary, the parties agreed that Plaintiffs were prohibited from eliciting testimony from Dr. Mason's supplemental report only from specific sections, namely:

- Paragraph 7 (other than the first sentence)
- The last sentence of Paragraph 13
- The last sentence of Paragraph 14
- The last three sentence of Paragraph 15
- Paragraphs 16-18 in their entirety

As a result, there are several ways that Dr. Mason might answer Plaintiffs' intended questioning that are within the terms of the Parties' agreement. Those include that there has not been a change in the Net Worth Sweep policy (by which all profits generated by the GSEs accrue to the benefit of Treasury) that would mitigate damages in this case. Moreover, the post-Net Worth Sweep share price movement that Defendants characterize as a "recovery" is unrelated to any change in the Net Worth Sweep. Such testimony is not barred by the parties' agreement.

**B.      Defendants' Cross-Examination Violated the Parties' "Price Recovery" Agreement**

Defendants' cross-examination of Dr. Mason violated the parties' agreement on the introduction of supposed "price recovery" evidence. During Defendants cross-examination of Dr. Mason, Defendants published to the jury two charts from Defendants' event study showing the existence of Fannie and Freddie stock price increases after August 17, 2012.



As the chart showing the prices increases were published to the jury, defense counsel reiterated *six times* that the Net Worth Sweep had occurred "11 years ago." Trial 2 Tr. at 83-92. This line of questioning included such pointless inquiries as:

> And just to orient everyone, today is July 27th, 2023. So that means August 17, 2023, the day of this one-day decline in share prices, that was almost 11 years ago. Right?

Trial 2 Tr. at 83:6-9. This conveyed to the jury that stock price movements during the intervening 11 years between August 2012 and the present are somehow relevant here—all while Defendants kept the slide showing the September and October 2012 stock price movements published to the jurors.

11

This is the exact type of "price recovery" evidence that was the subject of the Parties' original dispute at the first trial, and which formed the need for the parties' agreement going forward—which Defendants then violated yesterday. At the first trial, on cross-examination of Dr. Mason, defense counsel elicited testimony from him about the supposed "recovery" in the prices of Fannie and Freddie stock in September and October of 2012. Specifically, defense counsel read to the jury a single sentence from Defendants' expert's event study which stated that the "Price of the common stock *recovered* in September 2012 and that of the junior preferred stocks *recovered* during October 2012." Trial 1 Tr. at 1524:1-7 (emphasis added). Defense counsel then asked Dr. Mason, "Did I read that correctly?" *Id*. at 1524:6 (emphasis added). Defense counsel then asked whether "September 2012 was . . . the month after August 2012, when the Third Amendment was announced" (*id*. at 1524:11-14) and then whether "October 2012 was the month after that, the one right after September?" to which Professor responded affirmatively. *Id*. at 1524:15-17. This conveyed to the jurors the implication that the prices of Fannie and Freddie stock had "recovered" and thereby reduced Plaintiffs' recoverable damages. This is the same playbook that Defendants followed yesterday in an attempt to introduce post-Net Worth Sweep price recovery evidence.

In Defendants' closing argument during the first trial, defense counsel also commented on the purported price recovery, stating that "shareholders didn't lose that one-day reduction in share price for 10 years, as plaintiffs claim. The share prices started to increase immediately in 2012." *Id*. at 2688:3-8. On February 17, 2023, in advance of the second trial, and in an attempt to prevent a similar improper line of questioning from Defendants without being allowed the opportunity to provide an opinion on post-Net Worth Sweep stock price movements, Plaintiffs moved to serve on the Defendants a supplemental expert report from Dr. Mason. That proposed supplemental

12

report discussed why Fannie and Freddie stock price movements after the August 17, 2012 imposition of the Net Worth Sweep were not a "recovery" of lost value and therefore did not mitigate Plaintiffs' damages. ECF No. 291. On June 2, 2023, this Court denied Plaintiffs' motion. ECF No. 298.

On June 8, 2023, after the Court denied Plaintiffs' motion, counsel for Plaintiffs and Defendants discussed by phone a potential agreement about the scope of Dr. Mason's testimony at the second trial. That same evening, Plaintiffs' counsel emailed Defendants' counsel at 6:00 pm to memorialize the parties' agreement on the issue of supposed "price recovery" questioning of Dr. Mason. Ex. 1 (Email dated June 8, 2023) at 2. Plaintiffs' counsel wrote that he appreciated Defendants':

> confirmation that they ***would not ask Dr. Mason any questions about a purported price recovery*** in GSE shares following the NWS (*see, e.g.,* [First Trial] Tr. 1523:25-1524:17 (questions about a purported recovery in share prices in September 2012 and October 2012); *see also* Mason Supp. Dep. Tr. 66:6-78:18; 124:4-143:11;162:15-168:13 (questions about price recovery)); and that Defendants ***will not otherwise argue to the jury*** that the ***share increases*** after the Third Amendment ***mitigated damages*** (*see, e.g.,* Tr. 2687:24-2688:8) (emphasis supplied).

However, as Plaintiffs' counsel also explicitly set forth in his email confirmation, "some portions of Dr. Mason's supplemental report ***refer to opinions that he previously expressed*** in his expert report or during prior trial testimony," and "this agreement will not foreclose Dr. Mason from providing testimony at the second trial similar to his testimony at the first trial." *Id.* (emphasis supplied).

During the June 8 call, Defense counsel had asked Plaintiffs to provide Defendants with "specific portions of Dr. Mason's supplemental expert report that he will not testify about at trial []." *Id.* Accordingly, in Plaintiffs' counsel's June 8 email, Plaintiffs identified specific paragraphs of Dr. Mason's Supplemental Report about which Dr. Mason would not testify, including,

13

"Paragraph 7 *(other than the first sentence)."* *Id.* (emphasis supplied).  Plaintiffs thus thereby carved out of their agreement the first sentence of paragraph 7 of Dr. Mason's supplemental report. That first sentence of Paragraph 7 states, and expressly allowed Dr. Mason to testify, that "[t]he opinion in my Reply Report regarding the $1.6 billion in damages estimated at the announcement of the NWS *applies today*, as well as in 2012." (Mason Supplemental Report) at ¶7 (emphasis supplied).  Mr. Kravetz's email asked Ms. Varma to "[p]lease let me know if this accurately describes the scope of our agreement." Ex. 1 at 2.  Ms. Varma responded the same evening that, "I write to confirm Defendants' agreement on the terms in your emails of 6:00 pm and 10:27 pm today." *Id.* at 1.

The parties also further confirmed and memorialized their understanding of this agreement in their respective Pretrial Statement filings with the Court.  In Plaintiffs' Pretrial Statement, they set forth for the Court that, among other things, "in connection with [their] agreement, Dr. Mason will not testify about the following paragraphs in his supplemental report: Paragraph 7 (*other than the first sentence*)." ECF 321 at 13.  Emphasis supplied.  Similarly, in Defendants' Pretrial Statement, they represented that Defendants would "not ask Dr. Mason *any questions about a price recovery* in Enterprise shares following the Net Worth Sweep (*see, e.g.,* Trial 1 Tr. 1523:25-1524:17 (questions about a recovery in share prices in September 2012 and October 2012), and Defendants *will not otherwise argue* to the jury that the share price increases after the Third Amendment *mitigated damages.*" ECF No. 318 at 15 (emphasis supplied).

However, despite Plaintiffs' diligence to attempt to avoid the same issues that the Defendants' conduct raised in the first trial, yesterday defense counsel *once again* displayed to the jury evidence of a supposed price recovery in a clear effort to suggest to the jury the existence of mitigated damages.  This was despite the parties' clear agreement to explicitly prevent such an

14

outcome, and despite Defendants' lack of expert testimony that could support an assertion of mitigated damages.

### C. Plaintiffs Seek a Curative Instruction, or in the Alternative, Additional Re-Direct of Dr. Mason

Defendants' violation of the parties' agreement has significantly prejudiced Plaintiffs' ability to response to the stock price movements after August 2012 shown to the jurors. "Prompt curative instructions" can prevent prejudice "from rising to the high level required to warrant a mistrial or severance." *Morris v. Pruitt,* 308 F. Supp. 3d 153, 169 (D.D.C. 2018). Moreover, courts routinely find curative instructions wisely given twice. *See, e.g., Brages v. Superintendent of SCI Benner Twp.,* 2022 U.S. Dist. LEXIS 66854, at *38-39 (W.D. Pa. Apr. 11, 2022) (giving two curative instructions); *United States v. Johnston*, 620 F. App'x 839, 845 (11th Cir. 2015) (curative instructions, one given during the final jury charge); *United States v. Brooks,* 508 F.3d 1205, 1211 (9th Cir. 2007) (curative instructions given twice, one given at the end of trial); *United States v. Coffey*, 823 F.2d 25, 27 (2d Cir. 1987) (giving two curative instructions). Accordingly, Plaintiffs seek a curative instruction, one given today at the start of the day and one before jury deliberations, that:

> I instruct you that any movements in the prices of Fannie Mae and Freddie Mac stock after August 17, 2012 are not relevant to your consideration of damages in this case. If you find that the Net Worth Sweep caused damages to Fannie Mae or Freddie Mac's stock prices on August 17, 2012, then I instruct you that anything subsequent to that date cannot have mitigated that damage because the Net Worth Sweep has never been undone.

In the alternative, Plaintiffs request the ability to question Dr. Mason about (i) what he meant by the fact that damages persist to today; (ii) how any stock price increases in 2012 after the Net Worth Sweep were in response to events unrelated to the Net Worth Sweep, and that (iii) since the FHFA did not undo the Net Worth Sweep in 2012, any stock price increases in 2012 do not reduce Plaintiffs' damages here.

Dated: July 27 ,2023

Respectfully submitted,

/s/ Charles J. Cooper
Charles J. Cooper (Bar No. 24870)
David H. Thompson (Bar No. 450503)
Vincent J. Colatriano (Bar No. 429562)
Peter A. Patterson (Bar No. 998668)
Brian W. Barnes (*Pro Hac Vice*)
**COOPER & KIRK, PLLC**
1523 New Hampshire Avenue, N.W.
Washington, DC 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

*Counsel for Berkley Plaintiffs, et al.*

Michael J. Barry (*Pro Hac Vice*)
**GRANT & EISENHOFER, P.A.**
123 Justison Street
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100
mbarry@gelaw.com

Adam Wierzbowski (*Pro Hac Vice*)
**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
adam@blbglaw.com

*Co-Lead Counsel for the Class*

/s/ Eric L. Zagar
Eric L. Zagar (*Pro Hac Vice*)
**KESSLER TOPAZ
  MELTZER & CHECK, LLP**
280 King of Prussia Rd.
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
ezagar@ktmc.com

Hamish P.M. Hume (Bar No. 449914)
Samuel C. Kaplan (Bar No. 463350)
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave. NW
Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
hhume@bsfllp.com
skaplan@bsfllp.com

16