# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BERKLEY INSURANCE, Co., *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>FEDERAL HOUSING FINANCE AGENCY, *et al.*,<br><br>        Defendants. | Case No. 1:13-cv-1053 (RCL) |
| In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations<br><br>_____<br><br>This document relates to:<br>ALL CASES | Case No. 1:13-mc-1288 (RCL) |

**DEFENDANTS' MOTION FOR A FINAL JURY INSTRUCTION**
**REGARDING THE 10% CASH DIVIDEND REQUIREMENT**

Defendants Federal Housing Finance Agency ("FHFA" or "Conservator"), as Conservator for the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac," and together with Fannie Mae, the "Enterprises"), and the Enterprises hereby move for a final jury instruction on the correct legal interpretation of the Treasury Stock Certificates—namely, that the Enterprises were required to pay Treasury a 10% dividend in cash, and that the 12% addition to the liquidation preference was a penalty for failure to pay in cash, not simply a choice.  A supporting memorandum and proposed order are being filed with this motion.

Dated: July 29, 2023

Respectfully submitted,

*/s/ Asim Varma*
Asim Varma (D.C. Bar # 426364)
Jonathan L. Stern (D.C. Bar # 375713)
David B. Bergman (D.C. Bar # 435392)
Ian S. Hoffman (D.C. Bar # 983419)
R. Stanton Jones (D.C. Bar # 987088)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave. NW
Washington, DC 20001
(202) 942-5000
Asim.Varma@arnoldporter.com
Jonathan.Stern@arnoldporter.com
David.Bergman@arnoldporter.com
Ian.Hoffman@arnoldporter.com
Stanton.Jones@arnoldporter.com

*Attorneys for Defendant Federal Housing Finance Agency*

*/s/ Michael J. Ciatti*
Michael J. Ciatti (D.C. Bar # 467177)
KING & SPALDING LLP
1700 Pennsylvania Ave. NW
Washington, DC 20006
Tel.: (202) 661-7828
Fax: (202) 626-3737
mciatti@kslaw.com

*Attorney for the Federal Home Loan Mortgage Corp.*

*/s/ Meaghan VerGow*
Meaghan VerGow (D.C. Bar # 977165)
O'MELVENY & MYERS LLP
1625 Eye St. NW
Washington, DC 20006
Tel.: (202) 383-5300
Fax: (202) 383-5414
mvergow@omm.com

*Attorney for the Federal National Mortgage Association*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BERKLEY INSURANCE, Co., *et al.*,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>FEDERAL HOUSING FINANCE AGENCY, *et al.*,<br><br>　　　　Defendants. | Case No. 1:13-cv-1053 (RCL) |
| In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations<br><br>_____<br><br>This document relates to:<br>ALL CASES | Case No. 1:13-mc-1288 (RCL) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR A FINAL JURY INSTRUCTION REGARDING THE 10% CASH DIVIDEND REQUIREMENT**

**INTRODUCTION**

The parties have presented to the jury dueling interpretations of the provision of the Treasury Stock Certificates that govern a central issue in this case: Fannie Mae and Freddie Mac's obligations to make dividend payments to Treasury. The plain language of this critical provision has already been definitively construed by the Supreme Court and this Court. Nevertheless, in their opening, Plaintiffs urged the jury to adopt a different and incorrect interpretation of the provision.

But contract interpretation is a matter of law, and the meaning of this unambiguous provision therefore is the province of the Court and may not be left for the jury to decide. To avoid the jury improperly engaging in contract interpretation, Defendants request that the Court instruct the jury on the correct interpretation of the Stock Certificate provision requiring Fannie Mae and Freddie Mac to pay a cash dividend to Treasury.

The relevant contract provision is:

2. Dividends

\*\*\*

(c) "Dividend Rate" means 10.0%; provided, however, that if at any time the Company shall have for any reason failed to pay dividends in cash in a timely manner as required by this Certificate, then immediately following such failure and for all Dividend Periods thereafter until the Dividend Period following the date on which the Company shall have paid in cash full cumulative dividends (including any unpaid dividends added to the Liquidation Preference pursuant to Section 8), the "Dividend Rate" shall mean 12.0%.

Defendants maintain that this provision <u>required</u> Fannie Mae and Freddie Mac to pay Treasury a 10% dividend in cash, and imposes as a <u>failure</u> to do so a <u>penalty</u> dividend equal to a 12% addition to the Liquidation Preference. In contrast, Plaintiffs contend that "Fannie and Freddie <u>never had to pay</u> the Treasury dividend in cash," Trial Tr. 24:16-17 (7/26/23 AM), and instead had "an <u>option</u> of a payment in kind," *Id.* at 23:23-24.

1

The interpretation Plaintiffs advocated to the jury is legally incorrect. The Supreme Court and this Court have already rejected as a matter of law Plaintiffs' argument that this provision did not entitle Treasury to payment of the 10% cash dividend and instead gave the Enterprises the "option" of paying the dividend at the 12% rate. An instruction at the close of evidence is both appropriate and necessary to clarify the correct interpretation for the jury.

## ARGUMENT

### I. Contract Interpretation is a Matter of Law for the Court To Resolve

It is well-settled that contract interpretation is a matter of law and, in particular, interpretation of an unambiguous contract is a question of law for the Court, and not a question of fact for the jury. *Rainbow Mountain, Inc. v. Begeman*, No. CV 10221-VCMR, 2017 WL 1097143, at *8 (Del. Ch. Mar. 23, 2017) ("[T]he construction and interpretation of an unambiguous written contract is an issue of law within the province of the court." (citation omitted)); *Babcock & Wilcox Co. v. Areva NP, Inc.*, 292 Va. 165, 188, 788 S.E.2d 237, 249 (2016) (holding that, where a contract is unambiguous, "[i]ts plain meaning was thus a question of law for the court, not a question of fact for the jury" (citation omitted)). *See also Haskins v. Point Towing Co.*, 421 F.2d 532, 536 (3d Cir. 1970) ("[C]onstruction of a contract is a question of law for the court to decide . . . and when clear and unambiguous language is at issue, it is reversible error to leave such questions for the jury") (citation omitted).

### II. The Supreme Court and this Court Have Interpreted the 10% Dividend Provision of the Treasury Stock Certificates As a Matter of Law

Consistent with its unambiguous terms, the Supreme Court and this Court have both interpreted the contract provision at issue as a matter of law. They have resolved the exact dispute that is the subject of this requested jury instruction, and they have adopted Defendants'

2

interpretation of Fannie Mae and Freddie Mac's dividend obligations under the Treasury Stock Certificates.

In *Collins v. Yellen*, the Supreme Court expressly rejected Plaintiffs' interpretation that the Treasury Stock Certificates allowed FHFA to "protect[] Treasury's capital commitment by ordering the companies to pay the dividends in kind rather than in cash." 141 S. Ct. 1761, 1777 (2021). The Court held:

> This argument rests on a ***misunderstanding of the agreement*** between the companies and Treasury. The companies' stock certificates ***required*** Fannie Mae and Freddie Mac to pay their dividends "in cash in a timely manner." If the companies had ***failed*** to do so, they would have incurred a ***penalty***: Treasury's liquidation preference would have immediately increased by the dividend amount, and the dividend rate would have increased from 10% to 12% until the companies paid their outstanding dividends in cash.

*Id*. at 1777-1778 (emphasis added) (citation and footnote omitted).

In addition to holding that the 10% cash dividend was required, *Collins* went on to say that "***paying Treasury in kind would not have satisfied the cash dividend obligation***." *Id.* at 1778 (emphasis added). That is, the Court made clear that the 10% cash dividend was mandatory, not optional, and that paying "in kind" would not "satisf[y] the . . . obligation." *Id*.

This Court also rejected Plaintiffs' interpretation that the Enterprises "didn't have to pay the [10%] dividend in cash" because the Treasury Stock Certificates supposedly "allowed" the Enterprises to forgo the 10% dividend in favor of adding 12% to the liquidation preference. Class ECF No. 46 at 6-7, n.7; Berkley ECF No. 56, at 6-7, n.7. The Court found that the "***unambiguous language of the contract***" is to the contrary:

> [T]he Court notes its disagreement with the plaintiffs' characterization of one ***purported alternative*** to the Third Amendment. ***The plaintiffs claim that the GSEs "had no obligation to pay the 10 percent dividend in cash***," and instead could simply opt to pay a 12% dividend that would be added to the outstanding liquidation

3

>  preference rather than be paid in cash each quarter.  However, the ***plaintiffs' contention that paying 10% in cash or adding 12% to the liquidation preference was merely a matter of choice directly contravenes the unambiguous language of the contract***. . . . ***The [PSPA] provision makes clear that 10% cash dividends were "required by" the stock certificates***, and that 12% dividends deferred to the liquidation preference were only triggered upon a "failure" to meet the 10% cash dividend requirement.  Thus, ***classifying the 12% dividend feature as a "penalty," as Treasury does, is surely more accurate than classifying it as a "right.***"

*Id.* (emphases added).[1]

In addition, this Court rebuffed Plaintiffs' attempt to "gloss over this distinction by repetitively using the phrase 'in kind' to describe the 12% dividend feature." *Id*.  The Court explained: "[i]nclusion of 'in kind' within § 2(c) [of the Treasury Stock Certificates] would have slightly improved the plaintiffs' argument that the contract expressly permitted the GSEs to simply choose between a 10% cash dividend or 12% dividend deferred to the liquidation preference.  But, as plaintiffs are certainly aware, 'in kind' appears nowhere within the stock certificates' dividends provision." *Id*.

### III.  Contract Interpretation Is Properly Addressed By an Instruction to the Jury

Where, as here, a term of a contract is unambiguous, courts routinely provide the jury an instruction on the meaning of the contract as a matter of law.  *See, e.g.*, *Rose v. Uniroyal Goodrich Tire Co.*, 219 F.3d 1216, 1221 (10th Cir. 2000) (finding no error in instructing a jury on the court's interpretation of an unambiguous contract provision).  Indeed, submitting an unambiguous contract to the jury for interpretation is improper, *Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co.*, No. 7:16-cv-489, 2019 WL 3307850, at *2 (W.D. Va. July 22, 2019) ("If the terms of the contract are clear and unambiguous, the court alone must construe the contract.  In

---

[1] On appeal, the D.C. Circuit did not address this portion of the Court's ruling or interpret this provision of the Treasury Stock Certificates. *See Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 610 (D.C. Cir. 2017).

4

such a case, it is improper to submit the contract to the jury for interpretation" (quoting Va. Model Jury Instructions Civil No. 45.190, Commentary)), and may constitute reversible error.

For example, in *Dillard & Sons Const., Inc. v. Burnup & Sims Comtec, Inc.*, 51 F.3d 910, 916 (10th Cir. 1995), *as clarified* (May 12, 1995), the Tenth Circuit held that the district court had "erred in submitting a question of law to the jury" regarding the interpretation of an unambiguous contract provision, reversed the jury verdict, and remanded for a new trial. In *Dillard*, the district court found, as the Court did in the present case, that a contract term was unambiguous. Nevertheless, at trial, the district court denied a requested jury instruction interpreting the contract term. *Id.* The Court of Appeals reversed the jury verdict and remanded for a new trial, holding that "the jury may have interpreted the court's instruction to allow the jury to construe the contract's provisions," *id.* at 916, and may have reached its decision based on an interpretation of the contract that was contrary to its unambiguous terms, *id*. ("We agree with the Seventh Circuit that the erroneous submission of a legal question to the jury compels reversal when the jury returns a general verdict, creating uncertainty as to whether the jury relied upon an improper resolution of the legal issue.").

Other courts have similarly reversed jury verdicts where a trial court failed to instruct a jury as a matter of law regarding the meaning of terms in a contract. *See, e.g., U.S. Fire Ins. Co. v. Pressed Steel Tank Co.*, 852 F.2d 313, 316-17 (7th Cir. 1988) (reversing a jury verdict for instructional error where the court permitted the jury to decide a matter of contract interpretation that was a question of law); *Lamb Eng'g & Const. Co. v. Nebraska Pub. Power Dist.*, 103 F.3d 1422, 1431 (8th Cir. 1997) ("Here, the district court found that the termination clause was unambiguous[.] Because the contract was unambiguous, the district court committed reversible error in submitting the issue to the jury." (citation omitted)); *Al Luch v. Scottsdale Ins. Co.*, No.

5

17-cv-21507, 2019 WL 13035720, at *9 (S.D. Fla. May 23, 2019) (granting a new trial because jury instructions permitted a jury finding that was "foreclosed by the unambiguous and plain meaning" of a provision of the contract).

This Court has already held that the dividend provisions at issue here are unambiguous and that those unambiguous provisions required Fannie Mae and Freddie Mac to pay Treasury a 10% cash dividend—and did not provide "a choice" to simply accrue the dividend to the Liquidation Preference at 12%. Class ECF No. 46 at 6-7, n.7; Berkley ECF No. 56, at 6-7, n.7. Therefore, this Court should instruct the jury accordingly.

### IV.    Proposed Instruction

Defendants respectfully request that the Court include a Final Jury Instruction as follows:

You have heard testimony concerning Section 2(c) of the Treasury Stock Certificates issued in connection with the Preferred Stock Purchase Agreements (PSPAs). This is the provision of the contracts between Treasury and the Enterprises that governs the payment of dividends to Treasury.

I have found as a matter of law that these provisions in the contracts are unambiguous. As a result, the interpretation of these provisions of the contracts is a matter of law for the Court to decide, not an issue of fact for you to determine. I will therefore instruct you on what these provisions of the contracts mean. And, like my other instructions regarding the law, you are to apply in this case, you are required to follow this instruction about the interpretation of these contract provisions. You are to disregard any testimony or other evidence, as well as any arguments of counsel, you heard in this case that is inconsistent with, or disregards, my instruction to you about what these provisions of the contracts mean. You are instructed when considering these provisions of the agreements that:

The Treasury Stock Certificates required Fannie Mae and Freddie Mac to pay a 10% annual cash dividend to Treasury on a quarterly basis. If Fannie Mae and Freddie Mac failed to pay the 10% cash dividend, the Certificates provided that 12% would be added to the Treasury liquidation preference. The 12% payment (which you have sometimes heard referred to as a "Payment-in-Kind" or a "12% Penalty Dividend") was a contractual penalty that would not have satisfied the contractual cash dividend obligation. Paying 10% in cash or adding 12% to Treasury's liquidation preference was not a matter of choice.

## CONCLUSION

For the foregoing reasons, Defendants request that the Court instruct the jury on the correct legal interpretation of the Treasury Stock Certificates, including that the Enterprises were required as a matter of law to pay Treasury a 10% dividend in cash.

Dated: July 29, 2023

Respectfully submitted,

/s/ Asim Varma
Asim Varma (D.C. Bar # 426364)
Jonathan L. Stern (D.C. Bar # 375713)
David B. Bergman (D.C. Bar # 435392)
Ian S. Hoffman (D.C. Bar # 983419)
R. Stanton Jones (D.C. Bar # 987088)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave. NW
Washington, DC 20001
(202) 942-5000
Asim.Varma@arnoldporter.com
Jonathan.Stern@arnoldporter.com
David.Bergman@arnoldporter.com
Ian.Hoffman@arnoldporter.com
Stanton.Jones@arnoldporter.com

*Attorneys for Defendant Federal Housing Finance Agency*

/s/ Michael J. Ciatti
Michael J. Ciatti (D.C. Bar # 467177)
KING & SPALDING LLP
1700 Pennsylvania Ave. NW
Washington, DC 20006
Tel.: (202) 661-7828
Fax: (202) 626-3737
mciatti@kslaw.com

*Attorney for the Federal Home Loan Mortgage Corp.*

/s/ Meaghan VerGow
Meaghan VerGow (D.C. Bar # 977165)
O'MELVENY & MYERS LLP
1625 Eye St. NW
Washington, DC 20006
Tel.: (202) 383-5300
Fax: (202) 383-5414
mvergow@omm.com

*Attorney for the Federal National Mortgage Association*