UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| BERKLEY INSURANCE CO., et al.,<br><br>                *Plaintiffs*,<br><br>         v.<br><br>THE FEDERAL HOUSING FINANCE AGENCY, et al.,<br><br>                *Defendants*. | Case No. 1:13-cv-1053-RCL |
| IN RE FANNIE MAE/FREDDIE MAC SENIOR PREFERRED STOCK PURCHASE AGREEMENT CLASS ACTION LITIGATIONS<br><br>_____<br><br>This document relates to:<br>ALL CASES | Case No. 1:13-mc-1288-RCL |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLARIFICATION REGARDING THE COURT'S JULY 21, 2023 DECISION <u>REGARDING THE ADMISSIBILITY OF DR. ATTARI'S TESTIMONY</u>**

      Defendants have no credible answer to the merits of Plaintiffs' motion to clarify the scope of the opinions that Dr. Attari may offer concerning his Bond Event Study. Their sole hope is to obscure their lack of an answer with the claim that the issue has been previously addressed, and to make every effort to ensure the issue remains unclear and confused.

      Here is the source of the confusion, and hopefully the clarity that will resolve it:

- The issue presented by our motion is whether Dr. Attari has any reliable basis for distinguishing between the following two potential causes for the change in bond yield prices after the Third Amendment: (a) a widespread perception, documented by FHFA itself in documents attached to Plaintiffs' Motion, that both the Net Worth Sweep and the accelerated reduction in the retained mortgage portfolio signaled there would be a ***reduction in supply*** of future GSE bonds, thus increasing prices and lowering yields, versus (b) an alleged perception that the Net Worth Sweep made the GSEs more creditworthy and safe. The Court has ***never*** addressed this issue.

1

- The issue is **not** whether Dr. Attari is permitted to discuss his Bond Event Study at all or say that his Bond Event Study shows that "the Third Amendment" caused the decline in bond yield spreads. The Court has held that he can do so, and Plaintiffs (subject to preserving their prior overruled objections) accept that.

There is a clear difference between these issues. Both were raised in Plaintiffs' briefing of their May 26, 2023 Motion in Limine to exclude Dr. Attari's testimony about the Bond Event Study. But the Court resolved only the second, not the first. It does not follow from the Court's conclusion on the second issue that Dr. Attari should be able to present an unreliable opinion on the first issue. Plaintiff thus seek a decision on the merits on that issue.

Plaintiffs' motion establishes that Dr. Attari has no reliable basis for the opinion that his Bond Event Study shows that yield spreads declined because the Third Amendment increased bond investors' confidence in the GSEs' creditworthiness. That is because his methodology cannot reliably exclude the obvious alternative cause for the decline that appears in FHFA's own documents—*i.e.*, that the Third Amendment caused bond investors to expect that the future supply of longer-term bonds was going to decline. *See generally* Class ECF No. 337 and attached exhibits.

Defendants' opposition continues to fail to offer the Court any reliable basis for that opinion. Their lone response on the actual substance of our motion is that the Bond Event Study analyzed long-term bonds that would have matured after 2018. Thus, according to Defendants, the yield spreads for those bonds would not have been affected by the accelerated decline in the retained portfolio. This is not an answer. First, as discussed in Plaintiffs' initial motion, the accelerated decline in the retained portfolio was not the only aspect of the Third Amendment that would have caused an expectation of declining supply. Instead, as stated in the initial filing and as reflected in the cited documents, "the announcement of the Net Worth Sweep provision of the Third Amendment also triggered a perception that the supply of GSE bonds would decline." *See* Class ECF No. 337, Motion for Clarification Regarding the Court's July 21, 2023 Decision

Regarding the Admissibility of Dr. Attari's Testimony, at 5-6. Defendants have no answer to this point.

Further, and as also explained in the initial motion without response from Defendants, "the decline in spreads was *more* pronounced for longer term bonds, not less so, as Defendants' argument would have the Court believe." *Id*. at 6. The same FHFA documents explain that "the prospect of fewer years of new issues remaining served as a 'last call' of sorts, *particularly for longer term maturities that may not be tapped again*." *Id*. (emphasis added). Defendants respond with a single conclusory sentence that such documents are "fodder for cross-examination" and go to weight. That is wrong. These FHFA documents identify an obvious alternative explanation that applies with *greater* force to *longer* term bonds. They therefore provide an obvious alternative explanation that Dr. Attari has no reliable way to exclude, and, under *Daubert*, this means that the opinion must be excluded, not merely cross-examined. *See* Class ECF No. 337 at 2 n.2; Class ECF No. 290 at 9-10 n.2 (citing numerous cases).

Because Defendants have no credible basis for offering the opinion, they devote most of their filing to the assertion that the Court has already ruled on the issue. But we explained in our motion and further explain above why that is not so. Plaintiffs do not challenge the Court's conclusion that the Event Study is admissible, and Dr. Attari may testify that the Third Amendment caused the change in bond yields. But the Court has never found that Dr. Attari has a reliable basis for identifying whether yield spreads declined in response to the Third Amendment because of –

1. an expectation of declining supply (attributable to the Net Worth Sweep, the overall "wind down" signaled by the Third Amendment, and the accelerated reduction of the retained portfolio), ***or***

3

    2.   increased investor confidence in GSE creditworthiness (as Dr. Attari improperly opined in the last trial, *see* Trial Tr. 1968:11-1969:1).

Nor could the Court have concluded that Dr. Attari had a reliable basis for distinguishing between the foregoing causes, since Defendants have never at any point supplied a reliable basis for doing so. Indeed, if the Court had found a reliable basis for offering that opinion, it would at some point have addressed and evaluated the lone, inadequate rationale that Defendants now offer in response for why the opinion is reliable. Evaluation of that argument, however, is absent from the Court's prior decisions. Defendants do not explain how the Court could have addressed the reliability of the opinion at issue without ever addressing the lone rationale that Defendants have offered for why it is reliable.

Dr. Attari should therefore not be permitted to offer an opinion that the change in yield spreads was caused by increased investor confidence in GSE creditworthiness (or anything similar). What the Court addressed in its July 21 order was the argument that Dr. Attari cannot distinguish between the impact of different aspects of the Third Amendment. *See* Class ECF No. 326 at 2; *Berkley* ECF No. 336 at 2 ("plaintiffs argue that the event study does not isolate the NWS from other parts of the Third Amendment not at issue in this case, rendering it both unreliable and confusing to the jury"). The Court even emphasized that Dr. Attari was careful "never to use the words 'Net Worth Sweep' in describing his event study." *See id*. The Court did **not** address the reliability of Dr. Attari's opinion that the Third Amendment caused bond yield spreads to decline due to ***increased investor confidence*** rather than ***an expectation of declining supply***. And it is that opinion—and only that opinion—that this motion seeks to exclude.

**CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiffs' motion. Dr. Attari should be precluded from offering the opinion, and Defendants should be precluded from arguing, that the Bond Event Study shows that the Third Amendment or Net Worth Sweep increased bond investors' (or any investors') confidence in the GSEs' creditworthiness.

Dated: July 31, 2023

/s/ Charles J. Cooper
Charles J. Cooper (Bar No. 24870)
David H. Thompson (Bar No. 450503)
Vincent J. Colatriano (Bar No. 429562)
Peter A. Patterson (Bar No. 998668)
Brian W. Barnes (*Pro Hac Vice*)
**COOPER & KIRK, PLLC**
1523 New Hampshire Avenue, N.W.
Washington, DC 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

*Counsel for Berkley Plaintiffs, et al.*

Respectfully Submitted,

/s/ Hamish Hume
Hamish P.M. Hume (Bar No. 449914)
Samuel C. Kaplan (Bar No. 463350)
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave. NW
Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
hhume@bsfllp.com
skaplan@bsfllp.com

Eric L. Zagar (*Pro Hac Vice*)
**KESSLER TOPAZ
  MELTZER & CHECK, LLP**
280 King of Prussia Rd.
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
ezagar@ktmc.com


Michael J. Barry (*Pro Hac Vice*)
John Kairis *(Pro Hac Vice)*
Rebecca Musarra *(Pro Hac Vice)*
**GRANT & EISENHOFER, P.A.**
123 Justison Street
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100
mbarry@gelaw.com
jkairis@gelaw.com
rmusarra@gelaw.com

Adam Wierzbowski (*Pro Hac Vice)*
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
adam@blbglaw.com

*Co-Lead Counsel for the Class*