# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BERKLEY INSURANCE CO., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL HOUSING FINANCE AGENCY, *et al.*,<br><br>Defendants. | Case No. 1:13-cv-1053-RCL |
| In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations<br><br>_____<br><br>This document relates to:<br>ALL CASES | Case No. 1:13-mc-1288-RCL |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR A FINAL JURY INSTRUCTION REGARDING THE 10% CASH DIVIDEND REQUIREMENT AND OPPOSITION TO PLAINTIFFS' CROSS-MOTION TO PRECLUDE FURTHER ARGUMENT THAT "PAYMENT IN KIND" WAS NOT AN AVAILABLE OPTION**

# TABLE OF CONTENTS

                                                                                                         **Page**

**INTRODUCTION** ............................................................................................................................. 1

**ARGUMENT** .................................................................................................................................. 2

    I.     The Court Should Instruct the Jury on the Enterprises' Dividend Obligations Consistent with the Supreme Court's Unanimous Holding in *Collins* ........................... 2

    II.    None of Plaintiffs' Arguments Can Overcome the Supreme Court's Holding in *Collins* ................................................................................................................................ 5

**CONCLUSION** ............................................................................................................................... 9

## INTRODUCTION

In light of Plaintiffs' arguments regarding the Enterprises' contractual dividend obligations under the Treasury Stock Certificates, this Court should instruct the jury on the meaning of the relevant provisions consistent with the Supreme Court's unanimous holding in *Collins* and this Court's own considered reading of those provisions in its 2014 decision.

Defendants' proposed instruction is straightforward. It states that the Treasury Stock Certificates "required" the Enterprises to pay the 10% dividend in "cash," just like the Supreme Court and this Court said. Next, the proposed instruction states that the 12% increase in Treasury's liquidation preference upon a failure to pay cash dividends was a "penalty," just like the Supreme Court and this Court said. And, as the Supreme Court's and this Court's decisions make clear, Defendants' proposed instruction states that the Enterprises could not simply "cho[ose]" the 12% liquidation-preference increase as an alternative or substitute for paying cash dividends. Indeed, as the Supreme Court explained, Plaintiffs' position—that FHFA could have protected the Treasury Commitment from erosion due to circular draws by choosing the so-called "PIK" opinion—"misunderstands" the relevant provisions of the Stock Certificates.

Plaintiffs' scattershot arguments to the contrary are unavailing. None of the record materials Plaintiffs rely upon contradicts Defendants' proposed instruction. In any event, the proper interpretation of unambiguous contract language is a purely legal issue, and it is therefore the decisions of the Supreme Court and this Court that control, not a fact stipulation summarizing the contract or snippets of witness testimony that do not directly address the key issues.

The Court should grant Defendants' motion and give the requested instruction to ensure that the jury is not encouraged to render a verdict based on a misunderstanding or misinterpretation of the Enterprises' dividend obligations under the Treasury Stock Certificates.

For the same reasons, the Court should deny Plaintiffs' motion to preclude further argument that "payment in kind" was not an available option.

## ARGUMENT

I. **The Court Should Instruct the Jury on the Enterprises' Dividend Obligations Consistent with the Supreme Court's Unanimous Holding in *Collins***

Plaintiffs do not deny that the proper interpretation of unambiguous contract language is a question of law to be decided by the Court rather than the jury. Nor do they dispute it is appropriate to give a jury instruction on such an issue of interpretation. Plaintiffs also do not dispute that both the Supreme Court and this Court have previously addressed the relevant provisions of the Treasury Stock Certificates regarding the Enterprises' dividend obligations. Instead, Plaintiffs claim that the Supreme Court's decision "contradict[s]" Defendants' proposed instruction, Opp. at 12 (emphasis and capitalization omitted), and they urge this Court to disregard its prior interpretation as "dicta." *Id.* at 13. Plaintiffs are wrong.

Every aspect of Defendants' proposed instruction closely and carefully tracks the Supreme Court's and this Court's decisions. First, Defendants' proposed instruction explains that "[t]he Treasury Stock Certificates *required* Fannie Mae and Freddie Mac to pay a 10% annual *cash* dividend to Treasury on a quarterly basis." Mot. at 6 (emphases added). That is materially identical—indeed, nearly verbatim—to what the Supreme Court said. *See Collins v. Yellen*, 141 S. Ct. 1761, 1777 (2020) ("The companies' stock certificates *required* Fannie Mae and Freddie Mac to pay their dividends '*in cash* in a timely manner.'" (emphases added)); *see also Perry Cap. LLC v. Lew*, 70 F. Supp. 3d 208, 217 (D.D.C. 2014) ("The [PSPA] provision makes clear that 10% cash dividends were 'required by' the stock certificates . . . .").

Second, Defendants' proposed instruction states that "[i]f Fannie Mae and Freddie Mac failed to pay the 10% cash dividend, the Certificates provided that 12% would be added to the

2

Treasury liquidation preference," and that this "12% payment . . . was a contractual *penalty* that would not have satisfied the contractual *cash* dividend obligation." Mot. at 6 (emphases added). Again, this is the same thing the Supreme Court said. *See Collins*, 141 S. Ct. at 1778 ("If the companies had failed to do so, they would have incurred *a penalty*: Treasury's liquidation preference would have immediately increased by the dividend amount, and the dividend rate would have increased from 10% to 12% until the companies paid their outstanding dividends *in cash*." (emphases added)). Even Plaintiffs admit that *Collins* "describes the [12%] payment as a 'penalty.'" Opp. at 12; *see also Perry Cap. LLC*, 70 F. Supp. 3d at 217 ("[C]lassifying the 12% dividend feature as a 'penalty' . . . is surely more accurate than classifying it as a 'right.'").

Third, Defendants' proposed instruction states that "[p]aying 10% in cash or adding 12% to Treasury's liquidation preference was not a matter of choice." Mot. at 6. This instruction tracks exactly the view adopted in this Court's 2014 opinion, which stated that "plaintiffs' contention that paying 10% in cash or adding 12% to the liquidation preference was merely a matter of choice *directly contravenes the unambiguous language of the contract*." *Perry Cap. LLC*, 70 F. Supp. 3d at 217 (emphasis added). Even if that explanation were mere dicta at the time, it is now supported by the Supreme Court's decision. *Collins* held that the shareholder plaintiffs' contention "that the FHFA could have protected Treasury's capital commitment by ordering the companies to pay the dividends *in kind rather than in cash* . . . rests on a misunderstanding of the agreement between the companies and Treasury," because "paying Treasury in kind *would not have satisfied* the cash dividend obligation." *Collins*, 141 S. Ct. at 1777-78 (emphases added).

Far from contradicting Defendants' proposed instruction, as Plaintiffs contend, the Supreme Court's and this Court's decisions squarely support every aspect of the instruction.

3

And while Plaintiffs attempt to minimize the discussion in *Collins* as a mere "passage of the opinion" (Opp. at 12-13), it in fact constitutes a holding of the Supreme Court that is binding here. *See, e.g.*, *United States v. Windsor*, 570 U.S. 744, 759 (2013) (explaining that legal conclusions that are "necessary predicate[s]" to a court's holding are "not dictum"); *Mass. Lobstermen's Ass'n v. Ross*, 945 F.3d 535, 541 (D.C. Cir. 2019) ("[a] necessary part of [the court's] reasoning" is not dicta).[1]

What is more, the Supreme Court and this Court were correct in interpreting the unambiguous language of the agreements between Treasury and the Enterprises. On their face, the Treasury Stock Certificates state that the Enterprises were "required" to pay the 10% cash dividend each quarter, and that if the Enterprises had "fail[ed]" to do so, the dividend rate would increase to 12% until the Enterprises "shall have paid *in cash* full cumulative dividends (including any unpaid dividends added to the Liquidation Preference …)." Opp. Ex. A, § 2(c) (Fannie Mae) (emphasis added); *see also* Opp. Ex. B, § 2(c) (Freddie Mac) (same). If the parties had intended the 12% penalty to be an alternative mechanism for the Enterprises to fulfill their contractual obligation, they would have written it as an alternative, just as they did in the context of the Periodic Commitment Fee:

> *At the election of [Fannie or Freddie]*, the Periodic Commitment Fee *may* be paid in cash *or* by adding the amount thereof ratably to the liquidation preference of each outstanding share of Senior Preferred Stock so that the aggregate liquidation

---

[1] Even if *Collins*'s analysis were dicta, it was "carefully considered" dicta—which binds this Court all the same: In this Circuit, "carefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative." *In re Grand Jury Investigation*, 916 F.3d 1047, 1053 (D.C. Cir. 2019) (citation omitted); *Zivotofsky ex rel. Zivotofsky v. Sec'y of State*, 725 F.3d 197, 212 (D.C. Cir. 2013) (same); *United States v. Fields*, 699 F.3d 518, 522 (D.C. Cir. 2012) (same); *Overby v. Nat'l Ass'n of Letter Carriers*, 595 F.3d 1290, 1295 (D.C. Cir. 2010) (same); *United States v. Askew*, 529 F.3d 1119, 1148 (D.C. Cir. 2008) (same); *United States v. Dorcely*, 454 F.3d 366, 375 (D.C. Cir. 2006) (same); *Sierra Club v. E.P.A.*, 322 F.3d 718, 724 (D.C. Cir. 2003) (same); *United States v. Oakar*, 111 F.3d 146, 153 (D.C. Cir. 1997) (same).

> preference of all such outstanding shares of Senior Preferred Stock is increased by an amount equal to the Periodic Commitment Fee. [Fannie or Freddie] shall deliver *notice of such election* not later than three (3) Business Days prior to each Periodic Fee Date. If the Periodic Commitment Fee is not paid in cash by 12:00 pm (New York time) on the applicable Periodic Fee Date (irrespective of Seller's election pursuant to this subsection), *Seller shall be deemed to have elected* to pay the Periodic Commitment Fee by adding the amount thereof to the liquidation preference of the Senior Preferred Stock, and the aggregate liquidation preference of the outstanding shares of Senior Preferred Stock shall thereupon be automatically increased, in the manner contemplated by the first sentence of this section, by an aggregate amount equal to the Periodic Commitment Fee then due.

DX-0085 at 6 (attached as **Exhibit A**) (Fannie Mae PSPA); DX-0086 at 6 (attached as **Exhibit B**) (Freddie Mac PSPA) (emphasis added). This language providing two alternatives for paying the Periodic Commitment Fee stands in stark contrast to the Certificates' 12% penalty for "*fail[ure]* to pay dividends in cash in a timely manner *as required*." PX-0033 (Opp. Ex. A) at 2; PX-0034 (Opp. Ex. B) at 2-3 (emphasis added).

In sum, the Court should instruct the jury on the proper interpretation of unambiguous contract language, and every aspect of Defendants' proposed instruction is supported by the Supreme Court's and this Court's decisions regarding the Enterprises' dividend obligations.

**II.     None of Plaintiffs' Arguments Can Overcome the Supreme Court's Holding in *Collins***

Plaintiffs offer a scattershot of arguments, in effect requesting that this Court reject its own prior interpretation and disregard the interpretation of the Supreme Court. None of these authorities can overcome the Supreme Court's clear statement of law.

First, Plaintiffs' references to "contemporaneous documents and testimony" are not inconsistent with the Supreme Court's interpretation of the 10% dividend obligation, but even if they were inconsistent, the latter's construction and holding would control.

The Enterprises' financial statements do not support Plaintiffs' misreading of the 12% penalty; instead, they track the language of § 2(c) of the Treasury Stock Certificates: "If at any

5

time *we fail to pay cash dividends in a timely manner*, then *immediately following such failure* and for all dividend periods thereafter until the dividend period following the date on which we have paid in cash full cumulative dividends (including any unpaid dividends added to the liquidation preference), the dividend rate will be 12% per year." Opp. Ex. E at 36; Opp. Ex. F at 41 (emphasis added).  A Treasury staffer's 2008 email on the scope of a consultant's financial analysis, Opp. Ex. H, and that consultant's later financial analysis, Opp. Ex. G, do not bear on the interpretation of the provision at issue.  But even if such documents carried any weight (and they do not), they would not displace the analysis and interpretation provided by a unanimous Supreme Court.  Finally, Mr. DeMarco's testimony is not inconsistent with the jury instruction Defendants have requested, as his testimony described the Enterprises' non-payment of the required 10% dividend as a "failure to pay."  First Trial Tr. 1014:8-16.  Regardless of whether Plaintiffs find an instance where at some point some person misconstrued § 2(c), any such misinterpretation would not supplant the correct interpretation by a unanimous Supreme Court.

      Second, neither the Joint Statement of Undisputed Facts nor the parties' "course of conduct" contradicts the correct reading of § 2(c) as requiring the Enterprises to pay a 10% dividend.  The Joint Statement of Undisputed Facts refers to the "specific terms of the Senior Preferred Stock" as contained within the Treasury Stock Certificate.  JX-1 ¶ 19 (Class ECF No. 335, Berkley ECF No. 345).[2]  It then describes how the PSPAs entitled Treasury to "an increase of the liquidation preference at a rate of 12% of Treasury's liquidation preference" when the annual cash dividend was "not paid in cash." *Id.* ¶ 20.  As the Supreme Court stated, "[p]aying Treasury in kind would not have satisfied the cash dividend obligation; it would only have

---

[2] "Class ECF No." refers to Case No. 1:13-mc-1288; "Berkley ECF No." refers to Case No. 1:13-cv-1053.

6

delayed that obligation, as well as the risk that the companies' cash dividend obligations would consume Treasury's capital commitment." *Collins*, 141 S. Ct. at 1765. The Joint Statement of Undisputed Facts does not change that. Similarly, Defendants' "course of conduct" does not suggest acquiescence to Plaintiffs' misreading of the 10% dividend obligation; otherwise, Defendants, for example, would not have objected to Plaintiffs' opening demonstratives on this very point. Finally, Defendants' description in opening argument of the *shareholders*' contract, which lacks the 10% dividend that is at issue here, does not undermine Defendants' interpretation of a separate provision (§ 2(c)) in a separate contract (Treasury Stock Certificate) that is consistent with a holding of the Supreme Court.

Third, Plaintiffs' selective quotations of the "plain language" of the Certificates themselves are unavailing. Opp. at 3, 4-7. The Certificates state that the Enterprises were "*required*" to "pay dividends in cash in a timely manner." PX-0033 (Opp. Ex. A) at 2, PX-0034 (Opp. Ex. B) at 2-3 (emphasis added). And where the Certificates elsewhere introduce alternative options for the Enterprises to fulfill their contractual obligations, they do so by allowing the Enterprises' "election" between one option "or" the other. *See* DX-0085 at 6 (Ex. A); DX-0086 at 6 (Ex. B). No such language is used to define the 10% cash dividend requirement.

Fourth, Plaintiffs wrongly claim that language in a series of earlier decisions in this case supports their position that the 12% penalty was an equally available alternative to Fannie's and Freddie's 10% cash dividend obligations. They cite a line from the D.C. Circuit's 2017 opinion that simply presents the stockholders' argument that "FHFA could instead have adopted a payment-in-kind dividend option that would have increased Treasury's liquidation preference by 12% in return for avoiding a 10% dividend payment," to which the court responded only,

7

"[p]erhaps," without deciding the question. *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 610 (D.C. Cir. 2017). Plaintiffs also cite this Court's post-remand motion-to-dismiss ruling summarizing the stock purchase agreements, urging that it is meaningful that the Court did not state that the 10% cash dividend was mandatory and the 12% penalty was "somehow never available, never applicable, and a dead letter." Opp. at 14 (citing *Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*, 2018 WL 4680197, at *3 (D.D.C. Sept. 28, 2018)).  In any event, the binding source of authority of the contractual provision at issue is the Supreme Court's decision in *Collins*, which ruled squarely in favor of Defendants' interpretation.

Finally, Plaintiffs turn to case law addressing contracts providing for "alternate performance." Plaintiffs contend that "[i]t is well-established that when a contract sets forth two alternatives for performing a contractual obligation, that constitutes a contract providing for 'alternate performance,' where either alternative satisfies the party's obligation and is not a penalty." Opp. at 14-15. This may well be true when the contract at issue actually sets forth alternate performance. And the Court need not look far for an example: as discussed *supra*, the PSPAs' Periodic Commitment Fee terms expressly laid out options for alternate performance through which Fannie and Freddie could, at their "*election*," fulfill their obligations. DX-0085 at 6 (Ex. A); DX-0086 at 6 (Ex. B) (emphasis added).  In stark contrast, the contracts did no such thing with respect to the 10% cash dividend payments; instead they set forth the 12% penalty as a backstop in case of the GSEs' "fail[ure]" to meet their cash dividend obligations, not as another option to meet those obligations.  Indeed, as the Supreme Court explained, under the contracts, paying the 12% penalty "would not have satisfied the cash dividend obligation"; it would only have deferred it temporarily. *Collins*, 141 S. Ct. at 1778.  Plaintiffs' assertion that the 12% penalty was a "reasonabl[e] equivalent," Opp. at 15, to the mandatory cash dividend is contrary

8

to the text of the Treasury Stock Certificates and the Supreme Court's interpretation of those contracts and, therefore, irrelevant.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court grant Defendants' Motion and add to the final jury instructions the instruction regarding the 10% cash dividend requirement set forth in Defendants' Proposed Order. For the same reasons, the Court should deny Plaintiffs' Cross-Motion to Preclude Further Argument That "Payment in Kind" Was Not an Available Option.

Dated: August 1, 2023

Respectfully submitted,

*/s/ Asim Varma*
Asim Varma (D.C. Bar # 426364)
Jonathan L. Stern (D.C. Bar # 375713)
David B. Bergman (D.C. Bar # 435392)
Ian S. Hoffman (D.C. Bar # 983419)
R. Stanton Jones (D.C. Bar # 987088)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Tel.: (202) 942-5000
Fax: (202) 942-5999
Asim.Varma@arnoldporter.com
Jonathan.Stern@arnoldporter.com
David.Bergman@arnoldporter.com
Ian.Hoffman@arnoldporter.com
Stanton.Jones@arnoldporter.com

*Attorneys for Defendant Federal Housing Finance Agency*

*/s/ Michael J. Ciatti*
Michael J. Ciatti (D.C. Bar # 467177)
KING & SPALDING LLP
1700 Pennsylvania Ave. NW
Washington, DC 20006
Tel.: (202) 661-7828
Fax: (202) 626-3737
mciatti@kslaw.com

*Attorney for the Federal Home Loan Mortgage Corp.*

*/s/ Meaghan VerGow*
Meaghan VerGow (D.C. Bar # 977165)
O'MELVENY & MYERS LLP
1625 Eye St. NW
Washington, DC 20006
Tel.: (202) 383-5300
Fax: (202) 383-5414
mvergow@omm.com

*Attorney for the Federal National Mortgage Association*