UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| BERKLEY INSURANCE CO., et al., <br><br>          *Plaintiffs*, <br><br>    v. <br><br>THE FEDERAL HOUSING FINANCE AGENCY, et al., <br><br>          *Defendants*. | Case No. 1:13-cv-1053-RCL |
| IN RE FANNIE MAE/FREDDIE MAC SENIOR PREFERRED STOCK PURCHASE AGREEMENT CLASS ACTION LITIGATIONS <br><br>―――――――――――――――――― <br><br>This document relates to: <br>ALL CASES | Case No. 1:13-mc-1288-RCL |

**REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' CROSS-MOTION TO PRECLUDE FURTHER ARGUMENT OR SUGGESTION THAT "PAYMENT IN KIND" WAS NOT A LEGALLY AVAILABLE OPTION**

       In at least ten places in Plaintiffs' opposition brief, we quoted or cited the language of Section 2(a) of the Certificates, which provides that Treasury was entitled to receive dividends "when, as and if declared by the Board of Directors, in its sole discretion."[1]  This language unambiguously gives the Board of each GSE the "sole discretion" to decide whether to declare a dividend.  Defendants failed to respond to it a single time.  They have no answer to it.  Their motion

---

[1] *See* Class ECF No. 341; *Berkley* ECF No. 351 at 1, 4, 5, 6, 14, 16 (citing and quoting Exs. A and B to Pls.' Cross-Mot., Class ECF Nos. 341-1, 341-2, § 2(a); *Berkley* ECF Nos. 351-1, 351-2, § 2(a) ("Certificates")).

1

is based on the hope they can distract the Court from looking at it. Their failure to respond to this central argument is alone a basis for ruling against them.[2]

Following Section 2(a)'s unambiguous language giving the Board discretion whether or not to declare a dividend, Sections 2(b), 8(a)(iii), 3(a)(i), and 2(c) spell out very precisely what happens if the Board chooses not to do so – or, if it chooses to declare a dividend but then does not pay the dividend in cash. Those provisions provide that the unpaid cash dividend is added to Treasury's Liquidation Preference, and the Dividend Rate is thereafter raised from 10% to 12% until such time as the GSE pays all unpaid cash dividends on a cumulative basis, which then pays down the increases to the Liquidation Preference from unpaid cash dividends, and returns the rate to 10%. This process is set out in unambiguous contractual text and confirmed by contemporaneous documents and testimony, the parties' stipulations, and Defendants' total failure to even raise a contrary argument until the eve of a second trial. *See* Class ECF No. 341, *Berkley* ECF No. 351, at 4–11 ("Cross Mot.").

Defendants fail to address Section 2(a), and this failure to respond is dispositive. Contracts may not be construed by excising inconvenient portions. *Weinberg v. Waystar, Inc.*, 294 A.3d 1039, 1044 (Del. 2023) (Courts "read the contract as a whole and enforce the plain meaning of clear and unambiguous language" (quotations omitted)). Defendants also have no answer to Plaintiffs' point that in their opening statement, Defendants relied on language identical to that found in Section 2(a) of Treasury's Certificate to argue that, when it appears in Plaintiffs' stock certificates, it means the Board does indeed have "sole discretion" whether to declare a dividend. *See* Cross Mot. 11.

---

[2] *See, e.g.*, *CSX Transp., Inc. v. Commercial Union Ins., Co.*, 82 F.3d 478, 482–83 (D.C. Cir. 1996) (indicating that failure to respond to an argument raised by the opposing party results in waiver and, thus, concedes the issue); *Maib v. FDIC*, 771 F. Supp. 2d 14, 20 (D.D.C. 2011) (same); *Bonaccorsy v. District of Columbia*, 685 F. Supp. 2d 18, 24 (D.D.C. 2010) (same); *Felter v. Salazar*, 679 F. Supp. 2d 1, 3 n.2 (D.D.C. 2010) (same).

They assert only that the contracts are different, ignoring that the language they rely on in Plaintiffs' stock certificates is also found in section 2(a) of the Treasury Certificate. Further, Plaintiffs explained that the difference between the contracts is that when the GSE Board chooses not to declare a dividend to Treasury, it gets added to the Liquidation Preference pursuant to very precise mechanics set forth in the provisions cited above. That difference simply confirms there is a choice between paying in cash or paying in kind.

Defendants try to draw the Court's attention to a Periodic Commitment Fee ("PCF") provision that has nothing to do with dividends, and that further undermines their position. *See* Defs.' Resp. to Cross-Mot., Class ECF No. 345 at 4-5; *Berkley* ECF No. 355 at 4-5 ("Resp. to Cross Mot."). They cite Section 3(c) of the Certificates, which states that the PCF may be paid in cash or added to the liquidation preference at "the election" of the GSEs. *Id.* This provision, Defendants say, shows that the drafters of the Certificates knew how to provide an "option" when they wanted to do so. *See id.* But the drafters provided equally clear language for dividends by giving the Board, in the very first sentence of Section 2(a) (the provision Defendants ignore), the "***sole discretion***" whether to declare a dividend. By *also* giving that option with respect to the PCF, the PCF provision confirms that the drafters of the Certificates wanted to preserve payment options for the GSEs with respect to *both* the payment of dividends and the payment of the PCF. Both make clear that the GSEs could pay in cash or in kind. Defendants make no attempt to identify a meaningful difference between the phrase "[a]t the election of Seller" (for the PCF) and the phrase "when, as and *if* declared by the Board, ***in its sole discretion***" (for the dividends). There is none. Both preserve the GSEs' ability to make payments in kind rather than being forced to draw from the Commitment to pay either dividends or the PCF in cash. Nothing in the PCF provision contravenes or overrides the unambiguous language in Section 2(a) establishing that

3

Treasury was entitled to receive cash dividends only "when, as and if declared" by each GSE Board "in its sole discretion."

Defendants also attempt to sidestep the stipulated facts to which they agreed. That stipulation specifies the relevant contractual language—including Section 2(a)—and then states that the Treasury was entitled either to "an annual cash dividend (paid quarterly) of 10% of Treasury's liquidation preference, **_or_** if not paid in cash, an increase of the liquidation preference at a rate of 12% of Treasury's liquidation preference[.]" *See* Cross Mot. at 10. Defendants' agreement that Treasury was entitled to a 10% cash dividend *or* an increase in the Liquidation Preference reveals that Defendants themselves acknowledged the *option* of paying in cash or by increasing the Liquidation Preference. Defendants offer only the entirely irrelevant point that declining to pay in "cash" does not constitute a "cash dividend." *See* Resp. to Cross Mot. at 6-7. But no one is suggesting that paying in kind is the same as paying in "cash." Instead, the point is that the GSEs had *the ability* to pay in cash *or* to increase the Liquidation Preference pursuant to the precise mechanics set forth in the Certificates. Defendants correctly agreed to this proposition in the stipulated facts and cannot disavow that agreement now.

Defendants also suggest that this could not have been what they meant when they agreed to the Joint Statement, because otherwise they "would not have objected to Plaintiffs' opening demonstratives on this very point." Resp. to Cross Mot. at 7. That, too, is circular nonsense. Following that logic, any party could get out of a stipulation by arguing something inconsistent with it, and then saying "well I could not have meant what the stipulation says because otherwise I would not be making this inconsistent argument!" That takes us through the looking glass to a wonderland we would rather not visit.

4

Moreover, Defendants forget that they agreed to this same language at the *first* trial where Plaintiffs relied on the payment in kind option and where Defendants *failed* to object or take the position they are now taking. Defendants' previous failure to object to Plaintiffs' reliance on the payment in kind option as an available choice shows that at the time they agreed to the stipulation, they did not hold the position they are now belatedly advocating.

Defendants repeat their reliance on the Supreme Court's 2021 decision in *Collins* and an almost decade-old footnote from the statement of facts in one of this Court's prior opinions. *See* Resp. to Cross Mot. at 2-3. As discussed in greater detail in our opposition and cross-motion, Defendants' reliance on these opinions fails for several reasons. *Collins* decided statutory and constitutional claims, not contractual ones. With regard to the PIK, it merely held that "**Choosing to forgo this option**" did not violate HERA. 141 S. Ct. at 1778.[3] That language confirms Plaintiffs' position. Despite repeated emphasis of it in Plaintiffs' brief, Defendants fail to respond to it anywhere in their brief. Nothing in *Collins* suggests that FHFA was *prohibited* from paying dividends in kind. Defendants repeatedly refer to the use of the word "penalty," but never explain what they think it means. There was no legal holding as to the meaning of the descriptor "penalty" in *Collins*. And there is no basis for concluding that the use of that description, in the context of the issue before the Court in *Collins*, to mean anything other than a potentially adverse consequence of choosing not to pay the cash dividend.

As for this Court's 2014 footnote, this Court *expressly clarified* that it was dicta. *See* Cross Mot. at 13-14. There is a reason that courts "are not bound to follow . . . dicta" when "the point

---

[3] *See Collins*, 141 S. Ct. at 1778 ("[W]e conclude *only* that under the terms of [HERA], the FHFA did not exceed its authority as a conservator, and therefore the anti-injunction clause bars the shareholders' *statutory* claim.") (emphases added); *id.* ("Choosing to forgo this [PIK] option … was not in excess of the FHFA's *statutory* authority as conservator.") (emphasis added).

now at issue was not fully debated." *Cent. Va. Comm. Coll. v. Katz*, 546 U.S. 356, 363 (2006). The Court's prior reference to the payment in kind option did not mention, let alone engage with, the plain text of Section 2(a). But now, with the benefit of full briefing on the issue—and various extrinsic evidence including the view of FHFA's counterparty that it was an available option (*see* Cross Mot. at 8)—the Court may give the contract its plain meaning and confirm that the GSEs could pay in cash or pay in kind pursuant to the express terms of the Certificates.

Further, there are other more recent judicial statements, including from this Court, confirming that the PIK *was* a legally viable option. In 2018, this Court recognized that Treasury was "entitled to" a 10% dividend "if the dividend was paid in cash" *or* a 12% dividend "if the senior preferred dividend was not paid in cash." Class ECF No. 84 at 6; *Berkley* ECF No. 82 at 6. Likewise, the D.C. Circuit specifically described the PIK as a "choice" and an "option" that FHFA "[p]erhaps" could have elected. *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 610 (D.C. Cir. 2017). This Court need not rely on those opinions, though. Instead, it should simply apply the plain language of the Certificates to hold the Defendants to what they have already acknowledged in the joint stipulated facts: The GSEs could pay a 10% dividend in cash or pay the dividend in kind by adding it to the Liquidation Preference and increasing the rate to 12%.

Defendants' effort to dispute the extrinsic evidence, including a memorandum to the Secretary of the Treasury in preparation for congressional testimony, cannot withstand a simple review of the documents attached to Plaintiffs' brief. *Compare* Resp. to Cross Mot. at 5-6, *with* Cross Mot. at 7-10 (quoting and citing ECF No. 341-4 (Ex. D) at 11, ECF No. 341-5 (Ex. E) at 36, ECF No. 341-6 (Ex. F) at 41, ECF No. 341-7 (Ex. G) at 7, and Trial 1 Tr. 1014:8-16). As a reminder, here is what the Treasury Department, in July 2012, prepared Secretary Geithner to tell

6

Congress if they asked him about any possible concerns or need to amend the PSPAs in light of the re-imposition of the caps to the Commitment at the end of 2012:

> To the extent that required dividend payments exceed net income, **FHFA, as conservator, could consider not declaring dividends pursuant to the certificates of designation for the preferred shares**, so that draws on the PSPAs are not used to pay dividends, preserving as much funding as possible to cover any unanticipated losses at Fannie Mae and Freddie Mac.

PX 210 at 11 (attached as Exhibit D to ECF Nos. 341, 351). Defendants have no answer to this or the other extrinsic evidence cited in Plaintiffs' brief. And they point to zero extrinsic evidence supporting their position that the GSEs lacked the choice to do what the plain language of the Certificates permits them to do.

Defendants also do not address in any substantive way the established caselaw regarding alternative contractual performance. Cross. Mot. at 14-16. While the Court need not reach the alternative performance jurisprudence to rule in Plaintiffs' favor, that jurisprudence provides further support for that result.

Defendants also have no answer for why they waited until the 11th-hour to raise this new interpretation. Defendants are sophisticated entities with enormous resources at their disposal, and they are represented by teams of excellent lawyers with significant resources of their own to draw upon. One would think that, if the 2021 *Collins* decision and this Court's 2014 footnote were the slam dunks Defendants now contend, Defendants would have brought this issue to the Court's attention sometime soon after it was raised in the report of Plaintiff's expert Professor Dharan in March 2022, or least at some point prior to the last trial, or by one of the numerous deadlines for motions in limine and *Daubert* briefs in either the last trial or this one, or merely at some point in time before 10:30 pm the night before opening statements. Whether viewed as a desperate Hail

Mary or something worse, this conduct, all on its own, speaks volumes about the meritless nature of Defendants' position.

Finally, Defendants offer no alternative argument for why they should be permitted to argue their meritless legal interpretation to the jury. They have advanced a belated legal argument; it should be rejected as a matter of law. No further argument from Defendants should be permitted to the jury on this point. Plaintiffs' motion should therefore be granted.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' cross-motion and issue an order precluding Defendants from making any further argument or suggestion that the PIK was not a legally available option.

Dated: August 3, 2023                                          Respectfully Submitted,

/s/ Charles J. Cooper                                          /s/ Hamish Hume
Charles J. Cooper (Bar No. 24870)                              Hamish P.M. Hume (Bar No. 449914)
David H. Thompson (Bar No. 450503)                             Samuel C. Kaplan (Bar No. 463350)
Vincent J. Colatriano (Bar No. 429562)                         **BOIES SCHILLER FLEXNER LLP**
Peter A. Patterson (Bar No. 998668)                            1401 New York Ave. NW
Brian W. Barnes (*Pro Hac Vice*)                               Washington, DC 20005
**COOPER & KIRK, PLLC**                                        Tel: (202) 237-2727
1523 New Hampshire Avenue, N.W.                                Fax: (202) 237-6131
Washington, DC 20036                                           hhume@bsfllp.com
Tel: (202) 220-9600                                            skaplan@bsfllp.com
Fax: (202) 220-9601
ccooper@cooperkirk.com                                         Eric L. Zagar (*Pro Hac Vice*)
                                                               **KESSLER TOPAZ**
*Counsel for Berkley Plaintiffs, et al.*                         **MELTZER & CHECK, LLP**
                                                               280 King of Prussia Rd.
                                                               Radnor, PA 19087
                                                               Tel: (610) 667-7706
                                                               Fax: (610) 667-7056
                                                               ezagar@ktmc.com

                                                               Michael J. Barry (*Pro Hac Vice*)
                                                               John Kairis *(Pro Hac Vice)*
                                                               Rebecca Musarra *(Pro Hac Vice)*

8

**GRANT & EISENHOFER, P.A.**
123 Justison Street
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100
mbarry@gelaw.com
jkairis@gelaw.com
rmusarra@gelaw.com

Adam Wierzbowski (*Pro Hac Vice*)
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
adam@blbglaw.com

*Co-Lead Counsel for the Class*