UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| BERKLEY INSURANCE CO., et al.,<br><br>        *Plaintiffs*,<br><br>        v.<br><br>THE FEDERAL HOUSING FINANCE AGENCY, et al.,<br><br>        *Defendants*. | Case No. 1:13-cv-1053-RCL |
| IN RE FANNIE MAE/FREDDIE MAC SENIOR PREFERRED STOCK PURCHASE AGREEMENT CLASS ACTION LITIGATIONS<br>_____<br><br>This document relates to:<br>ALL CASES | Case No. 1:13-mc-1288-RCL |

**PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE DEFENDANTS FROM MAKING ANY PRICE RECOVERY ARGUMENTS IN THEIR CLOSING ARGUMENT**

**INTRODUCTION**

Despite the parties' pre-trial agreement that Defendants would not use the GSEs' stock price movements after August 17, 2012 in their cross-examination of Plaintiffs' damages expert Dr. Joseph Mason, Defendants in fact did so in a manner unfairly prejudicial to Plaintiffs. To ensure that Defendants do not repeat or exacerbate their unfairly prejudicial conduct during closing arguments, Plaintiffs seek an order (i) precluding Defendants from displaying the third bullet point on page 2 of PX-0375, and any portions of pages 3, 4, 6, 11, 12 and 14 of PX-0375 that concern events and/or price changes after August 17, 2012 (collectively, the "Price Recovery Evidence")[1] in their closing argument, and (ii) precluding Defendants from making any reference to or argument about the Price Recovery Evidence in their closing argument. Such evidence or argument is not relevant to any issue before the jury, and therefore is inadmissible under Rule 402. Its use would be unfairly prejudicial, confusing, and misleading, and therefore is inadmissible under Rule 403.

**BACKGROUND**

In Defendants' cross-examination of Dr. Mason in the first trial, Defendants asked Dr. Mason about increases in the prices of the GSEs' shares subsequent to the August 17, 2012 announcement of the Net Worth Sweep. In the lead-up to the second trial, Plaintiffs sought and obtained Defendants' agreement that they would neither attempt to elicit any testimony, nor make any argument to the jury, concerning "price recovery" or any purported effect thereof on Plaintiffs' damages (the "Agreement"). In late May 2023, the parties commenced negotiations, and on June 8, 2023, Defendants' counsel emailed Plaintiffs' counsel: "I now confirm that Defendants agree not to ask Dr. Mason questions on 'price recovery' or otherwise argue to the jury that the share

---

[1] A copy of PX-0375 is attached hereto as Exhibit 1.

price increases after the third amendment mitigated damages." Ex. 2 at 3. That same day, the parties continued discussions by phone, and Plaintiffs' counsel emailed Defendants' counsel that Plaintiffs appreciated Defendants'

> confirmation that they ***would not ask Dr. Mason any questions about a purported price recovery*** in GSE shares following the NWS (*see, e.g.,* [First Trial] Tr. 1523:25-1524:17 (questions about a purported recovery in share prices in September 2012 and October 2012); *see also* Mason Supp. Dep. Tr. 66:6-78:18; 124:4-143:11;162:15-168:13 (questions about price recovery)); and that Defendants ***will not otherwise argue to the jury*** that the ***share increases*** after the Third Amendment ***mitigated damages*** (*see, e.g.,* Tr. 2687:24-2688:8) (emphasis supplied).

*Id.* at 2.[2]

The parties further confirmed and memorialized the Agreement in their respective Pretrial Statements filed with the Court.[3] Plaintiffs' Pretrial Statement stated that "Defendants have agreed not to ask Dr. Mason any questions about a purported price recovery in GSE shares following the Net Worth Sweep." ECF 321 at 14. Defendants' Pretrial Statement confirmed that Defendants would "not ask Dr. Mason any questions about a price recovery in Enterprise shares following the Net Worth Sweep (*see, e.g.,* Tr. 1523:25-1524:17 (questions about a recovery in share prices in September 2012 and October 2012)), and Defendants will not otherwise argue to the jury that the share price increases after the Third Amendment mitigated damages." ECF No. 318 at 15. In return, Plaintiffs agreed that they would not elicit from Dr. Mason testimony that $1.61 billion represents a "conservative" or "reasonable" measure of damages in this case. ECF No. 321 at 14.

---

[2] Unless otherwise noted, all emphasis is added.

[3] As such, the Agreement remains binding. *See Smith v. Washington Sheraton Corp.*, 135 F.3d 779 (D.C. Cir. 1998) (holding that defendant was bound by pretrial order that incorporated pretrial statements); *Saweress v. Ivey*, No. 6:17-cv-1506-Orl-37TBS, 2019 U.S. Dist. LEXIS 86241, at *5 (M.D. Fla. Apr. 1, 2019) (recognizing "binding effect of pretrial statements").

2

Plaintiffs have scrupulously fulfilled their obligations under the Agreement, but Defendants have skirted theirs. During cross-examination of Dr. Mason in this trial, Defendants' counsel (i) published to the jury pages 3 and 4 of PX-0375, which are charts of GSE stock price movements, including increases, throughout a date range that extends well after the Net Worth Sweep; and (ii) continued to display the pages to the jury while asking a lengthy series of transparently irrelevant questions,[4] during which counsel reiterated six times that the announcement of the Net Worth Sweep occurred "11 years ago." *See* Second Tr. (7/27/23 PM) at 84–93. These tactics could only have been intended to suggest to the jury that the GSEs' stock prices may have increased since August 17, 2012 and that any price recovery could mitigate or eliminate Plaintiffs' damages.

Defendants engaged in the same type of conduct during Dr. Mason's cross-examination in the first trial. Specifically, Defendants' counsel read to the jury a single sentence from PX-0375 (page 2, second bullet point), which stated that the "Price of the common stock recovered in September 2012 and that of the junior preferred stocks recovered during October 2012." First Tr. at 1524:1–7. Defendants' counsel then asked Dr. Mason, "Did I read that correctly?" (*id.* at 1524:6) and asked whether September and October 2012 follow August 2012. *Id.* at 1524:11–17. This type of gamesmanship in the first trial is precisely what prompted Plaintiffs to secure Defendants' agreement that they would not make price recovery an issue in the second trial.

---

[4] This line of questioning included such pointless inquiries as:

> And just to orient everyone, today is July 27th, 2023. So that means August 17, 2023, the day of this one-day decline in share prices, that was almost 11 years ago. Right?

Second Tr. (7/27/23 PM) at 83:6–9. Plaintiffs refrained from objecting based on their reasonable expectation that Defendants' cross-examination would serve a legitimate purpose, not be used as a vehicle to smuggle in price recovery.

3

Unfortunately, Defendants have demonstrated that they cannot be taken at their word,[5] hence the instant motion.

## ARGUMENT

### A.     The Price Recovery Evidence Should Be Excluded Under Rule 402

Pursuant to Federal Rule of Evidence 402, "[e]vidence which is not relevant is not admissible." Fed. R. Evid 402; *see also Desmond v. Gonzales,* Civil Action No. 03-1729 (CKK), 2007 U.S. Dist. LEXIS 116201, at *6-7 (D.D.C. Feb. 19, 2007) ("relevant evidence 'means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'") (citations omitted). Plaintiffs' damages are based on the GSEs' stock price declines on August 17, 2012 (*see* ECF No. 290-13 (Mason Reply Report) at ¶¶ 87-88), and Defendants have not introduced and will not introduce any evidence or expert opinion to the contrary.[6] Moreover, Defendants' counsel acknowledged on the record that "events that happened after August 2012 are not relevant" to damages. Second Tr. (7/28/2023 AM) at 14:12–13.

The Price Recovery Evidence has no probative value because it has no tendency to make any fact of consequence more or less probable. To the contrary, the only possible purpose for

---

[5] Indeed, Defendants acknowledged to the Court, albeit halfheartedly and only after Plaintiffs' prompting, that they had lodged an improper objection to a critical part of Dr. Mason's direct testimony that Defendants had previously agreed was admissible. *See* Second Tr. (7/28/2023 AM) at 16:10–17 ("What we had negotiated was that Dr. Mason would be able to provide the following testimony: The opinion in my reply report, which refers to his second report, regarding the 1.6 billion in damages estimated at the announcement of the net worth sweep applies today as well as 2012…. To the extent the objection was objecting to that statement, it was incorrect. And we apologize for that.").

[6] *See* Second Trial Tr. (7/28/2023 AM) at 14:21–23 (Counsel for Defendants admitting that Defendants' expert, Dr. Attari, "would not provide any testimony about price recovery or about the event study."); Defendants' Pretrial Statement (ECF No. 318) at 9 (describing the testimony Defendants' expert, Dr. Attari, will provide at trial, which does not include testimony concerning reversal or mitigation of damages).

using it is an improper one: to suggest to the jury that Plaintiffs' damages may have been mitigated or eliminated as a result of later increases in the trading prices of the GSEs' shares. Accordingly, the Court should preclude Defendants from using or referring to the Price Recovery Evidence in their closing argument.

### B. The Price Recovery Evidence Should Be Excluded Under Rule 403

Under Federal Rule of Evidence 403, even relevant evidence should be excluded if its probative value is substantially outweighed by a danger of, *inter alia*, "unfair prejudice, confusing the issues, [or] misleading the jury…." Fed. R. Evid. 403. Even evidence that has been admitted at trial "must be narrowly tailored to the circumstances for which it is relevant, and it must be circumscribed so as to limit its potential prejudicial effects." *United States v. Crumby*, 895 F. Supp. 1354, 1363 (D. Ariz. 1995) (finding that admissible polygraph evidence "may only be used to impeach or corroborate the credibility of Plaintiff"); *see also C & E Servs., Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 322 (D.D.C. 2008) ("evidence may be admissible for a limited purpose").

Plaintiffs introduced PX-0375 into evidence for the purpose of establishing that the announcement of the Net Worth Sweep caused the stock price declines that damaged Plaintiffs.[7] Accordingly, Plaintiffs published to the jury only the portions of PX-0375 that were relevant to that purpose, specifically:

- the first three rows of the table on page 6, identifying the changes in values of Fannie and Freddie common and junior preferred shares from August 16, 2012 to August 17, 2012. Second Tr. (7/27/23 PM) at 56:4 – 58:8.

- the first three rows of the table on page 14, identifying the excess returns of Fannie and Freddie common and junior preferred shares on August 7, 8, and 12, 2012. *Id.* at 58:9 – 60:11; 62:16 – 63:2; 63:19 – 64:2); and

---

[7] Although Plaintiffs did not expressly seek to admit PX-0375 "subject to" the Agreement, there was no reason to so specify because the Agreement was undoubtedly binding, as discussed above.

5

- the first five rows of the table on page 15, identifying the news associated with these excess returns. *Id.* at 62:7–15; 63:3–18; 64:3 – 67:2.

The Court's admitting PX-0375 provides no basis for Defendants to republish to the jury portions of the exhibit that are not relevant or have minimal probative value, and which is substantially outweighed by a danger of unfairly prejudicing Plaintiffs and intentionally confusing and misleading the jury. *See, e.g., United States v. Roenigk*, 810 F.2d 809, 814-17 (8th Cir. 1987) (remanding for new trial because "repeated evidence" used at trial "having nothing to do with [the issue]" was "overly prejudicial" under Rule 403); *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1309 (5th Cir. 1977) (finding that "repeated exposure of a jury to prejudicial information" warranted grant of motion for mistrial); *Spence v. State*, 129 A.3d 212, 223 (Del. 2015) (material "may not be used to make an argument visually that could not be made orally"). And, needless to say, closing arguments should be fair. *See Risko v. Thompson Muller Automotive Group, Inc.*, 206 N.J. 506, 20 A.3d 1123 (2011) ("Summations must be fair and courteous, grounded in the evidence, and free from any 'potential to cause injustice.'"); *Boyle v. Christensen,* 2011 UT 20, 251 P.3d 810 (Utah 2011) ("[L]atitude does not extend to counsel calling the jury's attention to material that the jury would not be justified in considering in its verdict.").

Defendants' using or referring to the Price Recovery Evidence in their closing argument would run afoul of Rule 402, because it is not relevant, and afoul of Rule 403, because even if relevant, the probative value of the Price Recovery Evidence is negligible and substantially outweighed by the danger of unfairly prejudicing Plaintiffs and confusing and misleading the jury. Plaintiffs relied on the Agreement in good faith, only to see their fidelity abused to their detriment.[8]

---

[8] Plaintiffs acknowledge that the Court previously rejected their request for a curative instruction based on Defendants' improper use of the price recovery chart during Dr. Mason's testimony. The present request, however, is seeking to prevent Defendants from compounding their improper tactics in summations.

6

The Court should not permit Defendants to compound the unfair prejudice by repeating it in closing arguments. Most importantly, any use of or reference to the Price Recovery Evidence would further confuse and mislead the jury to believe that changes in the GSEs' stock prices after August 17, 2012 are relevant to their deliberations, which the parties agree – and Defendants admit – are not. Thus, the Court should preclude any further use of or reference to the Price Recovery Evidence.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order precluding Defendants from displaying or making any reference to or argument about the Price Recovery Evidence in their closing argument.

Dated: August 4, 2023

Respectfully submitted,

/s/ Charles J. Cooper
Charles J. Cooper (Bar No. 24870)
David H. Thompson (Bar No. 450503)
Vincent J. Colatriano (Bar No. 429562)
Peter A. Patterson (Bar No. 998668)
Brian W. Barnes (*Pro Hac Vice*)
**COOPER & KIRK, PLLC**
1523 New Hampshire Avenue, N.W.
Washington, DC 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

*Counsel for Berkley Plaintiffs, et al.*

/s/ Eric L. Zagar
Eric L. Zagar (*Pro Hac Vice*)
**KESSLER TOPAZ
  MELTZER & CHECK, LLP**
280 King of Prussia Rd.
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
ezagar@ktmc.com

Hamish P.M. Hume (Bar No. 449914)
Samuel C. Kaplan (Bar No. 463350)
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave. NW
Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
hhume@bsfllp.com
skaplan@bsfllp.com

Michael J. Barry (*Pro Hac Vice*)
**GRANT & EISENHOFER, P.A.**
123 Justison Street
Wilmington, DE 19801

Tel: (302) 622-7000
Fax: (302) 622-7100
mbarry@gelaw.com


Adam Wierzbowski (*Pro Hac Vice*)
**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
adam@blbglaw.com

*Co-Lead Counsel for the Class*