UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BERKLEY INSURANCE CO.**, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>**FEDERAL HOUSING FINANCE AGENCY**, *et al.*,<br><br>*Defendants.* | Case No. 1:13-cv-1053-RCL |
| **In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations** | Case No. 1:13-mc-1288-RCL |
| This Memorandum Order relates to:<br>ALL CASES | CLASS ACTION |

## **MEMORANDUM ORDER**

Before the Court are Defendants' Motion for a Final Jury Instruction on the 10 Percent Cash Dividend Requirement, Berkley ECF No. 349, Class ECF No. 339, and Plaintiffs' Opposition Thereto and Cross-Motion to Preclude Argument Suggesting the Unavailability of a Payment-in-Kind Option, Berkley ECF Nos. 351, 353, Class ECF Nos. 341, 343.[1] In these midtrial motions, the parties dispute the proper interpretation of pre-Third Amendment provisions of the GSEs' Treasury Stock Certificates that would increase the GSEs' dividend obligations to Treasury from 10 percent to 12 percent and add to Treasury's Liquidation Preference in the event that the GSEs failed to pay the required dividends to Treasury. Defendants characterize the mechanism those

---

[1] Plaintiffs' opposition and cross-motion are contained in a single document found at Berkley ECF No. 351 and Class ECF No. 341. However, they are listed as two separate docketing events, with the opposition being Berkley ECF No. 351 and Class ECF No. 341, and the cross-motion being Berkley ECF No. 353 and Class ECF No. 343.

1

provisions created as a "penalty," while plaintiffs call it a "payment-in-kind option." Defendants' motion asks the Court to instruct the jury that there was no "payment-in-kind option" legally available, while plaintiffs' cross-motion asks the Court to preclude defendants from arguing that no such option was legally available. The Court assumes familiarity with the relevant factual and procedural history and the governing legal standards. For the reasons that follow, the Court will **DENY** defendants' motion and **GRANT** in part and **DENY** in part plaintiffs' cross-motion.

The relevant provisions of the Treasury Stock Certificates state as follows:

> [**Section 2(b):**] To the extent not paid pursuant to Section 2(a) above, dividends on the Senior Preferred Stock shall accrue and shall be added to the Liquidation Preference pursuant to Section 8, whether or not there are funds legally available for the payment of such dividends and whether or not dividends are declared.
>
> [**Section 2(c):**] "Dividend Rate" means 10.0%; provided, however, that if at any time the Company shall have for any reason failed to pay dividends in cash in a timely manner as required by this Certificate, then immediately following such failure and for all Dividend Periods thereafter until the Dividend Period following the date on which the Company shall have paid in cash full cumulative dividends (including any unpaid dividends added to the Liquidation Preference pursuant to Section 8), the "Dividend Rate" shall mean 12.0%. . . .
>
> [**Section 8(b)(iii):**] "Liquidation Preference" shall initially mean $1,000 per share and shall be . . . increased on the Dividend Payment Date if the Company fails to pay in full the dividend payable for the Dividend Period ending on such date by an amount per share equal to the aggregate amount of unpaid dividends divided by the number of shares of Senior Preferred Stock outstanding on such date . . . .

Cert. of Designation at 2, 5–6, Ex. A to Pls.' Opp'n & Cross-Mot., Berkley ECF No. 351-1, Class ECF No. 341-1.

The Supreme Court explained how these provisions interact in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), which involved a statutory and administrative-law (rather than contract-law) challenge to the Third Amendment:

> The companies' stock certificates required Fannie Mae and Freddie Mac to pay their dividends "in cash in a timely manner." . . . If the companies had failed to do so, they would have incurred a penalty: Treasury's liquidation preference would have immediately increased by the dividend amount, and the dividend rate would have increased from 10% to 12% until the companies paid their outstanding dividends in cash.

*Id.* at 1777–78 (citation omitted). In other words, prior to the Third Amendment, if the GSEs had insufficient net profits to pay their 10 percent cash dividend to Treasury, two courses of action were possible: (1) draw on the Treasury Commitment to satisfy the dividend obligation at the normal 10 percent rate or (2) flout the dividend obligation and incur the associated penalty of adding the amount of that obligation to the Liquidation Preference and increasing the rate to 12 percent until all dividend obligations are satisfied.[2]

Defendants argue, and this Court has agreed in a prior opinion, *see Perry Capital LLC v. Lew*, 70 F. Supp. 3d 208, 216 n.7 (D.D.C. 2014), *aff'd in part, rev'd in part on other grounds sub nom. Perry Capital LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir. 2017), that the second course of action was better characterized as a "penalty" than an "option" in the legal sense—that is, it would not satisfy the GSEs' cash dividend obligations to Treasury under the contract. However, that does not mean it was not an "option" in the colloquial sense—that is, it was a possible course of action. In other words, there is nothing logically or legally incoherent about describing a contractual mechanism as a "penalty" for failing to meet a party's obligations and recognizing as a practical

---

[2] Plaintiffs appear to suggest that the GSEs also could have chosen simply *never* to pay cash dividends, even in a quarter in which they were able to do so, citing Section 2(a) of the Treasury Stock Certificates, which empowers each GSE's board of directors "in its sole discretion" to declare a dividend. Cert. of Designation at 1; *see* Pls.' Opp'n & Cross-Mot. at 4–7; Pls.' Reply & Opp'n at 1–4, Berkley ECF No. 356, Class ECF No. 346. However, the Supreme Court in *Collins* unequivocally interpreted the Treasury Stock Certificates to impose on the GSEs a "cash dividend *obligation*" that "paying Treasury in kind would not have satisfied." 141 S. Ct. at 1778 (emphasis added). This Court is bound by that interpretation.

3

matter that that party has the "option" of shrugging and accepting the associated penalty instead of doing everything in its power to meet those obligations.

Thus, the parties' quibbling over whether adding to the Liquidation Preference is better characterized as a "penalty" or a "payment-in-kind option" obscures the real issue facing FHFA prior to the Third Amendment: Although FHFA as a practical matter could have flouted its cash dividend obligations and incurred the associated contractual penalty, that was a temporary solution that merely would have kicked the can down the road. Defendants have repeatedly asserted in these cases and others that part of the rationale for the Net Worth Sweep was preventing erosion of the Treasury Commitment. As the Supreme Court put it in *Collins*, "paying Treasury in kind would not have satisfied the cash dividend obligation, and the risk that the companies' cash dividend obligations would consume Treasury's capital commitment in the future would have remained." 141 S. Ct. at 1778. Accordingly, the Supreme Court held that "[c]hoosing to forgo this option [of incurring the penalty] in favor of one [the Net Worth Sweep] that eliminated the risk entirely was not in excess of the FHFA's statutory authority as conservator." *Id.*

Turning to the motions at hand, defendants ask the Court to give the following instruction:

> You have heard testimony concerning Section 2(c) of the Treasury Stock Certificates issued in connection with the Preferred Stock Purchase Agreements (PSPAs). This is the provision of the contracts between Treasury and the Enterprises that governs the payment of dividends to Treasury.
>
> I have found as a matter of law that these provisions in the contracts are unambiguous. As a result, the interpretation of these provisions of the contracts is a matter of law for the Court to decide, not an issue of fact for you to determine. I will therefore instruct you on what these provisions of the contracts mean. And, like my other instructions regarding the law, you are to apply in this case, you are required to follow this instruction about the interpretation of these contract provisions. You are to disregard any testimony or other evidence, as well as any arguments of counsel, you heard in this case that is inconsistent with, or disregards, my instruction to you about

4

> what these provisions of the contracts mean. You are instructed when considering these provisions of the agreements that:
>
> > The Treasury Stock Certificates required Fannie Mae and Freddie Mac to pay a 10% annual cash dividend to Treasury on a quarterly basis. If Fannie Mae and Freddie Mac failed to pay the 10% cash dividend, the Certificates provided that 12% would be added to the Treasury liquidation preference. The 12% payment (which you have sometimes heard referred to as a "Payment-in-Kind" or a "12% Penalty Dividend") was a contractual penalty that would not have satisfied the contractual cash dividend obligation. Paying 10% in cash or adding 12% to Treasury's liquidation preference was not a matter of choice.

Defs.' Mot. at 6. Defendants also indicated orally on the record that they intend to move to strike portions of the testimony of plaintiffs' expert Dr. Bala Dharan concerning the so-called "payment-in-kind option." Plaintiffs oppose the proposed jury instruction and contemplated motion to strike, and they request "an order precluding Defendants from making any further argument or suggestion that the [payment in kind] was not a legally available option." Pls.' Opp'n & Cross-Mot. at 17.

As an initial matter, defendants had no excuse to wait until the middle of the second trial to file their motion. Plaintiffs have argued that "payment in kind" was an "option" for a decade. *See Perry Capital*, 70 F. Supp. 3d at 216 n.7. Dr. Dharan disclosed his opinion that that "option" was preferable to the Net Worth Sweep during expert discovery, in his March 1, 2022 rebuttal report. *See* Rebuttal Rep. of Bala Dharan ¶¶ 32–33, Berkley ECF No. 171-3, Class ECF No. 164-3. He then testified to that opinion without objection at the first trial. *See, e.g.*, Trial Tr. 1129:22–25, Berkley ECF No. 273. Defendants had an opportunity to file a *Daubert* motion on this subject prior to the second trial but chose not to do so. Instead, they proposed to have the jury sit through the disputed testimony, only to have the Court later instruct the jury to disregard it. Similarly, defendants had the opportunity to propose their addition to the Court's jury instructions from the first trial prior to the second trial but chose not to do so. In sum, defendants ask the Court "to turn back the clock on the orderly process of litigation." *Berkley Ins. Co. v. FHFA*, Nos. 1:13-cv-1053,

5

1:13-mc-1288, 2023 WL 3790739, at *1 (D.D.C. June 2, 2023). That is not respectful of the Court's, the jury's, or opposing counsel's time.

Moving on to the merits, defendants' proposed instruction, while carefully worded and at least arguably correct as a technical legal matter, would likely confuse the jury in a manner highly prejudicial to plaintiffs. While "[p]aying 10% in cash or adding 12% to Treasury's liquidation preference" indeed "was not a matter of choice" in the sense that the latter "was a contractual penalty that would not have satisfied the contractual cash dividend obligation," Defs.' Mot. at 6, instructing that it "was not a matter of choice" at all could lead the jury to the erroneous conclusion that it was not a possible course of action for FHFA to take. That, in turn, could confuse the jury as to whether private shareholders reasonably could have expected FHFA to agree to the Net Worth Sweep.

Relatedly, there is significant merit in plaintiffs' cross-motion to preclude defendants from making that sort of argument on their own. Arguing "that the [payment in kind] was not a legally available option," Pls.' Opp'n & Cross-Mot. at 17, without explaining the nuance behind that proposition, is likely to be substantially more confusing than helpful to the jury in understanding the issues. However, there is nothing unduly confusing or prejudicial about evidence or arguments describing the 12 percent mechanism as a "penalty" for failing to meet the GSEs' contractually mandatory dividend obligations or explaining that it would not have eliminated the risk of eroding the Treasury Commitment.

\*   \*   \*

Accordingly, the Court **ORDERS** as follows:

Defendants' Motion for a Final Jury Instruction on the 10 Percent Cash Dividend Requirement, Berkley ECF No. 349, Class ECF No. 339, is **DENIED**. The Court will not give the proposed instruction.

Plaintiffs' Cross-Motion to Preclude Argument Suggesting the Unavailability of a Payment-in-Kind Option, Berkley ECF No. 353, Class ECF No. 343, is **GRANTED** in part and **DENIED** in part. Specifically, defendants may not argue that payment in kind was not a "legally available option," but they are free to present evidence and arguments describing the 12 percent mechanism as a "penalty" and explaining that it would not have eliminated the risk of eroding the Treasury Commitment.

To the extent that Dr. Dharan's testimony at the present trial may have directly contradicted *Collins*'s holding that "[t]he companies' stock certificates *required* Fannie Mae and Freddie Mac to pay their dividends 'in cash in a timely manner'" and "paying Treasury in kind would not have satisfied the cash dividend *obligation*," 141 S. Ct. at 1777–78 (emphasis added), the Court will entertain a motion to strike and/or for a curative instruction.

**IT IS SO ORDERED.**

Date: August 4, 2023

Royce C. Lamberth
United States District Judge