1    **UNITED STATES DISTRICT COURT**
     **FOR THE DISTRICT OF COLUMBIA**

2

     Fairholme Funds, Inc., et al.,   ) Civil Action
3                                      ) No. 1:13-cv-01053-RCL
                          Plaintiffs,  )
4                                      ) **Jury Trial (Day 2)**
     vs.                               ) **Morning Session - *Voir Dire***
5                                      )
     Federal Housing Finance           )
6    Agency, et al.                    ) Washington, D.C.
                                       ) **July 25, 2023**
7                          Defendants. ) Time:  10:30 a.m.
     _____

8

     In re Fannie Mae/Freddie Mac      ) Civil Action
9    Senior Preferred Stock            ) No. 1:13-mc-1288-RCL
     Purchase Agreement Class          )
10   Action Litigations.               )
     _____

11

12   **Transcript of Jury Trial (Day 2) Morning Session - *Voir Dire***
                          **Held Before**
                  **The Honorable Royce C. Lamberth**
13               **United States Senior District Judge**
     _____

14

                    A P P E A R A N C E S

15

     For the Fairholme Funds, Inc. Plaintiffs:
16                    **Vincent J. Colatriano**
                      COOPER & KIRK, PLLC
17                    1523 New Hampshire Avenue, Northwest
                      Washington, D.C. 20036

18

     For the Defendant Federal Housing Finance Agency:
19                    **Asim Varma**
                      **David B. Bergman**
20                    **Ian S. Hoffman**
                      **R. Stanton Jones**
21                    **Jonathan L. Stern**
                      ARNOLD & PORTER KAYE SCHOLER LLP
22                    601 Massachusetts Avenue, Northwest
                      Washington, D.C. 20001

23

24

25

1              A P P E A R A N C E S (continued)

2      For the Class Plaintiffs:
                               **Hamish P. M. Hume**
3                              **Samuel C. Kaplan**
                               **Kenya Khalelah Davis**
4                              BOIES SCHILLER FLEXNER LLP
                               1401 New York Avenue, Northwest
5                              Washington, D.C. 20005

6                              **Robert F. Kravetz**
                               BERNSTEIN, LITOWITZ, BERGER &
7                              GROSSMAN, LLP
                               1251 Avenue of the Americas
8                              New York, New York 10020

9                              **Lee D. Rudy**
                               KESSLER TOPAZ MELTZER & CHECK
10                             280 King of Prussia Road
                               Radnor, Pennsylvania 19087
11     _____

12     Stenographic Official Court Reporter:
                               Nancy J. Meyer
13                             Registered Diplomate Reporter
                               Certified Realtime Reporter
14                             333 Constitution Avenue, Northwest
                               Washington, D.C. 20001
15                             202-354-3118

16     Proceedings recorded by mechanical stenography.  Transcript
       produced by computer-aided transcription.
17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

1

2        THE COURTROOM DEPUTY:  This is Civil Action 13-1053;

3   with related Miscellaneous Case 13-1288, In Re:  Fannie Mae,

4   Freddie Mac, Senior Preferred Stock Purchase Agreement Class

5   Action Litigations.

6        THE COURT:  All right.  We'll continue with the jury

7   selection.

8        We'll go to 651.  Did we find 651?

9        THE COURTROOM DEPUTY:  Still not here.

10        THE COURT:  All right.  So we'll have to do 1156.

11        THE COURTROOM DEPUTY:  Juror 1156.

12        (REPORTER'S NOTE:  Juror 1156 enters.)

13        THE COURT:  I just have a few follow-up questions, if

14   I may.  You answered one question that you or someone close to

15   you worked for a government agency, for a government

16   contractor.  What was that?

17        THE PROSPECTIVE JUROR:  Yes.  I worked at the

18   Environmental Protection Agency.

19        THE COURT:  Okay.  The next one was have any

20   strong opinions, positive or negative, about the influence of

21   large companies on the U.S. economy.  Tell me about your views

22   there.

23        THE PROSPECTIVE JUROR:  I wasn't quite sure what

24   strong would be.  But, I mean, they serve a role in being part

25   of the general economy.  You know, they're usually more

1    efficient than --

2              THE COURT:  Tell me a little bit more about that.

3              THE PROSPECTIVE JUROR:  Well, being larger, they

4    employ many people and add quite a bit to our GDP and can be

5    good for the country for, you know, I guess, having economic

6    production.

7              THE COURT:  Okay.  Are your views such that they

8    would have an impact on your ability to be a fair and impartial

9    juror, do you think?

10             THE PROSPECTIVE JUROR:  I don't think so.  So they're

11   kind of just fact-based.

12             THE COURT:  Okay.  We may come back to that one.

13        You now or have in the past invested in the financial or

14   stock market?

15             THE PROSPECTIVE JUROR:  Yep.  I use the TSP.

16             THE COURT:  I'm sorry?

17             THE PROSPECTIVE JUROR:  I use the TSP through our

18   government agency.  That's our retirement fund and they --

19             THE COURT:  Okay.  Tell me a little bit more about

20   that.

21             THE PROSPECTIVE JUROR:  It's -- it's like the 401(k)

22   for government workers.

23             THE COURT:  Okay.

24             THE PROSPECTIVE JUROR:  You just put some of your

25   money into it.

1        THE COURT:  Do you make any stock decisions yourself,

2    or was it just through that?

3        THE PROSPECTIVE JUROR:  No.  I kind of just used the

4    big funds.

5        THE COURT:  Okay.  And that's just a government fund?

6        THE PROSPECTIVE JUROR:  Yes.  I also have an

7    individual retirement account that puts money in stocks, but

8    you kind of just don't -- I haven't picked or chosen individual

9    companies.

10        THE COURT:  Have you had any education or training to

11    enable you to make decisions about investments?

12        THE PROSPECTIVE JUROR:  I would sort of say no, but

13    my job at the EPA, I am an economist.

14        THE COURT:  Oh, okay.  Well, tell me -- what's your

15    educational background?

16        THE PROSPECTIVE JUROR:  I have an undergrad and

17    master's degree in economics.

18        THE COURT:  Okay.  Where's your undergrad from?

19        THE PROSPECTIVE JUROR:  Kalamazoo College.  Kalamazoo

20    College.

21        THE COURT:  Okay.  And where's your graduate degree

22    from?

23        THE PROSPECTIVE JUROR:  Michigan State University.

24        THE COURT:  Not bad.  Not as good as Michigan,

25    probably, but not bad.  I went to Texas.  So I can't help it.

1          All right.  What did you do before EPA?

2          THE PROSPECTIVE JUROR:  I've previously worked at the

3   Department of Agriculture in the economic research service, and

4   I've also worked at the Bureau of Labor Statistics.

5          THE COURT:  Okay.  So real economic analysis.  What

6   are you doing at EPA, then?

7          THE PROSPECTIVE JUROR:  I work on regulating

8   chemicals.  So under the Toxic Substances Control Act, Congress

9   mandates that when we regulate chemicals, someone writes an

10   economic analysis.

11          So I do a benefit-cost analysis that weighs using

12   the -- or industry using the chemical for economic production

13   versus the cost of what might happen if it gets in the water or

14   water supply or in humans or animals or fish.

15          THE COURT:  Okay.  How long have you been at the EPA?

16          THE PROSPECTIVE JUROR:  Since 2018.  So five years.

17          THE COURT:  How long were you at agriculture before?

18          THE PROSPECTIVE JUROR:  Just one year.

19          THE COURT:  Oh, okay.  What were you regulating

20   there?  Chickens or poultry or what?

21          THE PROSPECTIVE JUROR:  There I worked on analyzing

22   food assistance programs, like SNAP and WIC, the --

23          THE COURT:  Like what?

24          THE PROSPECTIVE JUROR:  SNAP.

25          THE COURT:  SNAP?

```
 1                THE PROSPECTIVE JUROR:  Yes.

 2                THE COURT:  That's food stamps?

 3                THE PROSPECTIVE JUROR:  Yeah, food stamp programs.

 4                THE COURT:  All right.

 5                THE PROSPECTIVE JUROR:  The other one was WIC, the

 6     Women, Infants, and Children's program.  It's food assistance

 7     for those groups.

 8                THE COURT:  So you haven't done any individual stock

 9     trades yourself then?

10                THE PROSPECTIVE JUROR:  No, not recently.

11                THE COURT:  Okay.  Have you ever traded in

12     cryptocurrency or wanted to?

13                THE PROSPECTIVE JUROR:  No, I've never really -- I

14     haven't done it.  And I looked into it and decided it wasn't

15     for me.

16                THE COURT:  Okay.  Do you believe investing in the

17     stock market is like gambling?

18                THE PROSPECTIVE JUROR:  I believe that picking

19     individual stocks can be gambling.  But I think that,

20     generally, time in the market beats timing in the market.  So

21     if you just kind of do something big, like a general S&P 500

22     fund, and leave it there throughout your career, you'll

23     probably be okay.

24                THE COURT:  Okay.  You were asked do you have views

25     on the causes of the 2008 financial crisis, and you said yes.
```

1        Tell me a little bit more about that one.

2                THE PROSPECTIVE JUROR:  When I was in school, I took

3        a course called market failure and financial crisis, and we

4        read a book called *After the Music Stops* [sic] that sort of

5        went over the 2008 financial crisis.  And I guess my views of

6        the cause were that there were a lot of loans and mortgages

7        being given out that might not have been necessary -- or people

8        might not have been qualified.

9            And then when they couldn't make those payments, the

10        underlying investment vehicles that had mashed up these

11        mortgages and other loans, you know, they -- they were not

12        good anymore.  And then when lots of foreclosures happened,

13        the -- it kind of caused a ripple effect through these big

14        banks that didn't allow them to stay afloat without government

15        assistance.

16                THE COURT:  Okay.  The -- what year did you graduate

17        from undergraduate school?

18                THE PROSPECTIVE JUROR:  2013.

19                THE COURT:  So the book was pretty timely then --

20                THE PROSPECTIVE JUROR:  Yes.

21                THE COURT:  -- when you were studying it?

22                THE PROSPECTIVE JUROR:  I think it had just come out.

23                THE COURT:  And you were asked are you familiar with

24        the term government-sponsored entity, and you said yes.  What

25        do you -- what do you remember about that?

1          THE PROSPECTIVE JUROR:  Just that I -- I think

2     of them as things that are kind of associated with the

3     government.  So, like, this case involves Fannie Mae and

4     Freddie Mac.  I actually -- I don't, off the top of my head,

5     know exactly how tied they are to the government, but I know

6     that they're not fully private sector, but they're not fully an

7     agency.

8          THE COURT:  All right.  Okay.  There's another

9     question about you or someone close to you in the following

10    fields of banking, finance, economic securities, underwriting,

11    real estate.  Obviously, you are in economics.  How about

12    others?

13         THE PROSPECTIVE JUROR:  Mostly me and -- I -- most of

14    my colleagues and friends at work are also economists.

15         THE COURT:  Economists.  Okay.

16         All right.  Let me see if counsel have other questions

17    they want to ask.

18              (Bench conference on the record.)

19         MR. RUDY:  Good morning, Your Honor.  Lee Rudy for

20    the plaintiffs.

21         A couple of things.  One of his early answers was the

22    comment that he thinks that corporations can be good for the

23    economy.  If you could just probe that a little bit more and

24    ask him -- understanding that the defendants here are two very

25    large corporations, would that affect his views and does he

1    have any bias in that regard.

2         And then related to the fact that he works for the

3    federal government and the federal government is a defendant in

4    this case, FHFA, a government agency, whether he would have any

5    bias in rendering -- or any pause about rendering a verdict

6    against the federal government as an employee of the federal

7    government.

8              MR. STERN:  Your Honor, no questions for the defense.

9              (Proceedings held in open court.)

10             THE COURT:  You said something about competition

11   being good for the corporations.  Tell us a little more about

12   that.  Explain a little bit more about your views on --

13             THE PROSPECTIVE JUROR:  Sure.  I mean, competition

14   is --

15             THE COURT:  Competition, I mean.  I'm sorry.  I

16   said -- competition being good.

17             THE PROSPECTIVE JUROR:  Yeah.  It's sort of the basis

18   of a capitalistic economy.  So when firms and entities have to

19   compete against each other, they, you know, have to come to the

20   lowest prices for their goods.  Or if there's competition, the

21   labor market.  You know, people need to up their skills and

22   then they can get paid more.  So people competing against each

23   other in both sides of the labor and producer side of the

24   economy is good.

25             THE COURT:  Okay.  If you're seated here -- of

1    course, since you are a government employee -- any problem with

2    your still being fair and impartial to both sides, even though

3    the government has -- in the form of FHFA as a defendant in the

4    case, you could still be fair to both sides in the -- as a

5    juror, do you think?

6              THE PROSPECTIVE JUROR:  I -- I believe so.

7              THE COURT:  Okay.  I mean, I'll give you instructions

8    at the end about how to view the law in the case and apply the

9    law, whether it's for the government or against the government.

10   Do you think you can do that fairly and follow my instructions

11   on the law?

12             THE PROSPECTIVE JUROR:  Yes.  I don't have much

13   background in law, but if explained well.

14             THE COURT:  It's a complicated case.  So having

15   an economist here might actually be good, but I don't know

16   which party might think that's good or bad.  We'll see, I

17   guess.

18             THE PROSPECTIVE JUROR:  Yes, I don't know either.

19             THE COURT:  You don't have any views yourself right

20   now as we sit here?

21             THE PROSPECTIVE JUROR:  No, I don't -- I don't think

22   so.

23             THE COURT:  You could be fair and impartial?

24             THE PROSPECTIVE JUROR:  Yes, I -- I don't feel like I

25   would favor any side without evidence beforehand.

```
1            THE COURT:  From what you know right now?

2            THE PROSPECTIVE JUROR:  What was that?

3            THE COURT:  From what you know right now?

4            THE PROSPECTIVE JUROR:  Yes.

5            THE COURT:  If you're on the jury, we're going to

6     fill you with a lot of knowledge.

7            THE PROSPECTIVE JUROR:  Okay.

8            THE COURT:  Thanks very much for coming down.

9            (REPORTER'S NOTE:  Juror 1156 left.)

10           MR. RUDY:  Your Honor, Lee Rudy for plaintiffs.

11        No cause challenge.

12           THE COURT:  I'm sorry?

13           MR. RUDY:  Lee Rudy for plaintiffs.

14        No cause challenge.

15           THE COURT:  Okay.

16           MR. STERN:  Good morning, Your Honor.  Jonathan Stern

17     for the defendants.

18        No cause challenge.

19           THE COURT:  555.

20           THE COURTROOM DEPUTY:  Juror 0555.

21           (REPORTER'S NOTE:  Juror 0555 enters.)

22           THE COURT:  Good morning.  You had on your

23     questionnaire a medical or personal hardship would make it

24     difficult for you to serve.  What did you have in mind there?

25           THE PROSPECTIVE JUROR:  I'm seven weeks' pregnant,
```

```
 1    and I'm --

 2              THE COURT:  I'm sorry?

 3              THE PROSPECTIVE JUROR:  -- constantly nauseous.

 4              THE COURT:  I didn't hear you.

 5              THE PROSPECTIVE JUROR:  I'm seven weeks' pregnant

 6    and I'm constantly nauseous.  So it is hard for me to be in a

 7    jury.  I'm not sure how this will evolve, but it gets worse

 8    every day.

 9              THE COURT:  How do you think that might affect you?

10              THE PROSPECTIVE JUROR:  Well, I could get sick.

11              THE COURT:  Okay.  We'll have a couple of alternate

12    jurors if we had to excuse you, so.  You think there's enough

13    possibility of that happening that -- I mean, it's -- it's not

14    like I couldn't excuse you if an emergency came up.  I'm not

15    quite sure how to deal with that.  It's seven weeks versus

16    seven months.

17              THE PROSPECTIVE JUROR:  Yeah, it's worse in the

18    beginning.

19              THE COURT:  I'm sorry?

20              THE PROSPECTIVE JUROR:  It's worse in the beginning.

21              THE COURT:  Let me speak to counsel.

22              (Bench conference on the record.)

23              MR. RUDY:  Lee Rudy for plaintiffs.

24         I think the juror is saying that she may be feeling

25    nauseous and sick during the trial.  There might be other
```

1    reasons for that, but I don't think that we probably would want

2    to have her on the jury.  I think we would be willing to let

3    her go, Your Honor, but defer to the Court.

4              MR. STERN:  Also defer to the Court, Your Honor, but

5    wouldn't object to letting her go.

6              THE COURT:  All right.  I'll excuse her.

7              (Proceedings held in open court.)

8              THE COURT:  We're going to excuse you.

9              (REPORTER'S NOTE:  Juror 0555 left.)

10             THE COURT:  857.

11             THE COURTROOM DEPUTY:  Juror 0857.

12             (REPORTER'S NOTE:  Juror 0857 enters.)

13             THE COURT:  Good morning.  I have just a few

14   follow-up questions.  One is could you give us your educational

15   background.

16             THE PROSPECTIVE JUROR:  I have a bachelor of arts

17   from Northwestern University, political science.

18             THE COURT:  Okay.  What was the major?

19             THE PROSPECTIVE JUROR:  Political science.

20             THE COURT:  Okay.  And what's your current

21   occupation?

22             THE PROSPECTIVE JUROR:  I manage the docket

23   department at McDermott Will & Emery and provide some paralegal

24   support in civil litigation on the side as needed.

25             THE COURT:  Okay.  On the questionnaire you were

1    asked "Do you now or have you in the past invested in the

2    financial/stock market."  Tell me a little bit more about

3    that.

4            THE PROSPECTIVE JUROR:  Just in general, I invest in

5    stocks, have for a while.  Everything from Google to -- to

6    biotech.

7            THE COURT:  Are these usually stocks you pick

8    yourself, or do you have an advisor?  Or how do you do that?

9            THE PROSPECTIVE JUROR:  I pick them myself.

10           THE COURT:  Okay.  Have you had some kind of

11   education or training in that, or how do you go about making

12   those selections?

13           THE PROSPECTIVE JUROR:  No.  It's just a matter of

14   following the news and doing it that way.

15           THE COURT:  Okay.  In making those decisions, do you

16   usually take into account -- or do you take into account

17   dividends?

18           THE PROSPECTIVE JUROR:  I'm not a fan of dividends as

19   an investment mechanism.  So no.

20           THE COURT:  Okay.  Have you ever traded in

21   cryptocurrency or wanted to trade in cryptocurrency?

22           THE PROSPECTIVE JUROR:  No.  It doesn't make any

23   sense to me.

24           THE COURT:  Okay.  All right.  Do you believe

25   investing in the stock market is like gambling?

1           THE PROSPECTIVE JUROR:  No.

2           THE COURT:  Okay.  Have you or someone else ever

3   gained or lost a significant amount of money in the stock

4   market or in real estate?

5           THE PROSPECTIVE JUROR:  I have.  About 16 years ago I

6   invested in a biotech, and it just lost a lot of money.  It --

7   it was my own bad decision, though.

8           THE COURT:  Tell me a little more about that one.

9           THE PROSPECTIVE JUROR:  It was a biotech that the

10   news was positive on it.  Trial results were positive.  But,

11   ultimately, the final results didn't pan out, and it just

12   dropped very quickly.

13           THE COURT:  Okay.  On the other hand, you made a lot

14   of money on one of them?

15           THE PROSPECTIVE JUROR:  It comes and goes, yeah.  Not

16   a lot, but --

17           THE COURT:  Yeah.  Not a lot.

18        Twenty-two was you or someone close to you had

19   experience in banking, finance, economics, securities,

20   underwriting, real estate.

21           THE PROSPECTIVE JUROR:  My brother-in-law has been

22   legal counsel in the mortgage operations for -- for some big

23   banks:  Wells Fargo, Barclays, J.P. Morgan.  He's currently

24   with Logan Financial [sic].  I think he's in compliance.  It's

25   not a topic that comes up during family get-togethers, though,

1    so.

2              THE COURT:  Okay.  What was his position?

3              THE PROSPECTIVE JUROR:  I think it's, like, more of a

4    general counsel position.

5              THE COURT:  With banks?

6              THE PROSPECTIVE JUROR:  Currently.  And before it was

7    more just counsel.

8              THE COURT:  Yeah.  With banking?  Doing real estate?

9              THE PROSPECTIVE JUROR:  Real estate, yes.  Mortgage

10   real estate.

11             THE COURT:  All right.  Okay.  But you never got into

12   real estate yourself?

13             THE PROSPECTIVE JUROR:  No.

14             THE COURT:  You stuck to stocks?

15             THE PROSPECTIVE JUROR:  Stuck with stocks,

16   unfortunately.

17             THE COURT:  Okay.  You've been on a jury before?

18             THE PROSPECTIVE JUROR:  Yes, sir.

19             THE COURT:  Was that in this court or across the

20   street?

21             THE PROSPECTIVE JUROR:  Across the street in

22   Superior Court.  It was a criminal case that settled after --

23   we were dismissed after opening arguments.

24             THE COURT:  Okay.  What kind of case was it?

25             THE PROSPECTIVE JUROR:  Criminal.  A former felon was

 1    accused of disposing of a gun while being chased by police.

 2              THE COURT:  Okay.  How long were you there?

 3              THE PROSPECTIVE JUROR:  It was the one day of duty.

 4              THE COURT:  Just one day.  And then it settled?

 5              THE PROSPECTIVE JUROR:  Yes, sir --

 6              THE COURT:  Okay.

 7              THE PROSPECTIVE JUROR:  -- Your Honor.

 8              THE COURT:  Anything about that experience have an

 9    effect on your ability to be a fair juror here?

10              THE PROSPECTIVE JUROR:  I'm sorry.  Can you say that

11    again.

12              THE COURT:  Anything about that experience have an

13    effect on being a fair and impartial juror here?

14              THE PROSPECTIVE JUROR:  No.  No.

15              THE COURT:  Any reason you couldn't be fair and

16    impartial if you were seated here?

17              THE PROSPECTIVE JUROR:  No.

18              THE COURT:  Okay.  Let me speak to counsel if they

19    have any follow-up.

20              (Bench conference on the record.)

21              MR. RUDY:  Lee Rudy for the plaintiffs.

22         Two areas to follow up, if you don't mind, Your Honor.

23    One is he said he's -- as a paralegal -- he's some sort of

24    clerk at a big law firm and he has some involvement in

25    litigation support.  I would just be curious to know what kind

1    of cases he's supporting and what his role is in those cases,

2    how involved he is in litigation.

3         And the second area is he -- he made a comment -- and

4    I'm not sure what it meant exactly, which was he said in

5    investing stocks, he's, quote, not a fan of dividends.  I think

6    I know what that means, which is that this is not part of his

7    investment strategy.  But if you could just clarify what he was

8    getting at, I would appreciate it.

9         MR. STERN:  Your Honor, no follow-up from the

10   defendants.

11        Jonathan Stern for the defendant.

12        I would just note that I don't believe that he said he's

13   involved in litigation support.  He just referred to paralegal

14   support generally.  So I would ask that the question not

15   include a reference to litigation.  I don't have any problem

16   with -- no objection to the Court asking him what kind of

17   paralegal support he renders, but he has not yet injected

18   litigation into the conversation.

19        MR. RUDY:  Lee Rudy.

20        No objection to that clarification.

21        THE COURT:  Okay.

22        (Proceedings held in open court.)

23        THE COURT:  What kind of paralegal support do you

24   provide?

25        THE PROSPECTIVE JUROR:  Everything from trial

```
 1        support, cite-checking, filing, that sort of thing.
 2                 THE COURT:  Do you do any in court?
 3                 THE PROSPECTIVE JUROR:  Yes.  It involves trial
 4        preparation, trial participation.
 5                 THE COURT:  What kind of trials?
 6                 THE PROSPECTIVE JUROR:  Civil litigation.  There was
 7        an ERISA trial a couple years ago in Colorado.  Some IP
 8        litigation --
 9                 THE COURT:  What firm are you at?
10                 THE PROSPECTIVE JUROR:  Pardon me?
11                 THE COURT:  What is your firm?
12                 THE PROSPECTIVE JUROR:  McDermott Will & Emery.
13                 THE COURT:  Okay.  So you could be assigned to any
14        kind of litigation they're doing?
15                 THE PROSPECTIVE JUROR:  Correct.  Yes, sir --
16        Your Honor.
17                 THE COURT:  Okay.  What's your most recent big case
18        you've done with them?
19                 THE PROSPECTIVE JUROR:  My most recent case?
20                 THE COURT:  Big case you've done with them.
21                 THE PROSPECTIVE JUROR:  Most recent trial was -- was
22        2019, pre-COVID, in Colorado.  A couple other trials came up
23        but went away.  Settled beforehand.
24                 THE COURT:  What kind of case was that one?
25                 THE PROSPECTIVE JUROR:  In Colorado, it was an ERISA
```

```
 1    case.

 2              THE COURT:  It was what?

 3              THE PROSPECTIVE JUROR:  ERISA.

 4              THE COURT:  ERISA.  Okay.  Did y'all win?

 5              THE PROSPECTIVE JUROR:  We -- we settled.  Everyone

 6    claims they won, but we won.

 7              THE COURT:  Settlements always go that way.

 8         You mentioned one other thing about the -- the stock

 9    question I asked you, and you said you're not a fan of

10    dividends.  Tell me a little more about that one.

11              THE PROSPECTIVE JUROR:  Oh, it's simply because I

12    think the money could be better used by a company reinvesting

13    or doing research, that sort of thing.  That's -- that's my

14    only objection.

15              THE COURT:  Okay.  All right.  Thank you very much.

16              THE PROSPECTIVE JUROR:  A potential conflict came

17    to mind that I didn't think of yesterday that -- so a week

18    from tomorrow, I'm supposed to get some skin cancer removed,

19    so.

20              THE COURT:  I didn't hear you.

21              THE PROSPECTIVE JUROR:  A week from tomorrow, I'm

22    supposed to get skin cancer removed.  So I don't know if that

23    would be a -- at 2:30.

24              THE COURT:  You're supposed to get --

25              THE PROSPECTIVE JUROR:  Skin cancer removed a week
```

1   from tomorrow.  So I don't know if that would be, like, a

2   potential conflict to bring to your attention.

3                   THE COURT:  What are you getting removed?

4                   THE PROSPECTIVE JUROR:  Basal cell on my back.

5                   THE COURT:  That would be a conflict with our

6   schedule.  I find that usually if I ask a doctor to accommodate

7   us, doctors are pretty amenable when I talk to them directly.

8           Would you have a problem if I did that, if we're still

9   going?

10                  THE PROSPECTIVE JUROR:  Oh, no.

11                  THE COURT:  Okay.  Okay.  I usually find doctors are

12  amenable to a judge if I talk to them directly.  That would not

13  pose a problem for you then?

14                  THE PROSPECTIVE JUROR:  Not at all.

15                  THE COURT:  Okay.  Okay.  All right.  Any reason

16  you couldn't be a fair and impartial juror if you were seated

17  here?

18                  THE PROSPECTIVE JUROR:  No, Your Honor.

19                  THE COURT:  Okay.  Any other questions?

20          Thank you, sir.

21                  (REPORTER'S NOTE:  Juror 0857 left.)

22                  THE COURT:  Any challenge for cause to 857?

23                  MR. RUDY:  Lee Rudy for plaintiffs.

24          No objection.  No challenge for cause.

25                  MR. STERN:  Jonathan Stern for the defendants,

```
 1       Your Honor.
 2             No challenge for cause.
 3                   THE COURT:  Okay.  Go to 356.
 4                   THE COURTROOM DEPUTY:  Juror 0356.
 5                   (REPORTER'S NOTE:  Juror 0356 enters.)
 6                   THE COURT:  Good morning.  You had a question mark
 7       about No. 2, which was, "Are you personally acquainted
 8       with . . . or . . . any member of your family or . . . close
 9       friends [personally] acquainted with any of the parties or
10       lawyers."  Who did you have in mind there?
11                   THE PROSPECTIVE JUROR:  Well, I'm a journalist with
12       USA Today, and I've covered the White House for 20 years.  So
13       I've done a few stories about Fannie and Freddie and a lot of
14       stories about the 2008 financial crisis.
15                   THE COURT:  I can't hear you.  I'm sorry.
16                   THE PROSPECTIVE JUROR:  I did a lot of stories
17       about the 2008 financial crisis.  I mean, I wasn't sure --
18       I'm familiar with all the law firms that are represented here.
19       And I think I know a lot about them, so I didn't know
20       quite how to answer it.  So that's why I put the question mark
21       down.
22                   THE COURT:  Okay.  You don't personally recognize any
23       of these lawyers?
24                   THE PROSPECTIVE JUROR:  I recognized a couple of the
25       names, but I don't recognize them personally, no.
```

1          THE COURT:  Okay.  All right.  Let me talk to the

2     lawyers for a minute.

3               (Bench conference on the record.)

4          MR. RUDY:  Lee Rudy for plaintiffs.

5          I see this juror has checked off a lot of boxes on his

6     form.  And I think in light of where he's going and the fact

7     that he's a *USA Today* journalist and he says he knows a lot

8     about Fannie and Freddie, I would be inclined to let him go

9     with no objection to excusing him.

10              MR. STERN:  We would defer to the Court, Your Honor.

11              THE COURT:  All right.  I'll let him go.

12              (Proceedings held in open court.)

13              THE COURT:  Okay.  I'm going to go ahead and excuse

14     you.  Thanks very much.

15              THE PROSPECTIVE JUROR:  Thank you.  I appreciate it.

16     Sorry about that.

17              (REPORTER'S NOTE:  Juror 0356 left.)

18              THE COURT:  576 will be next.

19          The next three all have 31s.  So that's why I gave up

20     last night.  We're going no place.  In fact, five of the next

21     six have 31s.

22          I will show y'all when we finish this the form that they

23     get.  It's -- it's buried on the back page.  So that's why

24     nobody saw it.  It tells them that it could go longer.

25     Two-page form.  You have to read through the whole form to find

```
 1    out it might go longer.
 2         For long trials, I'm going to have to make sure they get
 3    a special notice in the future.  I got this from the jury
 4    office.  That's what actually goes out.  So it's not totally
 5    the jury office's fault.  But expecting individual jurors to
 6    read every issue on a two-page form is probably a lot.
 7             THE COURTROOM DEPUTY:  Juror 0576.
 8             (REPORTER'S NOTE:  Juror 0576 enters.)
 9             THE COURT:  On the form you answered yes to the
10    question "Do you have a medical reason or personal hardship
11    that would make it difficult [for you] to serve?"  What did you
12    have in mind there?
13             THE PROSPECTIVE JUROR:  Yes.  I'm a diabetic, and I
14    take twice a day a thousand milligrams of Metformin.  And that
15    make me go to the restroom a lot.
16             THE COURT:  Okay.  Is there a way I could accommodate
17    that by giving you breaks, if we break every hour and a half?
18    Or is that --
19             THE PROSPECTIVE JUROR:  I might have to go to the
20    bathroom any time.
21             THE COURT:  Okay.  If you raised your hand and I took
22    a break or we stopped then any time you raised your hand, would
23    that accommodate it, or is that too embarrassing to try to do
24    that?
25             THE PROSPECTIVE JUROR:  Depends on how much I have
```

1     to -- depends on how much I have to go to the restroom.  It's a

2     lot.  And I --

3                    THE COURT:  Do you feel like it's worth trying?  I

4     can end up excusing you if it's too much, but --

5                    THE PROSPECTIVE JUROR:  It -- sometimes it's a bit

6     too much.  Even at work I have to go to the restroom a lot.

7     It's a lot.

8                    THE COURT:  Okay.  Let me talk to counsel.

9                    (Bench conference on the record.)

10                   MR. RUDY:  Lee Rudy for the plaintiffs.

11             I defer to the Court on this, Your Honor.

12                   MR. STERN:  Your Honor, I would also defer to the

13    Court but would lean towards letting her go.  Not to interject

14    too much with personal experience into this, but with some

15    family members, this can be a very distracting, disruptive, and

16    unsettling place to be in.  And it would just be -- if she does

17    have to go frequently, even if the Court would accommodate her,

18    which I'm sure the Court would with the hand raising, it has a

19    potential to be disruptive for the trial.

20            So, again, we would defer to the Court, but we ask the

21    Court to take those considerations in mind.

22                   (Proceedings held in open court.)

23                   THE COURT:  I'm going to excuse you.  Thanks for

24    coming down.

25                   THE PROSPECTIVE JUROR:  Thank you.

```
 1                    (REPORTER'S NOTE:  Juror 0576 left.)

 2                    THE COURTROOM DEPUTY:  Juror 2199.

 3                    (REPORTER'S NOTE:  Juror 2199 enters.)

 4                    THE COURT:  Good morning.  On the question "Do you

 5       have a medical reason or a personal hardship that would make it

 6       difficult to serve as a juror in this case," you said yes.  Do

 7       you want to tell me a little bit more about that.

 8                    THE PROSPECTIVE JUROR:  Good morning.  Yeah.  I'm a

 9       self-employee, so I --

10                    THE COURT:  I'm sorry.  I can't hear you.

11                    THE PROSPECTIVE JUROR:  I'm a self-employee and a

12       consultant.  I do freelancing.  So for me it's kind of

13       difficult to serve given the fact that I have several

14       contracts that are -- that I have to give my products and -- in

15       the next weeks.  For example, I have one expiring next Monday

16       that I have to complete my product, do my presentations to my

17       client.  So that's -- that's -- that's the difficulty that I

18       have.

19                    THE COURT:  Let me consult with counsel.

20                    (Bench conference on the record.)

21                    MR. RUDY:  Lee Rudy for plaintiffs.

22              We have no objection to letting him go.

23                    MR. STERN:  We defer to the Court, Your Honor.  We

24       defer to the Court.

25                    THE COURT:  I couldn't hear part of that.  Tell me
```

```
 1     what you think he was saying.

 2              MR. RUDY:  Lee Rudy for plaintiffs.

 3          My understanding is he's saying that he's self-employed

 4     as a -- as a consultant and he has a lot of business, upcoming

 5     deadlines, that he feels incapable of handling if he were to

 6     serve here.

 7              MR. STERN:  The only part I would -- Jonathan Stern

 8     for the defendant.

 9          I generally agree with Mr. Rudy's summary.  I don't

10     think he said the word incapable, but I'm not inclined to press

11     this, Your Honor.  I would defer to the Court.

12              THE COURT:  All right.

13              (Proceedings held in open court.)

14              THE COURT:  I'll go ahead and excuse you at this

15     time.

16              THE PROSPECTIVE JUROR:  Thank you.

17              (REPORTER'S NOTE:  Juror 2199 left.)

18              THE COURTROOM DEPUTY:  Juror 1303.

19              (REPORTER'S NOTE:  Juror 1303 enters.)

20              THE COURT:  On the questionnaire you said you or

21     someone close to you worked for the government or for a

22     government contractor.  What did you have in mind there?

23              THE PROSPECTIVE JUROR:  I wasn't actually sure about

24     that question because I have a friend that's like a family

25     member that works for -- she's contracted out from the tobacco
```

```
1    and firearms -- it's based out of Virginia.  So I'm not sure if

2    it's a Virginia government --

3              THE COURT:  Okay.

4              THE PROSPECTIVE JUROR:  -- agency or, like, the U.S.,

5    but yeah.

6              THE COURT:  Okay.  And it's for -- who is it?

7              THE PROSPECTIVE JUROR:  I forget the exact name.

8    It's like the tobacco and --

9              THE COURT:  Alcohol, tobacco, and firearms?

10             THE PROSPECTIVE JUROR:  I think so, yes.

11             THE COURT:  Okay.  Okay.

12             THE PROSPECTIVE JUROR:  She doesn't work directly for

13   them, but she's a contractor.

14             THE COURT:  A contractor.

15             THE PROSPECTIVE JUROR:  She works with a contractor

16   that works with the agency.

17             THE COURT:  Okay.

18             THE PROSPECTIVE JUROR:  So I wasn't sure if that

19   counted.

20             THE COURT:  Okay.

21             THE PROSPECTIVE JUROR:  If that was exactly what you

22   were asking.

23             THE COURT:  Okay.

24             THE PROSPECTIVE JUROR:  I marked it anyway.

25             THE COURT:  Do you ever discuss her employment with
```

1    her?

2            THE PROSPECTIVE JUROR:  Not really.  I mean,

3    basically, my understanding of what she does is -- has to do

4    with mailing documentation out to members of the -- like, she

5    mentioned, like, liquor stores to give them information about

6    not selling to minors and things to that -- of that nature.  I

7    mean, that's my understanding.

8            THE COURT:  All right.  Okay.  You were asked about

9    "Do you have any strong feelings or beliefs about the

10   government in general [or] government agenc[ies] . . . that

11   might make it difficult for you to serve as a fair [and]

12   impartial juror?"  And you said yes.  Tell me more about that

13   one.

14           THE PROSPECTIVE JUROR:  That's just kind of a general

15   thing because I've had to try to get custody of both of my

16   children in D.C. Superior Court.  I've had legal issues with

17   landlords here in the District.  So I feel like I have a lot --

18   I don't want to say a lot.  I've had experiences with dealing

19   at least with the D.C. government and --

20           Oh, my son is autistic so I've had to -- well, not

21   really legal issues, but at least try to navigate that legal

22   piece with his needs in DCPS.  So I feel like I've had a lot of

23   struggles with trying to get services and trying to get certain

24   things accomplished that have to do with the government.  And

25   it has been difficult, and I have experienced a lot of -- I

1    don't know how to say it -- just trouble navigating all of

2    that.  So yeah.

3         It's not -- how can I say it?  It's just not been easy

4    to try to navigate all those situations on my own, if that

5    makes any sense.

6         THE COURT:  But you think it might affect you as a

7    member of the jury?

8         THE PROSPECTIVE JUROR:  I mean, I would definitely

9    say that yes, I have a more negative view of dealing with

10   government issues in general, yes.

11        THE COURT:  The next one was "Do you have any strong

12   feelings or beliefs about whether [the] government officials

13   generally try their best to serve the public interest?"  And

14   you said yes.

15        THE PROSPECTIVE JUROR:  Yeah.  I mean, it's not to

16   say that everyone does.  But, like I said, with my experience,

17   I have come across people that are definitely not doing their

18   best to try to serve the public.  And so, yeah, that definitely

19   has made an impression on me.

20        THE COURT:  Okay.  You were also asked "Do you

21   have any strong opinions, positive or negative, about the

22   influence of large corporations on the US economy?"  And you

23   said yes.

24        THE PROSPECTIVE JUROR:  Yeah.  I mean, that's just

25   kind of a more general thing.  Just stuff in the news and how

1    they say that, you know, large corporations are trying to take

2    everything over.  It's nothing per se specific.  But yeah, I

3    figured I would check that off because I do.

4                 THE COURT:  Okay.  On 14 you're asked if you've

5    invested in the past in the -- either financial or stock

6    market, and you said yes.

7                 THE PROSPECTIVE JUROR:  Yeah.  That one -- I'm sorry.

8                 THE COURT:  What did you have in mind there?

9                 THE PROSPECTIVE JUROR:  That one I wasn't sure about

10   because I know that I have, like, 401(k) in different things

11   that are kind of based on the market.  So I wasn't sure if

12   that --

13                THE COURT:  Those are all employer-type things?

14                THE PROSPECTIVE JUROR:  Yes.

15                THE COURT:  Did you pick any stocks yourself?

16                THE PROSPECTIVE JUROR:  Well, that's the thing.  They

17   do allow you to choose, you know, different places to put your

18   money --

19                THE COURT:  Right.

20                THE PROSPECTIVE JUROR:  -- so I wasn't sure.

21   Because, you know, to some extent, you do have a choice --

22                THE COURT:  Right.

23                THE PROSPECTIVE JUROR:  -- of where your money --

24                THE COURT:  Of which 401(k)?

25                THE PROSPECTIVE JUROR:  Right.  But, also, like --

1   because I'm part of TIAA-CREF.  And so they do allow you to

2   pick and choose different -- I can't think of the word.  I'm

3   sorry.  I guess funds.

4           THE COURT:  Right.  Mutual funds.

5           THE PROSPECTIVE JUROR:  Right.  That you can invest

6   in, so.

7           THE COURT:  Okay.  Okay.  But you didn't make any

8   stock selections of your own?

9           THE PROSPECTIVE JUROR:  No.  Not, like,

10  independently, no.

11          THE COURT:  Right.  And you never made a decision of

12  whether to pick something with dividends or without dividends?

13  That wasn't something you were deciding, or was it?

14          THE PROSPECTIVE JUROR:  I'm sorry.  Could you repeat

15  that?

16          THE COURT:  You didn't make any decision of whether

17  to pick something with -- that paid dividends or didn't pay

18  dividends?

19          THE PROSPECTIVE JUROR:  I don't think so.

20          THE COURT:  Yeah.  Okay.  Have you ever traded in

21  cryptocurrency or wanted to do cryptocurrency?

22          THE PROSPECTIVE JUROR:  No, I haven't.

23          THE COURT:  Okay.  Do you believe investing in the

24  stock market is like gambling?

25          THE PROSPECTIVE JUROR:  Yeah.  Yeah.  I mean, it

1    comes with risk.  So that's the way I see it.

2         THE COURT:  Okay.  You were asked "Do you have any

3    views on the causes of the 2008 financial crisis?"  And you

4    said yes.  Tell us a little more about that.

5         THE PROSPECTIVE JUROR:  I guess that, for me, was

6    influenced a lot by the news and things like that because I

7    actually was laid off --

8         THE COURT:  Can you speak a little louder in that

9    mic.

10        THE PROSPECTIVE JUROR:  I'm sorry.

11        THE COURT:  I think you have to pull it down some.

12        THE PROSPECTIVE JUROR:  Okay.  So I would say that's

13   also influenced a lot by the news and what I read and seen

14   about that.  But that same year I was laid off from work.  Not

15   that it was really related per se, but just kind of stuck in my

16   mind because that's the year I got laid off, but -- yeah.

17        THE COURT:  And you were asked "Do you have any

18   strong views about corporations that accepted Federal bailout

19   funds to stay afloat during the financial downturn in 2008?"

20   And you said yes.  Tell me a little more about that one.

21        THE PROSPECTIVE JUROR:  Yeah.  Kind of the same thing

22   is, you know, I didn't -- when I understood more about the

23   situation and the fact that -- again, from my understanding,

24   which -- I'm definitely not an expert and have not researched

25   that at all.  But that it was, essentially, government bailing

 1     out these companies because of what -- the choices that they

 2     made in terms of that whole situation being set up the way it

 3     was, yeah.  I mean, it's -- I consider that, definitely,

 4     unfair.

 5            Because if you're going to choose a course of action,

 6     you should be able to have some type of backup if that's the

 7     course you're going to take.  If you're going to make those

 8     decisions, obviously, something like that on such a large

 9     scale, other than just, you know, the government bailing you

10     out.

11            THE COURT:  And then you're asked "Have you ever had

12     any financial or mortgage dealings with Freddie Mac or

13     Fannie Mae?"  And you said yes.  What was that?

14            THE PROSPECTIVE JUROR:  I'm sorry.  Could you repeat

15     the question?

16            THE COURT:  Yeah.  "Have you ever had any financial

17     or mortgage dealings with Freddie Mac or Fannie Mae?"  And you

18     said yes.

19            THE PROSPECTIVE JUROR:  So, actually, I checked that

20     off because of Fannie Mae, but it was not for mortgages.  I've

21     never owned a home or tried to buy a home.  But I had my

22     student loans with Fannie Mae.

23            THE COURT:  Oh, okay.

24            THE PROSPECTIVE JUROR:  So I figured I would check it

25     off because technically --

```
 1                THE COURT:  How long ago was that?

 2                THE PROSPECTIVE JUROR:  Oh, this was at least

 3      20 years ago.

 4                THE COURT:  Okay.

 5                THE PROSPECTIVE JUROR:  Somewhere thereabouts.

 6                THE COURT:  And they're paid off now?

 7                THE PROSPECTIVE JUROR:  Mostly.

 8                THE COURT:  Mostly.  That was -- that was who?

 9      Fannie Mae?

10                THE PROSPECTIVE JUROR:  Fannie Mae, yes.

11                THE COURT:  Paid student loans?

12                THE PROSPECTIVE JUROR:  Yes.

13                THE COURT:  Okay.  And any -- anything bad, good in

14      any of those dealings?  That was all okay?

15                THE PROSPECTIVE JUROR:  I mean, I had some issues.  I

16      got to the point where I was seeking out another -- I'm

17      forgetting the terms when you switch your loans to another

18      company.  I'm sorry.  I'm blanking out on the exact term.  But,

19      eventually, I did find another company.  And --

20                THE COURT:  To take over the loan?

21                THE PROSPECTIVE JUROR:  Yeah.  Yeah.

22                THE COURT:  Okay.  And then there's a question "Have

23      you or someone close to you experienced a foreclosure?"  And

24      you said yes.  What did you have in mind there?

25                THE PROSPECTIVE JUROR:  So I actually technically --
```

1   and I meant to look into this.  I'm not sure.  The same friend

2   that works for the -- who's a contractor with the tobacco and

3   firearms, she -- see, I'm not sure if it's a foreclosure that

4   she went through.  But, apparently, a mortgage company took

5   over -- there was some type of legal situation, and they took

6   over her home.  So she technically doesn't own -- you know,

7   she's not -- like, they own it.

8            THE COURT:  Right.

9            THE PROSPECTIVE JUROR:  But she's been kind of

10  struggling with that.  So I just figured I'd mention it

11  because, again, I wasn't sure it was technically a foreclosure

12  or not.  But yeah.  Had to do with mortgages.  I figured I

13  would check it off.

14           THE COURT:  Was that tied to Fannie or Freddie, do

15  you know?

16           THE PROSPECTIVE JUROR:  No.  To my knowledge, no.

17           THE COURT:  Okay.  Did I ask you about medical reason

18  or hardship?

19           THE PROSPECTIVE JUROR:  No.  I'm sorry.  What is

20  that?

21           THE COURT:  Did I ask you about medical reason or

22  hardship?

23           THE PROSPECTIVE JUROR:  Oh.  No.  Do I have any?  No.

24           THE COURT:  Okay.  Okay.  Can I speak to counsel.

25           (Bench conference on the record.)

```
1              MR. RUDY:  Lee Rudy for plaintiffs.

2         Two things, Your Honor.  One is I'm pretty sure that the

3    juror is confused when she says her student loans were with

4    Freddie Mac or Fannie Mae.  I think she probably means Sallie

5    Mae.  So it would be helpful if you could just clarify that

6    with her, unless there's a business line that I'm not aware of

7    at these companies.

8         And then the second is she did express some negative

9    views towards the local D.C. government that she's had to deal

10   with as a tenant and also with her child, I guess, but I --

11   obviously, this is not a case about local government.  This is

12   a case about a massive federal agency.  It really is very

13   distinct from the animus that she seemed to have.

14        So if you could just ask her if she has any feelings

15   about the federal government or agencies of the federal

16   government, since they'll be defendants in this case.

17             MR. STERN:  Your Honor, with respect to the student

18   loan question, we don't disagree that Fannie Mae doesn't make

19   loans.  But I guess the question is if -- if this juror

20   believes that she had dealings with Fannie Mae and that could

21   affect her ability to be fair and impartial, given that they

22   weren't entirely satisfactory, we'd ask the Court to explore

23   that.

24        In terms of follow-up questions, Your Honor, the only

25   other follow-ups that we would request are to ask her about her
```

1    educational background and also about her employment.  Because

2    I would note, Your Honor, that according to the sheet that we

3    have -- Court's indulgence.

4         According to the sheet that we have, her employment is

5    identified as customer service representative for some office

6    of the D.C. government.  And her response to the government

7    question did not include herself.  So we would ask the Court to

8    explore her current employment situation.

9              MR. RUDY:  Your Honor --

10             (Proceedings held in open court.)

11             THE COURT:  What is your current employment?

12             THE PROSPECTIVE JUROR:  I actually work --

13   ironically, I actually work for D.C. government.  I work for

14   311.

15             THE COURT:  For what?

16             THE PROSPECTIVE JUROR:  311 at D.C. government.

17             THE COURT:  Oh, 311.  Okay.  Okay.

18        When you're talking about the government, to what extent

19   are you really talking about the D.C. government --

20             THE PROSPECTIVE JUROR:  Well --

21             THE COURT:  -- versus the federal government?

22             THE PROSPECTIVE JUROR:  Right.  I mean, technically,

23   personally, I don't have, really, any experiences with federal

24   government, as far as me personally in my life, but -- yeah.

25   Most of everything I'm referring to is really --

```
 1                    THE COURT:  Just the local government?

 2                    THE PROSPECTIVE JUROR:  -- D.C. government.  Yeah.

 3                    THE COURT:  The -- the student loan Fannie Mae --

 4        have you heard of Sallie Mae?

 5                    THE PROSPECTIVE JUROR:  Oh.  I'm sorry.

 6                    THE COURT:  Could it be that's Sallie Mae, not

 7        Fannie Mae?

 8                    THE PROSPECTIVE JUROR:  Maybe I got that wrong.  I

 9        apologize.

10                    THE COURT:  Is that right?

11                    THE PROSPECTIVE JUROR:  Yes.

12                    THE COURT:  It probably is Sallie Mae; right?

13                    THE PROSPECTIVE JUROR:  Yes, yes, yes.  I'm sorry.

14                    THE COURT:  Okay.  All right.  Tell me a little bit

15        about your educational background.

16                    THE PROSPECTIVE JUROR:  I have a bachelor's in social

17        work.

18                    THE COURT:  From where?

19                    THE PROSPECTIVE JUROR:  It's called Hood College.

20                    THE COURT:  Where is that?

21                    THE PROSPECTIVE JUROR:  Frederick, Maryland.

22                    THE COURT:  Okay.  Okay.  Thank you very much.

23                    THE PROSPECTIVE JUROR:  Thank you.

24                    (REPORTER'S NOTE:  Juror 1303 left.)

25                    THE COURT:  I'll take any challenge for cause.
```

```
1              MR. RUDY:  No cause challenge for plaintiffs.

2              MR. STERN:  Your Honor, Jonathan Stern for the

3      defense.

4          We would challenge this juror for cause, Your Honor.

5      And I'd note a few of her comments.  First, I appreciate the

6      distinction between D.C. government and the federal government,

7      but she said in general with respect to people who are

8      purporting to be acting in the public interest don't --

9              THE COURT:  You don't have to argue.  That's

10     sustained.

11         All right.  We'll go to the next juror.  It will be 679.

12             THE COURTROOM DEPUTY:  Juror 0679.

13             (REPORTER'S NOTE:  Juror 0679 enters.)

14             THE COURT:  Hi.

15             THE PROSPECTIVE JUROR:  Hello.

16             THE COURT:  On the questionnaire it said, "Have you

17     or someone close to you ever worked for any government agency

18     or . . . government contractor?"  And you said yes.  What did

19     you have in mind there?

20             THE PROSPECTIVE JUROR:  I used to work for the

21     District government.

22             THE COURT:  Okay.  Who?  What agency?

23             THE PROSPECTIVE JUROR:  I worked for the D.C.

24     Council, for a couple of D.C. council members.

25             THE COURT:  I'm sorry.  I can't hear you.
```

```
1              THE PROSPECTIVE JUROR:  Do I need to hit a button?

2         I worked for the District Council for a few D.C. council

3    members and then for a District agency, the Department of

4    General Services.

5              THE COURT:  Okay.  The next one was "Have you or a

6    close [friend or] family member ever worked for a large

7    corporation?"

8              THE PROSPECTIVE JUROR:  My mom worked for AT&T for

9    about 30 years.

10             THE COURT:  Okay.  The next was "Do you have any

11   strong opinions, positive or negative, about the influence of

12   large corporations on the US economy?"  And you said yes.  Tell

13   me a little more about that one.

14             THE PROSPECTIVE JUROR:  So I think of myself as a

15   Democratic Socialist.  So I have very specific ideas about

16   how an economy should run, about how I think the U.S. should

17   run, and how government and corporations should be running,

18   and not necessarily cooperating with each other in the way that

19   they are currently.  I feel a little separation would be nice.

20   And that corporations have a little bit too much control over

21   some of the government decisions that are made in America right

22   now.

23             THE COURT:  Okay.  You were asked "Do you now or have

24   you in the past invested in the financial/stock market?"  And

25   you said yes.  Tell me a little bit more about that one.
```

```
1              THE PROSPECTIVE JUROR:  I have a retirement account.

2      So I have mutual funds.

3              THE COURT:  Right.

4              THE PROSPECTIVE JUROR:  I don't -- I don't, like,

5      specifically buy stocks.  Like, it's just --

6              THE COURT:  You don't make any specific purchase

7      yourself?

8              THE PROSPECTIVE JUROR:  No.  Yeah.  It's just like a

9      Vanguard account.

10             THE COURT:  Okay.  And did you have any education

11     or training in making any of those decisions, or that's

12     mostly through your employment that you picked the mutual

13     funds?

14             THE PROSPECTIVE JUROR:  Yeah.  Like, my mom gives me

15     a little bit of guidance, but I just kind of throw money in

16     a --

17             THE COURT:  Okay.  And you didn't make any individual

18     stock decisions yourself then?

19             THE PROSPECTIVE JUROR:  No.

20             THE COURT:  Okay.  Have you ever traded in

21     cryptocurrency or wanted to trade in cryptocurrency?

22             THE PROSPECTIVE JUROR:  No.

23             THE COURT:  Okay.  Do you believe investing in the

24     stock market is like gambling?

25             THE PROSPECTIVE JUROR:  I -- yes.  But there does
```

1    seem to be some sort of financial utility to it if one has

2    enough money to get into it; so trying to get enough money to

3    get more money out of it.

4        THE COURT:  You were asked "Have you or someone close

5    to you ever gained or lost a significant amount of money in the

6    stock market or in real estate?"  And you said yes.

7        THE PROSPECTIVE JUROR:  My brother had bought a house

8    in Georgia and had gone to sell it some years later and had to

9    sell it at a loss post the Great Recession.  It was around

10   2010.  So he took -- he took tens of thousands of dollars' hit

11   on his house following the Great Recession.

12       THE COURT:  Okay.  You were asked "Do you have any

13   views on the causes of the 2008 financial crisis?"  Tell me a

14   little more about that.

15       THE PROSPECTIVE JUROR:  So when you asked that

16   question yesterday, I -- I had multiple thoughts kind of come

17   to my mind.  At that time, I was graduating law school.  So

18   during -- from May of 2008 to when I was sworn in December of

19   2008, the financial world changed a lot.  And as a recently

20   graduated lawyer, it was an interesting world to be looking out

21   on.

22       And what I understood that had happened with CDOs,

23   mortgage-backed securities, and just people making decisions

24   about how to package and make financial decisions, somewhat

25   gambling about how to put money in the market.  And then the

1    collateral consequences of millions of people -- foreclosures

2    and losing homes.  And then the consequences to that, to me,

3    and where I was in my life and my career, and other people.

4         So it -- I saw very concretely how it impacted myself

5    and my peers and where we were in our lives and, I think, even

6    up until today, people in my specific generation have probably

7    seen our lives very concretely impacted by the machinations

8    that were done coming up to 2008 and what happened leading up

9    to the Great Recession.

10        So all of those thoughts were kind of leading me to

11   answer that question.

12        THE COURT:  You were also asked have any

13   personal experience with or familiar with the term

14   conservatorship.

15        THE PROSPECTIVE JUROR:  So as a -- as a lawyer, like,

16   I understand it as a concept.  I don't -- you know, like,

17   Britney Spears was a conservator [sic].  Like, I know it as a

18   concept.  I don't know --

19        THE COURT:  The concept, yeah.

20        THE PROSPECTIVE JUROR:  Yeah.

21        THE COURT:  Okay.  And you were asked, "Do you own

22   your own home?"  You said yes.

23        THE PROSPECTIVE JUROR:  I'm sorry?  Say that again.

24        THE COURT:  "Do you own your own home?"  You said

25   yes.

```
 1              THE PROSPECTIVE JUROR:  Yes.

 2              THE COURT:  And do you have a mortgage?

 3              THE PROSPECTIVE JUROR:  I do, yes.

 4              THE COURT:  And who's it with?

 5              THE PROSPECTIVE JUROR:  First Home Mortgage.

 6              THE COURT:  Okay.  You were also asked if you served

 7     on a jury before, and you said yes.

 8              THE PROSPECTIVE JUROR:  Uh-huh.  In 2015, a case in

 9     D.C. Superior.

10              THE COURT:  Okay.  What kind of case was that?

11              THE PROSPECTIVE JUROR:  It was a gun case.

12              THE COURT:  Okay.  How long did that go?

13              THE PROSPECTIVE JUROR:  Like four days.

14              THE COURT:  Okay.  The jury reached a verdict?

15              THE PROSPECTIVE JUROR:  We did.

16              THE COURT:  Were you the foreperson?

17              THE PROSPECTIVE JUROR:  I was not.

18              THE COURT:  Okay.  Anything about that experience

19     have any effect on your ability to be a fair juror here?

20              THE PROSPECTIVE JUROR:  No.

21              THE COURT:  Okay.  Tell me about your educational

22     background.

23              THE PROSPECTIVE JUROR:  So I have a bachelor's degree

24     from Florida State University in English, minor in philosophy;

25     and I have a law degree from UDC.
```

```
1              THE COURT:  Okay.  From D.C. School of Law?

2              THE PROSPECTIVE JUROR:  Uh-huh.

3              THE COURT:  Okay.

4              THE PROSPECTIVE JUROR:  Well, University of District

5      of Columbia, but yes.

6              THE COURT:  One of my favorite interns ever was the

7      editor and chief at D.C. School of Law.  Number one in his

8      class.  He's still one of my favorites ever.

9              THE PROSPECTIVE JUROR:  There you go.

10             THE COURT:  It's a good school.  Nobody recognizes

11     that, but I do.

12             THE PROSPECTIVE JUROR:  Well, I appreciate that.

13     Thank you.

14             THE COURT:  Where do you work now?

15             THE PROSPECTIVE JUROR:  Tzedek DC.  It's a small law

16     firm actually headquartered at UDC.  We do consumer litigation,

17     debt collection.

18             THE COURT:  What kind of stuff do you do?

19             THE PROSPECTIVE JUROR:  I'm actually the policy

20     director.

21             THE COURT:  I'm sorry?

22             THE PROSPECTIVE JUROR:  The policy director.

23             THE COURT:  Okay.  There's a question about

24     "Have . . . you been involved in a civil legal dispute as a

25     party or . . . witness?"
```

1             THE PROSPECTIVE JUROR:  So a few years ago I had a --

2     a friend of mine from law school, she was trying a case.  And

3     she had me come in as a witness, very briefly.  And to be

4     honest with you, I can't even really remember the facts of the

5     case, but that -- that was what came to mind when the question

6     was asked.

7             THE COURT:  Okay.  You were asked "Do you

8     have . . . strong views on class action lawsuits, the parties

9     to such lawsuits . . . [and] their lawyers?"

10            THE PROSPECTIVE JUROR:  I think they're very

11    important.  I think class actions give the little guy a chance

12    to -- to stand up to a large nameless corporation.  It gives us

13    all a chance to level the playing field.

14            THE COURT:  Okay.  And then you were asked "Do you

15    belong to any social or professional organizations?"

16            THE PROSPECTIVE JUROR:  The bar.

17            THE COURT:  Okay.  Which bars do you belong to?

18            THE PROSPECTIVE JUROR:  Maryland.  And I'm waiting

19    into D.C. at the moment.

20            THE COURT:  Okay.  Let me see if counsel have other

21    questions.

22            (Bench conference on the record.)

23            MR. RUDY:  Your Honor, Lee Rudy.

24        Your Honor, I have a lot of follow-ups here.  So I don't

25    know if you want to take them all at once or maybe in pieces.

1    But starting with her occupation, she's a policy director

2    for -- I think it's Tzedek, it says on the form.  I'm curious

3    what policies Tzedek actually advocates.

4         Number two, she gave an answer -- she seemed to -- I

5    wrote down that she has, quote, very specific ideas about how

6    government should run, and specifically with reference to how

7    government interfaces with public corporations.  And she said

8    that they should be maybe less cozy or less close or -- I

9    forgot what the word she used was.

10        Obviously, in this case we're dealing with the

11   government working with private corporations in the 2008 crisis

12   to bail out public -- private corporations.  I think it's

13   appropriate for you to follow up on whether she has her, quote,

14   very specific ideas that would relate to that.

15        She described herself as a Democratic Socialist.  I'm

16   drawing certain images from that.  But I think it's appropriate

17   for you to follow up on that.

18        I guess, similarly, related to sort of the financial

19   crisis, if she has thoughts about the government's role in

20   supporting private corporations in 2008 and if she has feelings

21   about that that might affect her ability to be fair in the

22   case.

23        MR. STERN:  Your Honor, just two comments.  We

24   have -- Jonathan Stern for the defendants -- no questions.

25        But two comments with respect to the plaintiffs'

1    proposal, and they're related, Your Honor.  First, and I -- I

2    apologize if I'm butchering this.  And the Court and Mr. Rudy

3    can correct me.  But I don't -- we would respectfully submit

4    that it's -- well may be appropriate to ask the juror some more

5    about what she does in her job.  The way that Mr. Rudy put the

6    question seemed to me to get at the politics or the policies

7    that her job might involve advocating for or against.  And we

8    would respectfully submit that that's not appropriate territory

9    for *voir dire*.

10        And then more directly, Your Honor, it wasn't entirely

11   clear to me what Mr. Rudy was suggesting the Court ask about

12   the witness's identification of her political affiliation or

13   views.  But we'd respectfully submit that it's not appropriate

14   to probe those in *voir dire* either.

15        MR. RUDY:  Your Honor, Lee Rudy.

16        I agree that I'm not asking -- I'm not asking you to

17   inquire into her politics.  I am asking you to inquire into the

18   policies that she advocates in her job and the policies that

19   you think might be relevant to this particular case that

20   specifically involves the government and support for private

21   institutions; where she's saying that government and private

22   institutions should be more -- should be less cozy.

23        MR. STERN:  Your Honor, we defer to the Court whether

24   and how that kind of question should be asked.  I understood

25   Mr. Rudy earlier to have asked that the Court ask the question

1   specifically with reference to the witness's [sic]

2   identification of her political affiliation as a Democratic

3   Socialist.  And that's what I was objecting to.

4           THE COURT:  Okay.

5           (Proceedings held in open court.)

6           THE COURT:  Tell me a little more about the

7   organization and the policy views of the organization that

8   you -- where you work.

9           THE PROSPECTIVE JUROR:  So Tzedek DC has been around

10  for about six years.  And we provide services for low-income

11  D.C. residents up to about 400 percent of the federal poverty

12  level.  We focus on debt collection issues, medical debt,

13  fraud.  Just really focused on people who have -- are dealing

14  with consequences just of -- really debt collection-focused

15  issues.

16           And so I am their first policy director, and I started

17  in March.  So I've been there for about four and a half months.

18           And so we focus on working with the D.C. Council.  And a

19  few of the things that we have been dealing with recently --

20  before I started, they had focused on -- so in the District

21  there is a law called Clean Hands.  And so fines and fees

22  prevent a lot of District residents from having access to

23  services, and that includes a driver's license.

24           So we had sued to get access to driver's licenses for

25  about 50 or 60 thousand residents who were unable to pay the

1    fines and fees that were required to get their driver's

2    license.

3         We are now trying to do something similar with

4    occupational licenses and small business licenses because

5    Clean Hands prevents you from getting that if you owe the

6    District government more than a hundred dollars.

7         So there are a number of people who cannot get -- cannot

8    get an occupational license, cannot renew their occupational

9    license because they owe the District government, potentially,

10   small amounts of money.  So we are working on legislative

11   changes.  We have actually filed a suit to try to get that

12   changed through the courts.

13        So there's just a lot of legislative advocacy, talking

14   to council members, trying to encourage them to change

15   legislation.  Like I said, we'll go to court if we have to.

16        We also have, like, a medical debt project.  The

17   District recently announced that they were going to dedicate

18   $900,000 to canceling District's residents' medical debt, which

19   will equate to about $90 million in medical debt that will be

20   canceled, give or take.  So that -- we weren't the only

21   organization that was advocating for that, but that's -- we

22   were certainly well in the mix for that.

23        So those are just examples of some of the work that

24   we're doing.

25             THE COURT:  Okay.  When you're talking about the --

1    the specific ways of the government and corporations work

2    together, tell me a little more about that.  Explain a little

3    more about how -- you said something about too cozy.  Tell me a

4    little bit more about your views about that.

5              THE PROSPECTIVE JUROR:  Yeah.  So, for example, we

6    have had, you know, very high inflation lately; right?  And

7    housing costs -- housing costs have gone up.  Yet what people

8    get paid are not going up.

9         So you have government that in 22 states, roughly,

10   federal minimum wage is still 7.25.  But housing costs,

11   groceries, utilities continue to go up.  And so there is

12   just -- meanwhile -- so corporations are making a lot of money,

13   particularly over the last few years.  There's news reports

14   about record profits.

15        But people are making mere pennies.  They can't afford

16   eggs.  They can't afford gas.

17        And so we have 2,000-some billionaires and -- who is

18   getting tax breaks.  So who are the people who are donating to

19   Congress?  People with money.  And the people with money are

20   the people who are owning businesses.  People with money are

21   the people who are CEOs of corporations.  And so there's --

22   there's just -- money needs to go in a circle.  It's going up,

23   and it's -- I just --

24        I'm very uncomfortable with looking around at my -- my

25   fellow Americans who are struggling and scraping to get by.

 1    And looking -- like, the writer and the actor strike right

 2    now -- right? -- I think are a classic example of this; right?

 3    You have hundreds of thousands of people who don't even earn

 4    enough money to get health insurance, and you have people like

 5    David Zaslav who earn $500 million a year.  What sense does

 6    that make; right?

 7         So the -- the disparity between the haves and the

 8    have-nots.  And what is government doing?  Government is not

 9    trying to level that playing field.  Government is giving tax

10    breaks.  Government is bringing down tax breaks.  Government is

11    not raising minimum wage.  Government is not trying to equalize

12    between players.

13         You know, we had a middle class back in the '70s when

14    I was born.  But now we're in the 2020s, and where's that

15    middle class?  So what has government done but allowed

16    corporations to reduce their tax rates and to garner more

17    profits and to not pay their employees more, to not raise

18    standards of living.

19         When my parents were young, one of them could work.

20    They didn't even have to have a college degree.  They could buy

21    houses.  They could buy cars, take vacations.  Families can't

22    do that now.

23         And there's a relationship, at least as I see it,

24    between corporations saying, hey, government, we don't want

25    to do X, Y, Z and government's saying, okay, you don't have

```
 1    to do that.  We'll just take the money from the average guy.
 2    We don't need to take taxes from you, corporate entity.  We'll
 3    get it from mom, dad, sister, brother.  They'll take care of
 4    it.
 5         And I think there's just problems happening in our
 6    country where it's like the little guy is being asked to do a
 7    lot and the people with $500 million yearly salaries are not.
 8    And that's a problem.  So -- yeah.
 9              (Bench conference on the record.)
10              THE COURT:  Anybody want to have any follow-up?
11              MR. RUDY:  Your Honor, I've been tending to make a
12    cause challenge.  I don't know whether I need to prompt more
13    follow-up questions, but --
14              THE COURT:  You don't.
15              MR. STERN:  I would object to the challenge cause,
16    Your Honor, but reading the room, I wouldn't have much more to
17    say.
18              THE COURT:  Okay.
19              (Proceedings held in open court.)
20              THE COURT:  You can step down.  Thank you very much.
21              (REPORTER'S NOTE:  Juror 0679 left.)
22              MR. RUDY:  Your Honor, Lee Rudy for plaintiff.
23         We're moving to strike this juror for cause.  I can go
24    on, but --
25              THE COURT:  You don't need to.
```

```
 1                    MR. RUDY:  Okay.

 2                    THE COURT:  You can object, if you wish.

 3                    MR. STERN:  Very briefly, if I may.  Jonathan Stern

 4         for the defendants.

 5               We'd object to striking this juror for cause,

 6         Your Honor.  There was --

 7                    THE COURT:  Even though she has an opinion on

 8         everything?

 9                    MR. STERN:  She does, Your Honor, but most people do.

10         We just hear more from some people than we do from others,

11         especially lawyers.  I'd respectfully submit, Your Honor, that

12         at no point did this juror ever say, either prompted or

13         unprompted, that she would have any difficulty, notwithstanding

14         her views about all sorts of things, being a fair and impartial

15         juror in this case.

16               And that, of course, is the -- the standard that the

17         Court is to apply.  And we'd respectfully submit that a

18         challenge for cause is, therefore, inappropriate.

19                    THE COURT:  In a prior hung jury case, I'm not taking

20         a chance on somebody with strong views about everything.  So

21         she'll be stricken.

22               We'll go to 717.

23               The Court of Appeals wants to tell me to seek somebody

24         like that, they can come down and try it.

25               She could wear me down.
```

1          THE COURTROOM DEPUTY:  Juror 0717.

2          (REPORTER'S NOTE:  Juror 0717 enters.)

3          THE COURT:  You were asked on the questionnaire "Do

4     you have a medical reason or . . . personal hardship that would

5     make it difficult [for you] to serve?"  And you said yes.  What

6     did you have in mind there?

7          THE PROSPECTIVE JUROR:  I lost my husband two months

8     ago.

9          THE COURT:  I'm sorry.  I can't hear you.

10          THE PROSPECTIVE JUROR:  I lost my husband two months

11     ago, and I'm really having a hard time.  I have a lot of things

12     I'm still trying to take care of.  So I -- right now, I don't

13     think it's a good time for me to be here.

14          THE COURT:  Okay.  Let me talk to counsel.

15          (Bench conference on the record.)

16          MR. RUDY:  Lee Rudy for plaintiffs.

17        No objection to letting her go.

18          MR. STERN:  Jonathan Stern for the defendants.

19        No objection to excusing this juror, Your Honor.

20          (Proceedings held in open court.)

21          THE COURT:  You're going to be excused.

22          THE PROSPECTIVE JUROR:  Thank you.

23          (REPORTER'S NOTE:  Juror 0717 left.)

24          THE COURTROOM DEPUTY:  Ready for the next one,

25     Your Honor?

1           THE COURT:  Yes.  1764.

2           THE COURTROOM DEPUTY:  Juror 1764.

3           (REPORTER'S NOTE:  Juror 1764 enters.)

4           THE COURT:  You were asked "Do you have a medical

5    reason or . . . personal hardship that would make it difficult

6    to serve as a juror in this case?"  And you said yes.  What did

7    you have in mind there?

8           THE PROSPECTIVE JUROR:  Well, I have hyperthyroidism,

9    and I've been -- and I've had Long COVID.  So I have been

10   having some breathing challenges recently.  And also, I'm

11   self-employed.  And I am way behind on -- I don't mind a

12   commitment to do it, but it's making me even more -- I have

13   more anxiety because I --

14          THE COURT:  What is the effect of the

15   hyperthyroidism?

16          THE PROSPECTIVE JUROR:  Hmm?

17          THE COURT:  What is the effect of the

18   hyperthyroidism?

19          THE PROSPECTIVE JUROR:  Sleepy, lethargic, kind of,

20   you know, cloudy some days.  I'm better because -- I had

21   Long COVID so -- I had it twice.  And I'm better.  I'm a lot

22   better.

23          But, you know, another part of this -- I worked at

24   Fannie Mae for 15 years.  So that's also a big part of this.

25          THE COURT:  When did you work there?

1          THE PROSPECTIVE JUROR:  When did I work there?  Two

2    thous- -- I'm sorry.  1992 to 2008, when they let go most of

3    the people in the field.

4          THE COURT:  What was your job there?

5          THE PROSPECTIVE JUROR:  My what?

6          THE COURT:  What was your job there?

7          THE PROSPECTIVE JUROR:  I was a director of the

8    D.C. partnership office and also national director of

9    relationships in the multicultural space.  So I did a lot of

10   work with the NAACP, the Urban League, a lot of other

11   organizations, and Howard University here.  And my specialty

12   was the -- ability to securitize community financing.  So I was

13   at Fannie Mae for a long time.

14         THE COURT:  Okay.  And you also put down something

15   about Berkley Insurance.

16         THE PROSPECTIVE JUROR:  Berkley, I had -- I had

17   investments in Berkley with my -- my husband passed away, but

18   with my husband.  He had invested, and we had an investment

19   portfolio, which included Fannie Mae and Freddie Mac, which I

20   had that because of an employee ESOP.  So I had that, which I

21   lost all of that, every penny of it, when they froze the stock.

22   And our vice chair cashed out, and it was not possible for the

23   rest of us to cash out.

24        So I went from having six digits in stock to having

25   nothing, with a son going to graduate school and a mother dying

1    from cancer all at the same time.  And so I have very strong

2    feelings about --

3              THE COURT:  Okay.

4              THE PROSPECTIVE JUROR:  -- that.

5              THE COURT:  Okay.  Can I speak to counsel.

6              (Bench conference on the record.)

7              MR. RUDY:  Lee Rudy for plaintiffs.

8          We would not oppose excusing her for cause.

9              MR. STERN:  Nor the defendants, Your Honor.

10         Jonathan Stern.

11             THE COURT:  Okay.

12             (Proceedings held in open court.)

13             THE COURT:  I'm going to excuse you.

14             THE PROSPECTIVE JUROR:  Thank you.

15             (REPORTER'S NOTE:  Juror 1764 left.)

16             THE COURTROOM DEPUTY:  Juror 0223.

17             (REPORTER'S NOTE:  Juror 0223 enters.)

18             THE COURT:  I just have a few follow-up questions.

19   One was "Have you or someone close to you ever worked for any

20   government agency or a government contractor?"  And you said

21   yes.  What did you have in mind there?

22             THE PROSPECTIVE JUROR:  I'm employed by a federal

23   agency.

24             THE COURT:  Okay.  Who do you work for?

25             THE PROSPECTIVE JUROR:  The Consumer Product Safety

1    Commission.

2              THE COURT:  Okay.  How long have you been there?

3              THE PROSPECTIVE JUROR:  Eight years.

4              THE COURT:  Okay.  What's your educational

5    background?

6              THE PROSPECTIVE JUROR:  I have a bachelor's degree.

7              THE COURT:  I'm sorry?

8              THE PROSPECTIVE JUROR:  I have a bachelor's degree.

9              THE COURT:  Where is that from?

10             THE PROSPECTIVE JUROR:  Norfolk State University.

11             THE COURT:  Okay.  And what is your major?

12             THE PROSPECTIVE JUROR:  Political science.

13             THE COURT:  Okay.  The next one is "Have you ever

14   owned your own business?"

15             THE PROSPECTIVE JUROR:  Yes, sir.

16             THE COURT:  What was that?

17             THE PROSPECTIVE JUROR:  Martial arts lessons.

18             THE COURT:  Okay.  Do you currently own that?

19             THE PROSPECTIVE JUROR:  Yes.

20             THE COURT:  You do.  Now, that's a part-time thing?

21             THE PROSPECTIVE JUROR:  Yes.

22             THE COURT:  So it's not a sole source of income

23   because you're working -- you've been there eight years --

24             THE PROSPECTIVE JUROR:  Yes.

25             THE COURT:  -- at CPSC?

 1          What do you do there at CPSC?

 2                THE PROSPECTIVE JUROR:  Congressional liaison.

 3                THE COURT:  Congressional aide.  Okay.

 4          And how much do you do martial arts?

 5                THE PROSPECTIVE JUROR:  About four times a week.

 6                THE COURT:  Okay.  So you've got a -- what?  Do you

 7    have a studio or what?

 8                THE PROSPECTIVE JUROR:  I teach at various locations.

 9                THE COURT:  You teach it.  Okay.  At various

10    locations?

11                THE PROSPECTIVE JUROR:  Yes.

12                THE COURT:  Okay.  You were asked "Do you now or have

13    you in the past invested in the financial/stock market?"  And

14    you said yes.  What did you have in mind there?

15                THE PROSPECTIVE JUROR:  I own some stock in Amazon

16    and CVS.

17                THE COURT:  Okay.  Did you pick the stock yourself,

18    or did you have an advisor?  How did you go about that?

19                THE PROSPECTIVE JUROR:  Picked it myself.

20                THE COURT:  Okay.  Did you have some kind of

21    education or training, or how did you go about picking this

22    stock?

23                THE PROSPECTIVE JUROR:  Just a consumer product

24    online.

25                THE COURT:  Okay.  Okay.  In picking the stock, did

1    you look at or consider what -- dividends, or was that a

2    consideration picking the stock?

3              THE PROSPECTIVE JUROR:  It was a consideration, yes.

4              THE COURT:  Okay.  How important was that?  How

5    important was that to you?

6              THE PROSPECTIVE JUROR:  Somewhat important.

7              THE COURT:  Okay.  Did you ever trade in

8    cryptocurrency or want to trade in cryptocurrency?

9              THE PROSPECTIVE JUROR:  No.

10             THE COURT:  Okay.  Do you believe investing in the

11   stock market is like gambling?

12             THE PROSPECTIVE JUROR:  Somewhat.

13             THE COURT:  Tell me a little bit more about that.

14             THE PROSPECTIVE JUROR:  Well, you know, you can't

15   really predict the future and don't have all the information.

16   So you just make your best educated guess.

17             THE COURT:  Okay.  You were asked about if you or

18   someone close to you had experience in banking, finance,

19   economics, securities, underwriting, and real estate.  What did

20   you have in mind there?

21             THE PROSPECTIVE JUROR:  Economics.  And that's only

22   from my academic studies.

23             THE COURT:  Okay.  Is there someone else close to you

24   with that?

25             THE PROSPECTIVE JUROR:  No.

```
1              THE COURT:  Okay.  And then you served in the
2      military?
3              THE PROSPECTIVE JUROR:  Yes.
4              THE COURT:  Where were you?
5              THE PROSPECTIVE JUROR:  United States Army,
6      Fort Drum, New York, for the better part of the late '90s.
7              THE COURT:  Okay.  And where did you serve?
8              THE PROSPECTIVE JUROR:  I was stateside all the time,
9      so.  Nothing was going on when I was in.
10             THE COURT:  Ever been to Fort Bragg?
11             THE PROSPECTIVE JUROR:  I've been to Fort Bragg
12     before, yes.
13             THE COURT:  Okay.  Naturally.  Ever go to Fort Hood?
14             THE PROSPECTIVE JUROR:  Yes.
15             THE COURT:  All the bad places.
16             THE PROSPECTIVE JUROR:  Yeah.
17             THE COURT:  Okay.  I was in the Army too.
18             THE PROSPECTIVE JUROR:  Oh, great.
19             THE COURT:  So I know.  What was your rank and
20     discharge?
21             THE PROSPECTIVE JUROR:  I was a private first class
22     when I discharged.
23             THE COURT:  Okay.  And when did you get out?
24             THE PROSPECTIVE JUROR:  1997, I believe.
25             THE COURT:  Okay.  Do you belong to any social,
```

```
 1        professional organizations?

 2                    THE PROSPECTIVE JUROR:  A few.

 3                    THE COURT:  Tell us about that.

 4                    THE PROSPECTIVE JUROR:  National Institute of [sic]

 5        Lobbying & Ethics.

 6                    THE COURT:  I'm sorry?

 7                    THE PROSPECTIVE JUROR:  NILE, that's the acronym.

 8        The National Institute of Lobbying and Ethics.  That's the

 9        latest name change.

10                    THE COURT:  Okay.  Do you have a leadership role in

11        any of those?

12                    THE PROSPECTIVE JUROR:  No.  I just joined this year.

13                    THE COURT:  Okay.  Where did you grow up?

14                    THE PROSPECTIVE JUROR:  Where did I grow up?

15        Alexandria, Virginia.

16                    THE COURT:  Just from here?

17                    THE PROSPECTIVE JUROR:  Yes.

18                    THE COURT:  Okay.  All right.  Any follow-up by

19        counsel?

20                    (Bench conference held on the record.)

21                    MR. RUDY:  Lee Rudy for plaintiffs.

22               Could you just ask him what he does in his job.

23                    MR. STERN:  No objection to that question,

24        Your Honor.

25               Jonathan Stern for the defendants.
```

1      And no follow-ups from us.

2           (Proceedings held in open court.)

3           THE COURT:  What is it you do at your job?

4           THE PROSPECTIVE JUROR:  What is it that I do at my

5      job?  Basically, I keep my agency informed on what Congress is

6      up to, and I keep --

7           THE COURT:  I'm sorry?

8           THE PROSPECTIVE JUROR:  Oh.  I'm basically a

9      go-between between my agency and congressional staff.

10          THE COURT:  That's what I thought.  Congressional

11     relations?

12          THE PROSPECTIVE JUROR:  Yes.

13          THE COURT:  Okay.  So you're responding to inquiries

14     from Congress?

15          THE PROSPECTIVE JUROR:  Correct.

16          THE COURT:  And -- and are y'all trying to get

17     legislation right now, or are you just trying to keep them from

18     legislating, I guess?

19          THE PROSPECTIVE JUROR:  Well, I try to let them know,

20     you know, if they have -- if they introduce a bill, you know,

21     what it means for my agency and what impact it will have on my

22     agency.

23          THE COURT:  Okay.  All right.  Thank you.

24     Any other thing.

25     Okay.  Thank you very much.

```
1              (REPORTER'S NOTE:  Juror 0223 left.)

2              THE COURT:  Any challenge for cause?

3              MR. RUDY:  No challenge for cause.

4          Plaintiffs, Lee Rudy.

5              MR. STERN:  Jonathan Stern for the defendants,

6    Your Honor.

7              No challenge for cause.

8              THE COURT:  All right.  I'm going to try to get one

9    more just so we have 19.  We've got 18 now, but I'm -- I don't

10   know -- I think we better go through -- so let's get -- we've

11   got two more 31s.  And then I'll get 19.

12             MR. STERN:  Your Honor, if I may, I believe we have

13   16 at current count.  And I believe the plaintiffs concur.

14             THE COURT:  Oh.  You're right.  You're right.  I

15   had -- you're right.  So we've got to keep going anyway.

16             Anyway, 1473.

17             You're right.  That was wishful thinking.

18             THE COURTROOM DEPUTY:  Juror 1473.

19             (REPORTER'S NOTE:  Juror 1473 enters.)

20             THE COURT:  You were asked "Do you have a medical

21   reason or . . . personal hardship that would make it difficult

22   [for you] to serve?"  And you said yes.  What do you have in

23   mind there?

24             THE PROSPECTIVE JUROR:  I'm a lawyer in private

25   practice.  And so being out for two weeks would, you know, be a
```

1    material hardship in terms of my ability to provide service for

2    my clients.

3              THE COURT:  I can't hear you.  I'm sorry.

4              THE PROSPECTIVE JUROR:  I'm a lawyer in private

5    practice.  And so I'm concerned that being out for two weeks

6    would impact my ability to provide services for my clients.

7    For example, I have a filing deadline this Friday.

8              THE COURT:  Okay.  That request is denied then.

9         So let's go through your other questions.

10              On 2, you answered that you may be personally acquainted

11   with -- or a member of your family or friend may be acquainted

12   with the parties or lawyers in the case.  What did you have in

13   mind there?

14              THE PROSPECTIVE JUROR:  Yes.  Fannie Mae is one of my

15   clients.

16              THE COURT:  In what way do you represent them?

17              THE PROSPECTIVE JUROR:  I provide regulatory

18   compliance counsel.

19              THE COURT:  To Fannie Mae?  How long have you been

20   doing that?

21              THE PROSPECTIVE JUROR:  I think it's been two years.

22              THE COURT:  Two years?

23              THE PROSPECTIVE JUROR:  Yes.

24              THE COURT:  Where do you work?

25              THE PROSPECTIVE JUROR:  I work at a private law firm.

1          THE COURT:  What is the name of the firm?

2          THE PROSPECTIVE JUROR:  We don't typically reveal

3     the, you know, relationships with our clients, but if you wish

4     me to do so, I will.

5          THE COURT:  Let me talk to counsel.

6          (Bench conference on the record.)

7          MR. RUDY:  Lee Rudy for plaintiffs.

8        Your Honor, we're going to be making a cause challenge

9     related to the relationship with Fannie Mae and Freddie Mac.

10    So I don't know if you need to ask anything further.

11         MR. STERN:  I'll reserve further commentary,

12    Your Honor, other than to say we wouldn't object to a challenge

13    for cause.

14       She's already -- Your Honor, just for the Court's

15    information, the paperwork we have reflects her employment, as

16    you may have seen.  According to the paperwork, she works at

17    Venable.

18         THE COURT:  And they have Fannie Mae?

19         MR. STERN:  I don't know, Your Honor.  They -- they

20    very well could.  I can check.

21         THE COURT:  No.

22         (Proceedings held in open court.)

23         THE COURT:  Based on that, you can step down.

24       But you can tell Venable your first excuse does not

25    fly.

1          THE PROSPECTIVE JUROR:  Thank you, Your Honor.

2          (REPORTER'S NOTE:  Juror 1473 left.)

3          THE COURT:  Shocking.  A major firm to come and tell

4     me that, they know better.  And their managing partner knows

5     better.  Their former managing partner is now the

6     Attorney General of D.C.  He's going to hear about this.

7     That's the best they can do?

8          THE COURTROOM DEPUTY:  Juror 2098.

9          (REPORTER'S NOTE:  Juror 2098 enters.)

10         THE COURT:  On the questionnaire, there was a

11    question that read, "Do you have a medical reason

12    or . . . personal hardship that would make it difficult [for

13    you] to serve as a juror in this case?"  And you said yes.

14    What did you have in mind there?

15         THE PROSPECTIVE JUROR:  Two things.  The first is I

16    am self-employed.  I'm a freelance journalist, and I did set

17    aside two weeks from, like, not traveling, like last week and

18    this week.  But this extends it, and if I don't get stuff done,

19    I don't get paid.

20         The second thing is, actually, more important to me.  My

21    grown children are coming back midweek next week.  And on

22    Wednesday -- that would be a week from tomorrow -- we were

23    planning to drive to upstate New York for a family vacation for

24    some days.  We only get to do this once a year, basically.  So

25    I -- I -- I would rather not be sitting here instead.

```
1              THE COURT:  All right.  On the back of the jury

2    service form -- perhaps you didn't read the back -- it does

3    say, "Jury terms are two . . . weeks.  The judge will let you

4    know the expected length of trial during the jury selection.

5    NOTE:  A trial which begins during your term may extend beyond

6    the end of the two-week term."  I guess you didn't notice that

7    on the form?

8              THE PROSPECTIVE JUROR:  I knew that was a risk.  I

9    chose not to plead hardship and get out of it entirely.

10             THE COURT:  Okay.  All right.

11          Let me speak to counsel.

12          (Bench conference on the record.)

13             THE COURT:  Counsel object to releasing him?

14             MR. STERN:  Jonathan Stern for the defendants,

15   Your Honor.

16          No objection.

17             MR. RUDY:  Lee Rudy for plaintiffs.

18          No objection.

19             THE COURT:  All right.

20          (Proceedings held in open court.)

21             THE COURT:  You can step down.  You're being excused

22   this time.  This time.

23             THE PROSPECTIVE JUROR:  Do I just leave?

24             THE LAW CLERK:  Follow me.

25             (REPORTER'S NOTE:  Juror 2098 left.)
```

```
1            THE COURT:  At least he was honest.  He said he took
2       the chance.
3            MR. RUDY:  Your Honor, could I just clarify.  What --
4       how many are you trying to get?
5            THE COURT:  Eighteen.
6            MR. RUDY:  Eighteen.  Thank you.
7            THE COURT:  And then each side can have four
8       peremptories, and we'll seat eight -- no, that's not right.
9       Oh, I see.  Sixteen would do it, yeah.
10           MR. RUDY:  Yeah.  You made some reference earlier to
11      alternates.  So that's why I didn't know.
12           THE COURT:  Sixteen would do it.
13           MR. RUDY:  Sixteen would get it done.  That's why I
14      didn't know --
15           THE COURT:  Yeah.  Well, I don't know that I have all
16      16 here the way this is going.  So we could do it with 17.
17      We've got 16 now.  Let's see if we get one more here.
18           548.
19           Yeah, that's what I was thinking.  Sixteen would do it.
20      If I gave each 4 peremptories and we seated 8, 16 would do it.
21      This would give us 17.  I've got to make sure we got everybody
22      here too.  We never found that -- 651 just left, I guess,
23      yesterday afternoon.
24           THE COURTROOM DEPUTY:  Juror 0548.
25           (REPORTER'S NOTE:  Juror 0548 enters.)
```

311

```
 1              THE COURT:  I have just a few follow-up questions.
 2    The first was you said yes to "Have you or someone close to you
 3    ever worked for any government agency or . . . government
 4    contractor?"
 5              THE PROSPECTIVE JUROR:  My husband works for the
 6    federal government.
 7              THE COURT:  What does he do?
 8              THE PROSPECTIVE JUROR:  He's an IT manager for C- --
 9    CMS.  It's actually --
10              THE COURT:  For who?
11              THE PROSPECTIVE JUROR:  Medicare and Medicaid
12    Services.
13              THE COURT:  Medicare and Medicaid.  Okay.  And he
14    works here in D.C.?
15              THE PROSPECTIVE JUROR:  He works in the Baltimore
16    area.
17              THE COURT:  In Baltimore.  Okay.
18              THE PROSPECTIVE JUROR:  In addition to that, I
19    actually have a very close friend who works for Fannie Mae.
20              THE COURT:  For?
21              THE PROSPECTIVE JUROR:  Fannie Mae.
22              THE COURT:  Fannie Mae.  What do they do there?
23              THE PROSPECTIVE JUROR:  She works in real estate
24    transactions.  So I can't give you all the details of her
25    position.
```

```
 1                 THE COURT:  Okay.  How much do you know about their
 2      work?
 3                 THE PROSPECTIVE JUROR:  A decent amount.  I
 4      understand that they, you know, offer loans and assist people
 5      with purchasing -- first-time home buyers with purchasing homes
 6      and that sort of thing.
 7                 THE COURT:  Okay.  Have any impression about
 8      Fannie Mae?
 9                 THE PROSPECTIVE JUROR:  No.
10                 THE COURT:  Or Freddie Mac?  One of them work for
11      Freddie Mac?
12                 THE PROSPECTIVE JUROR:  (Shakes head.)
13                 THE COURT:  Just Fannie Mae?
14                 THE PROSPECTIVE JUROR:  She just works for
15      Fannie Mae.
16                 THE COURT:  Okay.  What does she do?  Do you know?
17                 THE PROSPECTIVE JUROR:  I used to.  But now she
18      recently was transferred to a new position, and so I have not
19      become very familiar with what her new position is.
20                 THE COURT:  What is her location, where she works?
21                 THE PROSPECTIVE JUROR:  She's working from home now.
22      They used to be off of Wisconsin Avenue, but now that's been --
23      that location has changed.  And so I don't actually know where
24      she is.  I think it's down somewhere near Farragut.  Somewhere
25      downtown.
```

```
1                    THE COURT:  All right.

2                    THE PROSPECTIVE JUROR:  But I don't know exactly

3      where.

4                    THE COURT:  But she's working remotely?

5                    THE PROSPECTIVE JUROR:  Yes.

6                    THE COURT:  Okay.  A lot of people are doing that

7      these days.

8                    THE PROSPECTIVE JUROR:  Yes.

9                    THE COURT:  Are you doing that?

10                   THE PROSPECTIVE JUROR:  No.  I go into work every

11     day.

12                   THE COURT:  Okay.  What's your educational

13     background?

14                   THE PROSPECTIVE JUROR:  I went through law school.

15                   THE COURT:  Okay.  What -- where are your degrees

16     from?

17                   THE PROSPECTIVE JUROR:  It's the UDC David A. Clarke

18     School of Law.

19                   THE COURT:  I'm sorry?

20                   THE PROSPECTIVE JUROR:  The UDC David A. Clarke

21     School of Law.

22                   THE COURT:  Okay.  And your undergraduate?

23                   THE PROSPECTIVE JUROR:  University of Virginia.

24                   THE COURT:  Okay.  13, you put a question mark.  "Do

25     you now or have you in the past owned stock in Fannie Mae or
```

1    Freddie Mac?"  You're not sure?

2                 THE PROSPECTIVE JUROR:  I checked.  And, no, I don't.

3                 THE COURT:  Okay.  You don't.  Okay.

4          And then 14 you have -- "Do you now or . . . in the past

5    invested in the financial/stock market?"  Tell me a little bit

6    more about that.

7                 THE PROSPECTIVE JUROR:  My husband and I, we have,

8    you know, retirement and investments through an investment

9    company.

10                 THE COURT:  Okay.  Have any individual stock that you

11    picked?

12                 THE PROSPECTIVE JUROR:  No.

13                 THE COURT:  Or your husband picked?

14                 THE PROSPECTIVE JUROR:  No.

15                 THE COURT:  Just retirement funds?

16                 THE PROSPECTIVE JUROR:  Yes.

17                 THE COURT:  Okay.  And those are through your

18    employment?

19                 THE PROSPECTIVE JUROR:  No.  That's through us

20    privately.  Through a private investment company.

21                 THE COURT:  And you had somebody advising you on

22    that?

23                 THE PROSPECTIVE JUROR:  Yes.

24                 THE COURT:  Okay.  So you didn't make any individual

25    stock decisions?

```
 1              THE PROSPECTIVE JUROR:  No, we're not.

 2              THE COURT:  Okay.  And in those investment decisions

 3     you made, those were for -- what? -- mutual funds or retirement

 4     funds or what?

 5              THE PROSPECTIVE JUROR:  A combination of --

 6              THE COURT:  401(k)s?

 7              THE PROSPECTIVE JUROR:  A combination of mutual and

 8     401(k), bonds, CDs.  They're -- they come in different

 9     packages, different types of --

10              THE COURT:  Right.  Okay.  And who -- what kind of

11     outfit was advising you about that?

12              THE PROSPECTIVE JUROR:  Ameriprise.

13              THE COURT:  What?

14              THE PROSPECTIVE JUROR:  Ameriprise.

15              THE COURT:  Okay.  Do you ever look at whether

16     dividends were being paid when you're making those kinds of

17     decisions?

18              THE PROSPECTIVE JUROR:  Yes.

19              THE COURT:  What do you think about the payment of

20     dividends?

21              THE PROSPECTIVE JUROR:  I mean, as a private

22     consumer, obviously, I'm looking for the best dividends that we

23     can get in terms of our investments.  I'm looking at what the

24     long term would be.  You know, you're looking at the

25     three-year, five-year, you know, ten-year return.  Obviously,
```

 1    understanding our market, that there's going to be ebbs and

 2    flows.  And so we want to look at what the long-term benefit

 3    would be.

 4              THE COURT:  Right.  Have you ever traded in

 5    cryptocurrency or wanted to trade in cryptocurrency?

 6              THE PROSPECTIVE JUROR:  No, sir.

 7              THE COURT:  Okay.  Do you believe investing in the

 8    stock market is like gambling?

 9              THE PROSPECTIVE JUROR:  No.

10              THE COURT:  Okay.  Are you familiar with the term

11    government-sponsored entity?

12              THE PROSPECTIVE JUROR:  Yes.

13              THE COURT:  How are you familiar with that?

14              THE PROSPECTIVE JUROR:  I think just in my experience

15    reading, working as an attorney, I've just had opportunity to

16    come across that term.

17              THE COURT:  Okay.  Where do you work?

18              THE PROSPECTIVE JUROR:  I work for a nonprofit.

19              THE COURT:  What is it?

20              THE PROSPECTIVE JUROR:  It's a church.  They have a

21    legal department, and I work there to assist with compliance,

22    employee issues, and just policy, that type of thing.

23              THE COURT:  Okay.  And you were asked if you have any

24    experience with or familiar with conservatorship, and you said

25    yes.  Tell me a little more about that.

1          THE PROSPECTIVE JUROR:  I've worked with people who

2     wanted to establish conservatorship for loved ones in that

3     situation.  They had, you know, large financial assets or

4     property or private assets.  And the person may be

5     incapacitated; so they wanted to make sure that that was

6     properly taken care of.

7          THE COURT:  Okay.  And then you're asked "Have you or

8     someone close to you had . . . experience in . . . banking,

9     finance, economics, securities, underwriting . . . real

10     estate?"  And you said yes.

11          THE PROSPECTIVE JUROR:  Yes.  That goes back to my

12     friend who works at Fannie Mae, and also my husband has a

13     finance degree.  Actually, a lot of my friends have finance

14     degrees.

15          THE COURT:  I'm sorry?

16          THE PROSPECTIVE JUROR:  A lot of my friends have

17     finance degrees.

18          THE COURT:  Okay.  Tell me a little bit more about

19     those.

20          THE PROSPECTIVE JUROR:  I don't know.  I mean, I'm

21     not quite sure how to answer the question.  I mean, I -- I have

22     a pretty small set of friends.  We all went to college

23     together, and, you know, some majored in econ.  Some majored --

24     went to the business school.  My husband and several of my

25     close friends all were in the business school so certainly

```
1     understand finance.  I myself have taken several economics

2     classes.  So I do understand general principles of finance and

3     economics.

4              THE COURT:  What's your husband do?

5              THE PROSPECTIVE JUROR:  My husband's an IT manager.

6     He has a double major.  He was finance and IT.

7              THE COURT:  Okay.  And what did he do in finance,

8     before IT?

9              THE PROSPECTIVE JUROR:  He actually stayed on the IT

10    side.  He decided he did not want to go into the finance side.

11    He thought the New York Stock Exchange was going to be a little

12    bit too stressful for him.

13             THE COURT:  All right.  Okay.  And you own your own

14    home?

15             THE PROSPECTIVE JUROR:  Yes.

16             THE COURT:  Do you have a mortgage?

17             THE PROSPECTIVE JUROR:  Yeah.

18             THE COURT:  Who's it with?

19             THE PROSPECTIVE JUROR:  Wells Fargo.

20             THE COURT:  Okay.  And you've been on a jury before?

21             THE PROSPECTIVE JUROR:  Yes.

22             THE COURT:  How long ago was that?

23             THE PROSPECTIVE JUROR:  Long time ago.

24             THE COURT:  Okay.

25             THE PROSPECTIVE JUROR:  At least --
```

```
 1                    THE COURT:  This court or across the street?

 2                    THE PROSPECTIVE JUROR:  Across the street.

 3                    THE COURT:  Okay.  Do you remember what kind of case

 4      it was?

 5                    THE PROSPECTIVE JUROR:  It was a criminal case.

 6                    THE COURT:  How long did that go?

 7                    THE PROSPECTIVE JUROR:  Maybe a week, little more

 8      than a week.

 9                    THE COURT:  Okay.  And the jury reached a verdict?

10                    THE PROSPECTIVE JUROR:  Yes.

11                    THE COURT:  Were you the foreman?

12                    THE PROSPECTIVE JUROR:  Yes.

13                    THE COURT:  You were?

14                    THE PROSPECTIVE JUROR:  Yeah.

15                    THE COURT:  Anything about that experience have any

16      effect on your ability to be a fair and impartial juror here?

17                    THE PROSPECTIVE JUROR:  No.

18                    THE COURT:  Okay.  And you're -- you belong to some

19      social, professional organizations.  What do you belong to?

20                    THE PROSPECTIVE JUROR:  I'm a member of the D.C. Bar.

21                    THE COURT:  I'm sorry?

22                    THE PROSPECTIVE JUROR:  I'm a member of the D.C. Bar.

23                    THE COURT:  Okay.  Do you hold a leadership position

24      there?

25                    THE PROSPECTIVE JUROR:  No.
```

```
 1                THE COURT:  Okay.  All right.  Can I see if counsel

 2       have other questions.

 3                    (Bench conference on the record.)

 4                MR. RUDY:  Your Honor, Lee Rudy for the plaintiffs.

 5                I just have one follow-up question.  She mentioned her

 6       friend who works at Fannie Mae.  If you could just ask her if

 7       she would be able to be a fair and impartial juror in a case

 8       involving her close friend's company.

 9                MR. STERN:  Your Honor, I don't have any objection

10       to that question.  But perhaps as a preface to that one,

11       we would ask that the Court make some inquiry into whether

12       she's had conversations with her friend either about

13       Fannie Mae as an employer or about this case -- and/or about

14       this case.

15                THE COURT:  Okay.

16                    (Proceedings held in open court.)

17                THE COURT:  As to your friend that works for

18       Fannie Mae, have you -- I take it you haven't talked to your

19       friend about this case?

20                THE PROSPECTIVE JUROR:  No.

21                THE COURT:  Have you talked to her about Fannie Mae

22       as an employer?

23                THE PROSPECTIVE JUROR:  Aside from the general, hey,

24       how's work going, but no.

25                THE COURT:  Okay.  Would you be comfortable
```

1    sitting as a juror in this trial if Fannie Mae is a party?

2    Would you have any problem sitting as a fair and impartial

3    juror here?

4              THE PROSPECTIVE JUROR:  No.

5              THE COURT:  You can decide this case just on the

6    evidence you heard here at this trial?

7              THE PROSPECTIVE JUROR:  Yes.  Yes.

8              THE COURT:  Any reason you couldn't be fair and

9    impartial?

10             THE PROSPECTIVE JUROR:  Not that I -- not to my

11   knowledge.

12             THE COURT:  Thank you very much.

13             (REPORTER'S NOTE:  Juror 0548 left.)

14             THE COURT:  Any challenge for cause?

15             MR. RUDY:  Lee Rudy for plaintiffs.

16        No challenge for cause.

17             MR. STERN:  Jonathan Stern for the defendants,

18   Your Honor.

19        No challenge for cause.

20             THE COURT:  All right.  Let me speak to my clerk for

21   a moment.

22             (REPORTER'S NOTE:  A sotto voce conference was held

23   between the Court and the courtroom deputy.)

24             THE COURT:  All right.  I'll go through these numbers

25   with you.  I'm going to release the remaining pool.

1    And we have 17 in the pool.  All 17 are here.  I'm going

2    to have them come back at 2 o'clock, and you can exercise your

3    peremptories at 2 o'clock with them in the courtroom so you can

4    see them.

5        All right.  So I'll give you the numbers I have in the

6    pool to make sure we match.

7        No. 1 would be 1578.  No. 2 would be 1021.  No. 3 would

8    be 1203.  No. 4 would be 1681.  No. 5 would be 1146.

9        MR. STERN:  Your Honor, I have -- sorry, Your Honor.

10   Jonathan Stern for the defendants.

11       I have 598.

12       THE COURT:  I have 598.  It's -- yeah, 598 I have.

13   Okay.  I'm sorry.  I skipped over 598.

14       598.  And then No. 1146.

15       And then 842.  484.  1901.  1721.  458.  867.  806.

16   1156.  223 and 548.

17       MR. STERN:  I'm sorry, Your Honor.

18       THE COURT:  Did I miss somebody else?

19       MR. STERN:  Jonathan Stern for the defendants.

20   Your Honor, after 1156, we have 0857.

21       THE COURT:  857, yes, I should have.  Yes.

22       So did that get everybody?

23       MR. STERN:  I'm sorry, Your Honor.  Jonathan Stern

24   for the defendants, Your Honor.

25       We have 0857 as No. 15, which would make 0223, 16, if

1    the Court wants to --

2              THE COURT:  Right.  Right.  And then 058 would be 17.

3              MR. STERN:  THE PROSPECTIVE JUROR:  0548, Your Honor,

4    would be 17.

5              THE COURT:  0548, yeah, would be 17.  Yep.

6         So if somebody doesn't show at 2 o'clock, we -- we'll

7    have one extra at the end.

8         So then we will seat -- after you exercise four

9    peremptories each, we'll seat the first eight.  And if somebody

10   doesn't show, we're just going -- after you do your

11   peremptories, we're going to seat the first eight.  If anybody

12   doesn't show, that -- that will just be -- you know, we'll seat

13   the first eight that have not been struck, working from the top

14   of the list.

15        So 17 could be seated if somebody doesn't show, is what

16   I mean.

17        Okay.  Any questions?

18             MR. RUDY:  I think plaintiffs understand what we're

19   going to do.  So we're going to come at 2 o'clock to

20   exercise the --

21             THE COURT:  At 2:00 and finish the jury selection.

22   And then, I guess, the question is what y'all want to do

23   about -- you still want to present some argument on those

24   things before you do the openings?  I think it could be short,

25   but we can give the jury a break.

1          I have to read preliminary instructions to them, which

2     takes a little while.  I guess y'all could decide whether you

3     want to try to start openings today or do it tomorrow morning.

4     Y'all can discuss among yourselves how you want to spend the

5     afternoon.

6                MR. STERN:  Your Honor, with respect to timing after

7     the --

8                THE COURT:  Because I don't know how long you're

9     going to take on your peremptories either.

10                MR. STERN:  Right.  Why don't I confer -- with --

11     with the Court's permission, I'll confer with Mr. Hume and

12     whomever else, and we'll report back at 2 o'clock.  Would that

13     be acceptable?

14                THE COURT:  That's fine.  You don't have to decide

15     right now.  If you y'all want to start your openings tomorrow

16     morning, that's fine.  If you want to start -- but, remember,

17     I've got the preliminary instructions I have to read to the

18     jury after I swear them.  It takes a while.  So you won't get

19     your -- even if I hear those two motions, it will take a little

20     time.  And then the preliminary takes -- it seems to me it's

21     20 or more minutes, so.

22                MR. STERN:  Right, Your Honor.  It will come as no

23     surprise to anyone that I'd prefer not to be the one keeping

24     them sitting in the box after 5 o'clock.  So I'll tussle with

25     Mr. Hume and we'll report back.

```
 1            THE COURT:  And you prefer not to have the
 2    plaintiffs' opening and you don't get any opening today.  So --
 3            MR. STERN:  Yes, Your Honor.
 4            THE COURT:  -- I know how that works.  I've been
 5    there.
 6            MR. STERN:  Thank you, Your Honor.
 7            THE COURT:  I'll see y'all at 2:00.
 8        I'm sorry this all took so long.  I did the best I
 9    could.
10            (Recess taken.)
11            (REPORTER'S NOTE:  The p.m. portion of the trial was
12    reported by Lisa Edwards, who prepared said transcript.)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1          CERTIFICATE OF STENOGRAPHIC OFFICIAL COURT REPORTER

 2

 3          I, Nancy J. Meyer, Registered Diplomate Reporter,

 4    Certified Realtime Reporter, do hereby certify that the above

 5    and foregoing constitutes a true and accurate transcript of my

 6    stenograph notes and is a full, true, and complete transcript

 7    of the proceedings to the best of my ability.

 8

 9                    Dated this 25th day of July, 2023.

10

11                    /s/ Nancy J. Meyer
                      Nancy J. Meyer
12                    Official Court Reporter
                      Registered Diplomate Reporter
13                    Certified Realtime Reporter
                      333 Constitution Avenue Northwest
14                    Washington, D.C. 20001

15

16

17

18

19

20

21

22

23

24

25
```

## $

**$500** [2] - 54:5, 55:7
**$90** [1] - 52:19
**$900,000** [1] - 52:18

## '

**'70s** [1] - 54:13
**'90s** [1] - 64:6

## 0

**0223** [4] - 60:16, 60:17, 67:1, 84:25
**0356** [3] - 23:4, 23:5, 24:17
**0548** [5] - 72:24, 72:25, 83:13, 85:3, 85:5
**0555** [3] - 12:20, 12:21, 14:9
**0576** [3] - 25:7, 25:8, 27:1
**058** [1] - 85:2
**0679** [3] - 41:12, 41:13, 55:21
**0717** [3] - 57:1, 57:2, 57:23
**0857** [5] - 14:11, 14:12, 22:21, 84:20, 84:25

## 1

**1** [1] - 84:7
**1021** [1] - 84:7
**1146** [2] - 84:8, 84:14
**1156** [6] - 3:10, 3:11, 3:12, 12:9, 84:16, 84:20
**1203** [1] - 84:8
**13** [1] - 75:24
**13-1053** [1] - 3:2
**13-1288** [1] - 3:3
**1303** [3] - 28:18, 28:19, 40:24
**14** [2] - 32:4, 76:4
**1473** [4] - 67:16, 67:18, 67:19, 70:2
**15** [2] - 58:24, 84:25
**1578** [1] - 84:7
**16** [6] - 16:5, 67:13, 72:16, 72:17, 72:20, 84:25
**1681** [1] - 84:8
**17** [8] - 72:16, 72:21, 84:1, 85:2, 85:4, 85:5, 85:15
**1721** [1] - 84:15
**1764** [4] - 58:1, 58:2,

58:3, 60:15
**18** [1] - 67:9
**19** [2] - 67:9, 67:11
**1901** [1] - 84:15
**1992** [1] - 59:2
**1997** [1] - 64:24

## 2

**2** [8] - 23:7, 68:10, 84:2, 84:3, 84:7, 85:6, 85:19, 86:12
**2,000-some** [1] - 53:17
**20** [3] - 23:12, 36:3, 86:21
**2008** [13] - 7:25, 8:5, 23:14, 23:17, 34:3, 34:19, 44:13, 44:18, 44:19, 45:8, 49:11, 49:20, 59:2
**2010** [1] - 44:10
**2013** [1] - 8:18
**2015** [1] - 46:8
**2018** [1] - 6:16
**2019** [1] - 20:22
**2020s** [1] - 54:14
**2098** [3] - 70:8, 70:9, 71:25
**2199** [3] - 27:2, 27:3, 28:17
**22** [1] - 53:9
**223** [1] - 84:16
**2:00** [2] - 85:21, 87:7
**2:30** [1] - 21:23

## 3

**3** [1] - 84:7
**30** [1] - 42:9
**311** [3] - 39:14, 39:16, 39:17
**31s** [3] - 24:19, 24:21, 67:11
**356** [1] - 23:3

## 4

**4** [2] - 72:20, 84:8
**400** [1] - 51:11
**401(k** [4] - 4:21, 32:10, 32:24, 77:8
**401(k)s** [1] - 77:6
**458** [1] - 84:15
**484** [1] - 84:15

## 5

**5** [2] - 84:8, 86:24
**50** [1] - 51:25
**500** [1] - 7:21
**548** [2] - 72:18, 84:16

**555** [1] - 12:19
**576** [1] - 24:18
**598** [5] - 84:11, 84:12, 84:13, 84:14

## 6

**60** [1] - 51:25
**651** [3] - 3:8, 72:22
**679** [1] - 41:11

## 7

**7.25** [1] - 53:10
**717** [1] - 56:22

## 8

**8** [1] - 72:20
**806** [1] - 84:15
**842** [1] - 84:15
**857** [3] - 14:10, 22:22, 84:21
**867** [1] - 84:15

## A

**ability** [9] - 4:8, 18:9, 38:21, 46:19, 49:21, 59:12, 68:1, 68:6, 81:16
**able** [2] - 35:6, 82:7
**academic** [1] - 63:22
**acceptable** [1] - 86:13
**accepted** [1] - 34:18
**access** [2] - 51:22, 51:24
**accommodate** [4] - 22:6, 25:16, 25:23, 26:17
**accomplished** [1] - 30:24
**according** [3] - 39:2, 39:4, 69:16
**account** [5] - 5:7, 15:16, 43:1, 43:9
**accused** [1] - 18:1
**acquainted** [4] - 23:7, 23:9, 68:10, 68:11
**acronym** [1] - 65:7
**Act** [1] - 6:8
**acting** [1] - 41:8
**action** [2] - 35:5, 48:8
**Action** [2] - 3:2, 3:5
**actions** [1] - 48:11
**actor** [1] - 54:1
**add** [1] - 4:4
**addition** [1] - 73:18
**advising** [2] - 76:21, 77:11
**advisor** [2] - 15:8,

62:18
**advocacy** [1] - 52:13
**advocates** [2] - 49:3, 50:18
**advocating** [2] - 50:7, 52:21
**affect** [5] - 9:25, 13:9, 31:6, 38:21, 49:21
**affiliation** [2] - 50:12, 51:2
**afford** [2] - 53:15, 53:16
**afloat** [2] - 8:14, 34:19
**afternoon** [2] - 72:23, 86:5
**agenc[ies** [1] - 30:10
**agencies** [1] - 38:15
**agency** [17] - 3:15, 4:18, 9:7, 10:4, 29:4, 29:16, 38:12, 41:17, 41:22, 42:3, 60:20, 60:23, 66:5, 66:9, 66:21, 66:22, 73:3
**Agency** [1] - 3:18
**ago** [9] - 16:5, 20:7, 36:1, 36:3, 48:1, 57:8, 57:11, 80:22, 80:23
**agree** [2] - 28:9, 50:16
**Agreement** [1] - 3:4
**Agriculture** [1] - 6:3
**agriculture** [1] - 6:17
**ahead** [2] - 24:13, 28:14
**aide** [1] - 62:3
**Alcohol** [1] - 29:9
**Alexandria** [1] - 65:15
**allow** [3] - 8:14, 32:17, 33:1
**allowed** [1] - 54:15
**alternate** [1] - 13:11
**alternates** [1] - 72:11
**Amazon** [1] - 62:15
**amenable** [2] - 22:7, 22:12
**America** [1] - 42:21
**Americans** [1] - 53:25
**Ameriprise** [2] - 77:12, 77:14
**amount** [3] - 16:3, 44:5, 74:3
**amounts** [1] - 52:10
**analysis** [3] - 6:5, 6:10, 6:11
**analyzing** [1] - 6:21
**animals** [1] - 6:14
**animus** [1] - 38:13
**announced** [1] - 52:17
**answer** [4] - 23:20, 45:11, 49:4, 79:21

**answered** [3] - 3:14, 25:9, 68:10
**answers** [1] - 9:21
**anxiety** [1] - 58:13
**anyway** [3] - 29:24, 67:15, 67:16
**apologize** [2] - 40:9, 50:2
**Appeals** [1] - 56:23
**apply** [2] - 11:8, 56:17
**appreciate** [4] - 19:8, 24:15, 41:5, 47:12
**appropriate** [5] - 49:13, 49:16, 50:4, 50:8, 50:13
**area** [2] - 19:3, 73:16
**areas** [1] - 18:22
**argue** [1] - 41:9
**argument** [1] - 85:23
**arguments** [1] - 17:23
**Army** [2] - 64:5, 64:17
**arts** [3] - 14:16, 61:17, 62:4
**aside** [2] - 70:17, 82:23
**assets** [2] - 79:3, 79:4
**assigned** [1] - 20:13
**assist** [2] - 74:4, 78:21
**assistance** [3] - 6:22, 7:6, 8:15
**associated** [1] - 9:2
**AT&T** [1] - 42:8
**attention** [1] - 22:2
**Attorney** [1] - 70:6
**attorney** [1] - 78:15
**autistic** [1] - 30:20
**Avenue** [1] - 74:22
**average** [1] - 55:1
**aware** [1] - 38:6

## B

**bachelor** [1] - 14:16
**bachelor's** [4] - 40:16, 46:23, 61:6, 61:8
**backed** [1] - 44:23
**background** [8] - 5:15, 11:13, 14:15, 39:1, 40:15, 46:22, 61:5, 75:13
**backup** [1] - 35:6
**bad** [6] - 5:24, 5:25, 11:16, 16:7, 36:13, 64:15
**bail** [1] - 49:12
**bailing** [2] - 34:25, 35:9
**bailout** [1] - 34:18
**Baltimore** [2] - 73:15, 73:17

**banking** [5] - 9:10, 16:19, 17:8, 63:18, 79:8
**banks** [3] - 8:14, 16:23, 17:5
**bar** [1] - 48:16
**Bar** [2] - 81:20, 81:22
**Barclays** [1] - 16:23
**bars** [1] - 48:17
**basal** [1] - 22:4
**based** [4] - 4:11, 29:1, 32:11, 69:23
**basis** [1] - 10:17
**bathroom** [1] - 25:20
**beats** [1] - 7:20
**become** [1] - 74:19
**beforehand** [2] - 11:25, 20:23
**beginning** [2] - 13:18, 13:20
**begins** [1] - 71:5
**behind** [1] - 58:11
**beliefs** [2] - 30:9, 31:12
**believes** [1] - 38:20
**belong** [5] - 48:15, 48:17, 64:25, 81:18, 81:19
**Bench** [15] - 9:18, 13:22, 18:20, 24:3, 26:9, 27:20, 37:25, 48:22, 55:9, 57:15, 60:6, 65:20, 69:6, 71:12, 82:3
**benefit** [2] - 6:11, 78:2
**benefit-cost** [1] - 6:11
**Berkley** [3] - 59:15, 59:16, 59:17
**best** [6] - 31:13, 31:18, 63:16, 70:7, 77:22, 87:8
**better** [8] - 21:12, 58:20, 58:21, 58:22, 64:6, 67:10, 70:4, 70:5
**between** [7] - 41:6, 54:7, 54:12, 54:24, 66:9, 83:23
**beyond** [1] - 71:5
**bias** [2] - 10:1, 10:5
**big** [8] - 5:4, 7:21, 8:13, 16:22, 18:24, 20:17, 20:20, 58:24
**bill** [1] - 66:20
**billionaires** [1] - 53:17
**biotech** [3] - 15:6, 16:6, 16:9
**bit** [18] - 4:2, 4:4, 4:19, 8:1, 9:23, 10:12, 15:2, 26:5, 27:7,

40:14, 42:20, 42:25, 43:15, 53:4, 63:13, 76:5, 79:18, 80:12
**blanking** [1] - 36:18
**bonds** [1] - 77:8
**book** [2] - 8:4, 8:19
**born** [1] - 54:14
**bought** [1] - 44:7
**box** [1] - 86:24
**boxes** [1] - 24:5
**Bragg** [2] - 64:10, 64:11
**break** [3] - 25:17, 25:22, 85:25
**breaks** [4] - 25:17, 53:18, 54:10
**breathing** [1] - 58:10
**briefly** [2] - 48:3, 56:3
**bring** [1] - 22:2
**bringing** [1] - 54:10
**Britney** [1] - 71:5
**brother** [3] - 16:21, 44:7, 55:3
**brother-in-law** [1] - 16:21
**Bureau** [1] - 6:4
**buried** [1] - 24:23
**business** [6] - 28:4, 38:6, 52:4, 61:14, 79:24, 79:25
**businesses** [1] - 53:20
**butchering** [1] - 50:2
**button** [1] - 42:1
**buy** [4] - 35:21, 43:5, 54:20, 54:21
**buyers** [1] - 74:5

## C

**canceled** [1] - 52:20
**canceling** [1] - 52:18
**cancer** [4] - 21:18, 21:22, 21:25, 60:1
**cannot** [2] - 52:7, 52:8
**capitalistic** [1] - 10:18
**care** [3] - 55:3, 57:12, 79:6
**career** [2] - 7:22, 45:3
**cars** [1] - 54:21
**Case** [1] - 3:3
**case** [36] - 9:3, 10:4, 11:4, 11:8, 11:14, 17:22, 17:24, 20:17, 20:19, 20:20, 20:24, 21:1, 27:6, 38:11, 38:12, 38:16, 46:8, 46:10, 46:11, 48:2, 48:5, 49:10, 49:22, 50:19, 56:15, 56:19,

58:6, 68:12, 70:13, 81:3, 81:5, 82:7, 82:13, 82:14, 82:19, 83:5
**cases** [2] - 19:1
**cash** [1] - 59:23
**cashed** [1] - 59:22
**caused** [1] - 8:13
**causes** [3] - 7:25, 34:3, 44:13
**CDOs** [1] - 44:22
**CDs** [1] - 77:8
**cell** [1] - 22:4
**CEOs** [1] - 53:21
**certain** [2] - 30:23, 49:16
**certainly** [2] - 52:22, 79:25
**chair** [1] - 59:22
**challenge** [20] - 12:11, 12:14, 12:18, 22:22, 22:24, 23:2, 40:25, 41:1, 41:4, 55:12, 55:15, 56:18, 67:2, 67:3, 67:7, 69:8, 69:12, 83:14, 83:16, 83:19
**challenges** [1] - 58:10
**chance** [4] - 48:11, 48:13, 56:20, 72:2
**change** [2] - 52:14, 65:9
**changed** [3] - 44:19, 52:12, 74:23
**changes** [1] - 52:11
**chased** [1] - 18:1
**check** [4] - 32:3, 35:24, 37:13, 69:20
**checked** [3] - 24:5, 35:19, 76:2
**checking** [1] - 20:1
**chemical** [1] - 6:12
**chemicals** [2] - 6:8, 6:9
**chickens** [1] - 6:20
**chief** [1] - 47:7
**child** [1] - 38:10
**children** [2] - 30:16, 70:21
**Children's** [1] - 7:6
**choice** [1] - 32:21
**choices** [1] - 35:1
**choose** [3] - 32:17, 33:2, 35:5
**chose** [1] - 71:9
**chosen** [1] - 5:8
**church** [1] - 78:20
**circle** [1] - 53:22
**cite** [1] - 20:1
**cite-checking** [1] -

20:1
**civil** [3] - 14:24, 20:6, 47:24
**Civil** [1] - 3:2
**claims** [1] - 21:6
**clarification** [1] - 19:20
**clarify** [3] - 19:7, 38:5, 72:3
**Clarke** [2] - 75:17, 75:20
**class** [6] - 47:8, 48:8, 48:11, 54:13, 54:15, 64:21
**Class** [1] - 3:4
**classes** [1] - 80:2
**classic** [1] - 54:2
**Clean** [2] - 51:21, 52:5
**clear** [1] - 50:11
**clerk** [2] - 18:24, 83:20
**CLERK** [1] - 71:24
**client** [1] - 27:17
**clients** [4] - 68:2, 68:6, 68:15, 69:3
**close** [18] - 3:14, 9:9, 16:18, 23:8, 28:21, 36:23, 41:17, 42:6, 44:4, 49:8, 60:19, 63:18, 63:23, 73:2, 73:19, 79:8, 79:25, 82:8
**cloudy** [1] - 58:20
**CMS** [1] - 73:9
**collateral** [1] - 45:1
**colleagues** [1] - 9:14
**collection** [3] - 47:17, 51:12, 51:14
**collection-focused** [1] - 51:14
**college** [2] - 54:20, 79:22
**College** [1] - 5:19, 5:20, 40:19
**Colorado** [3] - 20:7, 20:22, 20:25
**Columbia** [1] - 47:5
**combination** [2] - 77:5, 77:7
**comfortable** [1] - 82:25
**coming** [4] - 12:8, 26:24, 45:8, 70:21
**comment** [2] - 9:22, 19:3
**commentary** [1] - 69:11
**comments** [3] - 41:5, 49:23, 49:25
**Commission** [1] - 61:1

20:1
**commitment** [1] - 58:12
**community** [1] - 59:12
**companies** [4] - 3:21, 5:9, 35:1, 38:7
**company** [7] - 21:12, 36:18, 36:19, 37:4, 76:9, 76:20, 82:8
**compete** [1] - 10:19
**competing** [1] - 10:22
**competition** [5] - 10:10, 10:13, 10:15, 10:16, 10:20
**complete** [1] - 27:16
**compliance** [3] - 16:24, 68:18, 78:21
**complicated** [1] - 11:14
**concept** [3] - 45:16, 45:18, 45:19
**concerned** [1] - 68:5
**concretely** [2] - 45:4, 45:7
**concur** [1] - 67:13
**confer** [2] - 86:10, 86:11
**conference** [16] - 9:18, 13:22, 18:20, 24:3, 26:9, 27:20, 37:25, 48:22, 55:9, 57:15, 60:6, 65:20, 69:6, 71:12, 82:3, 83:22
**conflict** [3] - 21:16, 22:2, 22:5
**confused** [1] - 38:3
**Congress** [4] - 6:8, 53:19, 66:5, 66:14
**congressional** [4] - 62:2, 62:3, 66:9, 66:10
**consequences** [3] - 45:1, 45:2, 51:14
**conservator** [1] - 45:17
**conservatorship** [3] - 45:14, 78:24, 79:2
**consider** [2] - 35:3, 63:1
**consideration** [2] - 63:2, 63:3
**considerations** [1] - 26:21
**constantly** [2] - 13:3, 13:6
**consult** [1] - 27:19
**consultant** [2] - 27:12, 28:4
**Consumer** [1] - 60:25
**consumer** [3] - 47:16,

62:23, 77:22
**continue** [2] - 3:6,
53:11
**contracted** [1] - 28:25
**contractor** [9] - 3:16,
28:22, 29:13, 29:14,
29:15, 37:2, 41:18,
60:20, 73:4
**contracts** [1] - 27:14
**control** [1] - 42:20
**Control** [1] - 6:8
**conversation** [1] -
19:18
**conversations** [1] -
82:12
**cooperating** [1] -
42:18
**corporate** [1] - 55:2
**corporation** [2] - 42:7,
48:12
**corporations** [18] -
9:22, 9:25, 10:11,
31:22, 32:1, 34:18,
42:12, 42:17, 42:20,
49:7, 49:11, 49:12,
49:20, 53:1, 53:12,
53:21, 54:16, 54:24
**correct** [3] - 20:15,
50:3, 66:15
**cost** [2] - 6:11, 6:13
**costs** [3] - 53:7, 53:10
**Council** [3] - 41:24,
42:2, 51:18
**council** [3] - 41:24,
42:2, 52:14
**counsel** [18] - 9:16,
13:21, 16:22, 17:4,
17:7, 18:18, 26:8,
27:19, 37:24, 48:20,
57:14, 60:5, 65:19,
68:18, 69:5, 71:11,
71:13, 82:1
**count** [1] - 67:13
**counted** [1] - 29:19
**country** [2] - 4:5, 55:6
**couple** [6] - 9:21,
13:11, 20:7, 20:22,
23:24, 41:24
**course** [5] - 8:3, 11:1,
35:5, 35:7, 56:16
**COURT** [418] - 3:6,
3:10, 3:13, 3:19, 4:2,
4:7, 4:12, 4:16, 4:19,
4:23, 5:1, 5:5, 5:10,
5:14, 5:18, 5:21,
5:24, 6:5, 6:15, 6:17,
6:19, 6:23, 6:25, 7:2,
7:4, 7:8, 7:11, 7:16,
7:24, 8:16, 8:19,
8:21, 8:23, 9:8, 9:15,

10:10, 10:15, 10:25,
11:7, 11:14, 11:19,
11:23, 12:1, 12:3,
12:5, 12:8, 12:12,
12:15, 12:19, 12:22,
13:2, 13:4, 13:9,
13:11, 13:19, 13:21,
14:6, 14:8, 14:10,
14:13, 14:18, 14:20,
14:25, 15:7, 15:10,
15:15, 15:20, 15:24,
16:2, 16:8, 16:13,
16:17, 17:2, 17:5,
17:8, 17:11, 17:14,
17:17, 17:19, 17:24,
18:2, 18:4, 18:6,
18:8, 18:12, 18:15,
18:18, 19:21, 19:23,
20:2, 20:5, 20:9,
20:11, 20:13, 20:17,
20:20, 20:24, 21:2,
21:4, 21:7, 21:15,
21:20, 21:24, 22:3,
22:5, 22:11, 22:15,
22:19, 22:22, 23:3,
23:6, 23:15, 23:22,
24:1, 24:11, 24:13,
24:18, 25:9, 25:16,
25:21, 26:3, 26:8,
26:23, 27:4, 27:10,
27:19, 27:25, 28:12,
28:14, 28:20, 29:3,
29:6, 29:9, 29:11,
29:14, 29:17, 29:20,
29:23, 29:25, 30:8,
31:6, 31:11, 31:20,
32:4, 32:8, 32:13,
32:15, 32:19, 32:22,
32:24, 33:4, 33:7,
33:11, 33:16, 33:20,
33:23, 34:2, 34:8,
34:11, 34:17, 35:11,
35:16, 35:23, 36:1,
36:4, 36:6, 36:8,
36:11, 36:13, 36:20,
36:22, 37:8, 37:14,
37:17, 37:21, 37:24,
39:11, 39:15, 39:17,
39:21, 40:1, 40:3,
40:6, 40:10, 40:12,
40:14, 40:18, 40:20,
40:22, 40:25, 41:9,
41:14, 41:16, 41:22,
41:25, 42:5, 42:10,
42:23, 43:3, 43:6,
43:10, 43:17, 43:20,
43:23, 44:4, 44:12,
45:12, 45:19, 45:21,
45:24, 46:2, 46:4,
46:6, 46:10, 46:12,
46:14, 46:16, 46:18,

46:21, 47:1, 47:3,
47:6, 47:10, 47:14,
47:18, 47:21, 47:23,
48:7, 48:14, 48:17,
48:20, 51:4, 51:6,
52:25, 55:10, 55:14,
55:18, 55:20, 55:25,
56:2, 56:7, 56:19,
57:3, 57:9, 57:14,
57:21, 58:1, 58:4,
58:14, 58:17, 58:25,
59:4, 59:6, 59:14,
60:3, 60:5, 60:11,
60:13, 60:18, 60:24,
61:2, 61:4, 61:7,
61:9, 61:11, 61:13,
61:16, 61:18, 61:20,
61:22, 61:25, 62:3,
62:6, 62:9, 62:12,
62:17, 62:20, 62:25,
63:4, 63:7, 63:10,
63:13, 63:17, 63:23,
64:1, 64:4, 64:7,
64:10, 64:13, 64:15,
64:17, 64:19, 64:23,
64:25, 65:3, 65:6,
65:10, 65:13, 65:16,
65:18, 66:3, 66:7,
66:10, 66:13, 66:16,
66:23, 67:2, 67:8,
67:14, 67:20, 68:3,
68:8, 68:16, 68:19,
68:22, 68:24, 69:1,
69:5, 69:18, 69:21,
69:23, 70:3, 70:10,
71:1, 71:10, 71:13,
71:19, 71:21, 72:1,
72:5, 72:7, 72:12,
72:15, 73:1, 73:7,
73:10, 73:13, 73:17,
73:20, 73:22, 74:1,
74:7, 74:10, 74:13,
74:16, 74:20, 75:1,
75:4, 75:6, 75:9,
75:12, 75:15, 75:19,
75:22, 75:24, 76:3,
76:10, 76:13, 76:15,
76:17, 76:21, 76:24,
77:2, 77:6, 77:10,
77:13, 77:15, 77:19,
78:4, 78:7, 78:10,
78:13, 78:17, 78:19,
78:23, 79:7, 79:15,
79:18, 80:4, 80:7,
80:13, 80:16, 80:18,
80:20, 80:22, 80:24,
81:1, 81:3, 81:6,
81:9, 81:11, 81:13,
81:15, 81:18, 81:21,
81:23, 82:1, 82:15,
82:17, 82:21, 82:25,

83:5, 83:8, 83:12,
83:14, 83:20, 83:24,
84:12, 84:18, 84:21,
85:2, 85:5, 85:21,
86:8, 86:14, 87:1,
87:4, 87:7
**court** [19] - 10:9, 14:7,
17:19, 19:22, 20:2,
24:12, 26:22, 28:13,
39:10, 51:5, 52:15,
55:19, 57:20, 60:12,
66:2, 69:22, 71:20,
81:1, 82:16
**Court** [26] - 14:3, 14:4,
17:22, 19:16, 24:10,
26:11, 26:13, 26:17,
26:18, 26:20, 26:21,
27:23, 27:24, 28:11,
30:16, 38:22, 39:7,
50:2, 50:11, 50:23,
50:25, 56:17, 56:23,
82:11, 83:23, 85:1
**Court's** [3] - 39:3,
69:14, 86:11
**COURTROOM** [17] -
3:2, 3:9, 3:11, 12:20,
14:11, 23:4, 25:7,
27:2, 28:18, 41:12,
57:1, 57:24, 58:2,
60:16, 67:18, 70:8,
72:24
**courtroom** [2] - 83:23,
84:3
**courts** [1] - 52:12
**covered** [1] - 23:12
**COVID** [3] - 20:22,
58:9, 58:21
**cozy** [4] - 49:8, 50:22,
53:3
**CPSC** [2] - 61:25, 62:1
**CREF** [1] - 33:1
**criminal** [3] - 17:22,
17:25, 81:5
**crisis** [9] - 7:25, 8:3,
8:5, 23:14, 23:17,
34:3, 44:13, 49:11,
49:19
**cryptocurrency** [11] -
7:12, 15:21, 33:21,
43:21, 63:8, 78:5
**curious** [2] - 18:25,
49:2
**current** [4] - 14:20,
39:8, 39:11, 67:13
**custody** [1] - 30:15
**customer** [1] - 39:5
**CVS** [1] - 62:16

# D

**D.C** [23] - 30:16,
30:19, 38:9, 39:6,
39:13, 39:16, 39:19,
40:2, 41:6, 41:23,
41:24, 42:2, 46:9,
47:1, 47:7, 48:19,
51:11, 51:18, 59:8,
70:6, 73:14, 81:20,
81:22
**dad** [1] - 55:3
**David** [3] - 54:5,
75:17, 75:20
**days** [4] - 46:13,
58:20, 70:24, 75:7
**DC** [2] - 47:15, 51:9
**DCPS** [1] - 30:22
**deadline** [1] - 68:7
**deadlines** [1] - 28:5
**deal** [2] - 13:15, 38:9
**dealing** [5] - 30:18,
31:9, 49:10, 51:13,
51:19
**dealings** [4] - 35:12,
35:17, 36:14, 38:20
**debt** [7] - 47:17,
51:12, 51:14, 52:16,
52:18, 52:19
**December** [1] - 44:18
**decent** [1] - 74:3
**decide** [3] - 83:5, 86:2,
86:14
**decided** [2] - 7:14,
80:10
**deciding** [1] - 33:13
**decision** [3] - 16:7,
33:11, 33:16
**decisions** [12] - 5:1,
5:11, 15:15, 35:8,
42:21, 43:11, 43:18,
44:23, 44:24, 76:25,
77:2, 77:17
**dedicate** [1] - 52:17
**defendant** [4] - 10:3,
11:3, 19:11, 28:8
**defendants** [16] -
9:24, 12:17, 19:10,
22:25, 38:16, 49:24,
56:4, 57:18, 60:9,
65:25, 67:5, 71:14,
83:17, 84:10, 84:19,
84:24
**defense** [2] - 10:8,
41:3
**defer** [10] - 14:3, 14:4,
24:10, 26:11, 26:12,
26:20, 27:23, 27:24,
28:11, 50:23
**definitely** [5] - 31:8,

31:17, 31:18, 34:24, 35:3
**degree** [8] - 5:17, 5:21, 46:23, 46:25, 54:20, 61:6, 61:8, 79:13
**degrees** [3] - 75:15, 79:14, 79:17
**Democratic** [3] - 42:15, 49:15, 51:2
**denied** [1] - 68:8
**Department** [2] - 6:3, 42:3
**department** [2] - 14:23, 78:21
**deputy** [1] - 83:23
**DEPUTY** [17] - 3:2, 3:9, 3:11, 12:20, 14:11, 23:4, 25:7, 27:2, 28:18, 41:12, 57:1, 57:24, 58:2, 60:16, 67:18, 70:8, 72:24
**described** [1] - 49:15
**details** [1] - 73:24
**diabetic** [1] - 25:13
**different** [5] - 32:10, 32:17, 33:2, 77:8, 77:9
**difficult** [10] - 12:24, 25:11, 27:6, 27:13, 30:11, 30:25, 57:5, 58:5, 67:21, 70:12
**difficulty** [2] - 27:17, 56:13
**digits** [1] - 59:24
**dire** [2] - 50:9, 50:14
**directly** [4] - 22:7, 22:12, 29:12, 50:10
**director** [6] - 47:20, 47:22, 49:1, 51:16, 59:7, 59:8
**disagree** [1] - 38:18
**discharge** [1] - 64:20
**discharged** [1] - 64:22
**discuss** [2] - 29:25, 86:4
**dismissed** [1] - 17:23
**disparity** [1] - 54:7
**disposing** [1] - 18:1
**dispute** [1] - 47:24
**disruptive** [2] - 26:15, 26:19
**distinct** [1] - 38:13
**distinction** [1] - 41:6
**distracting** [1] - 26:15
**District** [10] - 30:17, 41:21, 42:2, 42:3, 47:4, 51:20, 51:22, 52:6, 52:9, 52:17

**District's** [1] - 52:18
**dividends** [12] - 15:17, 15:18, 19:5, 21:10, 33:12, 33:17, 33:18, 63:1, 77:16, 77:20, 77:22
**docket** [1] - 14:22
**doctor** [1] - 22:6
**doctors** [2] - 22:7, 22:11
**documentation** [1] - 30:4
**dollars** [1] - 52:6
**dollars'** [1] - 44:10
**donating** [1] - 53:18
**done** [9] - 7:8, 7:14, 20:18, 20:20, 23:13, 45:8, 54:15, 70:18, 72:13
**double** [1] - 80:6
**down** [13] - 12:8, 23:21, 26:24, 34:11, 49:5, 54:10, 55:20, 56:24, 56:25, 59:14, 69:23, 71:21, 74:24
**downtown** [1] - 74:25
**downturn** [1] - 34:19
**drawing** [1] - 49:16
**drive** [1] - 70:23
**driver's** [3] - 51:23, 51:24, 52:1
**dropped** [1] - 16:12
**Drum** [1] - 64:6
**during** [6] - 13:25, 16:25, 34:19, 44:18, 71:4, 71:5
**duty** [1] - 18:3
**dying** [1] - 59:25

**E**

**early** [1] - 9:21
**earn** [2] - 54:3, 54:5
**easy** [1] - 31:3
**ebbs** [1] - 78:1
**econ** [1] - 79:23
**economic** [6] - 4:5, 6:3, 6:5, 6:10, 6:12, 9:10
**economics** [8] - 5:17, 9:11, 16:19, 63:19, 63:21, 79:9, 80:1, 80:3
**economist** [2] - 5:13, 11:15
**economists** [2] - 9:14, 9:15
**economy** [8] - 3:21, 3:25, 9:23, 10:18, 10:24, 31:22, 42:12,

42:16
**editor** [1] - 47:7
**educated** [1] - 63:16
**education** [4] - 5:10, 15:11, 43:10, 62:21
**educational** [7] - 5:15, 14:14, 39:1, 40:15, 46:21, 61:4, 75:12
**Edwards** [1] - 87:12
**effect** [7] - 8:13, 18:9, 18:13, 46:19, 58:14, 58:17, 81:16
**efficient** [1] - 4:1
**eggs** [1] - 53:16
**eight** [6] - 61:3, 61:23, 72:8, 85:9, 85:11, 85:13
**eighteen** [2] - 72:5, 72:6
**either** [6] - 11:18, 32:5, 50:14, 56:12, 82:12, 86:9
**embarrassing** [1] - 25:23
**emergency** [1] - 13:14
**Emery** [2] - 14:23, 20:12
**employ** [1] - 4:4
**employed** [4] - 28:3, 58:11, 60:22, 70:16
**employee** [6] - 10:6, 11:1, 27:9, 27:11, 59:20, 78:22
**employees** [1] - 54:17
**employer** [3] - 32:13, 82:13, 82:22
**employer-type** [1] - 32:13
**employment** [8] - 29:25, 39:1, 39:4, 39:8, 39:11, 43:12, 69:15, 76:18
**enable** [1] - 5:11
**encourage** [1] - 52:14
**end** [4] - 11:8, 26:4, 71:6, 85:7
**English** [1] - 46:24
**enters** [14] - 3:12, 12:21, 14:12, 23:5, 25:8, 27:3, 28:19, 41:13, 57:2, 58:3, 60:17, 67:19, 70:9, 72:25
**entirely** [3] - 38:22, 50:10, 71:9
**entities** [1] - 10:18
**entity** [3] - 8:24, 55:2, 78:11
**Environmental** [1] - 3:18

**EPA** [4] - 5:13, 6:1, 6:6, 6:15
**equalize** [1] - 54:11
**equate** [1] - 52:19
**ERISA** [4] - 20:7, 20:25, 21:3, 21:4
**ESOP** [1] - 59:20
**especially** [1] - 56:11
**essentially** [1] - 34:25
**establish** [1] - 79:2
**estate** [11] - 9:11, 16:4, 16:20, 17:8, 17:9, 17:10, 17:12, 44:6, 63:19, 73:23, 79:10
**Ethics** [2] - 65:5, 65:8
**eventually** [1] - 36:19
**evidence** [2] - 11:25, 83:6
**evolve** [1] - 13:7
**exact** [2] - 29:7, 36:18
**exactly** [4] - 9:5, 19:4, 29:21, 75:2
**example** [4] - 27:15, 53:5, 54:2, 68:7
**examples** [1] - 52:23
**Exchange** [1] - 80:11
**excuse** [9] - 13:12, 13:14, 14:6, 14:8, 24:13, 26:23, 28:14, 60:13, 69:24
**excused** [2] - 57:21, 71:21
**excusing** [4] - 24:9, 26:4, 57:19, 60:8
**exercise** [1] - 84:2, 85:8, 85:20
**expected** [1] - 71:4
**expecting** [1] - 25:5
**experience** [12] - 16:19, 18:8, 18:12, 26:14, 31:16, 45:13, 46:18, 63:18, 78:14, 78:24, 79:8, 81:15
**experienced** [2] - 30:25, 36:23
**experiences** [2] - 30:18, 39:23
**expert** [1] - 34:24
**expiring** [1] - 27:15
**explain** [2] - 10:12, 53:2
**explained** [1] - 11:13
**explore** [2] - 38:22, 39:8
**express** [1] - 38:8
**extend** [1] - 71:5
**extends** [1] - 70:18
**extent** [2] - 32:21, 39:18

**extra** [1] - 85:7

**F**

**fact** [6] - 4:11, 10:2, 24:6, 24:20, 27:13, 34:23
**fact-based** [1] - 4:11
**facts** [1] - 48:4
**failure** [1] - 8:3
**fair** [17] - 4:8, 11:2, 11:4, 11:23, 18:9, 18:13, 18:15, 22:16, 30:11, 38:21, 46:19, 49:21, 56:14, 81:16, 82:7, 83:2, 83:8
**fairly** [1] - 11:10
**familiar** [7] - 8:23, 23:18, 45:13, 74:19, 78:10, 78:13, 78:24
**families** [1] - 54:21
**family** [7] - 16:25, 23:8, 26:15, 28:24, 42:6, 68:11, 70:23
**fan** [3] - 15:18, 19:5, 21:9
**Fannie** [36] - 3:3, 9:3, 23:13, 24:8, 35:13, 35:17, 35:20, 35:22, 36:9, 36:10, 37:14, 38:4, 38:18, 38:20, 40:3, 40:7, 58:24, 59:13, 59:19, 68:14, 68:19, 69:9, 69:18, 73:19, 73:21, 73:22, 74:8, 74:13, 74:15, 75:25, 79:12, 82:6, 82:13, 82:18, 82:21, 83:1
**far** [1] - 39:24
**Fargo** [2] - 16:23, 80:19
**Farragut** [1] - 74:24
**fault** [1] - 25:5
**favor** [1] - 11:25
**favorite** [1] - 47:6
**favorites** [1] - 47:8
**Federal** [1] - 34:18
**federal** [14] - 10:3, 10:6, 38:12, 38:15, 39:21, 39:23, 41:6, 51:11, 53:10, 60:22, 73:6
**feelings** [5] - 30:9, 31:12, 38:14, 49:20, 60:2
**fees** [2] - 51:21, 52:1
**fellow** [1] - 53:25
**felon** [1] - 17:25
**few** [3] - 3:13, 14:13,

23:13, 41:5, 42:2,
48:1, 51:19, 53:13,
60:18, 65:2, 73:1
**FHFA** [2] - 10:4, 11:3
**field** [3] - 48:13, 54:9,
59:3
**fields** [1] - 9:10
**figured** [4] - 32:3,
35:24, 37:10, 37:12
**filed** [1] - 52:11
**filing** [2] - 20:1, 68:7
**fill** [1] - 12:6
**final** [1] - 16:11
**finance** [12] - 9:10,
16:19, 63:18, 79:9,
79:13, 79:17, 80:1,
80:2, 80:6, 80:7,
80:10
**financial** [17] - 4:13,
7:25, 8:3, 8:5, 23:14,
23:17, 32:5, 34:3,
34:19, 35:12, 35:16,
44:1, 44:13, 44:19,
44:24, 49:18, 79:3
**Financial** [1] - 16:24
**financial/stock** [4] -
15:2, 42:24, 62:13,
76:5
**financing** [1] - 59:12
**fine** [2] - 86:14, 86:16
**fines** [2] - 51:21, 52:1
**finish** [2] - 24:22,
85:21
**firearms** [3] - 29:1,
29:9, 37:3
**firm** [7] - 18:24, 20:9,
20:11, 47:16, 68:25,
69:1, 70:3
**firms** [2] - 10:18,
23:18
**first** [11] - 41:5, 50:1,
51:16, 64:21, 69:24,
70:15, 73:2, 74:5,
85:9, 85:11, 85:13
**First** [1] - 46:5
**first-time** [1] - 74:5
**fish** [1] - 6:14
**five** [2] - 6:16, 24:20,
77:25
**five-year** [1] - 77:25
**Florida** [1] - 46:24
**flows** [1] - 78:2
**fly** [1] - 69:25
**focus** [2] - 51:12,
51:18
**focused** [3] - 51:13,
51:14, 51:20
**follow** [19] - 3:13,
11:10, 14:14, 18:19,
18:22, 19:9, 38:24,

38:25, 48:24, 49:13,
49:17, 55:10, 55:13,
60:18, 65:18, 66:1,
71:24, 73:1, 82:5
**follow-up** [11] - 3:13,
14:14, 18:19, 19:9,
38:24, 55:10, 55:13,
60:18, 65:18, 73:1,
82:5
**follow-ups** [3] - 38:25,
48:24, 66:1
**following** [3] - 9:9,
15:14, 44:11
**food** [4] - 6:22, 7:2,
7:3, 7:6
**foreclosure** [3] -
36:23, 37:3, 37:11
**foreclosures** [2] -
8:12, 45:1
**foreman** [1] - 81:11
**foreperson** [1] - 46:16
**forget** [1] - 29:7
**forgetting** [1] - 36:17
**forgot** [1] - 49:9
**form** [10] - 11:3, 24:6,
24:22, 24:25, 25:6,
25:9, 49:2, 71:2,
71:7
**former** [2] - 17:25,
70:5
**Fort** [4] - 64:6, 64:10,
64:11, 64:13
**four** [5] - 46:13, 51:17,
62:5, 72:7, 85:8
**fraud** [1] - 51:13
**Freddie** [13] - 3:4, 9:4,
23:13, 24:8, 35:12,
35:17, 37:14, 38:4,
59:19, 69:9, 74:10,
74:11, 76:1
**Frederick** [1] - 40:21
**freelance** [1] - 70:16
**freelancing** [1] - 27:12
**frequently** [1] - 26:17
**Friday** [1] - 68:7
**friend** [11] - 28:24,
37:1, 42:6, 48:2,
68:11, 73:19, 79:12,
82:6, 82:12, 82:17,
82:19
**friend's** [1] - 82:8
**friends** [6] - 9:14,
23:9, 79:13, 79:16,
79:22, 79:25
**froze** [1] - 59:21
**fully** [2] - 9:6
**fund** [3] - 4:18, 5:5,
7:22
**funds** [9] - 5:4, 33:3,
33:4, 34:19, 43:2,

43:13, 76:15, 77:3,
77:4
**future** [2] - 25:3, 63:15

## G

**gained** [2] - 16:3, 44:5
**gambling** [8] - 7:17,
7:19, 15:25, 33:24,
43:24, 44:25, 63:11,
78:8
**garner** [1] - 54:16
**gas** [1] - 53:16
**GDP** [1] - 4:4
**General** [2] - 42:4,
70:6
**general** [11] - 3:25,
7:21, 15:4, 17:4,
30:10, 30:14, 31:10,
31:25, 41:7, 80:2,
82:23
**generally** [4] - 7:20,
19:14, 28:9, 31:13
**generation** [1] - 45:6
**Georgia** [1] - 44:8
**get-togethers** [1] -
16:25
**given** [3] - 8:7, 27:13,
38:21
**go-between** [1] - 66:9
**goods** [1] - 10:20
**Google** [1] - 15:5
**government** [73] -
3:15, 4:18, 4:22, 5:5,
8:14, 8:24, 9:3, 9:5,
10:3, 10:4, 10:6,
10:7, 11:1, 11:3,
11:9, 28:21, 28:22,
29:2, 30:10, 30:19,
30:24, 31:10, 31:12,
34:25, 35:9, 38:9,
38:11, 38:15, 38:16,
39:6, 39:13, 39:16,
39:18, 39:19, 39:21,
39:24, 40:1, 40:2,
41:6, 41:17, 41:18,
41:21, 42:17, 42:21,
49:6, 49:7, 49:11,
50:20, 50:21, 52:6,
52:9, 53:1, 53:9,
54:8, 54:9, 54:10,
54:11, 54:15, 54:24,
60:20, 73:3, 73:6,
78:11
**government's** [2] -
49:19, 54:25
**government-
sponsored** [2] -
8:24, 78:11
**graduate** [3] - 5:21,

8:16, 59:25
**graduated** [1] - 44:20
**graduating** [1] - 44:17
**great** [1] - 64:18
**Great** [3] - 44:9, 44:11,
45:9
**groceries** [1] - 53:11
**groups** [1] - 7:7
**grow** [2] - 65:13,
65:14
**grown** [1] - 70:21
**guess** [14] - 4:5, 8:5,
11:17, 33:3, 34:5,
38:10, 38:19, 49:18,
63:16, 66:18, 71:6,
72:22, 85:22, 86:2
**guidance** [1] - 43:15
**gun** [2] - 18:1, 46:11
**guy** [3] - 48:11, 55:1,
55:6

## H

**half** [2] - 25:17, 51:17
**hand** [4] - 16:13,
25:21, 25:22, 26:18
**handling** [1] - 28:5
**Hands** [1] - 51:21,
52:5
**hard** [2] - 13:6, 57:11
**hardship** [11] - 12:23,
25:10, 27:5, 37:18,
37:22, 57:4, 58:5,
67:21, 68:1, 70:12,
71:9
**have-nots** [1] - 54:8
**haves** [1] - 54:7
**head** [2] - 9:4, 74:12
**headquartered** [1] -
47:16
**health** [1] - 54:4
**hear** [11] - 13:4, 21:20,
23:15, 27:10, 27:25,
41:25, 56:10, 57:9,
68:3, 70:6, 86:19
**heard** [2] - 40:4, 83:6
**held** [17] - 10:9, 14:7,
19:22, 24:12, 26:22,
28:13, 39:10, 51:5,
55:19, 57:20, 60:12,
65:20, 66:2, 69:22,
71:20, 82:16, 83:22
**hello** [1] - 41:15
**help** [1] - 5:25
**helpful** [1] - 38:5
**herself** [2] - 39:7,
49:15
**hi** [1] - 41:14
**high** [1] - 53:6
**hit** [2] - 42:1, 44:10

**hmm** [1] - 58:16
**hold** [1] - 81:23
**Home** [1] - 46:5
**home** [8] - 35:21,
37:6, 45:22, 45:24,
74:5, 74:21, 80:14
**homes** [2] - 45:2, 74:5
**honest** [2] - 48:4, 72:1
**Honor** [64] - 9:19,
10:8, 12:10, 12:16,
14:3, 14:4, 18:7,
18:22, 19:9, 20:16,
22:18, 23:1, 24:10,
26:11, 26:12, 27:23,
28:11, 38:2, 38:17,
38:24, 39:2, 39:9,
41:2, 41:4, 48:23,
48:24, 49:23, 50:1,
50:10, 50:15, 50:23,
55:11, 55:16, 55:22,
56:6, 56:9, 56:11,
57:19, 57:25, 60:9,
65:24, 67:6, 67:12,
69:8, 69:12, 69:14,
69:19, 70:1, 71:15,
72:3, 82:4, 82:9,
83:18, 84:9, 84:17,
84:20, 84:23, 84:24,
85:3, 86:6, 86:22,
87:3, 87:6
**Hood** [2] - 40:19,
64:13
**hour** [1] - 25:17
**house** [2] - 44:7,
44:11
**House** [1] - 23:12
**houses** [1] - 54:21
**housing** [2] - 53:7,
53:10
**Howard** [1] - 59:11
**humans** [1] - 6:14
**Hume** [2] - 86:11,
86:25
**hundred** [1] - 52:6
**hundreds** [1] - 54:3
**hung** [1] - 56:19
**husband** [10] - 57:7,
57:10, 59:17, 59:18,
73:5, 76:7, 76:13,
79:12, 79:24, 80:4
**husband's** [1] - 80:5
**hyperthyroidism** [3] -
58:8, 58:15, 58:18

## I

**ideas** [3] - 42:15, 49:5,
49:14
**identification** [2] -
50:12, 51:2

**identified** [1] - 39:5
**images** [1] - 49:16
**impact** [3] - 4:8, 66:21, 68:6
**impacted** [2] - 45:4, 45:7
**impartial** [13] - 4:8, 11:2, 11:23, 18:13, 18:16, 22:16, 30:12, 38:21, 56:14, 81:16, 82:7, 83:2, 83:9
**important** [5] - 48:11, 63:4, 63:5, 63:6, 70:20
**impression** [2] - 31:19, 74:7
**inappropriate** [1] - 56:18
**incapable** [2] - 28:5, 28:10
**incapacitated** [1] - 79:5
**inclined** [2] - 24:8, 28:10
**include** [2] - 19:15, 39:7
**included** [1] - 59:19
**includes** [1] - 51:23
**income** [2] - 51:10, 61:22
**independently** [1] - 33:10
**individual** [8] - 5:7, 5:8, 7:8, 7:19, 25:5, 43:17, 76:10, 76:24
**indulgence** [1] - 39:3
**industry** [1] - 6:12
**Infants** [1] - 7:6
**inflation** [1] - 53:6
**influence** [3] - 3:20, 31:22, 42:11
**influenced** [2] - 34:6, 34:13
**information** [3] - 30:5, 63:15, 69:15
**informed** [1] - 66:5
**injected** [1] - 19:17
**inquire** [2] - 50:17
**inquiries** [1] - 66:13
**inquiry** [1] - 82:11
**instead** [1] - 70:25
**Institute** [2] - 65:4, 65:8
**institutions** [1] - 50:21, 50:22
**instructions** [4] - 11:7, 11:10, 86:1, 86:17
**insurance** [1] - 54:4
**Insurance** [1] - 59:15

**interest** [2] - 31:13, 41:8
**interesting** [1] - 44:20
**interfaces** [1] - 49:7
**interject** [1] - 26:13
**interns** [1] - 47:6
**introduce** [1] - 66:20
**invest** [2] - 15:4, 33:5
**invested** [8] - 4:13, 15:1, 16:6, 32:5, 42:24, 59:18, 62:13, 76:5
**investing** [7] - 7:16, 15:25, 19:5, 33:23, 43:23, 63:10, 78:7
**investment** [7] - 8:10, 15:19, 19:7, 59:18, 76:8, 76:20, 77:2
**investments** [4] - 5:11, 59:17, 76:8, 77:23
**involve** [1] - 50:7
**involved** [3] - 19:2, 19:13, 47:24
**involvement** [1] - 18:24
**involves** [3] - 9:3, 20:3, 50:20
**involving** [1] - 82:8
**IP** [1] - 20:7
**ironically** [1] - 39:13
**issue** [1] - 25:6
**issues** [7] - 30:16, 30:21, 31:10, 36:15, 51:12, 51:15, 78:22
**IT** [5] - 73:8, 80:5, 80:6, 80:8, 80:9

## J

**J.P** [1] - 16:23
**job** [9] - 5:13, 50:5, 50:7, 50:18, 59:4, 59:6, 65:22, 66:3, 66:5
**joined** [1] - 65:12
**Jonathan** [16] - 12:16, 19:11, 22:25, 28:7, 41:2, 49:24, 56:3, 57:18, 60:10, 65:25, 67:5, 71:14, 83:17, 84:10, 84:19, 84:23
**journalist** [3] - 23:11, 24:7, 70:16
**judge** [2] - 22:12, 71:3
**juror** [27] - 4:9, 11:5, 13:24, 18:9, 18:13, 22:16, 24:5, 27:2, 27:6, 30:12, 38:3, 38:19, 41:4, 41:11,

46:19, 50:4, 55:23, 56:5, 56:12, 56:15, 57:19, 58:6, 70:13, 81:16, 82:7, 83:1, 83:3
**Juror** [41] - 3:11, 3:12, 12:9, 12:20, 12:21, 14:9, 14:11, 14:12, 22:21, 23:4, 23:5, 24:17, 25:7, 25:8, 27:1, 27:3, 28:17, 28:18, 28:19, 40:24, 41:12, 41:13, 55:21, 57:1, 57:2, 57:23, 58:2, 58:3, 60:15, 60:16, 60:17, 67:1, 67:18, 67:19, 70:2, 70:8, 70:9, 71:25, 72:24, 72:25, 83:13
**JUROR** [345] - 3:17, 3:23, 4:3, 4:10, 4:15, 4:17, 4:21, 4:24, 5:3, 5:6, 5:12, 5:16, 5:19, 5:23, 6:2, 6:7, 6:16, 6:18, 6:21, 6:24, 7:1, 7:3, 7:5, 7:10, 7:13, 7:18, 8:2, 8:18, 8:20, 8:22, 9:1, 9:13, 10:13, 10:17, 11:6, 11:12, 11:18, 11:21, 11:24, 12:2, 12:4, 12:7, 12:25, 13:3, 13:5, 13:10, 13:17, 13:20, 14:16, 14:19, 14:22, 15:4, 15:9, 15:13, 15:18, 15:22, 16:1, 16:5, 16:9, 16:15, 16:21, 17:3, 17:6, 17:9, 17:13, 17:15, 17:18, 17:21, 17:25, 18:3, 18:5, 18:7, 18:10, 18:14, 18:17, 19:25, 20:3, 20:6, 20:10, 20:12, 20:15, 20:19, 20:21, 20:25, 21:3, 21:5, 21:11, 21:16, 21:21, 21:25, 22:4, 22:10, 22:14, 22:18, 23:11, 23:16, 23:24, 24:15, 25:13, 25:19, 25:25, 26:5, 26:25, 27:8, 27:11, 28:16, 28:23, 29:4, 29:7, 29:10, 29:12, 29:15, 29:18, 29:21, 29:24, 30:2, 30:14, 31:8, 31:15, 31:24, 32:7, 32:9, 32:14, 32:16, 32:20, 32:23, 32:25, 33:5, 33:9, 33:14, 33:19,

33:22, 33:25, 34:5, 34:10, 34:12, 34:21, 35:14, 35:19, 35:24, 36:2, 36:5, 36:7, 36:10, 36:12, 36:15, 36:21, 36:25, 37:9, 37:16, 37:19, 37:23, 39:12, 39:16, 39:20, 39:22, 40:2, 40:5, 40:8, 40:11, 40:13, 40:16, 40:19, 40:21, 40:23, 41:15, 41:20, 41:23, 42:1, 42:8, 42:14, 43:1, 43:4, 43:8, 43:14, 43:19, 43:22, 43:25, 44:7, 44:15, 45:15, 45:20, 45:23, 46:1, 46:3, 46:5, 46:8, 46:11, 46:13, 46:15, 46:17, 46:20, 46:23, 47:2, 47:4, 47:9, 47:12, 47:15, 47:19, 47:22, 48:1, 48:10, 48:16, 48:18, 51:9, 53:5, 57:7, 57:10, 57:22, 58:8, 58:16, 58:19, 59:1, 59:5, 59:7, 59:16, 60:4, 60:14, 60:22, 60:25, 61:3, 61:6, 61:8, 61:10, 61:12, 61:15, 61:17, 61:19, 61:21, 61:24, 62:2, 62:5, 62:8, 62:11, 62:15, 62:19, 62:23, 63:3, 63:6, 63:9, 63:12, 63:14, 63:21, 63:25, 64:3, 64:5, 64:8, 64:11, 64:14, 64:16, 64:18, 64:21, 64:24, 65:2, 65:4, 65:7, 65:12, 65:14, 65:17, 66:4, 66:8, 66:12, 66:15, 66:19, 67:24, 68:4, 68:14, 68:17, 68:21, 68:23, 68:25, 69:2, 70:1, 70:15, 71:8, 71:23, 73:5, 73:8, 73:11, 73:15, 73:18, 73:21, 73:23, 74:3, 74:9, 74:12, 74:14, 74:17, 74:21, 75:2, 75:5, 75:8, 75:10, 75:14, 75:17, 75:20, 75:23, 76:2, 76:7, 76:12, 76:14, 76:16, 76:19, 76:23, 77:1, 77:5, 77:7, 77:12, 77:14, 77:18, 77:21, 78:6, 78:9, 78:12,

78:14, 78:18, 78:20, 79:1, 79:11, 79:16, 79:20, 80:5, 80:9, 80:15, 80:17, 80:19, 80:21, 80:23, 80:25, 81:2, 81:5, 81:7, 81:10, 81:12, 81:14, 81:17, 81:20, 81:22, 81:25, 82:20, 82:23, 83:4, 83:7, 83:10, 85:3
**jurors** [2] - 13:12, 25:5
**Jury** [1] - 71:3
**jury** [18] - 3:6, 12:5, 13:7, 14:2, 17:17, 25:3, 25:5, 31:7, 46:7, 46:14, 56:19, 71:1, 71:4, 80:20, 81:9, 85:21, 85:25, 86:18

## K

**Kalamazoo** [1] - 5:19
**keep** [4] - 66:5, 66:6, 66:17, 67:15
**keeping** [1] - 86:23
**kind** [31] - 4:11, 5:3, 5:8, 7:21, 8:13, 9:2, 15:10, 17:24, 18:25, 19:16, 19:23, 20:5, 20:14, 20:24, 27:12, 30:14, 31:25, 32:11, 34:15, 34:21, 37:9, 43:15, 44:16, 45:10, 46:10, 47:18, 50:24, 58:19, 62:20, 77:10, 81:3
**kinds** [1] - 77:16
**knowledge** [3] - 12:6, 37:16, 83:11
**knows** [2] - 24:7, 70:4

## L

**Labor** [1] - 6:4
**labor** [2] - 10:21, 10:23
**laid** [3] - 34:7, 34:14, 34:16
**landlords** [1] - 30:17
**large** [9] - 3:21, 9:25, 31:22, 32:1, 35:8, 42:6, 42:12, 48:12, 79:3
**larger** [1] - 4:3
**last** [3] - 24:20, 53:13, 70:17
**late** [1] - 64:6
**lately** [1] - 53:6
**latest** [1] - 65:9

333

**law** [14] - 11:8, 11:9, 11:11, 11:13, 16:21, 18:24, 23:18, 44:17, 46:25, 47:15, 48:2, 51:21, 68:25, 75:14
**Law** [4] - 47:1, 47:7, 75:18, 75:21
**LAW** [1] - 71:24
**lawsuits** [2] - 48:8, 48:9
**lawyer** [4] - 44:20, 45:15, 67:24, 68:4
**lawyers** [6] - 23:10, 23:23, 24:2, 48:9, 56:11, 68:12
**leadership** [2] - 65:10, 81:23
**leading** [2] - 45:8, 45:10
**League** [1] - 59:10
**lean** [1] - 26:13
**least** [6] - 30:19, 30:21, 36:2, 54:23, 72:1, 80:25
**leave** [2] - 7:22, 71:23
**Lee** [23] - 9:19, 12:10, 12:13, 13:23, 18:21, 19:19, 22:23, 24:4, 26:10, 27:21, 28:2, 38:1, 48:23, 50:15, 55:22, 57:16, 60:7, 65:21, 67:4, 69:7, 71:17, 82:4, 83:15
**left** [15] - 12:9, 14:9, 22:21, 24:17, 27:1, 28:17, 40:24, 55:21, 57:23, 60:15, 67:1, 70:2, 71:25, 72:22, 83:13
**legal** [7] - 16:22, 30:16, 30:21, 37:5, 47:24, 78:21
**legislating** [1] - 66:18
**legislation** [2] - 52:15, 66:17
**legislative** [2] - 52:10, 52:13
**length** [1] - 71:4
**less** [3] - 49:8, 50:22
**lessons** [1] - 61:17
**lethargic** [1] - 58:19
**letting** [4] - 14:5, 26:13, 27:22, 57:17
**level** [3] - 48:13, 51:12, 54:9
**liaison** [1] - 62:2
**license** [4] - 51:23, 52:2, 52:8, 52:9
**licenses** [1] - 51:24, 52:4

**life** [2] - 39:24, 45:3
**light** [1] - 24:6
**line** [1] - 38:6
**liquor** [1] - 30:5
**Lisa** [1] - 87:12
**list** [1] - 85:14
**litigation** [10] - 14:24, 18:25, 19:2, 19:13, 19:15, 19:18, 20:6, 20:8, 20:14, 47:16
**Litigations** [1] - 3:5
**lives** [2] - 45:5, 45:7
**living** [1] - 54:18
**loan** [3] - 36:20, 38:18, 40:3
**loans** [8] - 8:6, 8:11, 35:22, 36:11, 36:17, 38:3, 38:19, 74:4
**Lobbying** [2] - 65:5, 65:8
**local** [3] - 38:9, 38:11, 40:1
**location** [2] - 74:20, 74:23
**locations** [2] - 62:8, 62:10
**Logan** [1] - 16:24
**long-term** [1] - 78:2
**look** [4] - 37:1, 63:1, 77:15, 78:2
**looked** [1] - 7:14
**looking** [6] - 44:20, 53:24, 54:1, 77:22, 77:23, 77:24
**losing** [1] - 45:2
**loss** [1] - 44:9
**lost** [6] - 16:3, 16:6, 44:5, 57:7, 57:10, 59:21
**louder** [1] - 34:8
**loved** [1] - 79:2
**low** [1] - 51:10
**low-income** [1] - 51:10
**lowest** [1] - 10:20

## M

**Mac** [10] - 3:4, 9:4, 35:12, 35:17, 38:4, 59:19, 69:9, 74:10, 74:11, 76:1
**machinations** [1] - 45:7
**Mae** [37] - 3:3, 9:3, 35:13, 35:17, 35:20, 35:22, 36:9, 36:10, 38:4, 38:5, 38:18, 38:20, 40:3, 40:4, 40:6, 40:7, 40:12,

58:24, 59:13, 59:19, 68:14, 68:19, 69:9, 69:18, 73:19, 73:21, 73:22, 74:8, 74:13, 74:15, 75:25, 79:12, 82:6, 82:13, 82:18, 82:21, 83:1
**mailing** [1] - 30:4
**major** [4] - 14:18, 61:11, 70:3, 80:6
**majored** [2] - 79:23
**manage** [1] - 14:22
**manager** [2] - 73:8, 80:5
**managing** [2] - 70:4, 70:5
**mandates** [1] - 6:9
**March** [1] - 51:17
**mark** [3] - 23:6, 23:20, 75:24
**marked** [1] - 29:24
**market** [21] - 4:14, 7:17, 7:20, 8:3, 10:21, 15:2, 15:25, 16:4, 32:6, 32:11, 33:24, 42:24, 43:24, 44:6, 44:25, 62:13, 63:11, 76:5, 78:1, 78:8
**martial** [2] - 61:17, 62:4
**Maryland** [2] - 40:21, 48:18
**mashed** [1] - 8:10
**massive** [1] - 38:12
**master's** [1] - 5:17
**match** [1] - 84:6
**material** [1] - 68:1
**matter** [1] - 15:13
**McDermott** [2] - 14:23, 20:12
**mean** [19] - 3:24, 10:13, 10:15, 11:7, 13:13, 23:17, 30:2, 30:7, 31:8, 31:15, 31:24, 33:25, 35:3, 36:15, 39:22, 77:21, 79:20, 79:21, 85:16
**means** [3] - 19:6, 38:4, 66:21
**meant** [2] - 19:4, 37:1
**meanwhile** [1] - 53:12
**mechanism** [1] - 15:19
**Medicaid** [2] - 73:11, 73:13
**medical** [13] - 12:23, 25:10, 27:5, 37:17, 37:21, 51:12, 52:16, 52:18, 52:19, 57:4,

58:4, 67:20, 70:11
**Medicare** [1] - 73:11
**medicare** [1] - 73:13
**member** [7] - 23:8, 28:25, 31:7, 42:6, 68:11, 81:20, 81:22
**members** [5] - 26:15, 30:4, 41:24, 42:3, 52:14
**mention** [1] - 37:10
**mentioned** [3] - 21:8, 30:5, 82:5
**mere** [1] - 53:15
**Metformin** [1] - 25:14
**mic** [1] - 34:9
**Michigan** [2] - 5:23, 5:24
**middle** [2] - 54:13, 54:15
**midweek** [1] - 70:21
**might** [14] - 6:13, 8:7, 8:8, 11:15, 11:16, 13:9, 13:25, 25:1, 25:19, 30:11, 31:6, 49:21, 50:7, 50:19
**military** [1] - 64:2
**milligrams** [1] - 25:14
**million** [3] - 52:19, 54:5, 55:7
**millions** [1] - 45:1
**mind** [22] - 12:24, 18:22, 21:17, 23:10, 25:12, 26:21, 28:22, 32:8, 34:16, 36:24, 41:19, 44:17, 48:5, 57:6, 58:7, 58:11, 60:21, 62:14, 63:20, 67:23, 68:13, 70:14
**mine** [1] - 48:2
**minimum** [2] - 53:10, 54:11
**minor** [1] - 46:24
**minors** [1] - 30:6
**minute** [1] - 24:2
**minutes** [1] - 86:21
**Miscellaneous** [1] - 3:3
**miss** [1] - 84:18
**mix** [1] - 52:22
**mom** [3] - 42:8, 43:14, 55:3
**moment** [2] - 48:19, 83:21
**Monday** [1] - 27:15
**money** [22] - 4:25, 5:7, 16:3, 16:6, 16:14, 21:12, 32:18, 32:23, 43:15, 44:2, 44:3, 44:5, 44:25, 52:10, 53:12, 53:19, 53:20,

53:22, 54:4, 55:1
**months** [4] - 13:16, 51:17, 57:7, 57:10
**Morgan** [1] - 16:23
**morning** [9] - 9:19, 12:16, 12:22, 14:13, 23:6, 27:4, 27:8, 86:3, 86:16
**Mortgage** [1] - 46:5
**mortgage** [8] - 16:22, 17:9, 35:12, 35:17, 37:4, 44:23, 46:2, 80:16
**mortgage-backed** [1] - 44:23
**mortgages** [4] - 8:6, 8:11, 35:20, 37:12
**most** [7] - 9:13, 20:17, 20:19, 20:21, 39:25, 56:9, 59:2
**mostly** [4] - 9:13, 36:7, 36:8, 43:12
**mother** [1] - 59:25
**motions** [1] - 86:19
**moving** [1] - 55:23
**multicultural** [1] - 59:9
**multiple** [1] - 44:16
**Music** [1] - 8:4
**mutual** [5] - 33:4, 43:2, 43:12, 77:3, 77:7

## N

**NAACP** [1] - 59:10
**name** [3] - 29:7, 65:9, 69:1
**nameless** [1] - 48:12
**names** [1] - 23:25
**national** [1] - 59:8
**National** [2] - 65:4, 65:8
**naturally** [1] - 64:13
**nature** [1] - 30:6
**nauseous** [3] - 13:3, 13:6, 13:25
**navigate** [2] - 30:21, 31:4
**navigating** [1] - 31:1
**near** [1] - 74:24
**necessarily** [1] - 42:18
**necessary** [1] - 8:7
**need** [6] - 10:21, 42:1, 55:2, 55:12, 55:25, 69:10
**needed** [1] - 14:24
**needs** [2] - 30:22, 53:22
**negative** [5] - 3:20,

31:9, 31:21, 38:8,
42:11
**never** [5] - 7:13, 17:11,
33:11, 35:21, 72:22
**New** [3] - 64:6, 70:23,
80:11
**new** [2] - 74:18, 74:19
**news** [6] - 15:14,
16:10, 31:25, 34:6,
34:13, 53:13
**next** [13] - 3:19, 24:18,
24:19, 24:20, 27:15,
31:11, 41:11, 42:5,
42:10, 57:24, 61:13,
70:21
**nice** [1] - 42:19
**night** [1] - 24:20
**NILE** [1] - 65:7
**nobody** [2] - 24:24,
47:10
**nonprofit** [1] - 78:18
**Norfolk** [1] - 61:10
**Northwestern** [1] -
14:17
**note** [3] - 19:12, 39:2,
41:5
**NOTE** [31] - 3:12, 12:9,
12:21, 14:9, 14:12,
22:21, 23:5, 24:17,
25:8, 27:1, 27:3,
28:17, 28:19, 40:24,
41:13, 55:21, 57:2,
57:23, 58:3, 60:15,
60:17, 67:1, 67:19,
70:2, 70:9, 71:5,
71:25, 72:25, 83:13,
83:22, 87:11
**nothing** [4] - 32:2,
59:25, 64:9
**notice** [2] - 25:3, 71:6
**nots** [1] - 54:8
**notwithstanding** [1] -
56:13
**number** [2] - 49:4,
52:7
**Number** [1] - 47:7
**numbers** [2] - 83:24,
84:5

---

# O

**o'clock** [6] - 84:2,
84:3, 85:6, 85:19,
86:12, 86:24
**object** [6] - 14:5,
55:15, 56:2, 56:5,
69:12, 71:13
**objecting** [1] - 51:3
**objection** [12] - 19:16,
19:20, 21:14, 22:24,

24:9, 27:22, 57:17,
57:19, 65:23, 71:16,
71:18, 82:9
**obviously** [6] - 9:11,
35:8, 38:11, 49:10,
77:22, 77:25
**occupation** [2] -
14:21, 49:1
**occupational** [3] -
52:4, 52:8
**offer** [1] - 74:4
**office** [3] - 25:4, 39:5,
59:8
**office's** [1] - 25:5
**officials** [1] - 31:12
**once** [2] - 48:25, 70:24
**one** [42] - 3:14, 3:19,
4:12, 6:18, 7:5, 8:1,
9:21, 14:14, 16:8,
16:14, 18:3, 18:4,
18:23, 20:24, 21:8,
21:10, 27:15, 30:13,
31:11, 32:7, 32:9,
34:20, 38:2, 42:5,
42:13, 42:25, 44:1,
47:6, 47:7, 47:8,
54:19, 57:24, 60:19,
61:13, 67:8, 68:14,
72:17, 74:10, 82:5,
82:10, 85:7, 86:23
**ones** [1] - 79:2
**online** [1] - 62:24
**open** [15] - 10:9, 14:7,
19:22, 24:12, 26:22,
28:13, 39:10, 51:5,
55:19, 57:20, 60:12,
66:2, 69:22, 71:20,
82:16
**opening** [3] - 17:23,
87:2
**openings** [3] - 85:24,
86:3, 86:15
**operations** [1] - 16:22
**opinion** [1] - 56:7
**opinions** [3] - 3:20,
31:21, 42:11
**opportunity** [1] -
78:15
**oppose** [1] - 60:8
**organization** [3] -
51:7, 52:21
**organizations** [4] -
48:15, 59:11, 65:1,
81:19
**outfit** [1] - 77:11
**owe** [2] - 52:5, 52:9
**own** [14] - 16:7, 31:4,
33:8, 37:6, 37:7,
45:21, 45:22, 45:24,
61:14, 61:18, 62:15,

80:13
**owned** [3] - 35:21,
61:14, 75:25
**owning** [1] - 53:20

---

# P

**p.m** [1] - 87:11
**package** [1] - 44:24
**packages** [1] - 77:9
**page** [3] - 24:23,
24:25, 25:6
**paid** [7] - 10:22, 33:17,
36:6, 36:11, 53:8,
70:19, 77:16
**pan** [1] - 16:11
**paperwork** [2] - 69:15,
69:16
**paralegal** [5] - 14:23,
18:23, 19:13, 19:17,
19:23
**pardon** [1] - 20:10
**parents** [1] - 54:19
**part** [9] - 3:24, 19:6,
27:25, 28:7, 33:1,
58:23, 58:24, 61:20,
64:6
**part-time** [1] - 61:20
**participation** [1] -
20:4
**particular** [1] - 50:19
**particularly** [1] - 53:13
**parties** [3] - 23:9,
48:8, 68:12
**partner** [2] - 70:4, 70:5
**partnership** [1] - 59:8
**party** [3] - 11:16,
47:25, 83:1
**passed** [1] - 59:17
**past** [7] - 4:13, 15:1,
32:5, 42:24, 62:13,
75:25, 76:4
**pause** [1] - 10:5
**pay** [3] - 33:17, 51:25,
54:17
**payment** [1] - 77:19
**payments** [1] - 8:9
**peers** [1] - 45:5
**pennies** [1] - 53:15
**penny** [1] - 59:21
**people** [29] - 4:4, 8:7,
10:21, 10:22, 31:17,
41:7, 44:23, 45:1,
45:3, 45:6, 51:13,
52:7, 53:7, 53:15,
53:18, 53:19, 53:20,
53:21, 54:3, 54:4,
55:7, 56:9, 56:10,
59:3, 74:4, 75:6,
79:1

**per** [2] - 32:2, 34:15
**percent** [1] - 51:11
**peremptories** [6] -
72:8, 72:20, 84:3,
85:9, 85:11, 86:9
**perhaps** [2] - 71:2,
82:10
**permission** [1] - 86:11
**person** [1] - 79:4
**personal** [9] - 12:23,
25:10, 26:14, 27:5,
45:13, 57:4, 58:5,
67:21, 70:12
**personally** [7] - 23:7,
23:9, 23:22, 23:25,
39:23, 39:24, 68:10
**philosophy** [1] - 46:24
**pick** [7] - 15:7, 15:9,
32:15, 33:2, 33:12,
33:17, 62:17
**picked** [5] - 5:8, 43:12,
62:19, 76:11, 76:13
**picking** [4] - 7:18,
62:21, 62:25, 63:2
**piece** [1] - 30:22
**pieces** [1] - 48:25
**place** [2] - 24:20,
26:16
**places** [2] - 32:17,
64:15
**plaintiff** [1] - 55:22
**plaintiffs** [22] - 9:20,
12:10, 12:13, 13:23,
18:21, 22:23, 24:4,
26:10, 27:21, 28:2,
38:1, 41:1, 57:16,
60:7, 65:21, 67:4,
67:13, 69:7, 71:17,
82:4, 83:15, 85:18
**plaintiffs'** [2] - 49:25,
87:2
**planning** [1] - 70:23
**players** [1] - 54:12
**playing** [2] - 48:13,
54:9
**plead** [1] - 71:9
**point** [2] - 36:16,
56:12
**police** [1] - 18:1
**policies** [4] - 49:3,
50:6, 50:18
**policy** [6] - 47:19,
47:22, 49:1, 51:7,
51:16, 78:22
**political** [5] - 14:17,
14:19, 50:12, 51:2,
61:12
**politics** [2] - 50:6,
50:17
**pool** [3] - 83:25, 84:1,

84:6
**portfolio** [1] - 59:19
**portion** [1] - 87:11
**pose** [1] - 22:13
**position** [6] - 17:2,
17:4, 73:25, 74:18,
74:19, 81:23
**positive** [5] - 3:20,
16:10, 31:21, 42:11
**possibility** [1] - 13:13
**possible** [1] - 59:22
**post** [1] - 44:9
**potential** [3] - 21:16,
22:2, 26:19
**potentially** [1] - 52:9
**poultry** [1] - 6:20
**poverty** [1] - 51:11
**practice** [2] - 67:25,
68:5
**pre** [1] - 20:22
**pre-COVID** [1] - 20:22
**predict** [1] - 63:15
**preface** [1] - 82:10
**prefer** [2] - 86:23, 87:1
**Preferred** [1] - 3:4
**pregnant** [2] - 12:25,
13:5
**preliminary** [3] - 86:1,
86:17, 86:20
**preparation** [1] - 20:4
**prepared** [1] - 87:12
**present** [1] - 85:23
**presentations** [1] -
27:16
**press** [1] - 28:10
**pretty** [4] - 8:19, 22:7,
38:2, 79:22
**prevent** [1] - 51:22
**prevents** [1] - 52:5
**previously** [1] - 6:2
**prices** [1] - 10:20
**principles** [1] - 80:2
**private** [13] - 9:6,
49:11, 49:12, 49:20,
50:20, 50:21, 64:21,
67:24, 68:4, 68:25,
76:20, 77:21, 79:4
**privately** [1] - 76:20
**probe** [2] - 9:23, 50:14
**problem** [6] - 11:1,
19:15, 22:8, 22:13,
55:8, 83:2
**problems** [1] - 55:5
**Proceedings** [13] -
10:9, 14:7, 19:22,
24:12, 26:22, 28:13,
39:10, 51:5, 55:19,
66:2, 69:22, 71:20,
82:16
**proceedings** [2] -

**57**:20, 60:12
**producer** [1] - 10:23
**product** [2] - 27:16, 62:23
**Product** [1] - 60:25
**production** [2] - 4:6, 6:12
**products** [1] - 27:14
**professional** [3] - 48:15, 65:1, 81:19
**profits** [2] - 53:14, 54:17
**program** [1] - 7:6
**programs** [2] - 6:22, 7:3
**project** [1] - 52:16
**prompt** [1] - 55:12
**prompted** [1] - 56:12
**properly** [1] - 79:6
**property** [1] - 79:4
**proposal** [1] - 50:1
**PROSPECTIVE** [345] - 3:17, 3:23, 4:3, 4:10, 4:15, 4:17, 4:21, 4:24, 5:3, 5:6, 5:12, 5:16, 5:19, 5:23, 6:2, 6:7, 6:16, 6:18, 6:21, 6:24, 7:1, 7:3, 7:5, 7:10, 7:13, 7:18, 8:2, 8:18, 8:20, 8:22, 9:1, 9:13, 10:13, 10:17, 11:6, 11:12, 11:18, 11:21, 11:24, 12:2, 12:4, 12:7, 12:25, 13:3, 13:5, 13:10, 13:17, 13:20, 14:16, 14:19, 14:22, 15:4, 15:9, 15:13, 15:18, 15:22, 16:1, 16:5, 16:9, 16:15, 16:21, 17:3, 17:6, 17:9, 17:13, 17:15, 17:18, 17:21, 17:25, 18:3, 18:5, 18:7, 18:10, 18:14, 18:17, 19:25, 20:3, 20:6, 20:10, 20:12, 20:15, 20:19, 20:21, 20:25, 21:3, 21:5, 21:11, 21:16, 21:21, 21:25, 22:4, 22:10, 22:14, 22:18, 23:11, 23:16, 23:24, 24:15, 25:13, 25:19, 25:25, 26:5, 26:25, 27:8, 27:11, 28:16, 28:23, 29:4, 29:7, 29:10, 29:12, 29:15, 29:18, 29:21, 29:24, 30:2, 30:14, 31:8, 31:15, 31:24, 32:7,

32:9, 32:14, 32:16, 32:20, 32:23, 32:25, 33:5, 33:9, 33:14, 33:19, 33:22, 33:25, 34:5, 34:10, 34:12, 34:21, 35:14, 35:19, 35:24, 36:2, 36:5, 36:7, 36:10, 36:12, 36:15, 36:21, 36:25, 37:9, 37:16, 37:19, 37:23, 39:12, 39:16, 39:20, 39:22, 40:2, 40:5, 40:8, 40:11, 40:13, 40:16, 40:19, 40:21, 40:23, 41:15, 41:20, 41:23, 42:1, 42:8, 42:14, 43:1, 43:4, 43:8, 43:14, 43:19, 43:22, 43:25, 44:7, 44:15, 45:15, 45:20, 45:23, 46:1, 46:3, 46:5, 46:8, 46:11, 46:13, 46:15, 46:17, 46:20, 46:23, 47:2, 47:4, 47:9, 47:12, 47:15, 47:19, 47:22, 48:1, 48:10, 48:16, 48:18, 51:9, 53:5, 57:7, 57:10, 57:22, 58:8, 58:16, 58:19, 59:1, 59:5, 59:7, 59:16, 60:4, 60:14, 60:22, 60:25, 61:3, 61:6, 61:8, 61:10, 61:12, 61:15, 61:17, 61:19, 61:21, 61:24, 62:2, 62:5, 62:8, 62:11, 62:15, 62:19, 62:23, 63:3, 63:6, 63:9, 63:12, 63:14, 63:21, 63:25, 64:3, 64:5, 64:8, 64:11, 64:14, 64:16, 64:18, 64:21, 64:24, 65:2, 65:4, 65:7, 65:12, 65:14, 65:17, 66:4, 66:8, 66:12, 66:15, 66:19, 67:24, 68:4, 68:14, 68:17, 68:21, 68:23, 68:25, 69:2, 70:1, 70:15, 71:8, 71:23, 73:5, 73:8, 73:11, 73:15, 73:18, 73:21, 73:23, 74:3, 74:9, 74:12, 74:14, 74:17, 74:21, 75:2, 75:5, 75:8, 75:10, 75:14, 75:17, 75:20, 75:23, 76:2, 76:7, 76:12, 76:14, 76:16, 76:19, 76:23,

77:1, 77:5, 77:7, 77:12, 77:14, 77:18, 77:21, 78:6, 78:9, 78:12, 78:14, 78:18, 78:20, 79:1, 79:11, 79:16, 79:20, 80:5, 80:9, 80:15, 80:17, 80:19, 80:21, 80:23, 80:25, 81:2, 81:5, 81:7, 81:10, 81:12, 81:14, 81:17, 81:20, 81:22, 81:25, 82:20, 82:23, 83:4, 83:7, 83:10, 85:3
**Protection** [1] - 3:18
**provide** [6] - 14:23, 19:24, 51:10, 68:1, 68:6, 68:17
**public** [5] - 31:13, 31:18, 41:8, 49:7, 49:12
**pull** [1] - 34:11
**Purchase** [1] - 3:4
**purchase** [1] - 43:6
**purchasing** [2] - 74:5
**purporting** [1] - 41:8
**puts** [1] - 5:7

### Q

**qualified** [1] - 8:8
**questionnaire** [6] - 12:23, 14:25, 28:20, 41:16, 57:3, 70:10
**questions** [14] - 3:13, 9:16, 10:8, 14:14, 22:19, 38:24, 48:21, 49:24, 55:13, 60:18, 68:9, 73:1, 82:2, 85:17
**quickly** [1] - 16:12
**quite** [5] - 3:23, 4:4, 13:15, 23:20, 79:21
**quote** [3] - 19:5, 49:5, 49:13

### R

**raise** [1] - 54:17
**raised** [2] - 25:21, 25:22
**raising** [2] - 26:18, 54:11
**rank** [1] - 64:19
**rates** [1] - 54:16
**rather** [1] - 70:25
**Re** [1] - 3:3
**reached** [2] - 46:14, 81:9
**read** [8] - 8:4, 24:25, 25:6, 34:13, 70:11,

71:2, 86:1, 86:17
**reading** [2] - 55:16, 78:15
**ready** [1] - 57:24
**real** [12] - 6:5, 9:11, 16:4, 16:20, 17:8, 17:9, 17:10, 17:12, 44:6, 63:19, 73:23, 79:9
**really** [13] - 7:13, 30:2, 30:21, 34:15, 38:12, 39:19, 39:23, 39:25, 48:4, 51:13, 51:14, 57:11, 63:15
**reason** [11] - 18:15, 22:15, 25:10, 27:5, 37:17, 37:21, 57:4, 58:5, 67:21, 70:11, 83:8
**reasons** [1] - 14:1
**recent** [3] - 20:17, 20:19, 20:21
**recently** [6] - 7:10, 44:19, 51:19, 52:17, 58:10, 74:18
**Recess** [1] - 87:10
**Recession** [3] - 44:9, 44:11, 45:9
**recognize** [2] - 23:22, 23:25
**recognized** [1] - 23:24
**recognizes** [1] - 47:10
**record** [16] - 9:18, 13:22, 18:20, 24:3, 26:9, 27:20, 37:25, 48:22, 53:14, 55:9, 57:15, 60:6, 65:20, 69:6, 71:12, 82:3
**reduce** [1] - 54:16
**reference** [4] - 19:15, 49:6, 51:1, 72:10
**referred** [1] - 19:13
**referring** [1] - 39:25
**reflects** [1] - 69:15
**regard** [1] - 10:1
**regulate** [1] - 6:9
**regulating** [2] - 6:7, 6:19
**regulatory** [1] - 68:17
**reinvesting** [1] - 21:12
**relate** [1] - 49:14
**related** [6] - 3:3, 10:2, 34:15, 49:18, 50:1, 69:9
**relations** [1] - 66:11
**relationship** [2] - 54:23, 69:9
**relationships** [2] - 59:9, 69:3
**release** [1] - 83:25

**releasing** [1] - 71:13
**relevant** [1] - 50:19
**remaining** [1] - 83:25
**remember** [4] - 8:25, 48:4, 81:3, 86:16
**remotely** [1] - 75:4
**removed** [4] - 21:18, 21:22, 21:25, 22:3
**rendering** [2] - 10:5
**renders** [1] - 19:17
**renew** [1] - 52:8
**repeat** [2] - 33:14, 35:14
**report** [2] - 86:12, 86:25
**reported** [1] - 87:12
**REPORTER'S** [30] - 3:12, 12:9, 12:21, 14:9, 14:12, 22:21, 23:5, 24:17, 25:8, 27:1, 27:3, 28:17, 28:19, 40:24, 41:13, 55:21, 57:2, 57:23, 58:3, 60:15, 60:17, 67:1, 67:19, 70:2, 70:9, 71:25, 72:25, 83:13, 83:22, 87:11
**reports** [1] - 53:13
**represent** [1] - 68:16
**representative** [1] - 39:5
**represented** [1] - 23:18
**request** [2] - 38:25, 68:8
**required** [1] - 52:1
**research** [2] - 6:3, 21:13
**researched** [1] - 34:24
**reserve** [1] - 69:11
**residents** [3] - 51:11, 51:22, 51:25
**residents'** [1] - 52:18
**respect** [4] - 38:17, 41:7, 49:25, 86:6
**respectfully** [5] - 50:3, 50:8, 50:13, 56:11, 56:17
**responding** [1] - 66:13
**response** [1] - 39:6
**rest** [1] - 59:23
**restroom** [3] - 25:15, 26:1, 26:6
**results** [2] - 16:10, 16:11
**retirement** [6] - 4:18, 5:7, 43:1, 76:8, 76:15, 77:3
**return** [1] - 77:25

**reveal** [1] - 69:2
**ripple** [1] - 8:13
**risk** [2] - 34:1, 71:8
**role** [4] - 3:24, 19:1, 49:19, 65:10
**room** [1] - 55:16
**roughly** [1] - 53:9
**RUDY** [32] - 9:19, 12:10, 12:13, 13:23, 18:21, 19:19, 22:23, 24:4, 26:10, 27:21, 28:2, 38:1, 39:9, 41:1, 48:23, 50:15, 55:11, 55:22, 56:1, 57:16, 60:7, 65:21, 67:3, 69:7, 71:17, 72:3, 72:6, 72:10, 72:13, 82:4, 83:15, 85:18
**Rudy** [27] - 9:19, 12:10, 12:13, 13:23, 18:21, 19:19, 22:23, 24:4, 26:10, 27:21, 28:2, 38:1, 48:23, 50:2, 50:5, 50:11, 50:15, 50:25, 55:22, 57:16, 60:7, 65:21, 67:4, 69:7, 71:17, 82:4, 83:15
**Rudy's** [1] - 28:9
**run** [3] - 42:16, 42:17, 49:6
**running** [1] - 42:17

**S**

**S&P** [1] - 7:21
**Safety** [1] - 60:25
**salaries** [1] - 55:7
**Sallie** [4] - 38:4, 40:4, 40:6, 40:12
**satisfactory** [1] - 38:22
**saw** [2] - 24:24, 45:4
**scale** [1] - 35:9
**schedule** [1] - 22:6
**School** [4] - 47:1, 47:7, 75:18, 75:21
**school** [9] - 8:2, 8:17, 44:17, 47:10, 48:2, 59:25, 75:14, 79:24, 79:25
**science** [3] - 14:17, 14:19, 61:12
**scraping** [1] - 53:25
**se** [2] - 32:2, 34:15
**seat** [5] - 72:8, 85:8, 85:9, 85:11, 85:12
**seated** [5] - 10:25, 18:16, 22:16, 72:20,

85:15
**second** [3] - 19:3, 38:8, 70:20
**sector** [1] - 9:6
**securities** [5] - 9:10, 16:19, 44:23, 63:19, 79:9
**securitize** [1] - 59:12
**see** [12] - 9:16, 11:16, 24:5, 34:1, 37:3, 48:20, 54:23, 72:9, 72:17, 82:1, 84:4, 87:7
**seek** [1] - 56:23
**seeking** [1] - 36:16
**seem** [1] - 44:1
**selection** [3] - 3:7, 71:4, 85:21
**selections** [2] - 15:12, 33:8
**self** [6] - 27:9, 27:11, 28:3, 58:11, 70:16
**self-employed** [3] - 28:3, 58:11, 70:16
**self-employee** [2] - 27:9, 27:11
**sell** [2] - 44:8, 44:9
**selling** [1] - 30:6
**Senior** [1] - 3:4
**sense** [3] - 15:23, 31:5, 54:5
**separation** [1] - 42:19
**serve** [14] - 3:24, 12:24, 25:11, 27:6, 27:13, 28:6, 30:11, 31:13, 31:18, 57:5, 58:6, 64:7, 67:22, 70:13
**served** [2] - 46:6, 64:1
**service** [4] - 6:3, 39:5, 68:1, 71:2
**Services** [2] - 42:4, 73:12
**services** [4] - 30:23, 51:10, 51:23, 68:6
**set** [3] - 35:2, 70:16, 79:22
**settled** [4] - 17:22, 18:4, 20:23, 21:5
**settlements** [1] - 21:7
**seven** [4] - 12:25, 13:5, 13:15, 13:16
**several** [3] - 27:13, 79:24, 80:1
**shakes** [1] - 74:12
**sheet** [2] - 39:2, 39:4
**shocking** [1] - 70:3
**short** [1] - 85:24
**show** [5] - 24:22, 85:6, 85:10, 85:12, 85:15

**sic** [3] - 8:4, 51:1, 65:4
**sic]** [2] - 16:24, 45:17
**sick** [2] - 13:10, 13:25
**side** [6] - 10:23, 11:25, 14:24, 72:7, 80:10
**sides** [3] - 10:23, 11:2, 11:4
**significant** [2] - 16:3, 44:5
**similar** [1] - 52:3
**similarly** [1] - 49:18
**simply** [1] - 21:11
**sister** [1] - 55:3
**sit** [1] - 11:20
**sitting** [4] - 70:25, 83:1, 83:2, 86:24
**situation** [5] - 34:23, 35:2, 37:5, 39:8, 79:3
**situations** [1] - 31:4
**six** [3] - 24:21, 51:10, 59:24
**sixteen** [2] - 72:9, 72:12
**Sixteen** [2] - 72:13, 72:19
**skills** [1] - 10:21
**skin** [3] - 21:18, 21:22, 21:25
**skipped** [1] - 84:13
**sleepy** [1] - 58:19
**small** [4] - 47:15, 52:4, 52:10, 79:22
**SNAP** [5] - 6:22, 6:24, 6:25
**social** [4] - 40:16, 48:15, 64:25, 81:19
**Socialist** [3] - 42:15, 49:15, 51:3
**sole** [1] - 61:22
**someone** [14] - 3:14, 6:9, 9:9, 16:2, 16:18, 28:21, 36:23, 41:17, 44:4, 60:19, 63:18, 63:23, 73:2, 79:8
**sometimes** [1] - 26:5
**somewhat** [3] - 44:24, 63:6, 63:12
**somewhere** [3] - 36:5, 74:24
**son** [2] - 30:20, 59:25
**sorry** [35] - 4:16, 10:15, 12:12, 13:2, 13:19, 18:10, 23:15, 24:16, 27:10, 32:7, 33:3, 33:14, 34:10, 35:14, 36:18, 37:19, 40:5, 40:13, 41:25, 45:23, 47:21, 57:9, 59:2, 61:7, 65:6,

66:7, 68:3, 75:19, 79:15, 81:21, 84:9, 84:13, 84:17, 84:23, 87:8
**sort** [9] - 5:12, 8:4, 10:17, 18:23, 20:1, 21:13, 44:1, 49:18, 74:6
**sorts** [1] - 56:14
**sotto** [1] - 83:22
**source** [1] - 61:22
**space** [1] - 59:9
**Spears** [1] - 45:17
**special** [1] - 25:3
**specialty** [1] - 59:11
**specific** [7] - 32:2, 42:15, 43:6, 45:6, 49:5, 49:14, 53:1
**specifically** [4] - 43:5, 49:6, 50:20, 51:1
**spend** [1] - 86:4
**sponsored** [2] - 8:24, 78:11
**staff** [1] - 66:9
**stamp** [1] - 7:3
**stamps** [1] - 7:2
**stand** [1] - 48:12
**standard** [1] - 56:16
**standards** [1] - 54:18
**start** [3] - 86:3, 86:15, 86:16
**started** [2] - 51:16, 51:20
**starting** [1] - 49:1
**State** [3] - 5:23, 46:24, 61:10
**States** [1] - 64:5
**states** [1] - 53:9
**stateside** [1] - 64:8
**Statistics** [1] - 6:4
**stay** [2] - 8:14, 34:19
**stayed** [1] - 80:9
**step** [3] - 55:20, 69:23, 71:21
**Stern** [16] - 12:16, 19:11, 22:25, 28:7, 41:2, 49:24, 56:3, 57:18, 60:10, 65:25, 67:5, 71:14, 83:17, 84:10, 84:19, 84:23
**STERN** [36] - 10:8, 12:16, 14:4, 19:9, 22:25, 24:10, 26:12, 27:23, 28:7, 38:17, 41:2, 49:23, 50:23, 55:15, 56:3, 56:9, 57:18, 60:9, 65:23, 67:5, 67:12, 69:11, 69:19, 71:14, 82:9, 83:17, 84:9, 84:17,

84:19, 84:23, 85:3, 86:6, 86:10, 86:22, 87:3, 87:6
**still** [8] - 3:9, 11:2, 11:4, 22:8, 47:8, 53:10, 57:12, 85:23
**stock** [25] - 4:14, 5:1, 7:8, 7:17, 15:25, 16:3, 21:8, 32:5, 33:8, 33:24, 43:18, 43:24, 44:6, 59:21, 59:24, 62:15, 62:17, 62:22, 62:25, 63:2, 63:11, 75:25, 76:10, 76:25, 78:8
**Stock** [2] - 3:4, 80:11
**stocks** [9] - 5:7, 7:19, 15:5, 15:7, 17:14, 17:15, 19:5, 32:15, 43:5
**stopped** [1] - 25:22
**Stops** [1] - 8:4
**stores** [1] - 30:5
**stories** [3] - 23:13, 23:14, 23:16
**strategy** [1] - 19:7
**street** [4] - 17:20, 17:21, 81:1, 81:2
**stressful** [1] - 80:12
**stricken** [1] - 56:21
**strike** [2] - 54:1, 55:23
**striking** [1] - 56:5
**strong** [10] - 3:20, 3:24, 30:9, 31:11, 31:21, 34:18, 42:11, 48:8, 56:20, 60:11
**struck** [1] - 85:13
**struggles** [1] - 30:23
**struggling** [2] - 37:10, 53:25
**stuck** [3] - 17:14, 17:15, 34:15
**student** [5] - 35:22, 36:11, 38:3, 38:17, 40:3
**studies** [1] - 63:22
**studio** [1] - 62:7
**studying** [1] - 8:21
**stuff** [3] - 31:25, 47:18, 70:18
**submit** [5] - 50:3, 50:8, 50:13, 56:11, 56:17
**Substances** [1] - 6:8
**sued** [1] - 51:24
**suggesting** [1] - 50:11
**suit** [1] - 52:11
**summary** [1] - 28:9
**Superior** [3] - 17:22, 30:16, 46:9

**supply** [1] - 6:14
**support** [8] - 14:24,
18:25, 19:13, 19:14,
19:17, 19:23, 20:1,
50:20
**supporting** [2] - 19:1,
49:20
**supposed** [3] - 21:18,
21:22, 21:24
**surprise** [1] - 86:23
**sustained** [1] - 41:10
**swear** [1] - 86:18
**switch** [1] - 36:17
**sworn** [1] - 44:18

## T

**tax** [4] - 53:18, 54:9,
54:10, 54:16
**taxes** [1] - 55:2
**teach** [2] - 62:8, 62:9
**technically** [5] - 35:25,
36:25, 37:6, 37:11,
39:22
**ten** [1] - 77:25
**ten-year** [1] - 77:25
**tenant** [1] - 38:10
**tending** [1] - 55:11
**tens** [1] - 44:10
**term** [9] - 8:24, 36:18,
45:13, 71:5, 71:6,
77:24, 78:2, 78:10,
78:16
**terms** [6] - 35:2,
36:17, 38:24, 68:1,
71:3, 77:23
**territory** [1] - 50:8
**Texas** [1] - 5:25
**thereabouts** [1] - 36:5
**therefore** [1] - 56:18
**thinking** [2] - 67:17,
72:19
**thinks** [1] - 9:22
**thoughts** [3] - 44:16,
45:10, 49:19
**thous** [1] - 59:2
**thousand** [2] - 25:14,
51:25
**thousands** [2] - 44:10,
54:3
**three** [2] - 24:19,
77:25
**three-year** [1] - 77:25
**throughout** [1] - 7:22
**throw** [1] - 43:15
**TIAA** [1] - 33:1
**TIAA-CREF** [1] - 33:1
**tied** [2] - 9:5, 37:14
**timely** [1] - 8:19
**timing** [2] - 7:20, 86:6

**tobacco** [4] - 28:25,
29:8, 29:9, 37:2
**today** [3] - 45:6, 86:3,
87:2
**Today** [2] - 23:12, 24:7
**together** [2] - 53:2,
79:23
**togethers** [1] - 16:25
**tomorrow** [6] - 21:18,
21:21, 22:1, 70:22,
86:3, 86:15
**took** [8] - 8:2, 25:21,
37:4, 37:5, 44:10,
72:1, 87:8
**top** [2] - 9:4, 85:13
**topic** [1] - 16:25
**totally** [1] - 25:4
**towards** [2] - 26:13,
38:9
**Toxic** [1] - 6:8
**trade** [5] - 15:21,
43:21, 63:7, 63:8,
78:5
**traded** [5] - 7:11,
15:20, 33:20, 43:20,
78:4
**trades** [1] - 7:9
**training** [4] - 5:10,
15:11, 43:11, 62:21
**transactions** [1] -
73:24
**transcript** [1] - 87:12
**transferred** [1] - 74:18
**traveling** [1] - 70:17
**trial** [13] - 13:25,
16:10, 19:25, 20:3,
20:4, 20:7, 20:21,
26:19, 71:4, 71:5,
83:1, 83:6, 87:11
**trials** [3] - 20:5, 20:22,
25:2
**tried** [1] - 35:21
**trouble** [1] - 31:1
**try** [11] - 25:23, 30:15,
30:21, 31:4, 31:13,
31:18, 52:11, 56:24,
66:19, 67:8, 86:3
**trying** [14] - 26:3,
30:23, 32:1, 44:2,
48:2, 52:3, 52:14,
54:9, 54:11, 57:12,
66:16, 66:17, 72:4
**TSP** [2] - 4:15, 4:17
**tussle** [1] - 86:24
**twenty** [1] - 16:18
**twenty-two** [1] - 16:18
**twice** [2] - 25:14,
58:21
**two** [22] - 9:24, 16:18,
18:22, 24:25, 25:6,

38:2, 49:4, 49:23,
49:25, 57:7, 57:10,
59:1, 67:11, 67:25,
68:5, 68:21, 68:22,
70:15, 70:17, 71:3,
71:6, 86:19
**two-page** [2] - 24:25,
25:6
**two-week** [1] - 71:6
**type** [4] - 32:13, 35:6,
37:5, 78:22
**types** [1] - 77:9
**typically** [1] - 69:2
**Tzedek** [4] - 47:15,
49:2, 49:3, 51:9

## U

**U.S** [3] - 3:21, 29:4,
42:16
**UDC** [4] - 46:25,
47:16, 75:17, 75:20
**ultimately** [1] - 16:11
**unable** [1] - 51:25
**uncomfortable** [1] -
53:24
**under** [1] - 6:8
**undergrad** [2] - 5:16,
5:18
**undergraduate** [2] -
8:17, 75:22
**underlying** [1] - 8:10
**understood** [3] -
34:22, 44:22, 50:24
**underwriting** [4] -
9:10, 16:20, 63:19,
79:9
**unfair** [1] - 35:4
**unfortunately** [1] -
17:16
**United** [1] - 64:5
**University** [7] - 5:23,
14:17, 46:24, 47:4,
59:11, 61:10, 75:23
**unless** [1] - 38:6
**unprompted** [1] -
56:13
**unsettling** [1] - 26:16
**up** [34] - 3:13, 8:10,
10:21, 13:14, 14:14,
16:25, 18:19, 18:22,
19:9, 20:22, 24:19,
26:4, 35:2, 38:24,
45:6, 45:8, 48:12,
49:13, 49:17, 51:11,
53:7, 53:8, 53:11,
53:22, 55:10, 55:13,
60:18, 65:13, 65:14,
65:18, 66:6, 73:1,
82:5

**upcoming** [1] - 28:4
**ups** [3] - 38:25, 48:24,
66:1
**upstate** [1] - 70:23
**Urban** [1] - 59:10
**US** [2] - 31:22, 42:12
**USA** [2] - 23:12, 24:7
**utilities** [1] - 53:11
**utility** [1] - 44:1

## V

**vacation** [1] - 70:23
**vacations** [1] - 54:21
**Vanguard** [1] - 43:9
**various** [2] - 62:8,
62:9
**vehicles** [1] - 8:10
**Venable** [2] - 69:17,
69:24
**verdict** [3] - 10:5,
46:14, 81:9
**versus** [4] - 6:13,
13:15, 39:21
**vice** [1] - 59:22
**view** [2] - 11:8, 31:9
**views** [17] - 3:21, 4:7,
7:24, 8:5, 9:25,
10:12, 11:19, 34:3,
34:18, 38:9, 44:13,
48:8, 50:13, 51:7,
53:4, 56:14, 56:20
**Virginia** [4] - 29:1,
29:2, 65:15, 75:23
**voce** [1] - 83:22
**voir** [2] - 50:9, 50:14

## W

**wage** [2] - 53:10,
54:11
**waiting** [1] - 48:18
**wants** [2] - 56:23, 85:1
**water** [2] - 6:13, 6:14
**ways** [1] - 53:1
**wear** [1] - 56:25
**Wednesday** [1] -
70:22
**week** [11] - 21:17,
21:21, 21:25, 62:5,
70:17, 70:18, 70:21,
70:22, 71:6, 81:7,
81:8
**weeks** [6] - 13:15,
27:15, 67:25, 68:5,
70:17, 71:3
**weeks'** [2] - 12:25,
13:5
**weighs** [1] - 6:11
**Wells** [2] - 16:23,

80:19
**White** [1] - 23:12
**whole** [2] - 24:25, 35:2
**WIC** [2] - 6:22, 7:5
**willing** [1] - 14:2
**win** [1] - 21:4
**Wisconsin** [1] - 74:22
**wish** [2] - 56:2, 69:3
**wishful** [1] - 67:17
**witness** [2] - 47:25,
48:3
**witness's** [2] - 50:12,
51:1
**Women** [1] - 7:6
**won** [2] - 21:6
**word** [2] - 28:10, 33:2,
49:9
**workers** [1] - 4:22
**works** [17] - 10:2,
28:25, 29:15, 29:16,
37:2, 69:16, 73:5,
73:14, 73:15, 73:19,
73:23, 74:14, 74:20,
79:12, 82:6, 82:17,
87:4
**world** [2] - 44:19,
44:20
**worse** [3] - 13:7,
13:17, 13:20
**worth** [1] - 26:3
**writer** [1] - 54:1
**writes** [1] - 6:9
**wrote** [1] - 49:5

## Y

**y'all** [8] - 21:4, 24:22,
66:16, 85:22, 86:2,
86:4, 86:15, 87:7
**year** [10] - 6:18, 8:16,
34:14, 34:16, 54:5,
65:12, 70:24, 77:25
**yearly** [1] - 55:7
**years** [15] - 6:16, 16:5,
20:7, 23:12, 36:3,
42:9, 44:8, 48:1,
51:10, 53:13, 58:24,
61:3, 61:23, 68:21,
68:22
**yesterday** [2] - 21:17,
44:16, 72:23
**York** [3] - 64:6, 70:23,
80:11
**young** [1] - 54:19
**yourself** [9] - 5:1, 7:9,
11:19, 15:8, 17:12,
32:15, 43:7, 43:18,
62:17
**yourselves** [1] - 86:4

| Z |
|---|
| **Zaslav** [1] - 54:5 |