UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FAIRHOLME FUNDS, INC., *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> FEDERAL HOUSING FINANCE AGENCY, *et al.*, <br><br> *Defendants*. | Case No. 1:13-cv-1053-RCL |
| **In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations** | Case No. 1:13-mc-1288-RCL |
| This Order relates to: <br> ALL CASES | |

## MEMORANDUM AND ORDER

More than a decade after plaintiffs filed the first complaint in this case, it is ready for final judgment. In August of 2023, a jury found for plaintiffs and awarded damages. In October, the Court ruled that plaintiffs were entitled to prejudgment interest. But the Court has refrained from entering a final, appealable judgment until it has approved plaintiffs' plan for allocating damages.

Plaintiffs have now submitted a proposed plan of allocation and have moved for the Court to approve its plan and enter judgment.[1] *See* Pls.' Mot., Berkley ECF No. 423; Class ECF No. 415. For the foregoing reasons, the Court will **GRANT** plaintiffs' motion. However, it will accept

---

[1] For purposes of this Order, "Berkley ECF No." refers to the docket in No. 1:13-cv-1053, and "Class ECF No." refers to the docket in No. 1:13-mc-1288.

1

one of defendants' objections and will modify the judgment to slightly reduce the damages to be distributed by the amount of the jury's damages award attributable to shares held by the few opt-outs other than the Berkley Plaintiffs. And it will reserve decision on the disposition of unclaimed funds, as it is unclear whether any funds will actually be left undistributed.

## I. BACKGROUND

The Court assumes familiarity with the relevant factual and procedural background, detailed at length in numerous opinions. *See Berkley Ins. Co. v. Fed. Hous. Fin. Agency*, No. 1:13-cv-1053 RCL, 1:13-mc-1288 (RCL), 2023 WL 4744155 (D.D.C. July 25, 2023); *Berkley Ins. Co. v. FHFA*, Nos. 1:13-cv-1053 (RCL), 1:13-mc-1288 (RCL), 2023 WL 3790739, at *1–2 (D.D.C. June 2, 2023); *Fairholme Funds, Inc. v. FHFA*, Nos. 1:13-cv-1053 (RCL), 1:13-mc-1288 (RCL), 2022 WL 4745970, at *1–3 (D.D.C. Sept. 23, 2022); *Fairholme Funds, Inc. v. FHFA*, Nos. 1:13-cv-1439 (RCL), 1:13-mc-1288 (RCL), 2018 WL 4680197, at *1–4 (D.D.C. Sept. 28, 2018); *Perry Capital LLC v. Lew*, 70 F. Supp. 3d 208, 214–19 (D.D.C. 2014).

In brief, this case comprises both a class action (brought by the "Class Plaintiffs") and a set of individual lawsuits (brought by the "Berkley Plaintiffs") against defendants including the Federal Housing Finance Agency ("FHFA"), the Federal National Mortgage Association ("Fannie Mae"), and the Federal Home Loan Mortgage Corporation ("Freddie Mac"). The plaintiffs are holders of common stock of Freddie Mac and junior preferred stock of Fannie Mae and Freddie Mac. Plaintiffs filed suit in 2013 to challenge the "Net Worth Sweep" resulting from an amendment to the Senior Preferred Stock Purchase Agreements between FHFA, in its capacity as conservator for Fannie Mae and Freddie Mac, and the United States Department of the Treasury. By the time the case reached the jury, plaintiffs' sole remaining claim was for breach of the implied covenant of good faith and fair dealing based on the Net Worth Sweep, which allegedly caused

plaintiffs damages in the form of loss of value of Fannie Mae preferred shares, Freddie Mac preferred shares, and Freddie Mac common shares.

On August 14, 2023, the jury found in favor of the plaintiffs, awarding $281.8 million to the Freddie Mac junior preferred shareholders, $31.2 million to the Freddie Mac common shareholders, and $299.4 million to the Fannie Mae junior preferred shareholders. Verdict Form, Berkley ECF No. 402, Class ECF No. 392.  On October 24, 2023, the Court ruled that the Fannie Mae junior preferred shareholder plaintiffs were entitled to prejudgment interest, and awarded simple interest on the $299.4 million damage award, accruing from the date August 17, 2012 until the date on which judgment is entered, at a fixed rate of 5% over the Federal Reserve discount rate as of August 17, 2012. *Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*, No. 1:13-cv-1053 (RCL), 1:13-mc-1288 (RCL), 2023 WL 7002665, at *1, 9 (D.D.C. Oct. 24, 2023).

On November 17, the parties filed a joint statement setting forth their calculation of prejudgment interest and explaining their disagreement about whether the Court could issue a final, appealable judgment before approving the plan of allocation.  *See* Berkley ECF No. 417, Class ECF No. 408.  The Court concluded that it could not issue a final, appealable judgment until it had approved a plan of allocation.  *See* Berkley ECF No. 418; Class ECF No. 409.  The Court therefore ordered the parties to submit a written report outlining plaintiffs' plan of allocation and proposing a briefing schedule in the event the parties had concerns for which they sought resolution by the Court.  *Id.*  Once the parties had filed their joint submission, the Court imposed a briefing schedule.  *See* Berkley ECF No. 420; Class ECF No. 412.

On January 22, 2024, plaintiffs submitted their proposed plan of allocation and proposed judgment and moved for the Court to approve their plan of allocation and enter judgment.  *See* Pls.' Mot., Berkley ECF No. 423; Class ECF No. 415.  Defendants filed an opposition.  *See* Defs.'

3

Opp'n, Berkley ECF No. 424, Class ECF No. 417.  They challenge three aspects of plaintiffs' proposals.  First, defendants argue that the proposed judgment would distribute the jury's entire damages award without reducing the damages to account for the small number of shareholders (other than the Berkley Plaintiffs) who opted out of the class.  *Id.* at 1.  Second, defendants contend that the proposed plan of allocation would improperly authorize distribution to holders of shares that were previously owned by shareholders who had opted out of the class.  *Id.* at 1–2.  Third, defendants challenge the legality of plaintiffs' proposed method of distributing unclaimed funds—cy pres distribution to an affordable housing charity—and instead assert that any unclaimed funds should revert to defendants.  *Id.* at 3.  Plaintiffs filed a reply.  *See* Pls.' Reply, Berkley ECF No. 425, Class ECF No. 418.

Plaintiffs' motion is now ripe for review.

## II.   LEGAL STANDARDS

In the class action context, a plan of allocation, also known as a distribution plan, typically establishes who is eligible to receive damages, how individual payments will be allocated among the eligible class members, and what to do with any unclaimed funds.  *See* 2 Joseph M. McLaughlin, McLaughlin on Class Actions § 6:23 (20th ed.); *Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1138 (10th Cir. 2010).  Any plan of allocation must be approved by the court.  "As with settlement agreements, courts consider whether distribution plans are fair, reasonable, and adequate."  *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 4 F. Supp. 3d 94, 107 (D.D.C. 2013) (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, No. 99-ms-276 (TFH), 2003 WL 22037741, at *7 (D.D.C. June 16, 2003)).  In evaluating a proposed plan of allocation, the district court will consider whether it will equitably distribute the settlement proceeds or damages award.  *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 179, 181 (2d Cir. 1987) ("District courts enjoy broad supervisory powers over the administration of class-action

4

settlements to allocate the proceeds among the claiming class members . . . equitably.") (internal quotation marks and citation omitted) (alteration in original); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011) (en banc) (same); *see also* 2 McLaughlin, supra, § 6:23 ("The objective in developing a plan [of allocation] is equitable distribution of finite settlement proceeds.").

### III. DISCUSSION

The Court will consider in turn each of defendants' challenges to plaintiffs' proposed judgment and plan of allocation. It agrees with defendants that the judgment must be revised to deduct the portion of the damages award attributable to the small number of opted-out shareholders from the total amount to be distributed. However, defendants' argument that the plan should not allocate damages to persons holding shares that were previously held by opted-out shareholders fails because it is irreconcilable with the definition of the class. Finally, the Court will for now refrain from deciding on the method of distribution for unclaimed funds, since it is not yet clear any funds will be left unclaimed.

### A. The Court Will Modify the Proposed Judgment to Deduct the Portion of the Damages Award Attributable to Opted-Out Shareholders From the Total Amount To Be Distributed

The Court will modify the judgment to slightly reduce the damages paid to class members and the Berkley Plaintiffs by the amount of the jury's damages award attributable to shares held by opt-outs other than the Berkley Plaintiffs.[2]

---

[2] Plaintiffs argue that defendants' argument should be rejected because defendants "lack any cognizable interest in challenging how the award is distributed among Class members" and therefore lack standing to raise this argument. *See* Pls.' Mot. 10. This invocation of standing is puzzling. Standing doctrine "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiffs have cited no authority for the notion that a *defendant* must meet the requirements of Article III standing to object to aspects of a plaintiff's plan of allocation. The two cases invoked by plaintiffs involve the standing to object of third parties, rather than defendants. *See In re Equity Funding Corp. of Am. Sec. Litig.*, 603 F.2d 1353, 1361 (9th Cir. 1979); *In re Holocaust Victim Assets Litig.*, 314 F. Supp.2d 155, 168 (E.D.N.Y. 2004). It would be curious if the Court, in exercising its duty to evaluate whether plaintiffs' proposal would equitably distribute the damages award, could not consider legal arguments of defendants. At any rate, because defendants argue that

The defendants object that plaintiffs' proposed judgment calls for the payment of the entire amount of damages awarded by the jury to the class members and Berkley Plaintiffs, even though the jury award reflects damages to both those plaintiffs and opt-outs. *See* Defs.' Opp'n 5–9. Defendants argue, and plaintiffs do not dispute, that "[a]t trial, Plaintiffs presented evidence, and the jury found damages, based on losses experienced by *all* shareholders—100% of the relevant [Fannie Mae and Freddie Mac] shares, including shares held by opt outs." *Id.* at 6; Pls.' Reply 2. The jury verdict thus includes money owed to the opt outs. But the proposal calls for the entire damages award to be distributed. According to defendants, they thus "would be forced to pay class members for harm that the jury found was suffered by opt-outs," which would violate the Rules Enabling Act. Defs.' Opp'n 5.

The Court agrees that the proposal would improperly require defendants to overpay the class members. To be sure, the difference is minute. According to plaintiffs, only thirty-two individual shareholders opted out, other than the Berkley Plaintiffs who are of course entitled to damages. Pls.' Mot. 11–12; *see also* Pls.' Mot., Ex. B, App. C, Berkley ECF No. 423-2, Class ECF No. 415-2 (listing the thirty-two opt-outs). So, the damages award of approximately $810 million would be reduced by an estimated $200,000. Pls.' Mot. 11–12. Nonetheless, Federal Rule of Civil Procedure 23's "requirements must be interpreted in keeping . . . with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right.'" *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (quoting 28 U.S.C. § 2072(b)). Overcompensating the class would violate the Rules Enabling Act by "alter[ing] defendants'

---

plaintiffs' proposal would cause them to pay more in damages than they should, they have asserted a "classic pocketbook injury." *See Tyler v. Hennepin Cnty., Minnesota*, 598 U.S. 631, 636 (2023).

Plaintiffs also argue that defendants waived this challenge by not raising it before or during trial. *See* Pls.' Mot. 11–12; Pls.' Reply 2–3. But defendants could not have raised an objection to plaintiffs' proposed judgment before plaintiffs had unveiled it in the first place.

substantive right to pay damages reflective of their actual liability." *See McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008). The amount of aggregate damages must instead "roughly reflect the aggregate amount owed to class members." *Seijas v. Republic of Argentina*, 606 F.3d 53, 58–59 (2d Cir. 2010).

True, courts applying these principles have typically dealt with greater disconnects between proposed damages and actual liability. *See, e.g.*, *McLaughlin*, 522 F.3d at 231 (rejecting as violative of the Rules Enabling Act an aggregate determination of damages that was "likely to result in an astronomical damages figure that does not accurately reflect the number of plaintiffs actually injured by defendants and that bears little or no relationship to the amount of economic harm actually caused by defendants."). But there is no exception in the Rules Enabling Act permitting modification of substantive rights so long as the infringement is not too much in the grand scheme of things. Since approximately $200,000 of the total damages award has nothing to do with defendants' actual liability to the class members and Berkley Plaintiffs, the Court cannot include that sum in the judgment without abridging defendants' substantive rights.

Perhaps sensing their overreach, plaintiffs have suggested a remedy of reducing the judgment by the amount attributable to opt-outs. *See* Pls.' Mot. 12 n.4. The Court will adopt this suggestion and will modify the proposed judgment by including the language put forward by plaintiffs, and not disputed by defendants: "IT IS FURTHER ORDERED AND ADJUDGED that the judgment amount for each of the Classes shall be reduced by the sum of damages and interest attributable to "Specified Shares," as defined by the Plan of Allocation, incorporated herein." *See id.*; Defs.' Opp'n. 7 (encouraging the Court to correct the proposed plan in the manner suggested by plaintiffs).

**B. Defendants' Objection That the Proposed Plan Would Improperly Pay Damages to Holders of Shares Previously Owned by Shareholders Who Opted Out of the Classes Is Meritless**

The Court rejects defendants' argument that plaintiffs' proposed plan would improperly award damages to holders of shares whose previous owners opted out of the class, because this contention is flatly inconsistent with the definition of the class adopted by the Court.

Defendants fault plaintiffs' proposed plan for permitting damages to be paid to holders of shares whose previous owners opted out of the class. *See* Defs.' Opp'n 9–17. According to the defendants, this would violate common law principles because it would mean that when the opted-out shareholder sold their shares to another person, they effectively assigned to the buyer a right the opted-out seller did not actually possess—the right to participate in class recovery. *See id.* at 11–13. The plan of allocation therefore "must include a mechanism for identifying and excluding from payment all opted-out shares, thereby limiting distributions only to class members." *Id.* at 10. Any argument by plaintiffs that the subsequent shareholders are not limited to the rights of the previous, opted-out shareholders, defendants argue, is estopped because plaintiffs have previously argued in other contexts that the claims travel with the share. *See id.* at 14–15.

Yet defendants' theory runs aground on the definitions of the classes adopted by the Court. When the Court granted plaintiffs' motion for class certification, it certified the following classes:

1. All current holders of junior preferred stock in Fannie Mae as of the date of certification, or their successors in interest to the extent shares are sold after the date of certification and before any final judgment or settlement (the "Fannie Preferred Class");

2. All current holders of junior preferred stock in Freddie Mac as of the date of certification, or their successors in interest to the extent shares are sold after the date of certification and before any final judgment or settlement (the "Freddie Preferred Class"); and

3. All current holders of common stock in Freddie Mac as of the date of certification, or their successors in interest to the extent shares are sold after

8

the date of certification and before any final judgment or settlement (the "Freddie Common Class").

Order, Class ECF No. 139. Under the plain meaning of these definitions, a person can be a class member if they held the relevant share on the date of certification. Or they can be a class member if they are a successor in interest to such a person and hold a share after certification but before final judgment. The definitions do not differentiate between successors in interest to those who remained part of the class and successors in interest to those who opted out. Not only does the Order contain no caveat excluding the latter category, but the Court-approved notice to class members lacks any hint of such an exception. *See* Notice of Class Action, Class ECF No. 140-1. By imposing such an exception, defendants seek to rewrite the class definitions.

More fundamentally, defendants err in speaking of "shares that were validly opted out of the classes." *See* Defs.' Opp'n 1, 6. The classes are defined in terms of *shareholders*, not *shares*. So, *shareholders* could opt out; *shares* could not. *See* Notice of Class Action 6 (informing potential class members that they could "remove [themselves] from or 'opt out' of the Class(es)"). Plaintiffs' plan is not deficient for not recognizing a non-existent category of tainted shares that exclude their owners from the class. Similarly, defendants' argument that "if the claim travels with the shares, then the opt-out election must do so as well," Defs.' Opp'n 12, relies on the faulty premise that class membership is a feature of the share that may or may not be transferred to a successor in interest. *See id.* (asserting that "an opt-out has no right to participate in the class recovery, and thus they cannot assign a right to participate in the class recovery."). But under the Court's Order granting class certification, a purchaser's qualification for class membership is not based on any transferred right, but instead triggered by their identity as a successor in interest to someone who held shares as of the date of certification. That a person purchased a share from someone who had previously opted out of the class is simply irrelevant.

The Court therefore concludes that the proposed plan properly includes shareholders who are successors in interest to previous owners who opted out of the class.

### C. The Court Will Reserve Decision on the Disposition of Unclaimed Funds

Since it is unclear whether any funds will in fact be left unclaimed, the Court will reserve decision on whether unclaimed funds should revert to defendants or be distributed through cy pres.

Plaintiffs contend that because the plan of allocation provides for disbursement to brokers and registered shareholders of record, "it is probable that the amount of undistributed funds will be minimal to non-existent." Pls.' Reply 15–16 (citing Plan of Allocation (POA) ¶ 13, Berkley ECF No. 423–2, Class ECF No. 415-2); *see also* Pls.' Mot. 9 (same); POA ¶ 15 ("Given the Allocation Plan and Distribution Method, Plaintiffs expect there will not be any unclaimed or undistributed funds in this case."). Although plaintiffs urge the Court to nonetheless decide whether unclaimed funds should revert to defendants or be subject to a cy pres decree, they "do not object to reserving decision as to the appropriateness of a cy pres award until after the distribution process." Pls.' Reply 20.

At this time, there is no need for the Court to decide whether cy pres is a legally valid remedy, whether the equities favor cy pres or reversion, and whether there is an adequate nexus between the proposed cy pres beneficiary and this case. "[P]recedent and prudence counsel" courts "to avoid unnecessary dicta." *Louisiana Env't Action Network v. Browner*, 87 F.3d 1379, 1385 (D.C. Cir. 1996). The Court will therefore refrain from plunging into this thicket unless and until it must. It will instead modify ¶ 15 of the proposed plan of allocation to replace the sentence about cy pres with the following: "The Court shall defer decision on the disposition of undistributed funds until such time as the amount of undistributed funds, if any, has been determined." *See* Pls.' Reply 20.

## IV.   CONCLUSION

For the foregoing reasons, plaintiffs' motion for entry of final judgment in **GRANTED**. A Final Judgment will be filed contemporaneously with this Order. A Plan of Allocation consistent with this Order will be attached to the Final Judgment.[3]

Date:  3/20/24

Royce C. Lamberth
United States District Judge

---

[3] The Court is able to enter final judgment because the Plan of Allocation "provides a thorough framework for determining each individual class member's damages." *See Cook*, 618 F.3d at 1138. However, executing the judgment will require additional steps. *See* POA ¶ 12 ("Prior to disbursement of any funds to any Class members, the Court will establish procedures for approval of the Allocation Plan, including, but not limited to, procedures for notifying Class members of the Allocation Plan and providing them an opportunity to object thereto."). And the Court has reserved decision on the disposition of unclaimed funds.